1

```
1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF TEXAS
2                    SHERMAN DIVISION

3

   GIBSON BRANDS, INC.          :      DOCKET NO. 4:19CV358
4                               :
   VS.                          :      SHERMAN, TEXAS
5                               :      OCTOBER 28, 2019
   ARMADILLO DISTRIBUTION       :      11:00 A.M.
6  ENTERPRISES, INC.            :

7                    TELEPHONE CONFERENCE
         BEFORE THE HONORABLE AMOS L. MAZZANT,
8              UNITED STATES DISTRICT JUDGE

9  APPEARANCES BY TELEPHONE:

10 FOR THE PLAINTIFF:          MR. KURT SCHUETTINGER
                               BATES & BATES
11                             1890 MARIETTA BLVD. NW
                               ATLANTA, GA  30318
12
                               MR. STEPHEN DALE HOWEN
13                             LAW OFFICE OF STEPHEN HOWEN
                               7111 BOSQUE BLVD., SUITE 305
14                             WACO, TX  76710

15
   FOR THE DEFENDANT:          MS. ANNA B. NAYDONOV
16                             FENNEGAN HENDERSON
                               901 NEW YORK AVENUE NW
17                             WASHINGTON, DC  20001

18                             MS. EMILEIGH STEWART HUBBARD
                               HENRY ODDO AUSTIN & FLETCHER
19                             1700 PACIFIC AVE., SUITE 2700
                               DALLAS, TX  75201
20

21 COURT REPORTER:            MS. JAN MASON
                              OFFICIAL REPORTER
22                            101 E. PECAN #110
                              SHERMAN, TEXAS  75090
23

24 PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY, TRANSCRIPT

25 PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
```

2

1          THE COURT:  Okay.  Good morning.  This is Judge

2     Mazzant and we're here in Case 4:19CV358, Gibson Brands, Inc.

3     versus Armadillo Distribution Enterprises, Inc.

4          I think you've already made your appearances for the

5     record.  We are in the courtroom with my court reporter, so

6     please, every time you speak, identify yourself.

7          And I believe it was the Defendant who initiated this

8     call, so if that's who initiated the call, go ahead and tell

9     me what the issue is.

10          MS. NAYDONOV:  Good afternoon, Your Honor.  This is

11     Anna Naydonov, counsel for Armadillo.  Yes, indeed, we asked

12     for a call to get the Court's guidance on getting highly

13     relevant evidence of third party uses into evidence.

14          Just to give the Court a brief background, this is a

15     trademark infringement and counterfeiting where Gibson

16     accuses Armadillo of copying seven of its guitar shapes and

17     marks.  Armadillo counterclaimed on the grounds that these

18     guitar shapes are generic and commonplace and have been in

19     widespread third party use for many decades.  Indeed,

20     Armadillo, through its predecessor, has used some of the

21     shapes since 1976.

22          So to prove its counterclaim that the shapes --

23     Gibson's asserted shapes are generic and to defend against

24     the allegations of likelihood of confusion, we need to get

25     into evidence at trial the fact that numerous third parties

3

1    have used these same shapes for many years.  And we're

2    talking about some pretty basic, uncontroverted facts,

3    whether Company A has used this shape, how long, their basic

4    sales and advertising information.

5         So I -- we wanted to get the Court's guidance as to --

6    on how to get this evidence in.  We have proposed over two

7    months ago, and we still continue to believe that our

8    proposal is the most efficient and effective way to deal

9    with getting this evidence in, is to have -- instead of

10   having numerous third party depositions -- and, Your Honor,

11   there have been more than 50, around 52 companies in the

12   U.S. alone that have used the same or identical shapes over

13   many decades.  We thought and we proposed to Gibson that to

14   avoid these depositions, we have a stipulation that outlines

15   the following procedure:

16        We identify a third party and both Gibson and Armadillo

17   work with that third party, interview it, and arrive at a

18   short, succinct declaration setting forth the facts about

19   this third party's use of same or similar guitar shapes.

20   Then if either party doesn't agree or we cannot agree on a

21   declaration, we reserve the right to take a deposition, a

22   limited deposition of that third party.

23        So we proposed that in August and we let Gibson know

24   that it's going to be way over 20 third parties that we'll

25   need to get evidence from.

4

1      Gibson, unfortunately, rejected our proposal and told

2  us back on August 26th that they intend to depose every

3  single third party.  And I quote:  It intends to depose any

4  third party that Armadillo intends to use to invalidate my

5  client's IP rights.  And then Gibson issued -- proceeded to

6  issue eight third party subpoenas of its own to third

7  parties.  So we had to issue our own counter subpoenas and,

8  you know, issue our own subpoenas to other multiple third

9  parties who have used this same shape.

10      And we all along have been working and trying to get

11  Gibson to reconsider our proposal, because we think that

12  still the most efficient way to get the third party evidence

13  in is not by deposition but by declarations that are

14  mutually negotiated.

15      And we've used this declaration procedure as plaintiff

16  and defendant in multiple cases, and we find that the judges

17  and the juries find it helpful just to read those

18  declarations into the evidence.  And -- and, of course,

19  they're mutually negotiated and either party reserves the

20  right to take the deposition.

21      And just to get back a little bit to my initial point

22  on why this evidence of widespread third party use is so

23  important, it's considered to be very important to

24  establishing whether the shape is generic, and there are

25  many cases in this district and other districts that have

5

held that.  For example, in Berg against Symons, 393 F.Supp.
2d 525, Southern District of Texas, held that a trade dress
design may be generic if it is so common in the industry
that it is incapable of serving to identify any one
particular source.

The Trademark Trial and Appeal Board in Fender Musical
Instruments, 94 USPQ2d 1549 found certain Fender asserted
guitar shapes generic, largely based on third party use.
The burden is on Armadillo to provide evidence that's
admissible at trial of these third party uses.

The evidence is also relevant to finding no likelihood
of confusion.  For example, the Fifth Circuit in Amstar held
that the greater the number of identical or more or less
similar trademarks already in use of different kinds of
goods, the less the likelihood of confusion.

So the evidence is highly relevant to our claims and
defenses.  And, moreover, it's also proportionate to the
needs of the cases because Gibson alleged counterfeiting
against our client, and as Your Honor knows, the statutory
damages are up to $2 million per mark and here we have five
counterfeiting claims, so the stakes are high.

And, you know, there are many, many third parties who
have used these shapes.  Some of them are still using the
same shapes.  Some of them are no longer using the shapes.
But that evidence is still relevant to show that the shapes

1   have been generic and commonplace in the minds of consumers

2   for many decades.

3       Now, in terms of -- I would like to address a couple of

4   points in Gibson's motion to quash that they filed on

5   Friday.  We still are hoping that the Court provides

6   guidance and adopts this declaration procedure so we can --

7   we can avoid having numerous third party depositions.

8       That said, you know, there are several points and

9   procedural points that Gibson pointed -- or outlined in its

10  motion to quash that I wanted to address.  Gibson stated

11  that, you know, the depositions are scheduled on certain

12  dates around the country that involve a lot of travel and

13  may not be convenient for everybody.

14      First of all, we have told them for months now that

15  we're okay with telephonic depositions, with Skype

16  depositions.  We've been working with them and with every

17  third party that asked us for an extension or to

18  reschedule -- or to reschedule the deposition.  We were

19  agreeable to hold them on days that worked for everyone.

20      Given the number of the third parties, of course, we

21  cannot guarantee that we can have all of the West Coast

22  depositions, for example, at the same time or all of the

23  Florida ones on the same week.  It largely depends on third

24  party convenience.  But we're willing to work on dates that

25  work for everyone.

7

1          Also regarding some of the -- Gibson said in their

2    motion that we issued subpoenas where we request third

3    parties to respond to document requests within less than 30

4    days, and that it purportedly violates Rule 34 of the

5    Federal Rules.

6          Rule 34, a 30-day window for responding to document

7    requests does not apply to non-parties.  The law is pretty

8    clear on that, both in this district and other districts,

9    and we're happy to submit cases for the Court's

10   consideration.

11         Courts have held that in Rule 45 subpoenas the standard

12   is time has to be reasonable.  There has to be a reasonable

13   timeframe for the third party to respond to a Rule 45

14   subpoena.  And here we have provided I think at the minimum

15   19 or 20 days to respond to the document requests and

16   depositions are more than 30 days out.  Whenever a third

17   party asked us for an extension, we granted that request.

18   And we're willing to continue to work with Gibson and the

19   third party to grant any such extension request.

20         Moreover, there's not a single third party that has

21   come to this court and tried to quash our subpoena or

22   complained that it's overly burdensome, so there's no --

23   really, it's a premature issue.  There's no ongoing dispute

24   on that front.

25         To the extent Gibson suggested in its motion to quash

1   that we did not provide notice to them before serving the

2   third party, that's incorrect.  We have provided notice to

3   Gibson for every single third party subpoena before serving

4   the subpoena on that third party, so we have complied with

5   the Rule 45 requirements.

6         In terms of next step, Armadillo continues to believe

7   that the declaration process that we outlined for Your Honor

8   and the stipulation that we sent to Gibson back in August is

9   still the most effective and efficient way to get this

10  widespread third party evidence, and we are happy to

11  consider Gibson's proposed revisions to the stipulation and

12  to work with them.

13        To the extent Your Honor finds that getting the

14  evidence in through declarations is not the way to go,

15  Gibson's proposed limitation to have only 10 third party

16  depositions is not workable for us just because we have the

17  burden to show third party usage, and there are many more

18  than 10 third parties out there.  So we need a procedure in

19  place and then we need to increase the number of depositions

20  to allow us to depose all those third parties.

21        We're happy, of course, to limit those depositions to

22  one or maximum two hours.  I think we'll be fine with just

23  one hour depositions, because we're trying to get just basic

24  facts, whether they've used the guitar, how long, what are

25  their sales and advertising.

9

1       We are willing to continue to work with Gibson and the

2   third parties to grant extensions and schedule the

3   depositions on dates that work for everyone, which is also

4   the reason why we went ahead and served most of our

5   subpoenas early on, to allow or build in this time to work

6   through the process, because we don't have a lot of time in

7   discovery.

8       Our expert reports on the genericness issue are due

9   beginning of February, February 12th.  And there are

10  holidays coming up in November and December, and we wanted

11  to allow enough time to collect this relevant third party

12  evidence.

13      So with that, if Your Honor has any questions -- and

14  we're happy to submit a written response to Gibson's motion

15  that was filed on Friday to provide any case law or

16  additional briefing that Your Honor may require.

17          THE COURT:  Okay.  Let me go ahead and hear a

18  response from Gibson.

19          MR. SCHUETTINGER:  Your Honor, this is Kurt

20  Schuettinger on behalf of Gibson.

21      We filed on Friday our motion to quash.  The issue is

22  pretty basic here.  Federal Rule 30(b)(2)(A) limits the

23  number of depositions in a case to ten, absent leave of

24  Court or permission from the other side.

25      The Defendant has ignored that rule and they issued

10

1    unilaterally 24 third party subpoenas for depositions and

2    document requests.  And then they informed us that they

3    intend to issue 30 more in this case.

4        I litigated a case on behalf of Gibson that went all

5    the way to trial in California a little less than -- over a

6    year ago.  Total, the parties did not conduct 10 third party

7    depositions.

8        We have offered -- despite the Defendant not getting

9    leave of court or permission from Gibson, we had offered

10   them to do 10 third party depositions.  They've refused the

11   offer.

12       We've offered to work with them on stipulations on a

13   case by case basis, but we have not agreed to their

14   stipulation for several reasons.  One, that the stipulation,

15   Gibson stipulates to unlimited number of third party deps.

16   We stipulate that any sworn declaration is admissible for

17   all purposes except for relevancy.

18       And, you know, some of these third parties that they're

19   subpoenaing, I don't know what we're going to do with this

20   evidence to the jury.  I'll give the Court a couple of

21   examples.  Moonstone Guitar they have subpoenaed.  I spoke

22   with the owner of that company.  He's retired.  He's

23   undergoing chemo, and he hasn't made the guitars in their

24   subpoena, he said, since 1980 or 1981 and he's retired.  I

25   don't know what relevancy that evidence is going to be to

11

1    the jury.

2        They subpoenaed a company called Ibanez, and despite

3    the fact that Armadillo is representing to the Court today

4    that they're seeking basic information, the subpoena to

5    Ibanez has 60 document requests.

6        We've provided them, the Defendant Armadillo, with our

7    settlement with Ibanez in the '70s.  So not only is this

8    irrelevant, we have a settlement, but it's completely

9    burdensome to have third parties respond to 60 document

10   requests and appear for deposition.

11       We think our position here is reasonable.  They can

12   proceed with ten depositions and see what kind of evidence

13   they think they're getting here.  You know, I don't think we

14   need to burden third parties when Gibson has given you a

15   settlement agreement from the '70s, or in the case of

16   Moonstone Guitar, the individual hasn't made the guitar

17   since 1980 or 1981.

18       I think after ten, if they can proffer some type of

19   reason to the Court why more is necessary, I think at that

20   point we can revisit the issue.  But I think right now all

21   we're doing is burdening third parties with guitars that are

22   not on their website.

23       I'll give the Court another example.  B.C. Rich they've

24   subpoenaed.  If you go on their website, they don't even

25   have guitars available for sale.

1      They subpoenaed John Hornby Skewes where we're supposed

2  to appear in London the day after Thanksgiving for a

3  deposition.  I think that is 40 document requests.  John

4  Hornby Skewes was the case I referenced earlier that we

5  litigated all the way to trial in California that resulted

6  in a settlement agreement.  Again, I don't know what

7  evidence they intend to proffer based upon Gibson settling

8  with them.

9      Two days before Thanksgiving we're supposed to appear

10 for a deposition for a company called RBI, which is the

11 distributor in the U.S. for John Hornby Skewes.  Again, that

12 use is governed by a settlement agreement Gibson has.

13     And just to give the Court an example, again, they had

14 to get leave of court or permission from Gibson to issue

15 more than ten subpoenas.  They issued 24.  In one week we're

16 supposed to appear in New York on a Monday.  Then we have to

17 appear in Indiana on a Tuesday.  Then we have to fly back to

18 New York on a Wednesday.  Then we have to fly to Tampa on a

19 Thursday, and then we have to be in Texas on Friday for a

20 deposition.

21     You know, this is not only burdensome to the third

22 parties when they're having to respond to up to 40 or 60

23 document requests, that schedule is just completely

24 unworkable.

25     And currently pending in this case, fairly early on,

13

1    there's motions to dismiss filed by the Defendant, by

2    Gibson.  There's motions to strike.

3         And I would just note here as far as proportionality,

4    they reference that there are seven trademarks and that they

5    need this for their generic defense.  They have only moved

6    to cancel three of our trademarks based on genericness, so

7    they want to do 50 some third party subpoenas based upon

8    three trademarks.

9         And then if you also look into genericness, evidence of

10   third party use is what the Court considers circumstantial

11   evidence.  The direct evidence of is a mark valid is a

12   consumer survey.  And if you look at circumstantial

13   evidence, the Court and the jury can look at lots of things,

14   including third party use.  They can look at dictionary use,

15   how the trademarks are referred to in third party

16   publications.

17        Gibson's trademarks here, all but one I think are

18   presumed valid and are incontestable.  So as opposing

19   counsel said, it's their burden, and this is just one

20   element of one counterclaim that they're seeking to do all

21   these third party depositions, and I just don't think it's

22   proportionate to the needs of this case and it's an undue

23   burden on these third parties.

24        I will say, they said that no one has complained.  I

25   spoke with Ibanez's attorney about the subpoena and he was

14

1    completely upset about, as I mentioned, the over 60 document

2    requests that he got from them about the deposition.

3         And just to further reiterate, they've subpoenaed these

4    third parties to not only appear two days before

5    Thanksgiving, the day after Thanksgiving, and they

6    subpoenaed another company, Daisy Rock Guitars, to appear on

7    Veteran's Day for a deposition.  They attached two guitars

8    to their subpoena.  One of them, if you look at Daisy Rock's

9    website, is not even available for sale.

10        So I think what they need to do -- we've provided them

11   with 15,000 documents so far.  We're going to provide them

12   more that relate to settlement enforcement by Gibson from

13   third parties.  I think they should review those documents

14   we provided them, look at the guitars attached to the

15   subpoena and verify if they're even for sale in the U.S. on

16   these companies' websites.

17        Let's do ten depositions and see what kind of evidence

18   they get from them, and then if we need to, we can come back

19   to the Court and revisit the issue.  That's our position

20   right now, and I think it's more than reasonable.

21             THE COURT:  Okay.  If I could have Defendant explain

22   to me -- listening to what defense wanted was this stipulation

23   or declaration process, but yet, you went ahead and subpoenaed

24   all these other third parties.  I'm a little confused.

25             MS. NAYDONOV:  So, Your Honor, just to clarify, we

15

1    provided to Gibson the proposed stipulation that would allow

2    for submission of this evidence by declaration and would still

3    allow Gibson to object on relevance grounds, so say that the

4    declaration was inadmissible at trial and reserve the right for

5    either party to take a deposition.  We proposed that and we

6    welcomed any revision or tweaks to that back in August,

7    August 26th.

8         That same day, Gibson -- and we told them, there are

9    going to be over 20 third parties that we'll need evidence

10   from, and it's not a surprise to Gibson, having litigated

11   other cases, that there are scores of third parties that

12   have used their asserted mark.

13        So we proposed the stipulation back on August 26th.

14   That same day Gibson wrote back to us and said, no, we don't

15   want to do declarations and we, I quote, intend to depose

16   any third parties that you intend to rely on to try to

17   invalidate Gibson's rights.

18        So they told us, no, we want to go ahead and do

19   depositions of all these third parties.  So having received

20   that, they knew there would be more than ten.  Days after

21   that, Gibson, not Armadillo, goes ahead and issues eight

22   third party subpoenas, including Moonstone.  Counsel just

23   mentioned Moonstone.  Gibson subpoenaed Moonstone.  We did

24   not.

25        So we issued, in response to that, counter subpoenas to

16

1    those same third parties and then we proceeded to continue

2    to issue our own subpoenas, because Gibson knew that there

3    were going to be way over ten of these third parties who

4    have evidence.  And back in August they didn't want to do

5    the declaration procedure, so the only choice we had was to

6    then do the depositions, and they said they wanted to do

7    depositions.

8        It was not until October 16th that Gibson all the

9    sudden said, oh, there are only ten third party depositions

10   that you can do.  We will not agree either to the

11   declaration.  We told you back in August we're not going to

12   do that.  But we're not going to let you take more than ten

13   depositions either, which puts us in kind of an untenable

14   position where we have to limit our third party evidence to

15   just ten third parties and then come back to the Court and

16   ask for additional leave.

17       We are not allowed to -- Gibson wouldn't agree to

18   declarations either, so it puts us in kind of this limbo

19   situation.

20       And I wanted to, if Your Honor allows, I would like to

21   address a couple of points they brought up on these specific

22   subpoenas, so --

23           THE COURT:  Well, before you go to that, I guess I'm

24   trying to understand -- I mean, the rules only allow you to

25   take ten depositions, correct, without agreement by the parties

1    or approval of the Court?  But yet, you subpoenaed more than

2    ten.

3            MS. NAYDONOV:  But, Your Honor, I guess we presumed

4    we had agreement that we would do more than ten depositions

5    because back in August we informed them that there were more

6    than ten third parties.  We said we have to depose them or get

7    declarations.  Would you agree to some sort of stip on a

8    declaration?  They said no, we want to do depositions.

9        Then we proceeded to -- both parties proceeded to issue

10   multiple third party subpoenas, and we did not know until

11   October 16th that they now are going to take the position

12   that there's -- you know, that we're only allowed to take 10

13   third party depositions.

14       As soon as we learned that that's their position, which

15   was October 16th -- and it was a surprise to us that they're

16   taking this stance.  As long as we understood that this is

17   now the way they're going to go, which contradicts their

18   prior statement that they were going to depose everybody,

19   and they knew there were more than ten.  As soon as we knew

20   that now this is their position, we immediately asked --

21   conferred with Gibson and asked for this phone call to

22   clarify how we go from here.

23           THE COURT:  Okay.  Let me just go back to Gibson and

24   make sure I understand.  So they offered the stipulation or the

25   declaration process, which you, I guess, in some form rejected

1    doing it in total.  You would do it on a case by case basis,

2    based on your motion.

3        I guess I'm trying to understand.  In your mind, was

4    there an agreement allowing to proceed with more than ten of

5    these, based on the fact -- I'm just trying to understand

6    what the nature, if there was an agreement.

7            MR. SCHUETTINGER:  Right.  There was no agreement.

8    In August, several months ago, the thought of a stipulation --

9    I was just addressing the stipulation that Gibson stipulate to

10   evidence that it hadn't seen and that we stipulate that there's

11   unlimited depositions.  And I informed Armadillo -- I think my

12   email said for various reasons, you know, my client's not

13   willing to agree to the stipulation at this point.

14       It has been our position since then that we're

15   certainly reasonable, and on a case by case basis we'll look

16   at whatever evidence there is and work with the other side

17   on a stip, which we're trying to do with Moonstone Guitar

18   right now.  I sent them a proposed declaration.

19       We never agreed to, you know, this unlimited number of

20   subpoenas, and the goal posts have been moved by Armadillo

21   throughout.  At first it was just we believe there's

22   numerous, and then they said we believe there's 34.  Now

23   they're saying there's 52 third party deps.  And the

24   subpoenas they sent out were just rapid.  We were getting

25   two in a day, three in a day.  I think within a week they

1   had all 24 of them issued.

2      So we never agreed to them, and what we brought to

3   their attention was you have now issued over 24 third party

4   subpoenas.  The rule limits you to ten total.  We'll agree

5   to ten.  And that's when they brought this to the Court's

6   attention.  We never got our --

7      THE COURT:  I guess in your process when you said

8   basically you wouldn't agree to just kind of an agreement of

9   stipulations and you would have to take the depositions, you

10  knew that they wanted more than ten.  I guess at any time

11  during these discussions, whether by email or in person or via

12  telephone, did you object to, hey, you can only take ten of

13  these?

14      MR. SCHUETTINGER:  Yes, in the correspondence.  Once

15  they started issuing the subpoenas, giving us notice, because

16  at the beginning of the case we were just talking

17  hypothetically that they had some evidence they wanted to get.

18  I don't know who they intend to subpoena.  I don't know who

19  we're talking about, right?  What third parties?

20      Then all of a sudden, within a week, they send us

21  notice of 24 third parties that they're doing the deps, and

22  that's when we brought to their attention quickly, you've

23  gone over the amount here.

24      I mean, I guess to answer your question, I can't really

25  object to them doing something before they do it.  I didn't

1    know who they intended to issue the subpoenas to.

2         As I told you before, we litigated a similar case all

3    the way to trial.  The parties, total, didn't do ten third

4    party deps.  There were some requests for production of

5    documents, which I think is an easy way to go here where you

6    ask the parties, hey, can you give me sales for the last

7    five years or ten years for this guitar.

8         I think what they're going to find is a lot of these

9    companies don't sell the image that they're attaching.  What

10   they're also doing, which we didn't know at the time, is the

11   subpoenas -- as I referenced before, they're only seeking to

12   cancel three trademarks here.  But the subpoenas are

13   including other trademarks Gibson has that they don't have a

14   counterclaim to cancel.  So they're kind of, you know,

15   moving the goal posts throughout this.

16        I certainly didn't know they were going to issue 60

17   document requests to third parties or do it where we have

18   five depositions in a week in four different states, where

19   we're doing it over -- you know, the day after Thanksgiving

20   for a company that Gibson has settled with.

21             THE COURT:  Okay.  Go ahead if --

22             MS. NAYDONOV:  Your Honor --

23             THE COURT:  If you want to respond, ma'am.

24             MS. NAYDONOV:  Uh-huh.  Thank you, Your Honor.

25        First of all, I would like to quote from our

1  August 26th email, which is when we proposed the

2  stipulation.  We told Gibson at the time that the proposed

3  stipulation is an attempt to save costs and fees and burden

4  on the third parties associated with potentially over 20

5  third party depositions.  Over 20, back in August.

6       They wrote back and said we intend to depose any third

7  parties that Armadillo intends to use to invalidate my

8  client's IP rights.

9       Then they proceed to issue eight third party subpoenas

10  on their own, which prompted our counter subpoenas and our

11  further subpoenas to third parties.

12       So they -- they knew all along that there are way over

13  ten, that we intend to get evidence and we need evidence for

14  our burden for way over ten.  They told us they intend to

15  depose anyone.  And it was not until October 16th where they

16  all the sudden made an about-face and said you should only

17  be allowed to do ten depositions.

18       Now, yes, we currently are moving to cancel only three

19  guitar shapes on genericness grounds, but we're asking for

20  evidence about third party use of other marks because that's

21  highly relevant to finding no likelihood of confusion.

22       The Fifth Circuit held in Amstar against Domino's

23  Pizza, 615 F.2d. 255, the greater the number of identical or

24  more or less similar trademarks already in use on different

25  kinds of goods, the less the likelihood of confusion.

1    So we need to ask those third parties about their uses

2    of shapes where we're accused of infringement, even where

3    there is no genericness counterclaim.  So the fact of the

4    matter is that there are numerous -- several dozen third

5    parties that have used the same shapes over the past several

6    decades.  It doesn't matter that some of them may no longer

7    be in use.

8    Armadillo started using those -- the accused shape back

9    in 1976, so Gibson has to prove that their marks had

10   acquired secondary meaning back in the '70s when we started

11   using those marks.  For genericness, it's relevant that some

12   parties have used these shapes in the '70s and in the '80s

13   or in the '90s, even though they don't use them anymore.

14   The fact that Gibson settled with some parties like

15   Ibanez or John Hornby Skewes does not mean that a third

16   party subpoena should no longer be issued or is irrelevant.

17   For example, until we issued a subpoena to Ibanez and until

18   we spoke with Ibanez and that subpoena was issued, Gibson

19   didn't even produce the settlement agreement to us.  It was

20   our subpoena that prompted the production of that settlement

21   agreement.

22   Moreover, it's -- the fact that Ibanez settled with

23   Gibson or that John Hornby Skewes settled with Gibson

24   doesn't take away from the fact that those companies had

25   used these shapes, these commonplace shapes before.  So we

23

1    need to get basic facts.  I used this shape for -- in the

2    case of Ibanez, after settlement, they have continued to

3    make the same shapes with some tweaks, as far as we

4    understand, and in the minds of consumers, consumers are

5    still exposed to continued use of virtually the same shapes.

6         We just need to get this evidence in, that the shapes

7    are -- you know, have been used for this period of time and

8    here are the sales and here are the advertising.

9         Now, with regard to -- so we don't understand

10   fundamentally why Gibson would not agree to a procedure to

11   get this evidence in.  If they think -- they're still free

12   to file a motion in limine before trial to try to get to

13   exclude some of these as irrelevant, but we need a procedure

14   in place that lets us get into evidence all these third

15   parties that have used these shapes.

16        We think the declaration process is cheaper.  It's more

17   efficient.  It works better.  They keep referencing this

18   case that almost went to trial.  I cannot speak for that

19   case.  I can speak for multiple cases I have tried as

20   plaintiff and defendant.  We recently had one before Judge

21   Ellis where we were plaintiff there.  We agreed to a similar

22   procedure where the defendant went and got declarations

23   from -- I don't remember -- around 20 third parties.  I've

24   used them as defendant, getting the declarations and reading

25   them into the record for the jury.  We think that's cheaper,

24

1    more efficient.

2        If not, the only other way that we're aware of under

3    the Federal Rules is deposition testimony from these third

4    parties.

5        Now, regarding the specific ones that Gibson mentioned,

6    Daisy Rock that was inadvertently scheduled for Veteran's

7    Day, we told Gibson two weeks ago, sorry, we inadvertently

8    scheduled it.  We didn't remember it was Veteran's Day.

9    We're working with Daisy Rock's counsel to reschedule that

10   deposition, so no issue there.

11       John Hornby Skewes, which is based in London, Gibson

12   knows and we're working with their counsel on a Skype

13   deposition at a date mutually convenient for everyone.  So

14   we're not making anyone travel anywhere the day after

15   Thanksgiving.

16       Moonstone, that was Gibson's subpoena, not ours, and we

17   issued a counter subpoena.  After that, Gibson said actually

18   we want to work on a declaration from this person because

19   the owner has cancer, and we said, of course.  That's what

20   we were proposing all along is to have this procedure where

21   the default is you try to negotiate a declaration.  If you

22   are not able to negotiate a declaration, the parties reserve

23   the right to take a one or two hour deposition.  It can be

24   telephonic, can be Skype.  We'll pick a date that works for

25   everyone.

25

1          But we cannot be in the position where we are just

2     limited to ten and then we have to burden the Court and ask

3     for leave again or we have to justify to Gibson why we think

4     every single other third party beyond ten is relevant.

5          To prove our case, we are entitled to get evidence of

6     these third party uses, and there are more than 50 of them

7     out there, and to present it.  Then if Gibson wants to argue

8     that they're irrelevant or inadmissible at trial, you know,

9     they can do that.  But we have to have a process in place

10    that lets us -- that doesn't limit us to ten and lets us

11    educate the Court and the jury about all these widespread

12    third party uses.

13         Now, the document requests, counsel mentioned that

14    Ibanez's subpoena had more than 60 document requests.  Well,

15    there were multiple shapes that Ibanez has used that are the

16    same or very close to what Armadillo is accused of doing

17    here.  Our document requests really fall into several

18    categories.  It's their use, sales, advertising, any

19    agreements or objections from Gibson.  But because they used

20    so many shapes, we just broke down the requests for the

21    third party's convenience, give us sales of the Flying V

22    shape, give us sales of the Explorer shape.  Give us

23    advertising.  We can condense them into 13 requests total.

24    We just broke them down into numerous requests to make it

25    more convenient for the third party.

26

1          We've been working with Ibanez's counsel, as well as

2     with other counsel.  We are agreeing to extensions for them

3     to respond.  We can schedule a deposition on a day that

4     works for everyone.

5          But we still think that this declaration procedure is

6     better, because it's just cheaper and more efficient for

7     everyone.  And, by the way, still allows Gibson to object to

8     the declarations on relevance grounds at trial, on

9     materiality, you know, on prejudice grounds, Rule 403

10    grounds.

11         The only thing that we're asking Gibson to agree is

12    that they do not object to the admissibility of the

13    declaration on authenticity and hearsay grounds, and then

14    they can argue it's irrelevant or should be excluded on

15    other grounds.

16         Then in terms of scheduling the subpoenas where counsel

17    said they need to fly back and forth, as I said, we already

18    agreed with Gibson, these can be telephonic.

19         Also, if they want to move any of those depositions,

20    we're happy to move them to a different week or date, so

21    long as it works for the third party, of course.

22         And then, as I said, the fact that John Hornby Skewes

23    or Ibanez have reached settlements doesn't take away from

24    the fact that the shapes had been used for years before

25    that, and in the case of Ibanez, with small tweaks, have

27

1  continued to be used after settlement.

2      Also, the fact that again some -- they're arguing that

3  some do not have the guitars displayed on their website

4  right now.  Well, that doesn't mean that the shapes had not

5  been used before, so --

6          THE COURT:  Okay.  Let me go ahead and interject,

7  because I've heard enough on this issue.

8      One thing I will say is that I put a high premium on

9  cooperation, and it's clear neither side is cooperating on

10  the operation of this discovery in terms of how to approach

11  it.

12      So let me just start off.  I have Gibson's motion to

13  quash and protective order.  I'm going to grant that.  Now,

14  just because I'm granting that does not mean that I believe

15  that things couldn't go forward.

16      I will go ahead and grant the defense 20 third party

17  depositions.  You can go ahead and proceed with those.

18      But I want to encourage y'all to cooperate with each

19  other.  So what I mean by that is you need to go ahead and

20  try to agree to a procedure, whether you use the declaration

21  procedure -- I'm not going to impose that, but it seems like

22  a reasonable solution to at least some of those.  Then if

23  not, then they can proceed with the depositions if you can't

24  agree.  But let's try to have a good faith negotiation.

25      Then let's plan those third party depositions, if you

28

1    have to proceed to those, together, not just automatically

2    notice them.  So let's see if there's some air of

3    cooperation.

4        I would say from the defense standpoint, I know you

5    said you need -- I'll give you 20 right now.  If you -- when

6    you're getting close to that and you still need more, then

7    if the parties cannot agree, come back to the Court and ask

8    for a telephone conference and we'll discuss it and I'm sure

9    I'll give you some more.

10       But, again, I encourage the parties to cooperate with

11   each other to kind of resolve this.

12       Okay.  Any other guidance you need from me from the

13   defense?

14           MS. NAYDONOV:  No, Your Honor.  Thank you.

15           THE COURT:  And I'm just -- I'm granting the motion

16   to quash because I understand maybe you weren't getting

17   cooperation, but noticing all those subpoenas was not

18   appropriate without some cooperation from the other side.

19       And if they're not cooperating, you know, I would say

20   if you need Court guidance, because -- and I'm telling

21   Gibson, you need to cooperate, because if you don't, I'll

22   let them go ahead and just notice them all.  But let's go

23   back to square one, see if you can cooperate with each other

24   and see if that solves the problem.

25           MS. NAYDONOV:  Your Honor --

29

1          THE COURT:  Anything else for Gibson I can do today?

2          MR. SCHUETTINGER:  I just have a procedural question.

3    So you're going to grant our motion to quash.  So then do they

4    need to reissue the 20 subpoenas they want to proceed with?

5          MS. NAYDONOV:  I had the same question, Your Honor.

6    I was hoping that we could pick the 20, because we've already

7    served a lot of them and are in the process of working with

8    those third parties on getting the responses, so we're hoping

9    we can --

10         THE COURT:  Let me be clear.  I'm quashing them as to

11   the time they're set for.  So I don't have a problem with

12   you -- if you first can't agree to some other method, whether

13   using the declaration procedure for the 20, but then having 20

14   to go forward with, using the 20 of the group you've already

15   issued, I don't have a problem with that, of working with the

16   other side and the third party to set that time up.

17         MS. NAYDONOV:  Okay.  Thank you.

18         THE COURT:  Okay.  Anything else I can do for Gibson

19   today?

20         MR. SCHUETTINGER:  No, Your Honor, unless local

21   counsel has something they want to add.

22         MR. HOWEN:  No, that's okay.  Your Honor, thank you

23   for your time today.

24         THE COURT:  Okay.  Y'all have a great day.

25   Thank you.

1          MS. NAYDONOV:  Thank you, Your Honor.

19    I certify that the foregoing is a correct transcript from

20    the record of proceedings in the above-entitled matter.

22    _____          _____

      Jan Mason                         Date