IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

GIBSON BRANDS, INC.,

      Plaintiff/Counterclaim-Defendant,

v.

ARMADILLO DISTRIBUTION
ENTERPRISES, INC.; CONCORDIA
INVESTMENT PARTNERS, LLC,

      Defendants/Counterclaim-Plaintiffs,

DOES 1 through 10,

      Defendants.

Case No. 4:19-cv-00358-ALM

**DEFENDANT ARMADILLO DISTRIBUTION ENTERPRISES, INC.'S PARTIAL
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR
FAILURE TO STATE A COUNTERFEITING CLAIM**

i

# TABLE OF CONTENTS

I.      STATEMENT OF THE ISSUES ........................................................................ 1

II.     INTRODUCTION ........................................................................................... 1

III.    RELEVANT BACKGROUND .......................................................................... 3

    A.      As Shown in the SAC, Both Parties Use the Guitar Body Shapes and
        Headstocks in Connection with Their Distinct, Well-Known GIBSON and
        DEAN/LUNA Housemarks ................................................................... 3

    B.      Gibson's Counterfeiting Allegations Against the DEAN GUITARS
        Modern 24 Select Flame Floyd Tiger Eye and LUNA Fauna Hummingbird
        Guitar Models ................................................................................... 12

IV.     ARGUMENT ................................................................................................. 15

    A.      The Standard for a Motion to Dismiss ................................................. 15

    B.      On a Motion to Dismiss, the Court May Consider Documents on Which
        the Complaint Necessarily Relies ....................................................... 16

    C.      A Counterfeiting Claim Fails as a Matter of Law Where a Defendant Uses
        the Accused Product Shape with a Distinct Housemark and/or Other
        Distinct Design Elements ................................................................... 17

    D.      Gibson's Counterfeiting Claims as to the Alleged "Flying V," "Explorer,"
        "SG," and "Dove Wing Headstock" Product Shapes Fail as a Matter of
        Law ............................................................................................... 21

    E.      Gibson's Counterfeiting Claims Against Armadillo's Guitar Model Names
        and Instagram Hashtags Are Implausible on Their Face and Should Be
        Dismissed ...................................................................................... 22

V.      CONCLUSION ............................................................................................. 24

# TABLE OF AUTHORITIES

*Cases*

*Adams v. Grand Slam Club/Ovis*,
    No. 12-cv-2938-WJM-BNB, 2013 WL 1444335 (D. Colo. Apr. 9, 2013)............................ 17

*Alpha Kappa Alpha Sorority Inc. v. Converse, Inc.*,
    175 F. App'x 672 (5th Cir. 2006) ..................................................................................... 15-16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................................ 15

*Audemars Piguet Holding S.A. v. Swiss Watch International, Inc.*,
    No. 12-cv-5423 (LAP), 2015 WL 150756 (S.D.N.Y. Jan. 12, 2015)................... 18-19, 20, 22

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................................ 15

*Colgate-Palmolive Co. v. J.M.D. All-Star Import & Export Inc.*,
    486 F. Supp. 2d 286 (S.D.N.Y. 2007)................................................................................... 22

*Coty Inc. v. Excell Brands, LLC*,
    277 F. Supp. 3d 425 (S.D.N.Y. 2017)................................................................................... 19

*Emeco Industries, Inc. v. Restoration Hardware, Inc.*,
    No. C-12-5072 MMC, 2012 WL 6087329 (N.D. Cal. Dec. 6, 2012)..................................... 23

*Fujifilm North America Corp. v. PLR IP Holdings, LLC*,
    No. 17 Civ. 8796 (NRB), 2019 WL 274967 (S.D.N.Y. Jan. 7, 2019)............................ passim

*Gibson Brands, Inc. v. John Hornby Skewes and Co.*,
    No. CV-14-00609 DDP (SSx), 2016 WL 7479317 (C.D. Cal. Dec. 29, 2016).............. passim

*GMA Accessories, Inc. v. BOP, LLC*,
    765 F. Supp. 2d 457 (S.D.N.Y 2011)................................................................................22-23

*GMA Accessories, Inc. v. Electric Wonderland, Inc.*,
    558 F. App'x 116 (2d Cir. 2014) .........................................................................................22-23

*GTFM, Inc. v. Solid Clothing Inc.*,
    No. 01 CIV. 2629 DLC, 2002 WL 1933729 (S.D.N.Y. Aug. 21, 2002) ................................ 20

*Gucci America, Inc. v. Guess?, Inc.*,
    868 F. Supp. 2d 207 (S.D.N.Y. 2012).................................................................................... 17

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013)................................................................................................... 22

*Maloney Gaming Management, L.L.C. v. St. Tammany Parish*,
456 F. App'x 336 (5th Cir. 2011) ........................................................... 16

*Montres Rolex, S.A. v. Snyder*,
718 F.2d 524 (2d Cir. 1993) ................................................................... 23

*Southland Securities Corp. v. INSpire Insurance Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) .................................................................. 16

*Springboards to Education, Inc. v. Scholastic Book Fairs, Inc.*,
No. 3:17-cv-0054-B, 2018 WL 1806500 (N.D. Tex. Apr. 17, 2018) .................................... 23

*United Pacific Insurance Co. v. Idaho First National Bank*,
378 F.2d 62 (9th Cir. 1967) .................................................................... 17

**Statutes**

15 U.S.C. § 1127 ...................................................................................... 17, 20

**Rules**

Federal Rule of Evidence 201(b) ...................................................................... 16-17

Federal Rule of Civil Procedure 8(a)(2) ............................................................... 15

**Treatises**

4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §
25:10 (5th ed. 2019) ......................................................................... 17, 22

## I.      STATEMENT OF THE ISSUES

1.      Whether Gibson's counterfeiting claims as to the alleged guitar body shapes and headstock shape fail as a matter of law because Armadillo's accused guitar body shapes and headstock are not "identical" or "substantially indistinguishable" to Gibson's given that, far from using "spurious" marks trying to trick consumers into purchasing fake "Gibson" products, Armadillo's product shapes are commonplace and are all branded with its distinct, well-known DEAN and/or LUNA house marks and distinct-looking headstocks—all of which unmistakably identify Armadillo as the maker of the products.

2.      Whether Gibson's counterfeiting claims fail as a matter of law because Armadillo's use of "DEAN GUITARS Modern 24 Select Flame Floyd Tiger Eye" is not "identical" to or "substantially indistinguishable" from the alleged "Moderne" mark, nor is "LUNA Fauna Hummingbird" or Armadillo's use of "#flyingv" in several social media posts in connection with the DEAN house mark a "spurious" imitation of Gibson's asserted "Hummingbird" or "Flying V" mark.

## II.     INTRODUCTION

In its complaint, Gibson accuses Armadillo, a 43-year old iconic American-based guitar company, of counterfeiting (among other claims).  But Armadillo—one of the most prominent guitar makers in the world—is no counterfeiter.  It does not replicate other's brands for sale by unscrupulous vendors in back alleys and covert warehouses.  Far from that, Armadillo has been offering the accused guitar/headstock shapes for years (and in some cases decades) under its famous DEAN and LUNA brands through its own channels and reputable mainstream retailers. Specifically, Armadillo has been continuously offering the accused V- and Z-shaped guitars for over 40 years, the accused "DEAN Mustache" headstock for over 20 years, and the accused DEAN Gran Sport guitar series for over six years.  To suggest that famous musicians like

1

Michael Schenker, Eric Peterson, Christian Martucci, Eddie Veliz, and John Connolly have openly promoted, played, and endorsed spurious, "counterfeit" products on stages across the world is absurd.[1]

Gibson's counterfeiting claims are implausible on the face of the Second Amended Complaint ("SAC") and fail as a matter of law because *all* the accused Armadillo guitars are prominently branded with the famous DEAN and LUNA trademarks, including on the guitars' headstocks, which are routinely used to identify a guitar's maker.

This is not the first time that Gibson raised counterfeiting claims that fail as a matter of law.  Another court recently rejected a similar claim against a guitar company based on the same guitar shapes asserted here.  The court held that "[t]o the extent that Gibson allegedly relies on its body shape and headstock shape as a source identifier, no rational jury could find that a particular body shape or headstock stamped with a different guitar brand is a counterfeit of a Gibson trademark."  *Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. CV-14-00609 DDP (SSx), 2016 WL 7479317, at *7 (C.D. Cal. Dec. 29, 2016).  Here too, Gibson cannot credibly, or legally, establish that Armadillo tried to trick purchasers into buying fake "counterfeit" Gibson guitars when Armadillo has for years used the accused shapes (like many others) with its own brands and distinctive-looking headstocks.

Moreover, Gibson cannot allege a plausible claim that the "DEAN GUITARS Modern 24 Select Flame Floyd Tiger Eye" (a model name for a "modern" style guitar) is a spurious imitation of the asserted MODERNE mark.  Nor is "LUNA Fauna Hummingbird" "identical" or "substantially indistinguishable" from Gibson's HUMMINGBIRD.  And Armadillo's two

---

[1] Indeed, the V, Z, and SG guitar shapes have been generic for decades, and Armadillo thus counterclaimed to cancel Gibson's trademark registrations for those shapes.

2

passing uses of "#flyingv" on its official @deanguitar Instagram account in connection with its famous DEAN housemark cannot plausibly be deemed a spurious imitation of Gibson's FLYING V.

For these reasons, Gibson's counterfeiting claims should be dismissed.

## III.    RELEVANT BACKGROUND

### A.    As Shown in the SAC, Both Parties Use the Guitar Body Shapes and Headstocks in Connection with Their Distinct, Well-Known GIBSON and DEAN/LUNA Housemarks

Gibson's counterfeiting count for the alleged guitar body and headstock shapes is based on Gibson's trademark registrations for the "Flying V Body Shape" (Reg. No. 2051790), "Explorer Body Shape" (Reg. No. 2053805), "SG Body Shape" (Reg. No. 2215791), and "Dove Wing Headstock" (Reg. No. 1020485).  (Second Amended Complaint ("SAC") ¶¶ 1, 65-68.) Gibson's SAC alleges that its guitars are sold "under the famous GIBSON Trademark."  (SAC ¶ 11.)  Gibson's specimens of use submitted with the U.S. Patent and Trademark Office (U.S. PTO) to maintain the registrations confirm that Gibson prominently uses its GIBSON mark for all the alleged shapes (including on the guitars' headstocks):



**Gibson "Flying V" U.S. PTO Specimen**

3



**Gibson "Explorer" U.S. PTO Specimens**





## Gibson "SG" U.S. PTO Specimens





**Gibson "Dove Wing" U.S. PTO Specimen**



(Exs. 1-7 to Decl. of Anna Naydonov, December 16, 2019 ("Naydonov Decl.").)

As shown in the SAC, *all* of Armadillo's products accused of counterfeiting—the V, Z, and DEAN Gran Sport guitars and the Mustache Headstock, display the distinct, famous DEAN and LUNA marks and logos on the headstocks:



**DEAN V-shaped guitars**



**DEAN Z-shaped guitars**



**Close-up DEAN V-shaped guitar from
https://www.deanguitars.com/subcategory?series=v_series in Ex. I to FAC**



**Close-up of DEAN Z-shaped guitar from
https://www.deanguitars.com/subcategory?series=z_series in Ex. I to FAC**



**DEAN Gran Sport Guitar**



**DEAN Mustache Headstock**

(Ex. I to the FAC.)

Gibson alleges that Armadillo sells the accused guitars through its www.deanguitars.com

and www.lunaguitars.com websites.  (SAC ¶ 32.)  As shown in Gibson's exhibits to the SAC,

Armadillo's websites also prominently and conspicuously designate the source of its products—

DEAN and LUNA:

8









(Ex. I to the SAC.)

Moreover, Armadillo's allegedly counterfeit V and Z guitar body shapes are used with a distinct V headstock, which looks nothing like Gibson's headstocks:



(SAC ¶ 25(d), Ex. I.)

Regarding the accused DEAN Mustache Headstock, it not only prominently displays the DEAN housemark and logo, but is visually distinct from Gibson's asserted "Dove Wing Headstock":

| Gibson | Armadillo |
|--------|-----------|
|  | |

(FAC ¶ 29, Ex. I; Ex. 7 to Naydonov Decl.)

**B.     Gibson's Counterfeiting Allegations Against the DEAN GUITARS Modern 24 Select Flame Floyd Tiger Eye and LUNA Fauna Hummingbird Guitar Models**

Gibson also accuses Armadillo of "counterfeiting" its alleged MODERNE, HUMMINGBIRD, and FLYING V marks.  (SAC ¶¶ 65-68.)  But as the SAC reveals, Armadillo does not use MODERNE at all; it uses "DEAN GUITARS Modern 24 Select Flame Floyd Tiger Eye" for a "modern" style 2019 "Select Series" guitar:



(Ex. I to the SAC).

Similarly, the SAC shows that Armadillo uses the "Fauna Hummingbird" guitar model name in connection with the famous LUNA housemark:





(Ex. I to the SAC.)

And on the two occasions that Armadillo used the #flyingv on its official @deanguitars

Instagram account, the SAC shows that it appeared alongside the prominently displayed DEAN

housemarks and among several other hashtags (including #deanguitars"):



14



(Ex. I to the SAC.)

## IV.    ARGUMENT

### A.    The Standard for a Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Rule 8 requires a claim to relief that is not just possible, but "plausible on its face."  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  And while all allegations of material fact in the complaint must be taken as true and construed in the light most favorable to the nonmoving party, the Court "need not, however, accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Alpha Kappa*

15

*Alpha Sorority Inc. v. Converse, Inc.*, 175 F. App'x 672, 676 (5th Cir. 2006) (unpublished) (citing *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (while the court views the alleged facts in the light most favorable to plaintiff, "[the court] will not strain to find inferences favorable to the plaintiffs.  Nor [does it] accept conclusory allegations, unwarranted deductions, or legal conclusions.") (internal quotations and citations omitted)).

### B.  On a Motion to Dismiss, the Court May Consider Documents on Which the Complaint Necessarily Relies

The Court generally looks at the face of the complaint when deciding a motion to dismiss.  "[W]hen considering a Rule 12(b)(6) motion, a court may [also] consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims."  *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Parish*, 456 F. App'x 336, 340 (5th Cir. 2011) (unpublished) (holding district court properly considered documents outside the pleadings on a motion to dismiss).

Here, Armadillo relies almost exclusively on the images of the parties' products in the SAC.  The only materials not attached to the SAC are the specimens of use submitted by Gibson with the U.S. PTO in support of its asserted trademark registrations, which corroborate Gibson's allegations in the SAC that it sells its guitars under the GIBSON brand.  (Exs. 1-7 to Naydonov Decl.)  The Court may consider these documents attached to Armadillo's motion because the trademark registrations are referenced in the SAC and are central to Gibson's claims.  Indeed, as discussed below, a federal trademark registration is a prerequisite to bringing a counterfeiting claim; and, when analyzing the parties' marks, the Court does not consider the marks in the abstract, but rather as they appear in the marketplace.  Alternatively, the content of these specimens is "not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and the Court may

16

thus take judicial notice of these documents obtained from the U.S. PTO website.  Fed. R. Evid. 201(b).

### C.    A Counterfeiting Claim Fails as a Matter of Law Where a Defendant Uses the Accused Product Shape with a Distinct Housemark and/or Other Distinct Design Elements

The Lanham Act defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  The bar for counterfeiting is exceptionally high, and "the majority of counterfeiting cases involve obviously identical marks."  *Adams v. Grand Slam Club/Ovis*, No. 12-cv-2938-WJM-BNB, 2013 WL 1444335, at *6 (D. Colo. Apr. 9, 2013) (holding plaintiff failed to meet pleading standard for counterfeiting).  *See also Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) ("[C]ourts have uniformly applied this provision to products that are stitch-for-stitch copies of those of another brand"); *United Pac. Ins. Co. v. Idaho First Nat'l Bank*, 378 F.2d 62, 69 (9th Cir. 1967) ("[C]ounterfeit is something that purports to be something that it is not"); 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:10 (5th ed. 2019) ("Often, counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise.").

As one court explained in rejecting Gibson's counterfeiting claims as a matter of law, "counterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'"  *Gibson*, 2016 WL 7479317, at *5 (quoting *Gucci Am.,* 868 F. Supp. 2d at 242). That case involved the same guitar shapes that Gibson has asserted against Armadillo here—the alleged registrations for the "Flying V" and "Explorer" shapes.  The court concluded that "[t]o

17

the extent that Gibson allegedly relies on its body shape and headstock shape as a source

identifier, no rational jury could find that a particular body shape or headstock stamped with a

different guitar brand is a counterfeit of a Gibson trademark." *Id*. at \*7.  The court rejected the

counterfeiting claim as a matter of law because the defendants' guitars displayed the word

"Vintage" on the front of the headstock and the wording "Vintage A John Hornby Skewes

Product" on the back of the guitar.  *Id*.  Moreover, "certain visual distinctions between the

headstocks and body shapes in question" further supported a finding that Gibson did not meet the

"identical or substantially indistinguishable" standard for counterfeiting.  *Id*.  Especially notable

were Gibson's own admissions that its guitars can't be identified by the shape alone:

> Gibson's own representatives and experts . . . confirm[ed] the view that a
> Gibson guitar is not identified solely by its shape.  (*See* Dep. Walter Carter,
> attached to Davis Decl. Ex. 1, at 117:9-117:10 ("If you want to know who
> made a guitar, you should look at the name that's on the guitar. That's
> common sense."); Deposition of Gibson Brands, Inc., attached Davis Decl. Ex.
> 2, at 63:11-14. ("I don't know who manufactured this guitar.  It's a Gibson
> body shape, certainly, but as we can't see anything else, I can't tell you for
> certain who made that guitar.").)

*Id*. at \*6.

Other courts have also routinely rejected counterfeiting claims over product shapes where

a defendant used its distinct brand with the accused shape and/or incorporated other (even small)

differences in the overall look of the product.  *See Fujifilm N. Am. Corp. v. PLR IP Holdings,*

*LLC*, No. 17 Civ. 8796 (NRB), 2019 WL 274967, at \*5 (S.D.N.Y. Jan. 7, 2019) (dismissing a

counterfeiting counterclaim over Polaroid's photo frame mark because the defendant used its

FUJIFILM mark in connection with the accused shape); *Audemars Piguet Holding S.A. v. Swiss*

*Watch Int'l, Inc.*, No. 12 Civ. 5423 (LAP), 2015 WL 150756, at \*2 (S.D.N.Y. Jan. 12, 2015)

(finding no counterfeiting when taking into account the "context of the entire watch" because the

allegedly counterfeit watch included "a different canteen crown, watch band attachment, and

watch face, as well as the Trimix and Swiss Legend names and logos"; concluding that defendants were not "seek[ing] to trick the consumers into believing he or she is getting the genuine article.") (citation omitted); *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 468-69 (S.D.N.Y. 2017) (no counterfeiting where defendant created knockoff version of premier fragrances under nearly identical name and packaging because "the existence of [] disclaimers and Excell's (admittedly less prominent) use of the Diamond Collection mark on its bottles 'creates enough of a contextual difference that [Excell's fragrances] cannot be considered counterfeits") (citation omitted).

The dismissal of a counterfeiting claim in the recent *Fujifilm* case is particularly instructive.  There, Polaroid asserted that Fujifilm counterfeited its registered trade dress for an instant-print photograph:

2019 WL 274967, at *2.

Polaroid alleged counterfeiting based on Fujifilm's use of a nearly identical frame on its film packaging:



*Id*.  The court explained that counterfeiting "differs from mere trademark infringement in three critical respects."  *Id*. at *3.  "First, the alleged counterfeit must copy a *registered* mark; second, the copying must be so direct that the alleged counterfeit appears *identical* to (or else substantially indistinguishable from) the registered mark."  *Id*.  "[T]hird, beyond copying the registered mark to the point of indistinction, the counterfeit must be used to '*pass[] off*' the infringer's product as the original, rather than merely presented in a manner likely to confuse some consumers as to the origin or sponsorship of the infringer's product."  *Id*.  Notably, the court emphasized that in deciding "'whether a defendant [ha]s engaged in counterfeiting, one [does not] compare[] [the] plaintiff's [mark] and [the] defendant's [allegedly counterfeit] mark[] in the abstract."  *Id*. at *4 (quoting *GTFM, Inc. v. Solid Clothing Inc.*, No. 01 CIV. 2629 DLC, 2002 WL 1933729, at *2 (S.D.N.Y. Aug. 21, 2002)).  Rather, "one 'consider[s] how [the marks] appear to consumers in the marketplace.'"  *Id*.  With these guiding principles in mind, the court held that Polaroid's counterfeiting claims as to the photo frame shape on Fujifilm's packaging "plainly fail[ed] as a matter of law."  *Id*.  The court reasoned that Fujifilm's packaging was "conspicuously adorned" with features that "clearly and unequivocally designate Fujifilm as the origin of the packaged products.  Chief among them [was] Fujifilm's prominent display of both the 'Fujifilm' brand name and the 'Instax' product-line name."  *Id*.  Given the use of the FUJIFILM brand name, the "allegation that Fujifilm's Instax Square film packaging would trick a reasonable purchaser into believing he or she is getting a Polaroid product is facially implausible."  *Id*.  Granting the motion to dismiss, the court concluded that, "[c]onsidered in its proper commercial context," Fujifilm's use was "simply not a 'spurious' mark."  *Id*. (citing 15 U.S.C. § 1127 and quoting *Audemars*, 2015 WL 150756, at *2 ("Even if the mark itself were indistinguishable [from the plaintiff's mark], the context of the entire [product], which includes

… the [defendant's] name[] and logo[], make[s] clear that Defendants' use of the … mark is not 'spurious.'")).[2]

### D.   Gibson's Counterfeiting Claims as to the Alleged "Flying V," "Explorer," "SG," and "Dove Wing Headstock" Product Shapes Fail as a Matter of Law

As noted in the *Fujifilm* court's dismissal of a counterfeiting claim on a Rule 12(b)(6) motion, one mustn't compare the parties' marks "in the abstract," but "'how [the marks] appear to consumers in the marketplace.'"  2019 WL 274967, at *4 (citation omitted).  Here, the Court need not look beyond the SAC to see that the alleged product shapes are prominently adorned and/or displayed with the distinct, well-known DEAN and LUNA housemarks.  Far from trying to trick consumers into believing that they are getting a GIBSON-branded guitar, Armadillo goes out of its way to inform consumers that they are getting a DEAN or a LUNA guitar.  For its part, Gibson also prominently embosses its guitars with the GIBSON brand.  Like in *Gibson Brands, Inc. v. John Hornby Skewes*, Gibson's counterfeiting claims fail as a matter of law because "no rational jury could find that a particular body shape or headstock stamped with a different guitar brand is a counterfeit of a Gibson trademark."  2016 WL 7479317, at *7.

A finding of no counterfeiting is even more warranted here than in *Gibson Brands, Inc. v. John Hornby Skewes* because, unlike the defendant there, who used the term "Vintage" on the front of the headstock (which, Gibson argued, could be interpreted by consumers to mean an old GIBSON guitar), Armadillo prominently uses the distinct DEAN and LUNA company names and logos on the front of the headstocks.  Moreover, as discussed above, Armadillo uses its distinct V headstock for the accused V and Z series guitars (which looks nothing like Gibson's headstock).  And its accused DEAN Mustache Headstock not only prominently uses the DEAN

---

[2] The Court allowed a counterfeiting claim to proceed as to the photos themselves, but the photos, unlike the packaging, did not have the FUJIFILM brand and/or other distinct markings on them.

mark, but is shaped differently from the "Dove Wing Headstock" (which, in turn, bears the GIBSON mark). *Audemars*, 2015 WL 150756, at \*2 (no counterfeiting because the allegedly counterfeit watch included "a different canteen crown, watch band attachment, and watch face, as well as the Trimix and Swiss Legend names and logos").

Given its prominent use of its housemarks, logos, distinct headstocks, and other product design differences, Armadillo's use is "simply not a 'spurious' mark," and the counterfeiting claim should thus be dismissed. *Fujifilm*, 2019 WL 274967, at \*4.

E.    **Gibson's Counterfeiting Claims Against Armadillo's Guitar Model Names and Instagram Hashtags Are Implausible on Their Face and Should Be Dismissed**

Gibson's counterfeiting claims against "DEAN GUITARS Modern 24 Select Flame Floyd Tiger Eye" and "LUNA Fauna Hummingbird" model names fare no better.  Because "counterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article," the "test of 'identical with, or substantially indistinguishable from' requires a closer degree of similarity than is required for traditional trademark infringement or unfair competition." *Gibson*, 2016 WL 7479317, at \*5; 4 McCarthy, *supra* § 25:10.  Even the same words may not meet the "substantially indistinguishable" requirement if their fonts or stylizations differ. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 315 (2d Cir. 2013) (defendant's OWN YOUR POWER was not a counterfeit of plaintiff's OWN YOUR POWER mark because of the differences in the "font, color, and capitalization").  Similarly, marks that "differ by two or more letters, are not likely to be considered counterfeit." *Colgate-Palmolive Co. v. J.M.D. All-Star Import & Export Inc.*, 486 F. Supp. 2d 286, 291 (S.D.N.Y. 2007) (finding no trademark counterfeiting as a matter of law because COLDDATE is not substantially indistinguishable from COLGATE). *See also GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 472 (S.D.N.Y 2011), *aff'd sub nom. GMA*

*Access., Inc. v. Elec. Wonderland, Inc.*, 558 F. App'x 116 (2d Cir. 2014) (CHARLOTTE SOLNICKI is not substantially indistinguishable from, and thus not a counterfeit of, plaintiff's CHARLOTTE mark as a matter of law); *Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, No. 3:17-cv-0054-B, 2018 WL 1806500, at *2-3 (N.D. Tex. Apr. 17, 2018) (granting motion to dismiss counterfeit claim because MILLION WORDS CLUB and MILLION WORDS READER was not a counterfeit of MILLIONAIRE READER, MILLION DOLLAR READER, MILLIONAIRE'S READING CLUB or READ A MILLION WORDS); *Emeco Indus., Inc. v. Restoration Hardware, Inc.*, No. C-12-5072 MMC, 2012 WL 6087329, at *1 (N.D. Cal. Dec. 6, 2012) (granting motion to dismiss counterfeit claim because 1940S NAVAL CHAIR and INTRODUCING 1940S NAVAL CHAIR COLLECTION were not counterfeits of THE NAVY CHAIR or 111 NAVY CHAIR); *Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 531-32 (2d Cir. 1993) (as between AMAZONAS and AMAZON on shoe heels and soles, "it could not be seriously contended that the average consumer would have found them substantially indistinguishable"; as between BOLIVIA and BULOVA for watches, "it is unlikely that an average purchaser would have found the marks on the two watches to be substantially indistinguishable").

Here, Armadillo is not using "spurious" marks to try to trick consumers into thinking they are getting Gibson products.  DEAN GUITARS Modern 24 Select Flame Floyd Tiger Eye is not "identical" or "substantially indistinguishable" from MODERNE.  Nor is LUNA Fauna Hummingbird a "spurious" imitation of a Gibson guitar.  Not only do Armadillo's guitar model names incorporate completely different words, they consistently appear together with the well-known DEAN and LUNA housemark.

Regarding Gibson's claim that Armadillo has used a counterfeit FLYING V mark, it appears this claim is based on two social media posts on the official @deanguitars Instagram account containing the hashtag "#flyingv," along with other hashtags, which was used to refer to a generic V shape for an electric guitar.  Consumers viewed the posts on the official Dean Guitars Instagram account, which they accessed fully aware that they were on the DEAN-branded page and were constantly exposed to the famous DEAN housemark in the profile picture of the account and the surrounding posts.  The prominent use of the DEAN housemark and the full context of the two Instagram posts (featuring and discussing the "DEAN" brand, products, and artists), dispels any counterfeit claim related to Gibson's purported FLYING V mark.

## V.    CONCLUSION

For the above reasons and authorities, Armadillo respectfully requests that the Court dismiss Gibson's counterfeiting claims.

Dated:  December 16, 2019        Respectfully submitted,

                         */s/ Emileigh Stewart Hubbard*
                         Vic Houston Henry, TBA No. 09484250
                         vhhenry@hoaf.com
                         Emileigh Stewart Hubbard, TBA No. 24076717
                         ehubbard@hoaf.com

                         **HENRY ODDO AUSTIN & FLETCHER**
                           **a Professional Corporation**
                         1700 Pacific, Suite 2700
                         Dallas, Texas 75201
                         Telephone: (214) 658-1900
                         Facsimile:  (214) 658-1919

                         Douglas A. Rettew (*pro hac vice*)
                         doug.rettew@finnegan.com
                         Anna Naydonov (*pro hac vice*)
                         anna.naydonov@finnegan.com
                         Patrick J. Rodgers (*pro hac vice*)
                         patrick.rodgers@finnegan.com

                         **FINNEGAN, HENDERSON, FARABOW,**
                           **GARRETT & DUNNER, LLP**
                         901 New York Avenue NW
                         Washington, DC 20001
                         Telephone:     (202) 408-4000
                         Facsimile:      (202) 408-4400

                         *Attorneys for Armadillo Distribution Enterprises, Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the foregoing document was served on all counsel of record via the Court's CM/ECF electronic filing system on December 16, 2019.

                         */s/ Emileigh S. Hubbard*
                         Emileigh S. Hubbard