# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| GIBSON BRANDS, INC. § | |
|    *Plaintiff,* § | |
| v. § | Civil Action No.  4:19-CV-00358 |
| § | Judge Mazzant |
| ARMADILLO DISTRIBUTION § | |
| ENTERPRISES, INC. § | |
|    *Defendant.* | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Gibson Brand, Inc.'s Motion to Dismiss Defendant's Sixth and Seventh Counterclaims (Dkt. #87).  Having considered the motion and the relevant pleadings, the Court finds that Plaintiff's Motion is **DENIED**.

### BACKGROUND

Plaintiff Gibson Brands, Inc. ("Gibson") accuses Defendant Armadillo Distribution Enterprises, Inc. ("Armadillo") of counterfeiting seven Gibson trademarks (Dkt. #74).  The Court granted Gibson's Motion to Amend its Second Amended Complaint ("SAC") on December 2, 2019 (Dkt. #75).  In Plaintiff's Second Amended Complaint, Gibson alleges Armadillo copied the "Flying V Body Shape" Trademark (U.S. Reg. No. 2051790), "Explorer Body Shape" Trademark (Reg. No. 2053805), "SG Body Shape" Trademark (U.S. Reg. No. 2215791), "Dove Wing Headstock" Trademark (U.S. Reg. No. 1020485), "HUMMINGBIRD" Trademark (U.S. Reg. No. 1931670), "FLYING V" Trademark (U.S. Reg. No. 1216644), and "MODERNE" Trademark (U.S. Reg. No. 3588609) (Dkt. #74) (collectively, "Gibson Trademarks").  In its SAC, Gibson claims Armadillo is, or has been, advertising "Unauthorized Products" bearing the Gibson Trademarks through websites, distributors, and catalogs in violation of the Lanham Act (Dkt. #74).

On December 16, 2019, Defendant Armadillo Distribution Enterprises, Inc. ("Armadillo") filed its Second Amended Counterclaims against Gibson. In Armadillo's Sixth Counterclaim, Armadillo seeks recourse for "Intentional Interference with Armadillo's Existing Contracts and Business Relations Under Texas Common Law" (Dkt. #77). In its Seventh Counterclaim, Armadillo seeks recourse for "Intentional Interference with Armadillo's Prospective Contracts and Business Relations Under Texas Common Law" (Dkt. #77). Specifically, Armadillo alleges that Gibson sent two cease and desist letters to Carlino Guitars on April 12, 2019, and May 24, 2019 (Dkt. #77). Armadillo further alleges that Gibson sent a third letter to Gibson's own dealers ("Dealer Letter") on June 3, 2019 (Dkt. #77). Armadillo specifically named three businesses (Retail Solutions, Sam Ash, and Musician's Friend (collectively, "Retailers")) currently engaged in contracts with Armadillo that were contacted by Gibson through the Dealer Letter (Dkt. #77). Armadillo alleges that, in these three letters, Gibson "stated that the dealers were committing trademark infringement by offering for sale and selling Armadillo's guitars" (Dkt. #77). Armadillo further alleges that Gibson then "demanded that those dealers [(1)] remove Armadillo's guitars from their websites and/or stores; [(2)] report to Gibson any purported counterfeiting and infringing activities by Armadillo; and [(3)] that the dealers stop their business dealings with Armadillo" (Dkt. #77). Armadillo claims that Carlino Guitars and the Retailers breached agreements with Armadillo because of the letters sent by Gibson, causing Armadillo to lose business (Dkt. #77).

On December 30, 2019, Gibson then filed its Motion to Dismiss Armadillo's Sixth and Seventh Counterclaim (Dkt. #87). Gibson purports that Carlino Guitars could not have breached any distribution agreement with Defendant Armadillo because Carlino Guitars still offers the Dean V and Z guitars for sale (Dkt. #87). Gibson also maintains that the other Retailers could not have

breached any agreement because those Retailers still offer Armadillo's guitars for sale either directly or through their related companies (Dkt. #87). Armadillo counters that the Dealer Letter caused these Retailers to allegedly "refuse to renew their contracts with Armadillo, remove Armadillo's guitars from their inventory, and/or refrain from or delay in fulfilling orders" (Dkt. #77). Gibson purports that even if the Retailers took any of the above actions, Armadillo has not alleged that the actions resulted in a breach of any specific contract with Armadillo (Dkt. #87). Further, Gibson maintains that Armadillo has not alleged that any Retailer stated it would not do business with Armadillo because of correspondence from Gibson (Dkt. #87). Finally, Gibson states that, as a trademark owner, Gibson has a duty to police their trademarks (Dkt. #87). Therefore, Gibson maintains that it was their legal right to send out all three letters (Dkt. #87).

Armadillo filed an Opposition to Gibson's Motion to Dismiss Armadillo's Sixth and Seventh Counterclaims on January 1, 2020 (Dkt. #94). Gibson filed a Reply Brief in Support of its Motion on January 17, 2020. (Dkt. #101). Armadillo filed its Sur-Reply to the Motion on January 24, 2020 (Dkt. #109).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded

facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."' *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Gibson presents the court with its Motion to Dismiss Armadillo's Sixth and Seventh Counterclaim. The Court concludes that Gibson is not entitled to dismissal of either the sixth or seventh counterclaims.

### A. Tortious Interference with an Existing Contract

Gibson argues that it is entitled to dismissal of the Sixth Counterclaim for Tortious Interference with Existing Contract because Armadillo has failed to allege that Gibson's conduct caused a specific party to breach a contract with Armadillo. The Court disagrees. To establish a case of wrongful interference with an existing business contract, a party must allege: "(1) a contract existed that was subject to interference; (2) the act of interference was willful and intentional; (3) such intentional act was a proximate cause of the plaintiff's damages; and (4) actual damages or loss occurred." *See Walsh v. America's Tele-Network Corp.*, 195 F. Supp. 2d 840, 849 (E.D. Tex. 2002) (quoting *Schoellkopf v. Pledger*, 778 S.W.2d 897, 900 (Tex. App.—Dallas 1989, writ denied)).

"To state a claim that is plausible on its face, [the plaintiff] must plead facts that identify a specific customer with whom it had a specific contract with which [the defendant] interfered." *Staton Holdings, Inc. v. Russell Athletic, Inc.*, 2009 WL 4016117, at *5 (N.D. Tex. Nov. 20, 2009). Simply giving "formulaic recitations of the elements of a cause of action is insufficient to state a claim on which relief can be granted." *Id.* at *4. If "the facts alleged are enough from which to reasonably infer the existence of contracts subject to the interference," then that is sufficient to

5

establish that such a contract exists. *Wolf v. Cowgirl Tuff Co.*, 2016 WL 4597638, at *3 (W.D. Tex. Sept. 2, 2016).

In *Staton*, the plaintiff failed to allege any facts that specified any contract or breach of contract that could have been used to infer the existence of a contract. *Staton*, 2009 WL 4016117, at *5. The *Staton* court, consequently, granted Russell Athletic's motion to dismiss. *Id.* Likewise, in *Zhejiang Med. Co. v. Kaneka Corp.*, the plaintiff simply alleged that "some" of its customers refused to purchase their products because of the defendant's letters. 2012 WL 12893418, at *4 (S.D. Tex. Aug. 13, 2012). The court held that "the use of the word 'some' does not identify plaintiff's customers or their contracts with any specificity," and therefore the parties had not alleged facts specific enough to identify any contracts or a breaching of any contracts. *Id.* Further, a party can be liable for tortious interference, even without a breach, if it makes performance of a contract "more burdensome, difficult or impossible, or of less or no value to the one entitled to performance." *Tippett v. Hart*, 497 S.W.2d 606, 610 (Tex. Civ. App. 1973), *writ refused NRE*, 501 S.W.2d 874 (Tex. 1973).

Here, the facts alleged by Armadillo in their second amended complaint are distinguishable. In both *Staton* and *Zhejiang*, neither of the plaintiffs alleged any specific party with whom they had a contractual relationship with. *See Staton*, 2009 WL 4016117, at *5; *Zhejiang Med.*, 2012 WL 12893418, at *4. Unlike the plaintiffs in *Staton* and *Zhejiang*, Armadillo specifically named four separate retailers whom it allegedly engaged in contractual relationships with to sell merchandise: Carlino Guitars, Retail Solutions, Sam Ash, and Musician's Friend. Armadillo further alleged that these retailers stopped "ordering and/or selling Armadillo's guitars, refuse[d] to renew their contracts with Armadillo, or remove[d] Armadillo's guitars from their inventory, and/or refrain[ed] from or delay[ed] in fulfilling orders" (Dkt. #77). Armadillo

maintains that this was a result of the letters sent out by Gibson to Carlino Guitars and these other Retailers and that Gibson was aware that by sending out these letters they would cause substantial harm to the contractual relationship between Armadillo and these Retailers.

Gibson maintains, however, that the counterclaim should still be dismissed because Armadillo did not sufficiently plead that Gibson "took an active part in persuading a party to a contract to breach it." In *Davis v. HydPro*, the court held that "it is only necessary that there to be some act of interference or persuading a party to breach" on the part of the defendant. 839 S.W.2d 137, 139 (Tex. App. 1992), *writ denied* (Mar. 24, 1993) (quoting *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 803 (Tex. App. 1987)). The *Davis* court reversed the holding that there was tortious interference because there had been no contact between the defendant and the breaching party before the breach of the contract. *Id.* at 140. This differs from the present case. Armadillo has alleged not only that Gibson contacted the parties with whom Armadillo had contracts with before the parties breached, but also alleged that Gibson demanded these Retailers both "remove Armadillo's guitars from their websites and/or stores" and "that the dealers stop their business dealings with Armadillo" (Dkt. #77).

These allegations, when accepted as true, are sufficient to support the claim of tortious interference with existing contracts.

### B. Tortious Interference with Prospective Business Relations

Gibson argues that it is entitled to a dismissal of the seventh counterclaim for tortious interference with a prospective business relation because Armadillo has failed to allege an independent tortious act by Gibson. The court disagrees. To establish a claim of tortious interference with prospective business relations a party must allege: (1) a reasonable probability that the plaintiff would have entered into a contractual or business relationship with a third-party;

(2) the defendant committed an independently tortious or unlawful act that prevented the relationship from being formed; (3) the defendant's act was committed with a conscious desire to prevent formation of the relationship; and (4) actual harm or damage resulted from the defendant's interference. *See Zhejiang Med.*, 2012 WL 12893418, at *4. Specifically, the tortious act must be a violation of a state law and not a federal law. *See PPD Enters.,* LLC *v. Stryker Corp.*, 2017 WL 4950064, at *3–4 (S.D. Tex. 2017). In Texas, tortious interference with existing contracts qualifies as an independently tortious act of interference for the purposes of establishing interference with prospective business relations. *See L.G. Motorsports, Inc. v. NGMCO, Inc*., 2012 WL 718603, at *9 (E.D. Tex. Mar. 6, 2012).

Armadillo is relying on its sixth counterclaim as the alleged independently tortious act by Gibson. Armadillo adequately pleaded its tortious interference with existing contracts claim. Finally, Armadillo adequately pleaded that "Gibson interfered with and prevented Armadillo's reasonably anticipated future contracts and business relations by engaging in the independently tortious act of intentional interference with Armadillo's existing contracts and business relations" (Dkt. #77). Therefore, these allegations, when taken as true, are sufficient to support the tortious interference with prospective business relations claim.

### C. Privilege or Justification

Gibson argues in the alternative that its alleged conduct was privileged or justified because it has a duty, as a trademark owner, to enforce its trademark rights. The court, at this juncture, is unpersuaded.

"The justification defense can be based on the exercise of either (1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 80 (Tex. 2000).

"The law imposes on trademark owners the duty to be pro-active and to police the relevant market for infringers." *See* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:91 (5th ed.). "The right to send infringement letters is limited. A trademark owner may not send infringement letters which contain false statements, or which are issued in bad faith." *Heinz v. Frank Lloyd Wright Found.*, 762 F. Supp. 804, 80708 (N.D. Ill. 1991). For example, in *Entertainment Finance Group., Inc. (EFG) v. NWAN, Inc.*, the plaintiff's "complaint state[d] that [the defendant] sent letters claiming that the use of the disputed mark constitutes trademark infringement even though [the defendant] knew that such claims were false." 2015 WL 12743627, at *2 (N.D. Tex. 2015). The *EFG* court held that these allegations, when taken as true, "do not establish that [the defendant's] actions were based on its legal rights or its good-faith claim to a legal right." *Id.* The court clarified that the party claiming the affirmative defense of justification maintains the burden of proving that defense. *Id.*

Here, Armadillo specifically pleaded that Gibson sent the Dealer Letter with the knowledge that the accusations contained within it were baseless. Armadillo's allegations, when taken as true, do not establish that Gibson's actions were based on a legal right. As the court instructed in *EFG*, Gibson has the burden to prove their affirmative defense. *Id*. As such, Gibson is not entitled to dismissal on these grounds.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Dismissal of the Sixth and Seventh Counterclaims (Dkt. #87) is hereby **DENIED**.

**SIGNED this 24th day of June, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE