# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GIBSON BRANDS, INC. | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No.  4:19-CV-00358 |
| | § | Judge Mazzant |
| ARMADILLO DISTRIBUTION | § | |
| ENTERPRISES, INC.; CONCORDIA | § | |
| INVESTMENT PARTNERS, LLC. | § | |
| *Defendants.* | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Gibson Brand, Inc.'s Motion to Strike Allegations in Armadillo Distribution Enterprises, Inc. Counterclaims and Affirmative Defenses (Dkt. #88) and Gibson Brand, Inc.'s Motion to Strike Allegations in Concordia Investment Partners, LLC. Counterclaims and Affirmative Defenses (Dkt. #93).  Having considered the motions and the relevant pleadings, the Court finds that Plaintiff's Motions should be **DENIED in part**.

## BACKGROUND

Plaintiff Gibson Brands, Inc. ("Gibson") accuses Armadillo Distribution Enterprises, Inc. ("Armadillo") and Armadillo's investment licenser, Concordia Investment Partners, Inc., ("Concordia") (collectively, "Defendants") of counterfeiting seven Gibson trademarks (Dkt. #74). The Court granted Gibson's Motion to Amend its Second Amended Complaint ("SAC") on December 2, 2019 (Dkt. #75).  In Plaintiff's Second Amended Complaint, Gibson alleges Defendants copied the "Flying V Body Shape" Trademark (U.S. Reg. No. 2051790), "Explorer Body Shape" Trademark (Reg. No. 2053805), "SG Body Shape" Trademark (U.S. Reg. No. 2215791), "Dove Wing Headstock" Trademark (U.S. Reg. No. 1020485), "HUMMINGBIRD" Trademark (U.S. Reg. No. 1931670), "FLYING V" Trademark (U.S. Reg. No. 1216644), and

"MODERNE" Trademark (U.S. Reg. No. 3588609) (Dkt. #74) (collectively, "Gibson Trademarks"). In its SAC, Gibson claims Defendants are, or have been, advertising "Unauthorized Products" bearing the Gibson Trademarks through websites, distributors, and catalogs in violation of the Lanham Act (Dkt. #74).

On December 16, 2019, Armadillo filed its Answer to Gibson's Second Amended Complaint, Affirmative Defenses, And Counterclaims ("Armadillo's Answer") (Dkt. #77). On December 16, 2019, Concordia filed its Answer to Gibson's Second Amended Complaint, Affirmative Defenses, And Counterclaims ("Concordia's Answer") (collectively, "Answers") (Dkt. #92). Attached to the Answers is Exhibit A, a 2019 decision ("EUIPO Decision") from the European Union Intellectual Property Office ("EUIPO") (Dkt. #77) (Dkt. #92). The EUIPO Decision denies Gibson's trademark application on the premise that the mark was generic (Dkt. #77) (Dkt. #92). In its Answers, Defendants assert the affirmative defense of acquiescence, the affirmative defense of mere descriptiveness, and the affirmative defense of trademark invalidity (Dkt. #77) (Dkt. #92). In reference to its acquiescence defense, Defendants allege that "Gibson sat on its purported rights and failed to object" to the use of Gibson's Trademarks—trademarks that had been "prominently used and promoted for years and, in some instances, decades[]" (Dkt. #77) (Dkt. #92). Defendants maintain that "due to Gibson's excessive delay, [Defendants] suffered substantial economic…and evidentiary prejudice[]" (Dkt. #77) (Dkt. #92).

On December 30, 2019, Gibson filed a Motion to Strike Allegations in Armadillo's Second Amended Counterclaims and Third (acquiescence), Fourth (mere descriptiveness), and Fifth (trademark invalidity) Affirmative Defenses (Dkt. #88). On January 6, 2020, Gibson filed a Motion to Strike Allegations in Concordia's Counterclaims and Second (acquiescence), Third (mere descriptiveness), and Fourth (trademark invalidity) Affirmative Defenses (Dkt. #93). In

both of its motions, Gibson purports that the EUIPO Decision is irrelevant, maintaining that the issues in this case pertain to United States trademark law under the Lanham Act and state law, not the laws of the European Union ("EU") (Dkt. #88) (Dkt. #93).   Further, Gibson argues that Defendants did not allege the first two elements of acquiescence: (1) Gibson made a representation, or (2) that Defendants relied on that representation (Dkt. #88) (Dkt. #93).   Gibson argues that Armadillo's Fourth and Fifth Affirmative Defenses are not affirmative defenses.   Rather, Gibson claims the Fourth and Fifth Affirmative Defenses simply negate elements of Gibson's prima facie case, and its presence in the pleadings are redundant (Dkt. #88).   Gibson makes the same claims concerning Concordia's Third and Fourth Affirmative Defenses.   Gibson claims the Third and Fourth Affirmative Defenses are not affirmative defenses, but instead, that they simply negate elements of Gibson's prima facie case, and their presence in the pleadings are redundant (Dkt. #93).

Armadillo filed its Opposition to Gibson's Motion to Strike Allegations in Armadillo's Counterclaims and Mere Descriptiveness, Trademark Invalidity, and Acquiescence Affirmative Defenses on January 1, 2020 (Dkt. #95).   Concordia filed its Opposition to Gibson's Motion to Strike Allegations in Armadillo's Counterclaims and Mere Descriptiveness, Trademark Invalidity, and Acquiescence Affirmative Defenses on January 21, 2020 (Dkt. #104).   Defendants both argue that Gibson is mistaken in its understanding of when a foreign decision is relevant to an American case (Dkt. #95) (Dkt. #104).   Defendants maintain that a foreign decision is admissible when it is "competent evidence of a relevant fact" (Dkt. #95) (Dkt #104).   In relation to its acquiescence defense, Defendants argue that they have adequately pleaded each element, either expressly or impliedly, and that Gibson has been given "fair notice" (Dkt. #95) (Dkt. #104).   Specifically, Defendants point out that mere silence is sufficient to establish the first element of an acquiescence

defense and they need not show affirmative action on Gibson's part (Dkt. #95) (Dkt. #104). Finally, Defendants counter that the mere descriptiveness and trademark validity defenses are often allowed in trademark infringement cases and its admission causes no prejudice to Gibson (Dkt. #95) (Dkt. #104).

Gibson filed its Reply Brief in Support of Its Motion to Strike Allegations in Armadillo's Counterclaims and Acquiescence Affirmative Defense on January 17, 2020 (Dkt. #99).  Gibson filed its Reply Brief in Support of Its Motion to Strike Allegations in Concordia's Counterclaims and Acquiescence Affirmative Defense on January 28, 2020 (Dkt. #114).  Gibson further purports that Defendants are seeking to admit the foreign decision as a means to establish a right to Gibson's Trademarks within the United States.  As such, they do not fit into the exceptions that would allow for a foreign decision to be admitted (Dkt. #99) (Dkt. #114).  Moreover, Gibson maintains that an acquiescence defense cannot be established through mere silence—there must be active consent to establish assurances (Dkt. #99) (Dkt. #114).

Armadillo filed its Sur-Reply in Opposition to Gibson's Motion to Strike Allegations in Armadillo's Counterclaims and Acquiescence, Mere Descriptiveness, and Trademark Invalidity, Affirmative Defenses on January 24, 2020 (Dkt. #107).  Concordia filed its Sur-Reply in Opposition to Gibson's Motion to Strike Allegations in Concordia's Counterclaims and Acquiescence, Mere Descriptiveness, and Trademark Invalidity, Affirmative Defenses on February 4, 2020 (Dkt. #117).

## LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure provides "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  The Court has the authority to act on its own or pursuant to a "motion made

by a party either before responding to the pleading or, if a response is not allowed, within 21 days

after being served with the pleading." FED. R. CIV. P. 12(f)(1–2).  The Fifth Circuit has stated that

motions to strike are generally disfavored.  *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale

Shipyards*, 677 F.2d 1045, 1058 (5th Cir. 1982).  They are viewed with disfavor and infrequently

granted, both because striking portions of pleadings is a drastic remedy and because it is often

sought by a movant simply as a dilatory tactic.  *See Bailey Lumber & Supply Co. v. Georgia-

Pacific Corp.*, 2010 WL 1141133, at *4–5 (S.D. Miss. Mar. 19, 2010) (citing *FDIC v. Niblo*, 821

F. Supp. 441 (N.D. Tex. 1993)).  Although motions to strike are disfavored and infrequently

granted, striking certain allegations can be appropriate when they have no possible relation to the

controversy and may cause prejudice to one of the parties.  *Jefferson Parish Consol. Garbage Dist.

No. 1 v. Waste Mgmt. of La.*, 2010 WL 1731204, at *5 (E.D. La. Apr. 28, 2010) (citing *Boreri v.

Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985); *Berry v. Lee*, 428 F. Supp. 2d 546, 563 (N.D. Tex.

2006); *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 401 (E.D. Pa. 2002)).

The Court possesses considerable discretion in ruling on a motion to strike.  *Bailey*, 2010 WL

1141133, at *4–5 (citing *Niblo*, 821 F. Supp. at 449).

## ANALYSIS

Gibson presents the Court with Gibson's Motion to Strike Allegations in Armadillo's

Counterclaims and Affirmative Defenses (Dkt. #88).  Gibson also presents the Court with Gibson's

Motion to Strike Allegations in Concordia's Counterclaims and Affirmative Defenses (Dkt. #93).

The Court finds that both Motions should be denied.

### A.  European Union Intellectual Property Office Decision

Gibson argues that Defendants' allegations and documentation pertaining to the EUIPO

are irrelevant.  The Court disagrees.

5

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters. Motions to strike are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *McInerney*, 244 F. Supp. 2d at 402.  "When trademark rights within the United States are being litigated in an American court, the decisions of foreign courts concerning the respective trademark rights of the parties are irrelevant and inadmissible." *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir. 1985) (internal citation omitted).  "Foreign use does not create enforceable trademark rights in the United States, nor can it establish an equitable defense against US trademark rights." *Id.*  When a foreign decision, however, "is competent evidence of a relevant fact[,]" then it can "form the basis of admissible evidence[.]" *Otokoyama Co. v. Wine of Japan Imp., Inc.*, 175 F.3d 266, 273 (2d Cir. 1999).  But, if the only purpose of offering the foreign decision as evidence is to establish whether "a litigant has been awarded or denied rights over a mark in a foreign country" then it should not be admitted.  *Id.*

When a foreign decision is presented to provide a conclusion on the rights to a mark, it is inadmissible.  *Fuji*, 754 F.2d 591, 599.  In *Fuji*, evidence was produced concerning the trademark rights gained in Japan by the defendant for the mark in dispute.  *Id.* at 593.  On appeal though, the admittance of this evidence was found to be erroneous.  *Id.* at 599.  The *Fuji* Court held that a claimant's rights to a trademark in the United States cannot be established by a foreign entity determining the claimant to have those rights over the mark.  *Id.*  *Fuji*, however, is distinguishable. Here, Defendants do not wish to use the foreign entity's decision to establish that same right within

the United States, but instead to disprove allegations made by Gibson.  The purpose of the foreign decision in this case simply differs.

      A review of two competing decisions clarifies this divide in jurisprudence. When a foreign decision is presented as evidence of a relevant fact, it is admissible.  *Otokoyama*, 175 F.3d 266, 273.  First, in *Cointreau Corp. v. Pura Vida Tequila*, the court denied admission of evidence pertaining to a foreign decision on trademark rights. No. 3:12-CV-02257-N, 2012 WL 12886422, at *8 (N.D. Tex. Oct. 2, 2012), *order clarified*, No. 3:12-CV-02257-N, 2013 WL 12125990 (N.D. Tex. Jan. 9, 2013).  The *Cointreau* Court held that admitting such a decision would be to apply "certain facts [of the American case] to Mexican legal standards[.]" *Id.*  The *Cointreau* Court specified that admission of this foreign decision was denied because it "would not provide evidence of a relevant fact to the case at hand[.]" *Id.*  In *Otokoyama*, however, the court, allowed admission of the foreign decision. *Otokoyama*, 175 F.3d 266, 273.  Following the rationale used in *Cointreau*, the *Otokoyama* Court reasoned that the foreign decision was not being used to establish a right in the United States., but instead to provide "competent evidence of a relevant fact[.]" *Id.*

      The facts of this case most closely align with those of *Otokoyama.*  In *Otokoyama*, the decision of the foreign entity was submitted "to prove the fact assertedly found by the [foreign entity] that the word otokoyama in Japanese refers to a type or class of sake." *Id.*  The foreign decision was not submitted as evidence that there were, or were not, trademark rights granted in a foreign jurisdiction*. Id.*  Here, Gibson alleges that: (1) its instruments have gained worldwide recognition and reputation; (2) it has authorized dealers in every state in the United States and numerous countries around the world; (3) it has famous trademarks that are widely and favorably known by consumers in Texas, in the United States, and elsewhere; and, (4) its trademarks have

7

come to symbolize the goodwill of its business in Texas, in the United States, nationwide, and elsewhere.  In defense, Defendants are offering evidence found in the EUIPO decision as proof that the claims of "worldwide" fame are not true/as extensive as Gibson alleges.  At this stage, the allegations and documents pertaining to the EUIPO could form the basis for relevant evidence and are not so irrelevant that they should be excluded.  Gibson opened the door into how extensive its brand's "fame" is around the world.  Defendants have the right to dispute those allegations.

As long as Defendants use these documents to offer evidence that Gibson does not have as extensive worldwide fame as it claims and not as to the final conclusion on its United States trademark rights, then the information about the EUIPO is, at this juncture, admissible.[1]

## B. Acquiescence

Gibson argues that Defendants did not allege the first two elements of an acquiescence defense and therefore Gibson did not have "fair notice" of the defense.  Specifically, there is disagreement as to whether silence is sufficient to establish assurances by Gibson that Defendants could use the mark.  The Court concludes that silence is not sufficient to establish an acquiescence defense, therefore the Defendants did not sufficiently plead the defense.  The Court will, however, grant Defendants leave to amend both pleadings.

"A motion to strike should be granted only when the moving party shows that the inclusion of the disputed claims or defenses would cause it prejudice."  *Chase Med., LP v. CHF Techs., Inc.*, 2005 WL 1638976, at *1 (N.D. Tex. July 11, 2005) (citing *U.S. v. Cushman & Wakefield, Inc.*, 275 F. Supp. 2d 763, 767–68 (N.D. Tex. 2002)).  "If the moving party does not show prejudice, the Court should 'defer action on the motion and leave the sufficiency of the allegations for determination on the merits.'"  *Id.*  Generally, a party can show prejudice when they are not given

---

[1] This is a preliminary decision and, ultimately, the Exhibit may not be admissible.

"fair notice."  In the case of an affirmative defense, the defense "must be pled with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense being advanced." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).  "In some cases, merely pleading the name of the affirmative defense will suffice."  *United States Ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-461, 2016 WL 3031713, at *3 (E.D. Tex. May 25, 2016).

The acquiescence defense requires a defendant to establish: (1) assurances by the plaintiff that the defendant could use the mark, (2) reliance by the defendant upon those representations, and (3) undue prejudice.  *Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290, 294 (5th Cir. 2015).  "[A]cquiescence involves the plaintiff's *implicit* or *explicit* assurances to the defendant which induces reliance by the defendant."  *Id.* at 295 (emphasis added) (citing *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145 (5th Cir. 1985)).  The use of the word "implicit," however, is misleading.  According to McCarthy on Trademarks, it was common for older cases to confuse elements of a laches defense with an acquiescence defense.  MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:41 (5th ed.).  The modern definition of acquiescence reserves the defense only for those situations where, by affirmative word or action, the trademark owner conveys its implied consent to the use of the mark.  *Id.*

Each case cited by Defendants to support the proposition that silence alone, for the purpose of an acquiescence defense, is sufficient to establish the assurance element leads back to *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188 (5th Cir. 1998).  The *Elvis* Court, however, never held that mere silence is sufficient.  *See id.*  Instead, the *Elvis* Court, when it discusses a "period of silence relevant to acquiescence[,]" expands on the language of *Conan*.  *Id.* at 206.  *Conan*, makes no reference to silence.  752 F.2d at 145.  It is likely that the phrasing "implicit or explicit assurances" from *Conan* was misconstrued in the manner § 31:41 of McCarthy on Trademarks

9

warns of.  Defendants maintain, however, that *Elvis* is good precedent because *Pennzoil*, one of the most recent Fifth Circuit cases on point, does not expressly reject the discussion of silence within *Elvis*.   *See Pennzoil*, 779 F.3d 290.  But, the *Pennzoil* Court expressly states that acquiescence is "where the markholder affirmatively represents to another that it may use its mark[.]"  *Id.* at 290.  Moreover, *Pennzoil* is concerned with establishing the role that undue prejudice plays in acquiescence, not the role that silence plays.  *See id.* at 295.  To be sure, there is no clear Fifth Circuit precedent on the matter of mere silence being sufficient to establish assurances, but the Fifth Circuit does state that it believes its approach "fits comfortably within the spectrum of approaches taken by [its] fellow appellate courts."  *Id.* at 296.  Each of the Fifth Circuit's sister circuits require more than silence to establish assurances.[2]

Here, Defendants allege that: (1) Gibson sat on its purported rights and failed to object to their use of the disputed marks; and (2) it was Gibson's excessive delay that caused them to suffer substantial economic and evidentiary prejudice.  Based on these allegations made by Defendants in its affirmative defenses, Defendants appear to rely on Gibson's silence to establish the assurance

---

[2] The Ninth Circuit held that "[t]he elements of a *prima facie* case for acquiescence are as follows . . . the senior user actively represented that it would not assert a right or a claim . . . . "  *Id.* at 989.  The court went on to state that "prejudice in the context of acquiescence inherently must involve reliance on the senior user's affirmative act or deed."  *Id.* at 990.

The Second and Eleventh Circuits have both required active representations from the trademark holder. *See SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996) ("The defense [of acquiescence] requires . . . the senior user actively represented that it would not assert a right or a claim . . . ."); *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 395 (2d Cir. 2002)(same).

The Fourth, Sixth, and Tenth Circuits have also required more than inaction on the part of the trademark holder. *See, Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 547–48 (10th Cir. 2000) ("Acquiescence requires proof even more demanding than a showing (which would suffice for a laches defense) that the party seeking to enforce its trademark rights has unreasonably delayed."); *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 569 (6th Cir. 2000) ("Although the doctrines of acquiescence and laches, in the context of trademark law, both connote consent by the owner to an infringing use of his mark, acquiescence implies active consent, while laches implies a merely passive consent." (internal citations omitted)); *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1046 (4th Cir. 1984) ("Acquiescence may be inferred from the trademark owner's affirmative conduct toward the defendant.").

element of their acquiescence defense.  Defendants' acquiescence defense, as currently pleaded, is insufficient.

Defendants have asked, in the alternative, for leave to amend the defense of acquiescence within the pleadings.  Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave when justice so requires[.]"  The Court will allow Defendants leave to amend the pleadings and properly allege the facts necessary for an acquiescence defense.

## C.  Mere Descriptiveness and Trademark Invalidity

Gibson argues that Defendants' mere descriptiveness and trademark invalidity defenses should be stricken because they are redundant.  Defendants defenses are redundant, according to Gibson, because the defenses are essentially attempting to negate portions of the first element of Gibson's prima facie case.  Gibson concludes that the mere descriptiveness and trademark invalidity defenses are not affirmative defenses and their presence in the pleading is superfluous. The Court is unpersuaded.

As previously stated, motions to strike are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties."  *McInerney*, 244 F. Supp. 2d at 402.  The general hesitation in granting a motion to strike allegations encompasses affirmative defenses, as they aide the opposing party in determining a defendant's strategy.  *See Miller v. City of E. Mountain*, 2018 WL 4390783, at *2 (E.D. Tex. Aug. 29, 2018), *report and recommendation adopted*, 2018 WL 4386008 (E.D. Tex. Sept. 14, 2018). "An affirmative defense, under the meaning of FED. R. CIV. P. 8(c), is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven."  *Roberge v. Hannah Marine Corp.*, 124 F.3d 199, 201 (6th Cir. 1997).  In a scenario where the defendant has pleaded a defense they otherwise would

11

not have to, the "plaintiff has arguably been given the advantage of a better understanding of the [defendant's] defense strategy." *Miller*, WL 4390783, at *2.

For a trademark infringement claim, a plaintiff is required to prove "(1) ownership of a legally protected mark and (2) likelihood of confusion created by the infringing mark." *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018).  Here, Defendants have pleaded, as affirmative defenses, mere descriptiveness and trademark validity.  At their core, these defenses attack portions of Gibson's prima facie case.  Even though Defendants have pleaded these as affirmative defenses, that in itself is not so prejudicial against Gibson that the defenses should be struck from the pleadings.  As *Miller* pointed out, Defendants' actions arguably give Gibson an advantage that it did not previously have.  *Miller*, WL 4390783, at *2.  For the above reasons, the court will not strike Defendants' affirmative defenses of mere descriptiveness and trademark validity.

## CONCLUSION

It is therefore **ORDERED** that Gibson's Motion to Strike Allegations in Armadillo's. Counterclaims and Affirmative Defenses (Dkt. #88) and Gibson's Motion to Strike Allegations in Concordia's Counterclaims and Affirmative Defenses (Dkt. #93) are hereby **DENIED in part**.

It is further **ORDERED** that Defendants are granted leave to amend the defense of acquiescence within their pleadings within fourteen (14) days of this Order.

SIGNED this 24th day of June, 2020.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE