# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| GIBSON BRANDS, INC.<br>　　*Plaintiff,*<br>v.<br><br>ARMADILLO DISTRIBUTION<br>ENTERPRISES, INC.; CONCORDIA<br>INVESTMENT PARTNERS, LLC.<br>　　*Defendants.* | §<br>§<br>§　Civil Action No. 4:19-CV-00358<br>§　Judge Mazzant<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Armadillo Distribution Enterprises, Inc.'s Motion to Strike Gibson Brands, Inc.'s Affirmative Defenses of Laches and Estoppel (Dkt. #96) and Concordia Investment Partners, LLC's Motion to Strike Gibson Brands, Inc.'s Affirmative Defenses of Laches and Estoppel (Dkt. #112). Having considered the motions and the relevant pleadings, the Court finds that Defendants' Motions should be **DENIED**.

## BACKGROUND

Plaintiff Gibson Brands, Inc. ("Gibson") accuses Armadillo Distribution Enterprises, Inc. ("Armadillo") and Armadillo's investment licenser, Concordia Investment Partners, Inc. ("Concordia") (collectively, "Defendants"), of counterfeiting seven Gibson trademarks (Dkt. #74). The Court granted Gibson's Motion to Amend its Second Amended Complaint on December 2, 2019 (Dkt. #75). In Plaintiff's Amended Complaint, Gibson alleges Defendants copied the "Flying V Body Shape" Trademark (U.S. Reg. No. 2051790), "Explorer Body Shape" Trademark (U.S. Reg. No. 2053805), "SG Body Shape" Trademark (U.S. Reg. No. 2215791), "Dove Wing Headstock" Trademark (U.S. Reg. No. 1020485), "HUMMINGBIRD" Trademark (U.S. Reg. No. 1931670), "FLYING V" Trademark (U.S. Reg. No. 1216644), and "MODERNE" Trademark

(U.S. Reg. No. 3588609) (collectively, "Gibson Trademarks") (Dkt. #74). In its Amended Complaint, Gibson claims Defendants are, or have been, advertising "Unauthorized Products" bearing the Gibson Trademarks through websites, distributors, and catalogs in violation of the Lanham Act (Dkt. #74).

On December 16, 2019, Armadillo filed its Answer to Gibson's Second Amended Complaint, Affirmative Defenses, and Counterclaims (Dkt. #77). Gibson responded, on December 30, 2019, by filing its Partial Answer and Affirmative Defenses (Dkt. #85). On December 16, 2019, Concordia filed its Answer to Gibson's Second Amended Complaint, Affirmative Defenses, and Counterclaims (Dkt. #80). Concordia and Armadillo both plead counterclaims for cancellation of Gibson's "Flying V," "Explorer," "ES-335," and "SG" trademark registrations on the grounds that those shapes are commonplace and generic (Dkt. #77; Dkt. #80). Gibson responded, on January 6, 2020, by filing its Answer and Affirmative Defenses (Dkt. #92). In Gibson's Answers to Defendants, Gibson pleads the affirmative defenses of laches and estoppel for Defendants' counterclaims for cancellation (Dkt. #85); (Dkt. #92). Gibson asserts that Defendants have unreasonably delayed "in asserting that the Gibson Trademarks are generic" (Dkt. #85; Dkt. #92).

On January 1, 2020, Armadillo filed its Motion to Strike Gibson's Affirmative Defenses of Laches and Estoppel (Dkt. #96). On January 27, 2020, Concordia filed its Motion to Strike Gibson's Affirmative Defenses of Laches and Estoppel (Dkt. #112). Defendants assert that the defenses of laches and estoppel are invalid as a matter of law against genericness claims under § 1064(3) of the Lanham Act because the "at any time" language acts as a bar to equitable defenses (Dkt. #96; Dkt. #112).

Gibson replied to Armadillo's Motion on January 24, 2020 by filing its Opposition to Armadillo's Motion to Strike Gibson's Affirmative Defenses of Laches and Estoppel (Dkt. #105). On February 10, 2020, Gibson also replied to Concordia's Motion when it filed its Opposition to Concordia's Motion to Strike Gibson's Affirmative Defenses of Laches and Estoppel (Dkt. #124). Gibson argues that Defendants are incorrect in their assertion that laches and estoppel are invalid as a matter of law against genericness claims (Dkt. #105; Dkt. #124). Specifically, Gibson argues that to interpret § 1064(3) as invalidating laches as a matter of law would be to negate § 1069 of the Lanham Act (Dkt. #105; Dkt. #124). Moreover, Gibson proffers that the disputed language—at any time—found within § 1064 is in reference to statute of limitations and not in reference to equitable defenses (Dkt. #105; Dkt. #124).

On February 6, 2020, Armadillo filed its Reply in Support of Its Motion to Strike Gibson's Affirmative Defenses of Laches and Estoppel (Dkt. #120). On February 14, 2020, Concordia filed its Reply in Support of Its Motion to Strike Gibson's Affirmative Defenses of Laches and Estoppel (Dkt. #126). Defendants argue that the cases cited by Gibson do not comport with the current fact pattern, as none of them are applying laches or estoppel to genericness claims (Dkt. #120) (Dkt. #126).

On February 12, 2020, Gibson filed its Sur-Reply in Opposition to Armadillo's Motion to Strike Gibson's Affirmative Defenses of Laches and Estoppel (Dkt. #125). On February 21, 2020, Gibson filed its Sur-Reply in Opposition to Concordia's Motion to Strike Gibson's Affirmative Defenses of Laches and Estoppel (Dkt. #127).

## LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure provides "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

FED. R. CIV. P. 12(f). The Court has the authority to act on its own or pursuant to a "motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading. FED. R. CIV. P. 12(f)(1)–(2). The Fifth Circuit has stated that motions to strike are generally disfavored. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1058 (5th Cir. 1982). They are viewed with disfavor and infrequently granted, both because striking portions of pleadings is a drastic remedy and because it is often sought by a movant simply as a dilatory tactic. *See Bailey Lumber & Supply Co. v. Georgia-Pacific Corp.*, 2010 WL 1141133, at *4–5 (S.D. Miss. Mar. 19, 2010) (citing *FDIC v. Niblo*, 821 F. Supp. 441 (N.D. Tex. 1993)). Although motions to strike are disfavored and infrequently granted, striking certain allegations can be appropriate when they have no possible relation to the controversy and may cause prejudice to one of the parties. *Jefferson Par. Consol. Garbage Dist. No. 1 v. Waste Mgmt. of La.*, 2010 WL 1731204, at *5 (E.D. La. Apr. 28, 2010) (citing *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985); *Berry v. Lee*, 428 F. Supp. 2d 546, 563 (N.D. Tex. 2006); *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 401 (E.D. Pa. 2002)). The Court possesses considerable discretion in ruling on a motion to strike. *Bailey*, 2010 WL 1141133, at *4–5 (citing *Niblo*, 821 F. Supp. at 449).

## ANALYSIS

The Court is presented with Armadillo's Motion to Strike Gibson's Affirmative Defenses of Laches and Estoppel (Dkt. #96) and Concordia's Motion to Strike Gibson's Affirmative Defenses of Laches and Estoppel (Dkt. #112). According to Defendants, the language "at any time" found in § 1064(3) of the Lanham Act expressly prohibits any equitable defense being used in a cancellation petition based on a mark's genericness. Gibson counters that this language was not meant as a barrier to equitable defenses but instead the language demonstrates that § 1064(3),

unlike the first two subsections, is not subject to a statute of limitations. Defendants nonetheless assert that these affirmative defenses should be struck from the pleadings. The Court is unconvinced by Defendants arguments.

Under the Lanham Act, a court is allowed to "order the cancellation of registrations, in whole or in part" for "any action [before the court] involving a registered mark." 15 U.S.C. § 1119. There is dispute among the Trademark Trial and Appeal Board ("TTAB") and circuit courts as to how equitable defenses, such as laches and estoppel, apply to registered mark actions brought under § 1064(3). The Fifth Circuit, in particular, has no case law on the matter—making the application of equitable defenses to § 1064(3) an open question.

When interpreting a statute, the Court always begins with the text of the statute. *See Thomas v. Reeves*, 961 F.3d 800, 814 (5th Cir. 2020); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 335–36 (5th Cir. 2010). In interpreting the text of the statute, the Court looks to the statute as a whole, *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 288 (5th Cir. 2008) (citing *United States v. Ridgeway*, 489 F.3d 732, 734 (5th Cir. 2007)), and seeks to enforce the plain meaning of the text. *U.S. Nat. Bank of Oregon v. Ind. Ins. Agents of America, Inc.*, 508 U.S. 439, 454 (1993).

The Lanham Act, 15 U.S.C. § 1064, provides, in relevant part:

A petition to cancel a registration of a mark, stating the grounds relied upon, may, upon payment of the prescribed fee, be filed as follows by any person who believes that he is or will be damaged, including as a result of a likelihood of dilution by blurring or dilution by tarnishment under section 1125(c) of this title, by the registration of a mark on the principal register established by this chapter, or under the Act of March 3, 1881, or the Act of February 20, 1905:

(**1**) *Within five years* from the date of the registration of the mark under this chapter.

(**2**) *Within five years* from the date of publication under section 1062(c) of this title of a mark registered under the Act of March 3, 1881, or the Act of February 20, 1905.

(**3**) *At any time* if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered, or is functional, or has been abandoned, or

>its registration was obtained fraudulently or contrary to the provisions of section 1054 of this title or of subsection (a), (b), or (c) of section 1052 of this title for a registration under this chapter, or contrary to similar prohibitory provisions of such prior Acts for a registration under such Acts, or if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used. If the registered mark becomes the generic name for less than all of the goods or services for which it is registered, a petition to cancel the registration for only those goods or services may be filed. A registered mark shall not be deemed to be the generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service. The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used.

(emphasis added). And the Lanham Act, 15 U.S.C. § 1069, provides, in relevant part: "In all *inter partes* proceedings equitable principles of laches, estoppel, and acquiescence, where applicable may be considered and applied."

While interpreting the language of § 1064(3) is a novel question for the Fifth Circuit, the Court is not without guidance in understanding the language. There are some circuit courts who have commented on the issue: the D.C., Federal, Ninth, and Third Circuits. After considering the parties' arguments and the courts' analyses, the Court finds the "at any time" language in § 1064(3) of the Lanhman Act does not act as a bar to equitable defenses. Of the circuit courts who have commented on this issue, three have reached the same conclusion as this Court—equitable defenses are not barred under § 1064(3) of the Lanham Act. Only one circuit court, the Third Circuit, has reached a contrary conclusion. To fully understand the Court's decision, it is necessary to discuss the relevant cases from each of these courts. The D.C. Circuit's analysis in *Pro-Football v. Harjo*, 415 F.3d 44 (D.C. Cir. 2005) aligns most closely with the facts of this case, so the Court will begin its discussion there.

6

**I.      The D.C., Federal, Ninth, and Third Circuits Have All Weighed in on the Issue**

   **a.**   *Pro-Football v. Harjo*

The D.C. Circuit in *Pro-Football* was presented with an issue almost identical to the issue before this Court: Whether the language of § 1064(3) acts as a barrier to equitable defenses in petitions to cancel a mark. *Id.* The plaintiffs, a group of Native Americans, petitioned to cancel the registration of six marks used by the Washington Redskins football team. *Id*. at 46. The defendant countered that this petition was blocked by laches. *Id.* After both the TTAB and a district court had expressly rejected laches as a defense, the issue came to the D.C. Circuit on appeal. *Id.* Much like in this case, the plaintiffs made the argument that "because § 1064(3) permits petitions alleging wrongful registration under § 1052(a) to be filed 'at any time,' laches is not a valid defense in cancellation proceedings." *Id.* at 48. The D.C. Circuit was unpersuaded by the plaintiffs' argument. *Id*.

The D.C. Circuit found that laches was a viable defense against § 1064(3), holding that "the words ['at any time'] have nothing to do with what equitable defenses may be available during the cancellation proceedings." *Id*. Rather, the use of "at any time" in § 1064(3), the D.C. Circuit went on, is a clarifying term in reference to the five-year limitation placed on §§ 1064(1) and (2). *See id.* If the language instead referred to a barring of laches, it "would make § 1069 [of the act], which explicitly permits consideration of laches and other equitable doctrines, meaningless as to cancellation petitions." *Id.* The D.C. Circuit chose to disagree with the Third Circuit's analysis of the language and joined the Federal Circuit in holding that "the statute does not bar the equitable defense of laches in response to § 1064(3) cancellation petitions." *Id.*

### b. *Bridgestone/Firestone Research, Inc. v. Auto Club de L'Oest de la France*

Four years prior to the D.C. Circuit's decision in *Pro-Football*, the Federal Circuit found a laches defense viable against a petition to cancel based on § 1052. *See Bridgestone/Firestone Rsch., Inc. v. Auto Club de L'Ouest de la Fr.*, 245 F.3d 1359 (Fed. Cir. 2001). Neither party raised the argument that the language in § 1064(3) acted as a bar to laches. *Id.* The Federal Circuit did, however, extensively analyze the defense of laches. *Id.* This analysis and the final holding are instructive on how this Court should proceed.

*Bridgestone* focused on a TTAB decision that rejected laches and granted a petition to cancel, despite a 27-year delay in filing the decision. *Id.* at 1360–61. The petition to cancel was based on § 1052(a) of the Lanham Act. Section 1052(a) is specified as being grounds for a petition to cancel under § 1064(3). *See* 15 U.S.C. § 1064 ("A petition to cancel a registration of a mark [] may [] be filed . . . [a]t any time if the registered mark . . . was obtained [] contrary to the provisions of section 1052 of this title[.]"). The Federal Circuit began its analysis by making it clear that, "by statute, the defense of laches is available in trademark proceedings." *Id.* at 1361; *see also* 15 U.S.C. § 1069. Whether laches was applicable to petitions to cancel, however, was not the bedrock of the Federal Circuit's analysis. *Id.* Rather, its focus was simply on whether the elements of laches had been met. The Federal Circuit held that *all* a party needed to prevail on a laches defense against a cancellation petition is: (1) undue/unreasonable delay by the plaintiff in asserting its rights; and (2) prejudice to the defendant resulting from the delay. *Id*. Ultimately, the Federal Circuit found that laches was a proper defense, reversing the decision of the TTAB and denying the petition to cancel. *Id.* at 1364.

### c. *Loglan Inst., Inc. v. Logical Language Grp., Inc.*

In 1992, almost 10 years before *Bridgestone*, the Federal Circuit discussed laches as a defense to a cancellation petition in *Loglan Inst., Inc. v. Logical Language Grp., Inc.*, 962 F.2d 1038 (Fed. Cir. 1992). Defendants proffer *Loglan* as a counter to *Bridgestone*. Specifically, Defendants use *Loglan* to show that the Federal Circuit held a petition to cancel is impervious to equitable defenses. The Court disagrees with this interpretation. The Federal Circuit's holding in *Loglan* does not stand for the proposition that equitable defenses are invalid against generic claims as a matter of law. Further, the *Loglan* decision comes a decade before *Bridgestone*, making *Bridgestone* the more recent precedent.

In affirming the decision to reject the equitable defenses, the Federal Circuit specifically held that "the Board must consider such defenses[,]" even if it does not ultimately apply them. *Id.* at 1042. The court relied on § 1069 and the "clear purpose of the Trademark Act" to reach its conclusion that equitable defenses cannot be uniformly dismissed. *See id. Loglan* cannot be used to show that laches is invalid as a matter of law, as Defendants claim, when the Federal Circuit specified that laches *must* be considered. *Id.*

### d. *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*

The most recent circuit case involving applying equitable defenses to § 1064(3) comes from the Ninth Circuit in 2018. In *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, the Ninth Circuit joined the D.C. and Federal Circuits in holding that laches and other equitable doctrines apply to § 1064 of the Lanham Act. 894 F.3d 1015, 1023–25 (9th Cir. 2018). The dispute in *Pinkette* focuses on § 1064(1); however, the Ninth Circuit fully discusses the entirety of § 1064 and how equitable defenses apply. *See id.*

Under § 1064(1) a petition to cancel may be brought within five years for anything "that would have prevented registration in the first place." *Id.* at 1021. Under § 1064(3) though, a petition to cancel may be brought *any time* for specific, enumerated reasons. *Id.* at 1023. In other words, subsection three is not bound by the five-year limitation subsection one and two are bound by. *Id.* The words chosen, when writing § 1064, clarify for the reader that even after five years, when the mark becomes incontestable, there are still means by which the mark may be cancelled. *Id.* The Ninth Circuit found that "nothing in [§] 1064 alters the straightforward application of [§] 1069 to permit laches as a defense to cancellation." *Id.*

### e. *Marshak v. Treadwell*

Finally, in the Third Circuit, the leading case is *Marshak v. Treadwell*, 240 F.3d 184 (3d Cir. 2001). There, the defendant argued that the language in § 1064(3) merely serves as an alert to parties that "the *right* to bring cancellation may arise 'at any time'" because some grounds for cancellation, such as genericness, may arise years after trademark registration. *Id.* at 194 (emphasis in original). In other words, there is no time bar based on a statute of limitations for these claims, but there may be a time bar based on laches. *Id.* The Third Circuit rejected this argument. On the contrary, the Third Circuit held that the language "at any time" found within § 1064(3) meant that actions brought under this section were not time-barred whatsoever, either by a statute of limitations or any equitable defenses such as laches. *Id.* at 193–94 & n.4. Simply put, the Third Circuit held that laches is not an allowable defense against § 1064(3). *Id.*

The holding in *Marshak* was partly based on a TTAB decision in *Harjo v. Pro Football Inc.*, 30 U.S.P.Q.2d 1828 (T.T.A.B. 1994). In *Harjo*, the TTAB found that the defenses of laches and estoppel were not available. *Id.* at 1831. Four years after *Marshak* was published though, the

TTAB's decision in *Harjo* concerning the application of laches was overruled by the D.C. Circuit when it held that laches was indeed a viable defense. *See Pro-Football*, 415 F.3d 44.

The Third Circuit also based its decision on an interpretation of the "at any time" language from a completely different section of an earlier version of the Lanham Act. *Marshak*, 240 F.3d at 193–94 n.4. This Court, however, believes it is telling that since the 1905 version of the Lanham Act the Act has been updated to include § 1069. 15 U.S.C. § 1069. Section 1069 permits the consideration of equitable principles in all *inter partes* proceedings and, where applicable, permits that these defenses be applied. *Id.* It is difficult to say that laches does not to apply to § 1064(3) when there is another section expressly saying that equitable defenses are to be considered. This brings the Court to the present matter.

II. **Equitable Defenses are Not Invalid as a Matter of Law in Relation to § 1064(3) of the Lanham Act.**

Here, Gibson's "Flying V," "Explorer," "ES-335," and "SG" trademarks were issued in 1997, 1997, 1996, and 1999 respectively. Defendants, however, did not petition for cancellation until 2019. Gibson asserts it was Defendants' delay of decades in bringing claims of genericness against Gibson that caused it to plead the affirmative defenses of laches and estoppel. Defendants claim this alleged delay was not a delay at all, as "it may take decades for a registered mark to become generic" and it is for that reason "a mark may be cancelled [for genericness] at 'any time'" (Dkt. #96; Dkt. #112). The Court disagrees with Defendants' assessment.

    a. **Laches is Not Merely Concerned with the Passage of Time, But with Reasonableness and Prejudice as Well.**

Defendants misunderstand the application of laches. "Laches is not . . . a mere matter of time, but rather turns on whether the party seeking relief 'delayed inexcusably or unreasonably in filing suit' in a way that was 'prejudicial' to the other party . . . ." *Pro-Football*, 415 F.3d at 49 (internal citations omitted). The defense of laches is mainly focused on the "reasonableness of the

delay . . . and the seriousness of the prejudice to the defendant," not any specific amount of time a defendant may have delayed. *Altech Controls Corp. v. E.I.L. Instruments, Inc.*, 33 F. Supp. 2d 546, 555 (S.D. Tex. 1998). What is more, whether and when a trademark has become generic is a factual issue. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (citing *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 n.12 (5th Cir. 1980)).

If the correct perspective on laches is combined with the reality that genericness is a question of fact, the two are able to coincide. Courts are capable of determining, based on the circumstances of each case, whether a party has inexcusably or unreasonably delayed in filing suit. An unreasonable delay, depending on the facts of each case, and when that specific trademark is determined to have become generic, could be two or even four decades after a trademark's filing. When viewing laches and estoppel through this lens, it is possible for these equitable defenses to coexist with the language "at any time" within the context of § 1064.

### b. Application of a Modifier to One Part of a Series Requires the Application to the Rest of the Series.

Defendants attempt to distinguish both *Pro-Football* and *Bridgestone*. Defendants argue that because these cases addressed whether laches applied to a cancellation petition based on § 1052(a) and not genericness, the analyses in *Pro-Football* and *Bridgestone* does not apply here. While it is true that the D.C. and Federal Circuits were not analyzing whether a cancellation petition brought on the grounds of genericness was susceptible to a laches defense, § 1064(3) is multi-faceted. *See* 15 U.S.C. § 1064. Section 1064(3) allows for more than one way in which a petition to cancel may be brought, including: (1) genericness; (2) abandonment; (3) fraudulent obtainment; (4) obtainment contrary to § 1054; (5) obtainment contrary to § 1052(a), (b), or (c); (6) obtainment contrary to any other similar prohibitory provision of prior Acts; or (7) misrepresentation. *Id.* Defendants argue that the language "at any time" should be interpreted to

12

apply differently to some parts of § 1064(3) than it does to others. The alleged disparity between these grounds for cancellation can be resolved through use of the canons of construction.

As previously noted, the Court must always begin with the text of the statute. *See Reeves*, 961 F.3d at 814. If it is unclear what the plain meaning of the text is, then the canons of construction must be consulted. *Id*. The series-qualifier canon stands for the proposition that "a modifier [] applies to an entire series of parallel terms." *Thomas v. Bryant*, 919 F.3d 298, 305 (5th Cir. 2019). The general rule for this canon is that "when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." *Reeves*, 961 F.3d at 812 (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 148 (2012)).

In this case, the modifier would be "at any time" and it would be applied to the list of grounds for cancellation that § 1064(3) provides. Based on the series-qualifier canon, "at any time" applies equally to grounds for cancellation due to genericness and grounds for cancellation due to § 1052. The argument that analysis of "at any time" in regard to one of these grounds is distinct from the analysis of "at any time" in regard to the others is misplaced. It would make little sense to say that laches applies to the first half of the sentence but not the second half.

c. **§ 1064(3) Cannot be Interpreted So As to Render § 1069 Inoperative.**

Furthering the argument that genericness claims are distinct from other grounds of cancellation, Defendants assert that the "narrow argument that laches and estoppel are invalid only as to genericness claims . . . [means] § 1069 does not change the result" that the language in § 1064 is a bar to laches (Dkt. #120; Dkt. #126). While this argument is already cut off at the knees by the Court's application of the series-qualifier canon to § 1064(3), it would also lead to the

13

transgression of another canon of construction. To interpret § 1064 in the way Defendants suggest would leave part of the Lanham Act rendered inoperative—something the Court declines to do.

The Supreme Court of the United States has held that "[an] elementary canon of construction [is that] a statute should be interpreted so as to not render one part inoperative . . . ." *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985). As already stated, to interpret § 1064 as a bar to equitable defenses "would make § 1069 [of the act], which *explicitly permits* consideration of laches and other equitable doctrines, *meaningless* as to cancellation petitions." *Pro-Football*, 415 F.3d at 48 (emphasis added). Allowing equitable defenses to apply to § 1064(3) maintains the integrity of the Act as a whole and thus allows § 1064 to fully comport with § 1069, rather than render it inoperative.

For the above reasons, the Court agrees with the holdings of the D.C., Federal, and Ninth Circuits that § 1064(3) of the Lanham Act is subject to equitable defenses, such as laches.[1] The Court will not strike Gibson's affirmative defenses of laches and estoppel from the pleadings. Defendants Motions are therefore denied.

## CONCLUSION

It is therefore **ORDERED** that Armadillo's Motion to Strike Gibson's Affirmative Defenses of Laches and Estoppel (Dkt. #96) and Concordia's Motion to Strike Gibson's Affirmative Defenses of Laches and Estoppel (Dkt. #112) are hereby **DENIED**.

**SIGNED this 24th day of July, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[1] Even if the Court's determination does not convince Defendants, the Court agrees with Gibson that striking affirmative defenses at this stage of the pleading is premature.