# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | §  | |
|---|---|---|
| GIBSON BRANDS, INC., | § | |
| | § | Civil Action No. 4:19-CV-00358 |
| v. | § | Judge Mazzant |
| | § | |
| ARMADILLO  DISTRIBUTION | § | |
| ENTERPRISES, INC.; CONCORDIA | § | |
| INVESTMENT PARTNERS, LLC, | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Gibson Brands, Inc.'s Motion to Strike New Expert Report (Dkt. #143). Having considered the Motion and briefing, the Court finds the Motion should be **DENIED**.

### BACKGROUND

On May 14, 2019, Plaintiff Gibson Brands, Inc. ("Gibson") sued Armadillo Distribution Enterprises, Inc. ("Armadillo") and Armadillo's investment licenser, Concordia Investment Partners, Inc. for trademark infringement (Dkt. #1). The issue before the Court is whether Defendants timely disclosed an expert report.

The deadlines for expert witness disclosures have been modified several times. On September 10, 2019, the Scheduling Order was filed (Dkt. #53). On March 13, 2020, the Court granted an extension on certain expert discovery deadlines (Dkt. #129). The Order specified that the deadline to object to expert witnesses is also the deadline to submit expert rebuttals (Dkt. #129). Subsequently, the Court extended this expert deadline to May 29, 2020 (Dkt. 131). The trial is set for April 2021 (Dkt. # 131).

In turn, the parties exchanged expert witness reports. On March 4, 2020, Defendants disclosed the Expert Report of George Gruhn ("Gruhn") ("Initial Report") (*See* Dkt. #143 at p. 2).

On May 29, 2020—the parties' stipulated deadline for expert rebuttals—Defendants filed George Gruhn's Rebuttal Report ("Rebuttal Report") (*See* Dkt. #146 at p. 1). On August 13, 2020, Defendants served the Updated Expert Report of George Gruhn ("Updated Report"). This disclosure was weeks after the expert rebuttal deadline and the evening before Gruhn's deposition.

On August 14, 2020, Gibson filed its Motion to Strike New Expert Report (Dkt. #143). On August 28, 2020, Armadillo responded (Dkt. #146). On September 2, 2020, Gibson filed its Reply (Dkt. #148). On September 9, 2020, Armadillo filed its Sur-Reply (Dkt. #149).

## LEGAL STANDARD

The Court's Scheduling Order controls the deadlines for expert-witness disclosures. *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-CV-2255-L, 2019 WL 1436659, at *21 (N.D. Tex. Mar. 31, 2019) (citing FED. R. CIV. P. 26(a)(2)(D)). However, the Scheduling Order is not always exhaustive. When there is no specified deadline, Rule 26(a)(2)(D) fills in the gaps and dictates when parties must provide certain expert disclosures. Specifically, the Rule dictates that rebuttal expert-witness disclosures are due 30 days after the other party's disclosure. *See* FED. R. CIV. P. 26(a)(2)(D)(ii).

Similarly, under Rule 26(e), a party must disclose supplemental expert reports by the time pretrial disclosures are due, which is generally at least 30 days before trial. *See* FED. R. CIV. P. 26(e)(2); FED. R. CIV. P. 26(a)(3)(B). This "30-day limit [for supplemental expert disclosures] is a default subject to amendment by court order." *Kumar v. Frisco Indep. Sch. Dist.*, No. 4:19-CV-00284, 2020 WL 4464502, at *14 (E.D. Tex. Aug. 4, 2020).

Regardless of the character of a report, an untimely disclosure may be excluded "unless the failure was substantially justified or is harmless." *CEATS, Inc. v. TicketNetwork, Inc.*, No: 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018) (citing FED. R. CIV. P.

37(c)(1)). If the disclosure is untimely, the Court maintains broad discretion to exclude the expert report as a means of enforcing a pretrial order. *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979); *see* FED. R. CIV. P. 37(b)(2).

The Court may grant leave to disclose a supplement expert report after the deadline in the scheduling order has expired for good cause. *Geiserman v. MacDonald,* 893 F.2d 787, 791 (5th Cir. 1990). To determine whether good cause exists, the Court considers (1) the explanation for the failure to [submit a complete report on time]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Russell v. Wal-Mart Stores*, No: 1:06-CV-408, 2007 WL 9725186, at *2 (E.D. Tex. Jun. 7, 2007) (citing *Geiserman*, 893 F.2d at 791).

## ANALYSIS

The Defendants' Updated Report is at issue. The parties disagree on whether the Updated Report is a rebuttal or a supplemental report, and accordingly disagree on the Report's disclosure deadline. The Court will first analyze whether the Updated Report is a supplemental or rebuttal report and then address timeliness.

### I. Whether the Updated Report is a Supplemental or a Rebuttal Report

The threshold issue is whether the Updated Report is a supplement or a rebuttal. If the Updated Report is a supplement, then either the Scheduling Order or Rule 26's supplemental procedures will determine whether the Updated Report is timely. If the Updated Report is a rebuttal, then it is governed by the Court's deadline for rebuttal reports.

Under the Federal Rules, rebuttal reports are defined as written expert opinions "intended to contradict or rebut evidence on the same subject matter" as the other party's expert. FED. R. CIV. P. 26 (a)(2)(D)(ii). The Fifth Circuit noted that "rebuttal" is a term of art "denoting evidence

3

introduced by a [party] to meet new facts brought out in the [party] opponent's case in chief." *Morgan v. Commercial Union Assurance Cos.*, 606 F.2d 554, 556 (5th Cir. 1979). This Court characterizes a rebuttal report as one that "explains, repels, counteracts, or disproves evidence of the adverse party's initial report." *CEATS*, 2018 WL 453732 at *3. For example, an expert report is a rebuttal when it criticizes certain approaches used by the opponent expert but does not rely on new information to support those criticisms. *Id*. at *4.

In contrast, the "Federal Rules of Civil Procedure do not define what constitutes a supplemental expert report." *Charter Sch. Sol. v. GuideOne Mutual Ins. Co.*, No: EP-18-CV-61-KC, 2019 WL 5258055, at *2 (W.D. Tex. Jun. 28, 2019). Consequently, what constitutes a supplemental expert report is not a clear-cut issue and "the distinction likely depend[s] on the facts of the case." *Charles v. Sanchez*, No. EP–13–CV–00193–DCG, 2015 WL 808417, at *8 (W.D. Tex. Feb. 24, 2015) (quoting *Gilbane Bldg. Co. v. Downers Grover Comm. High Sch. Dist.*, No. 02-C-2260, 2005 WL 838679, at *8 (N.D. Ill. Apr. 11, 2005)).

Although not expressly defined by the Federal Rules, courts have found a supplemental report "necessarily contains information . . . not expressed in the original report, or there would be no need to supplement." *Charter Sch. Sol.,* 2019 WL 5258055 at *2. Other courts have distinguished a supplemental report by its purpose. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) ("[t]he purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement"). By definition, "supplemental" is "[t]hat which is added to a thing or act to complete it." *Supplemental*, BLACK'S LAW DICTIONARY (6th ed. 1990). For example, a supplemental report "adds to a previously-served report without going beyond the opinions expressed in the report and without using information available prior to the [supplement report's deadline]." *CEATS*, 2018 WL 453732 at *3. It is a "revised expert report

4

that is consistent with the core opinions expressed in the original expert report." *Gilbane*, 2005 WL 838679, at *8.

      i.    **The Updated Report**

In Defendants' expert reports, Gruhn analyzes third-party guitar shapes and sales data to opine that Gibson's guitar shapes are generic. In the Initial Report, Gruhn analyzed the similarities between seven third-party guitars and Gibson guitars to support his theory that Gibson's guitar shapes are generic. The Initial Report contains 81 pages of opinion, 144 pages of endnotes, and 1,089 exhibits (Dkt. #146 at p. 5). In comparison, the Updated Report contains 81 pages of opinion, 146 pages of endnotes, and 1,097 exhibits (Dkt. #146 at p. 5). The only difference is the addition of sales data from eight third-party guitar companies. The Defendants assert that global events delayed these third parties from producing sales data and that, once received, Defendants promptly disclosed the Updated Report (Dkt. #146 at p. 10).

The Court is persuaded that the minor additions to the Updated Report satisfies the purpose of supplemental reports—to supplement. *See Sierra Club*, 73 F.3d at 571. While Gibson argues the Updated Report introduced a new theory that third-party sales prove the genericness of Gibson's guitar, this theory was first introduced in Defendants' Answer and was previously discussed in the Initial Report (*See* Dkt. #12). The additional sales data do not alter Gruhn's original opinion that widespread third-party use of similar guitar shapes proves genericness. Instead, the additional sales data builds upon Gruhn's underlying theory and is "consistent with the core opinions" in the Initial Report. *Gilbane*, 2005 WL 838679 at *8. Therefore, the Updated Report resembles a supplement report because it "adds to a previously-served report without going beyond the opinions expressed in the report." *CEATS*, 2018 WL 453732 at *3.

Furthermore, the Updated Report does not rebut Gibson's expert. A rebuttal report is one that is "intended to contradict or rebut evidence on the same subject matter" discussed by the other party's expert. FED. R. CIV. P. 26 (a)(2)(D)(ii). Here, Defendants contend the Updated Report's changes were added to complete the Initial Report's missing third-party sales data, not to rebut Gibson's experts. Gibson does not explain how the added sales data rebuts Gibson's expert and instead relies on the fact that the Updated Report was disclosed after Gibson's reports (Dkt. #143). But the fact that a report was disclosed after another alone does not necessarily mean a report is a rebuttal. The inquiry is whether the content "explains, repels, counteracts, or disproves evidence of the adverse party's initial report." *CEATS*, 2018 WL 453732 at *4. It is unclear how the added third-party sales data "counteracts" Gibson's expert reports. *See id.* Rather, the Updated Report is consistent with the Initial Report and merely updates the same theory with additional data. *See Sierra Club*, 73 F.3d at 571. Therefore, the Court finds the Updated Report is a supplement.

## II. Whether the Updated Report Was Timely

Next, the Court addresses whether the Updated Report was a timely supplemental report. The Court's Scheduling Order governs the deadlines for expert disclosures. FED. R. CIV. P. 26(a)(2)(C); *see Russell*, 2007 WL 9725186 at *2 (expert disclosures must "be made at the times and in the sequence directed by the court"). When the Scheduling Order is silent, supplemental reports are generally due 30-days pretrial. *See* FED. R. CIV. P. 26(e)(2); FED. R. CIV. P. 26(a)(3)(B); *Kumar*, 2020 WL 4464502 at *14.

Here, the Court's schedule provides a deadline for rebuttal reports but does not expressly mandate a deadline for supplements (see Dkt. #53). As the Scheduling Order does not explicitly mention supplemental reports, the parties dispute the Updated Report's deadline. Gibson argues the Scheduling Order contains an expert disclosure deadline which implicitly includes

6

supplemental reports. Defendants disagree and argue that because the Scheduling Order does not explicitly list a deadline for supplemental reports, the 30-day pretrial deadline applies. Thus, the Court next considers whether the Scheduling Order contains an expert disclosure deadline implicitly governing the Updated Report.

The Court finds that *Kumar* applies and the expert disclosure deadline encompasses supplemental reports. *See* 2020 WL 4464502 at *14. In *Kumar*, this Court interpreted a specific date in the scheduling order to require the disclosure of "all" expert reports. *Id*. That date was a deadline for two matters in the *Kumar* scheduling order: (1) disclosing "expert testimony pursuant to Fed. R. Civ. P.26(a)(2) . . . on issues for which the party does not bear the burden of proof" and (2) the "[d]eadline for Defendants' final amended pleadings." *Id*. at 13 (citing *Kumar*'s Scheduling Order). The Court did not specify which of these two deadlines implicitly requires disclosure of "all expert reports", it only specified the date. *Id*. at 14. There is therefore some ambiguity about which language the Court interpreted.

Here, the Scheduling Order uses language identical to *Kumar*'s schedule and so the Court reads the Scheduling Order to implicitly compel disclosure of "any" and "all" expert reports (*Compare* Dkt. #53 *with Kumar*, No: 4:19-CV-00284, Dkt. #21). *See id.* Because the Scheduling Order controls, the 30-day pretrial deadline is not the operative deadline for the Updated Report. One distinction with *Kumar*, however, is that here the deadlines for disclosing expert testimony on non-burden issues and for Defendants' final amended pleadings fall on different dates. However, this distinction does not affect the Court's analysis as both deadline dates have passed. Thus, the Court need not clarify *Kumar* as, either way, Defendants disclosed their supplemental report after the disclosure deadlines. The Updated Report is therefore untimely because it was disclosed after the court-ordered deadline for expert disclosures.

7

### III. Whether Good Cause Exists

The Court finds good cause to grant Defendants leave to supplement their untimely expert disclosure. Courts may grant a party leave to supplement its expert's report after the deadline for "good cause." FED. R. CIV. P. 16(b)(4). The Court considers four factors in evaluating good cause: (1) the explanation for the failure to timely disclose; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Newberry v. Discount Waste, Inc.*, No: 4:19-CV-00147, 2020 WL 363775, at *2 (E.D. Tex. Jan. 22, 2020) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

#### 1. The Explanation for the Failure to Timely Disclose

Defendants have a reasonable explanation for their untimely disclosure because they relied on third parties to produce sales data, many of which were significantly interrupted by COVID-19 (Dkt. #146). Gibson does not refute Defendants' justification nor point to any evidence that the third-party information was available at the time of the Initial Report. *See Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012) (explaining supplementation may be proper if the supplemental facts were not available at the time of initial disclosure). Although Gibson suggests that Defendants withheld the sales data, there is no evidence that Defendants' disclosure was intentionally deficient. Rather, Defendants efforts to "move diligently" and send Gibson the third-party responses once Defendants received them, "weighs against striking . . . the supplemental report." *Moore v. Hernandez*, No: 2:17-CV-00531-JRG, 2018 WL 2670403, at *2 (E.D. Tex. Mar. 6, 2018). Accordingly, Defendants' explanation supports a finding of good cause.

#### 2. The Importance of the Evidence

The Updated Report contains important testimony for Defendants' counterclaim and defense of genericness. *See Huawei Tech. Co., Ltd. v. Yiren Huang*, No: 4:17-CV-00893, 2019

8

WL 2267045, at *3(E.D. Tex. May 28, 2019) (finding the supplemental report was important because it was based on a theory that was crucial to the party's counterclaim for misappropriation). To prevail in a trademark infringement case, a plaintiff must prove the trademark is "distinctive." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). Generic marks cannot be distinctive and therefore are not legally protected. *Id*. at 538. Defendants' theory that Gibson's guitar shapes are generic requires a showing of widespread use of the guitar shape by competitors in the market. *See March Madness Athletic Ass'n, L.L.C. v. Netfire, Inc.*, 162 F.Supp. 2d 560, 568–569 (N.D. Tex. 2001). The Updated Report adds eight third-party data sets to demonstrate the prevalence of Gibson's guitar shape in the market. While Gibson argues the Updated Report is not important because the opinions have not changed, this argument does not underscore the significance of the eight data sets in bolstering Defendants' theory of extensive third-party use of the arguably generic guitar shape. Therefore, the Court finds the Updated Report's importance to Defendants' defense and counterclaim weighs in favor of permitting Defendants' untimely filing.

### 3. The Potential Prejudice to the Opposing Party in Allowing the Testimony

The Court is not persuaded that allowing the Updated Report would prejudice Gibson. Even though Defendants disclosure of the supplement the day before Gibson's deposition was not practical, "this is not a case of one party ambushing the other with undisclosed expert opinions at trial." *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 374 (5th Cir. 2016). The eight third-party data sets were sent to Gibson before Defendants disclosed the Updated Report. And the Initial Report already contained comparable sales information from seven other third parties. Gibson was not robbed of the opportunity to challenge the sales data and cannot claim surprise because the expert opinions did not change. *See Jones v. Harley- Davidson*, No: 2:14-cv-694-

9

RWS-RSP, 2016 WL 5395952, at *2 (E.D. Tex. Sep. 27, 2016). Additionally, the Updated Report was disclosed months before the Final Pretrial Conference and while discovery was still open. *See Stewart v. Hankins*, No:4:15-CV- 586, 2016 WL 7971300, at *2(E.D. Tex. Sep. 2, 2016) (finding no potential prejudice where the final pretrial and trial date were set for five months before the order). Gibson had the opportunity to review, prepare, and challenge the additional sales data. Therefore, this factor weighs in favor of Defendants.

### 4. The Possibility of a Continuance to Cure Such Prejudice

Gibson may cure whatever prejudice it does suffer because Defendants offered to make Gruhn available for an hour-long deposition to discuss the supplemental sales data (Dkt. #149). Gibson will be able to explore any weaknesses in the data in that deposition and in the months before the April 2021 trial.

The Court finds that Defendants demonstrated good cause to supplement the Initial Report. Consequently, Gibson's Motion to Strike the Updated Report is denied.

### CONCLUSION

It is therefore **ORDERED** that Gibson's Motion to Strike New Expert Report (Dkt. #143) is hereby **DENIED.**

**SIGNED this 10th day of November, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE