# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GIBSON BRANDS, INC. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | Civil Action No.  4:19-cv-00358 |
| v. | § | Judge Mazzant |
| | § | |
| ARMADILLIO DISTRIBUTION | § | |
| ENTERPRISES, INC.; CONCORDIA | § | |
| INVESTMENT PARTNERS, LLC, DOES 1 | § | |
| through 10 | § | |
| | § | |
| *Defendants*. | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff Gibson Brands, Inc's Motion to Exclude Defendant's Expert Report and Testimony of George Gruhn (Dkt. #188).  Having considered the Motion and the relevant pleadings, the Court finds the Motion should be **DENIED**.

## BACKGROUND

On May 14, 2019, Plaintiff Gibson Brands, Inc. ("Gibson") sued Armadillo Distribution Enterprises, Inc. ("Armadillo") and Armadillo's investment licenser, Concordia Investment Partners, Inc. for trademark infringement (Dkt. #1).

As part of its defense, Armadillo served an expert report by George Gruhn ("Gruhn") asserting that Gibson's guitar shapes are generic.  If Gibson's guitar shapes are generic, they are not entitled to trademark protection.  On December 14, 2020, Gibson moved to exclude Gruhn's initial report and testimony (Dkt. #188).  On December 28, 2020, Armadillo responded (Dkt. #209).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue.  FED. R. EVID. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury.  509 U.S. 579, 590–93 (1993).  Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91.  A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education."  FED. R. EVID. 702.  Moreover, to be admissible, expert testimony must be "not only relevant but reliable."  *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony."  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors.  *Daubert*, 509 U.S. at 594.  In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally

accepted in the relevant scientific community.  *Id.* at 593–94; *Pipitone*, 288 F.3d at 244.  When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate."  *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test."  *Id.* at 593.  As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one."  *Id.* at 594.  The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue.  *Kuhmo*, 526 U.S. at 152.  Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court.  *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Gibson asks this Court to exclude Gruhn's testimony because Gruhn is unreliable.  Gibson raises a variety of arguments—that Gruhn did not verify the information in his report, that he merely reiterates counsel's arguments, that the report violates the Federal Rules of Evidence—which the Court addresses in turn.  Ultimately, however, Gibson's objections go to the weight Gruhn's testimony should be given.  Armadillo does not need to prove that Gruhn is correct, only that he is reliable.  *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).  It has done so.  As such, the Court finds the Motion should be denied.

1. *Whether Gruhn verified the information in the report*

Gibson argues Gruhn's testimony should be excluded because he "rel[ied] exclusively on what an interested party tells him" and did not conduct "his own independent analysis" (Dkt. #188 at p. 13).  Specifically, Gibson asserts Gruhn had an assistant collect numerous exhibits for the report and Gruhn "did not verify if they were accurate." (Dkt. #188 at p. 14).  Because Gruhn did not determine the veracity of each exhibit himself, Gibson argues Gruhn's report is unreliable.

This argument is contradicted by Gruhn's deposition testimony.  Gruhn repeatedly testified that the report is an accurate reflection of his work product and opinion, stating:

> Every single bit of this report, I either wrote myself or reviewed every word of it. I approved every word it.  I'm responsible for what is on that report.  It's my report because I approved every single word of it."

(Dkt. #209, Exhibit 1 at 25:5-26:6).  Gruhn testified that his assistant worked "under my direction and I reviewed everything that he did."  (Dkt. #209, Exhibit 1 at 11:23-12:15; 13:7-14:7).  The assistant did "not write one word that's not at my direction."  (Dkt. #209, Exhibit 1 at 25:5-26:6).  He testified that he reviewed and approved every exhibit attached to his report, such as reading the literature and reviewing the photos the assistant found (Dkt. #209, Exhibit 1 at 186:6-10; 229:4-230:30).  It is unclear how Gruhn could have further conducted an independent analysis.

Gibson's cases are distinguishable because Gruhn was not an absentee expert, rubber-stamping someone else's work product.  Gruhn reviewed all exhibits and information in his report and his report contains no glaring errors that would demonstrate a lack of oversight.  *Cf. Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000) (excluding an expert report where expert did not verify information himself and the report included percentages which frequently did not total 100%).  Gibson cites cases where expert reports were excluded because the expert blindly accepted financial data from an interested party and opined without reviewing the data.  *See Seatrax, Inc. v. Sonbeck Intern., Inc*., 200 F.3d 358 (5th Cir. 2000); *Stinson Air Ctr., LLC v. XL Speciality Ins. Co.*, CIV. SA-03-CA-61-FB, 2005 WL 5979096 (W.D. Tex. July 8, 2005); *Prepaid Wireless Services, Inc. v. Sw. Bell Wireless, Inc.*, CIV.A. M-00-302, 2002 WL 34367328 (S.D. Tex. July 23, 2002).  But here, Gruhn asked a third-party to collect sales data at his direction, which he then reviewed and approved before using in his report.  Unlike the experts in these cases, Gruhn exercised

discretion and control over the report and takes ownership and responsibility for its content.  This makes Gruhn's testimony reliable.

2. *Whether Gruhn's report improperly reiterated counsel's arguments.*

Gibson argues Gruhn's testimony should be excluded because he merely reiterates counsel's arguments (Dkt. #188 at p. 15).  But it is not necessarily improper for an expert to rely on information supplied by counsel.  *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1432 (5th Cir. 1989) ("[Defendant's] second objection, that [plaintiff's expert] relied on information supplied by plaintiff's counsel in reaching his conclusion, also fails. This does not require the exclusion of the expert's testimony.").  Nor is it necessarily improper for an assistant or counsel to assist in drafting portions of a report.  *Tech Pharmacy Services, LLC v. Alixa Rx LLC*, 4:15-CV-766, 2017 WL 3388020, at *2 (E.D. Tex. Aug. 3, 2017) (denying motion to exclude an expert report where expert "testified that defense counsel drafted sections of his report, which he edited and ultimately agreed with"); *Zoch v. Daimler*, A.G., 4:17-CV-578, 2018 WL 4610569, at *7 (E.D. Tex. Sept. 25, 2018) (denying motion to exclude expert report where "an attorney assisted [expert] in preparing his report but . . . did not 'ghost-write' the report").

Gibson's arguments go to the weight Gruhn's testimony should be given, not its reliability. *See Zoch*, 2018 WL 461069 at *6 ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than it's admissibility and should be left for the jury's consideration.").  As stated, Gruhn exercised control and authority over the report which supports a finding of reliability.

3. *Whether Gruhn's report improperly relies on hearsay.*

Gibson argues Gruhn's report relies on hearsay evidence.  But "[i]t has long been the rule of evidence in the federal courts that an expert witness can express an opinion as to value even

though his opinion is based in part or solely upon hearsay sources." *LaCombe v. A-T-O, Inc*., 679 F.2d 431, 436 (5th Cir. 1982) ((quoting *United States v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971) (en banc)).  Relying on hearsay is not a proper basis for the Court to presently exclude. Instead, Gibson may object to hearsay in a motion in limine or at trial.

    4.  *Whether Gruhn improperly made legal conclusions*

      Gibson asks the Court to use Rule 403[1] to exclude Gruhn's "legal conclusions" (Dkt. #188 at p. 18).  Specifically, Gruhn concludes that various Gibson guitar shapes are generic and have not acquired distinctiveness; even so, the guitar shapes are weak and diluted marks; and Gibson's alleged Dove Wing Headstock is entitled to minimal protection, if any (Dkt. #188 at p. 18).  Gibson argues these are improper legal conclusions, while Armadillo argues they are proper expert opinions.

      Experts may give opinions on ultimate issues, provided the Court retains "the role of deciding the law for the benefit of the jury." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997); *see Camowraps, LLC v. Quantum Digital Ventures LLC*, CIV.A. 13-6808, 2015 WL 403187, at *3 (E.D. La. Jan. 28, 2015) (denying motion to exclude expert where expert opined that asserted trademark was generic).  They may not, however, make a "legal conclusion", such as by "opin[ing] about the meaning of a law". *Rolls-Royce Corp. v. Heros, Inc.*, CIV.A. 307-CV-0739-D, 2010 WL 184313, at *11 (N.D. Tex. Jan. 14, 2010).

      The Court finds that Gruhn's testimony is permissible expert opinion because he is opining about the ultimate issues, but not instructing the jury about what the law is.  Gruhn relies on his music industry to testify how third parties use similar guitar shapes and then concludes that

---

[1] Rule 403 states that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Gibson's shapes are generic.  Gruhn does not opine about what it means for a mark to be generic, only his factual conclusion, which the jury can choose to accept or reject.  This is commonplace in expert testimony.  Indeed, Gibson's own expert makes similar conclusions that Gibson now claims are impermissible legal conclusions (*See* Dkt. #188, Exhibit 6 at ¶20 ("Because the consumer will identify the Gibson Body Shape Design Marks with Gibson as the source of manufacture, the Gibson Body Shape Design Marks are not generic in a trademark sense.").  Using Gibson's logic, Gibson's own expert testimony would need to be excluded as well.

Armadillo only needs to show that Gruhn's opinion is reliable by a preponderance of the evidence.  *Moore*, 151 F.3d at 276.  Armadillo has done so.  Gruhn's opinion aids the jury by providing insight into Gibson's trademarks and relevant third-party usage of similar guitar shapes.  Gruhn's opinions are based on his music industry experience.  Gruhn compiled, reviewed, and approved the report.  As such, the Court finds Gruhn's report to be reliable.

Gibson's arguments go to the weight Gruhn's testimony should be given.  Gibson may raise these arguments through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.  The Court's ruling in no way limits Gibson's ability to contradict him at trial.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Gibson Brands, Inc's Motion to Exclude Defendant's Expert Report and Testimony of George Gruhn (Dkt. #188) hereby **DENIED**.

**SIGNED this 22nd day of January, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE