# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GIBSON BRANDS, INC. | § | |
| *Plaintiff*, | § § § | |
| v. | § § § | Civil Action No.  4:19-cv-00358<br>Judge Mazzant |
| ARMADILLIO DISTRIBUTION ENTERPRISES, INC.; CONCORDIA INVESTMENT PARTNERS, LLC, DOES 1 through 10 | § § § § § § | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Gibson Brands, Inc.'s Motion to Exclude Defendant's Rebuttal Expert Report and Testimony of George Gruhn (Dkt. #190).  Having considered the Motion and the relevant pleadings, the Court finds the Motion should be **DENIED**.

### BACKGROUND

On May 14, 2019, Plaintiff Gibson Brands, Inc. ("Gibson") sued Armadillo Distribution Enterprises, Inc. ("Armadillo") and Armadillo's investment licenser, Concordia Investment Partners, Inc. for trademark infringement of Gibson's guitar shapes (Dkt. #1).

As part of its defense, Armadillo served an expert report by George Gruhn ("Gruhn") asserting that Gibson's guitar shapes are generic.  If Gibson's guitar shapes are generic, they are not entitled to trademark protection.  On December 14, 2020, Gibson moved to exclude Gruhn's rebuttal report and testimony (Dkt. #190).  On December 28, 2020, Armadillo responded (Dkt. #210).

**LEGAL STANDARD**

    **I.**    **Expert Qualification**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147). The decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## II. Rebuttal Expert Witnesses

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) allows for the designation of a rebuttal expert witness "solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)".

"The scope of rebuttal testimony is ordinarily a matter to be left to the sound discretion of the trial judge." *Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764 (5th Cir. 1991). "A 'rebuttal' report explains, repels, counteracts, or disproves evidence of the adverse party's initial report." *CEATS, Inc. v. TicketNetwork, Inc.*, 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018). "Rebuttal is a term of art, denoting evidence introduced by a plaintiff to meet new facts brought out in his opponent's case in chief." *GWTP Invs., L.P. v. SES Americom, Inc.*, 3:04-CV-1383-L, 2007 WL 7630459, at *9 (N.D. Tex. Aug. 3, 2007). In determining whether rebuttal evidence is admissible, the question is not whether a plaintiff had the opportunity or right to overcome any statements or misstatements, but whether the defendant's witness's testimony raised new matters. *Rodriguez*, 780 F.2d at 495.

## ANALYSIS

Gibson asks this Court to exclude Gruhn's testimony because he is not qualified to opine on Gibson's Consumer Survey ("Survey"). Even if he was qualified, Gibson argues his testimony is not a proper rebuttal opinion and should be excluded (Dkt. #190 at p. 14). The Court examines the disputed portion of Gruhn's rebuttal report and finds that Gruhn is qualified to opine on the elements of Gibson guitars and that Gruhn's testimony properly rebuts Gibson's own Survey.

1. *The disputed portion of Gruhn's rebuttal report*

Gruhn's rebuttal report briefly discusses the Survey. Gruhn begins by introducing his understanding of the Survey and acknowledging his limitations:

3

> I understand from counsel that Gibson conducted a survey to test whether consumers believe the Alleged Body Shapes are generic. I have not reviewed the survey, nor will I opine on its methodology. That said, counsel has informed me that Gibson used the following images as stimuli to test whether consumers associate the Alleged Body Shape only with Gibson: [four color images of Gibson guitars]

(Dkt. #210, Exhibit 1 at p. 30). Gibson does not dispute this description of the Survey.

Next, Gruhn explains his understanding that Gibson's trademark registrations exclusively cover guitar shape silhouettes, not photographs of guitars:

> Counsel has informed me, and it is my understanding, that Gibson's alleged federal trademark registrations for the above body shapes only cover the silhouettes of these body shapes, and those registration *do not* cover any other features generally depicted on a guitar, including the humbuckers, pickguard, knob placement, etc.

(Dkt. #210, Exhibit 1 at p. 31). Experts like Gruhn are permitted to explain their understanding of legal terminology as it pertains to their opinions.

Gruhn then opines that consumers are more likely to recognize a photograph of a Gibson guitar than a mere guitar shape silhouette because a photograph has additional visual cues triggering brand recognition:

> By showing the above full-color images of actual Gibson guitars, not just the body shape silhouettes, Gibson provided many cues to consumers that make it far more likely that a consumer would identify the above as Gibson guitars versus generic body shapes.

(Dkt. #210, Exhibit 1 at p. 31). Gruhn devotes two sentences to identifying specific components of the photographs that aid recognition, such as fingerboard inlays, pickups, pickup frames, and the position of the output jack (Dkt. #210, Exhibit 1 at p. 31).

Finally, Gruhn concludes that consumers are more likely to recognize a photograph of a Gibson guitar than a Gibson guitar shape silhouette:

> Collectively, all of these extraneous elements, make it far more likely that a consumer would identify the guitars depicted in the above images as Gibson guitars. I do not opine on or know whether these elements (individually or collectively) are protectable intellectual property. Regardless, the combination of these elements and paint finishes are

4

more likely to prompt consumers to think of Gibson (e.g., because they have seen these Gibson guitars before) as opposed to focusing on the generic guitar body shape outlines.

(Dkt. #210, Exhibit 1 at p. 31).

2. *Whether Gruhn is qualified to opine on Gibson's Consumer Survey*

Gibson argues Gruhn is unqualified to testify "on the validity of Gibson's Consumer Survey" because Gruhn ostensibly has no experience with consumer surveys. While Gruhn may be unqualified to testify on methodology or statistical analysis, Gruhn did not do that. Instead, Gruhn testified that the Survey used photographs, which, in his opinion, contain recognizable details beyond the guitar silhouette. Gruhn is an expert based on his decades in the music industry and has been retained to discuss the brand recognition of Gibson guitars. He did not testify about n-values or z-scores; he testified about F holes and humbuckers. By opining that Gibson guitars contain elements which aid consumer recognition beyond their shape silhouette, Gruhn testified based on his "knowledge, skill, experience, training, or education." FED. R. EVID. 702. As such, Gibson is qualified to testify.

3. *Whether Gruhn's testimony is a proper rebuttal opinion*

Gibson argues that even if Gruhn was qualified, his rebuttal is improper because Gibson's own expert did not opine on the Survey. Because Gibson's own expert did not discuss the Survey, Gibson argues there is nothing for Gruhn to rebut.

Gibson construes rebuttals too narrowly. The Federal Rules of Civil Procedure permit an expert to "rebut evidence on the same subject matter identified by another party". FED. R. CIV. PROC. 26(a)(2)(D)(ii). The Rules do not specify that subject matter be identified in an earlier *report*, only that another party previously identified it. Here, Gibson produced the Survey. Gruhn critiqued the photographs used in the Survey, providing a rebuttal opinion. This is true even though Gibson's expert did not mention the Survey because Gruhn is rebutting evidence on the same

5

subject matter (the Survey) identified by another party (Gibson). Gruhn's report is therefore a proper rebuttal.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Gibson Brands, Inc.'s Motion to Exclude Defendant's Rebuttal Expert Report and Testimony of George Gruhn (Dkt. #190) hereby **DENIED**.

**SIGNED this 22nd day of January, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE