# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GIBSON BRANDS, INC. | § | |
| *Plaintiff*, | § § § | |
| v. | § § | Civil Action No. 4:19-cv-00358 |
| | § | Judge Mazzant |
| ARMADILLIO DISTRIBUTION ENTERPRISES, INC.; CONCORDIA INVESTMENT PARTNERS, LLC, DOES 1 through 10 | § § § § § § | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Armadillo Distribution Enterprises, Inc.'s *Daubert* Motion to Exclude Mike Rock (Dkt. #194). Having considered the Motion and the relevant pleadings, the Court finds the Motion should be **GRANTED in part and DENIED in part**.

### BACKGROUND

On May 14, 2019, Plaintiff Gibson Brands, Inc. ("Gibson") sued Armadillo Distribution Enterprises, Inc. ("Armadillo") and Armadillo's investment licenser, Concordia Investment Partners, Inc. for trademark infringement (Dkt. #1). As part of its defense, Armadillo served an expert report by George Gruhn ("Gruhn") asserting that Gibson's guitar shapes are generic. If Gibson's guitar shapes are generic, they are not entitled to trademark protection. Gibson retained its own expert, Mike Rock ("Rock"), to opine that Gibson's guitar shapes are not generic.

On December 14, 2020, Armadillo moved to exclude Rock (Dkt. #194). On December 28, 2020, Gibson responded (Dkt. #215). On January 22, 2021, Armadillo replied (Dkt. #283). On January 28, 2021, Gibson filed its Sur-Reply (Dkt. #310).

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally

accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Armadillo asks this Court to exclude Rock's testimony because Rock purportedly misapplies the law on genericness.

As a threshold, the Court considers the appropriate legal standard. In the Fifth Circuit, "[t]he test for genericness is whether the public perceives the term primarily as the designation of the article." *Nola Spice Designs, L.L.C., v. Haydel Enters., Inc.*, 783 F.3d 527, 538 (5th Cir. 2015). Courts in the Fifth Circuit consider "evidence of third-party use of similar marks" and "measure the distinctiveness of a design mark with reference to the market in which the mark is used." *Id.* at 541; *see also Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 815, 818 (5th Cir. 2019) ("Extensive third-party use of a term throughout the market suggests that consumers will not associate the junior user's mark with the senior mark user."). Armadillo can establish genericness by showing that Gibson's guitar shapes are "so common in the industry that [they are] incapable of serving to identify any one particular source." *Berg v. Symons*, 393 F. Supp. 2d 525, 555–56 (S.D. Tex. 2005).

Armadillo argues Rock misunderstood and misapplied this legal standard. During his deposition, Rock testified there were up to 50 companies that have made copies of Gibson's ES-335 style guitars (Dkt. #194, Exhibit 5 at 163:11-25). He asserted that "the amount of people that copied these designs only goes to prove how important and how popular and how original designs are." (Dkt. #194, Exhibit 5 at 165:13-23). He was then posed a hypothetical:

> Q. In your opinion, how many copycat guitars would it take for a shape to become generic, if any? . . .
>
> A. I -- I -- I don't -- I don't think it becomes generic. I don't think that's—that's fair. I mean, because a million people line up to steal something doesn't make stealing okay.
>
> Q. So your testimony is no matter how many third-party companies adopt its shape, you think it's not fair and the shape never becomes generic, nonetheless?
>
> A. If I invent something original and it's—it comes from my imagination, or me and my team's imagination, it doesn't matter how many people line up and want to take it from me, it's still mine. I mean, you know, I—I don't know what the legal definition is, but to me it's not really fair—
>
> Q. Mm-hmm.
>
> A. —to call something generic just because a lot of people want to copy it. If the law states something different, then it does, but that's my opinion. It's, clearly, a Gibson invention. There's nothing to say—there's nothing like it beforehand, you know. It's—it's a Gibson SG.

(Dkt. #194, Exhibit 5 at 280:24-282:6).

This contradicts the law. In the Fifth Circuit, a "design may be generic if it is so common in the industry that it is incapable of serving to identify any one particular source." *Berg*, 393 F. Supp. 2d at 555. Rock contradicts the law by opining that no matter how many people use the shape, it would never become generic because "it's not really fair." (*See* Dkt. #194, Exhibit 5 at 280:24-282:6). But genericness does not have a fairness exception. The only concern is "whether the public perceives the term primarily as the designation of the article." *Nola*, 783 F.3d at 538. Public perception may be "substantially undercut by . . . widespread third-party use," but such evidence is not necessarily dispositive. *Springboards*, 912 F.3d at 815.

Rock acknowledged "the law states something different" from his opinion and that he "do[es]n't know what the legal definition is." (Dkt. #194, Exhibit 5 at 280:24-282:6). This will not suffice at trial. To testify, Rock must "know what the legal definition" of genericness is if he is going to opine on it. He may disagree with Armadillo's expert on how many copycat guitars are necessary for a shape to become generic. But he cannot opine that no amount of third-party usage would ever render the Gibson shapes generic, because it would be unfair. Any such testimony to the contrary is excluded.

Gibson counters that the hypothetical was an improper question because it asked for a legal conclusion. The Court dismissed the same argument in Gibson's *Daubert* Motion against Armadillo's industry expert (Dkt. #267). The Court repeats that experts may give opinions on ultimate issues, provided the Court retains "the role of deciding the law for the benefit of the jury." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). They may not, however, make a "legal conclusion", such as by "opin[ing] about the meaning of a law." *Rolls-Royce Corp. v. Heros, Inc.*, 2010 WL 184313, at *11 (N.D. Tex. Jan. 14, 2010). Rock was retained to "opine on whether the Gibson Body Shape Design Marks have become generic." (Dkt. #194, Exhibit 3 at ¶ 11). Armadillo is entitled to pose hypotheticals testing the boundaries of that opinion.

Rock otherwise applies the correct legal standard in his report. In his Rebuttal Report, Rock critiques Gruhn's survey:

> In my opinion, the error in the Gruhn Report was to collect every guitar that slightly resembles the Gibson Marks and, based on guitars not in the public eye, conclude that a guitar consumer does not and cannot use the Gibson Marks to identify Gibson as the source of the instrument. As a guitar consumer and working musician myself, I can confirm that this is simply wrong. Guitar consumers instantly recognize the Gibson Marks as something Gibson created and assume that if the Gibson Marks are present on a guitar that the source of the guitar is Gibson. In my opinion, **I do not foresee any number of copycat guitars changing this consumer mindset in the near future**.

5

(Dkt. #194, Exhibit 4 at ¶ 34) (emphasis added). Armadillo argues Rock opines that the Gibson guitar shapes will never become generic based on copycat guitars under any circumstances. This would be improper, as discussed above. However, when viewed in context of the paragraph, Rock is offering a proper opinion on genericness. Rock opines that consumers currently identify the asserted marks with the Gibson brand. In his opinion, additional copycat guitars would not change this consumer mindset recognizing the Gibson brand, "in the near future." Armadillo concedes that Rock recites the correct legal standard in his original and rebuttal reports (Dkt. #194 at p. 10). This opinion properly relies on the public's perception of the asserted marks, not on the supposed fairness of the doctrine.

Armadillo's remaining arguments go to the weight given to Rock's testimony. For example, Armadillo takes issue with the weight Rock gives to evidence of third-party use. Armadillo may raise these arguments through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## CONCLUSION

It is therefore **ORDERED** that Armadillo Distribution Enterprises, Inc.'s *Daubert* Motion to Exclude Mike Rock (Dkt. #194) is hereby **GRANTED in part** and **DENIED in part**.

**SIGNED this 15th day of March, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE