# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GIBSON BRANDS, INC. | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  4:19-cv-358 |
| | § | Judge Mazzant |
| ARMADILLIO DISTRIBUTION | § | |
| ENTERPRISES, INC.; CONCORDIA | § | |
| INVESTMENT PARTNERS, LLC, DOES 1 | § | |
| through 10 | § | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Armadillo Distribution Enterprises, Inc.'s *Daubert* Motion to Exclude Basil Imburgia (Dkt. #195).  Having considered the Motion and the relevant pleadings, the Court finds the Motion should be **DENIED**.

### BACKGROUND

On May 14, 2019, Plaintiff Gibson Brands, Inc. ("Gibson") sued Armadillo Distribution Enterprises, Inc. ("Armadillo") and Armadillo's investment licenser, Concordia Investment Partners, Inc. for trademark infringement (Dkt. #1).

Gibson retained a damages expert, Basil Imburgia ("Imburgia") to calculate Armadillo's sales of the accused products.  The parties agree Gibson is required to prove sales, but that Armadillo is required to prove all deductible costs and expenses.  *See* 15 U.S.C.A. § 1117 (a).  These deductible costs include materials, shipping, customs and duties, among others.

At some time in December 2019, Armadillo produced a spreadsheet showing the accused products' gross revenue for 2014-2019 and deductible costs.  Gibson also deposed Armadillo's CEO at length about the revenue and costs information (Dkt. #195, Exhibit 6).

On March 4, 2020,[1] Imburgia submitted his initial report, which asserted that Armadillo failed to prove any deductible costs.  Imburgia opined Armadillo's earlier disclosures were insufficient to prove deductible costs because "the company has not provided any supporting documentation to validate these costs." (Dkt. #195, Exhibit 7 at ¶ 34).  After that report, Armadillo produced further evidence and expert testimony identifying deductible costs.  Imburgia did not supplement his original report.

Some months later, in September 2020, Armadillo deposed Imburgia.  In his deposition, Imburgia testified he did not supplement his March 4 report because he agrees with Armadillo's expert's calculations on cost deductions (Dkt. #195, Exhibit 9 at 13:18-14:19).

On December 15, 2020, Armadillo moved to exclude Imburgia as being unreliable (Dkt. #195).  On December 29, 2020, Gibson responded (Dkt. #221).  On January 22, 2021, Armadillo replied (Dkt. #284).  On January 28, 2021, Gibson filed its Sur-Reply (Dkt. #306).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue.  FED. R. EVID. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury.  509 U.S. 579, 590–93 (1993).  Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the

---

[1] March 4, 2020 was the deadline to disclose expert testimony for which Armadillo bears the burden of proof (Dkt. #123).

courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying

under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Armadillo asks this Court to exclude Imburgia's testimony because (1) he contradicts his report in his subsequent deposition and (2) he speculates about Armadillo's sales revenue for 1999-2013 for the accused products. The Court is unpersuaded by either argument.

### 1. Whether Imburgia's Opinions are Contradicted by his Deposition Testimony

Armadillo argues Imburgia's opinions are unreliable because he asserted one thing in his report, but seemingly contradicted himself at a subsequent deposition.

In his March 4, 2020 report, Imburgia asserted Armadillo failed to prove any deductible costs. This would entitle Gibson to 100% of Armadillo's gross revenue on the accused products for the years 2014-2019. Imburgia seemingly contradicted this testimony at his subsequent deposition. During his September 4, 2020 deposition, Imburgia agreed with Armadillo's expert's cost deductions.[2] This would suggest that damages would be less than 100% of Armadillo's gross revenues. Armadillo argues Imburgia contradicts himself on cost deductions and his opinions should be excluded as unreliable.

Gibson contends that Imburgia is not contradicting himself. Imburgia's March 4 report relied on the evidence that was disclosed up to that point, namely, the spreadsheet. At that time, Imburgia believed that Armadillo's spreadsheet was insufficient to prove deductions. Only after Imburgia's report did Armadillo disclose sufficient evidence to prove deductions. When Imburgia subsequently testified that he agreed with Armadillo's expert on cost deduction, he did not

---

[2] Imburgia testified: "I don't have any issue with his calculations and his methods. . . I don't have any adjustments that I would make to his report at this time from the standpoint of removing certain expenditures." (Dkt. #195, Exhibit 9 at 13:18-14:19).

contradict his prior opinion. Imburgia maintains that the spreadsheet alone was insufficient, but with the additional evidence, Armadillo's expert has established appropriate deductions.

There is no discrepancy between Imburgia's March 4 report and his subsequent testimony. Imburgia has maintained that Armadillo's spreadsheet alone is insufficient to establish cost deductions, but that additional evidence is sufficient. These are not contradictory opinions. Armadillo's arguments go to the weight of Imburgia's testimony, not its reliability. Whether or not Imburgia contradicted himself, and the confines of Imburgia's opinion, are questions for the jury. Armadillo may raise these arguments through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. If Imburgia contradicts his deposition, Armadillo may impeach him at trial.

### 2. Whether Imburgia Speculates About Armadillo's 1999-2013 Revenue

Next, Armadillo asks the Court to exclude Imburgia's opinion that the accused products generated $35.4 million in gross revenue between 1999-2013.

Gibson alleges damages going back to 1999. Armadillo produced gross revenue for the accused products from 2014-2019, but did not have detailed information going back to 1999. Instead, Armadillo produced overall company revenues for all products for the years 1999-2019. Imburgia had to deduce the revenue attributable to the accused products for the years 1999-2013. He did this by "calculating sales of Accused Products by product/product line as a percentage of Armadillo's total gross revenue for the period from 2014 to 2019." (Dkt. #306, Exhibit 4 at p. 12). Next, he "applied these percentages to gross revenue for the period from 1999 to 2013 . . ." (Dkt. #306, Exhibit 4 at p. 12).

Armadillo argues this is unreliable speculation because Imburgia simply assumes the accused products comprise a consistent percentage of gross revenues.

The Court finds Imburgia's testimony reliable.  Imburgia used the data from 2014-2019 to calculate what portion of Armadillo's overall revenues from 1999-2013 can be reasonably attributable to the accused products.  Imburgia did not speculate blindly, but made several reasonable assumptions grounded in the available data.  For example, he "estimated 2019 gross revenue as the lowest annual gross revenue for the period from 2014 to 2018" and assumed that "sales of Accused Products as a percentage of gross revenue are similar between 2014 to 2019 and prior periods."  There are few alternative ways of reverse-engineering the accused product's revenues.  Armadillo does not suggest any.  Nor does Armadillo identify any caselaw that prevents an expert from using actual sales data to project missing sales data.

Gibson only needs to show that Imburgia's opinion is reliable by a preponderance of the evidence. *Moore*, 151 F.3d at 276. Gibson has done so.  As such, the Court finds Imburgia's report reliable. Ultimately, Armadillo disagrees with Imburgia's assumptions.  This does not render his opinions inadmissible.  These disagreements about the weight of Imburgia's testimony should be raised at trial through "[v]igorous cross-examination" and "presentation of contrary evidence." *Daubert*, 509 U.S. at 596.

## CONCLUSION

It is therefore **ORDERED** that Armadillo Distribution Enterprises, Inc.'s *Daubert* Motion to Exclude Basil Imburgia (Dkt. #195) is hereby **DENIED**.

**SIGNED this 18th day of March, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE