# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| GIBSON BRANDS, INC. | § | |
| *Plaintiff*, | § § § | |
| v. | § § | Civil Action No. 4:19-cv-358 |
| | § | Judge Mazzant |
| ARMADILLIO DISTRIBUTION ENTERPRISES, INC.; CONCORDIA INVESTMENT PARTNERS, LLC, DOES 1 through 10 | § § § § § | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Armadillo Distribution Enterprises, Inc.'s *Daubert* Motion to Exclude Dr. Eugene Ericksen's Genericness Survey and Conclusions Regarding Genericness (Dkt. #200). Having considered the Motion, the Court finds the Motion should be **DENIED**.

### BACKGROUND

On May 14, 2019, Plaintiff Gibson Brands, Inc. ("Gibson") sued Armadillo Distribution Enterprises, Inc. ("Armadillo") and Armadillo's investment licenser, Concordia Investment Partners, Inc. for trademark infringement (Dkt. #1). As part of its defense, Armadillo served an expert report by George Gruhn asserting that Gibson's guitar shapes are generic. If Gibson's guitar shapes are generic, they are not entitled to trademark protection.

Gibson's expert, Dr. Eugene Ericksen ("Ericksen"), conducted a survey "to determine whether the GIBSON brand is famous with respect to electric guitars." (Dkt. #192 at p. 2). Ericksen concluded that Gibson guitars have high consumer recognition and that Armadillo's brand of guitars, Dean, have low recognition.

On December 15, 2020, Armadillo moved to exclude Ericksen's genericness survey and conclusions regarding genericness (Dkt. #200). On December 29, 2020, Gibson responded (Dkt. #223). On January 22, 2021, Armadillo replied (Dkt. #285). On January 28, 2021, Gibson filed its Sur-Reply (Dkt. #308).

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following,

non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Armadillo asks this Court to exclude Ericksen's testimony because his survey is not narrowly tailored to the asserted trade dress. Armadillo argues Ericksen's survey is unreliable because the survey showed respondents full-color pictures of Gibson's guitars. Instead, Armadillo argues Ericksen should have showed respondents the simple drawings of guitar silhouettes that were submitted to the United States Patent and Trademark Office. The photographs contain additional details beyond the registered trade dress and so Armadillo argues it should be excluded.

The Court finds the survey reliable. Just because the survey uses photographs, rather than drawings, does not make the survey fundamental flawed and unreliable. Armadillo does not identify any cases to support its position that a survey is only reliable if it isolates the registered

3

trade dress (*See* Dkt. #200). Instead, Armadillo relies on distinguishable cases involving unregistered trade dresses from courts outside the Fifth Circuit. *See Big Island Candies, Inc. v. Cookie Corner*, 269 F. Supp. 2d 1236 (D. Haw. 2003); *Hi Ltd. P'ship v. Winghouse of Fla*., Inc., No. 6:03-cv-116-Orl-22JGG, 2004 WL 5486964 (M.D. Fla. Oct. 5, 2004); *Thomas & Betts Corp. v. Panduit Corp*., 65 F.3d 654 (7th Cir. 1995). There is nothing to suggest that Ericksen's survey is fundamentally flawed because it relies on photographs of the products, rather than simplistic drawings of guitar silhouettes.

Indeed, Ericksen's use of photographs appears justified. If the survey used the silhouette drawings submitted in the trademark applications, the survey may have created a bias in respondents. Specifically, respondents may have been biased towards saying the silhouettes represent a "brand shape," particularly among those knowledgeable about trademark law. Instead, Ericksen used photographs to "mimic marketplace conditions" and avoid one possible bias (Dkt. #223 at p. 13). This is a plausible explanation and suggests that Ericksen's survey is not so flawed it should be excluded.

Even if Ericksen's survey is flawed, in the Fifth Circuit, these flaws generally "bear on the weight the survey should receive, not the survey's admissibility." *Honestech, Inc. v. Sonic Solutions*, 430 Fed. Appx. 359, 361 (5th Cir. 2011). Armadillo has not established that Ericksen's survey contains a flaw, let alone one that bears on the survey's admissibility. These arguments are appropriate for cross-examination and do not render Ericksen's survey unreliable.

Gibson only needs to show that Ericksen's survey is reliable by a preponderance of the evidence. *Moore*, 151 F.3d at 276. Gibson has done so. As such, the Court finds Ericksen's survey reliable. Ultimately, Armadillo disagrees with Ericksen's opinions on genericness, but this does not render them inadmissible. These disagreements about the weight of Ericksen's testimony

should be raised at trial through "[v]igorous cross-examination" and "presentation of contrary evidence." *Daubert*, 509 U.S. at 596.

## CONCLUSION

It is therefore **ORDERED** that Armadillo Distribution Enterprises, Inc.'s *Daubert* Motion to Exclude Dr. Eugene Ericksen's Genericness Survey and Conclusions Regarding Genericness (Dkt. #200) is hereby **DENIED**.

**SIGNED this 20th day of April, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE