IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GIBSON BRANDS, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff/Counterclaim-Defendant, | ) ) | Case No. 4:19-cv-00358-ALM |
| vs. | ) ) ) | |
| ARMADILLO DISTRIBUTION ENTERPRISES, INC.; CONCORDIA INVESTMENT PARTNERS, LLC, | ) ) ) ) | |
| Defendant/Counterclaim-Plaintiff | ) ) | |
| DOES 1 through 10, | ) ) | |
| Defendants. | ) | |

## JOINT AMENDED FINAL PRE-TRIAL ORDER

This cause came before the court at a pre-trial management conference held on May 11, 2022, pursuant to Local Rule CV-16 and Rule 16 of the Federal Rules of Civil Procedure. The parties originally submitted a joint final pretrial order with a difference of opinion as to witness disclosure dates. The parties resolved that matter and now ask the Court to enter the following Joint Amended Final Pre-Trial Order.

**A.     COUNSEL FOR THE PARTIES**

Plaintiff:  Gibson Brands, Inc. ("Gibson")

Andrea E. Bates, *Esq.*
Kurt W. Schuettinger, *Esq.*
Johnathan M. Bates, *Esq.*
Bates & Bates, LLC
1890 Marietta Boulevard NW
Atlanta, Georgia 30318

Stephen D. Howen, *Esq.*
State Bar No. 10117800
Law Office of Steve Howen
7111 Bosque Blvd., Suite 305

Waco, Texas 76710

Defendants:  Armadillo Distribution Enterprises, Inc. ("Armadillo") and Concordia Investment Partners, LLC ("Concordia")

Douglas A. Rettew (*pro hac vice*)
Anna Naydonov (*pro hac vice*)
Patrick J. Rodgers (*pro hac vice*)
Elyse McNamara (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001
Telephone:     (202) 408-4000
Facsimile:      (202) 408-4400

Vic Houston Henry
Emileigh Stewart Hubbard
HENRY ODDO AUSTIN & FLETCHER
   a Professional Corporation
1700 Pacific, Suite 2700
Dallas, Texas 75201
Telephone: (214) 658-1900
Facsimile:  (214) 658-1919

## B.    STATEMENT OF JURISDICTION

The Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b), in that the case arises out of claims for purported trademark infringement, and diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (a) and (b).

Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) as both parties conduct business within this District.  Defendants are subject to personal jurisdiction in this judicial District for purposes of this litigation only.   Defendants consent to the exercise of this Court's jurisdiction and venue over the claims asserted in this litigation only.

## C.    NATURE OF ACTION

Gibson filed this action for trademark infringement and other related causes of action under federal, state, and common law.   Gibson seeks damages and a permanent injunction from

Defendants' alleged unauthorized use of Gibson's Flying V Body Shape Design® Trademark (U.S. Reg. No. 2051790), Explorer Body Shape Design® Trademark (U.S. Reg. No. 2053805), ES Body Shape Design® Trademark (U.S. Reg. No. 2007277), SG Body Shape Design® Trademark (U.S. Reg. No. 2215791), Dove Wing Headstock Design® Trademark (U.S. Reg. No. 102 0485), FLYING V® Trademark (U.S. Reg. No. 1216644), and HUMMINGBIRD® Trademark (U.S. Reg. No. 1931670) (collectively "Gibson Trademarks") in the United States. Gibson is further seeking remedy for alleged false patent marking on Armadillos' V guitar. Additionally, Gibson seeks damages against Concordia for alleged contributory trademark infringement based upon Armadillo's alleged infringement. In its Second Amended Complaint, Gibson alleges the following claims against Armadillo: (1) Trademark Infringement Under 15 U.S.C. § 1114 (1); Trademark Counterfeiting Under 15 U.S.C. § 1114(1); (3) False Designation of Origin, Passing Off, and Unfair Competition Under 15 U.S.C. § 1125(a); (4) Trademark Dilution Under 15 U.S.C. § 1125(c); (5) Intentional Interference with Economic Advantage Under Texas Common Law; (6) Trademark Dilution Under Texas Business and Commerce Code § 16.103; (7) Trademark Infringement Under Texas Common Law; (8) Unfair Competition Under Texas Common Law; (9) False Designation of Origin Under Texas Common Law; (10) Unjust Enrichment Under Texas Common Law; and (11) False Patent Marking Under 35 U.S.C. 292(a). Also in its Second Amended Complaint, Gibson alleges the following claims against Concordia: (1) Contributory Trademark Infringement; and (2) Vicarious Liability for Trademark Infringement.

Armadillo denies that it has infringed Gibson's alleged trademarks; that it has engaged in counterfeiting or patent false marking; and/or that it has interfered with any of Gibson's business relations. Moreover, Armadillo has asserted the following counterclaims: (1) Cancellation of Gibson's Registration No. 2051790 (Flying V Body Shape) for Genericness Under 15 U.S.C. § 1119; (2) Cancellation of Gibson's Registration No. 2053805 (Explorer Body Shape) for Genericness Under

15 U.S.C. § 1119; (3) Cancellation of Gibson's Supplemental Registration No. 2007277 (ES-335 Body Shape) for Genericness Under 15 U.S.C. § 1119; (4) Refusal of Gibson's Application No. 86168793 (ES-335 Body Shape) for Genericness Under 15 U.S.C. § 1119; (5) Cancellation of Gibson's Registration No. 221579 (SG Body Shape) for Genericness Under 15 U.S.C. § 1119; (6) Intentional Interference with Armadillo's Existing Contracts and Business Relations Under Texas Common Law; and (7) Intentional Interference with Armadillo's Prospective Contracts and Business Relations Under Texas Common Law.

Concordia denies Gibson's allegations of contributory trademark infringement and vicarious liability for trademark infringement and contends that, as a licensor of the DEAN and LUNA housemarks (not accused of infringement in this case), it does not exercise the required control over the instrumentality of infringement, i.e., the Armadillo guitars accused of infringement.  Like Armadillo, Concordia also brings counterclaims to cancel the same four Gibson registrations (Reg. Nos. 2051790, 2053805, 2007277, and 2215791) and one Gibson application (App. No. 86168793) on the ground that they are all generic and unprotectable.

## D.    CONTENTIONS OF THE PARTIES

### 1.    Gibson

By providing these contentions, Gibson does not concede that all these issues are appropriate for trial; nor do the contentions below include every detail underlying each contention.  Gibson does not waive any of its pending motions, including any motions in *limine*, motions for summary judgment, *Daubert* motions, and motions to strike, and any other already pending and future motions it may file.

Gibson is the owner of seven trademarks registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"): (1) Flying V Body Shape Design® Trademark (U.S. Reg. No. 2051790), (2) Explorer Body Shape Design® Trademark (U.S. Reg. No. 2053805), (3)  SG Body Shape Design® Trademark (U.S. Reg. No. 2215791), (4) Dove Wing Headstock Design®

Trademark (U.S. Reg. No. 1020485), (5) FLYING V® Trademark (U.S. Reg. No. 1216644), and (6) HUMMINGBIRD® Trademark (U.S. Reg. No. 1931670) (the "Principle Register Trademarks"). Gibson is the owner of one trademark registered on the Supplemental Register of the USPTO: ES Body Shape Design® Trademark (U.S. Reg. No. 2007277).

Armadillo has been and is now infringing the Gibson Trademarks under 15 U.S.C. §1114 and §1125 by manufacturing, offering to sell, and selling guitars displaying identical or substantially similar marks to the Gibson Trademarks. Armadillo's use of identical or substantially similar marks creates a likelihood of consumer confusion as to Gibson's endorsement, sponsorship, or approval of Armadillo's guitars.

The Gibson Trademarks are famous and were famous before Armadillo entered the market with its infringing guitars. Armadillo's use of identical or substantially similar marks dilutes the Gibson Principal Register Trademarks in violation of 15 U.S.C. 1125(c) through tarnishment and blurring and is counterfeiting Gibson's products.

Concordia engaged in contributory trademark infringement by supplying the Dean trademarks to Armadillo while being on notice of Armadillo's infringement of the Gibson Trademarks, having direct control of the Armadillo products used to infringe the Gibson Trademarks.

Gibson seeks the following relief:

a. A judgment that Armadillo has infringed the Gibson Trademarks;

b. A judgment that Armadillo has counterfeited some or all of the Gibson Trademarks;

c. An order for permanent injunctive relief prohibiting Armadillo and Concordia, its officers, agents, servants, employees, successors, assigns, or all persons or entities in active concert, participation, or privity with any of the foregoing, from any further acts of infringement or dilution of the Gibson Trademarks;

**d.** Damages sufficient to recover (1) Armadillo's profits on guitars sold using the Gibson Trademarks; (2) all damage suffered by Gibson; and (3) the costs of this action and that said amount be trebled or otherwise multiplied to the extent permitted by statute;

**e.** Enhanced counterfeiting damages under 15 U.S.C. §1117(b) and (c);

**f.** Punitive damages sufficient to deter Armadillo from committing such willful acts of infringement in the future; and

**g.** A judgment that Concordia is contributorily liable for Armadillo's infringement.

### 2. Armadillo

By providing these contentions, Armadillo does not concede that all these issues are appropriate for trial; nor do the contentions below include every detail underlying each contention. Armadillo does not waive any of its pending motions, including any motions in *limine*, *Daubert* motions, motions to strike, and any other already pending and future motions it may file.

Armadillo refutes Gibson's claims and contends that the claims against the Dean V, Dean Z, Dean Gran Sport, Luna Athena 501, Dean Mustache Headstock, and Luna Fauna Hummingbird are all barred by laches. Specifically, Gibson delayed 40 years to assert its claims against the Dean V and Dean Z models, 21 years to assert its claims against the Dean Mustache Headstock, 9 years to assert its claims against the Luna Athena 501 and Luna Fauna Hummingbird models, and 7 years to assert its claims against the Dean Gran Sport model. Gibson's unreasonable delay caused Armadillo substantial evidentiary and economic prejudice.

Setting aside the laches defense, consumer confusion is unlikely (and there is thus no trademark infringement), including because Gibson's guitar shapes are weak and diluted (based on extensive third-party use of identical or similar shapes over many decades), both parties sell their guitars in connection with distinct housemarks (GIBSON, DEAN, and LUNA), the parties' products are expensive and the parties' purchasers are careful and/or sophisticated, and, despite

years (and in most instances decades) of coexistence in the marketplace, there have been no credible instances of actual confusion.

Gibson's dilution claims similarly fail because, far from being famous (as is required to assert dilution), Gibson's asserted guitar shapes and marks are weak as a result of decades of third-party use of identical or similar shapes. Even setting aside third-party use, there is no evidence that Gibson's asserted shapes and marks *themselves* are famous, let alone famous *before* Armadillo (including by its predecessors-in-interest) began using the allegedly infringing shapes/marks. Moreover, even assuming they are famous, there is no risk of blurring (and thus there is no dilution), including because the parties sell their guitars with housemarks.

Additionally, Gibson's counterfeiting claim fails because Armadillo's guitars, all using the distinct DEAN or LUNA marks and/or the well-known V headstock (among other distinguishable features), are not identical and/or substantially indistinguishable from Gibson's guitars.

Further, Gibson's patent false marking claims fail because Gibson has suffered no economic injury as a result of Armadillo's alleged "Patents Pending" marking on a limited series of relic guitars, which replicate the 1977 original models in every respect.

Moreover, Gibson's asserted Flying V, Explorer, SG, and ES-335 shapes are generic (including based on countless third-party uses of identical or similar shapes by other guitar companies for over 5 decades) and Gibson's trademark registrations/application for these shapes should thus be cancelled/rejected. Further still, Gibson has engaged in tortious interference with existing contracts and prospective economic relations under Texas law.

Armadillo seeks the following relief:

**a.** Judgment against Gibson on all of its claims;

**b.** An Order requiring Gibson to pay Armadillo its costs and attorneys' fees to defend against Gibson's claims (including because this is an exceptional case);

**c.** An Order directing the Director of the U.S. Patent and Trademark Office to cancel Gibson's U.S. Trademark Registration Nos. 2051790, 2053805, 2007277, and 2215791 with prejudice;

**d.** An Order directing the Director of the U.S. Patent and Trademark Office to refuse Gibson's Trademark Application Serial No. 86168793 with prejudice;

**e.** A judgment that Gibson has intentionally interfered with Armadillo's contacts and business relations;

**f.** An Order awarding Armadillo its actual damages in the maximum amount permitted by law flowing from Gibson's intentional interference, including Armadillo's lost sales and profits.

**g.** An Order awarding Armadillo its costs and out-of-pocket expenses in seeking to cover or mitigate the damages proximately caused by Gibson's tortious actions;

**h.** An Order requiring Gibson to pay Armadillo its costs and attorneys' fees in connection with Armadillo's counterclaims;

**i.** An injunction enjoining Gibson from engaging in or sending any communication to guitar dealers, retailers, commercial associates, distributors, suppliers, resellers, and customers that interfere with Armadillo's contracts and business relations (including any communications threatening liability and/or demanding that dealers, distributors, and/or retailers not offer for sale or sell Armadillo's products); and

**j.** An Order awarding any other monetary damages, recovery, and relief appropriate under the law;

### 3. Concordia

Concordia is not contributorily and/or vicariously liable for Armadillo's alleged trademark infringement. Setting aside that Concordia cannot be contributorily or vicariously liable without any

direct infringement, which Concordia contends does not exist for the same reasons as Armadillo, Concordia is not contributorily or vicariously liable because it does not exercise sufficient control over the instrumentality of infringement.  Specifically, Concordia does not design, manufacture, advertise, market, or sell any of Armadillo's products.  Other than periodic general quality checks—a standard requirement for any valid trademark license—Concordia has no involvement with Armadillo's products (including the accused guitars).  Concordia has no input in or say over which product designs (shapes or product names) Armadillo ends up using the DEAN and LUNA housemarks on.  Nor does Concordia have the authority to require Armadillo to stop making any products.  The full extent of Concordia's relationship with Armadillo is that of a licensor passively licensing intellectual property to Armadillo for use on a full line of products, including guitars, ukuleles, drums, musical equipment, clothing, and accessories—only some of which are accused products.

Concordia also brings counterclaims to cancel the same four Gibson registrations (Reg. Nos. 2051790, 2053805, 2007277, and 2215791) and one Gibson application (App. No. 86168793) on genericness grounds as Armadillo.

Concordia seeks the following relief:

a.   Judgment against Gibson on all of its claims;

b.   An Order requiring Gibson to pay Concordia its costs and attorneys' fees to defend against Gibson's claims (including because this is an exceptional case);

c.   An Order directing the Director of the U.S. Patent and Trademark Office to cancel U.S. Trademark Registration Nos. 2051790, 2053805, 2007277, and 2215791 with prejudice;

d.   An Order directing the Director of the U.S. Patent and Trademark Office to refuse Gibson's Trademark Application Serial No. 86168793 with prejudice;

**e.**    An Order requiring Gibson to pay Concordia its costs and attorneys' fees in connection with its counterclaims; and

**f.**    An Order awarding any other monetary damages, recovery, and relief appropriate under the law.

## E.    STIPULATIONS AND UNCONTESTED FACTS

### 1.    Stipulated Trial Procedure

#### a.    Exhibits

The exhibits to be used in any party's case-in-chief (for avoidance of doubt not to include any impeachment exhibits) and all objections to the admission of such exhibits shall be identified in each party's Exhibit List filed with the Court. The parties may supplement their Exhibit Lists for good cause shown and with leave of Court.

Once admitted, counsel may publish exhibits to the jury without requesting to do so. Exhibits not objected to will be considered pre-admitted without the need for additional foundation testimony. The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

The parties may use each other's exhibits listed on the parties' respective exhibit lists attached hereto to the same effect as though it were on its own exhibit list, subject to all evidentiary objections. Any exhibit, once admitted at trial, may be used equally by either party for any proper purpose in accordance with the Federal Rules of Evidence. The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to enter the document into evidence. This agreement does not waive any party's objection to the admissibility of that exhibit.

Subject to all foundational requirements and other objections that might be made to the

admissibility of the original, a legible copy of any exhibit may be offered into evidence in lieu of the original.  The parties may use electronic versions of exhibits and demonstratives.  A party may replace poor print or digital quality copies of exhibits with improved or higher print or digital quality copies.

The parties agree that any exhibit listed on either party's exhibit list and which have been preadmitted before trial (with no objections that remain pending) may be shown to the jury at the time of opening statements.

Legible photocopies of printed publications (with agreed upon English translations thereof where relevant) may be offered and received in evidence in lieu of originals thereof.

None of the foregoing stipulations shall serve as a waiver of any other objections a party may have to any trial exhibits or abrogate the requirement that the party offering an exhibit into evidence satisfy any other rules governing the admissibility of evidence set forth in the Federal Rules of Evidence, the Federal Rules of Civil Procedure, this Court's Local Rules, the Court's practices, or any other applicable rule or regulation.  The parties agree to meet and confer in good faith to resolve objections to trial exhibits prior to their introduction at trial.

### b. Demonstrative Exhibits

Demonstrative exhibits that the parties intend to use at trial need not be included on the parties' respective exhibit lists.

Any demonstratives to be used during voir dire or opening statements are to be exchanged by 6:00 p.m. the day before the opening statements.  If a party intends to create a demonstrative during the opening statement itself, a mock-up of such demonstrative during the opening statement must be disclosed at the same time as the other opening statement demonstratives.  Any physical demonstratives, including any poster boards, must be made available for inspection at the same time and photos or electronic images of the physical demonstratives must be disclosed at the same time

along with the other demonstratives. Any objections to the opening statement demonstratives must be provided after the demonstratives are received (one day before the opening statements). The parties shall meet and confer in an attempt to resolve any objections to these demonstratives. If objections cannot be resolved by the parties, the unresolved issues will be raised with the Court.

The parties shall exchange copies of all documentary, graphic, slide, animation, and any other form of demonstratives, including mockups of demonstratives intended to be created live during witness presentations, that they plan to use at trial during direct examination and/or presentation of deposition designations or declaration evidence, but not for cross-examinations, by 7:00 p.m. the day before their anticipated use. Any physical demonstratives must be made available for inspection at that time, and photos or electronic copies of those physical demonstratives must also be disclosed at that time. The parties shall meet and confer in an attempt to resolve any objections to the demonstratives. If objections cannot be resolved by the parties, the unresolved issues will be raised with the Court.

All demonstratives used in Court (other than those used during cross-examination and closing arguments) must be disclosed according to the schedules above; no hand-written or other demonstratives created or presented during openings, or during witness examinations will be allowed without such scheduled, prior disclosure, except for those permitted by the Court upon a showing of good cause. The parties will disclose demonstratives they intend to use during their respective closing arguments by no later than 7:00 PM the day before the closing arguments.

**c. Witnesses**

The parties shall notify the other side in good faith of their intention to move a witness from the "may call" list to the "will call" list and vice versa no later than May 5, 2022 at 6:00 p.m. Central Standard Time.

No later than 7:00 p.m. two (2) days before their introduction (*i.e.,* Monday evening for a witness to be called on Wednesday), counsel shall provide to opposing counsel: (1) the names and

order of witnesses to be called (both live and by deposition); and (2) an identification of trial exhibits to be used on direct examination of each witness (both live and by deposition).  No later than 7:00 p.m. two (2) days before their introduction, counsel shall also make available for inspection any non-documentary trial exhibits that they plan to use at the trial during direct examination of each witness.  The parties shall make their best efforts to follow the specified order of presentation; however, they recognize that the order of presentation may change based on timing or other circumstances.

If counsel intends to change the order of witnesses, they shall notify the other side immediately.  The parties also recognize that the COVID-19 pandemic may affect the manner of presentation of witness testimony.  Should any witnesses require special accommodations (e.g., will appear remotely or appear out of order at trial), a party will notify the other party of such change immediately and work with the other party in good faith to resolve any scheduling and other issues that may arise as a result of these accommodations.

For any exhibits identified in the 7:00 p.m. exchange that require physical inspection, such inspection shall occur (if requested) no later than 8:00 p.m. the evening the exhibit is identified.  The exhibits subject to the physical inspection must also be made available for inspection at 7:00 pm the day before a party intends to introduce them in Court, and any inspection (if requested) should take place no later than 8:00 pm that same evening.  Parties do not need to identify exhibits they intend to use during cross-examination.

To the extent permitted by the Federal Rules of Evidence and rulings from the Court, the parties agree that depositions may be used at trial (where appropriate) whether or not the transcripts of such depositions have been signed and filed as set forth in Federal Rule of Civil Procedure 30(b).  Any deposition testimony not specifically identified on a party's deposition designation list may still be used at trial for the purposes of impeachment, if otherwise competent for that purpose.  When a party uses

deposition testimony for impeachment, the party may elect to either play the deposition testimony by video or to read the deposition testimony live, unless the Court orders otherwise.

All properly designated deposition testimony may be played by video or may be read live in court if it has been previously disclosed in accordance with the Court's Scheduling Order(s) and the Court's procedures. Unless the parties agree otherwise, the introducing party will first read its designated testimony, and the other party will immediately thereafter read its counter-designations (except where one party has an objection to the completeness of a particular passage to be read by the other party, in which case the Court will rule on this objection and order accordingly). For video deposition designations, unless the parties agree otherwise, the designations must be played continuously to include all the designations and counter-designations. The party offering depositions designations for a witness will provide to the other party a complete video (with all designations and counter-designations excerpts) at least five (5) days before trial. All colloquy between counsel and objections will be eliminated when deposition testimony is presented at trial. To the extent that the trial is subject to specific time limitations, the time available for each party's trial presentation shall be reduced by the length of its designated and counter-designated testimony read or played.

**F.     CONTESTED ISSUES OF FACT AND LAW**

   **1.     Gibson:**

a. Whether Armadillo has infringed Gibson's Flying V Body Shape Design® Trademark (U.S. Reg. No. 2051790) pursuant to 15 U.S.C. § 1114(1) by offering for sale and selling the Accused Products in the US.

b. Whether Armadillo has infringed Gibson's Explorer Body Shape Design® Trademark (U.S. Reg. No. 2053805) pursuant to 15 U.S.C. § 1114(1) by offering for sale and selling the Accused Products in the US.

14

c.  Whether Armadillo has infringed Gibson's SG Body Shape Design® Trademark (U.S. Reg. No. 2215791) pursuant to 15 U.S.C. § 1114(1) by offering for sale and selling the Accused Products in the US.

d.  Whether Armadillo has infringed Gibson's Dove Wing Headstock Design® Trademark (U.S. Reg. No. 1020485) pursuant to 15 U.S.C. § 1114(1) by offering for sale and selling the Accused Products in the US.

e.  Whether Armadillo has infringed Gibson's FLYING V® Trademark (U.S. Reg. No. 1216644) pursuant to 15 U.S.C. § 1114(1) by offering for sale and selling the Accused Products in the US.

f.  Whether Armadillo has infringed Gibson's HUMMINGBIRD® Trademark (U.S. Reg. No. 1931670) pursuant to 15 U.S.C. § 1114(1) by offering for sale and selling the Accused Products in the U.S.

g.  Whether Armadillo has infringed Gibson's ES Body Shape Design® Trademark (U.S. Reg. No. 2007277) pursuant to 15 U.S.C. § 1125(a) by offering for sale and selling the Accused Products in the US.

h.  Whether Armadillo is liable for trademark counterfeiting Gibson's Flying V Body Shape Design® Trademark (U.S. Reg. No. 2051790) pursuant to 15 U.S.C. § 1114(1) by offering for sale and selling the Accused Products in the US.

i.  Whether Armadillo is liable for trademark counterfeiting Gibson's Explorer Body Shape Design® Trademark (U.S. Reg. No. 2053805) pursuant to 15 U.S.C. § 1114(1) by offering for sale and selling the Accused Products in the US.

j.  Whether Armadillo is liable for trademark counterfeiting Gibson's SG Body Shape Design® Trademark (U.S. Reg. No. 2215791) pursuant to 15 U.S.C. § 1114(1) by offering for sale and selling the Accused Products in the US.

k.  Whether Armadillo is liable for trademark counterfeiting Gibson's Dove Wing Headstock Design® Trademark (U.S. Reg. No. 1020485) pursuant to 15 U.S.C. § 1114(1) by offering for sale and selling the Accused Products in the US.

l.  Whether Armadillo is liable for trademark counterfeiting Gibson's FLYING V® Trademark (U.S. Reg. No. 1216644) pursuant to 15 U.S.C. § 1114(1) by offering for sale and selling the Accused Products in the US.

m.  Whether Armadillo is liable for trademark counterfeiting Gibson's HUMMINGBIRD® Trademark (U.S. Reg. No. 1931670) pursuant to 15 U.S.C. § 1114(1) by offering for sale and selling the Accused Products in the US.

n.  Whether Concordia is contributorily liable for Armadillo's trademark infringement.

o.  Whether Gibson is entitled to enhanced damages pursuant to 15 U.S.C. § 1117 and if so, the amount of the enhancement.

p.  Whether Gibson is entitled to attorney's fees pursuant to 15 U.S.C. § 1117 and, if so, in what amount.

q.  Whether Gibson is entitled to pre-judgment and post-judgment interest pursuant to 15 U.S.C. § 1117, and, if so, the dollar amount of pre-judgment and post-judgement interest.

r.  Whether punitive damages sufficient to deter Armadillo and Concordia from committing such willful acts of infringement in the future should be granted.

s.  Whether Gibson is entitled to injunctive relief against Armadillo and Concordia based on Defendants' alleged infringement of the Gibson Trademarks.

### 2. Armadillo

a.  Whether Gibson's claims against the Dean Z, Dean V, Luna Athena 501, the Dean Mustache Headstock, Luna Fauna Hummingbird, and Dean Gran Sport are barred by laches.

b. Whether confusion is unlikely (and there is thus no trademark infringement) between the Gibson Flying V and Dean V shapes; the Gibson Explorer and Dean Z shapes; the Gibson Dove Wing Headstock and Dean Mustache Headstock shapes; the Gibson SG and Dean Gran Sport shapes; the Gibson ES-335 and Luna Athena 501 shapes; Gibson Hummingbird and Luna Fauna Hummingbird; and Gibson's alleged FLYING V word mark and Dean's use of #flyingv in two Instagram posts from 2013 and 2017.

c. Whether dilution by blurring is unlikely between the Gibson Flying V and Dean V shapes; the Gibson Explorer and Dean Z shapes; the Gibson Dovewing Headstock and Dean Mustache Headstock shapes; the Gibson SG and Dean Gran Sport shapes; the Gibson ES-335 and Luna Athena 501 shapes; Gibson Hummingbird and Luna Fauna Hummingbird; and Gibson's alleged FLYING V word mark and Dean's use of #flyingv in two Instagram posts from 2013 and 2017;

d. Whether Gibson's alleged Flying V body shape is generic and its Registration No. 2051790 for that shape should be canceled.

d. Whether Gibson's alleged Explorer guitar shape is generic and its Registration No. 2053805 for that shape should be canceled.

e. Whether Gibson's alleged SG guitar shape is generic and its Registration No. 2215791 for that shape should be canceled.

f. Whether Gibson's alleged ES-335 body shape is generic and its Supplemental Registration No. 2007277 for that shape should be cancelled and Application No. 86168793 for that shape should be rejected.

g. Whether Gibson's counterfeiting claims against the Dean V, Dean Z, Dean Mustache Headstock, Dean Gran Sport, use of #flyingv hashtag, and Luna Fauna Hummingbird Select fail because the shapes/marks are not spurious designations that are identical or substantially indistinguishable from Gibson's alleged marks.

17

h.  Whether Gibson's patent false marking claim fails because Gibson has not and cannot show the required deception, reliance, and/or economic injury.

i.  Whether Gibson's claim for intentional interference with economic advantage under Texas Common law fails.

j.  Whether Gibson's claim of unfair competition under Texas common law fails.

k.  Whether Gibson's claims for damages, disgorgement of profits, attorneys' fees, interest, and injunctive relief are barred by laches.

l.  Whether Gibson's claims for damages disgorgement of profits, attorneys' fees, interest, and injunctive relief fail because Gibson has not established any cognizable injury or harm.

m.  Whether Armadillo is entitled to recover costs and its attorneys' fees in having to defend against Gibson's claims.

n.  Whether Gibson is liable for tortious interference with contract under Texas common law.

o.  Whether Gibson is liable for tortious interference with prospective contractual relations under Texas common law.

p.  Whether Armadillo is entitled to its lost sales, profits, and/or other monetary damages and relief from Gibson's tortious interference with Armadillo's contracts and prospective contractual relations.

q.  Whether Armadillo is entitled to its costs and attorneys' fees in connection with its counterclaims.

r.  Whether Armadillo is entitled to an injunction enjoining Gibson and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them from engaging in or sending any communication to guitar dealers, retailers, commercial associates, distributors, suppliers, resellers, and customers that interfere with Armadillo's

18

contracts and business relations (including any communications threatening liability and/or demanding that dealers, distributors, and/or retailers not offer for sale or sell Armadillo's products).

### 3.    Concordia

a.    Whether Gibson's claims of contributory trademark infringement fail.

b.    Whether Gibson's alleged Flying V body shape is generic and its Registration No. 2051790 for that shape should be canceled.

c.    Whether Gibson's alleged Explorer guitar shape is generic and its Registration No. 2053805 for that shape should be canceled.

d.    Whether Gibson's alleged SG guitar shape is generic and its Registration No. 2215791 for that shape should be canceled.

e.    Whether Gibson's alleged ES-335 body shape is generic and its Supplemental Registration No. 2007277 for that shape should be cancelled and Application No. 86168793 for that shape should be rejected.

f.    Whether Concordia is entitled to recover its costs and attorneys' fees in connection with defending against Gibson's claims.

g.    Whether Concordia is entitled to its costs and attorneys' fees in connection with its counterclaims.

## G.    LIST OF WITNESSES

The amended trial witness list for Gibson is attached hereto as Exhibit A.

The amended trial witness list for Armadillo and Concordia is attached hereto as Exhibit B.

The witness list should set forth (1) who will be called to testify at trial; (2) who may be called to testify at trial; and (3) may be presented by deposition testimony at trial. Those portions of the depositions that may be offered into evidence at trial shall be listed by page and line number. Gibson's

deposition designations were previously filed as Document Nos. 335, 339, 424, and 425, and Armadillo's deposition designations were previously filed as Document Nos. 334, 338, and 436.

**H.    LIST OF EXHIBITS**

Gibson filed its Motion for Leave to Amend and Supplement its Trial Exhibit List on April 26, 2022, and Gibson's Amended Exhibit List is attached as Exhibit A to Document No. 456 and hereto as Exhibit C. To the extent the list contains exhibits supplemental to those previously submitted, Armadillo and Concordia have reserved the right to object to the supplemental exhibits, such objections including but not limited to late designation. Armadillo's and Concordia's are as previously submitted.

Armadillo and Concordia likewise intend to file a motion for leave to amend and supplement the Defendants' Trial Exhibit List following the production of the sales information requested by Defendant and Armadillo's current Amended Exhibit List is attached hereto as Exhibit D.

**I.    LIST OF ANY PENDING MOTIONS**

|  | DKT. NO. | DESCRIPTION |
|---|---|---|
| 12/29/2020 | 219 | Plaintiff's First Motion *in Limine* |
| 4/1/2021 | 344 | Plaintiff's Motions in *Limine* |
| 4/1/2021 | 346 | Plaintiff's Unopposed Motions in *Limine* |
| 4/1/2021 | 356 | Defendants' Motions in *Limine* |
| 4/8/22 | 438 | Plaintiff's Objections to Deposition Evidence |
| 4/12/2022 | 443 | Defendants' Supplemental Motion in *Limine* |
| 4/26/2022 | 456 | Plaintiff's Motion for Leave to Amend and Supplement Exhibit List |

**J.    PROBABLE LENGTH OF TRIAL**

The probable length of trial is 2 weeks.

**K.    MANAGEMENT CONFERENCE LIMITATIONS**

None.

**L.    CERTIFICATIONS**

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1.    Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

2.    Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

3.    Each exhibit in the List of Exhibits herein:

    a.    is in existence;

    b.    is numbered; and

    c.    has been disclosed and shown to opposing counsel.

Approved as to form and substance:

Attorneys for Plaintiff(s):    _/s/ Steve Howen with permission_____

Attorneys for Defendant(s):    _/s/ Emileigh S. Hubbard_____

**SIGNED this 12th day of May, 2022.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE