# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| GIBSON BRANDS, INC., § § *Plaintiff,* § § v. § § ARMADILLO DISTRIBUTION § ENTERPRISES, INC., and CONCORDIA § INVESTMENT PARTNERS, LLC, § § *Defendants.* § § | Civil Action No. 4:19-CV-358 Judge Mazzant |

## ORDER ON PLAINTIFF'S MOTION IN LIMINE NUMBERS SIX AND SEVEN

Pending before the Court is Plaintiff Gibson Brands, Inc.'s Motion in Limine (Dkt. #344).

The Court held a Pretrial Conference in this matter on May 11, 2022. The Court orally ruled on the majority of Plaintiff's requests. However, the Court took under advisement the parties' arguments regarding Plaintiff's request for the Court to: (A) preclude Defendants from presenting any arguments or evidence relating to advertisements or sales of third-party guitars prior to 1992 and from 1997 to 2014; and (B) preclude any evidence of advertising or sales of Dean guitars prior to 1997 (Dkt. #344 at pp. 3–7).

Plaintiff argues such evidence is too attenuated to be relevant to this case, and would likely confuse the jury. Plaintiff asks the Court to limit any evidence to 1992, five years before the alleged infringer, Armadillo, entered the market. Defendants counter that the evidence is highly relevant to their laches defense and claim for cancellation of Gibson's trademarks due to genericness. Accordingly, Defendants contend the high probative value of this evidence substantially outweighs any potential confusion or prejudice.

The Court starts by noting a defendant is liable for Lanham Act infringement if the

defendant uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. 15 U.S.C. § 1114(1). In assessing the likelihood of confusion, courts in this circuit consider, among other factors, "the type of mark allegedly infringed." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017). The type of the mark "refers to the strength of the mark." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998). The more distinct and recognizable the senior user's mark, "the greater the likelihood that consumers will confuse the junior user's use with that of the senior user." *Id.*

Courts analyze two factors in determining the strength of a mark: (1) the mark's position along the distinctiveness spectrum, and (2) "the standing of the mark in the marketplace." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 330 (5th Cir. 2008). The first factor refers to the five categories of increasing distinctiveness that marks generally fall into: generic, descriptive, suggestive, or arbitrary and fanciful. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). A generic mark is simply the ordinary name of the product. *See id.* Thus, as part of the parties' claims for infringement and cancellation, the parties will need to put on evidence of Gibson's trademarks' distinctiveness, or lack thereof, and their standing in the market.

The Court finds the Fifth Circuit's decision in *Springboards To Education, Inc. v. Houston Independent School District*, 912 F.3d 805 (5th Cir. 2019), persuasive on the type of evidence admissible to show the strength of a mark. In *Springboards*, the Fifth Circuit held that a reasonable jury could not conclude that Springboards' marks enjoyed strong standing in the market. *Id.* at 814–15. The Fifth Circuit, in relevant part, pointed to other literacy programs *predating*

Springboards' "Read a Million Words" campaign that used phrases identical or nearly identical language to Springboards' marks. *Id*. at 815 (emphasis added). The Fifth Circuit noted that "[e]xtensive third-party use of a term throughout the market suggests that consumers will not associate the junior mark's use with the senior mark user. *Id.* (collecting cases). Accordingly, the Fifth Circuit held the strength of Springboards' marks was "substantially undercut by their lack of recognition in the market and widespread third-party use." *Id.* (citing *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 315–17 (5th Cir. July 1981)). *Springboards* thus support the proposition that evidence of the state of the market, even where that evidence "predates" the time period relevant to the litigation, is relevant to whether the marks have become generic. That said, the Court is left with the question whether to preclude evidence and arguments regarding third-party sales and advertisements prior to 1992, the cut-off date Plaintiff proposes.

Defendants allege evidence of third-party advertisements and sales from as early as the 1970s is relevant because the guitars at issue were produced and sold in the 1970s. However, Plaintiff notes that Dean Guitars lost prominence and the name went dormant after it was purchased by Tropical Music, that is until Armadillo took over in 1997. Defendants did not contest this point. Third party "uses older than five years should only be considered relevant if there is evidence that such uses were likely to have impacted consumers' perceptions of the mark as of the relevant date." *Converse, Inc. v. Int'l Trade Comm'n*, 909 F.3d 1110, 1120 (Fed. Cir. 2018). Because Dean Guitars appears to have all but disappeared until Armadillo entered the market in 1997, the Court finds the probative value of evidence before the 1990s to be low. Further, the five-year cutoff date is reasonable. As such, the Court will preclude evidence of and arguments related to third-party advertisements and sales prior to 1992, along with evidence of advertising and sales of Dean guitars prior to 1997.

It is therefore **ORDERED** Plaintiff Gibson Brands, Inc.'s Motions in Limine Six and Seven are hereby **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED this 12th day of May, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE