# United States District Court
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| GIBSON BRANDS, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  4:19-CV-358 |
| | § | Judge Mazzant |
| ARMADILLO DISTRIBUTION | § | |
| ENTERPRISES, INC., and CONCORDIA | § | |
| INVESTMENT PARTNERS, LLC, | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Plaintiff Gibson Brands, Inc.'s Proposed Judgment and Brief in Support of Relief Requested (Dkt. #509) and Defendants Armadillo Distribution Enterprises, Inc. and Concordia Investment Partners, LLC's Brief in Support of Final Proposed Judgment (Dkt. #529).  Having considered the briefs and relevant pleadings, the Court finds: (1) the jury's laches finding is not an absolute bar to Gibson's request for a permanent injunction; (2) Defendants shall be enjoined from manufacturing, selling, advertising, or contributing to the manufacture, advertisement, or sale of the DEAN V guitar, DEAN Z guitar, DEAN Gran Sport guitar, LUNA Athena 501 guitar, and LUNA Fauna Hummingbird products; (3) Gibson is not entitled to an accounting of profits; and (4) Gibson is the prevailing party in this action.

## BACKGROUND

On May 14, 2019, Plaintiff Gibson Brands, Inc. ("Gibson") sued Defendants Armadillo Distribution Enterprises, Inc. ("Armadillo") and Concordia Investment Partners, LLC ("Concordia") for trademark infringement (Dkt. #1).  Gibson requested monetary damages and a permanent injunction that Armadillo and Concordia be barred from offering its DEAN V guitar,

DEAN Z guitar, DEAN Gran Sport guitar, LUNA Athena 501 guitar, DEAN Evo Headstock, and LUNA Fauna Hummingbird products.

The case proceeded to trial on May 16, 2022.  Gibson alleged that Armadillo infringed the following Gibson trademarks: the Flying V Body Shape (U.S. Reg. No. 2051790), the Explorer Body Shape (U.S. Reg. No. 2053805), the SG Body Shape (U.S. Reg. No. 2215791), the ES-335 Body Shape (Supp. U.S. Reg. No. 2007277), the Dove Wing Headstock Shape (U.S. Reg. No. 1020485), the HUMMINGBIRD word mark (U.S. Reg. No. 1931670), and the FLYING V word mark (U.S. Reg. No. 1216644) (collectively, the "Gibson Trademarks").  Gibson asserted claims for trademark infringement and counterfeiting under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), along with infringement under Texas common law.  Gibson also asserted a claim for contributory trademark infringement under the Lanham Act against Concordia.

Armadillo and Concordia denied all of Gibson's claims.  Armadillo and Concordia also raised the affirmative defense of laches, asserting that all of Gibson's claims and requested relief were barred in their entirety based on Gibson's excessive and inexcusable delay, which caused Armadillo and Concordia substantial economic and evidentiary prejudice.[1]

The jury returned its verdict on May 27, 2022.  The jury found that Armadillo infringed all of the Gibson Trademarks with the exception of the FLYING V wordmark.  In addition to trademark infringement, the jury found that Armadillo sold or marketed a counterfeit of the following Gibson Trademarks: the Flying V Body Shape, the Explorer Body Shape, the SG Body Shape, and the HUMMINGBIRD word mark.  The jury found that Concordia contributed to Armadillo's infringement of the Gibson Trademarks—except for the Dove Wing Headstock.

---

[1] Defendants also brought counterclaims for cancellation and tortious interference with Defendants' prospective business relations.  However, the jury did not find for Defendants on any of their counterclaims (Dkt. #498 at pp. 10–11)

However, for the Flying V Body Shape, the Explorer Body Shape, and the Dove Wing Headstock shape, the jury found Gibson inexcusably delayed in asserting its trademark rights, thereby causing undue prejudice to both Armadillo and Concordia.  In addition to finding for Defendants on their laches defense for these three shapes, the jury also found that neither Armadillo nor Concordia ever had unclean hands.  The jury awarded Gibson $4,000 in statutory damages for its affirmative finding on the counterfeit claim but did not find that Gibson suffered actual damage due to Armadillo's infringement.

On June 7, 2022, the Court granted the parties' Joint Agreed Motion Regarding Post-Trial Briefing Schedule (Dkt. #502).  Each side submitted briefing in conformity with their proposed schedule.  Accordingly, on June 17, 2022, both sides submitted briefs in support of their respective proposed final judgments (Dkt. #509; Dkt. #529).  Each side responded on July 1, 2022 (Dkt. #534; Dkt. #537).  On July 15, 2022, both sides filed their replies (Dkt. #541; Dkt. #543).

## LEGAL STANDARD

Federal Rule of Civil Procedure 58 governs the entry of final judgment.  While Rule 58(b)(1) details the circumstances under which the clerk of the court must enter judgment "without awaiting the court's direction," Rule 58(b)(2) outlines those circumstances under which the Court must approve final judgment before such can be entered by the clerk.  Specifically, Rule 58(b)(2) provides that:

> [T]he court must promptly approve the form of judgment, which the clerk must promptly enter, when:
>
> (A) the jury returns a special verdict or a general verdict with answers to written questions; or
>
> (B) the court grants other relief not described in this subdivision (b).

FED. R. CIV. P. 58(b)(2).

**ANALYSIS**

Gibson seeks two primary forms of relief: (1) a permanent injunction; and (2) disgorgement of profits, along with costs and fees.  Armadillo and Concordia argue this Court should not afford such relief because laches functions as a complete bar to all of Gibson's claims against the DEAN V guitar, DEAN Z guitar, and DEAN Evo Headstock.  The Court will begin with the parties' arguments regarding injunctive relief.

## I.    Permanent Injunction

Gibson requests the Court permanently enjoin Armadillo from manufacturing, selling, or advertising its DEAN V guitar, DEAN Z guitar, DEAN Gran Sport guitar, LUNA Athena 501 guitar, LUNA Fauna Hummingbird products, and DEAN Evo Headstock.  Gibson also requests the Court permanently enjoin Concordia from contributing to the manufacture, advertisement, or sale of such products.

Gibson argues the jury's laches finding does not bar injunction, and, in any event, the evidence did not support the jury's finding that Armadillo and Concordia suffered undue prejudice.[2]  Thus, Gibson urges the Court to grant a permanent injunction.  Defendants counter that laches bars Gibson's request for injunctive relief.  The Court will first address whether permanent injunction is even appropriate before determining the effect of the jury's laches finding.

### A.  Whether Gibson Is Entitled to Injunctive Relief

The party seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

---

[2] The parties' arguments regarding the sufficiency of the evidence supporting the jury's finding that Armadillo and Concordia suffered undue prejudice are not appropriate for this stage.  Such arguments, instead, are better saved for post-judgment motions, *e.g.*, a motion for judgment as a matter of law.

defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *EBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 478 n.39 (5th Cir. 2020) (reminding the parties and the district court that a plaintiff must satisfy "the traditional four-factor test" before "permanent injunctive relief can be awarded").  The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.  *Id.*  Gibson argues permanent injunction is warranted under the *eBay* factors.  Rather than argue how the factors do not support Gibson's request, Armadillo and Concordia largely rely on their argument that the jury's laches finding bars prospective injunctive relief.  The Court will analyze each factor, in turn.

### 1.  Irreparable Injury

Irreparable harm generally exists "if the injury cannot be undone through monetary relief." *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 694 (N.D. Tex. 2015).  While other circuits have held that a court may presume irreparable injury upon finding a likelihood of confusion in a trademark case, the Fifth Circuit has avoided "expressly adopting this presumption of irreparable injury." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303 (5th Cir. 2008). The Court, therefore, is wary of applying a blanket presumption.  Nevertheless, courts in trademark infringement cases often assess irreparable injury by looking at the likelihood of confusion and whether the plaintiff suffered a loss of control.  *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 765 (N.D. Tex. 2013).  Indeed, "[w]hen a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services." *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 542 (S.D. Tex. 2013) (Costa, J.) (citing *Quantum Fitness Corp.*

*v. Quantum LifeStyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999)).

Here, the jury has already found that Gibson proved by a preponderance of the evidence a likelihood of confusion exists.  Moreover, Gibson argues it has suffered irreparable harm through the loss of control of its reputation as embodied in the infringing marks.  This is an irreparable harm.  *Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-cv-227, 2020 WL 4016110, at *16 (E.D. Tex. July 16, 2020).  Thus, the first *eBay* factor favors the issuance of an injunction.

### 2.   Inadequate Remedy at Law

Gibson argues the harm to its goodwill and the lost control of its reputation as embodied in the infringed marks constitutes injury which cannot be quantified, and thus monetary damages are inadequate.  The Court agrees.  "There seems little doubt" that money damages are inadequate to compensate a trademark owner for continuing acts of infringer.  *Abraham*, 708 F.3d at 627.  A plaintiff's loss of control over the quality of products being associated with its mark and the resulting damages to its goodwill could not easily be quantified or undone by monetary damages.  *See Paulsson Geophysical*, 529 F.3d at 313.  Thus, this factor favors granting an injunction.

### 3.   Balance of Hardships

Gibson contends the harm to Armadillo is negligible because an injunction would merely require Armadillo to comply with the Lanham Act, whereas Gibson has lost control of its core reputation.  Defendants maintain the harm to Gibson is minimal, pointing to the jury's finding that Gibson has suffered no actual harm from the infringement.

On the one hand, if the Court does not enter an injunction, Gibson must sue again and seek damages and profits for willful infringement if Armadillo continues selling its infringing guitars.  A permanent injunction thus reduces the need for multiple lawsuits and prevents future

infringement. *See Stygian Songs v. Johnson*, 776 F. Supp. 2d 233, 238 (N.D. Tex. 2011); *see also* 5 McCarthy on Trademarks and Unfair Competition § 30:2 ("An injunction looks to the future, while money damages look to compensation for past injuries.").  Consequently, by denying Gibson's request for injunctive relief, the Court may be forcing Gibson back into litigation, which is certainly a hardship worth consideration.

On the other hand, the Court recognizes the hardship to Armadillo and Concordia would not be insignificant—loss of sales on the DEAN V and DEAN Z guitars, loss of goodwill or harm to reputation that has been built over decades, and a potential redesign of the DEAN Evo Headstock.  However, at bottom, an injunction would merely require Defendants to comply with federal law.  *See Choice Hotels*, 940 F. Supp. 2d at 543.  To be sure, the Court believes the potential hardships to Defendants warrants consideration in crafting the scope of the injunction.  Nonetheless, "[d]enying the injunction would force Gibson to either continually sue [Defendants] for damages that are difficult to prove or endure continued infringement" of its trademarks.  *Gruma Corp. v. Mexican Rests., Inc.*, No. 4:09-cv-488-MHS-ALM, 2013 WL 12134147, at *7 (E.D. Tex. Sept. 27, 2013).  Thus, the Court finds this factor favors the issuance of an injunction.

### 4.  Public Interest

Gibson claims a permanent injunction would support the goals of trademark laws, specifically, protecting the public from confusion or deception.  The Court agrees.  "The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks."  *Scrum*, 2020 WL 4016110, at *17 (quoting *Quantum Fitness*, 83 F. Supp. 2d at 832).  In sum, a careful consideration of the four *eBay* factors leads the Court to conclude that Gibson is entitled to a permanent injunction against Armadillo and Concordia.  However, the Court must take into account the jury's finding

regarding Defendants' laches defense.

### B.  Whether the Laches Finding Bars Permanent Injunction

Laches is an equitable defense that required Armadillo and Concordia to show by a preponderance of the evidence that "(1) [Gibson] delay[ed] in asserting [its] trademark rights, (2) [a] lack of excuse for the delay, and (3) undue prejudice to [Armadillo/Concordia] caused by the delay." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 622 (5th Cir. 2013) (citation omitted). The jury returned a verdict for Armadillo and Concordia on their laches defense as to the Flying V Body Shape (U.S. Reg. No. 2051790), the Explorer Body Shape (U.S. Reg. No. 2053805), and the Dove Wing Headstock Shape (U.S. Reg. No. 1020485).

On the one hand, the Lanham Act explicitly provides that where "equitable principles, including laches, estoppel, and acquiescence, are applicable," even incontestable registrations are subject to those defenses.  15 U.S.C. § 1115(b)(9).  Thus, the Lanham Act makes available the defense of laches to an alleged infringer.  On the other hand, the Lanham Act also authorizes courts to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law.  15 U.S.C. § 1116(a).  "Indeed, injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *Rolex Watch U.S.A., Inc. v. Munn*, No. 6:19-CV-00323-JCB, 2019 WL 7500499, at *5 (E.D. Tex. Nov. 7, 2019) (Love, J.), *report and recommendation adopted*, 2020 WL 90618 (E.D. Tex. Jan. 7, 2020) (Barker, J.) (internal citations omitted); *see also Diageo N. Am., Inc. v. Mexcor, Inc.*, 661 F. App'x 806, 813 (5th Cir. 2016) ("[a] permanent injunction is the usual and normal remedy once trademark infringement has been found[.]").  The core determination for the Court, therefore, is whether the equitable defense of laches prohibits awarding the equitable relief of a permanent

injunction.

Two early Supreme Court decisions influenced the development of laches and estoppel in the intellectual property field.  First, in *McLean v. Fleming*, the Supreme Court held that the plaintiff's delay in filing suit precluded any equitable accounting for the trademark infringer's ill-gained profits.  96 U.S. 245, 258 (1878).  However, such delay did not preclude the issuance of an injunction against further infringement.  *Id.*  Then, in *Menendez v. Holt,* the Supreme Court expanded on the availability of prospective injunctive relief.  128 U.S. 514, 523 (1888).  There, the plaintiff's former employee began selling flour under the same trademark as the plaintiff.  *Id.* at 522.  After a twelve-year delay, the plaintiff discovered the defendant's use of its trademark and filed suit seeking an accounting, as well as an injunction barring the defendant's future use of the mark. *Id.* at 523.  The Supreme Court declined to award the plaintiff an accounting for past profits because of the delay in filing suit, but nonetheless granted an injunction preventing defendant's further use of the trademark.  *Id.* at 524.  The Supreme Court explained that mere delay alone will not completely bar recovery for an intellectual property right unless the delay "has been continued so long, and under such circumstances, as to defeat the right itself.  *Id.* at 523.  However, in *Menendez*, there was nothing "in the nature of an estoppel" nor any "pretence of abandonment" so as to defeat the plaintiff's rights.  *Id.* at 524.  From these cases, the general proposition arises: mere delay on the part of the plaintiff precludes only past recovery, while delay that rises to the level of abandonment or estoppel precludes both past *and* future recovery.  *Id.*  As a result, the Court finds that, generally, the jury's finding of laches alone does not bar Gibson's request for permanent injunction.

One of Defendants' major arguments in favor of denying injunctive relief is Gibson's extensive delay in asserting its rights—forty years for the DEAN V and DEAN Z guitars, and

twenty years as to the DEAN Evo Headstock.  However, as *Menendez* set forth, a trademark holder's mere delay in asserting its rights against an infringer does not preclude its simultaneous right to prevent further infringement.  Indeed, courts have granted injunctions even after delays of over twenty years, regardless of the respective rights of the parties.  *See e.g., Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 41 (1900) (twenty-year delay, injunction granted); *McLean*, 96 U.S. at 258 (approximately twenty-year delay, injunction granted); *Old Charter Distillery Co. v. Cont'l Distilling Corp.*, 174 F. Supp. 312, 331 (D. Del. 1959) (twenty-year delay; limited injunctive relief granted, requiring defendant to display its mark only in connection with its corporate name); *Locatelli, Inc. v. Tomaiuoli*, 129 F. Supp. 630, 636 (D.N.J. 1955) (twenty-year delay bars damages, but not injunction); *see also, e.g., Day Brite Lighting, Inc. v. Sta Brite Florescent Mfg. Co.*, 308 F.2d 377, 383 (5th Cir. 1962) (ten-year delay; remanding case with note that "[i]t may very well be that the plaintiff may prove itself entitled to injunctive relief"); *American Auto. Ass'n (Inc.) v. AAA Ins. Agency, Inc.*, 618 F. Supp. 787, 796 (W.D. Tex. 1985) (thirteen-year delay; injunction granted; holding that where confusion is likely "even a lengthy delay in bringing suit will not bar injunctive relief to protect the public from confusion"). This conclusion makes sense, as the purpose of the Lanham Act, at least in part, is "to protect the ability of consumers to distinguish among competing producers."  *Park ' N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985).  The goal or preventing consumer confusion persists regardless of a trademark owner's inexcusable delay in asserting its rights against an infringing party.  Gibson's delay, therefore, is not enough for the Court to deny a permanent injunction. Though this begs the question: if a decades-long delay is insufficient to bar Gibson's request, what circumstances will preclude the availability of prospective injunctive relief?

The Fifth Circuit has stated a "finding of laches or acquiescence may bar injunctive relief

if the trademark owner conducted itself in a way that induced the infringer's reliance or if an injunction would result in substantial prejudice to the infringer." *Conan Props. v. Conans Pizza, Inc.*, 752 F.2d 145, 153 (5th Cir. 1985). Defendants posit the jury has already found substantial prejudice through its laches finding. However, laches requires a finding of undue prejudice, *Abraham*, 708 F.3d at 622, rather than "substantial prejudice." Defendants' argument improperly equates the two terms. If undue prejudice was all the Fifth Circuit required, it would not have needed to add that a laches finding would bar injunctive relief *if* either: (1) the trademark owner induced the infringer's reliance; or (2) an injunction would result in "substantial prejudice" to the infringer. *Abraham*, 708 F.3d at 626. Thus, the jury's finding alone does not persuade the Court that Gibson acted in such a way as to either induce Defendants' reliance, or that an injunction would cause substantial prejudice to Defendants.[3]

Defendants also argue that, over the course of Gibson's delay, Armadillo made significant investments and developed goodwill in the DEAN V guitar, DEAN Z guitar, and DEAN Evo Headstock. However, Defendants fail to indicate how such investment and development was the result of reliance on Gibson's conduct. For instance, in *Conan*, the plaintiff owned the literary property rights in a fictional character—Conan the Barbarian—and licensed others to use the character in various commercial and entertainment works. 752 F.2d at 147. The plaintiff had two shareholders, one of which was L. Sprague deCamp, a contemporary author. *Id.* at 148. The

---

[3] Defendants also attempt to rely on statements the jurors made after the verdict was rendered to the effect that their intent was for Armadillo to be able to continue making the Dean V, Dean Z, and Evo Headstock. The Court will disregard such argument. To start, the evidence closed before the parties' closing arguments. Statements made after the jury has already rendered its verdict, therefore, necessarily cannot constitute evidence submitted at trial. More importantly, though, the Court affords attorneys the privilege to solicit constructive criticism from the jurors after trial for their own professional growth—not for a tactical advantage in post-trial briefing. Finally, the jurors lacked the legal knowledge to understand what effect its laches finding would have on Armadillo's future production of guitars. Indeed, the Court has spent a generous portion of its analysis considering how the jury's finding impacted Gibson's request for permanent injunction. The Court, therefore, is not persuaded by the statements a few jurors made in polite conversation to the attorneys post-trial.

defendant owned pizza restaurants located in Austin, Texas, which operated under the name "Conans Pizza." *Id*. The restaurants used the Conan the Barbarian character in its menus, signs, promotional materials, and décor. *Id.* While visiting Austin, deCamp visited the first Conans Pizza to ever open. *Id*. While there, deCamp spoke with one of the restaurant's owners, identified himself as the creator of the Conan character, wished the restaurant owners success with the business, took a photograph in front of the restaurant, and signed the photograph: "With best wishes to [the restaurant's owners] from one of Conan's creators – L. Sprague deCamp." *Id*. Roughly five years later, the mark holder sued the restaurants for trademark infringement. *Id*. The Fifth Circuit found that the mark owner was not entitled to a permanent injunction against the defendant, at least in the Austin area, because deCamp's "affirmative acts . . . implicitly if not explicitly authorized" the continued use of the Conan the Barbarian "name and image in connection with restaurant services in Austin." *Id.* at 152. Here, Defendants have not pointed to any affirmative acts on Gibson's part which would constitute authorization of continued infringement, presumably because no such conduct exists. Moreover, in *Conan*, the Fifth Circuit found support in the verdict on the acquiescence defense: "[t]he jury's affirmative finding of acquiescence establishes the reliance necessary to preclude the issuance of an injunction." *Id.* Here, Defendants never pleaded acquiescence, the Court did not instruct the jury on acquiescence, nor was the jury charged with making a finding on acquiescence. The Court finds nothing in the evidence, nor the verdict, that would establish the reliance necessary to preclude an injunction.

Similarly, the Court is not convinced that an injunction would cause substantial prejudice to Defendants, at least for some of the infringing products. For example, the LUNA Athena 501 guitar and LUNA Fauna Hummingbird products have apparently been discontinued, as Armadillo did not produce any units of these models in 2021. Moreover, over the last eight years, Defendants

produced a total of 95,681 units of inventory.  However, over the past eight years, Armadillo produced only eight-hundred units of the DEAN Gran Sport guitar, producing only forty-seven units in 2021.  Similarly, Armadillo produced only 2,653 units of the DEAN V guitar, and only 2,666 units of the Dean Z guitar since 2014.  Thus, the DEAN V and DEAN Z guitars account for only 5.5% of Armadillo's total production over the past eight years.  Because the majority of the infringing products account for only a small percentage of Armadillo's total production and sales, it does not appear Defendants would suffer substantial prejudice from the Court enjoining such products.  *See Abraham*, 708 F.3d at 628 ("The injunction prevents Abraham from selling products that make up less than 2.44% of his total sales. This will not put Abraham out of business.").  Further, in *Abraham*, the Fifth Circuit upheld a permanent injunction against an infringer, even where the infringer testified millions of dollars were invested into rebuilding his business after natural disaster, which he would not have done had he known the mark holders would later sue him for infringement.  *Id.* at 625.  Here, the evidence does not established whether Defendants would have undertaken the investments in development and goodwill had they known Gibson would later sue for infringement.  Thus, Defendants' argument that the extensive investments and developed goodwill should preclude permanent injunction as to the DEAN V guitar, DEAN Z guitar, DEAN Gran Sport guitar, LUNA Athena 501 guitar, and LUNA Fauna Hummingbird products is not persuasive.[4]  The DEAN Evo Headstock, however, is a different story.

---

[4] Defendants argue injunction as to the LUNA Athena 501 guitar, and LUNA Fauna Hummingbird products would be inappropriate because they have been discontinued.  However, courts have "considerable discretion in fashioning an appropriate remedy for infringement."  *Taco Cabana Int'l v. Two Pesos, Inc*., 932 F.2d 1113, 1127 (5th Cir. 1991). The Court has the ability to enjoin infringing uses even extends to the power to issue injunctions against a resumption of discontinued infringement.  *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 198 (5th Cir. 1998) (upholding district court's issuance of a permanent injunction and stating that simply ceasing the infringing activity does not allow an infringing party to escape liability).  Because Defendants have not demonstrated their intention not to resume production of these infringing products, the Court finds the issuance of an injunction is appropriate.  *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' The burden is a heavy one.") (citations omitted).

In the past eight years, Armadillo has produced 89,099 units of the DEAN Evo Headstock—out of a total 95,681 units of Dean-brand products.  Thus, while the DEAN Evo Headstock is included in the infringing products, it is also included in a significant number of non-infringing products.  Banning the manufacture, advertisement, and sale of all products that include the DEAN Evo Headstock would bring Armadillo's business to a grinding halt.  Such a result would certainly cause substantial prejudice. *Cf. B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1270 (5th Cir. 1971) (relief should be "only that which is required to distinguish the two products, and no more"); *Trail Chevrolet, Inc. v. Gen. Motors Corp.*, 381 F.2d 353, 354 (5th Cir. 1967) (prohibition against all use of the CHEVROLET mark was too broad because the defendant has the right to inform customers that it sells used Chevrolet automobiles).  Indeed, the Fifth Circuit in *Abraham* upheld the lower court's decision not to enjoin the sale of an infringing product that drove the infringer's "sales of other, non-infringing products—the only item that if enjoined from selling, would cause Abraham substantial prejudice."  708 F.3d at 628.  The substantial prejudice that would result from issuing an injunction against the sale, advertisement, or manufacture of products containing the DEAN Evo Headstock, therefore, precludes the Court from granting Gibson's request on this infringing shape.

As a result, the Court will enjoin Defendants from manufacturing, selling, advertising, or contributing to the manufacture, advertisement of the DEAN V guitar, DEAN Z guitar, DEAN Gran Sport guitar, LUNA Athena 501 guitar, and LUNA Fauna Hummingbird products.  However, the Court will not grant Gibson's request regarding the DEAN Evo Headstock.  The Court will now turn to Gibson's request for profits.

## II.    Disgorgement of Profits

Section 1117 of the Lanham Act sets forth the statutory scheme for awarding damages in

a trademark infringement case.  Section 1117(a) entitles a markholder to recover the defendant's profits, subject to the principles of equity.  *See* 15 U.S.C. § 1117(a); *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 584 (5th Cir. 1980).  An award of profits in a Lanham Act case—otherwise known as disgorgement of profits or an accounting of profits—is meant to measure the net profits that the defendant reaped from its infringing activities and transfer those net profits to the plaintiff.  *Id.* at 585.  That said, profits are not automatically awarded once infringement is proven.  *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 875 (5th Cir. 2019) ("A plaintiff's entitlement to disgorged profits is assessed based on the equities of the case and does not automatically follow from liability.").  Moreover, where the equities of the case may be satisfied by an injunction, the court will not award profits to the plaintiff.  *Champion Spark Plug*, 331 U.S. 125, 131 (1947) (denying accounting in unfair competition and trademark infringement case where injunction satisfied equities of case).  In determining whether a plaintiff is entitled to the defendant's profits under § 1117(a), the Fifth Circuit has established a non-exhaustive list of factors it will use: "(1) whether the defendant intended to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting her rights; (5) the public interest in making the conduct unprofitable, and (6) whether it is a case of palming off.  *Retractable Techs.*, 919 F.3d at 876; *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000); *Rolex Watch USA Inc. v. Meece*, 158 F.3d 816, 823 (5th Cir. 1998); *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998).

When counterfeit marks are involved—as is the case here—§ 1117(b) of the Lanham Act is also applicable.  15 U.S.C. § 1117(b).  Under this subsection, a plaintiff seeking a remedy under § 1117(a) is entitled to three times the actual damages or profits—whichever is greater—plus reasonable attorney's fees in every case, except when there are "extenuating circumstances."

15 U.S.C. § 1117(b).  Finally, a plaintiff may eschew actual damages under § 1117(a) and elect to seek statutory damages under § 1117(c).  Section 1117(c) provides:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services[.]

15 U.S.C. § 1117(c).

Gibson seeks disgorgement of profits earned through the sale of products "bearing the infringing and/or counterfeit marks" (Dkt. #509 at pp. 1–2).  Gibson argues the Fifth Circuit's factors support an award under § 1117(a), and, for some of the trademarks, § 1117(b) mandates trebling of such profits.

First, Defendants respond that laches bars this request.  However, laches does not necessarily bar the request.  By finding laches, the jury impliedly found Gibson unreasonably delayed in asserting its rights.  Such a finding is properly considered when evaluating the fourth of the Fifth Circuit's factor.  Further, the jury did not make an affirmative laches finding on all of the Gibson Trademarks.  Thus, laches does not operate as a complete bar to an accounting of profits.

Second, Defendants argue that the jury already decided this issue.  Indeed, the jury was asked: "Has Gibson proven by a preponderance of the evidence that Gibson suffered actual damages as a result of Armadillo's infringement?" (Dkt. #497 at p. 8).  The jury returned its verdict, answering "No" to this question.  Defendants' point is well taken, and certainly the Court sees no reason to disturb the jury's finding on actual damages.  However, the Lanham Act lists damages and profits as distinct remedies.  15 U.S.C. § 1117(a).  This distinction reflects the different purposes served by the different remedies.  *SCA Hygiene Prods. Aktiebolag v. First*

16

*Quality Baby Prods., LLC*, 137 S. Ct. 954, 964 (2017) ("The remedy of damages seeks to compensate the victim for its loss, whereas the remedy of an accounting . . . [seeks] disgorgement of ill-gotten profits.").  Indeed, under the Lanham Act, "injury" is not synonymous with proof of actual damages—even where a plaintiff fails to prove actual damages, it may still establish injury.  *Logan v. Burgers Ozark Country Cured Hams*, 263 F.3d 447, 462–63 (5th Cir. 2001). Thus, Defendants' argument to the effect that the jury already decided this issue cannot carry the day.  The Court will now turn to an analysis of the specific factors that support an award of profits under § 1117(a).

### A.  Intent to Confuse or Deceive

Gibson argues the jury found Armadillo willfully counterfeited five of the Gibson Trademarks, thus this factor weighs in favor of an award of profits.[5]  Defendants point out that the Court's instruction that Armadillo acted willfully if it knew it was infringing or "if it acted with deliberate indifference to Gibson's trademark rights" (Dkt. #492 at pp. 2–3), which does not include intent to confuse or deceive (Dkt. #537 at p. 14).  Moreover, Defendants note the instruction on unclean hands did include language on Armadillo's intent to "confuse or deceive buyers," (Dkt. #492 at p. 26), and the jury found no unclean hands (Dkt. #497).

While Defendants' points are valid, it does not change the fact that "willful infringement is an important factor which must be considered when determining whether an accounting of profits is appropriate."  *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir. 2002). Additionally, the Fifth Circuit often discusses "willful infringement" in the context of this factor. *See id.*; *see also Pebble Beach Co.*, 155 F.3d at 554 (describing the willfulness factor as "whether the defendant had the intent to confuse or deceive").  Thus, the caselaw shows willfulness is often

---

[5] The jury found Armadillo willfully *infringed* certain Gibson Trademarks, rather than willfully *counterfeiting* the Gibson Trademarks (Dkt. #498 at pp. 2–3).

equated with an intent to confuse or deceive.  The jury found Armadillo's infringement of the Flying V Body Shape, the Explorer Body Shape, the ES Body Shape, the SG Body Shape, and the Hummingbird word mark was willful.  Consequently, the jury's finding favors an accounting.  That said, while the jury's willfulness finding is persuasive, it is not dispositive.  *Cf. Id.*  ("[W]e decline to adopt a bright-line rule in which a showing of willful infringement is a prerequisite to an accounting of profits. Rather, we reaffirm the factor-based approach[.]").  The Court, therefore, will continue in its evaluation of the other factors.

### B.  Diversion of Sales

Defendants argue Gibson failed to present evidence that any of its potential sales were diverted to Armadillo, and the jury found no actual damages as a result of Armadillo's infringement, thus this factor disfavors an accounting.  The Court agrees.

Gibson does not point to evidence of any diverted sales—let alone minimal or speculative evidence—that would show how this factor supports an accounting.  Instead, Gibson points to Armadillo's increased sales and profits, without arguing how it suffered in a decline of sales, or other loss, related to Armadillo's infringement.  *Seatrax*, 200 F.3d at 372 & n.8 (finding evidence of diversion of sales was "speculative at best" where the mark holder's president testified it experienced no decline in sales).  Indeed, Gibson has neither requested nor submitted evidence regarding damages from lost profits. "Under 15 U.S.C. § 1117(a), the plaintiff has the burden of showing the amount of the defendant's sales of the infringing product." *Maltina*, 613 F.2d at 586. Gibson has not met that burden.  Accordingly, this factor does not favor an accounting.

### C.  Adequacy of Other Remedies

The injunctive relief the Court has already decided to grant satisfies the equities in this case.  "[A] permanent injunction should be able to prevent any future instances of

infringement." *Choice Hotels,* 940 F. Supp. 2d at 546 (citing *Pebble Beach*, 155 F.3d at 555).  The Court has already granted Gibson's request to enjoin Defendants from producing, marketing, or selling—or resuming the production, marketing, or selling of—the DEAN V guitar, DEAN Z guitar, DEAN Gran Sport guitar, LUNA Athena 501 guitar, and LUNA Fauna Hummingbird products, without geographical limitation.  One purpose of an accounting is to deter future infringement.  *Tex. Pig Stands v. Hard Rock Cafe Int'l*, 951 F.2d 684, 699 (5th Cir. 1992).  The permanent injunction already serves such purpose.  Thus, because other remedies satisfy the equities, this factor does not favor an accounting.

### D.  Unreasonable Delay

Defendants assert the jury already found unreasonable delay through its laches finding, and thus this factor does not support an accounting.  The Court agrees.  Even Gibson concedes this factor does not favor its request due to the jury's laches finding on some of the Gibson Trademarks.

### E.  Public Interest

The Court has already stated the public interest is adequately served through the permanent injunction.  Although the Court acknowledges that, because it has declined to enjoin the manufacture, advertisement, and sale of the DEAN Evo Headstock, it could be argued the continued production and sale of guitars with the DEAN Evo Headstock disserves the public interest in not being deceived.  *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 763, 773 (N.D. Tex. 2009).  However, as noted previously, the Evo Headstock is included in a large portion of the Dean-brand inventory, the majority of which are non-infringing products (excluding the DEAN Evo Headstock).  "The public generally benefits from aggressive competition in the market place among non-infringing products."  *Data Race, Inc. v. Lucent, Techs., Inc.*, 73 F. Supp. 2d 698, 723 (W.D. Tex. 1999).  A permanent injunction as to the DEAN Evo Headstock would

essentially eliminate a Gibson-competitor from the market, thereby disserving the public's interest in "aggressive competition in the market place among non-infringing products." *Id*.  The Court, therefore, finds the public interest does not favor an accounting.

**F.  Palming Off**

Palming off "occurs when a producer misrepresents his own goods or services as someone else's." *McArdle v. Mattel Inc.*, 456 F. Supp. 2d 769, 783 (E.D. Tex. 2006).  It is undisputed that neither Gibson nor Armadillo have engaged in such conduct.  The Court, therefore, finds this factor disfavors an accounting.

**G.  Conclusion**

In sum, there has been neither a diversion of sales, nor have Defendants engaged in any conduct that would constitute palming off.  The fact that these factors are not satisfied weighs strongly against Gibson's request for an accounting of profits.  *Pebble Beach*, 155 F.3d at 555 ("There were no diverted sales nor palming off in this case, which are both significant factors."); *see also Champion Spark Plug*, 331 U.S. at 131 (affirming a denial of profits where no fraud or palming off was evident).  Moreover, the jury already decided Gibson unreasonably delayed in asserting its trademark rights, at least as to some of the Gibson Trademarks.  Further, the Court's decision to grant a permanent injunction outweighs the need for an accounting.  Finally, the public interest factor does not weigh in favor of an accounting.

The Fifth Circuit has noted that "[g]reat latitude is given the district court in awarding damages under the Lanham Act, 'which expressly confers upon the district judges wide discretion in determining a just amount or recovery for trademark infringement.'"  *Martin's Herend Imps., Inc. v. Diamong & Gem Trading USA, Co.*, 112 F.3d 1296, 1304 (5th Cir. 1997) (quoting *Holiday Inns, Inc. v. Alberding*, 683 F.2d 931, 935 (5th Cir. 1982)).  Weighing the factors and exercising

its discretion, the Court denies Gibson's request for an accounting.[6]

## III.     Costs

Gibson requests costs in the amount of $335,760.61.  Defendants argue the request is premature because Final Judgment has not yet been entered, thus, it is unknown whether Gibson is the prevailing party.  Defendants also argue Gibson's request failed to comply with Local Rule 54.  Local Rule 54 provides:

> A party awarded costs by final judgment or by judgment that a presiding judge directs be entered as final under Fed. R. Civ. P. 54(b) must apply to the clerk for taxation of such costs by filing a bill of costs. Unless otherwise provided by statute or by an order of the presiding judge, the bill of costs must be filed with the clerk and served on any party entitled to such service no later than fourteen days after the clerk enters the judgment on the docket.

E.D. Tex. Civ. R. 54(b).  The Court agrees that Gibson's request for a specific amount of costs is premature.  Because the request is premature, Gibson has not complied with the Local Rule.  The Court has not yet entered Final Judgment, thus Gibson is not yet under any obligation to apply to the clerk for taxation of costs.  The Court will now turn to whether Gibson is the prevailing party in this litigation, and thus entitled to costs.

Federal Rule of Civil Procedure 54 provides that "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees— should be allowed to the prevailing party."  FED. R. CIV. P. 54(d)(1).  "Prevailing party" is a legal term of art and defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001), citing *Prevailing Party*, BLACK'S LAW DICTIONARY (7th ed. 1999)

---

[6] Because the Court finds an accounting is not appropriate here, and because the jury already found Gibson suffered no actual damages, there is no award that may be a basis for trebling under § 1117(b).  Thus, while the jury found Gibson sold or marketed a counterfeit of Gibson's Flying V Body Shape Design, Explorer Body Shape Design, SG Body Shape Design, and the HUMMINGBIRD word mark (Dkt. #498 at p. 2), § 1117(b)'s mandate is inapplicable.

(internal quotations and citations omitted).  To qualify as a prevailing party, "[t]he plaintiff must obtain an enforceable judgment . . . or comparable relief through a consent decree or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111, (1992).  A court must look at the case as a whole to determine the prevailing party.  *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991).  "A party need not prevail on all issues to justify an award of costs." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co*., 713 F.2d 128, 132 (5th Cir. 1983) (citations omitted).

Looking at the case in its entirety, the Court finds Gibson is the prevailing party.  The focus of the determination on whether one is a prevailing party is whether he or she has "been successful on the central issue." *Iranian Students Ass'n v. Edwards*, 604 F.2d 352, 353 (5th Cir. 1974).  Here, the central issue was the enforcement of trademark rights.  Here, the jury found: (1) Armadillo willfully infringed on six of the seven Gibson Trademarks; (2) Armadillo counterfeited four of the Gibson Trademarks; (3) Concordia contributed to Armadillo's infringement; (4) laches did not apply to three of the Gibson Trademarks; and (5) none of the Gibson Trademarks should be cancelled because they are generic (Dkt. #498).  Moreover, the jury awarded $4,000 in counterfeit damages (Dkt. #498 at p. 9), and the Court is granting a permanent injunction regarding six of the Gibson Trademarks.  Thus, Gibson has been successful on the central issue.  *Id.*; *see also Watkins v. Mobile Hous. Bd.*, 632 F.2d 565, 567 (5th Cir. 1980) (emphasizing the plaintiff had obtained a permanent injunction against defendant in determining the plaintiff was the prevailing party).  Gibson, therefore, is the prevailing party.  Because Gibson is the prevailing party, it is entitled to costs.

## IV.   Fees

Gibson argues, as the prevailing party, it is also entitled to fees.  Defendants respond that Gibson's request is premature.  The Court agrees.  Having reviewed the briefing regarding

attorneys' fees, the Court finds Gibson's arguments are best saved for a Rule 54 motion for attorneys' fees.  Accordingly, the Court will not address attorneys' fees—either entitlement or amount—at this time.

## CONCLUSION

It is therefore **ORDERED** that Defendants shall be enjoined from manufacturing, selling, advertising, or contributing to the manufacture, advertisement, or sale of the DEAN V guitar, DEAN Z guitar, DEAN Gran Sport guitar, LUNA Athena 501 guitar, and LUNA Fauna Hummingbird products.  The Court will issue Final Judgement as to both Defendants consistent with this Order.

**IT IS SO ORDERED.**

**SIGNED this 28th day of July, 2022.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE