IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| GIBSON BRANDS, INC., a Delaware corporation,<br><br>　　　Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>ARMADILLO DISTRIBUTION ENTERPRISES, INC.; CONCORDIA INVESTMENT PARTNERS, LLC,<br><br>　　　Defendant/Counterclaim-Plaintiff<br><br>DOES 1 through 10,<br><br>　　　Defendants. | Case No. 4:19-cv-00358-ALM |

**PLAINTIFF'S MOTION FOR CIVIL CONTEMPT DUE TO DEFENDANTS'
VIOLATIONS OF THE PERMANENT INJUNCTION**

**TABLE OF CONTENTS**

I. BACKGROUND ................................................................................................................1

II. LEGAL STANDARDS AND REMEDIES FOR CIVIL CONTEMPT .................................. 3

III. CLEAR AND CONVINCING EVIDENCE EXISTS PROVING ARMADILLO'S CONTEMPTUOUS CONDUCT ........................................................................................ 4

    1. Armadillo failed to promptly take down the infringing guitars from their Dean Guitars website .... 5

    2. Armadillo bragged that it would continue to market and sell at least the Dean V and Dean Z guitars ................................................................................................................................ 6

IV. ARMADILLO SHOULD BE COERCED INTO COMPLIANCE AND COMPENSATE GIBSON FOR LOSSES SUSTAINED .................................................................................. 6

    A. The Court Should Fine Armadillo to Secure Compliance with the Order ................................. 7

    B. The Court Should Award Gibson Its Reasonable Costs and Fees ............................................. 8

    C. Gibson Rights Should be Reserved in Seeking Additional Compensatory Sanctions ............... 9

V. CONCLUSION .................................................................................................................. 9

# TABLE OF AUTHORITIES

## CASES

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*
154 F.3d 1345, 1353 (Fed. Cir. 1998) ................................................................................4

*American Airlines, Inc. v. Allied Pilots Ass'n*
228 F.3d 574, 581 (5th Cir. 2000) ............................................................................3,4,5,7

*Blackmer v. United States*
284 U.S. 421 (1932) ..........................................................................................................3,4

*Chao v. Transocean Offshore, Inc.*
276 F.3d 725, 729 (5th Cir. 2002) .....................................................................................4

*Chi. Truck Drivers*
207 F.3d at 504 ...................................................................................................................8

*Federal Deposit Ins. Corp. v. LeGrand*
43 F.3d 163, 170 (5th Cir. 1995) .......................................................................................6

*Mine Workers v Bagwell*
512 U.S. at 827 .................................................................................................................6,7

*N.L.R.B. v. Trailways, Inc.*
729 F.2d 1013, 1017 (5th Cir. 1984) .................................................................................4

*Pioneer Inv. Servs. Co. v. Brunswick Assocs.*
507 U.S. 380, 397 (1993) ....................................................................................................4

*SEC v. First Fin. Group*
659 F.2d 660, 669 (5th Cir. 1981) .....................................................................................3

*Test Masters Educational Serv., Inc. v. Singh*
428 F.3d 559, 581-82 (5th Cir. 2005) ................................................................................3

*United States v. United States Mine Workers*
330 U.S. 258, 303-04, 67 S. Ct. ........................................................................................6,7

## CODES AND STATUES

Fed. R. Civ. P. 4 ..................................................................................................................7

Fed. R. Civ. P. 5 ..................................................................................................................7

Fed. R. Civ. P. 70 ................................................................................................................7

Defendant, Armadillo Distribution Enterprises, Inc. (Armadillo) is not in compliance with the Final Judgment containing a Permanent Injunction Order entered by this Court on July 28, 2022 (Document 547). Prior to the entry of the Final Judgment, Armadillo publicly stated that it will continue to market the Dean Z and Dean V guitar models, despite the jury's verdict. It now continues that course despite the Court's judgment. In view of Armadillo's direct violations of the Permanent Injunction Order and under Fed. R. Civ. P. 70, Plaintiff Gibson Brands, Inc. (Gibson) requests an order of the Court finding Armadillo guilty of Civil Contempt.

I. BACKGROUND

Gibson is in the business of producing and selling musical instruments and has been active in this space for more than 100 years. Gibson owns registered trademarks in trademarks (a) the ES Body Shape Design (U.S. Reg. No. 2007277); (b) the SG Body Shape Design (U.S. Reg. No. 2215791); (c) the HUMMINGBIRD word mark (U.S. Reg. No. 1931670); (d) the Flying V Body Shape Design (U.S. Reg. No. 2051790); (e) the Explorer Body Shape Design (U.S. Reg. No. 2053805); and (f) the Dove Wing Headstock Design (U.S. Reg. No. 1020485).

Gibson sued Armadillo and its parent company Concordia Investment Partners, LLC on May 14, 2019 for trademark infringement of the above marks. Following a jury trial, the jury on May 22, 2022, found that Armadillo had infringed, among others, Gibson's Flying V® (used in the Dean V) and Explorer® (used in the Dean Z) trademark designs. Subsequent to this jury determination, this Court entered a Final Order on July 28, 2022, ordering Armadillo to permanently stop the manufacture, advertisement, and/or sale of its: (1) LUNA Athena 501 guitar; (2) DEAN Gran Sport guitar; (3) guitars bearing, using, or advertising with the word "Hummingbird;" (4) DEAN V guitar; and (5) DEAN Z guitars. *See* Dkt. No. 547.

Following the jury verdict, Dean almost immediately removed the DEAN Gran Sport from its website, but Evan Rubinson, who was then CEO of Armadillo, stated publicly that Armadillo

D/B/A Dean Guitars, had no intention of stopping the marking and sale of their DEAN V and DEAN Z guitars. *See* Dec. of A Bates ¶ 4.

> **With the jury ruling that Gibson's trademarks are not generic, will Dean drop any models from its product line?**
>
> "We have no plans to drop the Dean V and Z guitars, nor the Dean Evo headstock design, as the jury found no trademark liability on any of those. That said, the case is by no means over

*See* Dec. of A Bates ¶ 2.

As per their former CEO, they have, in fact, not ceased.

On August 8th and again on August 12th (14+ days from the date of the injunction order), Gibson found the following listings on the Dean Guitar website:



2



Armadillo is clearly violating the Court's injunction that Armadillo stop marketing and selling the Dean V and Dean Z guitars. *See* Dec. of A Bates ¶ 4.

## II. LEGAL STANDARDS AND REMEDIES FOR CIVIL CONTEMPT

Fed. R. Civ. P. 70 provides the Court with the authority to hold a party in contempt for failure to comply with a judgment. The standard as set forth by the Fifth Circuit is that "[a] party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *SEC v. First Fin. Group*, 659 F.2d 660, 669 (5th Cir. 1981). Gibson bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect, (2) that the order required certain conduct by the Defendants (the respondents), and (3) that the Defendants failed to comply with the court's order. *American Airlines, Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 581 (5th Cir. 2000); *Test Masters Educational Serv., Inc. v. Singh*, 428 F.3d 559, 581-82 (5th Cir. 2005); *Blackmer v. United*

3

*States,* 284 U.S. 421 (1932) (the court's contempt power may reach United States citizens residing overseas). The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order. *See N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir. 1984); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1353 (Fed. Cir. 1998) ("The general rule in civil contempt is that a party need not intend to violate an injunction to be found in contempt.") Even if Armadillo could show that they are failing to comply with the Court's Order in good faith, which Gibson submits they cannot, the Fifth Circuit has consistently held that good faith is not a defense to a finding of civil contempt. *See, e.g., Chao v. Transocean Offshore, Inc.,* 276 F.3d 725, 729 (5th Cir. 2002).

### III. CLEAR AND CONVINCING EVIDENCE EXISTS PROVING ARMADILLO'S CONTEMPTUOUS CONDUCT

Armadillo's unlawful activities have continued and disregard this Court's Permanent Injunction Order. In the present case, elements (1) and (2) of a showing for civil contempt are satisfied by the existence of this Court's Permanent Injunction Order of July 28, 2022, which remains in effect and permanently enjoins Armadillo from the conduct specified therein. *American Airlines,* 228 F.3d at 581. By operation of this Court's local rules, counsel of record for Armadillo received a copy of the Court's Permanent Injunction Order when it was entered on July 28, 2022. As such, Armadillo is charged with notice of the contents and existence of Court's permanent injunction order as of this date. *Pioneer Inv. Servs. Co. v. Brunswick Assocs.,* 507 U.S. 380, 397 (1993) (It is well established that "courts ordinarily deem a party represented by counsel `to have notice of all facts, notice of which can be charged upon the attorney.'") (Citation omitted).

As demonstrated below, with regard to element (3), Gibson believes clear and convincing evidence exists that Armadillo has completely disregarded and wholly failed to comply with the Court's Permanent Injunction Order, for example, by continued marketing and sale of its Dean V

and Dean Z guitars.

The foregoing evidence regarding Armadillo's continued advertising, marketing and sale of the exact guitars they were permanently enjoined from advertising, marketing and selling shows clearly and convincingly that Armadillo has been disrespecting and violating the express provisions of this Court's Permanent Injunction Order. Because all three of the *American Airlines* factors are met in this situation, the Court should appropriately find Armadillo in contempt.

### 1. Armadillo failed to promptly take down the infringing guitars from their Dean Guitars website

After the permanent injunction was entered, Armadillo at least disregarded the Order and failed to comply by not taking down the infringing guitars from their websites at [https://www.deanguitars.com/](https://www.deanguitars.com/), [https://www.deanguitars.com/series?id=v](https://www.deanguitars.com/series?id=v), [https://www.deanguitars.com/series?id=z](https://www.deanguitars.com/series?id=z). *See* Dec. of A Bates ¶ 4. Surely, the first place a business should start when it has been enjoined against marketing and selling a particular product is its own website. Failure to comply in such an easily accessible medium suggests that without a finding of contempt, Gibson will need to closely monitor all Armadillo activities as well as contact the Registrar of record for the deanguitars.com domain name to provide them with a copy of the Permanent Injunction.

Armadillo's failure to promptly remove the infringing products from their website violates the Permanent Injunction Order contained within the Final Judgment, which permanently enjoined Armadillo from the manufacture, advertisement, and/or sale of its: (1) LUNA Athena 501 guitar; (2) DEAN Gran Sport guitar; (3) guitars bearing, using, or advertising with the word "Hummingbird;" (4) DEAN V guitar; and (5) DEAN Z guitars. *See* Dkt. No. 547. Indeed, Armadillo's action in immediately removing the Gran Sport from the website based on the jury verdict demonstrates its ability to do the same with the Dean V and Dean Z once judgment issued.

As mentioned above, although Counsel for Gibson may be able to police part of this issue directly, this burden should not be on them and Gibson is entitled to its costs and expenses, including reasonable attorney's fees associated with having to monitor and take affirmative action.

### 2. Armadillo bragged that it would continue to market and sell at least the Dean V and Dean Z guitars

Then CEO of Armadillo, Evan Rubinson, boasted in an interview with Guitar.com on June 3, 2022, following the jury verdict finding trademark infringement of valid trademarks, "We have no plans to drop the Dean V and Z guitars, nor the Dean Evo headstock design, as the jury found no trademark liability on any of those." *See* Dec. A. Bates ¶ 3.

### IV. ARMADILLO SHOULD BE COERCED INTO COMPLIANCE AND COMPENSATE GIBSON FOR LOSSES SUSTAINED

"Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both. *Id.* at 505 (citing *United States v. United States Mine Workers*, 330 U.S. 258, 303-04, 67 S. Ct. "Either incarceration or a fine may accomplish the purpose of coercion, while, '[w]here compensation is intended, a fine is imposed, payable to the complainant.'" *Id.* An alleged civil contemnor is entitled to notice and an opportunity to be heard before a court finds him in contempt. See *Bagwell,* 512 U.S. at 827; *see Am. Airlines,* 228 F.3d at 583-84 (motion for contempt and show cause order provided sufficient notice); *Federal Deposit Ins. Corp. v. LeGrand,* 43 F.3d 163, 170 (5th Cir. 1995) (burden rests on alleged contemnor at show cause hearing to rebut allegations, demonstrate inability to comply, or provide other relevant defenses); *see also* Fed. R. Civ. P. 4.1, Adv. Comm. Note (order to show cause why party should not be held in contempt may be served under Fed. R. Civ. P. 5).

In fashioning coercive sanctions for civil contempt, district courts should consider "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United*

6

*Mine Workers,* 330 U.S. 258,304 (1947). Appropriate sanctions may include a coercive daily fine, a compensatory fine, or coercive incarceration. *Id.* at 303-304; *see Bagwell,* 512 U.S. at 827-29 (discussing fines and incarceration for civil contempt). When fixing the amount of coercive daily fines, district courts should consider "the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *United Mine Workers,* 330 U.S. at 304.

### A. The Court Should Fine Armadillo to Secure Compliance with the Order.

As discussed above, the Court has several tools at its disposal to coerce compliance with the Order, including monetary sanctions payable to the Court or incarceration. In addition, as per Fed. R. Civ. P. 70, this Court can assign an administrator to take down the offending advertisements. Gibson suggests that the Court sanction Armadillo by fining them at least $2,000 per day until they purge the contempt by (1) complying with every requirement of the permanent injunction, (2) paying any accrued fines, and (3) certifying to the Court that they have done so. If the materials are not taken down within ten (10) days thereafter, an administrator be appointed to take down the advertisements.

Fines, incarceration, and an administrator appointment are appropriate in this case given Armadillo's brazen defiance of the Court's Order. Gibson has already succeeded on the merits of its claims and shown that irreparable harm has been caused by Armadillo's trademark infringement. This irreparable harm continues even with the permanent injunctive relief granted by the Court because Armadillo is refusing to comply with the Court's Order.

Sanctioning Armadillo would also likely be effective. Armadillo's former CEO publicly stated that Armadillo does not believe that they need to comply with the jury's verdict. *See* Dec. A. Bates ¶ 3. While Gibson disagreed it assumed that the defiance would end with the Court's Order. Now, given that Armadillo believes that the Court's Order also need not be followed, a strong sanction

7

will undoubtedly be necessary to bring Armadillo into compliance. It was well documented that Armadillo had intellectual property insurance to pay for its trademark infringement defense. *See* Dec. A. Bates ¶ 6. That will no longer be the case where now a jury, not just Gibson, has pointed out Armadillo's illegal actions. Armadillo is profiting from their contemptuous conduct by continuing to use Gibson's trademarks and market and sell guitars specifically enjoined in this Court's Permanent Injunction. A strong financial incentive to comply with the Court's Order is necessary to bring Armadillo into compliance.

Armadillo's willfulness to ignore the Court's Order also supports a strong sanction. Plaintiff's Counsel emailed Counsel for Armadillo multiple times prior to filing this action, requesting compliance. *See* Dec. A. Bates ¶ 4. As federal courts have consistently recognized, "[o]ne of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chi. Truck Drivers*, 207 F.3d at 504. Here, Armadillo has exhibited a pattern of behavior that suggests they believe they are above the law. A strong sanction will disabuse them of that view.

Gibson is not advocating for these fines to be punitive. Rather, Gibson believes that a daily fine of this magnitude in the event of further noncompliance within a specified period and/or appointment of an administrator, is necessary to bring Armadillo into compliance with the Court's Order.

### B. The Court Should Award Gibson Its Reasonable Costs and Fees.

In addition to daily fines, Armadillo should also be ordered to provide compensatory sanctions in the form of Gibson's reasonable costs and fees, including attorney fees. Gibson attempted to secure compliance with the Court's Order by alerting Defendant's counsel to the continued infringement. *See* Dec. A. Bates ¶5. This attempt was ignored, necessitating this motion. Gibson has invested generations of time and money to establish the credibility of the products

associated the trademarks Armadillo continues to infringe. Gibson litigated Armadillo's infringement. A jury found infringement. Yet Gibson has had to continue to incur attorney fees to continue to monitor Armadillo's unlawful activities, as well as the fees associated preparing and filing this Motion for Civil Contempt. Gibson should not need to incur continued fees on a case that has been decided. But because of Armadillo's contempt they have to. Therefore, Gibson also seeks an award of its costs and attorney fees. *See* Dec. A. Bates ¶ 5.

The Court should accordingly award Gibson its reasonable costs and attorneys' fees incurred in bringing this motion.

### C. Gibson Rights Should be Reserved in Seeking Additional Compensatory Sanctions.

Gibson does not know the full extent of monetary damage that has been caused by Armadillo's violation of this Court's Order. To the extent the Court enters a finding of contempt, Gibson reserves the right to request compensatory sanctions beyond costs and fees after an adequate opportunity to conduct discovery to determine the full extent of its losses caused by Armadillo's willful violation of the Court's Order.

### V. CONCLUSION

Armadillo's unlawful conduct set out above shows not only via clear and convincing evidence that Armadillo has no regard for the lawful rights of Gibson, but also that they have purposefully and consciously disregarded, and outright ignored, both a jury verdict and this Court's July 28, 2022 Permanent Injunction Order. Armadillo's malfeasance must stop immediately and Armadillo should be found in Contempt of Court.

Gibson also respectfully submits that it is justified for the Court to sanction Armadillo with daily fines, appoint an administrator and to award Gibson its costs and expenses (including an award of its attorney's fees) occasioned by Armadillo's blatant disregard of this Court's Order.

Respectfully submitted this 12th day of August 2022.

/s/ *Andrea E. Bates*
Andrea E. Bates
*Pro Hac Vice*
Kurt Schuettinger
*Pro Hac Vice*
Johnathan M. Bates
*Pro Hac Vice*
Bates & Bates, LLC
1890 Marietta Boulevard NW
Atlanta, Georgia 30318
Telephone: (404) 228-7439
Facsimile:  (404) 963-6231
abates@bates-bates.com
kschuettinger@bates-bates.com
jbates@bates-bates.com

Stephen D. Howen
State Bar No. 10117800
Law Office of Steve Howen
7111 Bosque Blvd., Suite 305
Waco, TX 76710
Telephone: (254) 826-6526
Facsimile: (254) 822-4926
steve@stevehowenlegal.com

Attorneys for Plaintiff
GIBSON BRANDS, INC.

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served on all counsel of record via this Court's CM/ECF electronica filing system on August 11, 2022.

10

*/s/Andrea E. Bates*
Andrea E. Bates
