# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| GIBSON BRANDS, INC., <br><br>*Plaintiff,* <br><br> v. <br><br> ARMADILLO DISTRIBUTION ENTERPRISES, INC. and CONCORDIA INVESTMENT PARTNERS, LLC, <br><br> *Defendants.* | § § § § § § § § § § § § § § Civil Action No. 4:19-CV-358 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Gibson Brands, Inc.'s Application for Profits, Attorneys' Fees, and Costs (Dkt. #611). Having reviewed the motion and the subsequent briefing, the Court finds that the motion should be **GRANTED in part.**

### BACKGROUND

The above-captioned lawsuit between Plaintiff Gibson Brands, Inc. ("Gibson") and Defendants Armadillo Distribution Enterprises, Inc. and Concordia Investment Partners, LLC (collectively, "Armadillo") has been with the Court since May of 2019 (Dkt. #1). Gibson filed suit alleging "trademark infringement, trademark counterfeiting, unfair competition, trademark dilution, and other related causes of action under federal, state and common law arising from Defendant Armadillo's unauthorized use of Gibson's" guitars (Dkt. #1 at p. 1). After a nine-day trial, the jury returned a mixed verdict (Dkt. #498). On July 28, 2022, the Court entered a Final Judgment, which contained a permanent injunction against Armadillo, which prohibited Armadillo from using certain Gibson guitar shapes (Dkt. #547).

On August 12, 2022, Gibson filed a motion for civil contempt, arguing that Armadillo was in violation of the permanent injunction because Armadillo was still selling the infringing Gibson guitars on its official website, among other reasons (Dkt. #552). On March 3, 2023, the Court granted Armadillo's motion, finding that Armadillo was in violation of the Court's permanent injunction because of the guitars being sold on the website (Dkt. #609). As a result, the Court held that Armadillo was in civil contempt. However, before it could address the proper sanctions, the Court instructed Gibson to file a motion "for profits relating to Gibson's contemptuous conduct" and for attorneys' fees related to the Court's Order (Dkt. #609 at p. 8).

The Court does note that Gibson filed a second motion for civil contempt—which raised new reasons why Armadillo was violating the permanent injunction (Dkt. #601). The second motion was filed before the Court issued an order on the first one and the Court held a show cause hearing regarding the issue of civil contempt (Dkt. #602). During the hearing, the parties informed the Court that any new issues raised in the second motion were resolved by the parties. Ultimately, the Court denied the second motion as moot (Dkt. #605).

On March 15, 2023, Gibson filed its application for profits, attorneys' fees, and costs pursuant to the Court's instructions (Dkt. #611). On March 29, 2023, Armadillo filed a response to the motion, arguing that Gibson did not adequately prove all the fees that it requested (Dkt. #615). On April 5, 2023, Gibson filed a reply, supporting its projected profits and fees that it alleged in its original motion (Dkt. #618).

## LEGAL STANDARD

Courts use the lodestar method to calculate reasonable attorney's fees. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The lodestar is calculated by multiplying the number of hours an attorney spent on the case by an appropriate hourly rate. *Id.* at 502. A reasonable hourly

rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant legal community is the community where the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The lodestar is presumptively reasonable. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

The party seeking attorneys' fees must present adequately recorded time records. *Watkins*, 7 F.3d at 457. The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* The hours remaining are those reasonably expended. *Id.*

The Court then considers whether the circumstances warrant a lodestar adjustment. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). In making any adjustment, the Court considers twelve *Johnson* factors. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The *Johnson* factors are:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Johnson*, 488 F.2d at 717–19).

The most critical factor in determining reasonableness is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted). Three of the *Johnson* factors—complexity of the issues, results obtained, and preclusion of other employment—are fully reflected in the lodestar amount.

3

*Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). "[T]he court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis*, 135 F.3d at 1047 (citation omitted).

## ANALYSIS

The Court ordered monetary sanctions in two forms: profits and fees. Specifically, in the previous Order, the Court found that "Gibson is entitled to the net profits derived from the improper listings of the Dean V and Dean Z guitars on its website from the date of the preliminary injunction until the date Armadillo complied with the injunction" and that "Gibson is entitled to its attorneys' fees in bringing this motion as it sought to vindicate the Court's injunction" (Dkt. #609 at p. 7). As for the relevant timelines, the Court noted that the net profits should be measured from July 28, 2022, to August 18, 2022, as those are the three weeks that the improper listings were available on the official website. And for the attorneys' fees, since the briefing for the first civil contempt motion ended on September 22, 2022, the Court must ensure that the attorneys' fees award does not cover conduct that occurred after that date. Based on those time constraints, the Court will address Gibson's billing records that it offered and whether they are sufficient to allow the requested financial sanctions.

Gibson proposed that it is entitled to $1,248.48 in profits for the three-week period, and $11,801.64 in attorneys' fees from the attorneys of Bates & Bates, LLC, and The Law Office of Steve Howen that worked on the motions.[1] The Court agrees that Gibson has satisfied its burden

---

[1] In the pending motion, Gibson requested $12,551.64 in attorneys' fees (Dkt. #611). However, as Armadillo correctly pointed out, "even if all of [Gibson]'s fee requests were accepted . . . [Gibson] has still requested an amount that exceeds the amount billed to their client" by $750.00 (Dkt. #615 at p. 7). In its reply, Gibson agreed—stating that it made an "arithmetic error"—and changed its request to $11,801.64, which was supported by the billing records submitted to the Court (Dkt. #618 at p. 2).

to show that they are entitled to *most* of the fees that they request. However, some reductions are necessary.

As a preliminary matter, the Court will note that Armadillo does not contest the requested profits and agrees to pay the full $1,248.48 amount (Dkt. #615 at p. 4). Accordingly, the Court will grant the requested amount. However, Armadillo offers three principal reasons why Gibson is not entitled to the entirety of the requested attorneys' fees. First, Armadillo argues that a reduction needs to be made because some of the billing entries are outside of the relevant timeline for attorneys' fees. Second, Armadillo states that it should not be forced to pay for Gibson's reply brief because it contained improper arguments. Finally, Armadillo argues that Gibson has not satisfied its burden for attorneys' fees because it did not show a proper lodestar calculation and that the entries supplied are not reasonable. The Court will address each argument in turn.

The Court agrees with Armadillo's first argument that some of the specific billing entries concern conduct related to the second motion for civil contempt and therefore, must be deducted from the overall total. In applying its discretion in granting attorneys' fees for civil contempt, the Court should consider the purpose of the sanction. *See Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977). Attorneys' fees for civil contempt are intended "to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *Id.* (citing *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947)). As previously noted, Gibson filed two motions for civil contempt regarding Armadillo's conduct and the Court held a hearing because the second motion was filed and labeled as an "emergency" motion (Dkt. #602). In the previous Order regarding civil contempt, the Court only found noncompliance regarding conduct raised in the first motion. Therefore, because there was never an official finding of noncompliance regarding any of the conduct raised in the second motion,

any billing entries related to preparation of the second motion or the hearing on the issue of civil contempt are not appropriate for this specific sanctions order.[2]

Here, two declarations were submitted with invoices attached to show the hours expended. Andrea Bates ("Bates") and Steve Howen ("Howen") both submitted reports for their firms (Dkt. #611, Exhibits 1–2). Bates submitted invoices for various attorneys at the law firm of Bates & Bates, LLC, and Howen submitted invoices for himself on behalf of The Law Office of Steve Howen. In Howen's declaration, he does submit an invoice on November 17, 2022, which covers billing entries concerning both the second contempt motion and the hearing with the Court, all of which occurred after September 22, 2022 (Dkt. #611, Exhibit 2 at p. 10). As a result, the seven entries listed on that November 17th invoice will be deducted from the fees amount submitted to the Court.

Armadillo's second argument is that because Gibson's reply brief contained improper arguments, namely, new arguments raised for the first time in the reply brief, that it should not have to pay for Gibson's fees related to the preparation of that reply. The Court disagrees. While the Court agrees that new arguments should not be raised in the reply brief for the first time and that Gibson's reply brief generally contained new arguments, that does not apply to the entirety of the reply brief (Dkt. #609 at p. 5). In fact, part of Gibson's reply reminds the Court that "good faith is not a defense to a finding of civil contempt," which is essentially what Armadillo argues in its response (Dkt. #578 at p. 9). Accordingly, Armadillo will be responsible for the fees associated with that reply brief because it does concern the conduct that placed Armadillo in civil contempt and directly addresses Armadillo's response.

---

[2] The Court does note that there is a billing entry submitted on September 22, 2022 by Andrea Bates (Dkt. #611, Exhibit 3 at p. 20). However, since the entry lists out that the attorney is reviewing the sur-reply filed for the first motion, the Court will include that entry in its finding of entries that are reasonable and related to the contemptuous conduct.

6

Finally, the Court disagrees with Armadillo's final contention that a lodestar calculation is not offered or that the billing entries that Gibson submitted are unreasonable. The lodestar calculation is the "linchpin" of reasonable fee calculations, which is calculated by "multiplying the number of hours reasonable expended by the reasonable hourly rate." *Hoenniger v. Leasing Enterprises, Ltd.*, No. 21-50301, 2022 WL 340593, at *4 (5th Cir. Feb. 4, 2022); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 754 (S.D. Tex. Sept. 8, 2008). Armadillo argues that Gibson suffers from the same defect as in the Rule 54 motion for fees (Dkt. #615 at pp. 6–8). In that Order, the Court ruled that Gibson was not entitled to any attorneys' fees because simply offering two declarations and stating the fees are reasonable without including actual billing entries does not satisfy the relevant burden (Dkt. #620 at pp. 5–6). However, Gibson did not make the same mistake twice.

Here, Gibson submitted actual invoices with billing entries and the billing rates for each attorney that worked on the contempt motion. The Court finds that besides the reductions that have already been made, the invoices submitted all have entries that the Court finds reasonable. Additionally, the Court finds that the hourly rates that each attorney submits to the Court are reasonable hourly rates in accordance with the prevailing community rates. After multiplying the number of hours reasonably expended by the reasonably hourly rate applicable to the attorney that submitted the billable entry, the lodestar total is calculated at $9,176.64. The lodestar calculation is presumptively reasonable. *Watkins*, 7 F.3d at 457.

In addressing whether an adjustment to the lodestar is necessary, Armadillo argues that "the skill required to brief the matter was within the range of an associate," and that the motion was only trying to accomplish what Armadillo was "always willing to do—i.e., remove from its website materials inconsistent with the Final Judgment" (Dkt. #615 at pp. 7–8). The Court

disagrees with both of Armadillo's contentions. First, the Court points out that while Armadillo states that it always intended to follow the Court's injunction, one of the reasons that a second motion was filed and an emergency hearing was held with the Court was because Armadillo began to sell a new 2022 DEAN V guitar, which was one of the shapes covered in the permanent injunction (Dkt. #601 at p. 12). Therefore, the Court agrees with Gibson—had it not filed the motion, the Court is unsure whether Armadillo would have complied with the injunction. Additionally, the Court refuses to comment on whether the motion should have been exclusively done by an associate. Although it may be argued that the argument considers the second and third *Johnson* factors—the novelty and difficulty of issues and the skill required—Armadillo does not cite to any authority, nor is the Court aware of any authority, where the Court reduced the lodestar amount because a civil contempt motion was an issue that was more appropriate for an associate to handle. Accordingly, the Court will reject Armadillo's arguments on the matter. Rather, the Court finds that the hours worked, and billing entries submitted to the Court are reasonable and that no further reductions are necessary. The Court finds no issue with the fact that the attorneys' fees exceed the amount of profits at issue, as the Court again points to its broad discretion and the fact that these sanctions are intended to restore the injured party, which means place Gibson where it was before it "incurred attorneys' fees in an attempt to ensure compliance with the injunction." *See Bunnett & Co. v. Dores*, No. A-15-CV-1104, 2018 WL 4275838 (W.D. Tex. Sept. 7, 2018) (quoting *Matter of Skyport Glob. Commc'ns, Inc.*, 661 F. App'x 835, 841 (5th Cir. 2016)).

In sum, Gibson properly submitted what was needed for the Court to determine a proper lodestar calculation. After removing the entries from the November 17th invoice, the Court is left with $9,176.64 in attorneys' fees. Additionally, the Court finds no reasons why that amount would need to be reduced or increased by any of the other twelve *Johnson* factors.

## CONCLUSION

It is therefore **ORDERED** that Gibson Brands, Inc.'s Application for Profits, Attorneys' Fees, and Costs (Dkt. #611) is hereby **GRANTED in part**.

Defendants Armadillo Distribution Enterprises, Inc. and Concordia Investment Partners, LLC are **ORDERED** to pay Gibson Brands, Inc. $1,248.48 in profits and $9,176.64 in attorneys' fees, totaling $10,425.12.

**IT IS SO ORDERED.**

**SIGNED** this 23rd day of May, 2023.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE