IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| GIBSON, INC., a Delaware corporation, | ) |
| | ) |
| Plaintiff/Counterclaim-Defendant, | ) Case No. 4:19-cv-00358-ALM |
| vs. | ) |
| ARMADILLO DISTRIBUTION ENTERPRISES, INC.; CONCORDIA INVESTMENT PARTNERS, LLC, | ) |
| Defendant/Counterclaim-Plaintiff | ) |
| DOES 1 through 10, | ) |
| Defendants. | ) |

**PLAINTIFF GIBSON, INC.'S OPPOSED MOTION FOR PRE-TRIAL EVIDENTIARY HEARING**

Plaintiff Gibson, Inc. moves the Court to hold an accelerated pre-trial evidentiary hearing pursuant to Fed. R. Civ. P. 104 to consider the admissibility of certain evidence that was previously admitted and previously excluded in order to streamline evidentiary issues at trial, respectfully showing the Court as follows:

**BACKGROUND**

1. **The Re-Trial.** The Court tried this matter to verdict in May 2022 after a two-week jury trial (Dkt. # 498); rendered judgment largely in Gibson's favor on July 28, 2024 (Dkt # 546-47); and denied Defendants' Motions for Post-Trial Relief on April 6, 2023. (Dkt # 620). The Fifth Circuit Court of Appeals reversed the Court on July 8, 2024. *Gibson v. Armadillo Distribution Ent., Inc.*, 107 F.4th 441 (5th Cir. 2024). The Court has now set the matter for re-trial on March 10, 2025. (Dkt. # 654). The Fifth Circuit reasoned that the Court's exclusion of evidence allegedly demonstrating third-party

uses of the Gibson trademarks at issue more than five years before the Defendants entered the market was error because the Court relied solely on the age of the evidence as the basis to exclude. *Gibson*, 107 F.4th at 449 ("We conclude that the district court erred by excluding wholesale, without proper consideration or explanation, all pre-1992 third-party-use evidence.").

    **2.**    **The Logistical Problems for Evidence at Re-Trial.** The difficulty presented by the Fifth Circuit's ruling is the need for the Court to separately consider over 258 exhibits during trial. More specifically, the excluded evidence includes exhibits from various types of publications, spread out over five registrations.[1] The United States Patent and Trademark Office issued the registrations over a period of 24 years. Four of the registrations resulted in placement of trademarks on the "Principal Register" while one registration exists on the "Supplemental Register."[2] The excluded exhibits span decades in terms of date of publication. Gibson objects to the exhibits because: (1) the exhibits lack relevance under Fed. R. Evid. 401 or the slight probative value of the evidence is substantially outweighed by danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting of time, and potentially the presentation of cumulative evidence under Fed. R. Evid. 403; (2) many of the exhibits are hearsay to which no exception applies; and (3) the Defendants have not and cannot properly authenticate the exhibits. While Gibson understands the Fifth Circuit's concern over that wholesale exclusion of evidence, the remedy of "wholesale admission" of evidence is no better. As a result, the Court must find some way to consider and rule on multiple objections to hundreds of exhibits.

---

[1] The earliest trademark registration at issue occurred in 1975 while the latest happened in 1999. [*See* Plaintiff's Trial Exhibits 1 (Flying V Body Shape, issued 04/15/1997), 2 (Explorer Body Shape, issued 04/22/1997), 4 (ES Body Shape, issued 10/08/1996), 34 (SG Body Shape. Issued 01/05/1999), and 44 (Dove Wing Headstock issued 09/16/1975).]

[2] ES Body Shape is on the Supplemental Register, and the remainder of Gibson's trademarks at issue in this case are on the Principal Register.

In addition, the Chief Executive Officer of the Defendants and potentially other Defendant witnesses who testified during the first trial will likely not be available to testify in the second trial.[3] The key evidence supporting Gibson's claim that the Defendants' trademark copying and counterfeiting was intentional, willful, and resulted from "unclean hands" comes from emails authored by the witnesses who Gibson understands will not be personally appearing in the second trial. This absence will necessitate the reading of the authentication testimony from the first trial, which will likely not have any meaning for the jury and will inevitably result in the Court ruling the way it did when the evidence was first offered.

Finally, there is substantial evidence of more recent third-party uses that Defendants will present by way of deposition testimony and Certification of Business Record Declarations under Fed. R. Evid. 902. The Court will likely recall the hard-fought nature of the objections to this evidence, which were left somewhat unresolved because at the first trial Defendants ultimately opted for the unusual procedure of "putting the depositions and declarations in evidence" without presenting them to the jury. Gibson agreed to the procedure at the first trial as a way of getting the issues to the jury; it does not agree to a repeat.

All to say that there is a mountain of evidentiary issues that will need to be moved either at trial or before trial. If the moving takes place at trial, untold hours of the jury's time will be wasted, and the Court will face a near impossible burden in considering the myriad issues surrounding the evidence discussed above on a spur of the moment basis.

---

[3] The fact that the former CEO, Evan Rubinson, was ousted from the company by his mother on the basis of alleged embezzlement of a related company has been widely reported in the music press. *See e.g.*, Cillian Breathnach, *Dean Guitars CEO Evan Rubinson sued by his mother for allegedly embezzling $420,000*, GUITAR.COM, Jul. 28, 2022, available at: https://guitar.com/news/industry-news/dean-guitars-ceo-evan-rubinson-sued-mother-allegedly-embezzling-420000/ (last visited Dec. 27, 2024).

3

      3.      **The Proposed Solution**. The fact that this is a re-trial rather than a trial presents an opportunity to avoid wasting the jury's time and unduly pressuring the Court. Simply put, the testimony that will result in the admission or exclusion of evidence of the many exhibits at trial has either already been given under oath or is easily obtainable by the Defendants. To take advantage of this opportunity, Gibson suggest a two-step procedure. First, the Court set a short-term deadline by which the parties will have confirmed which evidence admitted at the first trial that they will be offering in the second trial, review the Court's ruling on that evidence at the first trial, and identify which previously admitted evidence, if any, they will object to in the second trial despite the Court's rulings in the first trial.[4] Second, the Court set for some time in February a hearing pursuant to Fed. R. Evid. 104 to consider objections to the previously excluded evidence and objections to non-agreed previously admitted evidence. Given the volume and complexity of the evidence as well as the Court's difficult calendar, Gibson would be willing to agree to a hearing before this Court, or in the alternative, a magistrate judge who could issue recommendations to the Court for a final ruling pre-trial.

## ARGUMENT AND AUTHORITY

      4.      **Rule 104.** The Fifth Circuit recently re-emphasized the requirements and usage of Rule 104:

> Federal Rule of Evidence 104 requires courts to decide preliminary questions about whether evidence is relevant and admissible. Under Rule 104(b), "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist," but courts are permitted to preliminarily admit the evidence, so long as the required proof is introduced later. In certain instances, courts are required to conduct a hearing on a preliminary question, but there is otherwise no

---

[4] Gibson envisions that built into the procedure will be a mechanism by which overruled objections from the first trial are preserved for appellate purposes without the need to re-urge the objections at the second trial.

>           requirement that a district court make "on the record" findings
>           regarding preliminary issues.

*United Sates v. Abundiz*, 93 F.4th 825, 837 (5th Cir. 2024). The evidence over which the parties are fighting fits squarely into this category.

By way of example and summary, much of the dispute over older alleged third-party use evidence stems from images of guitars from decades ago archived either through the "way back machine" or a collector website for "lesser-known guitars." Gibson believes that these images cannot be proved authentic nor are they relevant (or relevant enough under Rule 403) because their relevance can only exist if the guitars the images depicted currently impact public perception of the Gibson trademarks as source identifiers. In both instances, the admissibility of the evidence depends on the existence of other facts that the court must review. *See, e.g., Huffman v. Activision Publishing, Inc.,* No. 2:19-cv-00050, 2022 WL 3287964, *3 (5th Cir. Aug. 11, 2022) (upholding Rule 104 exclusion of evidence under Fed. R. Evid. 403 to avoid a series of "mini-trials" the evidence would generate); *United States v. Browne*, 834 F.3d 403, 433-34 (3d Cir. 2019) (authentication and relevance of social media statements is appropriate for Rule 104 authentication determination); *United States v. Tupelo Flight Center, Inc.,* 12 F. 3d 1099, 1993 WL 543421, *6-8 at n.22 (5th Cir. 1993) (Table publication) (Rule 104 requires judicial determination if authenticity is disputed); and *United States v. Roberts*, No. 4:20-cr-00314, 2022 WL 17834053, *5 (E.D. Tex. Dec. 21, 2022) (J. Mazzant) (whether statement is hearsay qualifies for Rule 104 determination).

Gibson understands that the alleged authenticity of Defendants' third-party use exhibits will be sponsored through the testimony of Defendants' vintage guitar expert George Gruhn. Regardless of Mr. Gruhn's qualifications as to vintage guitars, Gibson does not believe he possesses personal knowledge of many of the third-party images, the subject matter expertise to authenticate the images, or the subject matter expertise to gauge the images' impact on public perception of the Gibson

trademarks.[5] Like the base questions of authenticity, relevance, and hearsay, a trial court should exclude expert testimony under Fed. R. Evid. 104 if it finds an expert not qualified to testify "in a particular field or on a particular subject." *Murillo v. Collin County*, No. 4:17-CV-00017, 2017 WL 4876194, *2 (E.D. Tex. Oct. 27, 2017) (J. Mazzant) (citing *Huss v. Gayden,* 571 F.3d 442, 452 (5th Cir. 2009) and *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999)).

In summary, there is little question that the subject matter of the disputed evidence is of the type courts regularly conduct Rule 104 hearings on.

    **5.**    **Need for Hearing Separate From and Before Pre-trial Conference.**  The question the Court likely has is why it would deploy judicial resources, whether it be its own time or that of a magistrate, before the pre-trial conference scheduled for March 7, 2025. The reasons are many and all relate to judicial economy and respect for the jury's time.  It is within the Court's inherent authority to manage trials by excluding or admitting evidence based on pre-trial hearings.  *See Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013); and *United States v. Haig*, 365 F.Supp.3d 1101, 1105 (D. Nev. 2019) ("Motions in limine may be used to exclude or admit evidence in advance of trial."). A major advantage of pre-trial consideration is that it enables "the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir. 1996).

The usual counterweight is that the Court can sometimes better evaluate admissibility based on facts developed at trial. *E.g., Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975), *cert. denied*, 423 U.S. 987 (1975).  In the scenario of a re-trial, however, "the facts developed at

---

[5] To be clear, this argument is not a rehash of Gibson's *Daubert* motion as to Mr. Gruhn's proposed testimony.  Instead, the question is whether Mr. Gruhn is fit to sponsor the admission of exhibits that he had no role in creating as opposed to limiting his substantive testimony.

6

trial" are already before the Court. Thus, courts can and do address the admissibility of evidence at a second trial based on testimony from the first trial. *E.g., United States v. Rios,* 611 F.2d 1135, 1341 (10th Cir. 1979); *United States v. Bundy*, 2017 WL 295368, *2-3 (D. Nev. Jul. 9, 2017) (J. Navarro); *United States v. San Diego Gas & Elec. Co.*, 2009 WL 4824489, *4-5 (S.D. Ca. Aug. 31, 2009) (J. Sabraw); and *United States v. Battle*, 473 F.Supp.2d 1185, 1194 (S.D. Fla. 2006).

If the Court were to wait until the pre-trial conference to consider objections to the third-party evidence, the lack of time would force the Court into the exact position that resulted in reversal in the first place, i.e. ruling on the exhibits as a group rather than individually. There is no practical way that the Defendants can offer and Gibson can object to the hundreds of exhibits alleging third-party use during the course of a two-week trial. Thus, the only way to address the issues would be by broad category instead of individual consideration of the exhibits. The first purpose of the in-depth Rule 104 hearing Gibson seeks is to avoid such a "wholesale" decision on admissibility of exhibits. The second purpose is to allow the legal wrangling over admissibility to be outside the presence of a jury before the jury is even seated. The third purpose is to give the parties some certainty as to what evidence will be admitted and excluded so as to prepare their witnesses and presentations accordingly. All of the above will result in a more deliberate and considered ruling on the evidence and a trial that flows much quicker.

6. **Requested Relief.** Gibson respectfully requests that Court order the parties to immediately meet and confer for the purpose of identifying which exhibits will be agreed admitted before trial begins, either because no objection is lodged or because the exhibit was admitted at the last trial and there exists no additional argument for the Court to consider. Gibson also requests that the Court set a Rule 104 hearing to be conducted as soon as reasonably possible by either this Court or a magistrate judge to consider and rule on the parties' objections to exhibits and deposition testimony not agreed to as part of the described meet and confer process.

Respectfully submitted this 9th day of January 2025.

/s/ *Andrea E. Bates*
Andrea E. Bates
*Pro Hac Vice*
Kurt Schuettinger
*Pro Hac Vice*
Johnathan M. Bates
*Pro Hac Vice*
Bates & Bates, LLC
1890 Marietta Boulevard NW
Atlanta, Georgia 30318
Telephone: (404) 228-7439
Facsimile: (404) 963-6231
abates@bates-bates.com
kschuettinger@bates-bates.com
jbates@bates-bates.com

Stephen D. Howen
State Bar No. 10117800
Law Office of Steve Howen
7111 Bosque Blvd., Suite 305
Waco, TX 76710
Telephone: (254) 826-6526
Facsimile: (254) 822-4926
steve@stevehowenlegal.com

Attorneys for Plaintiff
GIBSON, INC.

## CERTIFICATE OF CONFERENCE

Pursuant to E.D.TX LR CV-7(i), Counsel certifies that on January 5, 8 and 9, counsel for Plaintiff Gibson, Inc. conferred with counsel for Defendants, via telephone and email, who indicated that they agree in principle to a review of exhibits admitted at the first trial to determine whether those exhibits can be pre-admitted at the second trial but that they oppose Gibson's motion for an accelerated Rule 104 hearing.

/s/Andrea E. Bates
Andrea E. Bates

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF electronic filing system on January 9, 2025.

/s/ *Andrea E. Bates*
Andrea E. Bates