# ATTACHMENT B

## **IMPACT OF EXPIRED DESIGN PATENTS**

Defendants argue that the expiration of design patent rights prevents Gibson from securing or enforcing trademark rights on the Gibson Body Shapes. As the Court has asked, the "question is: Why does it matter whether or not they had design patents and then also got a trademark later? Those are different rights." [Day 2, 227:17-20]. Even with their latest brief, the Defendants fail to show the Court why design patents or their expiration matter in a trademark infringement case.

As the leading intellectual property commentator notes: "[t]he purposes and policies of federal design patent law and federal trademark law are very different[] and stand independent of each other." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 7:91 (5th ed. 2021). As the Court of Customs and Patent Appeals ("CCPA") has concluded, trademark/trade dress rights "exist independently of [design patent rights], under different law and for different reasons. The termination of either has no legal effect on the continuance of the other." *Application of Mogen David Wine Corp.*, 51 C.C.P.A. 1260, 328 F.2d 925, 930-931 (1964).

The CCPA found that the existence of an expired design patent does not bar trademark protection in product shapes as well as container shapes. *Application of Honeywell, Inc.*, 497 F.2d 1344, 1348 (C.C.P.A. 1974) ("We believe the solicitor has failed to draw a crucial distinction between functional subject matter disclosed in utility patents and subject matter disclosed in design patents, which may or may not be functional, in the context of their relationship with trademarks. We believe that the decisions of this court have correctly recognized this distinction and are in harmony with the holdings of the *Singer*, *Kellogg*, and *Scott Paper* decisions relied upon by the solicitor."). Federal courts uniformly find that design patent coverage or the expiration of a design patent does not preclude trademark or trade dress protection. *See Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F.Supp. 955, 959-60 (S.D.N.Y. 1995) (denying a motion to dismiss a trade dress claim

by rejecting the argument that an expired design patent precluded a claim for trade dress infringement.); *see also Topps Co. Inc. v. Gerrit J. Verburg Co.*, 1996 WL 719381, *10 (S.D.N.Y. 1996) ("[T]he existence of an expired design patent does not preclude trademark rights, or registration of a trademark."); *Krueger Intern., Inc. v. Nightingale Inc.*, 915 F.Supp. 595, 604-05 (S.D.N.Y. 1996) (rejecting defendant's argument that plaintiff was unlawfully seeking to extend its expired patent monopoly and that a once-patented design can never claim the protection of trade dress law.); *Ashley Furniture Industries, Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 376 (4th Cir. 1999) ("Allowing traditional trade dress protection for product configuration will not undermine either utility or design patent law."); *Fuji Kogyo Co., Ltd v. Pacific Bay Intern., Inc.*, 461 F.3d 675, 683 (6th Cir. 2006) ("The existence of design patent does not preclude the same product from protection as a trademark under the Lanham Act either simultaneously or successively."); *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 637-38 (7th Cir. 1993) ("[C]ourts have consistently held that a product's different qualities can be protected simultaneously, or successively, by more than one of the statutory means for protection of intellectual property."); and *Winning Ways, Inc. v. Holloway Sportswear, Inc.*, 903 F. Supp. 1457 (D. Kan. 1995) (rejecting argument that trade dress law cannot protect product design because only a design patent can remove a product design from the public domain.); *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1240 (6th Cir. 1991) ("Actionable harm results from *either* infringing a design patent or copying a product with secondary meaning.").

The Defendants rely on outdated and inapposite authority. Defendants' centerpiece case is *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118, 120 (1938). The Supreme Court expressed concern that allowing trademark rights in an expired patent created a species of perpetual patent and copyright that was not allowed. In dicta, *Kellogg* noted that when a patent terminates, anyone is free to use the invention and there can no longer be an exclusive right or privilege to use

3

the invention. *Id*. at 118. Defendants hope to transform *Kellogg's* dicta into a ruling the Court never intended.

A leading trademark commentator has details how illogical that expansion would be to a case like this one, that features a *design patent*. "Three reasons can be relied on: (1) the shredded wheat biscuit design patent [in Kellogg] was held invalid before it expired; (2) the biscuit shape was the necessary result of a patented process of manufacturing; and (3) the Supreme Court held that the biscuit shape was functional and hence not capable of design patent or trademark protection." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 7:92 (5th ed. 2021). Indeed, the Supreme Court later categorized utility patents as different than design patents under *Kellogg* based on functionality. *See Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) ("If a product's functional features could be used as trademarks, however, a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity.)") (citing *Kellogg*, 305 U.S. 119-20).

In the 80 years since *Kellogg*, Defendants have found a handful of easily distinguishable cases that the Defendants claim follow *Kellogg*. Notably, none of the Defendants' cited cases involves design patents. First is the *Sears-Compco* doctrine that Defendants contend applies through *North Shore Laboratories Corp. v. Cohen*, 721 F.2d 514, 522 (5th Cir. 1983), overruled on other grounds by *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 174 (1995). In *North Shore*, the Fifth Circuit concluded that a consent agreement was ambiguous and rejected the plaintiff's interpretation because it would have given the plaintiff a monopoly against the defendant in the production of a tire repair kit in the color brown. *Id. North Shore* stated that the *Sears-Compco* doctrine permitted the copying of an unpatented article even if the design is

4

unfunctional. However, *North Shore* found that "[t]he record indicates…that the color of the Lucas tire repair is in fact functional or generic and not merely a matter of design." *Id.* at 523. In other words, *North Shore* found that *Kellogg*, through the *Sears-Compco* doctrine, did not apply to the facts of the case because the trademark rights were invalid. Contrary to the Defendants' assertion, *North Shore* did not follow *Kellogg*. *See Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 556 n. 17 (5th Cir. 1998) ("the result of the *North Shore Laboratories* decision's alternative holding would hold true today, without its discussion of *Sears–Compco*, because the court also found that the color of the tire-patch material lacked the necessary secondary meaning and was functional.").

Defendants also rely on *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003). The *Dastar* court found "Section 43(a) of the Lanham Act does not prevent the unaccredited copying of an uncopyrighted work." *Id*. at 23. *Dastar* did not address any design patents or registered trademarks. Instead, the *Dastar* case involved an expired copyright and a claim that Dastar was passing off its goods because the goods (a video) had copied a creative work in the public domain. The *Dastar* court found that §43(a) did not create a cause of action for plagiarism because that would conflict with *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211, 120 S.Ct. 1339, 146 L.Ed.2d 182. In *Wal-Mart*, the Supreme Court concluded that "[product] designs could not be protected under §43(a) without a showing they had acquired 'secondary meaning,'…so that they 'identify the source of the product rather than the product itself.'" *Id.* at 211. In other words, *Wal-Mart* found that the original producer could not turn around and pursue a reverse-passing-off claim without showing the product design had acquired a secondary meaning.

Another case cited by Defendants, *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489

5

U.S. 141 (1989), clarifies that design patent law does not exterminate potential trademark/trade dress rights.  *Bonito* noted that "[t]he *Sears* Court made it plain that the States 'may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods.'" *Id.* at 154 (quoting *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 232, 84 S.Ct. 784, 11 L.Ed.2d 661(1964)).  As such, *Bonito* clarified that the *Sears* court's conclusion is "that the states may place some conditions on the use of trade dress indicates an implicit recognition that all state regulation of potentially patentable but unpatented subject matter in not *ipso facto* pre-empted by the federal patent laws." *Id.*  The Supreme Court confirmed this interpretation in *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 214, 120 S. Ct 1339, 1345, 146 L.Ed.2d 182 (2000).  "That is especially so since the producer can ordinarily obtain protection for a design that *is* inherently source-identifying (if any such exist), but that does not yet have a secondary meaning, by securing a design patent or a copyright for the design–as, indeed, respondent did for certain elements of the designs in this case." *Id.*

In a case affirmed by the 5th Circuit, the Southern District of Texas provided a deep dive into the *Sears-Compco* doctrine and concluded that patent law did not preclude trademark rights. *See Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526 (5th Cir. 1998).  Like here, the *Pebble Beach* defendant contended that "it has the unfettered right to copy the Plaintiff's [trade dress] under the Intellectual Property Clause of the Constitution." *Id.* at 547.  The *Pebble Beach* court declined Plaintiff's argument instead finding that (1) *Bonito Boats* found "the application of *Sears–Compco* to nonfunctional product design must take into account competing federal policies as evidenced by the Lanham Act; (2) "the federal trademark laws are 'other federal statutory protection,' and their protection of product designs and configurations does not conflict with the federal patent laws

6

or the Intellectual Property Clause"; and (3) "in the more than thirty years since *Sears–Compco*, Congress and the courts have recognized that federal unfair-competition law provides protection to product designs and configurations consistent with the patent laws."