# ATTACHMENT C

## SUCCESSOR IN INTEREST FOR PRIOR USE AND LACHES

Armadillo applies its successor in interest theory in two ways: first, to assert a prior or innocent user defense to Gibson's infringement claims and second, to lengthen the laches period back to the inception of the Dean Brand in 1977.

*Prior User.*

One of the central concepts of trademark law is that the first user of a mark controls the mark. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 135 S.Ct. 1293, 191 L.Ed.2d 222 (2015). It is undisputed that Armadillo, Dean Zelinsky's companies, and Tropical Music did not use the SG Body Shape, the ES Body Shape, the EVO Headstock, The Flying V wordmark, or the Hummingbird wordmark before either Gibson's use or registration of those marks.

Armadillo claims, however, that it used Gibson's Flying V and Explorer Body Shape trademarks before Gibson obtained a registration on those trademarks. Claim comes in two forms. First, Armadillo itself produced and sold some Dean V's and Dean Z's before Gibson's registration date. Second, as a "successor in interest" Armadillo gets the benefit of the use of Gibson's trademarks by Dean Guitars, Inc., Guitars, Inc., and/or Tropical Music before Gibson's registration date.

Armadillo's own use of Gibson's trademarks is easily negated. While Armadillo's contention is based on bald, unsupported assumptions, the key point is that Armadillo admits that, at the earliest, its own use of the two Gibson trademarks began in 1996. It is also undisputed that Gibson filed its application for the two trademarks in 1994.

The Lanham Act makes clear that when, as here, the USPTO grants registration, the priority of use date is retroactive to the date of application except for others who have used the mark before the registrant's application, have applied for registration and either obtained registration or have

that application pending at the time of the registrant's application; or have a foreign application pending at the time of registration.15 U.S.C. §1057 (c). Absent one of those conditions, the registrant (Gibson) has nationwide priority of use. *Id*. Armadillo never filed any domestic or foreign registrations, nor does it claim to have used the trademarks before Gibson's 1994 application date. Armadillo on its own cannot meet the requirements of a prior user under §1057 (c).

Accordingly, for any prior use argument, Armadillo must rely on Dean Guitars, Inc., Guitars, Inc., or Tropical Music, Inc.'s use of the two trademarks coupled with a transfer to Armadillo of the benefit that the prior user would gain from using the mark prior to registration. Gibson agrees that there is evidence that Dean Guitars, Inc. and Guitars, Inc. used the trademarks but denies that any competent evidence exists of Tropical Music using the trademarks. Thus, the alleged use of the trademarks by Dean Guitars, Inc. and Guitars, Inc, however, the conclusive priority rights by Gibson under 15 U.S.C. §1057 (c) cannot be assumed

In the meantime, however, Gibson's rights matured into incontestability.[1] A prior use defense is a challenge to the validity of a mark. *Dewberry Engineers, Inc. v. Dewberry Group, Inc*. 77 F.4th 265, 280-81 (4th Cir. 2023), *reversed on other grounds*, 604 US --, --S.Ct.--, 2025 WL 608108 (Feb. 26, 2025).[2] Instead, the Lanham Act has a provision that defines the prior or innocent use exception to incontestable marks. To assert prior use against an incontestable mark, an alleged infringer must show that it *lacked knowledge of the senior user's use* of the mark and then

---

[1] Gibson understands the defendants dispute the incontestable status of the trademarks because of their alleged genericness. If the trademarks are not incontestable because they are generic, they are also not trademarks. That finding would moot Gibson's infringement claims, and the successor-in-interest analysis is unnecessary. Thus, the brief assumes the trademarks are not generic.

[2] The reversal was on a damages issue, so the holding for which the case is cited is in no way implicated.

*continuous* use to either the date of the registrant's application or the date the USPTO publishes the registration.[3] Finally, § 1115 (b)(5) limits the prior use exception to the "area in which such prior use is proved."

It is undisputed that Dean Guitars, Inc, and Guitars, Inc, were defunct by 1991, well before Gibson's application date. It is also clear that Tropical Music was out of the Flying V and Explorer business before the USPTO published the registrations. Under § 1115(b)(5), to take advantage of "prior user" status for the Flying V and Explorer trademarks, Armadillo must show by a preponderance of the evidence[4]:

1. That the prior user(s) was unaware of Gibson's use of the marks;

2. There was continuous use *of the trademarks* by a predecessor entity from Dean Zelinsky's inception in 1977 through Gibson's applications in 1994;

3. Transfer of the prior use rights from Dean Guitars, Inc, to Guitars, Inc, to Tropical Music, to Armadillo;

4. And the location(s) of the continuous prior use.

First, Dean Zelinsky, who is the fount from which Armadillo draws its alleged prior use rights, unequivocally knew of Gibson's use of the marks. Zelinsky's avowed purpose was to "one up Gibson." He visited the Gibson factory and sought out Gibson employees and vendors to start his operation. He used copies of the marks in Ibanez guitars to create his guitars, only because the Gibson products were to difficult to obtain. Thus, the whole chain of title concept from Dean

---

[3] The statute offers a third possibility based on a competing application or registration that does not apply to our facts.

[4] *FFWTC, LLC v. USA Football, Inc.,* 2025 WL 28006, *8 (E.D. Tex. Jan. 3, 2025, J. Mazzant) (citing *Byers v. Dallas Morning News*, 209 F.3d 419, 424 (5th Cir. 2020) and *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (U.S. 2000)). Burden is on proponent of Section 1115(B) defense to prove that defense.

Zelinsky to Armadillo via Tropical Music fails at the outset, because Dean Zelinsky's "title" is defective-his use does not qualify as an exception to Gibson's now incontestable status because he knew of Gibson's prior use of the trademarks.

Second, Armadillo offers no proof that Tropical Music continually used the trademarks after its transaction with Zelinsky. Armadillo confuses the issue of whether Tropical Music was "dormant" with whether Tropical Music was using these marks in a manner sufficient to establish a market presence in a specific geographic area.[5] The latter is what the law requires. *Zazu Designs v. L'Oreal*, 979 F.2d 499, 505 (7th Cir. 1992) (Minimal use insufficient as a matter of law to sustain prior use rights); *Thrifty Rent-A-Car Sys., Inc. v. Thrift Cars, Inc.*, 831 F.2d 1177, 1182-83 (1st Cir. 1987); *Amox, Inc. v. Acco Brands Corp.*, 268 F.Supp.3d 301, 306-07 (D. MA. 2017) (Failure to provide evidence of activity in a specific geographic area negates section 1115(b) defense as a matter of law).

To prove that Tropical Music was active, Armadillo presents: (1) the declaration of Oscar Mederos (DTX 324), which has seven pages of Tropical Music advertisements from the early 1990s, and (2) defense exhibits 1699-1701, 3802, 3804, which are the Tropical Music catalogs and advertisements in Armadillo's records. Those exhibits have no reference to or image of an Explorer-shaped guitar. The same exhibits have one image of a Flying V-shaped guitar. Against the logic and holdings of the cases cited, the presence of one ad for the Flying V Mark over three years distributed "somewhere" is insufficient as a matter of law to sustain any prior use rights for Armadillo.

---

[5] Admittedly, Gibson emphasizes that Armadillo's founder described his acquisition of the Dean brand as the acquisition of a "dormant" brand. Gibson's use of that evidence is directed towards the ultimate question; in other words, if a brand was dormant, it is less likely to be continuously promoting marks. Armadillo apparently believes that rebutting the dormancy claim equals proving the use of the specific marks in a specific area, which it clearly does not.

*Third Party Use and Laches.*

Armadillo also relies on the fact that Gibson did not file suit against it for over 40 years, ignoring the fact that Armadillo's infringement began in 1996 at the earliest. Indeed, Armadillo did not even exist during a substantial portion of the time for which it claims abundant third-party use and laches. Through these arguments, Armadillo argues that it "steps into" Dean Zelinsky's equitable laches defense and can complain of third-party uses that took place at the time.

Armadillo's theory is novel but not completely so. The case that most clearly addresses the concept rejected it out of hand. *Emerson Radio Corp. v. Emerson Quiet Kool Co. Ltd*., 2021 WL 5161838, *2 (D. DE Nov 5, 2021, Judge L. Stark). Like Armadillo, the defendant ("*Quiet Kool*") wanted to assert a laches defense by arguing older third-party uses of a mark. *Id.* Quiet Kool's theory was that the plaintiff's failure to police the mark during the time the predecessor owned it gave false assurance to the current owner, who would suffer undue prejudice if the plaintiff now brought the claim.

The Court rejected *Quiet Kool's* attempt to transform itself into the mark's original infringer. *Emerson* first notes that laches is a personal defense unique to a particular defendant. *Id. (citing Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1046 (4th Cir. 1984) and *Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, 2013 WL 6839815, *10 (N.D. Ill. Dec. 27, 2013)). *Emerson* acknowledged that tacking onto the laches period is possible for subsequent trademark owners *if* there is a valid assignment of that trademark right. Given that there was no evidence in the case of such an assignment, it found that laches could not exist as a matter of law. *Emerson* first notes that laches is a personal defense specific to the actual defendant in the case and then finds no valid assignment existed to allow an extension of that period.[6] The same facts

---

[6] The difference between this case and *Emerson* is that without the tacking period, *Quiet Kool* had no laches defense, while the length of time Armadillo can assert as its "personal laches period"

exist here. There is no evidence that Tropical Music assigned anything other than the right to use the Dean brand name, the logo, and unrelated trademarks to Armadillo. The opposite is true. Elliot Rubinson, who negotiated and executed the deal on Armadillo's behalf, gives two recorded recollections that the transfer was simply of cash to Tropical Music in exchange for the unrelated trademarks. Oscar Mederos, who negotiated and executed the deal from the Tropical Music side, indicates he does not remember any of the details. There is no paperwork reflecting the transaction terms and no filing of an assignment with the USPTO. Most importantly, *Tropical Music did not transfer a trademark to Armadillo other than the unrelated Dean trademarks*.[7] As no relevant trademark was transferred, logically, no related goodwill can be transferred.

---

still may give rise to a laches finding. That difference is no reason to extend the laches period beyond Armadillo's first production of the infringing goods.

[7] To Gibson's knowledge, Armadillo has never attempted to explain how or why the transfer of the Dean registered marks means to it means that Armadillo acquired the defenses Tropical Music could have asserted had Gibson sued that company in the 1990s.