# ATTACHMENT D

## **TIMING OF GENERICNESS**

Gibson's position is that genericness is measured at the time of infringement for the purpose of an affirmative defense and measured at the time of trial for cancellation.[1] The Defendants' position appears to be that if they prove genericness *at any time*, cancellation of the trademark is appropriate. Gibson supports its position with the following authority.

Most importantly, the Fifth Circuit addressed the question in this case. In its original opinion on the matter, the Fifth Circuit said what the Defendants wanted to hear:

> Thus, the Lanham Act allows for a petition for cancellation filed more than five years after registration to cancel a trademark on *the theory that the mark was generic prior to registration*.

*See* July 8, 2024 Published Opinion (not revised) at Dkt. No. 109-1, Page: 13, *Gibson, Inc. v. Armadillo Distribution Enterprises, Inc. et al*, No. 22-40587 (5th Cir. 2024) (emphasis added). Left undisturbed, the opinion would have settled the issue for the retrial under the law of the case doctrine. Gibson, however, moved for panel reconsideration and for *en banc* rehearing. [*See* Gibson's Petition for Rehearing at Dkt. No. 113-1, *Gibson, Inc. v. Armadillo Distribution Enterprises, Inc. et al*, No. 22-40587 (5th Cir. 2024); Gibson's Petition for Rehearing En Banc at Dkt. No. 114-1, *Gibson, Inc. v. Armadillo Distribution Enterprises, Inc. et al*, No. 22-40587 (5th Cir. 2024)**.** In response to Gibson's motions, the panel revised its opinion by deleting the quoted sentence and leaving in its place the instruction that a generic mark could never be incontestable. *See Gibson*, 107 F.4th at 449 (5th Cir. 2024) *as revised August 8, 2024*. By disavowing Defendants' theory, the Fifth Circuit negated or at least cast serious doubt on Defendants' "once

---

[1] Gibson emphasizes that in this trial it seeks relief for the Defendants' infringement commencing on October 1, 2017. [*See* Agreed Motion for Agenda During Pretrial Conference at Dkt. No. 702 at 16 (". . . Gibson has informed Armadillo that it will seek damages for an infringement period of October 1, 2017, until the time of trial.").]

generic, always generic" argument.

The Fifth Circuit's course reversal was well supported. As a starting point, genericness is always a defense to infringement. Nothing about Gibson's position changes that fact; genericness will remain an issue. Gibson's point is that the Lanham Act says for any mark, including incontestable marks, the test for genericness is whether the mark is **currently** generic.[2] Thus, the many cases that say, for instance, "[o]nce a mark becomes incontestable, its federal registration is conclusive evidence of its validity, subject only to the defenses set out in the Lanham Act, including that the mark has been abandoned or that it *is* generic" are consistent with Gibson's position because they measure current market perception. *E.g., Sueros Y Bebidas v. S.A. de D.V. Indus. Enter., LLC,* 690 F.Supp.3d 745, 756 (S.D. Tex. 2023) (emphasis added).

Defendants' argument is that 15 U.S.C. § 1065(4) *by itself* allows a genericness defense untethered to registration or incontestability dates. In contrast, Gibson offers its interpretation of § 1065(4). The section states that "no incontestable right **shall be acquired** in a mark which **is the generic** name for the goods or services or a portion thereof, for which **it is registered**." 15 U.S.C. § 1065(4) (emphasis added). The tense structure of the section directs an inquiry at the time the incontestability certificate issues because "it is registered" assumes registration is complete; the remainder of § 1065 limits consideration to marks on the Principal Register; and "shall be acquired" refers to the incontestable certificate yet to issue. *See Carr v. US,* 560 U.S. 438, 449, 130 S. Ct. 2229, 2237, 176 L. Ed. 2d 1152 (2010) (using tense structure to find the plain meaning of a statute).

---

[2] Of the four body shape trademarks at issue, three of them are incontestable, and one (the ES Body Shape) is on the Supplemental Register. The argument in full applies only to the three Principal Register trademarks. It is telling, however, that Gibson's burden on the ES Shape is to prove that it is non-generic *today*. If the Court accepts Defendants' position, it will put three long registered, incontestable shapes at greater risk than a Supplemental Register mark. That result is non-sensical.

Thus, the statute says that incontestable status means that the three trademarks were not generic as of the affidavit date following the expiration of five years from registration (meaning 2001/2002). Defendants, however, want to say that the result is incorrect because the three body shapes were, in fact, generic at that time. In other words, Defendants want to re-litigate incontestability status. The Supreme Court, however, says that re-litigation is not the right result.

In *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985), the Supreme Court held that a petition to cancel an incontestable trademark should not *relitigate whether registration should have been granted to the mark in the first place. See Park N' Fly*, 469 U.S. at 199 ("The incontestability provisions, as the proponents of the Lanham Act emphasized, provide a means for the registrant to quiet title in the ownership of his mark."). Asking the jury to decide whether the shapes were generic when they became incontestable, when they were registered, or before would be the very thing the Supreme Court warned against: a re-determination of the genericness issue settled at registration and confirmed at incontestability.

The thrust of the *Park 'N Fly* respondent's argument was the logical equivalent to Defendants' position, that the trademark "should never have been registered in the first place." *Id.* at 198. In rejecting that contention, the Supreme Court looked to the legislative history and plain language of the Lanham Act to confirm that Section 1064 provides the *sole basis* for cancellation of an incontestable mark. *Id.* at 199-203.

B. **The Canons of Statutory Construction Support Gibson's Interpretation.**

*Park 'N' Fly* is statutory construction in action. The judiciary has developed statutory construction principles to interpret the law and divine Congressional intent.

*1) Plain Language.*

Absent 15 U.S.C. § 1065(4), Gibson's interpretation would obviously control. The

4

question is what meaning is to be given to § 1065(4)? The answer is, of course, the meaning plain English gives the provision. *E.g., Easom v. US Well Services, Incorporated*, 37 F.4th 238, 242 (5th Cir. 2022). Section 1065(4) states: "no incontestable right ***shall be acquired*** in a mark which is the generic name for the goods or services or a portion thereof, for which ***it is registered***." Defendants see the provision as not imposing any temporal limitation, presumably based on the idea that "shall be acquired" in the abstract could apply to the genericness of the mark at any time. That reading ignores the last phrase of the sentence. Although "it is registered" is not a date certain, it clearly imposes a time frame. Section 1065 unambiguously sets a particular point in time: after a mark is registered but before an incontestable right has been acquired.

The Lanham Act's authors or any intervening Congress could have written in plain English the meaning that the panel's unrevised opinion and Defendants ascribe to § 1065(4). The provision would read: "no incontestable right shall be acquired in a mark which is ***or was*** the generic name for the goods or services or a portion thereof ~~for which it is registered~~." (emphasis and strikethrough added for illustration). But using the plain language of words means not adding, subtracting or modifying those words. *Texaco, Inc. v. Duhe,* 274 F.3d 911, 920 (5th Cir. 2001). The first takeaway from analyzing § 1065(4) is that the provision only applies to marks that have already been registered. Any other application impermissibly rewrites the statute. As the Gibson Incontestable Marks were registered at the time of the dispute, the statute asks whether the shape "is" the signifier of a class of products, not "was" the signifier of a class of products.

  2) *Duty to Harmonize.*

The second problem with Defendants' application of § 1065(4) is that it says that *by itself* the provision calls for either cancelling a mark or stripping a mark of its conclusive evidentiary power. The analytical problem with that approach is that the Lanham Act already has provisions

5

that govern the cancellation of registrations (§ 1064) and when an incontestable mark loses its evidentiary advantage (§ 1115). The Fifth Circuit usually recognizes "the cardinal rule that a statute is to be read as a whole . . . since the meaning of statutory language, plain or not, depends on context." *United States v. Stanford,* 883 F.3d 500, 511 (5th Cir. 2018) (internal citations omitted). Furthermore, "[a] statute must be viewed in its entirety, to afford each part an effect harmonious with the whole and consistent with legislative objectives." *Duke v. University of Texas at El Paso*, 663 F.2d 522, 525 (5th Cir. 1981).

Ignoring the cancellation section (§ 1064) is difficult to explain and impossible to harmonize because the introductory paragraph for § 1065 incorporates § 1064 for determining which instances render an incontestable certificate inappropriate. 15 U.S.C. § 1065 ("Except on a ground for which application to cancel may be filed at any time under paragraphs (3), (5), and (6) of section 1064 of this title . . .."). When a statute incorporates a separate provision from the same statute, the imported provision becomes part of the subject provision. *See Holloway v. McElroy,* 632 F.2d 605, 629 (5th Cir. 1980), *cert. denied,* 451 U.S. 1028 (1981).

The incorporated provision allows cancellation of the mark "[a]t any time if the registered mark *becomes* the generic name for the goods or services[.]" 15 U.S.C. § 1064(3). Merriam-Webster defines "becomes" as "to come into existence" or "to undergo change or development."[3] Section 1064 contemplates marks that are already registered and, thus, not generic. In that context, § 1064's use of "become" makes sense. A registered mark can only be registered if there was no finding that the mark was generic, but should the mark *become* generic, it is subject to cancellation. Under Defendants' interpretation, the ordinary meaning of "become" is misplaced in § 1064, as a

---

[3] *See* Definition of "become", MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/becomes (last visited Mar. 16, 2025).

mark cannot "become" something that it already was.

There is no obvious importation either from or into § 1115, but the provisions are related. Section 1065 describes how a trademark achieves incontestability, and § 1115 relates how incontestability is used in a lawsuit. Taken at face value, the absence of a genericness exception to the conclusive nature of an incontestable mark would pull genericness off the table as a defense in any lawsuit involving an incontestable mark other than through a § 1064 cancellation counterclaim. It seems odd that genericness would be mentioned in § 1064 but, unlike the other defenses listed there, not in § 1115. The leading secondary source on trademarks, however, suggests the answer to that puzzle.

McCarthy notes that because genericness is mentioned in § 1065, the opening sentence of § 1115(b) incorporates the concept through its reference to registrations that have become incontestable. MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 132.149 (5th ed.) ("To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark [.]"). Under McCarthy's theory, two things are obvious. First, if § 1065 is imported into § 1115(b), the reference to § 1064 comes with it. Second, § 1115(b) uses the same "has become" language.

From there, it is easy to read the three related provisions of the Lanham Act consistently. A trademark is on the Principal Registry only because the examiner held it to be non-generic. The mark matured into incontestability only because no competitor successfully challenged the mark for genericness. Given that history, the question of whether the trademark ever was generic has been settled, **the title has been quieted**. The relevant genericness question for any subsequent lawsuit is what each of the statutes says: has the trademark *become* generic *after incontestability*?

7

Defendants' use of § 1065(4) disconnected from the other provisions of the act throws that equation into disharmony by suggesting the cancellation and evidentiary use fall under a "has become" genericness test while the grant of incontestability is governed by an "if it ever was" genericness test. Faced with harmony or conflict, the court must choose harmony. *Reagan Nat'l. Advertising of Austin, Inc. v. Cedar Park*, 2021 WL 3484698, at *6 (5th Cir. Aug. 6, 2021).

    3) *Legislative Intent.*

The sole purpose of statutory construction "is to ascertain the intent of the legislative authority." *Matters of Hammers*, 988 F.2d 32, 34, 71 A.F.T.R.2d 93-1703 (5th Cir. 1993) (citing *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). "The most certain expression of legislative intent in nearly every instance is the words of the subject statute." *Id.* "But even the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent." *National R.R. Passenger Corp v. National Ass'n of R.R. Passengers*, 414 U.S. 452, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) (citing *Neuberger v. Commissioner*, 311 U.S. 83, 88, 61 S. Ct. 97, 101, 85 L.Ed. 58 (1940)).

A plain reading of the Lanham Act supports the proposition that an incontestable trademark can only be challenged as having *become* generic after the point of incontestability. In this instance, there is no variance between the plain language and the announced legislative intent for two reasons. First, *Park 'N Fly* confirms that "Congress enacted the Lanham Act to 'secure trademark owners in the goodwill which they have built up.'" 469 U.S. at 213 (citing S. Rep. No. 1333, 79th Cong., 2d Sess., 5 (1946)). Furthermore, "[t]he incontestability provisions, as the proponents of the Lanham Act emphasized, provide a means for the registrant to quiet title in the ownership of his mark." *Id.* (citations to the legislative record omitted). *Park N' Fly* reasons that obtaining "incontestable status by satisfying the requirements of § 1065 thus encourages producers to

cultivate the goodwill associated with a particular mark. This function of the incontestability provisions would be utterly frustrated if the holder of an incontestable mark could not enjoin infringement by others so long as they established that the mark would not be registrable but for its incontestable status." *Id.* Here, like in *Park 'N Fly*, the central purpose of the incontestability statute—that a trademark owner quiets the title of its trademark—is completely undermined if others can reach back in time to say an incontestable trademark is unenforceable now because it was generic before or at the time of registration.

Second, it is the consumer's perception of genericness that matters. *Appliance Liquidation Outlet, LLC v. Axis Suppl Corp.*, 105 F. 4th 362, 376 (5th Cir. 2024) ("The test for genericness focuses on the perception of consumers."). That concept coincides with the other purpose of the Lanham Act which is to "protect the ability of consumers to distinguish among competing producers." *Two Peso, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 774, 112 S. Ct. 2753, 2760, 120 L. Ed. 2d 614 (1992) *(quoting Park 'N Fly*, 460 U.S. at 198). Defendant imagines that we can determine what the public perception was decades ago and gives that perception more import than what today's customers perceive. That result can only be contrary to what Congress intended.

### C. Leading Trademark Authority.

McCarthy explains that historically, courts have misapplied the theory of "de facto secondary meaning" in the genericness context, leading courts to mistakenly conclude that a once-generic mark can never become a valid trademark. MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12:47 (5th ed.). McCarthy notes that some courts have corrected course.

For example, the Fifth Circuit "said that while a prior decision that a term was generic was final and could never be modified by changes in public perception, a decision that a term was descriptive and without secondary meaning was not binding because consumer perception could

change." *See Id.* (citing *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 691 (5th Cir. 1992)).

McCarthy explains that "[t]rademark rights, unlike other kinds of property claims, do not remain constant over time." *Id.* "As the late Judge Rich of the Federal Circuit observed: 'Rights in this field do not stay put. They are like ocean beaches; they shift around. Public behavior may affect them.' The meaning and significance of words can change, sometime quickly [.]" *Id.* (quoting Rich, "Trademark Problems As I See Them—Judiciary," 52 Trademark Rep. 1183, 1185 (1962)). McCarthy notes, "the fact that a descriptive designation was once held not to have acquired secondary meaning as a trademark does not mean that it cannot later acquire that significance. Why should not the same thinking be applied to generic names that might over time become subordinate and minor and replaced in public parlance by trademark significance?" *Id.* (citing *Flowers Industries v. Interstate Brands, Corp.*, 5 U.S.P.Q.2d 1580, 1987 WL 123874 (T.T.A.B. 1987); *Texas Pig Stands*, 951 F.2d at 691). McCarthy forewarns, "[i]t is a bold thing for a court to explicitly ignore customer perception." *Id.* (citing *DuPont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75, 81, 30 U.S.P.Q. 332 (C.C.A. 2d Cir. 1936)).

D.  **Occam's Razor**.

The theory of Occam's Razor is that the simplest solution is the most likely. The two courts who have recognized the exact question presented here used that theorem to resolve the issue. *See Threshold Et., LLC, v, Pressed Juicery, Inc., 445 F. Supp 2d 139 (N.D. Ca. 2020)* and *Texas Tamale Co. v. CPUSA2, LLC,* 2024 WL 1119417 (S.D. Tex. Mar. 14, 2024, Mag. J. C. Bryan). In each case, the courts analyzed the statute as discussed above but struggled with exactly how the timeline should work. In each instance, the court decided to review the defendants' evidence of genericness to decide the general question of genericness. The use of tense by the courts makes

clear the question they were answering was whether the trademark was generic at the time of the decision. The difference here is the question must be put to a jury; the phrasing of the question will tell the jury when to measure genericness. Based on Supreme Court precedent, the Fifth Circuit's implicit integration of that precedent for the issue in this very case, the plain language of the statute, the purpose of the statute, and the example of sister courts, the question can only be whether the Gibson body shape trademarks *are* generic.