Generated on: This page was generated by TSDR on 2025-02-06 13:51:13 EST

Mark:

| US Serial Number: | 77809223 | Application Filing Date: | Aug. 20, 2009 |
|---|---|---|---|
| US Registration Number: | 4322502 | Registration Date: | Apr. 23, 2013 |
| Filed as TEAS Plus: | Yes | Currently TEAS Plus: | Yes |
| Register: | Principal | | |
| Mark Type: | Trademark | | |

TM5 Common Status Descriptor:



LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

Status: The registration has been renewed.

Status Date: Oct. 20, 2023

**Publication Date:** Sep. 04, 2012

# Mark Information

| Mark Literal Elements: | None |
|---|---|
| Standard Character Claim: | No |
| Mark Drawing Type: | 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S) /NUMBER(S) |
| Description of Mark: | The mark is a configuration of a candy bar that consists of twelve (12) equally-sized recessed rectangular panels arranged in a four panel by three panel format with each panel having its own raised border within a large rectangle. |
| Color(s) Claimed: | Color is not claimed as a feature of the mark. |
| Acquired Distinctiveness Claim: | In whole |
| Design Search Code(s): | 08.03.01 - Candy bars, (chocolate); Chips, (chocolate); Chocolate candies; Chocolate chips |
| | 26.11.02 - Plain single line rectangles; Rectangles (single line) |
| | 26.11.20 - Rectangles inside one another |

# Related Properties Information

| Claimed Ownership of US Registrations: | 3668662 |
|---|---|

# Goods and Services

Note:
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| For: | candy; chocolate |
|---|---|
| International Class(es): | 030 - Primary Class |
| Class Status: | ACTIVE |
| First Use: | Dec. 31, 1968 |

U.S Class(es): 046

Use in Commerce: Dec. 31, 1968

PLAINTIFF'S TRIAL EXHIBIT

0861

4:19-CV-00358-ALM

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | HERSHEY CHOCOLATE & CONFECTIONERY LLC |
| **Owner Address:** | 19 E Chocolate Ave. Hershey, PENNSYLVANIA UNITED STATES 17033 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY |
| **State or Country Where Organized** | DELAWARE |

## Attorney/Correspondence Information

**Attorney of Record**

| | | | |
|---|---|---|---|
| **Attorney Name:** | Angela Wilson | **Docket Number:** | 481.0741 |
| **Attorney Primary Email Address:** | trademarks@hersheys.com | **Attorney Email Authorized:** | Yes |

**Correspondent**

| | |
|---|---|
| **Correspondent Name/Address:** | Angela Wilson Hershey Chocolate & Confectionery LLC 19 East Chocolate Ave Hershey, PENNSYLVANIA UNITED STATES 17033 |
| **Phone:** | 717-704-7891 |
| **Correspondent e-mail:** | trademarks@hersheys.com Stephanie.Bald@kelly-ip.com kelly.kurtz@kelly-ip.com Hersheys@kelly-ip.com hersheys@cpaglobal.com |
| **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Oct. 20, 2023 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Oct. 20, 2023 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | |
| Oct. 20, 2023 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | |
| Oct. 20, 2023 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | |
| Apr. 24, 2023 | TEAS SECTION 8 & 9 RECEIVED | |
| Apr. 23, 2022 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| Jan. 16, 2020 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Jan. 16, 2020 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Jan. 15, 2020 | AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP | |
| Dec. 05, 2018 | NOTICE OF ACCEPTANCE OF SEC. 8 & 15 - E-MAILED | |
| Dec. 05, 2018 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | |
| Dec. 05, 2018 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | |
| Nov. 12, 2018 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Nov. 12, 2018 | TEAS SECTION 8 & 15 RECEIVED | |
| Apr. 23, 2018 | COURTESY REMINDER - SEC. 8 (6-YR) E-MAILED | |
| Mar. 02, 2017 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Oct. 06, 2014 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Apr. 23, 2013 | REGISTERED-PRINCIPAL REGISTER | |
| Mar. 19, 2013 | EXTENSION OF TIME TO OPPOSE PROCESS - TERMINATED | |

| | | |
|---|---|---|
| Oct. 25, 2012 | EXPARTE APPEAL TERMINATED | 809223 |
| Oct. 03, 2012 | EXTENSION OF TIME TO OPPOSE RECEIVED | |
| Sep. 04, 2012 | PUBLISHED FOR OPPOSITION | |
| Aug. 15, 2012 | NOTICE OF PUBLICATION | |
| Jul. 31, 2012 | LAW OFFICE PUBLICATION REVIEW COMPLETED | |
| Jul. 31, 2012 | ASSIGNED TO LIE | |
| Jul. 16, 2012 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Jun. 28, 2012 | EXPARTE APPEAL TERMINATED | 809223 |
| Jun. 28, 2012 | EX PARTE APPEAL-REFUSAL REVERSED | 809223 |
| Jun. 09, 2011 | EXAMINERS STATEMENT MAILED | |
| Jun. 09, 2011 | EXAMINERS STATEMENT - COMPLETED | |
| Apr. 14, 2011 | JURISDICTION RESTORED TO EXAMINING ATTORNEY | 809223 |
| Feb. 11, 2011 | EX PARTE APPEAL-INSTITUTED | 809223 |
| Feb. 11, 2011 | EXPARTE APPEAL RECEIVED AT TTAB | |
| Dec. 29, 2010 | FINAL REFUSAL MAILED | |
| Dec. 28, 2010 | FINAL REFUSAL WRITTEN | |
| Nov. 25, 2010 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Nov. 25, 2010 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Nov. 25, 2010 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Nov. 15, 2010 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Nov. 15, 2010 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| May 28, 2010 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| May 28, 2010 | NON-FINAL ACTION E-MAILED | |
| May 28, 2010 | NON-FINAL ACTION WRITTEN | |
| May 03, 2010 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| May 03, 2010 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| May 03, 2010 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Nov. 24, 2009 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| Nov. 24, 2009 | NON-FINAL ACTION E-MAILED | |
| Nov. 24, 2009 | NON-FINAL ACTION WRITTEN | |
| Nov. 17, 2009 | ASSIGNED TO EXAMINER | |
| Aug. 25, 2009 | NOTICE OF DESIGN SEARCH CODE MAILED | |
| Aug. 24, 2009 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Aug. 24, 2009 | NEW APPLICATION ENTERED | |

# TM Staff and Location Information

| TM Staff Information - None | |
|---|---|
| **File Location** | |
| Current Location: GENERIC WEB UPDATE | Date in Location: Oct. 20, 2023 |

# Assignment Abstract Of Title Information

| Summary | |
|---|---|
| Total Assignments: 1 | Registrant: Hershey Chocolate & Confectionery Corporation |

| Assignment 1 of 1 | |
|---|---|
| Conveyance: ENTITY CONVERSION | |
| Reel/Frame: 6828/0140 | |
| Date Recorded: Dec. 30, 2019 | Pages: 21 |
| Supporting Documents: assignment-tm-6828-0140.pdf | |

| Assignor | |
|---|---|
| Name: HERSHEY CHOCOLATE & CONFECTIONERY CORPORATION | Execution Date: Dec. 27, 2019 |
| Legal Entity Type: CORPORATION | State or Country DELAWARE |

|  | Where Organized: |  |  |
|---|---|---|---|

| Assignee | | | |
|---|---|---|---|
| Name: | HERSHEY CHOCOLATE & CONFECTIONERY LLC | | |
| Legal Entity Type: | LIMITED LIABILITY COMPANY | State or Country Where Organized: | DELAWARE |
| Address: | 8001 ARISTA PLACE, SUITE 430 BROOMFIELD, COLORADO 80021 | | |

| Correspondent | | |
|---|---|---|
| Correspondent Name: | MIRIAM D. TRUDELL | |
| Correspondent Address: | 1560 BROADWAY, SUITE 1200 SHERIDAN ROSS P.C. DENVER, CO 80202 | |

| Domestic Representative - Not Found |
|---|

# Proceedings

| Summary | |
|---|---|
| Number of Proceedings: | 3 |

| Type of Proceeding: Opposition | | | |
|---|---|---|---|
| Proceeding Number: | 91221701 | Filing Date: | Apr 23, 2015 |
| Status: | Terminated | Status Date: | Feb 22, 2016 |
| Interlocutory Attorney: | ANN LINNEHAN VOGLER | | |

| Defendant | | |
|---|---|---|
| Name: | Dochirnie Pidpryiemstvo "Kondyterska Kor Poratsiia "Roshen" | |
| Correspondent Address: | GWYNNE B SUGG MOSER TABOADA 1030 BROAD STREET, SUITE 203 SHREWSBURY NJ UNITED STATES , 07702 | |
| Correspondent e-mail: | gsugg@mtiplaw.com | |

Associated marks

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| ELEGANCE | | 79152263 | |

| Plaintiff(s) | | |
|---|---|---|
| Name: | Hershey Chocolate & Confectionery Corporation | |
| Correspondent Address: | PAUL LLEWELLYN KAYE SCHOLER LLP 250 WEST 55TH STREET NEW YORK NY UNITED STATES , 10019-9710 | |
| Correspondent e-mail: | paul.llewellyn@kayescholer.com , tmdocketing@kayescholer.com | |

Associated marks

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| | | 77809223 | 4322502 |
| HERSHEY'S HERSHEY'S HERSHEY'S HERSHEY HERSHEY'SHERSHEY'S HERSHEY'S HERSHEY'S HERSHEY'S HERSHEY'SHERSHEY'S HERSHEY'S HERSHEY'S HERSHEY'S | | 77581348 | 3668662 |
| HERSHEY'S | | 77773616 | 3742438 |

| Prosecution History | | | |
|---|---|---|---|
| Entry Number | History Text | Date | Due Date |
| 15 | TERMINATED | Feb 22, 2016 | |
| 14 | BD DECISION: SUSTAINED | Feb 22, 2016 | |
| 13 | EXTENSION OF TIME GRANTED | Nov 10, 2015 | |

| 12 | STIP FOR EXT | Nov 10, 2015 | |
| 11 | ANSWER | Sep 08, 2015 | |
| 10 | EXTENSION OF TIME GRANTED | Aug 06, 2015 | |
| 9 | D MOT FOR EXT W/ CONSENT | Aug 06, 2015 | |
| 8 | EXTENSION OF TIME GRANTED | Jul 01, 2015 | |
| 7 | D MOT FOR EXT W/ CONSENT | Jul 01, 2015 | |
| 6 | EXTENSION OF TIME GRANTED | Jun 05, 2015 | |
| 5 | D MOT FOR EXT W/ CONSENT | Jun 05, 2015 | |
| 4 | D APPEARANCE / POWER OF ATTORNEY | Jun 05, 2015 | |
| 3 | PENDING, INSTITUTED | Apr 28, 2015 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Apr 28, 2015 | Jun 07, 2015 |
| 1 | FILED AND FEE | Apr 23, 2015 | |

## Type of Proceeding: Extension of Time

| Proceeding Number: | 77809223 | Filing Date: | Oct 03, 2012 |
|---|---|---|---|
| Status: | Terminated | Status Date: | Mar 19, 2013 |
| Interlocutory Attorney: | | | |

### Defendant

| Name: | Hershey Chocolate & Confectionery Corpor |
|---|---|
| Correspondent Address: | PAUL C LLEWELLYN<br>KAYE SCHOLER LLP<br>425 PARK AVE<br>NEW YORK NY UNITED STATES , 10022 |

### Associated marks

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| | | 77809223 | |

### Potential Opposer(s)

| Name: | Mars, Incorporated |
|---|---|
| Correspondent Address: | Cristina A. Carvalho and Ross Q. Panko<br>Arent Fox LLP<br>1050 Connecticut Avenue NW<br>Washington DC UNITED STATES , 20036 |
| Correspondent e-mail: | carvalho.cristina@arentfox.com , panko.ross@arentfox.com |

### Prosecution History

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 4 | EXTENSION OF TIME GRANTED | Jan 02, 2013 | |
| 3 | INCOMING - EXT TIME TO OPPOSE FILED | Jan 02, 2013 | |
| 2 | EXTENSION OF TIME GRANTED | Oct 04, 2012 | |
| 1 | INCOMING - EXT TIME TO OPPOSE FILED | Oct 03, 2012 | |

## Type of Proceeding: Exparte Appeal

| Proceeding Number: | 77809223 | Filing Date: | Feb 11, 2011 |
|---|---|---|---|
| Status: | Terminated | Status Date: | Oct 25, 2012 |
| Interlocutory Attorney: | | | |

### Plaintiff(s)

| Name: | Hershey Chocolate & Confectionery Corporation |
|---|---|
| Correspondent Address: | PAUL C LLEWELLYN<br>KAYE SCHOLER LLP<br>425 PARK AVENUE<br>NEW YORK NY UNITED STATES , 10022 |
| Correspondent e-mail: | pllewellyn@kayescholer.com , jeischeid@kayescholer.com |

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|------|-------------------|---------------|---------------------|
|      |                   | 77809223      |                     |

**Prosecution History**

| Entry Number | History Text | Date | Due Date |
|--------------|--------------|------|----------|
| 17 | TERMINATED | Oct 25, 2012 | |
| 16 | TERMINATED | Jun 28, 2012 | |
| 15 | BOARD'S DECISION: REVERSED | Jun 28, 2012 | |
| 14 | ORAL HEARING APPEARANCE RECORD | Dec 08, 2011 | |
| 13 | ORAL HEARING SCHEDULED | Oct 31, 2011 | |
| 12 | BOARD'S ORDER | Jun 29, 2011 | |
| 11 | D'S REQUEST FOR ORAL HEARING | Jun 28, 2011 | |
| 10 | REPLY BRIEF | Jun 28, 2011 | |
| 9 | EXAMINER'S STATEMENT | Jun 09, 2011 | |
| 8 | APPEAL BRIEF | Apr 12, 2011 | |
| 7 | APPEAL BRIEF | Apr 12, 2011 | |
| 6 | APPEAL BRIEF | Apr 12, 2011 | |
| 5 | APPEAL FORWARDED TO EXAMINER FOR BRIEF | Apr 14, 2011 | |
| 4 | APPEAL BRIEF | Apr 12, 2011 | |
| 3 | INSTITUTED | Feb 11, 2011 | |
| 2 | APPEAL ACKNOWLEDGED | Feb 11, 2011 | |
| 1 | APPEAL TO BOARD | Feb 11, 2011 | |

| | |
|---|---|
| **From:** | TMOfficialNotices@USPTO.GOV |
| **Sent:** | Friday, October 20, 2023 11:18 PM |
| **To:** | XXXX |
| **Cc:** | XXXX;  XXXX;  XXXX;  XXXX |
| **Subject:** | Official USPTO Notice of Acceptance and Renewal Sections 8 and 9: U.S. Trademark RN 4322502: Miscellaneous Design: Docket/Reference No. 481.0741 |

**U.S. Serial Number:**  77809223
**U.S. Registration Number:**  4322502
**U.S. Registration Date:**  Apr 23, 2013
**Mark:**  Miscellaneous Design
**Owner:**  HERSHEY CHOCOLATE & CONFECTIONERY LLC

Oct 20, 2023

### NOTICE OF ACCEPTANCE UNDER SECTION 8

The declaration of use or excusable nonuse filed for the above-identified registration meets the requirements of Section 8 of the Trademark Act, 15 U.S.C. §1058.  **The Section 8 declaration is accepted.**

### NOTICE OF REGISTRATION RENEWAL UNDER SECTION 9

The renewal application filed for the above-identified registration meets the requirements of Section 9 of the Trademark Act, 15 U.S.C. §1059.  **The registration is renewed.**

**The registration will remain in force for the class(es) listed below, unless canceled by an order of the Commissioner for Trademarks or a Federal Court, as long as the requirements for maintaining the registration are fulfilled as they become due.**

**Class(es):**
030


TRADEMARK SPECIALIST
POST-REGISTRATION DIVISION
571-272-9500

---

### REQUIREMENTS FOR MAINTAINING REGISTRATION IN SUCCESSIVE TEN-YEAR PERIODS

**WARNING: Your registration will be canceled if you do not file the documents below during the specified statutory time periods.**

**What and When to File:** You must file a declaration of use (or excusable nonuse) **and** an application for renewal between every 9th and 10th-year period, calculated from the registration date.  See 15 U.S.C. §§1058, 1059.

**Grace Period Filings**

The above documents will be considered as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*\*\*THE USPTO IS NOT REQUIRED TO SEND ANY FURTHER NOTICE OR REMINDER OF THESE REQUIREMENTS.  THE OWNER SHOULD CONTACT THE USPTO ONE YEAR BEFORE THE EXPIRATION OF THE TIME PERIODS SHOWN ABOVE TO DETERMINE APPROPRIATE REQUIREMENTS AND FEES.\*\*\***

To check the status of this registration, go to
https://tsdr.uspto.gov/#caseNumber=77809223&caseSearchType=US_APPLICATION&caseType=SERIAL_NO&searchType=statusSearch  or contact the Trademark Assistance Center at 1-800-786-9199.

To view this notice and other documents for this registration on-line, go to
https://tsdr.uspto.gov/#caseNumber=77809223&caseSearchType=US_APPLICATION&caseType=SERIAL_NO&searchType=documentSearch  NOTE: This notice will only be available on-line the next business day after receipt of this e-mail.

   \*    **For further information, including information on filing and maintenance requirements for U.S. trademark applications and registrations and required fees, please consult the USPTO website at https://www.uspto.gov/trademark/ or contact the Trademark Assistance Center at 1-800-786-9199.**

PTO- 1963
Approved for use through 01/31/2025. OMB 0651-0055
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Combined Declaration of Use and/or Excusable Nonuse/Application for Renewal of Registration of a Mark under Sections 8 & 9

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **REGISTRATION NUMBER** | 4322502 |
| **REGISTRATION DATE** | 04/23/2013 |
| **SERIAL NUMBER** | 77809223 |
| **MARK SECTION** | |
| **MARK** | Miscellaneous Mark (stylized and/or with design, see mark) |
| **ATTORNEY INFORMATION (current)** | |
| **NAME** | Dinisa Hardley Folmar |
| **ATTORNEY BAR MEMBERSHIP NUMBER** | XXX |
| **YEAR OF ADMISSION** | XXXX |
| **U.S. STATE/ COMMONWEALTH/ TERRITORY** | XX |
| **INTERNAL ADDRESS** | Hershey Chocolate & Confectionery LLC |
| **STREET** | 19 East Chocolate Avenue |
| **CITY** | Hershey |
| **STATE** | Pennsylvania |
| **POSTAL CODE** | 17033 |
| **COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **PHONE** | 7175344502 |
| **EMAIL** | trademarks@hersheys.com |
| **ATTORNEY INFORMATION (proposed)** | |
| **NAME** | Angela Wilson |
| **ATTORNEY BAR MEMBERSHIP NUMBER** | XXX |
| **YEAR OF ADMISSION** | XXXX |
| **U.S. STATE/ COMMONWEALTH/ TERRITORY** | XX |
| **FIRM NAME** | Hershey Chocolate & Confectionery LLC |
| **STREET** | 19 East Chocolate Ave |
| **CITY** | Hershey |
| **STATE** | Pennsylvania |
| **POSTAL CODE** | 17033 |
| **COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |

| PHONE | 717-704-7891 |
|---|---|
| EMAIL | trademarks@hersheys.com |
| DOCKET/REFERENCE NUMBER | 481.0741 |
| OTHER APPOINTED ATTORNEY | Under 37 C.F.R. 2.17(c)(2) and TMEP Section 605.03, the undersigned also appoints as associate power of attorney and co-counsel the following attorneys at Kelly IP, LLP: Stephanie H. Bald |

**CORRESPONDENCE INFORMATION (current)**

| NAME | Dinisa Hardley Folmar |
|---|---|
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | trademarks@hersheys.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | NOT PROVIDED |

**CORRESPONDENCE INFORMATION (proposed)**

| NAME | Angela Wilson |
|---|---|
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | trademarks@hersheys.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | Stephanie.Bald@kelly-ip.com; kelly.kurtz@kelly-ip.com; Hersheys@kelly-ip.com; hersheys@cpaglobal.com |
| DOCKET/REFERENCE NUMBER | 481.0741 |

**GOODS AND/OR SERVICES SECTION**

| INTERNATIONAL CLASS | 030 |
|---|---|
| GOODS OR SERVICES | candy; chocolate |
| SPECIMEN FILE NAME(S) | \\TICRS\EXPORT18\IMAGEOUT 18\778\092\77809223\xml2 \S890002.jpg |
| SPECIMEN DESCRIPTION | photograph of the goods |
| WEBPAGE URL | None Provided |
| WEBPAGE DATE OF ACCESS | None Provided |

**OWNER SECTION (current)**

| NAME | HERSHEY CHOCOLATE & CONFECTIONERY LLC |
|---|---|
| MAILING ADDRESS | 8001 ARISTA PLACE, SUITE 430 |
| CITY | BROOMFIELD |
| STATE | Colorado |
| ZIP/POSTAL CODE | 80021 |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |

**OWNER SECTION (proposed)**

| NAME | HERSHEY CHOCOLATE & CONFECTIONERY LLC |
|---|---|
| MAILING ADDRESS | 19 E Chocolate Ave. |
| CITY | Hershey |
| STATE | Pennsylvania |
| ZIP/POSTAL CODE | 17033 |

| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
|---|---|
| EMAIL | XXXX |
| **LEGAL ENTITY SECTION (current)** | |
| TYPE | limited liability company |
| STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY WHERE LEGALLY ORGANIZED | Delaware |
| **PAYMENT SECTION** | |
| NUMBER OF CLASSES | 1 |
| NUMBER OF CLASSES PAID | 1 |
| COMBINED §§ 8 & 9 DECLARATION/APPLICATION FILING FEE | 525 |
| TOTAL FEE PAID | 525 |
| **SIGNATURE SECTION** | |
| SIGNATURE | /Angela Wilson/ |
| SIGNATORY'S NAME | Angela Wilson |
| SIGNATORY'S POSITION | Attorney of Record |
| DATE SIGNED | 04/24/2023 |
| SIGNATURE METHOD | Sent to third party for signature |
| PAYMENT METHOD | CC |
| **FILING INFORMATION** | |
| SUBMIT DATE | Mon Apr 24 11:01:53 ET 2023 |
| TEAS STAMP | USPTO/S08N09-XX.XXX.XX.XX -20230424110154688953-432 2502-850fc5e28d1f4eaf4564 fc317d1356b5b160afb9e9a4c cb01b343a64105a77b01f-CC- 01538404-2023042410014128 3546 |

PTO- 1963
Approved for use through 01/31/2025. OMB 0651-0055
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

### Combined Declaration of Use and/or Excusable Nonuse/Application for Renewal of Registration of a Mark under Sections 8 & 9

## To the Commissioner for Trademarks:

**REGISTRATION NUMBER:** 4322502
**REGISTRATION DATE:** 04/23/2013

**MARK:** (Stylized and/or with Design, Miscellaneous Mark (see, mark))

**Current:** The owner, HERSHEY CHOCOLATE & CONFECTIONERY LLC, a limited liability company legally organized under the laws of Delaware, having an address of
    8001 ARISTA PLACE, SUITE 430
    BROOMFIELD, Colorado 80021
    United States

**Proposed:** The owner, HERSHEY CHOCOLATE & CONFECTIONERY LLC, a limited liability company legally organized under the laws of Delaware, having an address of
    19 E Chocolate Ave.
    Hershey, Pennsylvania 17033
    United States
    XXXX
is filing a Combined Declaration of Use and/or Excusable Nonuse/Application for Renewal of Registration of a Mark under Sections 8 & 9.

For International Class 030, the mark is in use in commerce on or in connection with **all** goods/services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: candy; chocolate ; or, the owner is making the listed excusable nonuse claim.

The owner is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in this class, consisting of a(n) photograph of the goods.
Specimen File1

Webpage URL: None Provided
Webpage Date of Access: None Provided
The owner's/holder's current attorney information: Dinisa Hardley Folmar. Dinisa Hardley Folmar is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, is located at

    Hershey Chocolate & Confectionery LLC
    19 East Chocolate Avenue
    Hershey, Pennsylvania 17033
    United States

The phone number is 7175344502.

The email address is trademarks@hersheys.com

Dinisa Hardley Folmar submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

The owner's/holder's proposed attorney information: Angela Wilson. Other appointed attorneys are Under 37 C.F.R. 2.17(c)(2) and TMEP Section 605.03, the undersigned also appoints as associate power of attorney and co-counsel the following attorneys at Kelly IP, LLP: Stephanie H. Bald. Angela Wilson of Hershey Chocolate & Confectionery LLC, is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, and the attorney(s) is located at

    19 East Chocolate Ave

Hershey, Pennsylvania 17033
United States
The docket/reference number is 481.0741.

The phone number is 717-704-7891.

The email address is trademarks@hersheys.com

Angela Wilson submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

**Correspondence Information (current)**
Dinisa Hardley Folmar
PRIMARY EMAIL FOR CORRESPONDENCE: trademarks@hersheys.com
SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): NOT PROVIDED

**Correspondence Information (proposed)**
Angela Wilson
PRIMARY EMAIL FOR CORRESPONDENCE: trademarks@hersheys.com
SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): Stephanie.Bald@kelly-ip.com; kelly.kurtz@kelly-ip.com; Hersheys@kelly-ip.com; hersheys@cpaglobal.com
The docket/reference number is 481.0741.

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the owner/holder and the owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).

A fee payment in the amount of $525 will be submitted with the form, representing payment for 1 class(es), plus any additional grace period fee, if necessary.

**Declaration**

☑ Unless the owner has specifically claimed excusable nonuse, the mark is in use in commerce on or in connection with the goods/services or to indicate membership in the collective membership organization identified above, as evidenced by the attached specimen(s).

☑ Unless the owner has specifically claimed excusable nonuse, the specimen(s) shows the mark as currently used in commerce on or in connection with the goods/services/collective membership organization.

☑ The registrant requests that the registration be renewed for the goods/services/collective organization identified above.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of this submission and the registration, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

Signature: /Angela Wilson/   Date: 04/24/2023
Signatory's Name: Angela Wilson
Signatory's Position: Attorney of Record
Signature method: Sent to third party for signature

Mailing Address **(current):**

19 East Chocolate Avenue
Hershey, Pennsylvania 17033

Mailing Address **(proposed):**
Hershey Chocolate & Confectionery LLC
19 East Chocolate Ave
Hershey, Pennsylvania 17033

Serial Number: 77809223
Internet Transmission Date: Mon Apr 24 11:01:53 ET 2023
TEAS Stamp: USPTO/S08N09-XX.XXX.XX.XX-20230424110154
688953-4322502-850fc5e28d1f4eaf4564fc317
d1356b5b160afb9e9a4ccb01b343a64105a77b01
f-CC-01538404-20230424100141283546





**From:**     TMOfficialNotices@USPTO.GOV
**Sent:**     Saturday, April 23, 2022 01:36 AM
**To:**     XXXX
**Subject:**     Official USPTO Courtesy Reminder: Trademark Registration Maintenance Documents Must Be Filed Before Deadline for U.S. Trademark Registration No. 4322502 Miscellaneous Design

## USPTO COURTESY REMINDER

## TRADEMARK REGISTRATION MAINTENANCE DOCUMENT(S) UNDER SECTIONS 8 AND 9 MUST BE FILED BEFORE DEADLINE OR REGISTRATION WILL BE CANCELLED/EXPIRED

**U.S. Application Serial No.**  77809223
**U.S. Registration No.**  4322502
**U.S. Registration Date:**  April 23, 2013
**Mark:**  Miscellaneous Design
**Owner:**  HERSHEY CHOCOLATE & CONFECTIONERY LLC
**Docket/Reference No.**

**Issue Date:**  April 23, 2022

**Required submission.**  The owner of the trademark registration must file a **Declaration of Use and/or Excusable Nonuse and an Application for Renewal under Sections 8 and 9 of the Trademark Act** (Sections 8 and 9 Declaration) between now and April 24, 2023.   For an additional fee, the owner can file within the 6-month grace period that ends on October 23, 2023.

**If ownership of the registration or the owner's name has changed,** the owner can use the **Electronic Trademark Assignment System (ETAS)** to record the change.  More information on changes of ownership/owner name is available on the **USPTO website.**

**Click here for more information about maintaining a trademark registration.**

**Proof of Use Audit.**  The USPTO is conducting an audit program to promote the accuracy and integrity of the trademark register.  If a registration is selected for audit, the owner will be required to submit proof of use for additional goods/services for which use is claimed in a Section 8 Declaration.  Detailed information about the program is available on the **Proof of Use Audit Program webpage.**

**Determination of time of receipt by USPTO.**  Correspondence transmitted through the Trademark Electronic Application System (TEAS) is considered filed on the date the USPTO receives the transmission in Eastern Time.

**If the owner fails to file a timely Sections 8 and 9 Declaration the registration will be CANCELLED/EXPIRED** and cannot be reinstated.

**This reminder notice is being sent only as a courtesy** to trademark owners who maintain a current email address with the USPTO.   Failure by the USPTO to send a reminder or non-receipt of a reminder does not excuse a trademark owner from meeting the statutory obligations for maintaining a registration.

**Foreign-domiciled owners** must have a U.S.-licensed attorney represent them at the USPTO in any post-registration filing.

**Beware of misleading notices sent by private companies about registrations.**  Private companies **not** associated with the USPTO use public information available in trademark registrations to mail and email trademark-related offers and notices - most of which require fees.  All **official USPTO correspondence** will only be **emailed from the domain "@uspto.gov."**

**Direct questions** about this notice to the Trademark Assistance Center at 1-800-786-9199 (select option 1) or **TrademarkAssistanceCenter@uspto.gov.**

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 2196 (Rev 09/2005)
OMB No. 0651-0056 (Exp 11/30/2020)

# Revocation, Appointment, and/or Change of Address of Attorney/Domestic Representative

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 77809223 |
| **REGISTRATION NUMBER** | 4322502 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 116 |
| **MARK SECTION** | |
| MARK | Design only |
| **CURRENT CORRESPONDENCE ADDRESS** | |
| NAME | DINISA HARDLEY FOLMAR |
| FIRM NAME | HERSHEY CHOCOLATE & CONFECTIONERY CORPOR |
| STREET | 4860 ROBB STREET, SUITE 204 |
| CITY | WHEAT RIDGE |
| STATE | Colorado |
| COUNTRY | US |
| POSTAL/ZIP CODE | 80033 |
| EMAIL | trademarks@hersheys.com |
| AUTHORIZED TO COMMUNICATE VIA E-MAIL | YES |
| **NEW ATTORNEY INFORMATION** | |
| STATEMENT TEXT | By submission of this request, the undersigned REVOKES the power of attorney currently of record, as listed above, and hereby APPOINTS the following new attorney: |
| NAME | Dinisa Hardley Folmar |
| ATTORNEY BAR MEMBERSHIP NUMBER | XXX |
| YEAR OF ADMISSION | XXXX |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | XX |
| INTERNAL ADDRESS | Hershey Chocolate & Confectionery LLC |
| STREET | 19 East Chocolate Avenue |
| CITY | Hershey |
| STATE | Pennsylvania |
| COUNTRY | United States |
| POSTAL/ZIP CODE | 17033 |
| PHONE | 7175344502 |
| EMAIL | trademarks@hersheys.com |
| ATTORNEY AUTHORIZED TO COMMUNICATE VIA | |

| E-MAIL | YES |
|---|---|
| INDIVIDUAL ATTORNEY DOCKET/REFERENCE NUMBER | |
| **NEW CORRESPONDENCE INFORMATION** | |
| NAME | Dinisa Hardley Folmar |
| INTERNAL ADDRESS | Hershey Chocolate & Confectionery LLC |
| STREET | 19 East Chocolate Avenue |
| CITY | Hershey |
| STATE | Pennsylvania |
| COUNTRY | United States |
| POSTAL/ZIP CODE | 17033 |
| PHONE | 7175344502 |
| EMAIL | trademarks@hersheys.com |
| AUTHORIZED TO COMMUNICATE VIA E-MAIL | YES |
| INDIVIDUAL ATTORNEY DOCKET/REFERENCE NUMBER | |
| **SIGNATURE SECTION** | |
| SIGNATURE | /dhf/ |
| SIGNATORY NAME | Dinisa Hardley Folmar |
| SIGNATORY DATE | 01/16/2020 |
| SIGNATORY POSITION | Attorney of record, Georgia bar member |
| SIGNATORY PHONE NUMBER | 7175344502 |
| **FILING INFORMATION SECTION** | |
| SUBMIT DATE | Thu Jan 16 16:24:08 EST 2020 |
| TEAS STAMP | USPTO/RAA-XXX.XXX.XXX.XX-20200116162408077622-7779 5167-700fb1ad26423626033b ed64e1ce9ddbc55e6382f2637 aa033bccff03dcc74f5fb-N/A -N/A-20200116143726965083 |

118885

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 2196 (Rev 09/2005)
OMB No. 0651-0056 (Exp 11/30/2020)

## Revocation, Appointment, and/or Change of Address of Attorney/Domestic Representative

To the Commissioner for Trademarks:
**MARK:** Design only
**SERIAL NUMBER:** 77809223
**REGISTRATION NUMBER:** 4322502

**Current Correspondence Information:**
DINISA HARDLEY FOLMAR
HERSHEY CHOCOLATE & CONFECTIONERY CORPOR
4860 ROBB STREET, SUITE 204
WHEAT RIDGE, Colorado 80033
US
trademarks@hersheys.com (authorized)


By submission of this request, the undersigned REVOKES the power of attorney currently of record, as listed above, and hereby APPOINTS the following new attorney:

**New Attorney information:**
Dinisa Hardley Folmar
XX bar, admitted in XXXX, bar membership no. XXX, is located at
Hershey Chocolate & Confectionery LLC
19 East Chocolate Avenue
Hershey, Pennsylvania 17033
United States
7175344502
trademarks@hersheys.com (not authorized)


Dinisa Hardley Folmar submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

**New Correspondence Information:**
Dinisa Hardley Folmar
Hershey Chocolate & Confectionery LLC
19 East Chocolate Avenue
Hershey, Pennsylvania 17033
United States
7175344502
trademarks@hersheys.com (authorized)


Signature: /dhf/     Date: 01/16/2020
Signatory's Name: Dinisa Hardley Folmar
Signatory's Position: Attorney of record, Georgia bar member
Signatory's Phone Number: 7175344502

Serial Number: 77809223
Internet Transmission Date: Thu Jan 16 16:24:08 EST 2020
TEAS Stamp: USPTO/RAA-XXX.XXX.XXX.XX-202001161624080
77622-77795167-700fb1ad26423626033bed64e
1ce9ddbc55e6382f2637aa033bccff03dcc74f5f
b-N/A-N/A-20200116143726965083

| | |
|---|---|
| **From:** | TMOfficialNotices@USPTO.GOV |
| **Sent:** | Wednesday, December 5, 2018 11:00 PM |
| **To:** | XXXX |
| **Subject:** | Official USPTO Notice of Acceptance/Acknowledgement Sections 8 and 15: U.S. Trademark RN 4322502: Miscellaneous Design |

**U.S. Serial Number:** 77809223
**U.S. Registration Number:** 4322502
**U.S. Registration Date:** Apr 23, 2013
**Mark:** Miscellaneous Design
**Owner:** Hershey Chocolate & Confectionery Corpor etc.

Dec 5, 2018

### NOTICE OF ACCEPTANCE UNDER SECTION 8

The declaration of use or excusable nonuse filed for the above-identified registration meets the requirements of Section 8 of the Trademark Act, 15 U.S.C. §1058. **The Section 8 declaration is accepted.**

### NOTICE OF ACKNOWLEDGEMENT UNDER SECTION 15

The declaration of incontestability filed for the above-identified registration meets the requirements of Section 15 of the Trademark Act, 15 U.S.C. §1065. **The Section 15 declaration is acknowledged.**

**The registration will remain in force for the class(es) listed below, unless canceled by an order of the Commissioner for Trademarks or a Federal Court, as long as the requirements for maintaining the registration are fulfilled as they become due.**

**Class(es):**
030

TRADEMARK SPECIALIST
POST-REGISTRATION DIVISION
571-272-9500

### REQUIREMENTS FOR MAINTAINING REGISTRATION

**WARNING: Your registration will be canceled if you do not file the documents below during the specified statutory time periods.**

**Requirements in the First Ten Years**

**What and When to File:** You must file a declaration of use (or excusable nonuse) **and** an application for renewal between the 9th and 10th years after the registration date. See 15 U.S.C. §§1058, 1059.

**Requirements in Successive Ten-Year Periods**

**What and When to File:** You must file a declaration of use (or excusable nonuse) **and** an application for renewal between every 9th and 10th-year period, calculated from the registration date. See 15 U.S.C. §§1058, 1059.

**Grace Period Filings**

The above documents will be considered as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*\*\*THE USPTO IS NOT REQUIRED TO SEND ANY FURTHER NOTICE OR REMINDER OF THESE REQUIREMENTS. THE OWNER SHOULD CONTACT THE USPTO ONE YEAR BEFORE THE EXPIRATION OF THE TIME PERIODS SHOWN ABOVE TO DETERMINE APPROPRIATE REQUIREMENTS AND FEES.\*\*\***

To check the status of this registration, go to https://tsdr.uspto.gov/#caseNumber=77809223&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch or contact the Trademark Assistance Center at 1-800-786-9199.

To view this notice and other documents for this registration on-line, go to https://tsdr.uspto.gov/#caseNumber=77809223&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=documentSearch NOTE: This notice will only be available on-line the next business day after receipt of this e-mail.

  \*   **For further information, including information on filing and maintenance requirements for U.S. trademark applications and registrations and required fees, please consult the USPTO website at https://www.uspto.gov/trademark/ or contact the Trademark Assistance Center at 1-800-786-9199.**

# Change Of Correspondence Address

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 77809223 |
| **MARK SECTION** | |
| **MARK** | Miscellaneous Mark (stylized and/or with design, see https://tmng-al.uspto.gov/resting2/api/img/77809223/large) |
| **NEW CORRESPONDENCE ADDRESS** | |
| **NEW ADDRESS** | Dinisa Hardley Folmar<br><br>Hershey Chocolate & Confectionery Corporation<br>4860 Robb Street, Suite 204<br>Wheat Ridge<br>Colorado<br>United States<br>80033<br>trademarks@hersheys.com |
| **AUTHORIZED TO COMMUNICATE VIA E-MAIL** | YES |
| **INDIVIDUAL ATTORNEY DOCKET/REFERENCE NUMBER** | |
| **SIGNATURE SECTION** | |
| **SIGNATURE** | /James Turoff/ |
| **SIGNATORY NAME** | James Turoff |
| **SIGNATORY DATE** | 11/12/2018 |
| **SIGNATORY POSITION** | President & Secretary |
| **FILING INFORMATION SECTION** | |
| **SUBMIT DATE** | Mon Nov 12 12:57:38 EST 2018 |
| **TEAS STAMP** | USPTO/S08N15-XXX.XXX.XX.X<br>XX-20181112125738313628-4<br>322502-6107f22cfdff238db6<br>0bc81ee20ee30d3a45ec71a37<br>daa38c1bf74f614b28f7cc3-C<br>C-11690-20181111204607687<br>582 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTO Form 1583 (Rev 05/2006)
OMB No. 0651-0055 (Exp 10/31/2021)

# Combined Declaration of Use and Incontestability under Sections 8 & 15

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **REGISTRATION NUMBER** | 4322502 |
| **REGISTRATION DATE** | 04/23/2013 |
| **SERIAL NUMBER** | 77809223 |
| **MARK SECTION** | |
| **MARK** | Miscellaneous Mark (stylized and/or with design, see https://tmng-al.uspto.gov/resting2/api/img/77809223/large) |
| **CORRESPONDENCE SECTION (current)** | |
| **NAME** | PAUL C LLEWELLYN |
| **FIRM NAME** | Arnold & Porter Kaye Scholer LLP |
| **STREET** | 250 WEST 55TH STREET |
| **CITY** | NEW YORK |
| **STATE** | New York |
| **POSTAL CODE** | 10019-9710 |
| **COUNTRY** | United States |
| **PHONE** | 2128367828 |
| **FAX** | 212-836-6463 |
| **EMAIL** | paul.llewellyn@apks.com; tmdocketing@apks.com |
| **AUTHORIZED TO COMMUNICATE VIA E-MAIL** | Yes |
| **DOCKET/REFERENCE NUMBER** | 29985- |
| **CORRESPONDENCE SECTION (proposed)** | |
| **NAME** | Dinisa Hardley Folmar |
| **FIRM NAME** | Hershey Chocolate & Confectionery Corporation |
| **STREET** | 4860 Robb Street, Suite 204 |
| **CITY** | Wheat Ridge |
| **STATE** | Colorado |
| **POSTAL CODE** | 80033 |
| **COUNTRY** | United States |
| **EMAIL** | trademarks@hersheys.com |
| **AUTHORIZED TO COMMUNICATE VIA E-MAIL** | Yes |
| **GOODS AND/OR SERVICES SECTION** | |
| **INTERNATIONAL CLASS** | 030 |

| GOODS OR SERVICES | candy; chocolate |
|---|---|
| SPECIMEN FILE NAME(S) | \\TICRS\EXPORT17\IMAGEOUT 17\778\092\77809223\xml3\8150002.JPG |
| SPECIMEN DESCRIPTION | photograph of HERSHEY'S candy bar configuration as sold in commerce, evidencing use of mark |

**OWNER SECTION (current)**

| NAME | Hershey Chocolate & Confectionery Corporation |
|---|---|
| STREET | 4860 Robb Street, Suite 204 |
| CITY | Wheat Ridge |
| STATE | Colorado |
| ZIP/POSTAL CODE | 80033 |
| COUNTRY | United States |
| PHONE | 717-534-7911 |
| FAX | 717-534-7549 |
| EMAIL | XXXX |
| AUTHORIZED TO COMMUNICATE VIA E-MAIL | Yes |

**OWNER SECTION (proposed)**

| NAME | Hershey Chocolate & Confectionery Corporation |
|---|---|
| STREET | 4860 Robb Street, Suite 204 |
| CITY | Wheat Ridge |
| STATE | Colorado |
| ZIP/POSTAL CODE | 80033 |
| COUNTRY | United States |
| PHONE | |
| FAX | |
| EMAIL | XXXX |
| AUTHORIZED TO COMMUNICATE VIA E-MAIL | Yes |

**LEGAL ENTITY SECTION (current)**

| TYPE | corporation |
|---|---|
| STATE/COUNTRY OF INCORPORATION | Delaware |

**PAYMENT SECTION**

| NUMBER OF CLASSES | 1 |
|---|---|
| NUMBER OF CLASSES PAID | 1 |
| COMBINED §§ 8 & 15 FILING FEE PER CLASS | 325 |
| TOTAL FEE PAID | 325 |

**SIGNATURE SECTION**

| SIGNATURE | /James Turoff/ |
|---|---|
| SIGNATORY'S NAME | James Turoff |

| SIGNATORY'S POSITION | President & Secretary |
|---|---|
| DATE SIGNED | 11/12/2018 |
| PAYMENT METHOD | CC |
| **FILING INFORMATION** | |
| SUBMIT DATE | Mon Nov 12 12:57:38 EST 2018 |
| TEAS STAMP | USPTO/S08N15-XXX.XXX.XX.X XX-20181112125738313628-4 322502-6107f22cfdff238db6 0bc81ee20ee30d3a45ec71a37 daa38c1bf74f614b28f7cc3-C C-11690-20181111204607687 582 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1583 (Rev 05/2006)
OMB No. 0651-0055 (Exp 10/31/2021)

## Combined Declaration of Use and Incontestability under Sections 8 & 15
**To the Commissioner for Trademarks:**

**REGISTRATION NUMBER:** 4322502
**REGISTRATION DATE:** 04/23/2013

**MARK:** (Stylized and/or with Design, Miscellaneous Mark (see, mark))

The owner, Hershey Chocolate & Confectionery Corporation, a corporation of Delaware, having an address of
    4860 Robb Street, Suite 204
    Wheat Ridge, Colorado 80033
    United States
    XXXX (authorized)
is filing a Combined Declaration of Use and Incontestability under Sections 8 & 15.

For International Class 030, the mark is in use in commerce on or in connection with **all** of the goods/**all** of the services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: candy; chocolate; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods/**all** services, or to indicate membership in the collective membership organization, listed in the existing registration for this class. Also, no final decision adverse to the owner's claim of ownership of such mark for those goods/services, or to indicate membership in the collective membership organization, exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists.

The owner is submitting one(or more) specimen(s) for this class showing the mark as used in commerce on or in connection with any item in this class, consisting of a(n) photograph of HERSHEY'S candy bar configuration as sold in commerce, evidencing use of mark.
Specimen File1
The registrant's current Correspondence Information: PAUL C LLEWELLYN of  Arnold & Porter Kaye Scholer LLP
    250 WEST 55TH STREET
    NEW YORK, New York 10019-9710
    United States
The phone number is 2128367828.
The fax number is 212-836-6463.
The email address is paul.llewellyn@apks.com; tmdocketing@apks.com. (authorized)
The docket/reference number is 29985-.

The registrant's proposed Correspondence Information: Dinisa Hardley Folmar of  Hershey Chocolate & Confectionery Corporation
    4860 Robb Street, Suite 204
    Wheat Ridge, Colorado 80033
    United States
The email address is trademarks@hersheys.com. (authorized)

A fee payment in the amount of $325 will be submitted with the form, representing payment for 1 class(es), plus any additional grace period fee, if necessary.

### Declaration

☑ Unless the owner has specifically claimed excusable nonuse, the mark is in use in commerce on or in connection with the goods/services or to indicate membership in the collective membership organization identified above, as evidenced by the attached specimen(s).

☑ Unless the owner has specifically claimed excusable nonuse, the specimen(s) shows the mark as currently used in commerce on or in connection with the goods/services/collective membership organization.

☑ The mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under 15 U.S.C. § 1062(c), and is still in use in commerce on or in connection with all goods/services, or to indicate membership in the collective membership organization, listed in the existing registration.

☑ There has been no final decision adverse to the owner's claim of ownership of such mark for such goods/services, or to indicate membership in the collective membership organization, or to the owner's right to register the same or to keep the same on the register.

☑ There is no proceeding involving said rights pending and not finally disposed of either in the United States Patent and Trademark Office or in a court.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of this submission and the registration, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

Signature: /James Turoff/    Date: 11/12/2018
Signatory's Name: James Turoff
Signatory's Position: President & Secretary

Serial Number: 77809223
Internet Transmission Date: Mon Nov 12 12:57:38 EST 2018
TEAS Stamp: USPTO/S08N15-XXX.XXX.XX.XXX-201811121257
38313628-4322502-6107f22cfdff238db60bc81
ee20ee30d3a45ec71a37daa38c1bf74f614b28f7
cc3-CC-11690-20181111204607687582



118894

## ROUTING SHEET TO POST REGISTRATION (PRU)

**Registration Number:**   4322502



**Serial Number:**   77809223

**RAM Sale Number:  4322502**



**RAM Accounting Date:  20181113**

**Total Fees:**      $325

Note:  Process in accordance with Post Registration Standard Operating Procedure (SOP)

| Transaction | Fee Code | Transaction Date | Fee per Class | Number of Classes | Number of Classes Paid | Total Fee |
|---|---|---|---|---|---|---|
| §8 affidavit | 7205 | 20181112 | $125 | 1 | 1 | $125 |
| §15 affidavit | 7208 | 20181112 | $200 | 1 | 1 | $200 |

Physical Location: MADCD- NO PHYSICAL FILE

Lost Case Flag: False

In TICRS (AM-FLG-IN-TICRS): True

**Transaction Date:**    20181112



118896

| | |
|---|---|
| **From:** | TMOfficialNotices@USPTO.GOV |
| **Sent:** | Monday, April 23, 2018 01:06 AM |
| **To:** | XXXX |
| **Cc:** | XXXX |
| **Subject:** | Official USPTO Courtesy Reminder of Required Trademark Registration Maintenance Filing Under Section 8: U.S. Trademark RN 4322502: Miscellaneous Design: Docket/Reference No. 29985- |

**U.S. Serial Number:** 77809223
**U.S. Registration Number:** 4322502
**U.S. Registration Date:** Apr 23, 2013
**Mark:** Miscellaneous Design
**Owner:** Hershey Chocolate & Confectionery Corporation ey Chocolate & Confectionery Corporation

Apr 23, 2018

**U.S. PATENT AND TRADEMARK OFFICE ("USPTO") COURTESY REMINDER**
**OF REQUIRED TRADEMARK REGISTRATION MAINTENANCE FILING UNDER SECTION 8**

**WARNING: Your trademark registration will be CANCELLED if you do not file the required document below during the specified statutory time period.**

The above-identified registration registered on Apr 23, 2013. Therefore, the owner of the registration must file a Declaration of Use and/or Excusable Nonuse under §8 of the Trademark Act anytime between now and Apr 23, 2019. For an additional fee, the owner may file the declaration within the six-month grace period that ends on Oct 23, 2019. *See* 15 U.S.C. §1058. The current fee for filing a declaration under §8 is $125 per class if the filing is made via the Trademark Electronic Application System ("TEAS") and $225 if the filing is made on paper, and the additional fee for filing during the six-month grace period is $100 per class if the filing is made via TEAS and $200 if the filing is made on paper. 37 C.F.R. §2.6.

If the registration meets the requirements of §15 of the Trademark Act, the owner may additionally file an optional Declaration of Incontestability under §15. *See* 15 U.S.C. §1065. The current fee for filing a declaration under §15 is $200 per class if the filing is made via TEAS and $300 per class if the filing is made on paper. 37 C.F.R. §2.6.

To expedite processing, the owner is encouraged to file through the USPTO's official website using TEAS. Official forms for filing Declarations of Use and/or Excusable Nonuse under §8 and Combined Declarations of Use and Incontestability under §§8 and 15 are available through TEAS at https://www.uspto.gov/trademarks-application-process/filing-online/registration-maintenancerenewalcorrection-forms.

For information regarding how to record ownership documents such as assignments, name changes and mergers, please see TMEP §503. To expedite recordation, the owner is encouraged to file requests for recordation through the Electronic Trademark Assignment System ("ETAS") at https://etas.uspto.gov.

For further information regarding the maintenance of a trademark registration, including future maintenance filings, please consult the USPTO website at https://www.uspto.gov/learning-and-resources/trademark-faqs.

This reminder notice is being sent only as a courtesy to those trademark owners who have authorized e-mail communication and maintain a current e-mail address with the USPTO. Failure by the USPTO to send a reminder or non-receipt of a reminder does not excuse a trademark owner from meeting the statutory obligations for maintaining a trademark registration. If a registration is cancelled and/or expired due to the failure to timely file required maintenance documents, it cannot be reinstated or revived.

Correspondence transmitted through TEAS is considered to have been filed on the date the USPTO receives the transmission, in Eastern Time, regardless of whether that date is a Saturday, Sunday, or Federal holiday within the District of Columbia. 37 C.F.R. §2.195(a)(2).

To check the status of this registration, go to https://tsdr.uspto.gov/#caseNumber=77809223&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch or contact the Trademark Assistance Center at 1-800-786-9199.

In order to be eligible for future e-mail reminders of maintenance filings, please remember to authorize e-mail communication when filing your maintenance documents through TEAS.

# Change Of Correspondence Address

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 77809223 |
| **REGISTRATION NUMBER** | 4322502 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 116 |
| **MARK SECTION** | |
| **MARK** | Design only |
| **CORRESPONDENCE SECTION (current)** | |
| **ORIGINAL ADDRESS** | PAUL C LLEWELLYN<br>Kaye Scholer LLP<br>250 West 55th Street<br>New York New York 10019-9710<br>US<br>212-836-7828<br>212-836-6463<br>paul.llewellyn@kayescholer.com;tmdocketing@kayescholer.com |
| **NEW CORRESPONDENCE ADDRESS** | |
| **NEW ADDRESS** | PAUL C LLEWELLYN<br><br>Arnold & Porter Kaye Scholer LLP<br>250 WEST 55TH STREET<br>NEW YORK<br>New York<br>United States<br>10019-9710<br>2128367828<br>212-836-6463<br>paul.llewellyn@apks.com; tmdocketing@apks.com |
| **AUTHORIZED TO COMMUNICATE VIA E-MAIL** | YES |
| **INDIVIDUAL ATTORNEY DOCKET/REFERENCE NUMBER** | 29985- |
| **SIGNATURE SECTION** | |
| **SIGNATURE** | /paul c. llewellyn/ |
| **SIGNATORY NAME** | Paul C. Llewellyn |
| **SIGNATORY DATE** | 03/02/2017 |
| **SIGNATORY POSITION** | Attorney of Record, New York State Bar Member |
| **SIGNATORY PHONE NUMBER** | 2128367828 |
| **AUTHORIZED SIGNATORY** | YES |
| **FILING INFORMATION SECTION** | |
| **SUBMIT DATE** | Thu Mar 02 16:46:33 EST 2017 |
| | USPTO/CCA-XXX.XXX.XXX.XXX -20170302164633707522-869 |

| TEAS STAMP | 71601-580293d30fee04554d3 8df66cd02156995a785044966 06166bd38b4bc2df12f2b-N/A -N/A-20170302164017432407 |

# Change Of Correspondence Address

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 77809223 |
| **REGISTRATION NUMBER** | 4322502 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 116 |
| **MARK SECTION** | |
| **MARK** | Design only |
| **CORRESPONDENCE SECTION (current)** | |
| **ORIGINAL ADDRESS** | PAUL C LLEWELLYN<br>KAYE SCHOLER LLP<br>425 PARK AVE<br>NEW YORK New York 10022<br>US<br>2128367828<br>2128366463 |
| **NEW CORRESPONDENCE ADDRESS** | |
| **NEW ADDRESS** | Kaye Scholer LLP<br>250 West 55th Street<br>New York<br>New York<br>United States<br>10019-9710<br>212-836-7828<br>212-836-6463<br>paul.llewellyn@kayescholer.com;tmdocketing@kayescholer.com |
| **AUTHORIZED TO COMMUNICATE VIA E-MAIL** | YES |
| **SIGNATURE SECTION** | |
| **SIGNATURE** | /paul c. llewellyn/ |
| **SIGNATORY NAME** | Paul C. Llewellyn |
| **SIGNATORY DATE** | 10/06/2014 |
| **SIGNATORY POSITION** | Attorney of record, New York state bar member |
| **SIGNATORY PHONE NUMBER** | 212-836-7828 |
| **AUTHORIZED SIGNATORY** | YES |
| **FILING INFORMATION SECTION** | |
| **SUBMIT DATE** | Mon Oct 06 17:24:20 EDT 2014 |
| **TEAS STAMP** | USPTO/CCA-XX.XX.XXX.XXX-2<br>0141006172420552366-85821<br>448-50096668d056dc4bcd181<br>e455ebc4e892e8c6888339a7b<br>a2c9233b93efc37cf-N/A-N/A<br>-20141006171425219724 |

118900

118901

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,322,502**

**Registered Apr. 23, 2013**

**Int. Cl.: 30**

**TRADEMARK**

**PRINCIPAL REGISTER**

HERSHEY CHOCOLATE & CONFECTIONERY CORPORATION (DELAWARE CORPORATION)
4860 ROBB STREET, SUITE 204
WHEAT RIDGE, CO 80033

FOR: CANDY; CHOCOLATE, IN CLASS 30 (U.S. CL. 46).

FIRST USE 12-31-1968; IN COMMERCE 12-31-1968.

OWNER OF U.S. REG. NO. 3,668,662.

THE MARK IS A CONFIGURATION OF A CANDY BAR THAT CONSISTS OF TWELVE (12) EQUALLY-SIZED RECESSED RECTANGULAR PANELS ARRANGED IN A FOUR PANEL BY THREE PANEL FORMAT WITH EACH PANEL HAVING ITS OWN RAISED BORDER WITHIN A LARGE RECTANGLE.

SEC. 2(F).

SER. NO. 77-809,223, FILED 8-20-2009.

JOHN DWYER, EXAMINING ATTORNEY



Acting Director of the United States Patent and Trademark Office

118902

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

Page: 2 / RN # 4,322,502

118903

Side - 1



**NOTICE OF PUBLICATION UNDER §12(a)**
**MAILING DATE: Aug 15, 2012**
**PUBLICATION DATE:  Sep 4, 2012**

The mark identified below will be published in the Official Gazette on Sep 4, 2012.  Any party who believes they will be damaged by registration of the mark may oppose its registration by filing an opposition to registration or a request to extend the time to oppose within thirty (30) days from the publication date on this notice.  If no opposition is filed within the time specified by law, the USPTO may issue a Certificate of Registration.

To view the Official Gazette online or to order a paper copy, visit the USPTO website at http://www.uspto.gov/web/trademarks/tmog/ any time within the five-week period after the date of publication.  You may also order a printed version from the U.S. Government Printing Office (GPO) at http://bookstore.gpo.gov or 202-512-1800.  To check the status of your application, go to http://tarr.uspto.gov/.

| | |
|---|---|
| **SERIAL NUMBER:** | **77809223** |
| **MARK:** | **Miscellaneous Design** |
| **OWNER:** | **Hershey Chocolate & Confectionery Corpor** |

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA  22313-1451

FIRST-CLASS MAIL
U.S POSTAGE
PAID

PAUL C LLEWELLYN
KAYE SCHOLER LLP
425 PARK AVE
NEW YORK, NY   10022

118904

## Trademark Snap Shot Publication & Issue Review Stylesheet
(Table presents the data on Publication & Issue Review Complete)

### OVERVIEW

| | | | |
|---|---|---|---|
| SERIAL NUMBER | 77809223 | FILING DATE | 08/20/2009 |
| REG NUMBER | 0000000 | REG DATE | N/A |
| REGISTER | PRINCIPAL | MARK TYPE | TRADEMARK |
| INTL REG # | N/A | INTL REG DATE | N/A |
| TM ATTORNEY | DWYER, JOHN D | L.O. ASSIGNED | 116 |

### PUB INFORMATION

| | |
|---|---|
| RUN DATE | 08/01/2012 |
| PUB DATE | 09/04/2012 |
| STATUS | 681-PUBLICATION/ISSUE REVIEW COMPLETE |
| STATUS DATE | 07/31/2012 |
| LITERAL MARK ELEMENT | |

| | | | |
|---|---|---|---|
| DATE ABANDONED | N/A | DATE CANCELLED | N/A |
| SECTION 2F | YES | SECTION 2F IN PART | NO |
| SECTION 8 | NO | SECTION 8 IN PART | NO |
| SECTION 15 | NO | REPUB 12C | N/A |
| RENEWAL FILED | NO | RENEWAL DATE | N/A |
| DATE AMEND REG | N/A | | |

### FILING BASIS

| FILED BASIS | | CURRENT BASIS | | AMENDED BASIS | |
|---|---|---|---|---|---|
| 1 (a) | YES | 1 (a) | YES | 1 (a) | NO |
| 1 (b) | NO | 1 (b) | NO | 1 (b) | NO |
| 44D | NO | 44D | NO | 44D | NO |
| 44E | NO | 44E | NO | 44E | NO |
| 66A | NO | 66A | NO | | |
| NO BASIS | NO | NO BASIS | NO | | |

### MARK DATA

| | |
|---|---|
| STANDARD CHARACTER MARK | NO |
| LITERAL MARK ELEMENT | |
| MARK DRAWING CODE | 2-AN ILLUSTRATION DRAWING WITHOUT ANY WORD(S)/LETTER(S)/NUMBER(S) |
| COLOR DRAWING FLAG | NO |

### CURRENT OWNER INFORMATION

| PARTY TYPE | 10-ORIGINAL APPLICANT |
|---|---|
| NAME | Hershey Chocolate & Confectionery Corporation |
| ADDRESS | 4860 Robb Street, Suite 204<br>Wheat Ridge, CO 80033 |
| ENTITY | 03-CORPORATION |
| CITIZENSHIP | Delaware |

## GOODS AND SERVICES

| INTERNATIONAL CLASS | 030 |
|---|---|
| DESCRIPTION TEXT | candy; chocolate |

## GOODS AND SERVICES CLASSIFICATION

| INTERNATIONAL CLASS | 030 | FIRST USE DATE | 12/31/1968 | FIRST USE IN COMMERCE DATE | 12/31/1968 | CLASS STATUS | 6-ACTIVE |
|---|---|---|---|---|---|---|---|

## MISCELLANEOUS INFORMATION/STATEMENTS

| CHANGE IN REGISTRATION | NO |
|---|---|
| COLORS CLAIMED STATEMENT | Color is not claimed as a feature of the mark. |
| DESCRIPTION OF MARK | The mark is a configuration of a candy bar that consists of twelve (12) equally-sized recessed rectangular panels arranged in a four panel by three panel format with each panel having its own raised border within a large rectangle. |
| OWNER OF US REG NOS | 3668662 |

## PROSECUTION HISTORY

| DATE | ENT CD | ENT TYPE | DESCRIPTION | ENT NUM |
|---|---|---|---|---|
| 07/31/2012 | PREV | O | LAW OFFICE PUBLICATION REVIEW COMPLETED | 030 |
| 07/31/2012 | ALIE | A | ASSIGNED TO LIE | 029 |
| 07/16/2012 | CNSA | O | APPROVED FOR PUB - PRINCIPAL REGISTER | 028 |
| 06/28/2012 | EXPT | T | EXPARTE APPEAL TERMINATED | 027 |
| 06/28/2012 | EXPR | T | EX PARTE APPEAL-REFUSAL REVERSED | 026 |
| 06/09/2011 | CNES | O | EXAMINERS STATEMENT MAILED | 025 |
| 06/09/2011 | CNES | R | EXAMINERS STATEMENT - COMPLETED | 024 |
| 04/14/2011 | JURT | T | JURISDICTION RESTORED TO EXAMINING ATTORNEY | 023 |
| 02/11/2011 | EXPI | T | EX PARTE APPEAL-INSTITUTED | 022 |
| 02/11/2011 | EXAF | T | EXPARTE APPEAL RECEIVED AT TTAB | 021 |
| 12/29/2010 | CNFR | O | FINAL REFUSAL MAILED | 020 |
| 12/28/2010 | CNFR | R | FINAL REFUSAL WRITTEN | 019 |
| 11/25/2010 | TEME | I | TEAS/EMAIL CORRESPONDENCE ENTERED | 018 |
| 11/25/2010 | CRFA | I | CORRESPONDENCE RECEIVED IN LAW OFFICE | 017 |
| 11/25/2010 | TROA | I | TEAS RESPONSE TO OFFICE ACTION RECEIVED | 016 |
| 11/15/2010 | ARAA | I | ATTORNEY REVOKED AND/OR APPOINTED | 015 |
| 11/15/2010 | REAP | I | TEAS REVOKE/APPOINT ATTORNEY RECEIVED | 014 |
| 05/28/2010 | GNRN | O | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 013 |

| 05/28/2010 | GNRT | O | NON-FINAL ACTION E-MAILED | 012 |
| 05/28/2010 | CNRT | R | NON-FINAL ACTION WRITTEN | 011 |
| 05/03/2010 | TEME | I | TEAS/EMAIL CORRESPONDENCE ENTERED | 010 |
| 05/03/2010 | CRFA | I | CORRESPONDENCE RECEIVED IN LAW OFFICE | 009 |
| 05/03/2010 | TROA | I | TEAS RESPONSE TO OFFICE ACTION RECEIVED | 008 |
| 11/24/2009 | GNRN | O | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 007 |
| 11/24/2009 | GNRT | F | NON-FINAL ACTION E-MAILED | 006 |
| 11/24/2009 | CNRT | R | NON-FINAL ACTION WRITTEN | 005 |
| 11/17/2009 | DOCK | D | ASSIGNED TO EXAMINER | 004 |
| 08/25/2009 | MDSC | O | NOTICE OF DESIGN SEARCH CODE MAILED | 003 |
| 08/24/2009 | NWOS | I | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | 002 |
| 08/24/2009 | NWAP | I | NEW APPLICATION ENTERED IN TRAM | 001 |

## CURRENT CORRESPONDENCE INFORMATION

| ATTORNEY | Paul Llewellyn |
|---|---|
| CORRESPONDENCE ADDRESS | PAUL C LLEWELLYN<br>KAYE SCHOLER LLP<br>425 PARK AVE<br>NEW YORK, NY 10022 |
| DOMESTIC REPRESENTATIVE | NONE |



## Trademark Snap Shot Publication Stylesheet
(Table presents the data on Publication Approval)

### OVERVIEW

| | | | |
|---|---|---|---|
| SERIAL NUMBER | 77809223 | FILING DATE | 08/20/2009 |
| REG NUMBER | 0000000 | REG DATE | N/A |
| REGISTER | PRINCIPAL | MARK TYPE | TRADEMARK |
| INTL REG # | N/A | INTL REG DATE | N/A |
| TM ATTORNEY | DWYER, JOHN D | L.O. ASSIGNED | 116 |

### PUB INFORMATION

| | |
|---|---|
| RUN DATE | 07/17/2012 |
| PUB DATE | N/A |
| STATUS | 680-APPROVED FOR PUBLICATION |
| STATUS DATE | 07/16/2012 |
| LITERAL MARK ELEMENT | |

| | | | |
|---|---|---|---|
| DATE ABANDONED | N/A | DATE CANCELLED | N/A |
| SECTION 2F | YES | SECTION 2F IN PART | NO |
| SECTION 8 | NO | SECTION 8 IN PART | NO |
| SECTION 15 | NO | REPUB 12C | N/A |
| RENEWAL FILED | NO | RENEWAL DATE | N/A |
| DATE AMEND REG | N/A | | |

### FILING BASIS

| FILED BASIS | | CURRENT BASIS | | AMENDED BASIS | |
|---|---|---|---|---|---|
| 1 (a) | YES | 1 (a) | YES | 1 (a) | NO |
| 1 (b) | NO | 1 (b) | NO | 1 (b) | NO |
| 44D | NO | 44D | NO | 44D | NO |
| 44E | NO | 44E | NO | 44E | NO |
| 66A | NO | 66A | NO | | |
| NO BASIS | NO | NO BASIS | NO | | |

### MARK DATA

| | |
|---|---|
| STANDARD CHARACTER MARK | NO |
| LITERAL MARK ELEMENT | |
| MARK DRAWING CODE | 2-AN ILLUSTRATION DRAWING WITHOUT ANY WORD(S)/LETTER(S)/NUMBER(S) |
| COLOR DRAWING FLAG | NO |

### CURRENT OWNER INFORMATION

| PARTY TYPE | 10-ORIGINAL APPLICANT |
|---|---|
| NAME | Hershey Chocolate & Confectionery Corporation |
| ADDRESS | 4860 Robb Street, Suite 204<br>Wheat Ridge, CO 80033 |
| ENTITY | 03-CORPORATION |
| CITIZENSHIP | Delaware |

### GOODS AND SERVICES

| INTERNATIONAL CLASS | 030 |
|---|---|
| DESCRIPTION TEXT | Candy; Chocolate |

### GOODS AND SERVICES CLASSIFICATION

| INTERNATIONAL CLASS | 030 | FIRST USE DATE | 12/31/1968 | FIRST USE IN COMMERCE DATE | 12/31/1968 | CLASS STATUS | 6-ACTIVE |
|---|---|---|---|---|---|---|---|

### MISCELLANEOUS INFORMATION/STATEMENTS

| CHANGE IN REGISTRATION | NO |
|---|---|
| COLORS CLAIMED STATEMENT | Color is not claimed as a feature of the mark. |
| DESCRIPTION OF MARK | The mark is a configuration of a candy bar that consists of twelve (12) equally-sized recessed rectangular panels arranged in a four panel by three panel format with each panel having its own raised border within a large rectangle. |
| OWNER OF US REG NOS | 3668662 |

### PROSECUTION HISTORY

| DATE | ENT CD | ENT TYPE | DESCRIPTION | ENT NUM |
|---|---|---|---|---|
| 07/16/2012 | CNSA | O | APPROVED FOR PUB - PRINCIPAL REGISTER | 028 |
| 06/28/2012 | EXPT | T | EXPARTE APPEAL TERMINATED | 027 |
| 06/28/2012 | EXPR | T | EX PARTE APPEAL-REFUSAL REVERSED | 026 |
| 06/09/2011 | CNES | O | EXAMINERS STATEMENT MAILED | 025 |
| 06/09/2011 | CNES | R | EXAMINERS STATEMENT - COMPLETED | 024 |
| 04/14/2011 | JURT | T | JURISDICTION RESTORED TO EXAMINING ATTORNEY | 023 |
| 02/11/2011 | EXPI | T | EX PARTE APPEAL-INSTITUTED | 022 |
| 02/11/2011 | EXAF | T | EXPARTE APPEAL RECEIVED AT TTAB | 021 |
| 12/29/2010 | CNFR | O | FINAL REFUSAL MAILED | 020 |
| 12/28/2010 | CNFR | R | FINAL REFUSAL WRITTEN | 019 |
| 11/25/2010 | TEME | I | TEAS/EMAIL CORRESPONDENCE ENTERED | 018 |
| 11/25/2010 | CRFA | I | CORRESPONDENCE RECEIVED IN LAW OFFICE | 017 |
| 11/25/2010 | TROA | I | TEAS RESPONSE TO OFFICE ACTION RECEIVED | 016 |
| 11/15/2010 | ARAA | I | ATTORNEY REVOKED AND/OR APPOINTED | 015 |
| 11/15/2010 | REAP | I | TEAS REVOKE/APPOINT ATTORNEY RECEIVED | 014 |
| 05/28/2010 | GNRN | O | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 013 |
| 05/28/2010 | GNRT | O | NON-FINAL ACTION E-MAILED | 012 |
| 05/28/2010 | CNRT | R | NON-FINAL ACTION WRITTEN | 011 |

| 05/03/2010 | TEME | I | TEAS/EMAIL CORRESPONDENCE ENTERED | 010 |
|---|---|---|---|---|
| 05/03/2010 | CRFA | I | CORRESPONDENCE RECEIVED IN LAW OFFICE | 009 |
| 05/03/2010 | TROA | I | TEAS RESPONSE TO OFFICE ACTION RECEIVED | 008 |
| 11/24/2009 | GNRN | O | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 007 |
| 11/24/2009 | GNRT | F | NON-FINAL ACTION E-MAILED | 006 |
| 11/24/2009 | CNRT | R | NON-FINAL ACTION WRITTEN | 005 |
| 11/17/2009 | DOCK | D | ASSIGNED TO EXAMINER | 004 |
| 08/25/2009 | MDSC | O | NOTICE OF DESIGN SEARCH CODE MAILED | 003 |
| 08/24/2009 | NWOS | I | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | 002 |
| 08/24/2009 | NWAP | I | NEW APPLICATION ENTERED IN TRAM | 001 |

## CURRENT CORRESPONDENCE INFORMATION

| ATTORNEY | Paul Llewellyn |
|---|---|
| CORRESPONDENCE ADDRESS | PAUL C LLEWELLYN<br>KAYE SCHOLER LLP<br>425 PARK AVENUE<br>NEW YORK, NY 10022 |
| DOMESTIC REPRESENTATIVE | NONE |

118911



118912

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

**APPLICATION SERIAL NO.**    77809223

**MARK**:

# *77809223*

**CORRESPONDENT ADDRESS**:
PAUL C LLEWELLYN
KAYE SCHOLER LLP
425 PARK AVENUE
NEW YORK, NY 10022

**GENERAL TRADEMARK INFORMATION:**
http://www.uspto.gov/main/trademarks.htm

**TTAB INFORMATION:**
http://www.uspto.gov/web/offices/dcom/ttab/index.html

**APPLICANT**:    Hershey Chocolate & Confectionery Corpor ETC.

**CORRESPONDENT'S REFERENCE/DOCKET NO** :
29985-
**CORRESPONDENT E-MAIL ADDRESS**:

## EXAMINING ATTORNEY'S APPEAL BRIEF

### STATEMENT OF THE CASE

The applicant has appealed the examining attorney's final refusal to register the proposed mark for a configuration of a candy bar. Registration was refused on the grounds that the applied for mark is functional pursuant to Trademark Act §2(e)(5), 15 U.S.C. §1052(e)(5), and non-distinctive trade dress pursuant to Trademark Act §§1, 2 and 45, 15 U.S.C. §§1051, 1052 and 1127. Applicant's claim of acquired distinctiveness under Trademark Act §2(f) was found insufficient to overcome the non-distinctive trade dress refusal.

### STATEMENT OF FACTS

Applicant filed this use-based application on August 20, 2009, applying to register on the Principal Register the mark consisting of a configuration of a candy bar that consists of twelve (12) equally-sized recessed rectangular panels arranged in a four panel by three panel format with each panel having its own raised border within a large rectangle for "Candy; Chocolate," in Class 30.

In the first Office action dated November 24, 2009, registration was refused under Trademark Act §2(e)(5), on the grounds that the applied-for mark, which consists of a three-dimensional configuration of the goods, appears to be a functional design for such goods and also under Trademark Act §§1, 2 and 45, because the applied-for mark consists of a non-distinctive product design or non-distinctive features of a product design that is not registrable on the Principal Register without sufficient proof of acquired distinctiveness. The applicant was also required to submit information regarding the goods and to clarify the description of the mark.

On May 3, 2010, applicant argued against the refusals to register the mark under Trademark Act §2(e)(5), and Trademark Act §§1, 2 and 45, proposed amending the application to seek registration under Trademark Act §2(f), acquired distinctiveness, submitted information regarding the goods and mark, and amended the description of the mark.

In the second Office action dated May 28, 2010, the examining attorney accepted the information regarding the goods, accepted the amended description of the mark, maintained and continued the refusals to register the mark under Trademark Act §2(e)(5), and Trademark Act §§1, 2 and 45, and issued a new refusal based upon insufficient evidence to establish acquired distinctiveness.

On November 25, 2010, the applicant again argued against the refusals to register the mark under Trademark Act §2(e)(5), and

Trademark Act §§1, 2 and 45, and submitted additional evidence and arguments in support of amending the application to seek registration under Trademark Act §2(f), acquired distinctiveness.

On December 28, 2010, the refusals to register the mark under Trademark Act §2(e)(5), and Trademark Act §§1, 2 and 45, and the determination that the applicant failed to establish that the mark has acquired distinctiveness, were maintained and made final.

On February 11, 2011, applicant a notice of appeal.  On April 12, 2011, applicant filed an appeal brief.  The file was forwarded to the examining attorney on April 14, 2011.

### ISSUES

The issues on appeal are whether the mark is a functional design under Trademark Act §2(e)(5), whether the mark is a non-distinctive configuration of the goods under Trademark Act §§1, 2 and 45, and whether the applicant has established that the mark has acquired distinctiveness under Trademark Act §2(f).

### ARGUMENT

I.    THE APPLIED-FOR MARK IS FUNCTIONAL BECAUSE THE DESIGN FEATURES OF THE CONFIGURATION PROVIDE A UTILITARIAN ADVANTAGE TO THE USER, AND THEREFORE, REGISTRATION IS PROPERLY REFUSED UNDER TRADEMARK ACT §2(e)(5).

The proposed mark comprises the configuration of design features of the identified goods that serve a utilitarian purpose, and registration must be refused under Trademark Act §2(e)(5), 15 U.S.C. §1052(e).  *See Valu Engineering, Inc. v. Rexnord Corp.*, 61 USPQ2d 1422 (Fed. Cir. 2002); *In re Bose Corp.*, 772 F.2d 866, 227 USPQ 1 (Fed. Cir. 1985); *In re R.M. Smith, Inc.*, 734 F.2d 1482, 222 USPQ 1 (Fed. Cir. 1984); TMEP §§1202.02(a) *et seq.*

A mark comprising the configuration of goods or their packaging is held functional, and thus unregistrable, where the evidence shows that the product design or product packaging design provides identifiable utilitarian advantages to the user – i.e., where the product or container "has a particular shape because it works better in that shape."  *Valu Engineering, Inc. v. Rexnord Corp.*, 61 USPQ2d 1422, 1425 (Fed. Cir. 2002) (citation and internal quotation marks omitted); *In re R.M. Smith, Inc.*, 734 F.2d 1482, 222 USPQ 1, 3 (Fed. Cir. 1984); see also *In re Virshup*, 42 USPQ2d 1403, 1405 (TTAB 1997); *In re Cabot Corp.*, 15 USPQ2d 1224, 1227 (TTAB 1990).

The functionality determination is a question of fact, and depends on the totality of the evidence presented in each case.  *Valu Engineering, Inc. v. Rexnord Corp.*, 61 USPQ2d 1422 (Fed. Cir. 2002); *In re Caterpillar Inc.*, 43 USPQ2d 1335, 1339 (TTAB 1997).

Evidence of functionality cases normally involves consideration of the following four factors, commonly known as the "*Morton-Norwich* factors," in reference to the Federal Circuit decision in which they were first articulated:

(1)  the existence of a utility patent that discloses the utilitarian advantages of the design sought to be registered;

(2)  advertising by the applicant that touts the utilitarian advantages of the design;

(3)  facts pertaining to the availability of alternative designs; and

(4)  facts pertaining to whether the design results from a comparatively simple or inexpensive method of manufacture.

*In re Morton-Norwich Products, Inc.*, 671 F.2d 1332, 213 USPQ 9, 15-16 (C.C.P.A. 1982).

Applying the *Morton-Norwich* factors to this case, as will be explained in more detail below, the examining attorney has established that the proposed mark is functional for the identified goods.

In summary, (1) the overall flat rectangular shape of the candy bar is easier and more cost effective to mass produce and wrap than irregularly shaped candy bars, (2) large numbers of flat rectangular candy bars can be more efficiently packed in boxes for shipping than

irregularly shaped bars, and (3) scoring the bar into smaller evenly sized rectangular shapes facilitates the easier breaking off of equal-sized smaller pieces, both for eating and for measuring for cooking purposes.

The determination that a proposed mark is functional constitutes an absolute bar to registration either on the Principal Register or the Supplemental Register, regardless of evidence showing that the proposed mark has acquired distinctiveness. Trademark Act §§2(e)(5) and 23(c), 15 U.S.C. §§1052(e)(5) and 1091(c); See *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 58 USPQ2d 1001, 1006 (2001); *Valu Engineering, Inc. v. Rexnord Corp.*, 61 USPQ2d 1422 (Fed. Cir. 2002); *In re Control Corp. of America*, 46 USPQ2d 1308, 1311 (TTAB 1998).

1. Patent protection was previously provided disclosing a utilitarian advantage to a functional feature highly similar to a feature at issue here.

A utility patent claiming the design features at issue is strong evidence of functionality, and the party seeking trademark protection for the configuration bears a heavy burden of establishing that the features are not functional – e.g., by showing that they are merely ornamental, incidental, or arbitrary aspects of the product or product packaging design. *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 58 USPQ2d 1001 (2001).

In response to the initial application, applicant was required to indicate whether the proposed mark is the subject of a utility patent. Applicant indicated that it was not. While that is correct, the examining attorney discovered on his own a utility patent for another similar configuration that includes a highly similar design feature to those claimed in the present mark. As an attachment to the December 28, 2010 final Office action, the examining attorney included patent records for US Patent No. 1,613,231.

US Patent No. 1,613,231, a patent for "candy confection and process of making the same," discloses utilitarian advantages of a feature of the design sought to be registered.

Specifically, the scoring of the bar makes the bar easier to break into smaller, equal-sized pieces. This is useful when cooking because it facilitates proper measuring of the chocolate, and also when simply eating the chocolate where one does not desire to eat the entire bar or desires to share the bar with others.

The patent "invention relates to candy confections and to an improved process of making the same. The object of the invention is to produce a candy confection comprising a layer of hard, frangible candy, which may be cut into pieces when cold, without dislodgement of pieces of said frangible sheet or layer of appropriate size, even though it is broken in pieces in the cutting operation, and without affecting the size and shape of the pieces into which the mat, as initially formed, is cut." [1]

Specifically, lines 75-92 provide, "Heretofore, as far as we are aware, it has been considered impracticable, if not impossible, to cut layers of hard, frangible candy of the character of the layer 2 shown in the drawing, for the reason that the action of the knives or cutters would break the candy into irregular pieces; and, *where it is desired to subdivide a layer of such hard, frangible candy into pieces of desired small size, the universal practice, so far as we are aware, has been to score said layers on lines corresponding to the desired shapes and sizes of the pieces, before it is thoroughly cooled and while it is sufficiently plastic that it may be scored without breaking. The candy is then permitted to cool and may then readily be broken into pieces along the lines on which it is scored.*"

While this patent claims a different process, it still discloses a utilitarian advantage of a feature of the design sought to be registered. Specifically, the candy and chocolate has been scored during the manufacturing process so that it may be broken into the desired preformed shapes and sizes rather than into irregular shapes and sizes.

Both of the applicant's identified goods, namely, candy and chocolate, can be brittle or designed to be easily broken. In

addition, the creases which subdivide the chocolate bars into twelve equal-sized pieces are a form of scoring.

The examining attorney notes that Patent No. 1,613,231 is expired.  However, statements in a utility patent application or expired patent which refer to utilitarian advantages of the design features at issue are persuasive evidence of functionality.  The evidentiary significance of such statements is not affected by whether the patent application is pending or abandoned, whether a utility patent issued from the application, or whether the resulting patent has expired.  *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-30, 58 USPQ2d 1001, 1005 (2001); TMEP §1202.02(a)(v)(A).

The examining attorney also notes that Patent No. 1,613,231 was owned by a third party, however, a third-party utility patent is relevant evidence of functionality when the patent discloses the utilitarian advantages of the applied-for product or product packaging configuration sought to be registered.  *See In re Dietrich*, 91 USPQ2d 1622, 1627 (TTAB 2009); TMEP §1202.02(a)(v)(A).

In this case, a utility patent discloses utilitarian advantages of the scoring feature of the design sought to be registered.  Accordingly, the first *Morton-Norwich* factor should weigh heavily in favor of affirming the functionality finding.

2.   While applicant's  advertising does not promote utilitarian advantages of the design, unsolicited reviews of the applicant's goods promote utilitarian advantages of the design, and various competitor's  advertising touts the utilitarian advantages of the design features.

As to the second *Morton-Norwich* factor, applicant avers that it has never promoted the design features as having utilitarian advantages.  The examining attorney acknowledges that applicant's advertising of record does not promote the design features in any way, not even as a mark.

However, in *In re Gibson Guitar Corp.*, 61 USPQ2d 1948 (TTAB 2001), the Board considered an advertisement obtained from the website of a *competitor*.  Here the record contains examples of advertisements for competitors' goods that tout the functional advantages of design features very similar to the applicant's, namely, flat, rectangular, and scored so as to create equal-sized smaller pieces.   Specifically:

(1)    Pages 31-32 of the examiner's final Office action dated December 28, 2011, from  www.godiva.com, shows a flat, rectangular and scored candy bar and provides, "It is scored into ten signature squares so you can break off a little piece of Godiva every day."
(2)    Page 56 of the examiner's final Office action dated December 28, 2011, from  www.farawayfoods.com, shows a flat and rectangular candy bar and provides, "Available in semisweet, Scharffen Berger's Home Chef Chocolate Bars are pure dark chocolate, scored for easy measuring."
(3)    Pages 47-51 of the examiner's final Office action dated December 28, 2010, from  www.bizrate.com, shows a flat, rectangular and scored candy bar and provides, "Blocks of rich dark chocolate made by Asher's.   Each bar is scored so it's easy to break."

Moreover, while applicant's own advertising does not promote the utilitarian advantages of the design features, unsolicited reviews of the applicant's goods promote utilitarian advantages of the design features.   Specifically:

(1)    Pages 27-29 of the examiner's final Office action dated December 28, 2010, from www.epinions.com/review/Hershey_s_Milk_Chocolate_Bar, provides:  "Hershey's milk chocolate bar is a flat, thin candy bar with a standard size of 1.55 oz. (43 grams).  The flat bar is made entirely from milk chocolate and it is divided into twelve rectangular 'pieces.'   These pieces are all attached to each other in a 3 by 4 fashion to form the candy bar.  This design makes it easy to break off smaller pieces and share them with others."
(2)    Pages 33-35 of the examiner's final Office action dated December 28, 2010, from www.epinions.com/review/Hershey_Special_Dark_Chocolate_Bars_1_45_Oz_36_Bars, provides:  "Just like with the milk chocolate Hershey's Bar, this one is also scored so that you can easily break off small sections of the candy bar. … the small shapes makes it easy to break the bar into smaller pieces, both for sharing and baking.  With these rectangular indentations, it is easy to make a clean break."

While applicant does not have advertising referencing the design features in the mark, some of applicant's competitors have produced highly similar looking candy bars and have advertised the usefulness of the scoring as enabling the breaking-off of equal-sized smaller pieces.  In addition, unsolicited third parties have reviewed the applicant's goods and touted the utilitarian advantages of the design features.

Therefore, this factor should also weigh in favor of a functionality finding.

3.   While there may be multiple ways to design a candy bar, many of applicant's competitors have also chosen to adopt configurations featuring overall flat and rectangular shapes, with scoring, leading to a conclusion that these have utilitarian advantages.

While there are alternative designs available for candy and chocolate, it is clear that applicant's design embodies the most functional and popular features, as there are many candies and chocolates made by competitors that appear to employ identical or highly similar design features, namely, an overall flat and rectangular shape with scoring.  Below are some examples:

(1)   Page 45 of applicant's response dated November 25, 2010, shows a candy bar by R. M. Palmer Candy Co. that is flat, rectangular and scored with raised lines to create twelve smaller, equal-sized, rectangles arranged in a four panel by three panel format.

(2)   Pages 5-7 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Storz Nougat Praline as a flat, rectangular, and scored candy bar.

(3)   Pages 7-9 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Dagoba Dark Chocolate as a flat, rectangular, and scored candy bar.

(4)   Pages 10-11 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Kingsbury Chocolate Nib as a flat, rectangular, and scored candy bar.

(5)   Pages 11-13 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Lake Champlain Peppermint Crunch as a flat, rectangular, and scored candy bar.

(6)   Pages 21-22 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Lake Champlain Milk Chocolate Sea Salt and Almond Bar as a flat, rectangular, and scored candy bar.

(7)   Pages 33-34 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Choxie Dark Chocolate Key Lime Truffle Bar as a flat, rectangular, and scored candy bar.

(8)   Pages 36-37 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Chuao SpicyMaya as a flat, rectangular, and scored candy bar.

(9)   Pages 42-43 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Dagoba Dark Chocolate Lime and Macadamia Nuts as a flat, rectangular, and scored candy bar.

(10)  Pages 51-53 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Nestle Kit Kat Muscat of Alexandria as a flat, rectangular, and scored candy bar.

(11)  Pages 54-55 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Nestle Aero Mint as a flat, rectangular, and scored candy bar.

(12)  Pages 31-32 of the examiner's final Office action dated December 28, 2010, from www.godiva.com/product/large-31-cacao-milk-chocolate-crispy-crunch-holida/id/2505.gdv, shows a flat, rectangular, and scored candy bar with a corresponding description that provides, in part, "It's scored into ten signature squares so that you can break off a little piece of Godiva every day."

(13)  Pages 47-48 of the examiner's final Office action dated December 28, 2010, from www.bizrate.com/candy/oid1822216008, shows a flat, rectangular, and scored candy bar with a corresponding description that provides, in part, "Each bar is scored so it's easy to break up!"

(14)  Page 56 of the examiner's final Office action dated December 28, 2010, from www.farawayfoods.com/baking, shows a flat, rectangular, and scored candy bar with a corresponding description that provides, in part, "Bars are pure chocolate, scored for easy measuring."

(15)  Pages 9-10 of applicant's response dated May 3, 2010, and page 69 of applicant's response dated November 25, 2010, demonstrate Theo produces several candy bars in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes

(16)  Page 11 of applicant's response dated May 3, 2010, and page 71 of applicant's response dated November 25, 2010, demonstrate Endangered Species Chocolate produces a candy bar in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes.

(17)  Pages 12-13 of applicant's response dated May 3, 2010, and pages 71-72 of applicant's response dated November 25, 2010, demonstrate Divine Milk Chocolate produces a candy bar in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes.

(18)  Page 15 of applicant's response dated May 3, 2010, and page 73 of applicant's response dated November 25, 2010, demonstrate Doctor's CarbRite Diet produces a candy bar in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes.

(19)  Pages 16-17 of applicant's response dated May 3, 2010, and pages 73-74 of applicant's response dated November 25, 2010, demonstrate Wegmans produces a candy bar in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes.

The fact that competitors choose to make candy bars that appear to embody the same or a highly similar design consisting of an overall flat and rectangular shape with scoring speaks to the functionality of these design features. Anyone who has ever wrapped presents knows that a flat and rectangular shape is easier to wrap than an irregular shape. Flat and rectangular shapes are also more efficient for packing and shipping because it fits neatly in square and rectangular boxes and thereby eliminates wastage of space when packing the candy bars in. This maximizes the amount of candy bars which can be fit in a box. The more candy bars that are shipped together spreads the cost of shipping out among more candy bars and reduces the shipping cost associated with each individual candy bar. Scoring a candy bar facilitates easier breaking off of equal-sized smaller pieces, both for eating and for measuring for cooking purposes.

To the extent that any of the referenced competitor candy bar designs are different, the differences appear to be mere refinements of the same basic design, e.g., bigger or smaller rectangles, slight curvatures of the corners or tops, scoring accomplished by means other than raised and beveled lines, or scoring in more or less than twelve smaller pieces.

Accordingly, the third *Morton-Norwich* factor weighs in favor of the functionality finding because the evidence of record demonstrates a competitive need for the design features embodied in the applied-for trade dress. Moreover, the Supreme Court has clearly indicated that if the record shows that a design is essential to the use or purpose of a product, it is unnecessary to consider whether there is a competitive need for the product feature. *See TrafFix*, 532 U.S. at 32-34, 58 USPQ2d at 1006-1007.

4.  Applicant does not claim that the product design entails a more costly method of production, but only addresses one feature of the design, the scoring, and ignores the rectangular and flat design features.

While evidence showing that the product feature results from a comparatively simple or inexpensive method of manufacture supports a finding that the design is functional, the opposite is not necessarily the case. That is, assertions by the applicant that its design is more expensive or more difficult to make, or that the design does not affect the cost, will not establish that the configuration is not functional. *In re Dietrich*, 91 USPQ2d 1622, 1637 (TTAB 2009)("Even at a higher manufacturing cost, applicant would have a competitive advantage for what is essentially, as claimed in patents, a superior quality wheel."); *In re N.V. Organon*, 79 USPQ2d (TTAB 2006).

Applicant asserts only that the tooling and moulds for the framed segments of the design are more expensive to create than are the tooling and moulds for other chocolate bar designs. However, applicant clearly states at page twenty of the brief that "the particular configuration of the Hershey design is no less costly to manufacture than other alternative segmented bar designs." This conspicuously does not allege that applicant's product design entails a more costly method of production. Applicant is in the best position to provide evidence regarded its manufacturing costs. If the applicant's design were more expensive to manufacture, applicant would have presented evidence of such, rather than obfuscate the issue by only discussing the cost of tools and dies for the scoring feature of the design.

Applicant's evidence and arguments only address one feature of the design, namely, the tooling and moulds used to create the scoring. Applicant's arguments do not address the overall flat and rectangular shape of the of the candy bars. Packaging is part of the manufacturing process. As discussed above, a flat and rectangular shape is easier to wrap than an irregular shape, and flat and rectangular shapes are also more efficient for packing and shipping because they fit neatly into rectangular boxes and eliminate wastage of space when packing the candy bars in.

Applicant does not argue that the applied-for mark is more costly to manufacture than other alternative segmented bar designs. Accordingly, the fourth *Morton-Norwich* factor weighs neither for nor against the functionality finding.

In this case, the evidence shows that the applied-for mark comprises the configuration of design features of the goods that serve

a utilitarian purpose and the first, second and third *Morton-Norwich* factors weigh in favor of affirming the functionality finding.

II.    APPLICANT'S APPLIED-FOR MARK IS NON-DISTINCTIVE PRODUCT DESIGN, AND APPLICANT'S CLAIM OF ACQUIRED DISTINCTIVENESS UNDER TRADEMARK ACT §2(F) IS INSUFFICIENT.  THUS, REGISTRATION IS PROPERLY REFUSED UNDER TRADEMARK ACT §§1, 2 AND 45

1.   Applicant's applied-for mark is non-distinctive product design.

Assuming that the configuration is not functional, registration must be refused because the applied-for mark consists of a nondistinctive product design or nondistinctive features of a product design that would not be perceived as a mark.  Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§1051-1052, 1127; *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 213-14, 54 USPQ2d 1065, 1068-69 (2000); *In re Slokevage*, 441 F.3d 957, 961, 78 USPQ2d 1395, 1398 (Fed. Cir. 2006); *see* TMEP §1202.02(b)(i).

The Supreme Court distinguished between two types of trade dress – product design and product packaging.  If the trade dress falls within the category of product design, it can never be inherently distinctive and will always require evidence of acquired distinctiveness or secondary meaning.  *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215, 54 USPQ2d 1065, 1069 (2000); TMEP §1202.02(b)(i).

Product design almost invariably serves purposes other than source identification, and consumers are aware that even the most unusual product design is intended not to identify the source of the goods, but to render the product itself more useful or appealing.  *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. at 213, 54 USPQ2d at 1069 (2000); *In re Slokevage*, 441 F.3d 957, 962, 78 USPQ2d 1395, 1399 (Fed. Cir. 2006); *see* TMEP §1202.02(b)(i).

In this case, applicant's configuration mark is considered product design because it comprises the shape of applicant's candy and chocolate and consumers would not perceive it as a source indicator but merely the design of applicant's goods.   Applicant's configuration mark falls squarely within the parameters of product design, and thus, in accordance with *Wal-Mart*, applicant bears the burden of proving the applied-for mark has acquired distinctiveness.  *See Yamaha Int'l Corp. v. Hoshino Gakki Co.* , 840 F.2d 1572, 1578-79, 6 USPQ2d 1001, 1006 (Fed. Cir. 1988); *In re Meyer & Wenthe, Inc.*, 267 F.2d 945, 949, 122 USPQ 372, 374-75 (C.C.P.A. 1959); TMEP §1212.01.  Applicant has failed to meet this burden.

2.   Applicant's applied-for mark is a variation of common trade practices in the candy and chocolate industry, namely, shaping the candy bars flat and rectangular and including scoring so that they may be broken into equal-sized pieces.

An applicant bears the burden of proving that a mark has acquired distinctiveness.  *See Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1578-79, 6 USPQ2d 1001, 1006 (Fed. Cir. 1988); *In re Meyer & Wenthe, Inc.*, 267 F.2d 945, 949, 122 USPQ 372, 374-75 (C.C.P.A. 1959); TMEP §1212.01.

Applicants face a heavy burden in establishing distinctiveness in an application to register trade dress. *See Stuart Spector Designs,Ltd. v. Fender Musical Instruments Corp.*, 94 USPQ2d 1549 (TTAB 2009).

Moreover, the subdividing of a flat, rectangular candy bar into smaller, equal-sized, rectangular pieces with scoring is a very common trade practice in the candy and chocolate industry.  Therefore the degree of evidence to establish acquired distinctiveness is higher.  *See generally, In re Kalmbach Publ'g Co.* , 14 USPQ2d 1490 (TTAB 1989); *In re Loew's Theatres, Inc.* , 769 F.2d 764, 226 USPQ 865, 869 (Fed. Cir. 1985); *Ex parte Fox River Paper Corp.*, 99 USPQ 173 (Comm'r Pats. 1953); TMEP §§1212.01, 1212.04(a) & 1212.05(a)

The examining attorney has made extensive evidence of record documenting that the use of flat rectangular shapes and the inclusion of scoring to create segments of smaller equal-sized shapes are common trade practices in the candy and chocolate industry.

The examining attorney makes reference to and incorporates herein by reference a sample of representative web pages obtained in a search of the Internet using the Google® computerized search engine for "chocolate" and/or "candy bars" in relation to "bite sized segments" and attached to the first Office action dated November 24, 2009, and "chocolate candy bars" in relation to "scored" or "break-off" and attached to the final Office action dated December 28, 2010. The referenced and/or excerpted articles demonstrate that producing candy bars in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes is a common trade practice in the candy and chocolate industry. Examples of flat, rectangular and scored candy bars of other chocolate and candy manufacturers include:

(1)  Pages 5-7 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Storz Nougat Praline as a flat, rectangular, and scored candy bar.

(2)  Pages 7-9 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Dagoba Dark Chocolate as a flat, rectangular, and scored candy bar.

(3)  Pages 10-11 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Kingsbury Chocolate Nib as a flat, rectangular, and scored candy bar.

(4)  Pages 11-13 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Lake Champlain Peppermint Crunch as a flat, rectangular, and scored candy bar.

(5)  Pages 21-22 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Lake Champlain Milk Chocolate Sea Salt and Almond Bar as a flat, rectangular, and scored candy bar.

(6)  Pages 33-34 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Choxie Dark Chocolate Key Lime Truffle Bar as a flat, rectangular, and scored candy bar.

(7)  Pages 36-37 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Chuao SpicyMaya as a flat, rectangular, and scored candy bar.

(8)  Pages 42-43 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Dagoba Dark Chocolate Lime and Macademia Nuts as a flat, rectangular, and scored candy bar.

(9)  Pages 51-53 of the examiner's Office action dated November 24, 2009, from www.candybarlab.com/tag/hazelnut/, shows Nestle Kit Kat Muscat of Alexandria as a flat, rectangular, and scored candy bar.

(10) Pages 31-32 of the examiner's final Office action dated December 28, 2010, from www.godiva.com/product/large-31-cacao-milk-chocolate-crispy-crunch-holida/id/2505.gdv, shows a flat, rectangular, and scored candy bar with a corresponding description that provides, in part, "It's scored into ten signature squares so that you can break off a little piece of Godiva every day."

(11) Pages 47-48 of the examiner's final Office action dated December 28, 2010, from www.bizrate.com/candy/oid1822216008, shows a flat, rectangular, and scored candy bar with a corresponding description that provides, in part, "Each bar is scored so it's easy to break up!"

(12) Page 56 of the examiner's final Office action dated December 28, 2010, from www.farawayfoods.com/baking, shows a flat, rectangular, and scored candy bar with a corresponding description that provides, in part, "Bars are pure chocolate, scored for easy measuring."

The applicant's own evidence of record further documents that the use of flat rectangular shapes and the inclusion of scoring to create segments of smaller equal-sized shapes are common trade practices in the candy and chocolate industry. Specifically, eleven of the thirteen photographs of third-party candy bars included as exhibits in the applicant's responses display flat, rectangular candy bars with scoring to create segments of smaller equal-sized shapes.

The examining attorney makes reference to and incorporates herein by reference a sample of representative exhibits attached to the applicant's responses dated May 3, 2010, and November 25, 2010. The referenced exhibits further demonstrate that producing candy bars in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes is a common trade practice in the candy and chocolate industry. Examples of flat, rectangular and scored candy bars of other candy and chocolate manufacturers include:

(1)  Page 45 of applicant's response dated November 25, 2010, shows a candy bar by R. M. Palmer Candy Co. that is flat, rectangular and scored with raised lines to create twelve smaller, equal-sized, rectangles arranged in a four panel by three panel format.

(2)  Page 8 of applicant's response dated May 3, 2010, and page 6 of applicant's response dated November 25, 2010, demonstrate Newman's Own produces a candy bar in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes.

(3)  Pages 9-10 of applicant's response dated May 3, 2010, and page 69 of applicant's response dated November 25, 2010, demonstrate Theo produces several candy bars in a flat and rectangular shape with scoring to create segments of smaller

equal-sized shapes

(4) Page 11 of applicant's response dated May 3, 2010, and page 71 of applicant's response dated November 25, 2010, demonstrate Endangered Species Chocolate produces a candy bar in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes.

(5) Pages 12-13 of applicant's response dated May 3, 2010, and pages 71-72 of applicant's response dated November 25, 2010, demonstrate Divine Milk Chocolate produces a candy bar in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes.

(6) Page 15 of applicant's response dated May 3, 2010, and page 73 of applicant's response dated November 25, 2010, demonstrate Doctor's CarbRite Diet produces a candy bar in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes.

(7) Pages 16-17 of applicant's response dated May 3, 2010, and pages 73-74 of applicant's response dated November 25, 2010, demonstrate Wegmans produces a candy bar in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes.

(8) Page 18 of applicant's response dated May 3, 2010, and page 74 of applicant's response dated November 25, 2010, demonstrate Green & Black's produces a candy bar in a flat and rectangular shape with scoring to create segments of smaller equal-sized shapes.

Given the nature of the applicant's product trade dress mark and trade practices in the candy and chocolate industry, applicant bears a very heavy burden in establishing acquired distinctiveness.

3.   Applicant's claim of acquired distinctiveness is insufficient.

Applicant bases its Section 2(f) claim on (1) length and exclusivity of use of the mark in commerce; (2) ownership of prior US Reg. No. 3668662; (3) advertising expenditures; (4) sales success; (5) unsolicited media coverage; (6) attempts to plagiarize; and, (7) public recognition as purported to be demonstrated by the results of a consumer survey.  As explained further below, applicant has failed to establish acquired distinctiveness.

a.   Applicant's claim of acquired distinctiveness based upon five or more years' continuous and exclusive use is insufficient.

With regard to the allegation of five years' use, the Office has consistently found in relation to product design that a mere statement of five years' use is generally not sufficient.  *See In re Ennco Display Systems Inc.*, 56 USPQ2d, 1279, 1284 (TTAB 2000).

Moreover, applicant's claim of exclusivity of use is without merit.  The evidence of record demonstrates that use of the applied-for design does not appear to be exclusive to the applicant.  Applicant's November 25, 2010, response included, at page 45, a photograph of a candy bar by the R. M. Palmer Candy Co.[2] that is flat and rectangular, and scored by raised lines to create twelve smaller, equal-sized, rectangles arranged in a four panel by three panel format.  These features of the Palmer' candy bar are identical to the applicant's applied-for mark.

Applicant characterizes this as an attempt to plagiarize and avers that the R. M. Palmer Candy Co. ceased making this design upon the insistence of the applicant.  However, applicant made no evidence of record documenting this.  That is, the evidence is silent as to how long Palmer used the design, what percentage of the market the Palmer candy bar has/had, and whether Palmer still makes and markets the design.

Moreover, even assuming that Palmer ceased using the design at the demands of applicant, acquiescence to demands of competitors to cease use of a term can be equally viewed as simply a desire to avoid litigation. *See, e.g.*, *In re Wella Corp.*, 565 F.2d 143, 144 n.2, 196 USPQ 7, 8 n.2 (C.C.P.A. 1977); *In re Consolidated Cigar Corp.*, 13 USPQ2d 1481 (TTAB 1989).

Based upon the evidence of record, the Palmer' candy bar may more appropriately be viewed as evidence that the applicant's use of the applied-for design was not exclusive.

b.   Applicant's claim of acquired distinctiveness based upon prior Registration Number 3668662 is inapposite.

Applicant's claim of acquired distinctiveness based on ownership of prior US Reg. No. 3668662 is inapposite because the mark in the prior registration is not the same mark as the applied-for mark and therefore does not support applicant's claim of acquired distinctiveness.

A claim of acquired distinctiveness may be based on an applicant's ownership of one or more prior registrations of the *same mark* on the Principal Register.  37 C.F.R. §2.41(b); TMEP §1212.04.  An applied-for mark is considered the same mark if it is the legal equivalent of the previously-registered mark.  *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1347, 57 USPQ2d 1807, 1812 (Fed. Cir. 2001); TMEP §1212.04(b).

To be legal equivalents, the applied-for mark must be indistinguishable from the previously-registered mark or create the same, continuing commercial impression such that the consumer would consider them both to be the same mark.  *In re Brouwerij Bosteels*, 96 USPQ2d 1414, 1423 (TTAB 2010); *In re Nielsen Bus. Media, Inc.*, 93 USPQ2d 1545, 1547 (TTAB 2010); *see In re Dial-A-Mattress Operating Corp.*, 240 F.3d at 1347, 57 USPQ2d at 1812; *In re Binion*, 93 USPQ2d 1531, 1539 (TTAB 2009); TMEP §1212.04(b).

In the present case, the applied-for mark and the mark in the prior registration are clearly distinguishable as not the same mark, and thus are not legal equivalents, because the removal of the term HERSHEY from each smaller rectangle in the applied-for mark creates a different commercial impression.  Specifically, in Reg. No. 3668662, the four panel by three panel format was merely a border or carrier for the now-distinctive surname HERSHEY that appeared within.  *In re Kerr-McGee Corp.*, 190 USPQ 204 (TTAB 1976) (claim of ownership of prior registrations held insufficient to establish acquired distinctiveness where registration was refused on ground that the subject matter was merely an ornamental border or "carrier" for words and symbols appearing within). [3]

Therefore, the prior registration does not support applicant's claim of acquired distinctiveness because the applied-for mark and the registered mark create different commercial impressions.

c.   Applicant's  allegations of high sales figures, allegations of extensive advertising, and samples of advertising, are of limited probative value.

Applicant's allegations of high sales figures, allegations of extensive advertising, and samples of advertising, are of limited probative value in determining how the applied-for mark is used in advertising, the commercial impression created by such use, and the significance the applied-for mark would have to perspective purchasers.  *See In re Boston Beer Co.*, 198 F.3d 1370, 53 USPQ2d 1056 (Fed. Cir. 1999); *In re Packaging Specialists, Inc.*, 221 USPQ 917, 920 (TTAB 1984); TMEP §1212.06(b).

Applicant's allegations of high sales figures provide no additional information to place those figures in context or evaluate them.  That is, the applicant has not indicated what percentage of the candy and chocolate market those figures represent.  Moreover, extensive sales may demonstrate the commercial success of applicant's goods, but not that relevant consumers view the matter as a mark for such goods. *See In re Boston Beer Co.*, 198 F.3d 1370, 53 USPQ2d 1056 (Fed. Cir. 1999); *In re Busch Entm't Corp.* , 60 USPQ2d 1130, 1134 (TTAB 2000).

Applicant's advertising evidence consists of three copies each of the story boards from three television commercials, and sixteen pages of print and/or online advertising.

Applicant's three story boards are not actual advertisements as viewed by consumers.   There is no information provided regarding when the advertisements aired on television, for how long they were aired, how large of audience may have been exposed to the commercials, or what percentage of viewers may have actually viewed the commercials.  Moreover, there is nothing in how the applied-for mark appears in the proffered storyboards which corroborates that the mark was used in applicant's actual advertisements in such a way that it would be recognized as a source identifier for candy and chocolate.  That is, in each storyboard, buried amidst numerous photographs or artist's

drawings, is the occasional photograph or artist's drawing of a candy bar bearing the applied-for configuration.   Under each of the pictures there is wording, but none of the wording discusses, or even notes, the configuration.

Of the remaining sixteen pages of print and/or online advertising, the first fifteen pages either do not display the mark applied-for, or only display incomplete portions of the mark.  The sixteenth page is from the applicant's website and depicts an unwrapped candy bar with a bite taken out of it.  There is no other explanation of what this picture is, whether and/or how it is even advertising, who would see it, and under what circumstances it would be seen.  With regard to all sixteen pages of print and/or online advertising, there is nothing which corroborates that the applied-for mark is used as a mark and/or would be recognized as a source identifier for candy and chocolate.

d. Unsolicited Media Coverage

The applicant's reliance on alleged unsolicited media coverage is unfounded.   To establish secondary meaning, an applicant must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc*., 456 U.S. 844, 851 N. 11, 214 USPQ 1, 4 n. 11 (1982).  The issue is whether acquired distinctiveness of the mark in relation to the goods or services has in fact been established in the minds of the purchasing public. *In re Reden Laboratories, Inc.*, 170 USPQ 526(TTAB 1971); *In re Fleet-Wing Corp*., 122 USPQ 335 (TTAB 1959).

Page 59 of applicant's response dated November 25, 2010, from  *The Patriot News Co.*, discusses souvenirs relating to the Dave Matthews Band.  It provides, in relevant part, "…, there's always the 2008 poster, which was designed to look like a Hershey chocolate bar."  The poster is attached at page 60 of applicant's response.   While the poster does indicate that the concert was at Hersheypark in Hershey, Pennsylvania, neither the applied-for mark nor chocolate are promoted by the poster.  There is no promotion of a scored candy bar as a mark.  The article may demonstrate an association between the name Hershey and chocolate, but there is simply nothing about this article that demonstrates public association of the applied-for mark as a source identifier for candy and chocolate.

Pages 56-58 of applicant's response dated November 25, 2010, from  *Nextex Web Blogs*, provides, in relevant part, "That's when the finished product's silver metal slug approximately the size and shape of a Hershey's chocolate bar drops into a galley tray… ."  The article does not discuss the applied-for mark.  The article references a "Hersheys chocolate bar."   Hershey's makes many different shapes and sizes of chocolate bars.  There is no indication that the author is discussing the design features at issue in the applied-for mark.  Again, there is nothing about this article that demonstrates public association of the applied-for mark as a source identifier for candy and chocolate.

Pages 52-54 of applicant's response dated November 25, 2010, from  *Caro's Ramblings* , discusses shopping at Williams-Sonoma and provides, in pertinent part, "I can't just get cake pans; gotta do the brownies too!!   The Chocolate Bar Brownie Pan:  It's like a Hershey's Bar with individual brownies."   This article deals extensively with Williams-Sonoma, the retailer of the brownie.  The article is directed to potential purchasers of brownie pans, not candy bars.  The article does not discuss the applied-for mark's features of being flat, rectangular, and sub-divided into twelve smaller pieces in a four panel by three panel format.  This article contains little or nothing that demonstrates a public association of the applied-for mark as a source identifier for candy and chocolate.

The remaining article, at pages 47-51 of applicant's response dated November 25, 2010, is from  *Baking Bites*, and provides, in part, "… a flat, rectangular bar divided up into bite-sized pieces that are easy to snap off. I don't know that Hershey's was the first chocolate maker to use this design, … ." This article is also about the Williams-Sonoma brownie pan and is also directed to purchasers of brownie pans, not candy bars.  Moreover, the article indicates the author is aware that other chocolate makers also use the design.  An article by and/or for purchasers of brownie pans, that acknowledges use of the applied-for mark by competitors for identical goods, is of limited probative value in determining whether purchasers of candy and chocolate primarily identify the applied-for mark as the source of candy and chocolate.

In short, the applicant's proffered unsolicited media coverage is of limited or no probative value in evaluating whether, in the minds of the purchasing public, the primary significance of the applied-for mark is to identify the source of candy and chocolate.

e. Attempts to Plagiarize

Applicant's arguments regarding the Williams Sonoma brownie pan are misplaced.   *In re Carl Walther GmbH*, Serial No. 77096523 (T.T.A.B. Oct. 26, 2010), is not precedential.  Moreover, brownie pans are not replicas of candy bars.  They are separate and distinct goods.

As discussed previously, the applicant's allegations regarding the Palmer' candy bar are not documented.    The evidence is silent as to how long Palmer used the design, what percentage of the market the Palmer candy bar has/had, and whether Palmer still makes and markets the design.  Therefore, the evidence currently of record regarding the Palmer' candy bar merely evidences that the applicant's use of the applied-for mark was not exclusive.

f. Results of a consumer survey

With respect to survey evidence, applicant must document the procedural and statistical accuracy of this type of evidence and carefully frame the questions contained therein.  *See In re Steelbuilding.com*, 415 F.3d 1293, 1300, 75 YSPQ2d 1420, 1424 (Fed. Cir. 2005).  In this case, it is unclear whether the survey results are statistically accurate.  Pertinent information is not provided or is unclear, including, whether the survey results were audited by a reliable third party.  Furthermore, survey results regarding public perception of the applied-for mark were based upon responses from only 406 responses, but there is no explanation if or why this is a statistically significant sampling of customers. Thus, while applicant's survey evidence is relevant to establishing acquired distinctiveness and secondary meaning, it is not dispositive.  *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 37, 59 USPQ2d 1720, 1730 (1st Cir. 2001); TMEP §1212.06(d).

For all of the foregoing reasons, applicant's claim of acquired distinctiveness under Trademark Act §2(f) is insufficient, and registration is properly refused under Trademark Act §§1, 2 and 45 on the ground that the applied-for product design is non-distinctive trade dress.

CONCLUSION

For the foregoing reasons, the examining attorney respectfully requests that the function refusal under Trademark Act §2(e)(5), 15 U.S.C. §1052(e)(5), and the non-distinctive product design refusal under Trademark Act §§1, 2 and 45, 15 U.S.C. §§1051, 1052 and 1127, be affirmed.

Respectfully submitted,

/John Dwyer/
Examining Attorney
Law Office 116
Telephone 571-272-9155
John.Dwyer1@uspto.gov

Michael W. Baird
Managing Attorney
Law Office 116

---

[1] Attachments to final Office action dated December 28, 2010, at pages 2-6.
[2] Hereinafter "Palmer".
[3]

—— Moreover, it is not even clear from the record whether Reg. No. 3668662 is a three-dimensional trade dress mark or a two-dimensional design logo. If the latter, this is yet another reason the marks are not legal equivalents. *See, In re Brouwerij Bosteels*, _ USPQ2d _, Ser. No. 77357895 (TTAB August 26, 2010)(three-dimensional product packaging trade dress is not the legal equivalent of a two-dimensional design logo).

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**
**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**APPLICATION SERIAL NO.**     77809223

**MARK**:

**\*77809223\***

**CORRESPONDENT ADDRESS**:
   Paul Llewellyn
   Kaye Scholer LLP
   425 Park Avenue
   New York NY 10022

**CLICK HERE TO RESPOND TO THIS LETTER:**
**http://www.uspto.gov/teas/eTEASpageD.htm**

   **APPLICANT**:   Hershey Chocolate & Confectionery Corpor ETC.

   **CORRESPONDENT'S REFERENCE/DOCKET NO** :
   29985-
   **CORRESPONDENT E-MAIL ADDRESS**:

# OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE**:

**THIS IS A FINAL ACTION.**

This letter responds to the applicant's correspondence dated November 25, 2010.

The applicant (1) argued against the refusal to register the mark under Section 2(e)(5) as functional; (2) argued against the refusal to register the mark under Trademark Act Sections 1, 2 and 45 as a non-distinctive configuration of goods; (3) argued the mark has acquired distinctiveness under Section 2(f); and, (4) submitted evidence in support of the argument that the mark has acquired distinctiveness.

The refusal to register the mark under Section 2(e)(5) as a functional design, the refusal to register the mark under Trademark Act Sections 1, 2 and 45 as a non-distinctive configuration of goods, and the determination that the applicant has failed to establish that the mark has acquired distinctiveness, are maintained and made final.

FUNCTIONAL

The refusal to register is maintained and made final because the applied-for mark, which consists of a three-dimensional configuration of the goods, appears to be a functional design for such goods.  Trademark Act Section 2(e)(5), 15 U.S.C. §1052(e)(5); *see* TMEP §1202.02(a)-(a)(ii). A feature is functional if it is "essential to the use or purpose of the [product]" or "it affects the cost or quality of the [product]."  *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33, 58 USPQ2d 1001, 1006 (2001); *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165, 34 USPQ2d 1161, 1163-64 (1995); TMEP §1202.02(a)(iii)(A).

Determining functionality normally involves consideration of one or more of the following factors, commonly known as the "*Morton-Norwich* factors":

    (1)    The existence of a utility patent that discloses the utilitarian advantages of the design sought to be registered;

    (2)    Advertising by the applicant that touts the utilitarian advantages of the design;

    (3)    Facts pertaining to the availability of alternative designs; and

(4)    Facts pertaining to whether the design results from a comparatively simple or inexpensive method of manufacture.

*In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41, 213 USPQ 9, 15-16 (C.C.P.A. 1982); TMEP §1202.02(a)(v).

The mark sought to be registered is a product configuration that "consists of twelve (12) equally-sized recessed rectangular panels arranged in a four panel by three panel format with each panel having its own raised border within a large rectangle" for both "candy" and "chocolate." (Applicant's description of the mark).

With regard to the first factor, US Patent No. 1,613,231, a patent for "candy confection and process of making the same" discloses utilitarian advantages of a feature of the design sought to be registered. Specifically, scoring the bar to subdivide it into smaller, equal-sized, pieces makes the bar easier to break into smaller, equal-sized pieces. This is useful when cooking because it facilitates proper measuring of the chocolate, and when simply eating the chocolate where one does not desire to eat the entire bar or desires to share the bar with others. (See attached copy of Patent No. 1,613,231).

The patent "invention relates to candy confections and to an improved process of making the same. The object of the invention is to produce a candy confection comprising a layer of hard, frangible candy, which may be cut into pieces when cold, without dislodgement of pieces of said frangible sheet or layer of appropriate size, even though it is broken in pieces in the cutting operation, and without affecting the size and shape of the pieces into which the mat, as initially formed, is cut." (See attachments).

Specifically, lines 75-92 provide, "Heretofore, as far as we are aware, it has been considered impracticable, if not impossible, to cut layers of hard, frangible candy of the character of the layer 2 shown in the drawing, for the reason that the action of the knives or cutters would break the candy into irregular pieces; and, where it is desired to subdivide a layer of such hard, frangible candy into pieces of desired small size, the universal practice, so far as we are aware, has been to score said layers on lines corresponding to the desired shapes and sizes of the pieces, before it is thoroughly cooled and while it is sufficiently plastic that it may be scored without breaking. The candy is then permitted to cool and may then readily be broken into pieces along the lines on which it is scored."

This patent still discloses a utilitarian advantage of a feature of the design sought to be registered. Specifically, the candy and chocolate has been scored during the manufacturing process so that it may be broken into the desired preformed shapes and sizes rather than into irregular shapes and sizes.

"Frangible" is defined as "Brittle, or designed to be easily broken." *Encarta World English Dictionary [North American Edition]*. Copyright 2009 by Microsoft Corporation. (See attachments).

"Score" is defined as " to make a superficial cut or crease in something such as a piece of paper in order to fold, tear, or break it easily." *Encarta World English Dictionary [North American Edition]*. Copyright 2009 by Microsoft Corporation. (See attachments).

Both of the applicant's identified goods, namely, candy and chocolate, can be brittle or designed to be easily broken. In addition, the creases which subdivide the chocolate bars into twelve equal-sized pieces is a form of scoring. (See attached web pages discussing chocolate which is scored specifically to facilitate the ease of breaking the chocolate bars).

The examining attorney searched the Internet using the Google® computerized search engine for "chocolate candy bars" in relation to "scored", and "chocolate candy bars" in relation to "break off", and found thousands of articles.

Attached for the applicant's reference are copies of representative web pages which demonstrate that candy bars which are subdivided in smaller, equal-sized, sections are frequently described as "scored" and that the public generally perceives this scoring to serve the utilitarian function of facilitating the easier breaking off of equal-sized smaller pieces, both for eating and for measuring for cooking purposes. Examples concerning both the applicant's goods and those of other chocolate and candy manufacturers include:

(1)    www.epinions.com/review/Hershey_s_Milk_Chocolate_Bar: "Hershey's milk chocolate bar is a flat, thin candy bar with a standard size of 1.55 oz. (43 grams). The flat bar is made entirely from milk chocolate and it is divided into twelve rectangular 'pieces.' These pieces are all attached to each other in a 3 by 4 fashion to form the candy bar. This design makes it easy to break off smaller pieces and share them with others."

(2)    www.epinions.com/review/Hershey_Special_Dark_Chocolate_Bars_1_45_Oz_36_Bars: "Just like with the milk chocolate Hershey's Bar, this one is also scored so that you can easily break off small sections of the candy bar."

(3)    www.godiva.com:    "It is scored into ten signature squares so you can break off a little piece of Godiva every day."

(4)    www.farawayfoods.com:    "Available in semisweet, Scharffen Berger's Home Chef Chocolate Bars are pure dark chocolate, scored for easy measuring."

(5)    www.bizrate.com:    "Blocks of rich dark chocolate made by Asher's. Each bar is scored so it's easy to break."

The examining attorney notes that Patent No. 1,613,231 is expired.  However, statements in a utility patent application or expired patent which refer to utilitarian advantages of the design features at issue are persuasive evidence of functionality.  The evidentiary significance of such statements is not affected by whether the patent application is pending or abandoned, whether a utility patent issued from the application, or whether the resulting patent has expired.  *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-30, 58 USPQ2d 1001, 1005 (2001); *Valu Eng'g, Inc. v. Rexnord Corp.* , 278 F.3d 1268, 1279, 61 USPQ2d 1422, 1429 (Fed. Cir. 2002); *In re Howard Leight Indus., LLC*, 80 USPQ2d 1507, 1511, 1514-16 (TTAB 2006); TMEP §1202.02(a)(v)(A).

The examining attorney also notes that Patent No. 1,613,231 was owned by a third party, however, a third-party utility patent is relevant evidence of functionality when the patent discloses the utilitarian advantages of the applied-for product or product packaging configuration sought to be registered.  *See In re Dietrich*, 91 USPQ2d 1622, 1627 (TTAB 2009); *Am. Flange & Mfg. Co. v. Rieke Corp.*, 80 USPQ2d 1397, 1404 (TTAB 2006); TMEP §1202.02(a)(v)(A).

Applicant argues that there is no evidence of record that the applicant has promoted the design as having utilitarian advantages.

Lack of advertising extolling or promoting utilitarian advantages of a design does not establish that a configuration is not functional.  Moreover, the examining attorney notes that throughout much of applicant's commercial history, it has not utilized or relied on national advertising campaigns.  (See attachments indicating that applicant utilized relatively little national advertising until relatively recently in applicant's business history).

Applicant argues that functionally equivalent alternative designs are available.

Since the preservation of competition is an important policy underlying the functionality doctrine, competitive need generally remains an important factor in a functionality determination. *See Valu Engineering, Inc. v. Rexnord Corp*., 278 F.3d 1268, 1277, 61 USPQ2d 1422, 1428 (Fed. Cir. 2002) ("[I]n determining 'functionality,' the Board must assess the effect registration of a mark would have on competition."). However, in *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 58 USPQ2d 1001 (2001), the Supreme Court clearly indicated that if the record shows that a design is essential to the use or purpose of a product, or if it affects the cost or quality of the product, it is unnecessary to consider whether there is a competitive need for the product feature.  That is, existence of comparable alternative designs does not transform a functional design into a nonfunctional design. *Valu Engineering, Inc. v. Rexnord Corp*., 278 F.3d 1268, at 1276, 61 USPQ2d at 1427.

In this case, the design is essential to the use of the product, namely, the configuration which subdivides the candy and/or a chocolate bars in smaller, equally-sized, parts with recessed lines dividing the subdivisions is essential to being able to break the candy/chocolate into smaller, equal sized pieces for both eating and measuring purposes.  Accordingly, the existence of functionally equivalent alternative designs does not obviate the proposed mark's own functionality.

Applicant also argues that "the tooling and moulds for the framed segments of the Hershey design are more expensive to create than are the tooling and moulds for other chocolate bar designs."  However, an applicant's assertion that its design is more expensive or more difficult to make does not establish that the configuration is not functional.  *In re Dietrich*, 91 USPQ2d 1622, 1637 (TTAB 2009) ("[E]ven at a higher manufacturing cost, applicant would have a competitive advantage for what is essentially . . . a superior quality wheel."); *In re Pingel Enter. Inc.*, 46 USPQ2d 1811, 1821 (TTAB 1998) ("That applicant, despite the inherent advantages of a design which is simple and less expensive to manufacture than other petcocks, has, however, deliberately chosen a more complex and expensive manner in which to manufacture its product does not mean that the configuration thereof is not de jure functional."); TMEP §1202.02(a)(v)(D);  *see In re Am. Nat'l Can Co.* , 41 USPQ2d 1841, 1844-45 (TTAB 1997).

The Office must establish a prima facie case that the three-dimensional configuration mark sought to be registered is functional.  The burden then shifts to the applicant to present sufficient evidence to rebut the prima facie case.  *In re R.M. Smith, Inc.*, 734 F.2d 1482, 1484, 222 USPQ 1, 3 (Fed. Cir. 1984); *In re Bio-Medicus Inc.*, 31 USPQ2d 1254, 1257 n.5 (TTAB 1993); TMEP §1202.02(a)(iv).

The applicant argues that the Office has not established a prima facie case that the three-dimensional configuration mark sought to be registered is functional.

The examining attorney respectfully disagrees, and argues that the applicant has not submitted sufficient evidence to rebut the prima facie case.

For the foregoing reasons, the refusal to register the mark under Trademark Act Section 2(e)(5) as a functional design for goods is maintained and made final.

A determination that an applied-for configuration mark is functional constitutes an absolute bar to registration on the Principal or Supplemental Registers, regardless of any evidence of acquired distinctiveness.  Trademark Act Sections 2(e)(5) and 23(c), 15 U.S.C. §§1052(e)(5), 1091(c); *see TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29, 58 USPQ2d 1001, 1006 (2001); *In re Controls Corp. of Am.*, 46 USPQ2d 1308, 1311 (TTAB 1998); TMEP §1202.02(a)(iii)(A).

NONDISTINCTIVE CONFIGURATION – INSUFFICIENT EVIDENCE TO ESTABLISH ACQUIRED DISTINCTIVENESS UNDER SECTION 2(f)

The refusal to register is maintained and made final because the applied-for mark consists of a nondistinctive product design or nondistinctive features of a product design that is not registrable on the Principal Register without sufficient proof of acquired distinctiveness.  Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§1051-1052, 1127; *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 213-14, 54 USPQ2d 1065, 1068-69 (2000); *In re Slokevage*, 441 F.3d 957, 961, 78 USPQ2d 1395, 1398 (Fed. Cir. 2006); *see* TMEP §1202.02(b)(i).

Distinctiveness and functionality are two separate issues in an application for a three-dimensional configuration mark consisting of a product design, product packaging or other types of trade dress.  *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 58 USPQ2d 1001 (2001); *In re Ennco Display Sys., Inc.*, 56 USPQ2d 1279 (TTAB 2000); TMEP §1202.02.

The mark sought to be registered is a product configuration that "consists of twelve (12) equally-sized recessed rectangular panels arranged in a four panel by three panel format with each panel having its own raised border within a large rectangle" for both "candy" and "chocolate." (Applicant's description of the mark).

A mark that consists of product design trade dress is never inherently distinctive and is not registrable on the Principal Register unless the applicant establishes that the mark has acquired distinctiveness under §2(f). *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 54 USPQ2d 1065, 1067 (2000). Features of a product's design can never be inherently distinctive and are registrable only upon a showing of secondary meaning. *Id.* at 213–14, 54 USPQ2d at 1069. The Supreme Court noted that product design almost invariably serves purposes other than source identification, and that consumers are aware that even the most unusual product design (such as a cocktail shaker shaped like a penguin) is intended not to identify the source, but to render the product itself more useful or appealing. Id.; TMEP §1202.02(b)(i).

The examining attorney searched the Internet using the Google® computerized search engine for "chocolate candy bars" in relation to "scored", and "chocolate candy bars" in relation to "break off", and found thousands of articles.

Attached for the applicant's reference are copies of representative web pages which demonstrate that the public generally perceives the subdividing of candy bars with scoring into smaller, equal-sized sections to serve the utilitarian function of facilitating the easier breaking off of equal-sized smaller pieces, both for eating and for measuring for cooking purposes.  Examples concerning both the applicant's goods and those of other chocolate and candy manufacturers include:

    (1)  www.epinions.com/review/Hershey_s_Milk_Chocolate_Bar:  "Hershey's  milk chocolate bar is a flat, thin candy bar with a standard size of 1.55 oz. (43 grams).  The flat bar is made entirely from milk chocolate and it is divided into twelve rectangular 'pieces.'  These pieces are all attached to each other in a 3 by 4 fashion to form the candy bar.  This design makes it easy to break off smaller pieces and share them with others."

    (2)  www.epinions.com/review/Hershey_Special_Dark_Chocolate_Bars_1_45_Oz_36_Bars:  "Just like with the milk chocolate Hershey's Bar, this one is also scored so that you can easily break off small sections of the candy bar."

    (3)  www.godiva.com:      "It is scored into ten signature squares so you can break off a little piece of Godiva every day."

    (4)  www.farawayfoods.com:      "Available in semisweet, Scharffen Berger's  Home Chef Chocolate Bars are pure dark chocolate, scored for easy measuring."

    (5)  www.bizrate.com:      "Blocks of rich dark chocolate made by Asher's.  Each bar is scored so it's easy to break."

Applicants face a heavy burden in establishing distinctiveness in an application to register trade dress. *See Stuart Spector Designs,Ltd. v. Fender Musical Instruments Corp*., 94 USPQ2d 1549 (TTAB 2009). A mere statement of five years' use is generally not sufficient. *In re Ennco Display Systems Inc*., 56 USPQ2d 1279, 1284 (TTAB 2000); TMEP §1202.02(b)(i).

In response to this refusal, applicant argued that the applied-for mark has acquired distinctiveness under Trademark Act Section 2(f).

As evidence the applicant previously and/or again noted/submitted: (1) length and exclusivity of use of the mark in commerce; (2) ownership of prior US Reg. No. 3668662; (3) advertising expenditures; (4) sales success; (5) unsolicited media coverage; (6) attempts to plagiarize; and, (7) public recognition as purported to be demonstrated by the results of a consumer survey.

In this case, the applicant has failed to meet the burden of proving that the mark has acquired distinctiveness.

Because the subdividing of a rectangular piece of candy into smaller rectangular pieces of candy with break-off lines is so common and non-distinctive in the candy industry, the claim of acquired distinctiveness based upon length of use and ownership of a prior US registration is insufficient to prove acquired distinctiveness in this case.  Additional evidence is required.  *See Ex parte Fox River Paper Corp.*, 99 USPQ 173 (Comm'r Pats. 1953); TMEP §1212.01.   (See current attachments, attachments to Office Action dated September 24, 2010, and attachments to applicant's responses dated May 23 and November 25, 2010).

With regard to the claim of acquired distinctiveness based upon Reg. No. 3668662, the examining attorney also notes that the marks are not the same and, therefore, the mark in the prior registration does not support applicant's claim of acquired distinctiveness because it is not the same mark.

A claim of acquired distinctiveness may be based on an applicant's ownership of one or more prior registrations of the *same mark* on the Principal Register. 37 C.F.R. §2.41(b); TMEP §1212.04. An applied-for mark is considered the same mark if it is the legal equivalent of the previously-registered mark. *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1347, 57 USPQ2d 1807, 1812 (Fed. Cir. 2001); TMEP §1212.04(b).

To be legal equivalents, the applied-for mark must be indistinguishable from the previously-registered mark or create the same, continuing commercial impression such that the consumer would consider them both to be the same mark. *In re Brouwerij Bosteels*, 96 USPQ2d 1414, 1423 (TTAB 2010); *In re Nielsen Bus. Media, Inc.*, 93 USPQ2d 1545, 1547 (TTAB 2010); *see In re Dial-A-Mattress Operating Corp.*, 240 F.3d at 1347, 57 USPQ2d at 1812; *In re Binion*, 93 USPQ2d 1531, 1539 (TTAB 2009); TMEP §1212.04(b).

In the present case, the applied-for mark and the mark in the prior registration are not the same mark, and thus are not legal equivalents, because the mark in Reg. No. 3668662 contains the term "HERSHEY'S" in each of the twelve panels. Therefore, the prior registration does not support applicant's claim of acquired distinctiveness and the claim is not accepted.

Applicant has provided evidence of high sales figures and significant advertising expenditures for the goods at issue; however, such evidence is not dispositive of whether the proposed mark has acquired distinctiveness. Such extensive sales and promotion may demonstrate the commercial success of applicant's goods, but not that relevant consumers view the matter as a mark for such goods. *See In re Boston Beer Co.*, 198 F.3d 1370, 53 USPQ2d 1056 (Fed. Cir. 1999); *In re Busch Entm't Corp.* , 60 USPQ2d 1130, 1134 (TTAB 2000).

Similarly, applicant's advertising expenditures are merely indicative of its efforts to develop distinctiveness; not evidence that the mark has acquired distinctiveness. *See In re Pennzoil Prods. Co.*, 20 USPQ2d 1753 (TTAB 1991). The examining attorney notes that none of the applicant's submitted advertisements seems to demonstrate what the applicant has done to promote the public's association of the applied for mark applied with the goods. Pictures of candy bars, or portions thereof, are present in the advertisements, but not in a manner that promotes the configuration of the chocolate bars as a mark, or even in a manner that potential customers would perceive as a mark.

The applicant argues that attempts by a retailer to sell a brownie pan, and the resulting unsolicited media coverage, are evidence that the public associates the configuration in the current mark with the applicant. The examining attorney respectfully disagrees. The attached copies of representative web pages regarding the aforesaid incident tend to demonstrate that the public does not associate the applied for mark with the applicant. Rather, the attached articles tend to demonstrate that the public questions the applicant's assertions regarding the purported mark. (See attachments).

Moreover, the attached web pages dealing with scored candy bars demonstrate that the public perceives the configuration to serve a utilitarian feature that facilitates the easy breaking of the bars into uniform smaller pieces. Examples include:

    (1)   www.epinions.com/review/Hershey_s_Milk_Chocolate_Bar: "Hershey's milk chocolate bar is a flat, thin candy bar with a standard size of 1.55 oz. (43 grams). The flat bar is made entirely from milk chocolate and it is divided into twelve rectangular 'pieces.' These pieces are all attached to each other in a 3 by 4 fashion to form the candy bar. This design makes it easy to break off smaller pieces and share them with others."

    (2)   www.epinions.com/review/Hershey_Special_Dark_Chocolate_Bars_1_45_Oz_36_Bars: "Just like with the milk chocolate Hershey's Bar, this one is also scored so that you can easily break off small sections of the candy bar."

Applicant's survey evidence is relevant to establishing acquired distinctiveness and secondary meaning, but not dispositive. *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 37, 59 USPQ2d 1720, 1730 (1st Cir. 2001); TMEP §1212.06(d).

In this case, in view of all of the evidence of record, the applicant has not established acquired distinctiveness. Accordingly, the refusal to register on the Principal Register as a nondistinctive feature of a product design under Trademark Act Sections 1, 2 and 45, is maintained and made final.

GUIDELINES FOR RESPONDING TO A FINAL REFUSAL

If applicant does not respond within six months of the date of issuance of this final Office action, the application will be abandoned. 15 U.S.C. §1062(b); 37 C.F.R. §2.65(a). Applicant may respond to this final Office action by:

    (1)   Submitting a response that fully satisfies all outstanding requirements, if feasible; and/or

(2)  Filing an appeal to the Trademark Trial and Appeal Board, with an appeal fee of $100 per class.

37 C.F.R. §§2.6(a)(18), 2.64(a); TBMP ch. 1200; TMEP §714.04.

In certain rare circumstances, a petition to the Director may be filed pursuant to 37 C.F.R. §2.63(b)(2) to review a final Office action that is limited to procedural issues.  37 C.F.R. §2.64(a); TMEP §714.04; *see* 37 C.F.R. §2.146(b); TBMP §1201.05; TMEP §1704 (explaining petitionable matters).  The petition fee is $100.  37 C.F.R. §2.6(a)(15).

 TEAS PLUS APPLICANTS MUST SUBMIT DOCUMENTS ELECTRONICALLY OR SUBMIT FEE:  Applicants who filed their application online using the reduced-fee TEAS Plus application must continue to submit certain documents online using TEAS, including responses to Office actions.  For a complete list of these documents, see TMEP §819.02(b).  In addition, such applicants must accept correspondence from the Office via e-mail throughout the examination process and must maintain a valid e-mail address.  37 C.F.R. §2.23(a)(2); TMEP §§819, 819.02(a).  TEAS Plus applicants who do not meet these requirements must submit an additional fee of $50 per international class of goods and/or services.  37 C.F.R. §2.6(a)(1)(iv); TMEP §819.04.  Responding by telephone to authorize an examiner's amendment will not incur this additional fee.

/John Dwyer/
Examining Attorney
Law Office 116
Telephone 571-272-9155
Facsimile 571-273-9116

**TO RESPOND TO THIS LETTER:**  Use the Trademark Electronic Application System (TEAS) response form at http://teasroa.uspto.gov/roa/.  Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application.  For *technical* assistance with online forms, e-mail TEAS@uspto.gov.

**WHO MUST SIGN THE RESPONSE:**  It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants).  If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:**  To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/.  Please keep a copy of the complete TARR screen.  If TARR shows no change for more than six months, call 1-800-786-9199.  For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:**  Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.

http://www.google.com/patents?id=neY_AAAAEBAJ&printsec=abstract&zoom=4&source=gbs_overview_r&cad=0#v=onepage&q&f=false        12/27/2010 10:30:17 AM

Web    Images    Videos    Maps    News    Shopping    Gmail    more ▼                                                                        Sign in

Google patents

[                    ]    Search Patents    Advanced Patent Search

**CANDY CONFECTION AND PROCESS OF MAKING THE SAME** Lord et al.

Overview
› **Abstract**
Drawing
Description
Claims

[Search within this patent] Go

**Patent number:** 1613231
**Filing date:** Jan 28, 1926
**Issue date:** Jan 1927

Plain text    Clip    Link    Feedback    PDF



Jan. 4, 1927.

W. S. LORD ET AL

1,613,231

CANDY CONFECTION AND PROCESS OF MAKING THE SAME

Filed Jan. 28, 1926

Fig. 1.

Fig. 2.

118932

http://www.google.com/patents?id=neY_AAAAEBAJ&printsec=abstract&zoom=4&source=gbs_overview_r&cad=0#v=onepage&q&f=false          12/27/2010 10:30:39 AM

Web   Images   Videos   Maps   News   Shopping   Gmail   more ▾                                                                                                                        Sign in

Google patents          [                              ]   Search Patents      Advanced Patent Search

**CANDY CONFECTION AND PROCESS OF MAKING THE SAME** Lord et al.

Overview                              🔍 🔍 ▣ ▦ ⛶        1  ◀ ▶                              Plain text   ✂ Clip   🔗 Link   ☐ Feedback   🖺 PDF
› Abstract
Drawing
Description
Claims

[Search within this patent]  Go
**Patent number:** 1613231
**Filing date:** Jan 28, 1926
**Issue date:** Jan 1927



http://www.google.com/patents?printsec=abstract&zoom=4&pg=PA3&id=neY_AAAAEBAJ#v=onepage&q&f=false
12/27/2010 10:31:45 AM

Web   Images   Videos   Maps   News   Shopping   Gmail   more ▾                                    Sign in

Google patents    [ Search box ]    Search Patents    Advanced Patent Search

**CANDY CONFECTION AND PROCESS OF MAKING THE SAME** Lord et al.

Overview | Abstract | Drawing | Description | Claims    Plain text | Clip | Link | Feedback | PDF

Search within this patent   Go

**Patent number:** 1613231
**Filing date:** Jan 28, 1926
**Issue date:** Jan 1927



Patented Jan. 4, 1927.                                              1,613,231

## UNITED STATES PATENT OFFICE.

WILLIAM S. LORD, OF EVANSTON, AND OLLIE CLYDE ASHLEY, OF CHICAGO HEIGHTS, ILLINOIS, ASSIGNORS TO WILLIAMSON CANDY COMPANY, OF CHICAGO, ILLINOIS, A CORPORATION OF ILLINOIS.

CANDY CONFECTION AND PROCESS OF MAKING THE SAME.

Application filed January 28, 1926. Serial No. 84,854.

This invention relates to candy confections and to an improved process of making the same.

The object of the invention is to produce a candy confection comprising a layer of hard, frangible candy, which may be cut into pieces when cold, without dislodgment of pieces of said frangible sheet or layer of appreciable size, even though it is broken into pieces in the cutting operation, and without affecting the size and shape of the pieces into which the mat, as initially formed, is cut.

In accordance with our improved process, we attain the foregoing object by applying layers of candy having substantially the consistency of caramel candy, to both sides of a layer of hard, frangible candy, to form a composite mat of desired shape and size, and in then cutting said mat into pieces of desired shape and size, for commercial purposes, said outer layers forming bonding means for holding pieces of said intermediate layer together and in position, in case it is broken in cutting, handling, or otherwise.

improved process, exemplifying one form into which the composite mat, as initially formed, may be cut.

Describing our improved process and confection with reference to the drawings, A designates as a whole a composite mat consisting, as shown, of three layers of candy designated, respectively, 1, 2 and 3.

The middle layer 2 consists of hard, frangible candy, as butter brittle, which cannot be cut, when cold, without being broken into pieces of irregular size and shape.

In accordance with our improved process, the layers 1 and 3 are applied to the bottom and top sides, respectively, of the layer 2 and consist of candy having substantially the consistency of a caramel candy, said layers forming bonding means for holding pieces of said intermediate layer together and in position, in case it is broken in the cutting operation, or otherwise.

Heretofore, so far as we are aware, it has been considered impracticable, if not impossible, to cut layers of hard, frangible candy of the character of the layer 2 shown in the

http://www.google.com/patents?printsec=abstract&zoom=4&pg=PA3&id=neY_AAAAEBAJ#v=onepage&q&f=false
12/27/2010 10:32:10 AM



http://www.google.com/patents?printsec=abstract&zoom=4&pg=PA3&id=neY_AAAAEBAJ#v=onepage&q&f=false
12/27/2010 10:33:44 AM

Web  Images  Videos  Maps  News  Shopping  Gmail  more ▾                                                                    Sign in

Google patents        [ ]        Search Patents        Advanced Patent Search

**CANDY CONFECTION AND PROCESS OF MAKING THE SAME** Lord et al.

Overview
Abstract
Drawing
Description
Claims

Patent number: 1613231
Filing date: Jan 28, 1926
Issue date: Jan 1927

Plain text   Clip   Link   Feedback   PDF



1,613,231

ting being performed in any suitable form of candy-cutter, preferably a rotary cutter—thus reducing the cost of manufacture to a point where the goods can be sold commercially at a reasonable price and still yield a profit.

In Figure 1 of the drawings the dotted lines 4 and 5 indicate the lines on which the mat A is to be cut.

After the mat A has been cut into pieces, each piece will preferably be coated with chocolate or other desired coating material, which may be done in accordance with usual practice.

In Figure 3 of the drawings we have shown one form in which our improved product may conveniently be made up for sale. We do not, however, desire to limit ourselves to this particular form, as the form of the piece may be varied or modified in any desired manner. Obviously, where the mat A is cut into pieces on a rotary cutter, it will be necessary to cut the mat A on straight lines.

Also, while we have herein shown and described our improved product as consisting of three layers, the number of layers may be increased without departure from our in-

vention, it merely being necessary, when additional layers are added, to alternate the layers 2 of hard, frangible material with the layers 1 and 3 of bonding material.

We claim,—

1. The process of making a candy confection which consists in initially forming a composite mat comprising an intermediate layer of hard, frangible candy and bonding layers of candy having substantially the consistency of caramel candy applied to both sides of said intermediate layer, and in then cutting said mat into pieces of desired size and shape for commercial purposes.

2. A candy confection consisting of a layer of frangible candy, layers of candy having substantially the consistency of caramel candy applied to the top and bottom surfaces thereof, forming bonding means for holding pieces of the intermediate layer together should it be broken, thus providing for cutting the product into pieces.

In testimony that we claim the foregoing as our invention, we affix our signatures this 22nd day of January, 1926.

WILLIAM S. LORD.
O. C. ASHLEY.

http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?refid=1861613319
12/27/2010 11:18:30 AM



http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?refid=1861613319
12/27/2010 11:18:30 AM



Francophobic
francophone
► frangible
frangipane
frangipani
Franglais
Frank
frank (1)
frank (2)
frankenfood
Frankenstein

adjective

**Definition:**

**breakable:** brittle, or designed to be easily broken ( *formal or technical* )
- *glass and other frangible products*
- *frangible aluminum masts*

[15th century. Directly or via Old French< medieval Latin *frangibilis*< *frangere* "break"]

- **fran·gi·bil·i·ty** [ frànjə bíllətee ] *noun*

Also available:

World English Dictionary
Dictionnaire Français

Encarta® World English Dictionary [North American Edition] © & (P)2009 Microsoft Corporation. All rights reserved. Developed for Microsoft by Bloomsbury Publishing Plc.

MSN Privacy    Legal    Advertise                                    Feedback   Help

© 2009 Microsoft    Microsoft

http://webcache.googleusercontent.com/search?q=cache:bs80LezPodEJ.www.fundinguniverse.com/company-histories/Hershey-Foods-Corporation-Company-History.html+hershey+advertising+history%22&cd=3&hl=en&ct=clnk&gl=us
12/27/2010 12:12:37 PM

This is Google's cache of http://www.fundinguniverse.com/company-histories/Hershey-Foods-Corporation-Company-History.html. It is a snapshot of the page as it appeared on Dec 14, 2010 21:33:14 GMT. The current page could have changed in the meantime. Learn more

These search terms are highlighted: **hershey** **advertising** **history**                    Text-only version

Contact Angel Investors

Login

Services    Company    Forum    Blog    Buzz

**Northern Virginia Coupons** 1 ridiculously huge coupon a day. Like doing Northern VA at 90% off! www.Groupon.com/
**Hershey Kisses - On Sale** No Time? Buy Candy & Treats Online, Order Hershey Kisses Online Today! www.Oriental
**Old Time Candy Company** Candy You Ate As a Kid. Candy From the Decades Old Time Candy. www.OldTimeCandy.c
Ads by Google

Company Histories:  #  A  B  C  D  E  F  G  H  I  J  K  L  M  N  O  P  Q  R  S  T  U  V  W  X  Y  Z

Search thousands of company histories:

[          ]  Search

# Hershey Foods Corporation

Get 50 expert sample business plans and put your great idea down on paper!

Find Angel Investors in your area

**Address:**
100 Crystal A Drive
Hershey, Pennsylvania 17033-0810
U.S.A.

**Telephone:** (717) 534-6799
**Toll Free:** 800-539-0261
**Fax:** (717) 534-6760
http://www.hersheys.com

**Statistics:**
**Public Company**
**Incorporated:** 1927 as Hershey Chocolate Corporation
**Employees:** 14,000

http://webcache.googleusercontent.com/search?q=cache:bs80LezPodEJ:www.fundinguniverse.com/company-histories/Hershey-Foods-Corporation-Company-History.html+hershey+advertising+history%22&cd=3&hl=en&ct=clnk&gl=us
12/27/2010 12:12:37 PM

**Employees:** 14,000
**Sales:** $4.5 billion (2001)
**Stock Exchanges:** New York
**Ticker Symbol:** HSY
**NAIC:** 311330 Confectionery Manufacturing from Purchased Chocolate; 311340 Nonchocolate Confectionery Manufacturing; 311320 Chocolate and Confectionery Manufacturing from Cacao Beans

**Company Perspectives:**
Our mission is to be a focused food company in North America and selected international markets and a leader in every aspect of our business. Our goal is to enhance our #1 position in the North American confectionery market, be the leader in U.S. chocolate-related grocery products, and to build leadership positions in selected international markets.

**Key Dates:**
1887: Milton **Hershey** establishes the Lancaster Caramel Company.
1895: The company begins to sell chocolate.
1900: **Hershey** sells his caramel company to focus on chocolate.
1906: The village of Derry Church is renamed **Hershey**.
1927: The firm incorporates as **Hershey** Chocolate Company and is listed on the New York Stock Exchange.
1940: Hershey's chocolate plant is unionized.
1963: The H.B. Reese Candy Company is acquired.
1968: The firm adopts the name **Hershey** Foods Corporation.
1970: Hershey's first consumer advertisement appears in 114 newspapers.
1988: **Hershey** purchases the operating assets and manufacturing assets of Peter Paul/Cadbury brands.
1996: **Hershey** launches its hard candy line, TasteTations, and the reduced-fat Sweet Escapes line.
1999: The firm sells its pasta business to New World Pasta LLC.
2002: The Milton **Hershey** Trust School announces plans to sell **Hershey**.

**Company History:**
**Hershey** Foods Corporation holds the top position in the U.S. confectionery market. The name **Hershey** is synonymous with chocolate, yet the company's founder made his first fortune by manufacturing caramel. While famous for its major candy brands--Hershey's, Reese's, Kit Kat, Kisses, Twizzlers, Jolly Rancher, Ice Breakers, Carefree, and Breath Savers--the company also markets grocery products including Hershey's baking chocolate, chocolate milk, ice cream toppings, cocoa, chocolate syrup, peanut butter, and Reese's and Heath baking pieces. **Hershey** operates with two main divisions, **Hershey** Chocolate North America and **Hershey** International, the latter of which exports the firm's products to over 90 countries. The Milton **Hershey** School Trust controls 77 percent of Hershey's voting power. In 2002, the Trust planned to diversify its holdings and, in a controversial move, announced that it was putting **Hershey** Foods up for sale.

**Company Origins**
Milton S. **Hershey** was born in 1857 in central Pennsylvania. As a young boy **Hershey** was apprenticed to a Lancaster, Pennsylvania, candymaker for four years. When he finished this apprenticeship in 1876, at age 19, **Hershey** went to Philadelphia to open his own candy shop. After six years, however, the shop failed, and **Hershey** moved to Denver, Colorado. There he went to work for a caramel manufacturer, where he discovered that caramel made with fresh milk was a decided improvement on the standard recipe. In 1883, **Hershey** left Denver for Chicago, then New Orleans, and later New York, until in 1886 he finally returned to Lancaster. There he established the Lancaster Caramel Company to produce "Hershey's Crystal A

http://webcache.googleusercontent.com/search?q=cache:bs80LezPodEJ,www.fundinguniverse.com/company-histories/He
rshey-Foods-Corporation-Company-History.html+hershey+advertising+history%22&cd=3&hl=en&ct=clnk&gl=us
12/27/2010 12:12:37 PM

... Hershey remained a businessman. When he established the Lancaster caramel company to produce Hershey's crystal-A caramels that would "melt in your mouth." **Hershey** had a successful business at last.

**Hershey Makes His First Chocolate Sale: 1895**

In 1893, **Hershey** went to the Chicago International Exposition, where he was fascinated by some German chocolate-making machinery on display. He soon installed the chocolate equipment in Lancaster and in 1895 began to sell chocolate-covered caramels and other chocolate novelties. At that time, **Hershey** also began to develop the chocolate bars and other cocoa products that were to make him famous.

In 1900, **Hershey** decided to concentrate on chocolate, which he felt sure would become a big business. That year, he sold his caramel company for $1 million, retaining the chocolate equipment and the rights to manufacture chocolate. He decided to locate his new company in Derry Church, the central Pennsylvania village where he had been born, and where there would be a plentiful milk supply. In 1903, **Hershey** broke ground for the **Hershey** chocolate factory, which would remain the largest chocolate-manufacturing plant in the world through the twentieth century.

Before this factory was completed, in 1905 **Hershey** produced a variety of fancy chocolates. But with the new factory, **Hershey** decided to mass-produce a limited number of products that he could sell at a low price. The famous Hershey's Milk Chocolate Bar, the first mass-produced chocolate product, was born.

In 1906, the village of Derry Church was renamed **Hershey**. The town was not simply named after the man or the company: it was Milton Hershey's creation, the beneficiary of and heir to his energy and his fortune. **Hershey** had begun planning a whole community that would fulfill all the needs of its inhabitants at the same time that he planned his factory. A bank, school, recreational park, churches, trolley system, and even a zoo soon followed, and the town was firmly established by its tenth anniversary. One of Hershey's most enduring contributions was the **Hershey** Industrial School for orphans, which he established in 1909 with his wife Catherine. After Catherine's death in 1915, the childless **Hershey** in 1918 gave the school **Hershey** company stock valued at about $60 million. In 2002, the school, which became the Milton **Hershey** School in 1951, continued to control 77 percent of the company's voting stock.

In 1907, Hershey's Kisses were first produced, and the next year, in 1908, the **Hershey** Chocolate Company was formally chartered. In 1911, its sales of $5 million were more than eight times the $600,000 made ten years earlier at the company's start.

**Continued Success: 1920s-1940s**

The **Hershey** company continued to prosper, producing its milk chocolate bars (with and without almonds), Kisses, cocoa, and baking chocolate. In 1921, sales reached $20 million, and in 1925 **Hershey** introduced the Mr. Goodbar Chocolate Bar, a chocolate bar with peanuts. In 1927, the company was incorporated as the **Hershey** Chocolate Company and its stock was listed on the New York Stock Exchange.

By 1931, 30 years after the company was established, **Hershey** was selling $30 million worth of chocolate a year. As the Great Depression cast its shadow on the town of **Hershey**, Milton **Hershey** initiated a "grand building campaign" in the 1930s to provide employment in the area. Between 1933 and 1940, Hershey's projects included a 150-room resort hotel, a museum, a cultural center, a sports arena (where the Ice Capades was founded), a stadium, an exotic rose garden, and a modern, windowless, air-conditioned factory and office building. **Hershey** liked to boast that no one was laid off from the company during the Depression.

Though Hershey's intentions seem to have been wholly sincere, there was always some suspicion about his "company town." Labor strife came to the company in 1937, when it suffered its first strike. Though bitter, the strike was soon settled, and by 1940 the chocolate plant was unionized.

In 1938, another famous chocolate product was introduced: the Krackel Chocolate Bar, a chocolate bar with crisped rice. The next year Hershey's Miniatures, bite-sized chocolate bars in several varieties, were introduced.

During World War II, **Hershey** helped by creating the Field Ration D--a four-ounce bar that provided 600 calories and would not melt--for soldiers to carry to sustain them when no other food was available. The chocolate factory was turned over to the war effort and produced 500,000 bars a day. **Hershey** received the Army-Navy E award from the quartermaster general at the war's end. **Hershey** died soon after, on October 13, 1945.

**Hershey Under Expansion: 1960s**

118941

http://webcache.googleusercontent.com/search?q=cache:bs80LezPodEJ:www.fundinguniverse.com/company-histories/He
rshey-Foods-Corporation-Company-History.html+hershey+advertising+history%22&cd=3&hl=en&ct=clnk&gl=us
12/27/2010 12:12:37 PM

**Hershey Begins Expansion: 1960s**

After Milton Hershey's death, the chocolate company continued to prosper and maintain its strong position in the chocolate market. By the 1960s, Hershey was recognized as the number one chocolate producer in America.

With the company's growth came expansion. In 1963, Hershey broke ground for the construction of two new chocolate factories, in Oakdale, California, and Smiths Falls, Ontario. Expansion for Hershey also meant looking for acquisitions, the first of which was the H.B. Reese Candy Company that same year. Also in 1963, the company's president and chairman, Samuel Hinkle, arranged for the founding of the Milton S. Hershey Medical Center of the Pennsylvania State University in Hershey, Pennsylvania.

While the company played a hand in many developments within Pennsylvania, its main endeavor continued to be the food industry, including, for the first time, non-confectionary food. Among its acquisitions were two pasta manufacturers, San Giorgio Macaroni Inc., in Lebanon, Pennsylvania, and Delmonico Foods Inc., in Louisville, Kentucky, in 1966. In 1967, the Cory Corporation, a Chicago-based food-service company, was acquired. Due to its expansions beyond chocolate, the company changed its name in 1968 to the Hershey Foods Corporation. The name change also marked the passing of an era when in 1969 it raised the price of Hershey's candy bars, which had been five cents since 1921, to ten cents.

As the 1970s unfolded, changes in American culture forced Hershey Foods Corporation to change also. Before the 1970s, the company, heeding the words of its founder that a quality product was the best advertisement, had refused to advertise. Thousands of people who came to tour the chocolate factory each year had spread the word about Milton Hershey and his chocolate. A visitors bureau had been established as early as 1915 to handle tours of the facilities, and by 1970 almost a million people a year visited Hershey.

Word of mouth had served as a valuable source of advertising for Hershey during most of its existence. But as people became more health conscious and the consumption of candy declined, the influence of advertising became a greater factor in the candy business. By 1970, Mars had deposed Hershey as the leader in candy sales, provoking Hershey to launch a national advertising campaign. On July 19, 1970, Hershey's first consumer advertisement, a full-page ad for Hershey's Syrup, appeared in 114 newspapers. Within months, the corporation was running ads on radio and television as well. Also that year, under an agreement with British candymaker Rowntree Mackintosh, Hershey became the American distributor of the Kit Kat Wafer Bar. Hershey introduced a second Rowntree candy, Rolo Caramels, the next year.

In 1973, Hershey's Chocolate World Visitors Center was opened to educate people about chocolate-making, with exhibits on tropical cocoa-tree plantations, Pennsylvania Dutch milk farms, and the various stages of the manufacturing process. The facility was established to replace tours of the actual plant, which were discontinued in 1973 due to an overload of traffic. Under the direction of its chief executive officer, William E. Dearden, Hershey adopted an aggressive marketing plan in 1976 to offset its shrinking market share. Dearden, who had grown up in Milton Hershey's orphanage, joined forces with his chief operating officer, Richard A. Zimmerman, to implement a campaign aimed at customers in grocery stores, where half of all candy was sold. Specialty items such as a wide line of miniatures, holiday assortments, and family packs were marketed. A national ad campaign promoting Hershey's Kisses, and the introduction of the Giant Hershey's Kiss in 1978 tripled sales of the product between 1977 and 1984. The Big Block line of 2.2-ounce bars and premium candies such as the Golden Almond Chocolate Bar were also introduced, as were Reese's Pieces Candy and Whatchamacallit and Skor Candy Bars.

**Growth Through Acquisition: Late 1970s and 1980s**

Hershey also made plans to diversify, to lessen the company's vulnerability to unstable cocoa-bean and sugar prices. In 1977, Hershey acquired a 16 percent interest in A.B. Marabou, a Swedish confectionery company, and bought Y&S Candies Inc., the nation's leading manufacturer of licorice. The following year, it bought the Procino-Rossi Corporation (P&R), and in 1979 it acquired the Skinner Macaroni Company to add to its stable of brand-name pastas. In 1984, Hershey purchased American Beauty, another pasta brand, from Pillsbury and formed the Hershey Pasta Group.

Another 1979 acquisition, the Friendly Ice Cream Corporation, a 750-restaurant chain based in New England, tripled the number of employees on Hershey's payroll. After experiencing major structural changes owing to its 1970s expansion, the company implemented an intensive values study to pinpoint and communicate the principles inherent in its corporate culture and

http://webcache.googleusercontent.com/search?q=cache:bs80LezPodEJ:www.fundinguniverse.com/company-histories/He
rshey-Foods-Corporation-Company-History.html+hershey+advertising+history%22&cd=3&hl=en&ct=clnk&gl=us
12/27/2010 12:12:37 PM

**history**.

In 1982, **Hershey** opened another plant, in Stuarts Draft, Virginia. The next year it introduced its own brand of chocolate milk, and in 1984 it introduced Golden Almond Solitaires (chocolate-covered almonds). In 1986, in addition to introducing two new products, the Golden III Chocolate Bar and the Bar None Wafer Bar, **Hershey** acquired the Dietrich Corporation, the maker of the 5th Avenue Candy Bar, Luden's throat drops, and Mello Mints. Not content with such a year--the first to top $2 billion in sales--in December **Hershey** purchased GBR Pasta Company, Inc., whose Pastamania brand became the eighth in **Hershey**'s pasta group.

However, the acquisitions did not stop there. In June 1987, **Hershey** acquired the Canadian candy and nut operations of Nabisco Brands for its subsidiary **Hershey** Canada Inc. The three main businesses **Hershey** acquired were Lowney/Moirs, a Canadian chocolate-manufacturing concern; the Canadian chocolate manufacturer of Life Savers and Breath Savers hard candy; and the Planters snack nut business in Canada.

The biggest acquisition of all came in August 1988, when **Hershey** made a $300 million deal for Peter Paul/Cadbury, an American subsidiary of the British candy and beverage company Cadbury Schweppes plc. **Hershey** purchased the operating assets of the company and the rights to manufacture the company's brands, including Peter Paul Mounds and Almond Joy Candy Bars and York Peppermint Patties, and Cadbury products including Cadbury chocolate bars and Cadbury's Creme Eggs, an Easter specialty candy. Observers predicted that **Hershey**'s economies of scale and clout with retailers would bring increased profitability to the newly acquired Cadbury lines. This purchase pushed **Hershey**'s share of the candy market from 35 percent to 44 percent, and helped **Hershey** back to the top of the American candy business. At the same time, **Hershey** decided to sell the Friendly Ice Cream Corporation to concentrate on its core confectionery businesses. The company was sold to Tennessee Restaurant in September for $374 million.

The decline in candy consumption that began after World War II, as a prosperous America found its waistline expanding uncomfortably, accelerated during the 1970s as the fitness craze began. However, in the 1980s this trend reversed. Candy consumption reportedly increased from 16 pounds per capita in 1980 to 19.5 pounds in 1988, coincidentally the same period during which **Hershey** regained the top spot in U.S. candy through its acquisitions of Dietrich Corporation and Peter Paul/Cadbury. In the early 1990s, **Hershey** maintained its confectionery position in the United States through several successful introductions: **Hershey**'s Kisses with Almonds chocolates in 1990; **Hershey**'s Cookies 'n' Mint chocolate bars in 1992; **Hershey** Hugs white chocolate-covered kisses in 1993 (which had become a $100 million brand by 1995); and Reese's NutRageous bar in 1994, which quickly moved into the top 20 candy-bar list.

**Diversification and International Expansion: Early 1990s**

Outside of its chocolate realm, **Hershey** continued to bolster its pasta business while also attempting to capture more of the noncholate confectionery market. In 1990, it acquired the Ronzoni Foods Corp., yet another regional pasta brand, and in 1993 the **Hershey** Pasta Group opened a new plant in Winchester, Virginia. Through such moves, **Hershey** became the leader in dry pasta in the United States by 1995. Meanwhile, continuing fierce competition with Mars and the low inflation of the period--both of which made increasing prices untenable--put pressure on **Hershey**'s chocolate earnings. One of the company's responses to this pressure was to increase its offerings in noncholate confections. Among the 1990s introductions were Amazin' Fruit gummy bears in 1992, Twizzlers Pull-n-Peel candy in 1994, and Amazin' Fruit Super Fruits in 1995. By going after the noncholate confectionery business, **Hershey** aimed to capture more market share among youthful shoppers, who generally preferred noncholate candy. It also made sense in the overall U.S. market, where noncholate candy sales were increasing faster than chocolate candy sales.

In the early 1990s, **Hershey** attempted to lessen its dependence on the North American market by cautiously moving into overseas markets. In 1990, the company introduced the **Hershey** brand to the Japanese market through a joint venture with Fujiya. The European market, a difficult market for foreign firms to penetrate given differing European tastes and such entrenched firms as Nestle, was targeted next. This venture was less than successful than **Hershey**'s move into Japan, at least at first. In 1991, **Hershey** acquired the German chocolate maker Gubor Schokoladen, which in the first few years after the takeover failed to meet **Hershey**'s expectations. In 1992, the firm purchased an 18.6 percent interest in the Norwegian

http://webcache.googleusercontent.com/search?q=cache:bs80LezPodEJ,www.fundinguniverse.com/company-histories/Hershey-Foods-Corporation-Company-History.html+hershey+advertising+history%22&cd=3&hl=en&ct=clnk&gl=us
12/27/2010 12:12:37 PM

confectionery firm Freia Marabou, but then promptly sold the stake the following year after it was outbid for majority control by Philip Morris. Later, in 1993, **Hershey** acquired the Italian confectionery business of Heinz Italia S.p.A. for $130 million, which primarily gave it the Sperlari brand, a leader in nonchocolate confectionery products in Italy. Shortly thereafter, **Hershey** acquired the Dutch confectionery firm Oversprecht B.V. for $20.2 million, which under the Jamin brand manufactured confectionery products, cookies, and ice cream. Although primarily distributed in the Netherlands and Belgium, Jamin gave **Hershey** its first penetration of the potentially lucrative Russian market when it began to distribute chocolate there after the **Hershey** takeover.

**Strategic Changes: Mid- to Late 1990s**

Meanwhile, back in North America, **Hershey** was being hurt by results in Canada, where too many competitors were chasing too few customers, and in Mexico, where political and economic turmoil slowed Hershey's growth. In response, **Hershey** announced a restructuring in late 1994, taking a $106.1 million aftertax charge. Over the next 15 months, the company cut its staff by more than 400 and consolidated its operations in the United States, Canada, and Mexico into a **Hershey** Chocolate North America division. Earlier in 1994, **Hershey** had formed a **Hershey** Grocery division to give special attention to the company's various baking and grocery products. These two divisions, along with **Hershey** International and **Hershey** Pasta Group, comprised the four main areas in which **Hershey** operated. The company also raised its prices for the second time in ten years and launched a stock repurchase program to bolster its stock price.

In the mid-1990s, **Hershey** added partnering to its arsenal of corporate strategies. In 1994, **Hershey** partnered with General Mills to introduce Reese's Peanut Butter Puffs Cereal. In 1995, a partnership with Good Humor-Breyers resulted in Reese's Peanut Butter Ice Cream Cups. That same year a cross-marketing deal with MCI offered free long-distance telephone calls to purchasers of selected Hershey's chocolate products. Having celebrated its 100th anniversary in 1994, **Hershey** looked forward to a bright future in its second century. By that time, **Hershey** had increased its share of the U.S. confectionery market to 34.5 percent, while Mars had seen its share fall to 26 percent, and Hershey's nonchocolate confectionery and pasta operations were growing.

Under the leadership of Kenneth Wolfe--named chairman and CEO in 1994--Hershey's success continued into the latter half of the 1990s. During 1996, the company launched its first hard candy product, TasteTations, and the reduced-fat Sweet Escapes product line. That year, the company acquired Leaf North America in a $440 million deal that added Jolly Rancher, Good & Plenty, Whoppers, and Milk Duds to its product arsenal. **Hershey** continued its dominance of the U.S. market by continuing to introduce new, successful products, including the Reese's Crunchy Cookie Cups, Classic Caramels, and the Mini Kisses Semi-Sweet Baking Pieces. The company also revamped its business operations once again, divesting its European operations in 1996, and then selling its pasta division in 1999 to New World Pasta LLC for $450 million in cash. Wolfe commented on the sale in a 1999 *Prepared Foods* article claiming that "after a thorough review of our strategic direction, we have concluded that we can generate a better return for our shareholders by focusing on our confection, related grocery, and foodservice businesses."

**Hershey** continued to add to product line in 2000 with the purchase of RJR Nabisco Inc.'s mints and gum business. The acquisition included the Ice Breakers and Breath Savers Cool Blast mints, and the Ice Breakers, Carefree, Stickfree, Bubble Yum, and Fruit Stripe gums. Wolfe retired in 2001, leaving industry veteran Rick Lenny at the helm. That year, the company sold its Luden's throat drop business and began a $275 million restructuring effort that included 400 job cuts, closure of three **Hershey** plants, and the outsourcing of cocoa powder production. While net income fell during 2001, sales increased by eight percent to $4.5 billion.

**A Surprise Announcement: 2002**

During 2002, **Hershey** dealt with a labor strike--the first one since 1980. Just as the labor issues were resolved, **Hershey** faced yet another blow. In July 2002, the Milton **Hershey** School Trust, which controlled 77 percent of Hershey's voting power, announced that it wished to diversify its holdings and that a sale of the company would be beneficial to the school. At the time, over half of the Trust's $5.4 billion portfolio consisted of **Hershey** stock. While Hershey's board was opposed to a sale, it agreed to work with the Trust on viable options. The announcement however, left the citizens of **Hershey**, Pennsylvania, in an uproar. Nearly half of the city's residents were employed by **Hershey** and feared a sale of the company, especially to a foreign

http://webcache.googleusercontent.com/search?q=cache:bs80LezPodEJ:www.fundinguniverse.com/company-histories/He rshey-Foods-Corporation-Company-History.html+hershey+advertising+history%22&cd=3&hl=en&ct=clnk&gl=us
12/27/2010 12:12:37 PM

uproar. Nearly half of the city's residents were employed by **Hershey** and feared a sale of the company, especially to a foreign firm, would negatively impact their jobs as well as the city. As such, the state's attorney general and potential governor filed a petition against the Trust that would call for court approval of any offers made for **Hershey**. The possible sale received negative reviews throughout the business world. In fact, an August 2002 article in *The Economist* went as far to say that "Milton **Hershey** must be turning in his grave."

In September, Wm. Wrigley Jr. Co. offered $12.5 billion bid for the company, outbidding Nestlé and Cadbury Schweppes, who had teamed up to make a $10.5 billion play for the company. Both offers were turned down, leaving **Hershey** independent for the time being. While Hershey's future remained up in the air, one thing was certain. With well over 100 years of **history** behind it, the **Hershey** name would remain a favorite among chocolate lovers around the world for years to come.

**Principal Subsidiaries:** **Hershey** Chocolate & Confectionery Corporation; **Hershey** Chocolate of Virginia, Inc.; **Hershey** Canada, Inc.

**Principal Divisions:** **Hershey** Chocolate North America; **Hershey** International.

**Principal Competitors:** Cadbury Schweppes plc; Mars Incorporated; Nestlé S.A.

---

**5,000,000 Opt-in Users** 100% Opt-in Audience that has the Highest Response Rates, Guaranteed! www.optinlistadve

**Free Online Advertising** Business Email, Surveys & Customer Feedback All In One. Get It Free! Ratepoint.com/Onlin

**Old Time Candy Company** Candy You Ate As a Kid. Candy From the Decades Old Time Candy. www.OldTimeCandy.c

Ads by Google

---

**Further Reading:**

- Barrett, Amy, "How **Hershey** Made a Big Chocolate Mess," *Business Week*, September 9, 2002.
- "Bitter Times for a Sweet Town," *Economist*, August 31, 2002.
- Byrne, Harlan S., "**Hershey** Foods Corp.: It Aims to Sweeten Its Prospects with Acquisitions," *Barron's*, May 6, 1991, p. 41.
- Castner, Charles Schuyler, *One of a Kind: Milton Snavely **Hershey**, 1857-1945*, **Hershey**, PA.: Dairy Literary Guild, 1983, 356 p.
- Gold, Jackey, "How Sweet It Is," *Financial World*, November 13, 1990, p. 17.
- Halpert, Hedy, "Face to Face: Hershey's Next Century," *U.S. Distribution Journal*, September 15, 1993, p. 43.
- "**Hershey** Foods--Packaging Leader of the Year," *Packaging Digest*, October 1997, p. 91.
- "**Hershey** Foods Sells Pasta Business," *Prepared Foods*, January 1999, p. 26.
- "**Hershey** Foods' Wolfe to Retire," *Candy Industry*, October 21, 2001, p. 12.
- *Hershey's 100 Years: The Ingredients of Our Success*, **Hershey**, PA.: **Hershey** Chocolate Corporation, 1994, 24 p.
- Heuslein, William, "Timid No More," *Forbes*, January 13, 1997, p. 98.
- Koselka, Rita, "Candy Wars," *Forbes*, August 17, 1992, p. 76.
- Kuhn, Mary Ellen, "Sweet Times in the **Hershey** Candy Kingdom," *Food Processing*, January 1995, p. 22.
- *A Profile of **Hershey** Foods Corporation*, **Hershey**, Pa.: **Hershey** Chocolate Corporation, 1995, 24 p.
- *The Story of Chocolate and Cocoa*, **Hershey**, PA.: **Hershey** Chocolate Corporation, 1926, 30 p.
- "Workers Strike at Nation's Largest Candy Maker," *Food Institute Report*, April 29, 2002, p. 1.

**Source:** *International Directory of Company Histories*, Vol. 51. St. James Press, 2003.

http://webcache.googleusercontent.com/search?q=cache:upcbJD7aiM0J:www.suite101.com/content/hershey-chocolate-advertising-public-relations-and--promotions-a268240+hershey+advertising+history&cd=7&hl=en&ct=clnk&gl=us
12/27/2010 12:23:34 PM



118946

http://webcache.googleusercontent.com/search?q=cache:upcbJD7aiM0J:www.suite101.com/content/hershey-chocolate-a dvertising-public-relations-and--promotions-a268240+hershey+advertising+history&cd=7&hl=en&ct=clnk&gl=us
12/27/2010 12:23:34 PM

## Hershey S'mores Promotion

### Related Articles

- Strategic Communications ROI Betters Marketing
- Online Chocolate Sales
- Pet Friendly Hotels Hershey PA
- Hershey Chocolate World Tour in Hershey Pennsylvania
- Merging Advertising and Public Relations
- Take a Taste of Hershey, PA
- The Sweet History of Milton S. Hershey

more in advertising

"In the second quarter, advertising expense increased about 50% as we were on air supporting our core brands, the kick-off of our annual Hershey's S'mores promotion and the launch of Hershey's Special Dark, Almond Joy and York Pieces new products.

"Advertising, as well as greater levels of in-store selling, merchandising and programming has resulted in strong marketplace performance," West said.

That's a real contrast for a company that went more than 70 years without running media ads.

### Would Milton Hershey Approve?

What would Milton Hershey say about all this advertising? No one knows, but he was a practical businessman and changed jobs and business strategies several times before becoming successful.

Instead of advertising his chocolate, he built a huge plant, invited people to visit it, built an amusement park, a theater, a stadium and a town he named Hershey. He brought the first "horseless carriage" to his Pennsylvania area, put a Hershey logo on it and used it to deliver his chocolate.

Milton Hershey also built a school for neglected boys, which now owns most of the company. All of this building brought the company extensive positive publicity, which at the time may have been better than advertising.

It was an early use of the risky build-it-and-they-will-come business strategy. Eventually people came by the hundreds of thousands.

### Hershey Billboards

Although legend says Milton Hershey did not use advertising, Katherine B. Shippen and Paul A. W. Wallace mention in their Hershey biography that he did use billboards to promote his chocolate. The Outdoor Advertising Association would certainly consider that advertising.

But Milton Hershey apparently did not use newspapers, magazines or radio, the other major ad media advertising of his day.

That policy was maintained even after his death in 1945. In 1970 the company changed its policy by purchasing ads in 114 newspapers to promote its chocolate.

Advertising is a major part of Hershey's marketing program today, but the company still draws thousands of people to its various visitor attractions in Hershey. They include a theme park, chocolate museum, zoo, gardens, theater, chocolate store and numerous free chocolate samples.

It has the earmarks of a self-sustaining promotion program, now assisted by some substantial advertising.

Reference:

Milton S. Hershey, by Katherine B. Shippen and Paul A. W. Wallace, Copyright 1959 by Milton Hershey School

#### Read on

- Merging Advertising and Public Relations
- The Sweet History of Milton S. Hershey
- Pet Friendly Hotels Hershey PA

### Related Topics

- Advertising Agencies
- Print Advertising
- Radio Advertising
- TV Advertising
- Web Advertising

### Reference

- hershey chocolate advertising
- pennsylvania candy company
- milton hershey
- president david w west
- s'mores

http://webcache.googleusercontent.com/search?q=cache:upcbJD7aiM0J:www.suite101.com/content/hershey-chocolate-advertising-public-relations-and--promotions-a268240+hershey+advertising+history&cd=7&hl=en&ct=clnk&gl=us
12/27/2010 12:23:34 PM



⊳ s'mores
⊳ katherine b. shippen

Milton S. **Hershey**, by Katherine B. Shippen and Paul A. W. Wallace, Copyright 1959 by Milton **Hershey** School

Reviving a Dormant Brand

Copyright **Carroll Trosclair**. Contact the author to obtain permission for republication.

Print Article | ➕ Share Article | 🐦 📘 📧

**Hershey** Chocolate
World Drams
Thousands - Carroll
Trosclair

Ads by Google

**Superior DRTV Media**
Targeting, buying & analyzing DRTV The fastest growing DRTV agency
www.proceedmediagroup.com

**Save On Hershey's Milk**
Print Free Coupons Before You Shop. Redeem At Your Local Store.
www.Coupons.com

**Hotels in Hershey, PA**
Smart Hotels in Hershey. Free Internet & Hot Breakfast Bar!
www.hiexpress.com

**British Candy in USA**
Galaxy, malteasers and nipple Fast shipping.
www.britishdelights.com

What do you think about this article?

NOTE: Because you are not a Suite101 member, your comment will be moderated before it is viewable.

What is 7+7?  [        ]                    Submit comment

http://webcache.googleusercontent.com/search?q=cache:upcbJD7aiM0J:www.suite101.com/content/hershey-chocolate-advertising-public-relations-and-promotions-a268240+hershey+advertising+history&cd=7&hl=en&ct=clnk&gl=us
12/27/2010 12:23:34 PM



http://webcache.googleusercontent.com/search?q=cache:pxccv7WfwjUjwww1.hersheys.com/discover/history/advertising.asp+hershey+advertising+history&cd=1&hl=en&ct=clnk&gl=us    12/27/2010 12:27:43 PM



This is Google's cache of http://www1.hersheys.com/discover/history/advertising.asp. It is a snapshot of the page as it appeared on Dec 15, 2010 22:35:26 GMT. The current page could have changed in the meantime. Learn more

These search terms are highlighted: hershey advertising These terms only appear in links pointing to this page: history        Text-only version

http://webcache.googleusercontent.com/search?q=cache:pxccv7WfwjU:www1.hersheys.com/discover/history/advertising.asp+hershey+advertising+history&cd=1&hl=en&ct=clnk&gl=us        12/27/2010 12:27:43 PM



http://webcache.googleusercontent.com/search?q=cache:1o59ok4bpWAJ:www.kjzrradio.com/tag/hershey/+subdivided+rectangle+hershey&cd=2&hl=en&ct=clnk&gl=us        12/27/2010 02:06:14 PM



This is Google's cache of http://www.kjzrradio.com/tag/hershey/. It is a snapshot of the page as it appeared on Nov 19, 2010 06:21:29 GMT. The current page could have changed in the meantime. Learn more

These search terms are highlighted: subdivided rectangle hershey

Posts Tagged 'Hershey'

**RE: The Great American Chocolate Bar Association**
Thursday, May 20th, 2010

Hey Mike, Perhaps Hershey would have been happier if Nestle's or Cadbury had gotten the free advertising instead?
Thanks to LRC.

Tweet This Post

Burger King's F#"# You Leads to Firings

Read more

High School Plans to Open Drug Clinic

http://webcache.googleusercontent.com/search?q=cache:1o59ok4bpWAJ:www.kjzrradio.com/tag/hershey/+subdivided+rectangle+hershey&cd=2&hl=en&ct=clnk&gl=us          12/27/2010 02:06:14 PM

Tweet This Post

Tags: American , candy , Hershey , Pennsylvania
Posted in Entertainment & News | Comments Off

## The Great American Chocolate Bar Association

Thursday, May 20th, 2010

The latest ridiculous news on the intellectual property front is that Hershey's is suing Williams-Sonoma over a brownie pan that resembles a Hershey's chocolate bar.

Yes, a rectangle subdivided into other rectangles, with the word CHOCOLATE imprinted in each one, is a trademark violation, according to the folks in Hershey, Pennsylvania.

Now [...]

Tags: American , candy , candy bar , chocolate , Hershey , Pennsylvania , Williams-Sonoma
Posted in Entertainment & News | Comments Off

Read more

**Florida airport to opt out of TSA screening**

Read more

**Group Plans National Opt-Out Day to Protest Airport Security**

Read more

**Councilman calls cops on boys' cupcake sale**

Read more

**In-state tuition for illegal immigrants is preserved with California Supreme Court ruling**

118953

http://webcache.googleusercontent.com/search?q=cache:1o59ok4bpWAJ:www.kjzrradio.com/tag/hershey/+subdivided+rectangle+hershey&cd=2&hl=en&ct=clnk&gl=us        12/27/2010 02:06:14 PM



Read more

**They're at it again**

Read more

**"I am absolutely certain that is not an aircraft"**

Read more

**TSA gropes Nun**

Read more

**Haunted house workers say they haven't been paid**

Read more

© 2010 KJZR Online Radio, All rights reserved. Sitemap    Web design by InixMedia

http://webcache.googleusercontent.com/search?q=cache:DcM_AwYyc4QJ:blog.globaltoad.com/%3Fp%3D1452+subdivided+r
ectangle+hershey&cd=3&hl=en&ct=clnk&gl=us        12/27/2010 02:07:17 PM

This is Google's cache of http://blog.globaltoad.com/?p=1452. It is a snapshot of the page as it appeared on Dec 19, 2010 11:36:52 GMT. The current page could have changed in the meantime. Learn more

These search terms are highlighted: subdivided rectangle hershey

# Global Toad News

Political and Computing News

search

« Rand Paul wins Primary in Kentucky                                                    Rand Paul's problems »

## Hershey claims trademarks on rectangles!

Yes, it's true, Hershey claims that when you have a rectangle subdivided into smaller rectangles (or squares) (like say a window) you might be violating their trademark!.  MSNBC has the story (what there is of it) where Hershey is suing Williams-Sonoma over the rectangular shape of a brownie pan that has squares in it for all the brownies.

*Share on Facebook*

This entry was posted by shane.vincent on May 19, 2010 at 6:35 pm under Stupidity. You can leave a response, or trackback from your own site. Follow any responses to this entry through the RSS 2.0 feed.

## Leave a Reply

You must be logged in to post a comment.

### LINKS
American Thinker
Clarion Newsgroups
Climate Change
Democrats against Obama
Disinter
EFF
Groklaw
LC
Lew Rockwell
No World System
NWTools
Real Clear Politics
Red State Electric
Rense
Search The Web
SlashDot
Washington's
Watts Up With That
Weather
WRH

### SUBSCRIPTIONS

Your email:
Enter email address...

Subscribe    Unsubscribe

Entries (RSS) and Comments (RSS).
Powered by WordPress. Theme Evanescence.

http://www.google.com/#sclient=psy&hl=en&q=%22chocolate+candy+bars%22+%22break-off%22&aq=f&aqi=&aql=&oq=gs_rf ai=&pbx=1&fp=c341562a61b59af3        12/28/2010 04:06:04 PM



http://www.google.com/#sclient=psy&hl=en&q=%22chocolate+candy+bars%22+%22break-off%22&aq=f&aqi=&aql=&oq=&gs_rf
ai=&pbx=1&fp=c341562a61b59af3          12/28/2010 04:06:04 PM

Hersheys Milk Chocolate Snack Size Bars 10.78 ounce packages review
This means you can **break off** one tiny piece, or a section of two, of, ... **...** She purchased my
mother some Kinders milk **chocolate candy bars** from a store that **...**
www.reviewstream.com › Food - Cached

Dove Chocolate Bars - 24ct
Dove Chocolate Bars - 24ct - The smooth dreamy **chocolate candy bars** that **break off** into
pieces and melt in your mouth! Select between: Milk Chocolate or **...**
www.acandystore.com/dove-chocolate-bars-24ct.html - Cached - Similar

Dulk Candy Bars
Simply stated, Hershey's milk **chocolate candy bars** melt in your mouth. **....** The perfect
antidote for anyone who deserves a break – simply "**break off** a **...**
www.metrocandy.com/Candy-Bars - Cached - Similar

Kit kat chocolate candy bar - Shop sales, stores & prices at ...
This unique candy is made so you can **break off** a piece to share, **...** Kit Kat Bar, Single Bar
Now Creamier **Chocolate Candy Bars** & Popular Candies **...**
www.thefind.com › Food and wine › Food and Drink - Cached

Willy wonka chocolate bars Candy at Bizrate - Shop online for ...
The smooth dreamy **chocolate candy bars** that **break off** into pieces and melt in your mouth!
Select between: Milk Chocolate or Dark Chocolate. **...**
www.bizrate.com/candy/willy-wonka-chocolate-bars/ - Cached

Goooooooooogle ▶

**1**  2  3  4  5  6  7  8  9  10          **Next**

Search Help     Give us feedback

Google Home     Advertising Programs     Business Solutions     Privacy     About Google

118957

http://webcache.googleusercontent.com/search?q=cache:Kyb0R5DG1I4J:www.epinions.com/review/Hershy_s_Milk_Chocol ate_Bar/content_419469561476+%22chocolate+candy+bars%22+%22break-off%22&cd=1&hl=en&ct=clnk&gl=us
12/26/2010 04:06:35 PM



http://webcache.googleusercontent.com/search?q=cache:Kyb0R5DG1I4J:www.epinions.com/review/Hershy_s_Milk_Chocol
ate_Bar/content_419469561476+%22chocolate+candy+bars%22+%22break-off%22&cd=1&hl=en&ct=clnk&gl=us
12/28/2010 04:06:35 PM

Subscriptions, Personal
Finance, Restaurants &
Gourmet, Books

[POPULAR AUTHOR] - Top 10

**Member:** Bryan Carey
**Location:** Houston, TX
**Reviews written:** 3342
**Trusted by:** 1568
members
**About Me:**
Beer Drinker and
Libertarian Political
Activist. Great
Combination, eh?

▸ View all reviews by
Bryan_Carey

▸ View Bryan_Carey's
profile

certainly earned its title is **Hershey's Milk Chocolate Bar**, the original all- chocolate candy bar.

**Basic Facts About This Candy:**

Hershey's Milk Chocolate Bar is a flat, thin candy bar with a standard size of 1.55 oz. (43 grams). The flat bar is made entirely from milk chocolate and it is divided into twelve rectangular "pieces". These pieces are all attached to each other in a 3 by 4 fashion to form the candy bar. This design makes it easy to **break off** smaller pieces and share them with others.

Hershey's Milk Chocolate Bar is milk chocolate all the way, with a taste that is chocolaty and a little bit creamy. The chocolate consistency is smooth, with no graininess and no additives. Hershey's Milk Chocolate Bar is 100 percent delicious milk chocolate and nothing else.

**Nutritional Information:**

Hershey Milk Chocolate Bars are sold in a standard 1.55 oz. (43 g) size with the following nutritional facts:

Calories: 230 (120 from fat)
Total Fat: 13 grams
Saturated Fat: 9 grams
Cholesterol: 10 mg
Sodium: 40 mg
Total Carbohydrates: 25g (22 grams of simple sugars)
Fiber: 1 gram
Protein: 3 grams

One serving provides 8 percent of the USRDA for Calcium and 2 percent of the USRDA for Iron.

**Ingredients:**

Hershey Milk Chocolate Candy Bar is made using milk chocolate, which is made from sugar, milk, cocoa butter, chocolate, soy lecithin, vanillin, and artificial flavor.

**Final Thoughts:**

Hershey Milk **Chocolate Candy bars** have been around for a long time. Milton Hershey originally created the recipe for the modern- day Hershey Bar in 1900 and from his chocolate factory in Derry Church (now Hershey) Pennsylvania, Mr. Hershey slowly built what would become a world- famous chocolate empire.

Hershey Milk **Chocolate Candy Bars** are great for many reasons and chief among the reasons is the smooth, delicious milk chocolate itself. Unlike most other candy bars that usually include at least one other taste sensation, Hershey Milk Chocolate satisfies the consumer with the taste of chocolate; nothing more, nothing less. This makes the Hershey Milk Chocolate Bar one of the more basic foods and it proves that there is often greatness in simplicity.

Hershey Milk **Chocolate candy bars** offer a little bit less food by weight than other candy bars. This is due, of course, to the flat design. But this fact doesn't seem to matter to most consumers and in fact, many consider this a positive quality because the smaller size means fewer calories. Checking the numbers above, Hershey Milk **Chocolate Candy Bars** do have fewer calories than most other candy bars so consumers can eat a full bar without feeling too much guilt.

One other great quality of Hershey Milk **Chocolate candy bars** are their slightly better than average nutritional values. Chocolate is not a health food by any stretch, but the recipe for Hershey Milk **Chocolate candy bars** results in a piece of candy that offers 8 percent of the USRDA for calcium and 3 grams of protein. These are not incredible numbers, no. But considering that Hershey Milk **Chocolate candy bars** are an indulgence food, this is a pretty good level of nutrition.

Another quality that many people like about Hershey Milk **Chocolate candy bars** is the fact that the bars are divided into twelve small rectangular pieces. This design wasn't really

http://webcache.googleusercontent.com/search?q=cache:Kyb0R5DG1I4J:www.epinions.com/review/Hershy_s_Milk_Chocol
ate_Bar/content_419469561476+%22chocolate+candy+bars%22+%22break-off%22&cd=1&hl=en&ct=clnk&gl=us

12/26/2010 04:06:35 PM



Another quality that many people like about Hershey Milk **Chocolate candy bars** is the fact that the bars are divided into twelve small rectangular pieces. This design wasn't really necessary, and it doesn't affect the taste in any way. But it was a smart idea on the part of Hershey to manufacture the Hershey Milk Chocolate Candy Bar in this fashion because the small shapes make it easy to break the bar into smaller pieces, both for sharing and baking. With these rectangular indentions, it is easy to make a clean break.

Overall, the Hershey Milk Chocolate Candy Bar is a timeless classic that will continue to satisfy consumers far into the future. The delicious taste of pure milk chocolate, the smooth creamy texture, and the slightly better than average nutrition make the Hershey Milk Chocolate bar a product that has stood and will continue to stand the test of time. It's as American as apple pie, but several times tastier.

**Recommended:**
Yes

**Comments on this Review**

▸ Read all comments (3)
▸ Write your own comment

<< Return to top
<< Back to All Reviews

Subscribe to More Reviews on Food and Drink
Get the RSS Feed: 🔶 - Add to My Yahoo! MY YAHOO! - Add to Google Homepage: ➕ Google™

Subscribe to Bryan_Carey's Reviews:
Get the RSS Feed: 🔶 - Add to My Yahoo! MY YAHOO! - Add to Google Homepage: ➕ Google™

Help | Member Center | Message Boards | Site Rules | User Agreement | Privacy Policy | Site Index | Topic Index
About Epinions | Careers | Contact Epinions | Advertising

Epinions | Shopping.com | Rent.com | Free Classifieds | Price Comparison UK

☑ Shopping.com Network

© 1999-2010 Shopping.com, Inc. Trademark Notice

Epinions.com periodically updates pricing and product information from third-party sources,
so some information may be slightly out-of-date. You should confirm all information before relying on it.

http://www.godiva.com/product/large-31-cacao-milk-chocolate-crispy-crunch-holida/id/2505.gdv?SE_Section=2&keyword=scored          12/28/2010 04:16:43 PM



118961

http://www.godiva.com/product/large-31-cacao-milk-chocolate-crispy-crunch-holida/id/2505.gdv?SE_Section=2&keyword=scored    12/28/2010 04:16:43 PM



http://webcache.googleusercontent.com/search?q=cache:4W0oEqabW_gJ:www.reviewstream.com/reviews/%3Fp%3D131859+%22chocolate+candy+bars%22+%22break+off%22&cd=6&hl=en&ct=clnk&gl=us          12/28/2010 04:19:24 PM



This is Google's cache of http://www.reviewstream.com/reviews/?p=131859. It is a snapshot of the page as it appeared on Dec 16, 2010 10:12:14 GMT. The current page could have changed in the meantime. Learn more

These search terms are highlighted: chocolate candy bars break off                                                                                                  Text-only version

ReviewStream.com

Review > Food > Hershey's Milk Chocolate Snack Size Bars 10.78 ounce packages

**Review**    Related    Questions/Answers    Your Review

## Hershey's Milk Chocolate Snack Size Bars 10.78 ounce packages

Item: **Hershey's Milk Chocolate Snack Size Bars 10.78 ounce packages**
Location:
by Orrymain

**Ads by Google**    Chocolate 70 Chocolate    Chocolate Gifts    Candy Wrapper    Bar Wrappers

Hershey's Milk Chocolate Snack Size Bars - 10.78 ounce package is a combination of goodness and despair.

The goodness comes from the delight and joy of eating milk chocolate of quality. The despair comes with the knowledge that these bars have not only shrunk but have increased in price.

For Halloween, I purchased two packages, on sale, at a price of two for six dollars, or three dollars each. Now, yes, I'm sure that somewhere around town there was a better price, but I didn't want to spend the time and gas necessary to find it.

There was a time not long ago when you could find these prices at two for five dollars. That's a deal I haven't seen for a while now. Part of it is the high cost of cocoa. Hershey's has opted to keep the magic of their milk chocolate by using the real thing, and I agree with that. It just means you have to pay a lot for it anymore.

They really should do the environment a favor and use less packaging. They aren't fooling us about the size of the bars or how many are in a package. After all, a look at the nutrition facts pretty much tells the story for anyone who can't figure it out with a mere look.

These snack size bars are slender sticks of milk chocolate that are each divided into four smaller sections. This means you can **break off** one tiny piece, or a section of two, of, for the big biters and gulpers, do it at three. There's no denying the taste: it's excellent, it's authentic, and it's milk chocolate that is delightful to the taste.

If only the price could be as wonderful.

Rating: 8

We're buying consumer reviews.
Current review rate is $ 2.50
read more

WRITE REVIEW    READ REVIEW

Search Reviews

Current review category :
Food - 8634 reviews

More categories :
Airlines (1210)
Art (235)
Baby care (1865)
Books (6330)
Business (1016)
Cameras (1209)
Car rental (156)
Cars (1307)
Casino (863)
Cellular phones (2691)
Cellular services (671)
Clothes (1340)
Computers (453)
Cosmetics (15493)
Cruises/Ferries (209)
Education (747)
Electronics (5189)

http://webcache.googleusercontent.com/search?q=cache:4W0oEqabW_gJ:www.reviewstream.com/reviews/%3Fp%3D131859+%22chocolate+candy+bars%22+%22break+off%22&cd=6&hl=en&ct=clnk&gl=us          12/28/2010 04:19:24 PM



http://webcache.googleusercontent.com/search?q=cache:4W0sEqabW_gJ:www.reviewstream.com/reviews/%3Fp%3D131859+%
22chocolate+candy+bars%22+%22break+off%22&cd=6&hl=en&ct=clnk&gl=us          12/28/2010 04:19:24 PM

f  Facebook social plugin

*Related reviews :*

**Hershey's Milk Chocolate Pack A Snack**
Hershey's actually offers several different Pack A Snack varieties, but the one I'm reviewing today is the Hershey's Milk Chocolate Pack A Snack. These packages are promoted as a product that gives the consumer a delicious snack at work, at play, and at lunch. For me, though, ...

**Hershey's Full Size Variety Pack: 30 count candy bars**
I love chocolate. I love candy. I love it all probably too much, but I've grown up with a nice chocolate thumb. However, an individual candy bar is sky high in price now, and my love of the rich chocolate anything has to be tempered by ...

**Nestle Chocolate Fun Size packages - 110 count**
In these difficult economic times, I don't really buy much candy even though I'm a devout chocoholic, but I do invest from time to time. When those times occur, I have to try to find the best deals. This usually means that I end up purchasing candies ...

**Eskimo Pie Snack Size Ice Cream Bars**
Eskimo Pies have been around forever, well, since 1921 anyway, and that's longer than I've been on this Earth, so it's like forever to me. Recently, they came out with a new snack size product. Eskimo Pie Snack Size Ice Cream Bars is a box of twelve individual bars. ...

**Tesco 4 Nutty Nougat Caramel Milk Chocolate Bars**
I think these are fab little snack bars from Tesco's own range. I have tried several of their own brand confectionary that are direct rip-offs of well-known brands of chocolate bars, like Mars bar for instance. This one is a carbon-copy of a Snickers bar, although they ...

**Hershey's Fast Break Bar**
I admit it--I am a chocoholic.I really like to eat candy bars as a snack.I love all kinds of chocolate bars.One excellent one you should definitely try is hershey's fast Break bar.I often get them at safeway when ever they have a sale on individual candy bars,and they are ...

**Hershey's Milk Chocolate Candy Bar**
Sometimes I don't like change, and I sure hope the Hershey's Milk Chocolate Candy Bar remains unchanged. I say this because in Fall 2008, the Hershey Company began replacing the very expensive cocoa butter which gives their chocolates that taste we all love and crave with vegetable oil. ...

**Hersheys 100 calorie pretzel bars**
Hershey's 100 calorie pretzel bars were something that I bought the last time I went on a shopping trip to Costco. These bars are unique and flavorful, and the best thing about them is the fact that they are only 100 calories. The bars are small, but ...

**Kinders Milk Chocolate**
My mother's best friend is from Bosnia. She purchased my mother some Kinders milk **chocolate candy bars** from a store that sales Bosnian foods. I will first say that my mother loves the chocolate bars. i have another opinion on them though. i will say that the candy bars ...

**Hershey's Sticks**
I recently found Hershey's sticks in the candy isle at the grocery style. I was looking for something with not too many carbohydrates that I could incorporate into my day without doing too much damage. I know I shouldn't eat any sweet snacks, but every now and then I ...

The review was published as its written by reviewer in November, 2010. The reviewer certified that no compensation of any kind was received from the reviewed item producer, trademark owner or any other institution, related with the reviewed item. The site is not responsible for the mistakes made. 2731113195904300432311a113/11.3.10

Your use of this website constitutes acceptance of the Terms & Conditions
Suggestions | Privacy Policy

http://www.google.com/#hl=en&expdis=17259&sugexp=ldymls&xhr=t&q=%22chocolate+candy+bars%22+%22scored%22&cp=25&pf=p&sclient=psy&aq=f&aqi=&aql=&oq=%22chocolate+candy+bars%22+%22scored%22&gs_rfai=&pbx=1&fp=c341562a61b59af3
12/28/2010 04:25:13 PM



http://www.google.com/#hl=en&expids=17259&sugexp=ldymls&xhr=t&q=%22chocolate+candy+bars%22+%22scored%22&cp=25&pf=p&sclient=psy&aq=f&aqi=&aql=&oq=%22chocolate+candy+bars%22+%22scored%22&gs_rfai=&pbx=1&fp=c341562a61b59af3
12/28/2010 04:25:13 PM

... these natural Cookie Bars contain NU chocolate the bars are "scored" ... **Chocolate Candy Bars** - Find the Right Holiday Gifts for Everyone on Your List. ...
www.bizrate.com/carob-candy-bars/?sc=1 - Cached

Forget Disgusting. What's the BEST candy? [Archive] - Straight ...
52 posts - 47 authors - Last post: Oct 18, 2001
~~those **chocolate candy bars** that kids sell for the school .... I'm not really into chocolate that much, but I just **scored** a bag of my ...
boards.straightdope.com/sdmb/archive/index.php/t-93737.html - Cached

Candy Bar Brownies Recipe #46597 @CDKitchen
Break **chocolate candy bars** along **scored** lines. Place pieces immediately on hot brownies. Cover pan with aluminum foil for 3 to 5 minutes or until chocolate ...
www.cdkitchen.com/recipes/recs/1362/Candy-Bar-Brownies75813.shtml

[CAKE-RECIPE] Candy Bar Brownies
Dec 7, 2005 ... Break **chocolate candy bars** along **scored** lines. Place pieces immediately on hot brownies. Cover pan with aluminum foil for 3 to 5 minutes or ...
www.mail-archive.com/cake-recipe@yahoogroups.com/msg00473.html

Hershey Bar with Dark Chocolate - Hershey Special Chocolate ...
Aug 12, 2010... this one is also **scored** so that you can easily break off small ... The dark **chocolate candy bars** that I have enjoyed in the past have a ...
www.epinions.com/review/...1.../content_440890003076 - Cached

Goooooooooogle ▶

1   2   3   4   5   6   7   8   9   10   **Next**

Search Help          Give us feedback

Google Home    Advertising Programs    Business Solutions    Privacy    About Google

Premium Gourmet Chocolate
Gourmet Chocolates to Die For.
100% Satisfaction Guaranteed!
LakeChamplainChocolates.com

Personalized Hershey Bars
The Perfect Favor for All Occasions
Wrapped Hershey Bars from $1.30 ea
www.Babybar.com

Delicious Chocolate Candy
Shop For Your Favorite Candy Bars
at Amazing Prices. Fast Shipping.
Candy.com is rated ★★★★★
Google Checkout
www.Candy.com

See your ad here »

118967

http://webcache.googleusercontent.com/search?q=cache:Zc7YLZNP-KMJ:www.copps.com/FeaturedFood/Halloween/Hallowe en_Recipes_Detail_S.las%3FR%3D4162%26L%3D1%26-token.S%3D42F T9R944091da8P7410547FJHLN6L5201F13F%257C68104%257C1 011240953%257C%257C%257C+%22chocolate+candy+bars%22+%22scored%22&cd=3&hl=en&ct=clnk&gl=us    12/28/2010 04:29:30 PM

This is Google's cache of http://www.copps.com/FeaturedFood/Halloween/Halloween_Recipes_Detail_S.las?R=4162&L=1&-token.S=42FT9R944091da8P7410547FJHLN6L5201F13F%7C68104% 7C1011240953%7C%7C%7C. It is a snapshot of the page as it appeared on Dec 16, 2010 08:27:18 GMT. The current page could have changed in the meantime. Learn more

These search terms are highlighted: chocolate candy bars scored                                    Text-only version



http://webcache.googleusercontent.com/search?q=cache:Zc7YLZNP-KMJ:www.copps.com/FeaturedFood/Halloween/Hallowe
en_Recipes_Detail_S.las%3FR%3D4162%26L%3D1%26-token.S%3D42FT9R944091da8P7410547FJHLN6L5201F13F%257C68104%257C1
011240953%257C%257C%257C+%22chocolate+candy+bars%22+%22scored%22&cd=3&hl=en&ct=clnk&gl=us      12/28/2010 04:29:30 PM

## Ingredients

| | | |
|---|---|---|
| 1 | pkg. | brownie mix plus ingredients to prepare mix |
| 1 | cup | chocolate fudge frosting |
| 2 | | (1.55 oz.) milk **chocolate candy bars** |
| | | White icing |
| 3/4 | cup | flaked coconut, tinted green |
| 12 | | pumpkin candies |

## Directions:

Preheat oven to 350 degrees. Line a 13x9 inch pan with foil, extending foil beyond edges of pan; grease foil.

Prepare brownie mix according to package directions. Spread in prepared pan. Bake 30-35 minutes. Do not over bake. Cool in pan on wire rack.

Using foil as handles, remove brownies from pan; peel off foil. Frost with chocolate frosting.

Cut brownies into twelve 4x2 inch bars. Break chocolate bars into pieces along **scored** lines. Using white icing, write R.I.P. on chocolate pieces. Let stand until set.

Press 1 chocolate piece into end of each brownie for tombstone. Sprinkle tinted coconut on each brownie for grass. Place 1 pumpkin candy on coconut.

Be the first to comment on this recipe!

Add a Comment Login

**Halloween recipe list**



Home  Roundys Rewards  Employment  Weekly Ad  Recipes  Shopping List  Store Locator
Privacy  About Us  Product Recall  Roundy's Own Brand  Register  Login  Contact Us

powered by: Webstop - Grocery Website Specialists

FWS 11

118969

http://webcache.googleusercontent.com/search?q=cache:lw6DTWTtBU:www.bizrate.com/carob-candy-bars/%3Fsc%3D1+%22chocolate+candy+bars%22+%22scored%22&cd=6&hl=en&ct=clnk&gl=us        12/28/2010 04:30:54 PM



http://webcache.googleusercontent.com/search?q=cache:lw6DTWTfBU:www.bizrate.com/carob-candy-bars/%3Fsc%3D1+%22chocolate+candy+bars%22+%22scored%22&cd=6&hl=en&ct=clnk&gl=us          12/28/2010 04:30:54 PM



related searches

kudos candy bars hersey candy bars goldies
premium carob bars carob bars bars pack
premium carob bars pack carob bars pack 12
giant sized candy bars goldies carob bars carob
bars 12 treasures candy bars miniature candy
bars amazing candy bars hollywood candy bars
s premium carob bars pack s carob bars bars
pack good news candy bars 36ct box candy bars
butterfingers premium carob bars bars pack s
carob bars pack stevia candy bars rocky road
candy bars

---

Nutrition Bar - Peanut Butter, 24 Units / 1.2 oz

Amazon Marketplace

$16.29

go to store

Find Other **Home**

More About **Amazon Marketplace**

Tiger's Milk Peanut Butter Bar...1.2 oz. (35g) each bar.-America's Original Nutrition Bar-Carob Coated-Fortified with Vitamins and Minerals ... more

---

Pemmican Bar - Carob Cocoa, 12 Units / 3.7 gram

Amazon Marketplace

$15.49

go to store

Find Other **Home**

More About **Amazon Marketplace**

This bar demonstrates the difference between a healthy candy bar and a wholesome energy food. Designed to be a meal, a Bear Valley Pemmican is packed with all the important stuff to make it nutritionally balanced. Bear Valley was recently rated the... ... more

---

Tigers Milk Nutrition Bar 24/1.23 oz Peanut Butter Crunch

Building Brawn

$11.95

go to store

Find Other **Home**

More About **Building Brawn**

Introduced in the 1960s, Tiger's Milk® is known as America's first nutrition bar Introduced in the 1960s, Tiger's Milk® is known as America's first nutrition bar. These great-tasting candy bar alternatives come in four original carob coated flavors (... ... more

---

Tigers Milk Nutrition Bar 24/1.23 oz Peanut Butter & Honey

Building Brawn

$11.95

go to store

http://webcache.googleusercontent.com/search?q=cache:Iw6DTWTtBU:www.bizrate.com/carob-candy-bars/%3Fsc%3D1+%22chocolate+candy+bars%22+%22scored%22&cd=6&hl=en&ct=clnk&gl=us     12/28/2010 04:30:54 PM

oz Peanut Butter & Honey

Find Other **Home**

More About **Building Brawn**

Introduced in the 1960s, Tiger's Milk# is known as
America's first nutrition bar Introduced in the 1960s,
Tiger's Milk# is known as America's first nutrition
bar. These great-tasting candy bar alternatives
come in four original carob coated flavors (... ...
more

| | | Building Brawn | $11.95 |
|---|---|---|---|
| | Tigers Milk Nutrition Bar 24/1.23 oz Peanut Butter | | go to store |

Find Other **Home**

More About **Building Brawn**

Introduced in the 1960s, Tiger's Milk# is known as
America's first nutrition bar Introduced in the 1960s,
Tiger's Milk# is known as America's first nutrition
bar. These great-tasting candy bar alternatives
come in four original carob coated flavors (... ...
more

| | | Building Brawn | $11.95 |
|---|---|---|---|
| | Tigers Milk Nutrition Bar 24/1.23 oz Protein Rich | | go to store |

Find Other **Home**

More About **Building Brawn**

Introduced in the 1960s, Tiger's Milk# is known as
America's first nutrition bar Introduced in the 1960s,
Tiger's Milk# is known as America's first nutrition
bar. These great-tasting candy bar alternatives
come in four original carob coated flavors (... ...
more

show 20 items

http://webcache.googleusercontent.com/search?q=cache:lw6DTWTtBU:www.bizrate.com/carob-candy-bars/%3Fsc%3D1+%
22chocolate+candy+bars%22+%22scored%22&cd=6&hl=en&ct=clnk&gl=us          12/28/2010 04:30:54 PM



http://webcache.googleusercontent.com/search?q=cache:Bx7VqdlPEC4J:www.epinions.com/review/Hershey_Special_Dark_Chocolate_Bars_1_45_Oz_36_Bars/content_440890003076+%22chocolate+candy+bars%22+%22scored%22&cd=10&hl=en&ct=clnk&gl=us        12/28/2010 04:32:37 PM



http://webcache.googleusercontent.com/search?q=cache:Bx7VqdlPEC4J:www.epinions.com/review/Hershey_Special_Dark_Chocolate_Bars_1_45_Oz_36_Bars/content_440890003076+%22chocolate+candy+bars%22+%22scored%22&cd=10&hl=en&ct=clnk&gl=us    12/28/2010 04:32:37 PM

**elzora's Full Review:** Hershey Special Dark Chocolate Bars 1.45 Oz 36 Bar...

We haven't had any candy bars around our home for weeks, because I am dieting and having a lot of success. I've lost 20 pounds so far, and have actually lost a lot of my desire for sugar.

Last night two friends came over to watch the Olympics with us, as they have just moved into a new home and have no cable TV yet and cannot get any signal without it to watch television. They brought over a pound cake, makings for nachos, and Hershey's Special Dark ==Chocolate candy bars==, and left one here when they went home.

**Description**

This is about the same size as the Hershey's milk chocolate candy bar, consisting of 1.45 ounces. The wrapper is the familiar dark brown, but the bottom portion is colored red. It says "SPECIAL DARK Mildly Sweet Chocolate", and there is a gold circle on the left that reads *natural source of flavanol antioxidants.*

Just like with the milk chocolate Hershey's bar, this one is also scored so that you can easily break off small sections of the candy bar

**Nutrition Facts**

This one bar contains 180 calories, and 110 of those are fat calories. The total fat is 12 grams, 8 of which are saturated fats, but there are none of the even unhealthier trans fats.

There are less than 5 mg of cholesterol, 15 mg of sodium, 25 grams of carbohydrates, 21 grams of sugar, and the good news is there is actually some fiber (3 grams) and protein (2 grams) included, so the candy bar does not consist entirely of empty calories.

**Ingredients**

Sugar, chocolate, cocoa butter, cocoa processed with alkali, milk fat, lactose (milk), soy lecithin, PGPR, emulsifier, vanillin, artificial flavor, milk.

**Taste**

To be quite honest, I have tasted better dark chocolate. I am not a huge fan of dark chocolate, my husband is, and I prefer milk chocolate even though dark chocolate is said to be better for you.

When I bite into the candy, it has an almost waxy consistency that I was a little put off by, and the taste didn't seem to be as much of the dark chocolate taste as I had hoped for. The candy bar says that it contains 45% cacao dark chocolate, which seems like a significant portion to me, but I have tasted more flavorful dark ==chocolate candy bars==.

There is a good amount of sweetness in this one as well, but if I'm going to eat dark chocolate, I want an even darker chocolate taste. The Hershey website describes this candy bar as being *a special blend of rich, delicious velvety dark chocolate that offers a mildly sweet taste that milk chocolate lovers are sure to cherish.*

The dark ==chocolate candy bars== that I have enjoyed in the past have a more bitter taste, and I don't think this one has enough of the bitterness for a dark chocolate candy bar. It's even a little too sweet in my opinion. It melts quite easily (the candy bar was melted so you could barely make out the score lines), so this is a softer chocolate.

When I want a dark chocolate candy bar, I want more of a bitterness kick and less sweetness, and this one just doesn't give that to me. It doesn't have the smooth taste of the Hershey's milk ==chocolate candy bars==, and is too waxy in it's consistency. I only rate this one 3 out of 5 stars.

TOP REVIEWER in
Pets, Home and Garden, Wellness & Beauty

POPULAR AUTHOR - Top 100

**Member:** Sue
**Location:** Alaska
**Reviews written:** 1945
**Trusted by:** 457 members
**About Me:**
If Mama ain't happy, ain't NOBODY happy!

> View all reviews by elzora

> View elzora's profile

http://webcache.googleusercontent.com/search?q=cache:Bx7VqdlPEC4J:www.epinions.com/review/Hershey_Special_Dark
_Chocolate_Bars_1_45_Oz_36_Bars/content_440890003076+%22chocolate+candy+bars%22+%22scored%22&cd=10&hl=en&ct=cl
nk&gl=us     12/28/2010 04:32:37 PM



**Recommended:**
No

| Comments on this Review |
| --- |

> Read all comments (3)
> Write your own comment

<< Return to top
<< Back to All Reviews

| Related Search Terms |
| --- |

glycemic index hersheys special dark    dark chocolate harsh

Subscribe to More Reviews on Food and Drink
Get the RSS Feed: [RSS] - Add to My Yahoo! [MY YAHOO!] - Add to Google Homepage: [Google]

Subscribe to elzora's Reviews:
Get the RSS Feed: [RSS] - Add to My Yahoo! [MY YAHOO!] - Add to Google Homepage: [Google]

Help | Member Center | Message Boards | Site Rules | User Agreement | Privacy Policy | Site Index | Topic Index
About Epinions | Careers | Contact Epinions | Advertising

Epinions | Shopping.com | Rent.com | Free Classifieds | Price Comparison UK

Shopping.com Network

© 1999-2010 Shopping.com, Inc.   Trademark Notice

Epinions.com periodically updates pricing and product information from third-party sources,
so some information may be slightly out-of-date. You should confirm all information before relying on it.



http://www.bizrate.com/candy/oid1822216008.html          12/28/2010 04:39:07 PM



http://www.bizrate.com/candy/oid1822216008.html    12/28/2010 04:39:07 PM



Asher's. Each bar is scored so it's easy to **break** ...    not included

5    Eiffel Chewy Bon Bons 1.25-Ounce Packs: 24CT Box
Succulent fruit flavors burst from these yummy chewy bon bon candy balls. Firm and ...
CandyWarehouse.com
This store is rated:    $24.00    tax & shipping not included    GO TO STORE ▶

6    Biermann Marzipan Fruit Candy: 18-Piece Gift Box
Celebrate the holidays in style with these gourmet marzipan fruit packs imported from ...
CandyWarehouse.com
This store is rated:    $15.00    tax & shipping not included    GO TO STORE ▶

7    Ribbon Window Candy Boxes, 1/2 lb.
Simple, yet elegant, design suitable for use year round. Oval window to display candies ...
Kitchen Krafts
This store is rated:    $5.25    tax & shipping not included    GO TO STORE ▶

8    C. Howards Violet Mints 24ct Box
An old time classic. Smells and tastes just like violets. **Box** of 24
The Candy City
This store is not yet rated.
Why?    $13.49    tax & shipping not included    GO TO STORE ▶

9    Lindt Lindor Truffles - Milk Chocolate, Individually wrapped, 120 count display ...
Lindor Truffles made by Lindt. A delicious imported Swiss milk **chocolate** with a smooth ...
CandyDirect.com
This store is rated:    $54.35    tax & shipping not included    GO TO STORE ▶

10    Fluffy Stuff Cotton Candy Pops: 48ct
The lollipops for the kid in all of us. Cotton candy flavored suckers will wake **up** ...
ACandyStore.com
This store is rated:    $9.99    tax & shipping not included    GO TO STORE ▶

11    Ferrero Rocher SPECIAL 40 CT BOX
Ferrero Rocher. 48ct **box** in decorative plastic container.
The Candy City
This store is not yet rated.
Why?    $16.99    tax & shipping not included    GO TO STORE ▶

12    Watermelon Buds Box: 24 Count
Watermelon Buds **Box**: 24 Count Watermelon flavored hard candies! Each **box** weighs ...
Candy.com
This store is rated:    $81.98    tax & shipping not included    GO TO STORE ▶

http://www.bizrate.com/candy/oid1822216008.html      12/28/2010 04:39:07 PM

| | | | | | |
|---|---|---|---|---|---|
| 13 | | **Twizzlers sweet & sour filled twist 1.9oz - 18 ct box** Tangy inside! Assorted Twizzlers sweet & sour filled twists filled with either citrus ... | Groovy Candies This store is not yet rated. Why? | $16.95 tax & shipping not included | GO TO STORE ▶ |
| 14 | | **Marzipan Fruit Box: 24 Count** Marzipan Fruit **Box**: 24 Count An assortment of fruit flavored marzipan in a sturdy display ... | Candy.com This store is rated: | $234.89 tax & shipping not included | GO TO STORE ▶ |
| 15 | | **Nestle Butterfingers Concession Candy, 3.5 Oz/Box, 12 ea** Nestle Butterfingers Concession Candy is a unique combination of crispy, crunchy, ... | AmericaRx.com This store is rated: | $13.59 tax & shipping not included | GO TO STORE ▶ |
| 16 | | **Ribbon Assorted Box - 20ct** Ribbon Assorted **Box**: 20ct | ACandyStore.com This store is rated: | $97.99 tax & shipping not included | GO TO STORE ▶ |
| 17 | | **Perugina Baci - Dark Chocolate & Hazelnut, 96 count display box** Perugina baci. Rich **dark chocolate** with whole and chopped hazelnuts in a beautiful silver ... | CandyDirect.com This store is rated: | $74.95 tax & shipping not included | GO TO STORE ▶ |
| 18 | | **Tootsie Roll Pops** Tootsie Roll Candy Pops with chewy Tootsie Roll center. Assorted flavors | Quill This store is rated: | $15.79 tax & shipping not included | GO TO STORE ▶ |
| 19 | | **Jolly Rancher Twist Watermelon - 160 ct box** Individually twist-wrapped small watermelon flavor hard candy. | Groovy Candies This store is not yet rated. Why? | $7.95 tax & shipping not included | GO TO STORE ▶ |
| 20 | | **Candy Cigarettes (24 Ct)** An old time classic.  Keep the environment clean and stay healthy with candy ... | CandyCentral This store is not yet rated. | $3.61 tax & shipping not included | GO TO STORE ▶ |

118980

http://www.bizrate.com/candy/oid1822216008.html        12/28/2010 04:39:07 PM



http://webcache.googleusercontent.com/search?q=cache:2NzujiX0xOYJ:www.farawayfoods.com/baking.html+%22chocolat
e+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us          12/28/2010 04:44:37 PM

This is Google's cache of http://www.farawayfoods.com/baking.html. It is a snapshot of the page as it appeared on Dec 12, 2010 21:41:29 GMT. The current page could have changed in the meantime. Learn more

These search terms are highlighted: chocolate candy bars scored

home        Gifts & Information        Privacy Policy        Email Us!        Site Map        View Cart

# Far Away Foods

[ Search! ]

McAfee SECURE
TESTED DAILY   28-DEC

Home > Baking Ingredients

**New Items**

**Seasonal Favorites**

**Appetizers and Snacks**

**Baking Ingredients**

**Baking Mixes**

**Beverages**

**Condiments**

**Dressings**

**Fruits**

**Hot Sauces**

**Ingredients**

**Jams and Spreads**

**Marinades and Rubs**

**Meats**

**Mustards**

**Oils**

**Pastas**

**Rices and Grains**

## Baking Ingredients

### Solo Marshmallow Creme

Solo Brand Marshmallow Creme. This is an ideal cream for baking. It is not the fluffy marshmallow stuff, but rather Solo Marshmallow Cream is used in baking.

7 ounces

**$2.50 each**
**$2.20 each with 6 or more**

Quantity: [1]

[ Add to Cart ]

### Italbrand Superfine 00 Wheat Flour

Italbrand's incredible Superfine 00 Wheat Flour from Italy. Superfine flour worth it's weight in gold.

Product of Italy. 500 grams (17.6 ounces)

**$2.50 each**
**$2.30 each with 24 or more**

Quantity: [12]

http://webcache.googleusercontent.com/search?q=cache:2Nzuji0lxOYJ:www.farawayfoods.com/baking.html+%22chocolat e+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us      12/28/2010 04:44:37 PM



http://webcache.googleusercontent.com/search?q=cache:2Nzuji0IxOYJ:www.farawayfoods.com/baking.html+%22chocolat e+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us     12/28/2010 04:44:37 PM



**India Tree Sparkling Sugars, 3.5 oz.**

India Tree Sparkling Sugars are decorative sugars to sparkle up all you baking. Great for the Holidays, India Tree Sparkling Sugars dresses up your cakes, cookies and cupcakes.

3.5 ounces

**$3.45 each**
**$3.25 each with 12 or more**
Selection: [White ▼]
Quantity: [6]

[Add to Cart]



**Lyle's Golden Syrup**

For cooking and baking. Great on pancakes and waffles, too! Click for our great **European Butterscotch Sauce recipe.**

Product of England. 11 ounces (325 milliliters)

**$6.00 each**
**$4.70 each with 6 or more**
Quantity: [1]

[Add to Cart]



**Goldrush Sourdough Bread Starter**

With Goldrush Sourdough Starter and the included recipes, it's easy to create the tangy flavor and hearty aroma of sourdough bread anywhere in the world. It works in bread machines, too.

14 grams (0.5 ounces)

**$3.50 each**
**$3.15 each with 6 or more**

http://webcache.googleusercontent.com/search?q=cache:2Nzuji0XxOYJ:www.farawayfoods.com/baking.html+%22chocolat
e+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us      12/26/2010 04:44:37 PM

**$3.15 each with 6 or more**

Quantity: 1

[ Add to Cart ]

**Bob's Red Mill Flours**

Bob's Red Mill Flours are known in the Pacific North West as
a national leader in stone milled flours and meals. Bob's Red
Mill offers a wide variety of whole grains, with a motto "Whole
grain foods for every meal of the day".

Each bag 20 - 26 ounces (565 - 735 grams)

**$3.75 each**
**$3.50 each with 8 or more**

Selection: [ Barley Flour ▾ ]

Quantity: 4

[ Add to Cart ]

**Nellie & Joe's Key West Lime Juice**

The distinctive flavor of Nellie & Joe's Famous Key West Lime
Juice has long been the favorite choice to make the best Key
Lime Pie. But it's also an easy and delicious marinade for
seafood, meat, and poultry, an ideal bar mix for tropical
cocktails, and perfect for any recipe that calls for freshly
squeezed lemon or lime.

16 ounces (473 milliliters)

**$4.00 each**
**$3.40 each with 6 or more**

Quantity: 1

[ Add to Cart ]

118985

http://webcache.googleusercontent.com/search?q=cache:2Nzuji0lxOYJ:www.farawayfoods.com/baking.html+%22chocolate+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us        12/28/2010 04:44:37 PM



**Alter Eco Organic Unrefined Ground Cane Sugar**

Unrefined Ground Cane Sugar is naturally moist and has a rich taste, with hints of vanilla. The sugar crystals are enveloped in a thick coat of molasses and are loaded with the richness of unrefined nutrients and minerals. This Fair Trade product contains up to fifty times more minerals than a refined sugar, white or brown.

16 ounces (454 grams)

**$5.50 each**
**$5.00 each with 6 or more**

Quantity: [ 1 ]

[ Add to Cart ]



**Scharffen Berger Baking Chocolate**

Available in semisweet, Scharffen Berger's Home Chef Chocolate Bars are pure dark chocolate, **scored** for easy measuring

275 grams (9.7 ounces)

**$6.50 each**
**$5.00 each with 3 or more**

Selection: [ Semisweet Fine Dark Chocolate (62% cacao) ▾ ]

Quantity: [ 1 ]

[ Add to Cart ]



**Ibarra Mexican Chocolate**

Ibarra Mexican chocolate is used in the traditional Mexican kitchen to enhance recipes, including the dish "Mole". The most traditional and best loved way to use this product is in making a cup of delicious hot chocolate.

Product of Mexico. 18.6 ounces (527 grams)

118986

http://webcache.googleusercontent.com/search?q=cache:2Nzuji0IxOYJ:www.farawayfoods.com/baking.html+%22chocolate+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us    12/28/2010 04:44:37 PM

$4.25 each
$3.35 each with 6 or more
Quantity: 1
Add to Cart

**Nielsen-Massey Madagascar Bourbon Pure Vanilla Powder**

Madagascar Bourbon Pure Vanilla Powder by Nielsen-Massey is a free-flowing sugar and alcohol-free, dry product which may be used as a replacement for pure vanilla in any recipe.

2.5 ounces (70 grams)

$14.00 each
$13.30 each with 3 or more
Quantity: 1
Add to Cart

**Nielsen-Massey Madagascar Bourbon Pure Vanilla Extract**

Nielsen-Massey's Madagascar Bourbon Pure Vanilla Extract has a creamy, sweet, velvety flavor that blends beautifully with a variety of foods. Nielson Massey starts with the finest vanilla beans available, hand-picked for perfection. Next, an exclusive cold extraction process slowly and gently draws the delicate and distinctive flavor from the vanilla beans. The result is the finest pure vanilla in the world, perfect for the home cook or the discriminating chef.

4 ounces

$12.00 each
$10.90 each with 3 or more
Quantity: 1
Add to Cart

118987

http://webcache.googleusercontent.com/search?q=cache:2Nzuji0IxOYJ:www.farawayfoods.com/baking.html+%22chocolate+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us        12/28/2010 04:44:37 PM



**Nielsen-Massey Organic Madagascar Bourbon Pure Vanilla Extract**

Nielsen-Massey Organic Madagascar Bourbon Pure Vanilla Extract is made from the highest quality certified organic vanilla beans and pure, certified organic alcohol. This product is made using Nielsen-Massey's unique cold extraction process, a procedure which slowly and gently extracts the maximum flavor from the vanilla beans without heat damaging the delicate flavors. The result is an organic vanilla extract with the creamy, sweet, smooth, mellow vanilla flavor that customers worldwide have come to expect from Nielsen-Massey.

4 ounces (118 milliliters)

$18.50 each
$17.00 each with 3 or more
Quantity: [1]

[Add to Cart]



**Nielsen-Massey Madagascar Bourbon Pure Vanilla Bean Paste**

Nielsen-Massey Madagascar Bourbon Pure Vanilla Bean Paste is a convenient replacement for vanilla beans in any recipe. Because it contains vanilla bean seeds, the paste adds an all natural, gourmet appearance to any recipe.

4 ounces (118 milliliters)

$12.50 each
$11.50 each with 3 or more
Quantity: [1]

[Add to Cart]

Nielsen-Massey Pure Tahitian Vanilla Extract

118988

http://webcache.googleusercontent.com/search?q=cache:2Nzuji0lxOYJ:www.farawayfoods.com/baking.html+%22chocolat e+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us     12/28/2010 04:44:37 PM



**Nielsen-Massey Pure Tahitian Vanilla Extract**

Tahitian vanilla beans are known for their aromatic, fruity, cherry, anisic-like flavor profile.
Tahitian Pure Vanilla is especially symbiotic with fruit-based foods, such as fruited yogurt, sorbets, and fruit toppings.

4 ounces (118 milliliters)

$20.90 each
$19.10 each with 3 or more

Quantity: 1

[Add to Cart]



**Nielsen-Massey Madagascar Bourbon Vanilla Beans**

Nirelsen-Massey Vanilla Beans -- prime gourmet-quality vanilla beans from the finest curers in the world.

2 pods

$9.10 each
$7.50 each with 3 or more

Quantity: 1

[Add to Cart]



**Odense Marzipan**

Marzipan by Odense. This Danish Marzipan is know for it's exquisite flavor and texture.

Product of Denmark

7 ounces (198 grams)

$6.00 each

http://webcache.googleusercontent.com/search?q=cache:2Nzuji0IxOYJ:www.farawayfoods.com/baking.html+%22chocolat
e+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us    12/28/2010 04:44:37 PM

$6.00 each
$5.00 each with 6 or more
Quantity: 1
Add to Cart



**Kirkland Marcona Almonds**

Treasured by the Spanish, Marcona Almonds originate from the Mediterranean coast of Spain. These large, flat, heart-shaped nuts have a crunchy texture and a naturally sweet, delicate flavor. Roasted and seasoned with sea salt.

16 ounces (454 grams)

$12.50 each
$11.30 each with 3 or more
Quantity: 1
Add to Cart



**Rustichella d'Abruzzo Farro Flour**

Farro Flour from Rustichella d'Abruzzo. Farro is one of the oldest grains in the world. Baked products made with Farro Flour have a deep, earthy and delicious flavor. Great for breads, cakes and muffins. Farro is also extremely healthy.

Product of Italy. 500 grams (17.6 ounces)

$9.00 each
$7.00 each with 6 or more
Quantity: 1
Add to Cart

**Rustichella d'Abruzzo Whole Grain Farro**

http://webcache.googleusercontent.com/search?q=cache:2Nzuji0lxOYJ:www.farawayfoods.com/baking.html+%22chocolat
e+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us        12/28/2010 04:44:37 PM



**Rustichella d'Abruzzo Whole Grain Farro**

Farro is an unhybridized ancestor of modern wheat. It has a hearty, nutty flavor and has been grown throughout Europe for centuries. Today, with the renewed interest in traditional and organic foods, farro is featured on the menus of many of the best restaurants in Italy and is rapidly gaining popularity in the United States.

Product of Tuscany, Italy. 500 grams (1.1 pounds)

$11.00 each
$9.00 each with 3 or more
Quantity: 1

Add to Cart



**Gooseberries (Oregon Fruit Products)**

Oregon Gooseberries are supplied by local growers, which means you'll enjoy these gooseberries at their peak of ripeness and freshness. Grown in one of the best geographical areas in the world for producing these preferred hand-harvested fruits, the gooseberries are packed only after they are vine ripened, so you can be assured you're getting the most flavorful fruit in a can.

15 ounces (425 grams)

$6.80 each
Quantity: 1

Add to Cart



**Certo Liquid Fruit Pectin by Kraft**

Making homemade jams and jellies is a snap with Certo Fruit Pectin. Delicious recipes with quick and easy directions are included.
6 ounces (177 milliliters)

$4.70 each
$4.50 each with 6 or more

http://webcache.googleusercontent.com/search?q=cache:2NzujiJXIxOYJ:www.farawayfoods.com/baking.html+%22chocolat e+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us    12/28/2010 04:44:37 PM

$4.50 each with 6 or more
Quantity: [1]

[Add to Cart]

**La Perruche Rough Cut Sugar Cubes**

Pure cane rough cut sugar cubes from La Perruche, available in brown sugar and white sugar varieties.

500 grams (17.6 ounces)

$12.00 each
$9.90 each with 8 or more
Selection: [Brown Sugar Cubes ▼]
Quantity: [1]

[Add to Cart]



**Ghirardelli Premium Semi-Sweet Chocolate Chips**

Ghirardelli's Premium Semi-Sweet Chocolate Chips are created from a precise blend of deep-roasted cocoa beans and hand-selected ingredients. Their rich, creamy, signature chocolate taste will make your desserts the ultimate chocolate indulgence.

11.5 ounces (326 grams)

$5.40 each
$4.60 each with 6 or more
Selection: [Semi-Sweet ▼]
Quantity: [1]

[Add to Cart]

http://webcache.googleusercontent.com/search?q=cache.2Nzuji0xOYJ:www.farawayfoods.com/baking.html+%22chocolat e+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us      12/28/2010 04:44:37 PM



**Musselman's Red Spiced Apple Rings**

What used to be called Musselman's Spiced Crab Apples is now called Musselman's Red Spiced Apple Rings. Same great product, same great flavor. Quality you can taste, Musselman's Red Spiced Apple Rings!

16 ounces (454 grams)

$5.90 each
$4.60 each with 6 or more
Quantity: 1

Add to Cart



**African Baking Sugars (India Tree)**

These unrefined brown sugars come from the island of Mauritius, off the coast of Africa. The sugar milled on Mauritius retains much of the unique flavor of the cane, which grows there on rich volcanic ash.

$5.60 each
$4.80 each with 6 or more
Selection: Dark Muscovado
Quantity: 1

Add to Cart



**India Tree Caster Sugar**

Caster or Superfine Sugar is the best sugar for cakes, cookies, meringues, custards, mousses, and sorbets. Its fine size makes it heavenly over fresh fruit. And because it dissolves quickly, it is also perfect for iced drinks.

1 pound (453 grams)

$6.10 each
$5.20 each with 6 or more
Quantity: 1

http://webcache.googleusercontent.com/search?q=cache:2Nzuji0IxOYJ:www.farawayfoods.com/baking.html+%22chocolat e+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us    12/28/2010 04:44:37 PM

Add to Cart



### Ghirardelli Premium Chocolate Candy Bars

Ghirardelli Chocolate's rich, legendary signature taste is created by a precise blend of deep-roasted cocoa beans and hand-selected ingredients. You'll savor every bite!

3 - 4 ounces

**$3.50 each**
**$2.70 each with 6 or more**
Selection: 60% Cacao Dark Chocolate
Quantity: 1

Add to Cart



### Odense Pure Almond Paste

Pure Almond Paste by Odense is ideal for baking. Almond paste is often mistaken for marzipan. Odense Almond Paste has less sugar and more almond flavor than marzipan however. In baking, the two are interchangeable in recipes.

Product of Denmark.

7 ounces (198 grams)

**$6.20 each**
**$6.00 each with 6 or more**
Quantity: 1

Add to Cart

### Scharffen Berger Natural Cocoa Powder

Scharffen Berger chocolate complement pastries and

http://webcache.googleusercontent.com/search?q=cache:2Nzuji0lxOYJ:www.farawayfoods.com/baking.html+%22chocolat
e+candy+bars%22+%22scored%22&cd=51&hl=en&ct=clnk&gl=us        12/28/2010 04:44:37 PM

Scharffen Berger chocolate complement pastries and
desserts in some of the best restaurants and bakeries in the
country is an excellent choice for home chefs. Scharffen
Berger Natural Cocoa Powder is a blend of perfectly roasted
and well-fermented beans, with an intense chocolate flavor.

Choose from Sweetened (8 ounces) or Unsweetened (6
ounces) Cocoa Powder.

**$10.90 each**
**$9.00 each with 6 or more**
Selection: Unsweetened ▾
Quantity: 1

[Add to Cart]

**Imported Specialty Honey**

Finding great honey is always a challenge. So we've assembled the finest
collection of imported honey available.

Choices include Rigoni Di Asiago Organic Chestnut Honey, 14.1 ounce;
Fanzoni Acacia Honey, 8.8 ounces; Franzoni Chestnut Honey (Castagno), 8.8
ounces; Franzoni Millefiori Honey, 8.8 ounces; and Franzoni Sulla (Nettle)
Honey, 8.8 ounces. Product of Italy.

**$14.50 each**
**$12.00 each with 12 or more**
Selection: Rigoni Di Asiago Organic Chestnut Honey ▾
Quantity: 6

[Add to Cart]

## Offering a Gift? Have us ship it!
## Read about our gift options by clicking here!

We ship gifts with a Gift Card at no extra charge, and we do not include invoices or receipts!

*FarAwayFoods asks: "Have you ever brined a turkey?" Try it!*

New Product News Sign-Up | Copyright © 1999-2010 Far Away Foods. All rights reserved.

http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?refid=1861702700
12/28/2010 07:06:27 PM



http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?refid=1861702700
12/28/2010 07:06:27 PM

**5.** (*plural* score *or* scores) **group of 20:** a group of twenty things or people ( *often used in combination* )
- *A score or more people showed up.*

**6. printed music:** a written or printed copy of a musical composition
- *distributed copies of the score to the chorus*

**7. music composed:** the music that has been composed for a movie, play, or musical
- *a movie with a breathtaking score*

**8. copy of choreographic notation:** a written record of the choreography for a dance or ballet

**9. notch cut onto surface:** a notch or incision cut into the surface of something

**10. partial cut:** a crease or superficial cut made in something such as a piece of paper to enable it to be folded or separated easily

**11. record of money owed:** a record of an amount of money due for payment

**12. money owed:** an amount of money due for payment

**13. festering grudge:** a grievance that is not resolved and incurs resentment
- *settling old scores*

**14. present situation:** the present state or actual facts of a situation ( *informal* )
- *What's the score? Are you coming or not?*

**15. success:** a successful result or achievement, especially one that is significant ( *slang* )
- *made a big score on the stock market*

http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?refid=1861702700
12/28/2010 07:06:27 PM

**16. drug deal:** a purchase of illegal drugs ( *slang* )

**17. robbery:** the successful theft of something ( *slang* )

**18. sexual conquest:** a successful seduction of somebody or the sexual encounter itself ( *slang* )

**19.** NAUTICAL **groove for rope:** a groove cut in wood to hold a rope

plural noun **scores**

**Definition:**

**many:** a great many
• *Scores of members protested at the decision.*

verb ( *past and past participle* scored, *present participle* scor-ing, *3rd person present singular* scores)

**Definition:**

**1.** *transitive and intransitive verb* **make points:** to make a point or points in a match or game
• *scored twice in the second half*

**2.** *transitive verb* **amass points total:** to make a particular number of points in total during a match, game, or other competition

**3.** *transitive and intransitive verb* **record points:** to keep a record of the number of points made in a match, game, or other competition
• *Who's scoring?*

**4.** *transitive verb* **assign somebody points:** to award a particular number of points to somebody in a match, game,

118998

http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?refid=1861702700
12/28/2010 07:06:27 PM

points to somebody, in a match, game, or other competition
- *Three of the judges scored the skater perfect 6.0s.*

**5.** *transitive verb* **be worth points in a game:** to count for a particular number of points in a match, game, or other competition
- *Hitting the red area scores ten.*

**6.** *transitive verb U.S.* EDUCATION **exam grade:** to grade or evaluate a test or examination

**7.** *transitive and intransitive verb* **get points in exam:** to achieve a particular number of points in a test or examination

**8.** *transitive verb* **cut lines in something:** to make notches, cuts, or lines in a surface

**9.** *transitive verb* **cut something superficially to separate it:** to make a superficial cut or crease in something such as a piece of paper in order to fold, tear, or break it easily

**10.** *transitive verb* **write something by making incisions:** to write something by means of notches, incisions, or lines cut into a surface
- *names scored on the back of the bench with a pocketknife*

**11.** *transitive and intransitive verb* **cross something out:** to draw a line through something in order to mark it as canceled or deleted

**12.** *transitive verb* **record money owed:** to keep a record of an amount of money owed by somebody by making a series of marks next to his or her name

**13.** *transitive verb* **orchestrate something:** to orchestrate or arrange a piece of music

**14.** *transitive verb* **compose the music**

http://encarta.msn.com/encnet/features/dictionary/DictionaryResults.aspx?refid=1861702700
12/28/2010 07:06:27 PM

**14.** *transitive verb* **compose the music for something:** to write the music for a movie, play, or musical

**15.** *transitive verb* **write the choreography for something:** to write out the choreography for a dance or ballet

**16.** *intransitive verb* **do well:** to secure an advantage ( *slang* )
• *She scores because she can communicate.*

**17.** *transitive verb* **get something:** to succeed in getting something ( *slang* )
• *scored front-row tickets for the concert*

**18.** *transitive and intransitive verb* DRUGS **buy drugs:** to buy illegal drugs ( *slang* )

**19.** *intransitive verb* **have sex:** to succeed in having sex with somebody, especially a new sexual partner ( *slang* )

**20.** *transitive verb* **criticize somebody:** to subject somebody to severe criticism ( *informal* )

[Pre-12th century. < Old Norse *skor* "notch, tally, 20"]

**on this** *or* **that score** as far as this or that is concerned
• *Her health is fine, so there's no need to worry on that score.*

Encarta® World English Dictionary [North American Edition] © & (P)2009 Microsoft Corporation. All rights reserved. Developed for Microsoft by Bloomsbury Publishing Plc.

MSN Privacy    Legal    Advertise                              Feedback    Help

© 2009 Microsoft    **Microsoft**

119000

## Trademark Snap Shot Amendment & Mail Processing Stylesheet
(Table presents the data on Amendment & Mail Processing Complete)

### OVERVIEW

| | | | |
|---|---|---|---|
| SERIAL NUMBER | 77809223 | FILING DATE | 08/20/2009 |
| REG NUMBER | 0000000 | REG DATE | N/A |
| REGISTER | PRINCIPAL | MARK TYPE | TRADEMARK |
| INTL REG # | N/A | INTL REG DATE | N/A |
| TM ATTORNEY | DWYER, JOHN D | L.O. ASSIGNED | 116 |

### PUB INFORMATION

| | |
|---|---|
| RUN DATE | 11/26/2010 |
| PUB DATE | N/A |
| STATUS | 661-RESPONSE AFTER NON-FINAL-ACTION-ENTERED |
| STATUS DATE | 11/25/2010 |
| LITERAL MARK ELEMENT | |

| | | | |
|---|---|---|---|
| DATE ABANDONED | N/A | DATE CANCELLED | N/A |
| SECTION 2F | YES | SECTION 2F IN PART | NO |
| SECTION 8 | NO | SECTION 8 IN PART | NO |
| SECTION 15 | NO | REPUB 12C | N/A |
| RENEWAL FILED | NO | RENEWAL DATE | N/A |
| DATE AMEND REG | N/A | | |

### FILING BASIS

| FILED BASIS | | CURRENT BASIS | | AMENDED BASIS | |
|---|---|---|---|---|---|
| 1 (a) | YES | 1 (a) | YES | 1 (a) | NO |
| 1 (b) | NO | 1 (b) | NO | 1 (b) | NO |
| 44D | NO | 44D | NO | 44D | NO |
| 44E | NO | 44E | NO | 44E | NO |
| 66A | NO | 66A | NO | | |
| NO BASIS | NO | NO BASIS | NO | | |

### MARK DATA

| | |
|---|---|
| STANDARD CHARACTER MARK | NO |
| LITERAL MARK ELEMENT | |
| MARK DRAWING CODE | 2-AN ILLUSTRATION DRAWING WITHOUT ANY WORD(S)/LETTER(S)/NUMBER(S) |
| COLOR DRAWING FLAG | NO |

### CURRENT OWNER INFORMATION

| PARTY TYPE | 10-ORIGINAL APPLICANT |
|---|---|
| NAME | Hershey Chocolate & Confectionery Corporation |
| ADDRESS | 4860 Robb Street, Suite 204<br>Wheat Ridge, CO 80033 |
| ENTITY | 03-CORPORATION |
| CITIZENSHIP | Delaware |

## GOODS AND SERVICES

| INTERNATIONAL CLASS | 030 |
|---|---|
| DESCRIPTION TEXT | Candy; Chocolate |

## GOODS AND SERVICES CLASSIFICATION

| INTERNATIONAL CLASS | 030 | FIRST USE DATE | 12/31/1968 | FIRST USE IN COMMERCE DATE | 12/31/1968 | CLASS STATUS | 6-ACTIVE |
|---|---|---|---|---|---|---|---|

## MISCELLANEOUS INFORMATION/STATEMENTS

| CHANGE IN REGISTRATION | NO |
|---|---|
| COLORS CLAIMED STATEMENT | Color is not claimed as a feature of the mark. |
| DESCRIPTION OF MARK | The mark is a configuration of a candy bar that consists of twelve (12) equally-sized recessed rectangular panels arranged in a four panel by three panel format with each panel having its own raised border within a large rectangle. |
| OWNER OF US REG NOS | 3668662 |

## PROSECUTION HISTORY

| DATE | ENT CD | ENT TYPE | DESCRIPTION | ENT NUM |
|---|---|---|---|---|
| 11/25/2010 | TEME | I | TEAS/EMAIL CORRESPONDENCE ENTERED | 018 |
| 11/25/2010 | CRFA | I | CORRESPONDENCE RECEIVED IN LAW OFFICE | 017 |
| 11/25/2010 | TROA | I | TEAS RESPONSE TO OFFICE ACTION RECEIVED | 016 |
| 11/15/2010 | ARAA | I | ATTORNEY REVOKED AND/OR APPOINTED | 015 |
| 11/15/2010 | REAP | I | TEAS REVOKE/APPOINT ATTORNEY RECEIVED | 014 |
| 05/28/2010 | GNRN | O | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 013 |
| 05/28/2010 | GNRT | O | NON-FINAL ACTION E-MAILED | 012 |
| 05/28/2010 | CNRT | R | NON-FINAL ACTION WRITTEN | 011 |
| 05/03/2010 | TEME | I | TEAS/EMAIL CORRESPONDENCE ENTERED | 010 |
| 05/03/2010 | CRFA | I | CORRESPONDENCE RECEIVED IN LAW OFFICE | 009 |
| 05/03/2010 | TROA | I | TEAS RESPONSE TO OFFICE ACTION RECEIVED | 008 |
| 11/24/2009 | GNRN | O | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 007 |
| 11/24/2009 | GNRT | F | NON-FINAL ACTION E-MAILED | 006 |
| 11/24/2009 | CNRT | R | NON-FINAL ACTION WRITTEN | 005 |
| 11/17/2009 | DOCK | D | ASSIGNED TO EXAMINER | 004 |
| 08/25/2009 | MDSC | O | NOTICE OF DESIGN SEARCH CODE MAILED | 003 |
| 08/24/2009 | NWOS | I | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | 002 |
| 08/24/2009 | NWAP | I | NEW APPLICATION ENTERED IN TRAM | 001 |

| CURRENT CORRESPONDENCE INFORMATION | |
|---|---|
| ATTORNEY | Paul Llewellyn |
| CORRESPONDENCE ADDRESS | Paul Llewellyn<br>Kaye Scholer LLP<br>425 Park Avenue<br>New York NY 10022 |
| DOMESTIC REPRESENTATIVE | NONE |



PTO Form 1957 (Rev 9/2005)
OMB No. 0651-0050 (Exp. 04/30/2011)

# Response to Office Action

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 77809223 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 116 |
| **MARK SECTION (no change)** | |
| **ARGUMENT(S)** | |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | |
|---|---|---|---|
| Applicant: | Hershey Chocolate & Confectionary Corporation | ) ) ) | Law Office: 116 |
| Serial No.: | 77/809223 | ) ) | Examining Attorney: John Dwyer |
| Filed: | August 20, 2009 | ) ) | |
| Mark: | Miscellaneous Design (Recessed Rectangular Panels) | ) ) ) | |

**RESPONSE TO OFFICE ACTION**

Kaye Scholer LLP respectfully submits this response to the Examining Attorney's May 28, 2010 Office Action (the "Office Action") on behalf of applicant Hershey Chocolate & Confectionary Corporation ("Applicant").

Applicant's mark consists of the configuration of a rectangular candy bar with twelve (12) equally-sized recessed rectangular panels (each of which is of the same proportion, in terms of height and width, as the rectangular bar itself) arranged in a four panel by three panel format with each panel having its own raised border.

The Office Action maintained, without any additional discussion or explanation, the November 24, 2009 office action's refusal on the grounds that the mark purportedly is functional for the identified goods and consists of a non-distinctive product design. In addition, the Office Action refused registration on the ground that the Applicant allegedly has not provided sufficient evidence of acquired distinctiveness under Trademark Act Section 2(f).

For the reasons set forth below, Applicant submits that the Examining Attorney has not carried his burden to show that the proposed mark is functional and the record evidence confirms that the mark is not functional, and has achieved acquired distinctiveness. Therefore, Applicant submits that this Application is fit for publication.

## I.    The Applied-For Design is Not Functional

On November 24, 2009, the Examining Attorney issued an office action which concluded that the proposed mark was functional on the ground that "the shaping of the candy bar into equal sized pieces functions to enable consumers to break the candy into bite-sized pieces." The Examiner requested evidence refuting the design's functionality, which would show that the "configuration at issue provides no real utilitarian advantages to the user, but is one of many equally feasible, efficient and competitive designs." November 24, 2009 Office Action. On May 3, 2010, Applicant responded and requested reconsideration, asserting that the "mark as a whole" was non-functional and attaching evidence of the "availability of . . . feasible alternative designs." Moreover, Applicant maintained that no advertising for its products that embody the applied-for design described or promoted any utilitarian purpose. The evidence presented in its May 3, 2010 response, Applicant submits, constituted "sufficient evidence to rebut the examining attorney's prima facie case of functionality." Trademark Manual of Examining Proc. (7th ed. Oct. 2010) ("TMEP"), § 1202.02(a)(iv). However, in the May 28, 2010 Office Action, the Examiner did not address the substance of Applicant's response. Moreover, additional evidence submitted herewith confirms beyond a doubt that the proposed mark is non-functional.

### A. Overview of Functionality Analysis

The functionality doctrine prevents trademark law, which seeks to promote competition, from inhibiting legitimate competition by allowing a producer to control a useful product feature. A feature is functional if it is "essential to the use or purpose of the [product] or when it affects the cost or quality of the [product]." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 58 U.S.P.Q.2d 1001, 532 U.S. 23, 33 (2001); *see also* TMEP § 1202.02(a)(iii). When a mark is refused registration on functionality grounds, the Examining Attorney must establish a prima facie case that the mark sought to be registered is functional, at which point the Applicant can overcome the refusal by presenting evidence that rebuts the Examining Attorney's prima facie case. TMEP § 1202.02(a)(iv).

A mark is not functional where the particular unique combination of elements embodied in the proposed mark does not disadvantage competitors. *See, e.g., In re Honeywell Inc.*, 8 U.S.P.Q.2d 1600, 1988 WL 252417 (T.T.A.B. 1988) (finding the fact that competitors did not adopt applicant's thermostat configuration after 17 years of use was evidence of nonfunctionality; finding no "evidence of use by competitors . . . for so many years, despite applicant's apparent lack of any patent and trademark protection for it, we conclude that the number of alternative designs available to competitors, although limited, is sufficient for this product"); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 225 (S.D.N.Y. 2004) (defendants' expert's admission that a "bar on manufacturing a watch with a combination of features composing Cartier's trade dress as a whole would not seriously limit his options as a watch designer further substantiates the view that the designs are nonfunctional"); Restatement Third, Unfair Competition §17, comment b (1995) ("The fact that the overall design or combination contains individual features that are themselves functional does not preclude protection for the composite. . . . Protection of the overall design, however, will not preclude others from adopting the functional constituents.")

Moreover, even if one or more individual elements of an applied-for design serves a particular function, the overall aggregation, relationship and arrangement of the features that comprise the design can be non-functional. "When the thing claimed as trade dress or a trademark consists of a combination of individual design features, then it is the functionality of the overall combination that controls. Thus, an overall design combination of individually functional items is protectable because while the pieces are individually functional, this particular combination of those pieces is not functional." *McCarthy On Trademarks and Unfair Competition*, § 7:76 (2010); *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1449 (Fed. Cir. 1993) (Regarding functionality, jury received appropriate instruction to "consider the [trade dress] design as a whole and [] not focus on isolated elements of the design"; holding that the Ninth Circuit in *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987), was correct in stating that the proper inquiry is "whether the whole collection of elements taken together are functional"); *In re Chesebrough-Pond's, Inc.*, 224 U.S.P.Q. 967 (T.T.A.B. 1984) (where all individual aspects are functional, the "overall composite design" can be nonfunctional).

### B. There is No Evidence That Protection for the Applied-For Design Will Disadvantage Competitors.

The particular shapes and combination of the elements comprising Applicant's applied-for mark are not necessary to the function which the Board alleges bars registration, *i.e.*, "enabl[ing] consumers to break the candy into bite-sized pieces," and trademark protection for that particular design will not prevent competitors from selling chocolate bars, or from selling chocolate bars that can be broken into bite-sized pieces. Applicant's applied-for mark, which consists of the configuration of a rectangular candy bar with twelve (12) equally-sized recessed rectangular panels arranged in a four panel by three panel format with each panel having its own raised border, is merely one of a virtually infinite number of ways to design a candy bar. As shown in the accompanying Declaration of Volker Kramer, dated November 23, 2010, and as the third party designs proffered by the Examining Attorney show, there are many other ways to configure a candy bar, including many other ways to configure a candy bar that is divided into segments. As demonstrated by the evidence of third party designs for chocolate bars in the record, it is clear that a prohibition on the copying of the particular combination of elements that comprise Applicant's applied-for mark would not limit others' abilities to manufacture chocolate bars.

### C. Application of the Morton-Norwich Factors Confirms that Applicant's Mark is Not Functional

When considering functionality, the Board applies the aforementioned basic principles of the functionality doctrine and also looks to the factors set forth in *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41, 213 U.S.P.Q. 9, 15-16 (CCPA 1982): (1) the existence of a utility patent disclosing the utilitarian advantages of the design; (2) advertising materials in which the originator of the design touts the design's utilitarian advantages; (3) the availability to competitors of functionally equivalent designs; and (4) facts indicating that the design results in a comparatively simple or cheap method of manufacturing the product. Here, each factor weighs in favor of a finding of non-functionality.

#### 1. Applicant Has No Live, Expired or Abandoned Patents for the Design

The applied-for mark is not being claimed and has not been claimed in a design or utility patent of Applicant. (Declaration of Lois B. Duquette, dated November 23, 2010 ("Duquette Decl.") at ¶ 5.)

**2.      There Is No Evidence That Applicant Has Promoted the Design as Having Utilitarian Advantages.**

Applicant submits a variety of advertising materials from the past several decades concerning its Hershey's chocolate bar, the design for which is the subject of the applied-for mark.  (Duquette Decl. Ex. A.)  None of the advertisements promotes the design of the bar as having utilitarian advantages over any other configuration, and there is no evidence in the record of any such advertising.

**3.      Alternative Designs Available Are Functionally Equivalent**

A review of the third party designs in the record demonstrates that candy and chocolate bar manufacturers employ a limitless variety of bar designs.  Indeed, the Examiner has cited ample evidence of alternative designs utilized by Hershey's competitors, all of which are equally feasible, cost comparable alternatives to the design manufactured by Applicant.  For example, Nestle, another significant candy seller, sells Nestle Crunch Crisp, which, as depicted in the photograph attached by the Examiner in his Office Action, does not consist of any segments and has only a coating of milk chocolate and "crispies."   Further, the Ritter Sport's "Ritter Sport Milk Chocolate with Whole Hazelnuts," another third party product, also embodies an entirely different configuration than the applied-for design.  Ritter Sport's chocolate bar is comprised of 16 – not 12 – segments, in the shape of small squares - not rectangles, while the Kingsbury Chocolates Nib, manufactured by Artfully Chocolate | Kingsbury Confections ("ACKC"), consists of 28 square segments, none of which feature recessed panels or borders around the segments.  (Attachments to November 24, 2009 Office Action).

Apart from the evidence submitted by the Examiner, Applicant submits with this response a declaration from Volker Kramer, who has many years of experience in the business of designing and producing chocolate moulds for candy manufacturers in the United States and elsewhere, and who attests that there are numerous alternative chocolate and candy bar designs available.[1]  (Declaration of Volker Kramer**,** dated November 23, 2010 ("Kramer Decl."), at ¶¶ 3, 7, 11.)  Mr. Kramer identifies, as exemplars only, at least eleven additional designs employed by other chocolate and candy bar manufacturers – including many designs with segments – that are not the same as Applicant's distinctive configuration.  The chocolate bars attached as Exhibit B to the Kramer Declaration and as attachments to the Examiner's November 24, 2009 Office Action confirm that there are numerous other chocolate bars that are offered with:

·    bar shapes of different proportions (*i.e.*, non-rectangular candy shape)

*See, e.g.,* Ritter Sport Milk Chocolate with Whole Hazelnuts, Storz Nougat Praline, Ferrero Kinder Bueno, Nestle Chokito, Divine Milk Chocolate 1.5 oz., Dove Silky Smooth Milk Chocolate.

·    a different number of segments

*See, e.g.,* Nidar Yade, Ritter Sport Milk Chocolate with Whole Hazelnuts, Storz Nougat Praline, Dagoba Organic Chocolate Lime, Kingsbury Chocolates Nib, Lake Champlain Peppermint Crunch, Ritter Sport Cornflakes, Lake Champlain Milk Chocolate, Sea Salt & Almond Bar, NECCO Sky Bar, Storz Nougat Praline, Chocolove Cherries & Almonds in Dark Chocolate, Choxie Dark Chocolate Key Lime Truffle Bar, Chuao Spicy Maya, Ferrero Kinder Bueno, Nestle Mint Aero, Newman's Own Organics Milk Chocolate, Theo Organic Milk Chocolate, Theo Bread & Chocolate Dark Chocolate, Endangered Species Milk Chocolate, Divine Milk Chocolate 3.5 oz., Divine Milk Chocolate 1.5 oz., Doctor's CarbRite Diet SugarFree Milk Chocolate Bar, Wegman's Milk Chocolate with Almonds, Wegman's Milk Chocolate, Green & Black's Organic Milk Chocolate, Dove Silky Smooth Milk Chocolate.

·    a different layout of segments

*See, e.g.,* Nidar Yade, Ritter Sport Milk Chocolate with Whole Hazelnuts, Storz Nougat Praline, Dagoba Organic Chocolate Lime, Kingsbury Chocolates Nib, NECCO Sky Bar, Storz Nougat Praline, Chocolove Cherries & Almonds in Dark Chocolate, Chuao Spicy Maya, Ferrero Kinder Bueno, Nestle Mint Aero, Newman's Own Organics Milk Chocolate, Theo Organic Milk Chocolate, Theo Bread & Chocolate Dark Chocolate, Endangered Species Milk Chocolate, Divine Milk Chocolate 3.5 oz., Divine Milk Chocolate 1.5 oz., Doctor's CarbRite Diet SugarFree Milk Chocolate Bar, Wegman's Milk Chocolate with Almonds, Wegman's Milk Chocolate, Green & Black's Organic Milk Chocolate, Dove Silky Smooth Milk Chocolate.

·    segments of different proportions

*See, e.g.,* Nidar Yade, Ritter Sport Milk Chocolate with Whole Hazelnuts, Storz Nougat Praline, Dagoba Organic Chocolate Lime, Kingsbury Chocolates Nib, Lake Champlain Peppermint Crunch, Ritter Sport Cornflakes, Lake Champlain Milk Chocolate, Sea Salt & Almond Bar, NECCO Sky Bar, Storz Nougat Praline, Chocolove Cherries & Almonds in Dark Chocolate, Choxie Dark Chocolate Key Lime Truffle Bar, Chuao Spicy Maya, Ferrero Kinder Bueno, Nestle Mint Aero, Newman's Own Organics Milk Chocolate, Theo Organic Milk Chocolate, Theo Bread & Chocolate Dark Chocolate, Endangered Species Milk Chocolate, Divine Milk Chocolate 3.5 oz, Divine Milk Chocolate 1.5 oz., Doctor's CarbRite Diet

SugarFree Milk Chocolate Bar, Wegman's Milk Chocolate with Almonds, Wegman's Milk Chocolate, Green & Black's Organic Milk Chocolate, Dove Silky Smooth Milk Chocolate.

· segments with different three-dimensional proportions (*i.e.,* pillow shaped, edges of segments lack, or have different heights of, borders, etc.) and/or designs embossed on each segment

*See, e.g.,* Nidar Yade, Ritter Sport Milk Chocolate with Whole Hazelnuts, Storz Nougat Praline, Dagoba Organic Chocolate Lime, Kingsbury Chocolates Nib, Lake Champlain Peppermint Crunch, Ritter Sport Cornflakes, Lake Champlain Milk Chocolate, Sea Salt & Almond Bar, NECCO Sky Bar, Storz Nougat Praline, Chocolove Cherries & Almonds in Dark Chocolate, Choxie Dark Chocolate Key Lime Truffle Bar, Chuao Spicy Maya, Ferrero Kinder Bueno, Nestle Mint Aero, Newman's Own Organics Milk Chocolate, Theo Organic Milk Chocolate, Theo Bread & Chocolate Dark Chocolate, Endangered Species Milk Chocolate, Divine Milk Chocolate 3.5 oz., Divine Milk Chocolate 1.5 oz., Doctor's CarbRite Diet SugarFree Milk Chocolate Bar, Wegman's Milk Chocolate with Almonds, Wegman's Milk Chocolate, Green & Black's Organic Milk Chocolate, Dove Silky Smooth Milk Chocolate.

· no segments at all

*See, e.g.,* Nestle Chokito, Nestle Crunch Crisp, Kit Kat Caramel, Nestle Milk Chocolate.

Mr. Kramer's evidence corroborates the evidence identified by the Examiner which shows that numerous functionally equivalent alternative designs are available. The examples listed above demonstrate that chocolate bars need not have: (1) segments, (2) 12 segments, (3) equally-sized segments, (4) segments arranged in a four panel by three panel format, (5) segments that are of the same dimensional proportions as the overall bar, (6) rectangularly shaped segments, or (7) recessed segments with raised borders. The fact that other major candy bars have entirely different designs than the design used by Applicant is strong evidence that Applicant's design does not give Applicant any advantage over its competitors. Indeed, other brands of chocolate manufactured and sold by Applicant under different trade names (*e.g.*, Dagoba Organic Chocolate) utilize very different designs than the design of the applied-for mark. (*See* attachments to November 24, 2009 Office Action and Duquette Decl. ¶ 19.) Moreover, the Examiner has not identified, and Applicant cannot identify, a competing product similar in design to Applicant's applied-for shape, which is further evidence that the proposed mark is not functional.

**4.    Applicant's Design Is Not a Result of "Simple or Cheap Method of Manufacturing" and Provides No Utilitarian Advantage.**

The applied-for design of the Applicant's candy bar is not "one of few *superior* designs available." (November 24, 2009 Office Action) (emphasis added). The use of each element of Applicant's chocolate bar design, and the overall combination of elements, are non-essential to the manufacture of the bar and does not result in cheaper manufacturing. As Mr. Kramer explains, the tooling and moulds for the framed segments of the Hershey design are more expensive to create than are the tooling and moulds for other chocolate bar designs. In fact, the particular configuration of the Hershey design is no less costly to manufacture than other alternative segmented bar designs. (Kramer Decl. ¶¶ 8 - 10.) *See In re UDOR U.S.A., Inc*., Serial No. 78867933, 2009 T.T.A.B. LEXIS 61, at *17-18 (T.T.A.B. Mar. 4, 2009) (noting that if the applicant had adopted a different configuration, one which "may well have resulted in increased costs and major inefficiencies in the manufacturing and shipping processes" then applicant's design would present a "stronger case for being a non-functional source-identifier -- a shape that is 'uneconomical or otherwise disadvantageous'") (internal citation omitted); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 225 (S.D.N.Y. 2004) (if evidence indicates that "many of the trade dress features [actually] increase the time, difficulty and cost involved in their manufacture," the designs are less likely to be found to serve a "functional, essential, or cost-saving role in the manufacture of" the design at issue.)

In sum, based on the analysis above, it is clear that the distinctive design of Applicant's chocolate bar is (1) unique to Applicant, and (2) not required by the functional aspects of the product.

**II.    Applicant Submits Substantial and Compelling Evidence of Acquired Distinctiveness**

Applicant also respectfully submits that its three-dimensional product configuration mark has acquired distinctiveness required under *Wal-Mart Stores, Inc. v. Samara Bros. Inc.*, 529 U.S. 205 (2000). Acquired distinctiveness, or secondary meaning, exists if a substantial number of purchasers or prospective purchasers associate the design with a single source. Six factors are relevant to determining whether a product's design has acquired secondary meaning: 1) the length and exclusivity of the mark's use; 2) advertising expenditures; 3) sales success; 4) unsolicited media coverage of the product; 5) consumer studies linking the mark to a source; and 6) attempts to plagiarize the mark. *Nautilus Group, Inc. v. Icon Health & Fitness, Inc.*, 372 F.3d 1330, 1340 n.7 (Fed. Cir. 2004); *Coach Servs. v. Triumph Learning LLC*, Serial Nos. 78535642/78536143, 2010 T.T.A.B. LEXIS 383, at *62 (T.T.A.B. Sept. 17, 2010). Each of these factors strongly favors a finding of secondary meaning here.

### A.    The Length and Exclusivity of the Mark's Use

First, the applied-for chocolate bar design has been in use for more than 42 years, as Applicant began manufacturing, distributing, and selling the Hershey's Milk Chocolate bar in this product configuration in 1968.  (Duquette Decl. ¶ 4.)  *See In re Uncle Sam Chemical Co., Inc.*, 229 U.S.P.Q. 233 (T.T.A.B. 1986)) (finding that a "declaration attesting to over eighteen years of substantially exclusive and continuous use of the term together with evidence of considerable sales of products sold under the mark is sufficient to support a claim of acquired distinctiveness").  For over forty years, Applicant has sold its milk chocolate bar in the applied-for product configuration, namely twelve equally-sized recessed rectangular panels arranged in a four panel by three panel format with each panel having its own raised border within a large rectangle.  (Duquette Decl. ¶ 4.)  The long period of continuous and exclusive use by Applicant of its applied-for design indicates that its product design has acquired secondary meaning.

### B.    Advertising Expenditures

Applicant also heavily advertises and promotes its product design.  Applicant's licensee has spent more than $186 million nationwide in advertising its products embodying the applied-for design in the past 24 years.  (Duquette Decl. ¶ 7.)  Many of Applicant's advertisements prominently depict the shape of its chocolate bar which imbue the configuration with source-identifying significance and, indeed, the bar's individual segments are featured on many Hershey bar packages and other advertising.  (*Id.*, ¶ 9 & Ex. A.)  Applicant's advertisements appear in national publications, on national television, on the internet and in several other media outlets.  (*Id.*, ¶ 8.)  Advertisements prominently featuring the alleged product configuration are often cited as evidence of secondary meaning.  *See Callaway Golf Co. v. Golf Clean, Inc.*, 915 F. Supp. 1206, 1213 (M.D. Fla. 1995) (holding that over $5,000,000 spent in advertising that prominently featured club head was significant factor in finding of secondary meaning for a gold club design); *General Foods Corp. v. MGD Partners*, 1984 T.T.A.B. LEXIS 38, Serial No. 153,102, at *25-26 (T.T.A.B. Sept. 28, 1984) (finding that applicant has demonstrated secondary meaning based on various facts including "large volume of advertising and sales activity" since product inception).

### C.    Sales Success

Since 1998, aggregate or total sales to consumers have exceeded $4 billion.  Applicant's Hershey's candy bars are sold throughout all fifty states.  (Duquette Decl. ¶ 6.)  Thus, the applied-for mark is well recognized as belonging to Applicant and has become associated directly with Applicant's quality products due to Applicant's consistent, extensive and exclusive use.   With such widespread and consistent use of the design, and the fact that Applicant continues to sell its chocolate bar embodying the applied-for design in mass quantities today, acquired distinctiveness can be easily found.

### D.    Unsolicited media coverage of the Hershey Chocolate Bar Design

The shape and design of the Hershey's chocolate bar has also been the subject of favorable unsolicited media recognition.   For example, at the food blog http://bakingbites.com/2009/01/chocolate-bar-brownie-pan, a website devoted to baking and cooking, the author features a brownie pan sold by Williams Sonoma which results in brownies that: "use[] the iconic look of the chocolate candy bar" and associates the "iconic look" with that of Hershey's chocolate bars, stating that "[w]hether you're a fan of Hershey's chocolate bars or not, it's design is undeniably a classic confectionary icon: a flat, rectangular bar divided up into bite-sized pieces. . ."  The brownie pan (an attempt to plagiarize the Applicant's mark, as discussed below), which does not used Applicant's famous HERSHEY's trademark, was also featured on another blog, found at http://www.chocolatesprinkles.com/2009/06/01/williams-sonoma/, in which the author announces his excitement for the Williams Sonoma brownie pan and observes that "It's like a Hershey's bar with individual brownies."   (Duquette Decl. Exs. D & E, at ¶¶ 15-16.)  Significantly, consumers who encountered the Williams Sonoma pan in the distinctive shape and design for which Applicant now seeks to obtain a trademark registration recognized immediately that it produces brownies that looked like Hershey's chocolate bar product embodying that design.  This is compelling evidence of an association in the minds of the purchasing public of the applied-for design with the source of the product.

The configuration of the Hershey's chocolate bar   is also called to mind by others in connection with goods in a variety of other contexts which is still further evidence of a consumer recognition of the applied-for design and an association of the design with its source.  For example, one writer likened the size of a "silver metal slug" that is produced by a typesetting machine to "the size and shape of a Hershey's chocolate bar," while another reporter noted that posters for the Dave Matthews Band, that are "designed to look like a Hershey chocolate bar, " were for sale.  (Duquette Decl. ¶ 17 & Ex. F.)

### E.    Attempts to Plagiarize

Attempts by others to plagiarize the mark also confirm it has achieved secondary meaning.  Applicant has, on several occasions, learned of

attempts by others to use the distinctive shape of its HERSHEY'S chocolate bar without permission. For example, the brownie baking pan, discussed above, which was described as a "chocolate bar brownie pan," recently was distributed and sold without Hershey's permission by retailer Williams Sonoma. After Hershey sued for trademark infringement on May 11, 2010, the parties ultimately settled their dispute by agreement and Hershey agreed to license its distinctive Hershey design -- *see* Exhibit B to Duquette Decl. at ¶ 12 -- which is additional evidence that the applied-for mark has obtained the acquired distinctiveness in the minds of the public. *In re Carl Walther GmbH*, Serial No. 77096523 (T.T.A.B. Oct. 26, 2010) ("The fact that the PPK handgun design is sought after and licensed to a maker of replica products has been recognized as one type of evidence that helps establish that a configuration or trade dress mark has become distinctive."). Similarly, Applicant's design was copied by another candy company, R.M. Palmer Candy Co. ("R.M. Palmer") which, after Hershey objected, agreed to cease use of the objected-to design. (*Id.*, ¶ 13 & Ex. C.)

### F.    Federal Trademark Registration of the Well-Known Design of the Famous HERSHEY'S Chocolate Bar (with the word "HERSHEY'S")

Hershey owns an existing registration, Registration No. 3668662, for a design and word mark in class 30, that consists of the subject design mark, plus letters spelling 'Hershey's' in each recessed panel."    *See* Duquette Decl. ¶ 18 & Ex. G. The only difference between the applied-for mark and this existing registration is the inclusion of the word "HERSHEY'S" on each chocolate bar segment; that is, the prior registration covers *both* the word "HERSHEY'S" and the design of the bar.    The Trademark Office did not require Hershey to disclaim the design elements of the mark in Registration No. 3668662.    Therefore, by not requiring a disclaimer, the Trademark Office conceded that the design elements had achieved secondary meaning.

### G.    Survey Evidence of Secondary Meaning

While all of the foregoing evidence, standing alone, is sufficient to establish secondary meaning in the applied-for design, Applicant also submits a consumer survey conducted by Robert L. Klein that confirms the distinctiveness of its product design. The survey corroborates Applicant's strong showing of secondary meaning.

Applicant's survey was conducted Robert L. Klein, a recognized market research expert who has previously credited by the Board ( *see, e.g., National Pork Board v. Supreme Lobster and Seafood Co.*, 96 U.S.P.Q.2d 1479 (T.T.A.B. June 11, 2010), and followed accepted protocols for the measurement of secondary meaning. In the survey's text cell, 83.8% of likely purchasers of chocolate bars identified a chocolate bar embodying the applied-for design (and *not* including the HERSHEY'S word mark) as emanating from a single source, namely Hershey. (Report of Robert L. Klein dated November 22, 2010, at pp. 3, 9) Even after the results of a control cell were subtracted, over 42% of likely purchasers identified Hershey as the sole source of a chocolate bar embodying the applied-for design. These results are compelling evidence of secondary meaning. *See* 37 C.F.R. § 2.41(a); *Tone Bros. v. Sysco Corp.*, 28 F.3d 1192, 1203-04 (Fed. Cir. 1994) (holding that 37% of survey respondents identifying trade dress with a single manufacturer was sufficient evidence of secondary meaning); *McNeil-PPC v. Granutec, Inc.*, 919 F. Supp. 198, 37 U.S.P.Q.2d 1713 (E.D.N.C. 1995) (where 41% associated red and yellow capsules with a single brand and 38% identified that brand as TYLENOL, court found sufficient proof of secondary meaning in the red and yellow capsule colors); *Monsieur Henri Wines, Ltd. Et Al. v. Duran*, 204 U.S.P.Q. 601, 606, 1979 WL 24898 (T.T.A.B. 1979) (survey evidence showing 37% association of brand with background design corroborated finding that opposer's mark had "come to serve in and of itself as a strong indication of origin").

In sum, Applicant respectfully requests that the refusal based on non-distinctiveness be set aside and that the Examining Attorney approve the application for publication.

### <u>CONCLUSION</u>

For the foregoing reasons, Applicant respectfully submits that the Examining Attorney has not met its burden to show that the proposed mark is functional, and that the Applicant has shown that the proposed mark has acquired distinctiveness. Accordingly, Applicant respectfully submits that this application is in condition for publication. Favorable action is therefore requested.

The PTO is authorized to collect any fees necessitated by this Response from the deposit account of Applicant's attorneys, Kaye Scholer LLP, Deposit Account No. 11-0228.

---

[1]    Courts routinely consider credible testimony submitted in support of non-functionality. *See Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 224 (S.D.N.Y. 2004) (finding testimony from Cartier's director of watch marketing regarding the "aesthetic value conveyed by the design of the watch" credible, which emphasized that "functional superiority [was] not among Cartier's objectives"); *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 417 (6th Cir. 2006) (finding statements by the General Motors Senior

Vice President of Engineering and Product Development that the "Government's technical specification did not address the exterior appearance or the styling of the [Hummer/Humvee] vehicle."

**EVIDENCE SECTION**

| EVIDENCE FILE NAME(S) | |
|---|---|
| **ORIGINAL PDF FILE** | evi_9820418729-103538399_._Executed_Duquette_declaration_with_no_exhibits.pdf |
| **CONVERTED PDF FILE(S)** (6 pages) | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0002.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0003.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0004.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0005.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0006.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0007.JPG |
| **ORIGINAL PDF FILE** | evi_9820418729-103538399_._Duquette_Exhibit_A_screen_caps.pdf |
| **CONVERTED PDF FILE(S)** (20 pages) | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0008.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0009.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0010.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0011.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0012.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0013.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0014.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0015.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0016.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0017.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0018.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0019.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0020.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0021.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0022.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0023.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0024.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0025.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0026.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0027.JPG |
| **ORIGINAL PDF FILE** | evi_9820418729-103538399_._Duquette_Exhibit_B.pdf |
| **CONVERTED PDF FILE(S)** (16 pages) | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0028.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0029.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0030.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0031.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0032.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0033.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0034.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0035.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0036.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0037.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0038.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0039.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0040.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0041.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0042.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0043.JPG |
| **ORIGINAL PDF FILE** | evi_9820418729-103538399_._Duquette_Exhibit_C.pdf |
| **CONVERTED PDF FILE(S)** (2 pages) | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0044.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0045.JPG |
| **ORIGINAL PDF FILE** | evi_9820418729-103538399_._Duquette_Exhibit_D.pdf |
| **CONVERTED PDF FILE(S)** (5 pages) | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0046.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0047.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0048.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0049.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0050.JPG |
| **ORIGINAL PDF FILE** | evi_9820418729-103538399_._Duquette_Exhibit_E.pdf |
| **CONVERTED PDF FILE(S)** (4 pages) | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0051.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0052.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0053.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0054.JPG |
| **ORIGINAL PDF FILE** | evi_9820418729-103538399_._Duquette_Exhibit_F.pdf |
| **CONVERTED PDF FILE(S)** (6 pages) | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0055.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0056.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0057.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0058.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0059.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0060.JPG |

| ORIGINAL PDF FILE | evi_9820418729-103538399_._Duquette_Exhibit_G.pdf |
|---|---|
| CONVERTED PDF FILE(S) (2 pages) | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0061.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0062.JPG |
| ORIGINAL PDF FILE | evi_9820418729-103538399_._Executed_Kramer_Declaration_with_exhibits.pdf |
| CONVERTED PDF FILE(S) (13 pages) | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0063.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0064.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0065.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0066.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0067.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0068.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0069.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0070.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0071.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0072.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0073.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0074.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0075.JPG |
| ORIGINAL PDF FILE | evi_9820418729-103538399_._Robert_Klein_Report.pdf |
| CONVERTED PDF FILE(S) (150 pages) | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0076.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0077.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0078.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0079.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0080.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0081.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0082.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0083.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0084.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0085.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0086.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0087.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0088.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0089.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0090.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0091.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0092.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0093.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0094.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0095.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0096.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0097.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0098.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0099.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0100.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0101.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0102.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0103.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0104.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0105.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0106.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0107.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0108.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0109.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0110.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0111.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0112.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0113.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0114.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0115.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0116.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0117.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0118.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0119.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0120.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0121.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0122.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0123.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0124.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0125.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0126.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0127.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0128.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0129.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0130.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0131.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0132.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0133.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0134.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0135.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0136.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0137.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0138.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0139.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0140.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0141.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0142.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0143.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0144.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0145.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0146.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0147.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0148.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0149.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0150.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0151.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0152.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0153.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0154.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0155.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0156.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0157.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0158.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0159.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0160.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0161.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0162.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0163.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0164.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0165.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0166.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0167.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0168.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0169.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0170.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0171.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0172.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0173.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0174.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0175.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0176.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0177.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0178.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0179.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0180.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0181.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0182.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0183.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0184.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0185.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0186.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0187.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0188.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0189.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0190.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0191.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0192.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0193.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0194.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0195.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0196.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0197.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0198.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0199.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0200.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0201.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0202.JPG |

| | |
|---|---|
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0203.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0204.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0205.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0206.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0207.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0208.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0209.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0210.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0211.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0212.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0213.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0214.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0215.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0216.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0217.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0218.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0219.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0220.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0221.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0222.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0223.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0224.JPG](#) |
| | [\\TICRS\EXPORT11\IMAGEOUT11\778\092\77809223\xml2\ROA0225.JPG](#) |
| **DESCRIPTION OF EVIDENCE FILE** | Declaration of Lois B. Duquette, Esq. and Exhibits A to G; Declaration of Volker Kramer and Exhibits A to B; Report of Robert L. Klein: Secondary Meaning Survey Methodology and Results |

## SIGNATURE SECTION

| | |
|---|---|
| **RESPONSE SIGNATURE** | /Paul Llewellyn/ |
| **SIGNATORY'S NAME** | Paul Llewellyn |
| **SIGNATORY'S POSITION** | Attorney of record |
| **DATE SIGNED** | 11/25/2010 |
| **AUTHORIZED SIGNATORY** | YES |

## FILING INFORMATION SECTION

| | |
|---|---|
| **SUBMIT DATE** | Thu Nov 25 10:58:25 EST 2010 |
| **TEAS STAMP** | USPTO/ROA-XX.XXX.XXX.XX-2 0101125105825117833-77809 223-47076b7e8e5436de1b720 6554217a65966b-N/A-N/A-20 101125103538399257 |

PTO Form 1957 (Rev 9/2005)
OMB No. 0651-0050 (Exp. 04/30/2011)

### Response to Office Action

## To the Commissioner for Trademarks:

Application serial no. **77809223** has been amended as follows:

**ARGUMENT(S)**
**In response to the substantive refusal(s), please note the following:**

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Hershey Chocolate & Confectionary Corporation | ) ) ) | Law Office: 116 |
| Serial No.: | 77/809223 | ) ) | Examining Attorney: John Dwyer |
| Filed: | August 20, 2009 | ) ) | |
| Mark: | Miscellaneous Design (Recessed Rectangular Panels) | ) ) ) ) | |

### RESPONSE TO OFFICE ACTION

Kaye Scholer LLP respectfully submits this response to the Examining Attorney's May 28, 2010 Office Action (the "Office Action") on behalf of applicant Hershey Chocolate & Confectionary Corporation ("Applicant").
Applicant's mark consists of the configuration of a rectangular candy bar with twelve (12) equally-sized recessed rectangular panels (each of which is of the same proportion, in terms of height and width, as the rectangular bar itself) arranged in a four panel by three panel format with each panel having its own raised border.

The Office Action maintained, without any additional discussion or explanation, the November 24, 2009 office action's refusal on the grounds that the mark purportedly is functional for the identified goods and consists of a non-distinctive product design. In addition, the Office Action refused registration on the ground that the Applicant allegedly has not provided sufficient evidence of acquired distinctiveness under Trademark Act Section 2(f).

For the reasons set forth below, Applicant submits that the Examining Attorney has not carried his burden to show that the proposed mark is functional and the record evidence confirms that the mark is not functional, and has achieved acquired distinctiveness. Therefore, Applicant submits that this Application is fit for publication.

#### I.    The Applied-For Design is Not Functional

On November 24, 2009, the Examining Attorney issued an office action which concluded that the proposed mark was functional on the ground that "the shaping of the candy bar into equal sized pieces functions to enable consumers to break the candy into bite-sized pieces." The Examiner requested evidence refuting the design's functionality, which would show that the "configuration at issue provides no real utilitarian advantages to the user, but is one of many equally feasible, efficient and competitive designs." November 24, 2009 Office Action.
On May 3, 2010, Applicant responded and requested reconsideration, asserting that the "mark as a whole" was non-functional and attaching evidence of the "availability of . . . feasible alternative designs." Moreover, Applicant maintained that no advertising for its products that embody the applied-for design described or promoted any utilitarian purpose. The evidence presented in its May 3, 2010 response, Applicant submits, constituted "sufficient evidence to rebut the examining attorney's prima facie case of functionality." Trademark Manual of Examining Proc. (7th ed. Oct. 2010) ("TMEP"), § 1202.02(a)(iv). However, in the May 28, 2010 Office Action, the Examiner did not address the substance of Applicant's response. Moreover, additional evidence submitted herewith confirms beyond a doubt that the proposed mark is non-functional.

119018

## A.    Overview of Functionality Analysis

The functionality doctrine prevents trademark law, which seeks to promote competition, from inhibiting legitimate competition by allowing a producer to control a useful product feature.  A feature is functional if it is "essential to the use or purpose of the [product] or when it affects the cost or quality of the [product]."  *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 58 U.S.P.Q.2d 1001, 532 U.S. 23, 33 (2001); *see also* TMEP § 1202.02(a)(iii).  When a mark is refused registration on functionality grounds, the Examining Attorney must establish a prima facie case that the mark sought to be registered is functional, at which point the Applicant can overcome the refusal by presenting evidence that rebuts the Examining Attorney's prima facie case.  TMEP § 1202.02(a)(iv).

A mark is not functional where the particular unique combination of elements embodied in the proposed mark does not disadvantage competitors.  *See, e.g., In re Honeywell Inc.,* 8 U.S.P.Q.2d 1600, 1988 WL 252417 (T.T.A.B. 1988) (finding the fact that competitors did not adopt applicant's thermostat configuration after 17 years of use was evidence of nonfunctionality; finding no "evidence of use by competitors . . . for so many years, despite applicant's apparent lack of any patent and trademark protection for it, we conclude that the number of alternative designs available to competitors, although limited, is sufficient for this product"); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 225 (S.D.N.Y. 2004) (defendants' expert's admission that a "bar on manufacturing a watch with a combination of features composing Cartier's trade dress as a whole would not seriously limit his options as a watch designer further substantiates the view that the designs are nonfunctional"); Restatement Third, Unfair Competition §17, comment b (1995) ("The fact that the overall design or combination contains individual features that are themselves functional does not preclude protection for the composite. . . . Protection of the overall design, however, will not preclude others from adopting the functional constituents.")

Moreover, even if one or more individual elements of an applied-for design serves a particular function, the overall aggregation, relationship and arrangement of the features that comprise the design can be non-functional.  "When the thing claimed as trade dress or a trademark consists of a combination of individual design features, then it is the functionality of the overall combination that controls.  Thus, an overall design combination of individually functional items is protectable because while the pieces are individually functional, this particular combination of those pieces is not functional."  *McCarthy On Trademarks and Unfair Competition*, § 7:76 (2010); *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1449 (Fed. Cir. 1993) (Regarding functionality, jury received appropriate instruction to "consider the [trade dress] design as a whole and [] not focus on isolated elements of the design"; holding that the Ninth Circuit in *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 842 (9th Cir. 1987), was correct in stating that the proper inquiry is "whether the whole collection of elements taken together are functional"); *In re Chesebrough-Pond's, Inc.* , 224 U.S.P.Q. 967 (T.T.A.B. 1984) (where all individual aspects are functional, the "overall composite design" can be nonfunctional).

## B.    There is No Evidence That Protection for the Applied-For Design Will Disadvantage Competitors.

The particular shapes and combination of the elements comprising Applicant's applied-for mark are not necessary to the function which the Board alleges bars registration, *i.e.*, "enabl[ing] consumers to break the candy into bite-sized pieces," and trademark protection for that particular design will not prevent competitors from selling chocolate bars, or from selling chocolate bars that can be broken into bite-sized pieces.  Applicant's applied-for mark, which consists of the configuration of a rectangular candy bar  with twelve (12) equally-sized recessed rectangular panels arranged in a four panel by three panel format with each panel having its own raised border, is merely one of a virtually infinite number of ways to design a candy bar.  As shown in the accompanying Declaration of Volker Kramer, dated November 23, 2010, and as the third party designs proffered by the Examining Attorney show, there are many other ways to configure a candy bar, including many other ways to configure a candy bar that is divided into segments.  As demonstrated by the evidence of third party designs for chocolate bars in the record, it is clear that a prohibition on the copying of the particular combination of elements that comprise Applicant's applied-for mark would not limit others' abilities to manufacture chocolate bars.

## C.    Application of the Morton-Norwich Factors Confirms that Applicant's Mark is Not Functional

When considering functionality, the Board applies the aforementioned basic principles of the functionality doctrine and also looks to the factors set forth in *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41, 213 U.S.P.Q. 9, 15-16 (CCPA 1982): (1) the existence of a utility patent disclosing the utilitarian advantages of the design; (2) advertising materials in which the originator of the design touts the design's utilitarian advantages; (3) the availability to competitors of functionally equivalent designs; and (4) facts indicating that the design results in a comparatively simple or cheap method of manufacturing the product.  Here, each factor weighs in favor of a finding of non-functionality.

### 1.    Applicant Has No Live, Expired or Abandoned Patents for the Design

The applied-for mark is not being claimed and has not been claimed in a design or utility patent of Applicant.  (Declaration of Lois B. Duquette, dated November 23, 2010 ("Duquette Decl.") at ¶ 5.)

2.    **There Is No Evidence That Applicant Has Promoted the Design as Having Utilitarian Advantages.**

Applicant submits a variety of advertising materials from the past several decades concerning its Hershey's chocolate bar, the design for which is the subject of the applied-for mark.  (Duquette Decl. Ex. A.)  None of the advertisements promotes the design of the bar as having utilitarian advantages over any other configuration, and there is no evidence in the record of any such advertising.

3.    **Alternative Designs Available Are Functionally Equivalent**

A review of the third party designs in the record demonstrates that candy and chocolate bar manufacturers employ a limitless variety of bar designs.  Indeed, the Examiner has cited ample evidence of alternative designs utilized by Hershey's competitors, all of which are equally feasible, cost comparable alternatives to the design manufactured by Applicant.  For example, Nestle, another significant candy seller, sells Nestle Crunch Crisp, which, as depicted in the photograph attached by the Examiner in his Office Action, does not consist of any segments and has only a coating of milk chocolate and "crispies."   Further, the Ritter Sport's "Ritter Sport Milk Chocolate with Whole Hazelnuts," another third party product, also embodies an entirely different configuration than the applied-for design.  Ritter Sport's chocolate bar is comprised of 16 – not 12 – segments, in the shape of small squares - not rectangles, while the Kingsbury Chocolates Nib, manufactured by Artfully Chocolate | Kingsbury Confections ("ACKC"), consists of 28 square segments, none of which feature recessed panels or borders around the segments.  (Attachments to November 24, 2009 Office Action).

Apart from the evidence submitted by the Examiner, Applicant submits with this response a declaration from Volker Kramer, who has many years of experience in the business of designing and producing chocolate moulds for candy manufacturers in the United States and elsewhere, and who attests that there are numerous alternative chocolate and candy bar designs available.[1]  (Declaration of Volker Kramer**,** dated November 23, 2010 ("Kramer Decl."), at ¶¶ 3, 7, 11.)  Mr. Kramer identifies, as exemplars only, at least eleven additional designs employed by other chocolate and candy bar manufacturers – including many designs with segments – that are not the same as Applicant's distinctive configuration.  The chocolate bars attached as Exhibit B to the Kramer Declaration and as attachments to the Examiner's November 24, 2009 Office Action confirm that there are numerous other chocolate bars that are offered with:

·   bar shapes of different proportions (*i.e.*, non-rectangular candy shape)

*See, e.g.,* Ritter Sport Milk Chocolate with Whole Hazelnuts, Storz Nougat Praline, Ferrero Kinder Bueno, Nestle Chokito, Divine Milk Chocolate 1.5 oz., Dove Silky Smooth Milk Chocolate.

·   a different number of segments

*See, e.g.,* Nidar Yade, Ritter Sport Milk Chocolate with Whole Hazelnuts, Storz Nougat Praline, Dagoba Organic Chocolate Lime, Kingsbury Chocolates Nib, Lake Champlain Peppermint Crunch, Ritter Sport Cornflakes, Lake Champlain Milk Chocolate, Sea Salt & Almond Bar, NECCO Sky Bar, Storz Nougat Praline, Chocolove Cherries & Almonds in Dark Chocolate, Choxie Dark Chocolate Key Lime Truffle Bar, Chuao Spicy Maya, Ferrero Kinder Bueno, Nestle Mint Aero, Newman's Own Organics Milk Chocolate, Theo Organic Milk Chocolate, Theo Bread & Chocolate Dark Chocolate, Endangered Species Milk Chocolate, Divine Milk Chocolate 3.5 oz., Divine Milk Chocolate 1.5 oz., Doctor's CarbRite Diet SugarFree Milk Chocolate Bar, Wegman's Milk Chocolate with Almonds, Wegman's Milk Chocolate, Green & Black's Organic Milk Chocolate, Dove Silky Smooth Milk Chocolate.

·   a different layout of segments

*See, e.g.,* Nidar Yade, Ritter Sport Milk Chocolate with Whole Hazelnuts, Storz Nougat Praline, Dagoba Organic Chocolate Lime, Kingsbury Chocolates Nib, NECCO Sky Bar, Storz Nougat Praline, Chocolove Cherries & Almonds in Dark Chocolate, Chuao Spicy Maya, Ferrero Kinder Bueno, Nestle Mint Aero, Newman's Own Organics Milk Chocolate, Theo Organic Milk Chocolate, Theo Bread & Chocolate Dark Chocolate, Endangered Species Milk Chocolate, Divine Milk Chocolate 3.5 oz., Divine Milk Chocolate 1.5 oz., Doctor's CarbRite Diet SugarFree Milk Chocolate Bar, Wegman's Milk Chocolate with Almonds, Wegman's Milk Chocolate, Green & Black's Organic Milk Chocolate, Dove Silky Smooth Milk Chocolate.

·   segments of different proportions

*See, e.g.,* Nidar Yade, Ritter Sport Milk Chocolate with Whole Hazelnuts, Storz Nougat Praline, Dagoba Organic Chocolate Lime, Kingsbury Chocolates Nib, Lake Champlain Peppermint Crunch, Ritter Sport Cornflakes, Lake Champlain Milk Chocolate, Sea Salt & Almond Bar, NECCO Sky Bar, Storz Nougat Praline, Chocolove Cherries & Almonds in Dark Chocolate, Choxie Dark Chocolate Key Lime Truffle Bar, Chuao Spicy Maya, Ferrero Kinder Bueno, Nestle Mint Aero, Newman's Own Organics Milk Chocolate, Theo Organic Milk Chocolate, Theo Bread & Chocolate Dark Chocolate, Endangered Species Milk Chocolate, Divine Milk Chocolate 3.5 oz, Divine Milk Chocolate 1.5 oz., Doctor's CarbRite Diet SugarFree Milk Chocolate Bar, Wegman's Milk Chocolate with Almonds, Wegman's Milk Chocolate, Green & Black's Organic Milk Chocolate, Dove Silky Smooth Milk Chocolate.

· segments with different three-dimensional proportions (*i.e.,* pillow shaped, edges of segments lack, or have different heights of, borders, etc.) and/or designs embossed on each segment

*See, e.g.,* Nidar Yade, Ritter Sport Milk Chocolate with Whole Hazelnuts, Storz Nougat Praline, Dagoba Organic Chocolate Lime, Kingsbury Chocolates Nib, Lake Champlain Peppermint Crunch, Ritter Sport Cornflakes, Lake Champlain Milk Chocolate, Sea Salt & Almond Bar, NECCO Sky Bar, Storz Nougat Praline, Chocolove Cherries & Almonds in Dark Chocolate, Choxie Dark Chocolate Key Lime Truffle Bar, Chuao Spicy Maya, Ferrero Kinder Bueno, Nestle Mint Aero, Newman's Own Organics Milk Chocolate, Theo Organic Milk Chocolate, Theo Bread & Chocolate Dark Chocolate, Endangered Species Milk Chocolate, Divine Milk Chocolate 3.5 oz., Divine Milk Chocolate 1.5 oz., Doctor's CarbRite Diet SugarFree Milk Chocolate Bar, Wegman's Milk Chocolate with Almonds, Wegman's Milk Chocolate, Green & Black's Organic Milk Chocolate, Dove Silky Smooth Milk Chocolate.

· no segments at all

*See, e.g.,* Nestle Chokito, Nestle Crunch Crisp, Kit Kat Caramel, Nestle Milk Chocolate.

Mr. Kramer's evidence corroborates the evidence identified by the Examiner which shows that numerous functionally equivalent alternative designs are available. The examples listed above demonstrate that chocolate bars need not have: (1) segments, (2) 12 segments, (3) equally-sized segments, (4) segments arranged in a four panel by three panel format, (5) segments that are of the same dimensional proportions as the overall bar, (6) rectangularly shaped segments, or (7) recessed segments with raised borders. The fact that other major candy bars have entirely different designs than the design used by Applicant is strong evidence that Applicant's design does not give Applicant any advantage over its competitors. Indeed, other brands of chocolate manufactured and sold by Applicant under different trade names (*e.g.,* Dagoba Organic Chocolate) utilize very different designs than the design of the applied-for-mark. (*See* attachments to November 24, 2009 Office Action and Duquette Decl. ¶ 19.) Moreover, the Examiner has not identified, and Applicant cannot identify, a competing product similar in design to Applicant's applied-for shape, which is further evidence that the proposed mark is not functional.

### 4. Applicant's Design Is Not a Result of "Simple or Cheap Method of Manufacturing" and Provides No Utilitarian Advantage.

The applied-for design of the Applicant's candy bar is not "one of few *superior* designs available." (November 24, 2009 Office Action) (emphasis added). The use of each element of Applicant's chocolate bar design, and the overall combination of elements, are non-essential to the manufacture of the bar and does not result in cheaper manufacturing. As Mr. Kramer explains, the tooling and moulds for the framed segments of the Hershey design are more expensive to create than are the tooling and moulds for other chocolate bar designs. In fact, the particular configuration of the Hershey design is no less costly to manufacture than other alternative segmented bar designs. (Kramer Decl. ¶¶ 8 - 10.) *See In re UDOR U.S.A., Inc.,* Serial No. 78867933, 2009 T.T.A.B. LEXIS 61, at *17-18 (T.T.A.B. Mar. 4, 2009) (noting that if the applicant had adopted a different configuration, one which "may well have resulted in increased costs and major inefficiencies in the manufacturing and shipping processes" then applicant's design would present a "stronger case for being a non-functional source-identifier -- a shape that is 'uneconomical or otherwise disadvantageous'") (internal citation omitted); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.,* 348 F. Supp. 2d 217, 225 (S.D.N.Y. 2004) (if evidence indicates that "many of the trade dress features [actually] increase the time, difficulty and cost involved in their manufacture," the designs are less likely to be found to serve a "functional, essential, or cost-saving role in the manufacture of" the design at issue.)

In sum, based on the analysis above, it is clear that the distinctive design of Applicant's chocolate bar is (1) unique to Applicant, and (2) not required by the functional aspects of the product.

## II.    Applicant Submits Substantial and Compelling Evidence of Acquired Distinctiveness

Applicant also respectfully submits that its three-dimensional product configuration mark has acquired distinctiveness required under *Wal-Mart Stores, Inc. v. Samara Bros. Inc.,* 529 U.S. 205 (2000). Acquired distinctiveness, or secondary meaning, exists if a substantial number of purchasers or prospective purchasers associate the design with a single source. Six factors are relevant to determining whether a product's design has acquired secondary meaning: 1) the length and exclusivity of the mark's use; 2) advertising expenditures; 3) sales success; 4) unsolicited media coverage of the product; 5) consumer studies linking the mark to a source; and 6) attempts to plagiarize the mark. *Nautilus Group, Inc. v. Icon Health & Fitness, Inc.,* 372 F.3d 1330, 1340 n.7 (Fed. Cir. 2004); *Coach Servs. v. Triumph Learning LLC,* Serial Nos. 78535642/78536143, 2010 T.T.A.B. LEXIS 383, at *62 (T.T.A.B. Sept. 17, 2010). Each of these factors strongly favors a finding of secondary meaning here.

### A.    The Length and Exclusivity of the Mark's Use

119021

First, the applied-for chocolate bar design has been in use for more than 42 years, as Applicant began manufacturing, distributing, and selling the Hershey's Milk Chocolate bar in this product configuration in 1968.   (Duquette Decl. ¶ 4.)  *See In re Uncle Sam Chemical Co., Inc.*, 229 U.S.P.Q. 233 (T.T.A.B. 1986)) (finding that a "declaration attesting to over eighteen years of substantially exclusive and continuous use of the term together with evidence of considerable sales of products sold under the mark is sufficient to support a claim of acquired distinctiveness"). For over forty years, Applicant has sold its milk chocolate bar in the applied-for product configuration, namely twelve equally-sized recessed rectangular panels arranged in a four panel by three panel format with each panel having its own raised border within a large rectangle. (Duquette Decl. ¶ 4.)  The long period of continuous and exclusive use by Applicant of its applied-for design indicates that its product design has acquired secondary meaning.

### B.      Advertising Expenditures

Applicant also heavily advertises and promotes its product design.  Applicant's licensee has spent more than $186 million nationwide in advertising its products embodying the applied-for design in the past 24 years.  (Duquette Decl. ¶ 7.)  Many of Applicant's advertisements prominently depict the shape of its chocolate bar which imbue the configuration with source-identifying significance and, indeed, the bar's individual segments are featured on many Hershey bar packages and other advertising.  (*Id.*, ¶ 9 & Ex. A.)  Applicant's advertisements appear in national publications, on national television, on the internet and in several other media outlets.  (*Id.*, ¶ 8.)  Advertisements prominently featuring the alleged product configuration are often cited as evidence of secondary meaning.  *See Callaway Golf Co. v. Golf Clean, Inc.*, 915 F. Supp. 1206, 1213 (M.D. Fla. 1995) (holding that over $5,000,000 spent in advertising that prominently featured club head was significant factor in finding of secondary meaning for a gold club design); *General Foods Corp. v. MGD Partners*, 1984 T.T.A.B. LEXIS 38, Serial No. 153,102, at *25-26 (T.T.A.B. Sept. 28, 1984) (finding that applicant has demonstrated secondary meaning based on various facts including "large volume of advertising and sales activity" since product inception).

### C.      Sales Success

Since 1998, aggregate or total sales to consumers have exceeded $4 billion.  Applicant's Hershey's candy bars are sold throughout all fifty states.  (Duquette Decl. ¶ 6.)  Thus, the applied-for mark is well recognized as belonging to Applicant and has become associated directly with Applicant's quality products due to Applicant's consistent, extensive and exclusive use.   With such widespread and consistent use of the design, and the fact that Applicant continues to sell its chocolate bar embodying the applied-for design in mass quantities today, acquired distinctiveness can be easily found.

### D.      Unsolicited media coverage of the Hershey Chocolate Bar Design

The shape and design of the Hershey's chocolate bar has also been the subject of favorable unsolicited media recognition.   For example, at the food blog http://bakingbites.com/2009/01/chocolate-bar-brownie-pan, a website devoted to baking and cooking, the author features a brownie pan sold by Williams Sonoma which results in brownies that: "use[] the iconic look of the chocolate candy bar" and associates the "iconic look" with that of Hershey's chocolate bars, stating that "[w]hether you're a fan of Hershey's chocolate bars or not, it's design is undeniably a classic confectionery icon: a flat, rectangular bar divided up into bite-sized pieces. . ."  The brownie pan (an attempt to plagiarize the Applicant's mark, as discussed below), which does not used Applicant's famous HERSHEY'S trademark, was also featured on another blog, found at http://www.chocolateysprinkles.com/2009/06/01/williams-sonoma/, in which the author announces his excitement for the Williams Sonoma brownie pan and observes that "It's like a Hershey's bar with individual brownies."     (Duquette Decl. Exs. D & E, at ¶¶ 15-16.)  Significantly, consumers who encountered the Williams Sonoma pan in the distinctive shape and design for which Applicant now seeks to obtain a trademark registration recognized immediately that it produces brownies that looked like Hershey's chocolate bar product embodying that design.  This is compelling evidence of an association in the minds of the purchasing public of the applied-for design with the source of the product.

The configuration of the Hershey's chocolate bar   is also called to mind by others in connection with goods in a variety of other contexts which is still further evidence of a consumer recognition of the applied-for design and an association of the design with its source.  For example, one writer likened the size of a "silver metal slug" that is produced by a typesetting machine to "the size and shape of a Hershey's chocolate bar," while another reporter noted that posters for the Dave Matthews Band, that are "designed to look like a Hershey chocolate bar," were for sale. (Duquette Decl. ¶ 17 & Ex. F.)

### E.      Attempts to Plagiarize

Attempts by others to plagiarize the mark also confirm it has achieved secondary meaning.  Applicant has, on several occasions, learned of attempts by others to use the distinctive shape of its HERSHEY'S chocolate bar without permission. For example, the brownie baking pan, discussed above, which was described as a "chocolate bar brownie pan," recently was distributed and sold without Hershey's permission by

retailer Williams Sonoma.  After Hershey sued for trademark infringement on May 11, 2010, the parties ultimately settled their dispute by agreement and Hershey agreed to license its distinctive Hershey design -- *see* Exhibit B to Duquette Decl. at ¶ 12 --  which is additional evidence that the applied-for mark has obtained the acquired distinctiveness in the minds of the public.  *In re Carl Walther GmbH*, Serial No. 77096523 (T.T.A.B. Oct. 26, 2010) ("The fact that the PPK handgun design is sought after and licensed to a maker of replica products has been recognized as one type of evidence that helps establish that a configuration or trade dress mark has become distinctive.").

Similarly, Applicant's design was copied by another candy company, R.M. Palmer Candy Co. ("R.M. Palmer") which, after Hershey objected, agreed to cease use of the objected-to design.  (*Id.*, ¶ 13 & Ex. C.)

### F.      Federal Trademark Registration of the Well-Known Design of the Famous HERSHEY'S Chocolate Bar (with the word "HERSHEY'S")

Hershey owns an existing registration, Registration No. 3668662, for a design and word mark in class 30, that consists of the subject design mark, plus letters spelling 'Hershey's' in each recessed panel."      *See* Duquette Decl. ¶ 18 & Ex. G.  The only difference between the applied-for mark and this existing registration is the inclusion of the word "HERSHEY'S" on each chocolate bar segment; that is, the prior registration covers *both* the word "HERSHEY'S" and the design of the bar.    The Trademark Office did not require Hershey to disclaim the design elements of the mark in Registration No. 3668662.   Therefore, by not requiring a disclaimer, the Trademark Office conceded that the design elements had achieved secondary meaning.

### G.      Survey Evidence of Secondary Meaning

While all of the foregoing evidence, standing alone, is sufficient to establish secondary meaning in the applied-for design, Applicant also submits a consumer survey conducted by Robert L. Klein that confirms the distinctiveness of its product design.  The survey corroborates Applicant's strong showing of secondary meaning.

Applicant's survey was conducted Robert L. Klein, a recognized market research expert who has previously credited by the Board ( *see, e.g., National Pork Board v. Supreme Lobster and Seafood Co.*, 96 U.S.P.Q.2d 1479 (T.T.A.B. June 11, 2010), and followed accepted protocols for the measurement of secondary meaning.  In the survey's text cell, 83.8% of likely purchasers of chocolate bars identified a chocolate bar embodying the applied-for design (and *not* including the HERSHEY'S word mark) as emanating from a single source, namely Hershey. (Report of Robert L. Klein dated November 22, 2010, at pp. 3, 9)  Even after the results of a control cell were subtracted, over 42% of likely purchasers identified Hershey as the sole source of a chocolate bar embodying the applied-for design.  These results are compelling evidence of secondary meaning.  *See* 37 C.F.R. § 2.41(a); *Tone Bros. v. Sysco Corp.*, 28 F.3d 1192, 1203-04 (Fed. Cir. 1994) (holding that 37% of survey respondents identifying trade dress with a single manufacturer was sufficient evidence of secondary meaning); *McNeil-PPC v. Granutec, Inc.*, 919 F. Supp. 198, 37 U.S.P.Q.2d 1713 (E.D.N.C. 1995) (where 41% associated red and yellow capsules with a single brand and 38% identified that brand as TYLENOL, court found sufficient proof of secondary meaning in the red and yellow capsule colors); *Monsieur Henri Wines, Ltd. Et Al. v. Duran*,  204 U.S.P.Q. 601, 606, 1979 WL 24898 (T.T.A.B. 1979) (survey evidence showing 37% association of brand with background design corroborated finding that opposer's mark had "come to serve in and of itself as a strong indication of origin").

In sum, Applicant respectfully requests that the refusal based on non-distinctiveness be set aside and that the Examining Attorney approve the application for publication.

### CONCLUSION

For the foregoing reasons, Applicant respectfully submits that the Examining Attorney has not met its burden to show that the proposed mark is functional, and that the Applicant has shown that the proposed mark has acquired distinctiveness.  Accordingly, Applicant respectfully submits that this application is in condition for publication.  Favorable action is therefore requested.

The PTO is authorized to collect any fees necessitated by this Response from the deposit account of Applicant's attorneys, Kaye Scholer LLP, Deposit Account No. 11-0228.

---

[1]           Courts routinely consider credible testimony submitted in support of non-functionality.  *See Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 224 (S.D.N.Y. 2004) (finding testimony from Cartier's director of watch marketing regarding the "aesthetic value conveyed by the design of the watch" credible, which emphasized that "functional superiority [was] not among Cartier's objectives");  *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 417 (6th Cir. 2006) (finding statements by the General Motors Senior Vice President of Engineering and Product Development that the "Government's technical specification did not address the exterior appearance or the styling of the [Hummer/Humvee] vehicle."

**EVIDENCE**

Evidence in the nature of Declaration of Lois B. Duquette, Esq. and Exhibits A to G; Declaration of Volker Kramer and Exhibits A to B; Report of Robert L. Klein: Secondary Meaning Survey Methodology and Results has been attached.

**Original PDF file:**

evi_9820418729-103538399_._Executed_Duquette_declaration_with_no_exhibits.pdf

**Converted PDF file(s)** (6 pages)

Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6

**Original PDF file:**

evi_9820418729-103538399_._Duquette_Exhibit_A_screen_caps.pdf

**Converted PDF file(s)** (20 pages)

Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13
Evidence-14
Evidence-15
Evidence-16
Evidence-17
Evidence-18
Evidence-19
Evidence-20

**Original PDF file:**

evi_9820418729-103538399_._Duquette_Exhibit_B.pdf

**Converted PDF file(s)** (16 pages)

Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13
Evidence-14
Evidence-15
Evidence-16

**Original PDF file:**

evi_9820418729-103538399_._Duquette_Exhibit_C.pdf

**Converted PDF file(s)** (2 pages)

119024

Evidence-1
Evidence-2
**Original PDF file:**
evi_9820418729-103538399_._Duquette_Exhibit_D.pdf
**Converted PDF file(s)** (5 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
**Original PDF file:**
evi_9820418729-103538399_._Duquette_Exhibit_E.pdf
**Converted PDF file(s)** (4 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
**Original PDF file:**
evi_9820418729-103538399_._Duquette_Exhibit_F.pdf
**Converted PDF file(s)** (6 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
**Original PDF file:**
evi_9820418729-103538399_._Duquette_Exhibit_G.pdf
**Converted PDF file(s)** (2 pages)
Evidence-1
Evidence-2
**Original PDF file:**
evi_9820418729-103538399_._Executed_Kramer_Declaration_with_exhibits.pdf
**Converted PDF file(s)** (13 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13
**Original PDF file:**
evi_9820418729-103538399_._Robert_Klein_Report.pdf
**Converted PDF file(s)** (150 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9

Evidence-10
Evidence-11
Evidence-12
Evidence-13
Evidence-14
Evidence-15
Evidence-16
Evidence-17
Evidence-18
Evidence-19
Evidence-20
Evidence-21
Evidence-22
Evidence-23
Evidence-24
Evidence-25
Evidence-26
Evidence-27
Evidence-28
Evidence-29
Evidence-30
Evidence-31
Evidence-32
Evidence-33
Evidence-34
Evidence-35
Evidence-36
Evidence-37
Evidence-38
Evidence-39
Evidence-40
Evidence-41
Evidence-42
Evidence-43
Evidence-44
Evidence-45
Evidence-46
Evidence-47
Evidence-48
Evidence-49
Evidence-50
Evidence-51
Evidence-52
Evidence-53
Evidence-54
Evidence-55
Evidence-56
Evidence-57
Evidence-58
Evidence-59
Evidence-60
Evidence-61
Evidence-62
Evidence-63
Evidence-64
Evidence-65
Evidence-66
Evidence-67

Evidence-68
Evidence-69
Evidence-70
Evidence-71
Evidence-72
Evidence-73
Evidence-74
Evidence-75
Evidence-76
Evidence-77
Evidence-78
Evidence-79
Evidence-80
Evidence-81
Evidence-82
Evidence-83
Evidence-84
Evidence-85
Evidence-86
Evidence-87
Evidence-88
Evidence-89
Evidence-90
Evidence-91
Evidence-92
Evidence-93
Evidence-94
Evidence-95
Evidence-96
Evidence-97
Evidence-98
Evidence-99
Evidence-100
Evidence-101
Evidence-102
Evidence-103
Evidence-104
Evidence-105
Evidence-106
Evidence-107
Evidence-108
Evidence-109
Evidence-110
Evidence-111
Evidence-112
Evidence-113
Evidence-114
Evidence-115
Evidence-116
Evidence-117
Evidence-118
Evidence-119
Evidence-120
Evidence-121
Evidence-122
Evidence-123
Evidence-124
Evidence-125

Evidence-126
Evidence-127
Evidence-128
Evidence-129
Evidence-130
Evidence-131
Evidence-132
Evidence-133
Evidence-134
Evidence-135
Evidence-136
Evidence-137
Evidence-138
Evidence-139
Evidence-140
Evidence-141
Evidence-142
Evidence-143
Evidence-144
Evidence-145
Evidence-146
Evidence-147
Evidence-148
Evidence-149
Evidence-150

**SIGNATURE(S)**
**Response Signature**
Signature: /Paul Llewellyn/    Date: 11/25/2010
Signatory's Name: Paul Llewellyn
Signatory's Position: Attorney of record

The signatory has confirmed that he/she is an attorney who is a member in good standing of the bar of the highest court of a U.S. state, which includes the District of Columbia, Puerto Rico, and other federal territories and possessions; and he/she is currently the applicant's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S. attorney or a Canadian attorney/agent not currently associated with his/her company/firm previously represented the applicant in this matter: (1) the applicant has filed or is concurrently filing a signed revocation of or substitute power of attorney with the USPTO; (2) the USPTO has granted the request of the prior representative to withdraw; (3) the applicant has filed a power of attorney appointing him/her in this matter; or (4) the applicant's appointed U.S. attorney or Canadian attorney/agent has filed a power of attorney appointing him/her as an associate attorney in this matter.

Serial Number: 77809223
Internet Transmission Date: Thu Nov 25 10:58:25 EST 2010
TEAS Stamp: USPTO/ROA-XX.XXX.XXX.XX-2010112510582511
7833-77809223-47076b7e8e5436de1b72065542
17a65966b-N/A-N/A-20101125103538399257

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Hershey Chocolate & Confectionary Corporation | ) ) ) | Law Office: 116 |
| Serial No.: | 77/809223 | ) ) | Examining Attorney: John Dwyer |
| Filed: | August 20, 2009 | ) ) | |
| Mark: | Miscellaneous Design (Recessed Rectangular Panels) | ) ) ) ) | |

### DECLARATION OF LOIS B. DUQUETTE, ESQ.

Lois Duquette, Esq., being duly sworn, deposes and states:

1.    I declare the following information from my personal knowledge and if called upon to do so, could competently testify to the facts submitted in this declaration.

### Background

1.    I am Assistant Secretary of applicant Hershey Chocolate & Confectionery Corporation ("HCCC"), and Assistant General Counsel – Global Intellectual Property for The Hershey Company ("Hershey Company"), HCCC's parent company and HCCC's licensee with respect to the product configuration trademark at issue herein.   HCCC is the owner of the product configuration trademark at issue herein (Serial No. 77/809223), as well as Registration No. 3,668,662 for a similar product configuration trademark with the additional mark HERSHEY'S, also referenced below.  HCCC grants The Hershey Company a license to use such trademarks.  (I refer to The Hershey Company and HCCC collectively herein as "Hershey.")  As set forth below, my responsibilities include enforcement, clearance, registration, maintenance and licensing of Hershey's trademarks.

2.    I submit this declaration in support of Hershey's trademark application, Serial No. 77/809223, for a mark which consists of the configuration of a rectangular candy bar with twelve

32056968

(12) equally-sized recessed rectangular panels (each of which is of the same proportion, in terms of height and width, as the rectangular bar itself) arranged in a four panel by three panel format with each panel having its own raised border.   I am familiar with the facts set forth in this declaration based upon my personal knowledge, my experience in clearing, registering and enforcing the Hershey's trademarks, my knowledge of business records relating to trademark registration and enforcement of trademarks maintained by Hershey in the ordinary course of business, and my general knowledge of the chocolate and confectionery industry and the well-known design of the famous HERSHEY'S chocolate bar gained through many years of employment at Hershey.

3.     I have been employed by The Hershey Company as an attorney since 1997 and have held the position of Assistant General Counsel – Global Intellectual Property since December 2009.  In my positions with Hershey since 1999, I have been responsible for clearing and enforcing trademarks of Hershey in the United States; since 2005, I also have been responsible for U.S. trademark registrations.

## Facts in Support of Trademark Registration

### *The Well-Known HERSHEY'S Bar Design*

4.     The applied-for chocolate bar design has been in use for more than 42 years. Hershey began manufacturing, distributing, and selling chocolate bars embodying this design in 1968.  Hershey's use of its applied-for design has been continuous and exclusive since 1968. The design has been and is used for Hershey's well-known HERSHEY'S chocolate bar, as well as other well-known chocolate bar products such as MR. GOODBAR, SPECIAL DARK and COOKIES - N- CREME candy bars.

119030