## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| GIBSON, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00358-ALM |
| | § | |
| ARMADILLO DISTRIBUTION | § | |
| ENTERPRISES, INC. and | § | |
| CONCORDIA INVESTMENT | § | |
| PARTNERS, LLC, | § | |
| | § | |
| Defendants. | § | |

## <u>DEFENDANTS' MOTION FOR ENTRY OF FINAL JUDGMENT</u>

| | |
|---|---|
| Jerry R. Selinger, Lead Counsel<br>State Bar No. 18008250<br>PATTERSON + SHERIDAN, LLP<br>1700 Pacific Ave., Suite 2650<br>Dallas, Texas 75201<br>Tel: (214) 272-0957<br>Fax: (713) 623-4846<br>jselinger@pattersonsheridan.com<br>Craig V. Depew<br>Texas State Bar No. 05655820<br>PATTERSON + SHERIDAN, LLP<br>24 Greenway Plaza, Suite 1600<br>Houston, Texas 77046<br>Tel: 832-968-7285<br>Fax: 713-623-4846<br>cdepew@pattersonsheridan.com | Kyrie K. Cameron<br>State Bar No. 24097450<br>PATTERSON + SHERIDAN, LLP<br>24 Greenway Plaza, Suite 1600<br>Houston, Texas 77046<br>Tel: (713) 623-4844<br>Fax: (713) 623-4846<br>kcameron@pattersonsheridan.com<br><br>*ATTORNEYS FOR DEFENDANTS*<br>*ARMADILLO DISTRIBUTION*<br>*ENTERPRISES, INC. AND CONCORDIA*<br>*INVESTMENT PARTNERS, LLC* |

## **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................1

II.    GIBSON IS NOT ENTITLED TO AN INJUNCTION OR ACCOUNGING FOR GUITAR BODY SHAPES GIBSON PROTECTED BY NOW-EXPIRED DESIGN PATENTS ............................................................................................................2

       A.    Gibson's Expired Design Patents on the Four Trademarked Body Shapes.............3

       B.    Because the Lanham Act Did Not, and Cannot, Create a Species of Perpetual Patent, Gibson is Not Entitled to Injunctive Relief or Accounting Based on Infringement of Body Shapes Covered by Expired Gibson Design Patents ..........................................................................................................4

       C.    Gibson is Not Entitled to Injunctive Relief (or an Accounting) for "Counterfeiting" By Copying a Body Shape of an Expired Design Patent...........10

III.   THE COURT SHOULD NOT GRANT GIBSON AN INJUNCTION FOR EITIHER OF GIBSON'S TWO WORD MARKS ...........................................................12

       1.    Gibson's Flying V Work Mark .....................................................................12

       2.    Gibson's Hummingbird Word Mark..............................................................13

       3.    The Law of Injunctive Relief Regarding Discontinued or "One-Off" Uses..........13

IV.   GIBSON IS NOT ENTITLED TO INJUNCTIVE RELIEF BASED ON THE JURY FINDINGS OF LACHES AND LACK OF WILLFUL INTENT....................................14

V.    DEFENDANTS ARE THE PREVAILING PARTIES ....................................................16

VI.   CONCLUSION....................................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*
    518 F.3d 321 (5th Cir. 2008) ............................................................15

*Bd. Of Supervisors for La. State Univ. Agric. & Mech. Coll. V. Smack Apparel Co.,*
    550 F.3d 465 (5th Cir. 2008) ............................................................15

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*
    489 U.S. 141 (1989)............................................................................5

*Chao v. Transocean Offshore, Inc.,*
    276 F.3d 725 (5th Cir. 2002) ............................................................13

*Compco Corp. v. Day-Brite Lighting, Inc.,*
    376 U.S. 234 (1964)..................................................................6, 8, 11

*Conans Props. V. Conans Pizza, Inc.*
    752 F.2d 145 (5th Cir. 1981) ...........................................................15

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
    539 U.S. 23 (2003)................................................2, 4, 5, 6, 8, 11

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006)............................................................................3

*Elvis Presley Enterprises, Inc. v. Capece,*
    141 F.3d 188 (5th Cir. 1998) ............................................................13

*Jordan Kahn Music Co., LLC v. Taglioli,*
    2023 U.S. Dist. LEXIS 33143 (E.D. Tex. Feb. 28, 2023.......................1, 17, 18

*Kellogg Co. v. National Biscuit Co.,*
    305 U.S. 111 (1938)....................................................................5, 6, 8

*Sears, Roebuck & Co. v. Siffel Co.,*
    375 U.S. 225 (1964)........................................................................5, 7

*Studiengesellschaft Kohle mbH v. Eastman Kodak Co.,*
    713 F.2d 128 (5th Cir. 1983) ............................................................17

*Swift & Co. v. United States*,
    276 U.S. 311 (1928)..................................................................................................14

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*
    532 U.S. 23 (2001)....................................................................................................5

*United States v. W.T. Grant Co.*,
    345 U.S. 629 (1953)................................................................................................14

**<u>Statutes</u>**

15 U.S.C. § 1116(d)(1)(B)(ii) ...............................................................................................11

15 U.S.C. § 1127 ……………………………………………………………………………11, 13

<u>Rules</u>

Fed. R. Civ. P. 54.....................................................................................................................16

## I.    INTRODUCTION

The 2025 jury verdict reflects a seismic shift in outcome compared to the jury verdict in 2022. This time, after also hearing recorded testimony from Gibson's 30(b)(6) corporate representative, seeing additional trial exhibits, and hearing testimony from additional third-party witnesses, the jury wholly absolved Defendant Concordia Investment Partners, LLC ("Concordia") from any wrongdoing. The jury also found that Armadillo Distribution Enterprises, Inc. ("Armadillo") did not infringe Gibson's Dove Wing Headstock Design or the ES body shape design, found the elements of laches, and found that Armadillo did not willfully infringe any asserted Gibson trademark. In so finding, the jury declared that Armadillo sales generating approximately 90% of Armadillo's profits from accused guitars for the relevant period were of non-infringing products. The jury also found Gibson's ES body shape was generic and agreed with Armadillo and Concordia that Gibson's registration on the USPTO Supplemental Register should be cancelled. The Court granted an agreed JMOL that Gibson had no actual damages. The jury found Gibson was not entitled to any counterfeiting statutory damages and awarded the sum of $1.00 (one dollar) of Armadillo's profits. These, and other jury findings, are reflected in Defendants' proposed Final Judgment, filed herewith. Concordia and Armadillo were the prevailing parties, although Defendants believe that the Court should order the two sides to cover their own costs. *See Jordan Kahn Music Co., LLC v. Taglioli*, 2023 U.S. Dist. LEXIS 33143 *33 (E.D. Tex. Feb. 28, 2023) (Mazzant, J.).

In the 2022 trial, Gibson introduced evidence of its long-expired 1958 design patents for the Flying V and Explorer body shapes. *See* 2022 Tr. 506, 1489; PTX62 at 23, 27. Not surprisingly, Gibson did not object when Defendants in 2025 introduced certified copies of those

two expired design patents. DTX5001; DTX5002.  The Court also properly admitted certified copies of Gibson's expired patents for the SG and ES body shapes.  DTX5003; DTX5004.

During the charge conference, in response to Defendants' request for a jury instruction reflecting the guidance in *Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23 (2003), Gibson argued that "what the defendants are seeking is some modification of the legal remedies that would be available if infringement and/or counterfeiting was found. I think that is a pure legal question that would not inform the jury's decision in any manner in this case."  Tr. 1652.  While Gibson managed to avoid a *Dastar* jury instruction, under Gibson's theory, the *Dastar* issue is now ripe and settled law bars injunctive relief or an award of Armadillo's profits to Gibson.

For avoidance of confusion, Defendants respond here without waiver of any rights either or both may have, including but not limited to, under Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure.

## II.    GIBSON IS NOT ENTITLED TO AN INJUNCTION OR ACCOUNTING FOR GUITAR BODY SHAPES GIBSON PROTECTED BY NOW-EXPIRED DESIGN PATENTS

Gibson's President and CEO, Cesar Gueikian, was unapologetic that Gibson has "exclusive rights by virtue of the trademark."  Tr. 879.  He left no doubt Gibson improperly seeks perpetual exclusive rights to its body shapes using the Lanham Act, despite having had fourteen year "monopol[ies]" on each of them.  *See Dastar*, 539 U.S. at 33-34 ("the rights of a patentee or copyright holder are part of a 'carefully crafted bargain' … under which, **once the patent or copyright monopoly has expired, the public may use the invention or work at will and without attribution**.") (citations omitted) (emphasis added).

2

To obtain a permanent injunction, Gibson must establish "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Absent irreparable injury, a permanent injunction is not warranted.

A.    Gibson's Expired Design Patents on the Four Trademarked Body Shapes

There is no irreparable injury as to any of the trademarked body shapes based on the undisputed record. Gibson obtained design patents on its Flying V and Explorer body shapes in 1958. Gibson's fourteen year monopoly on those two body shapes expired in 1972. DTX5001; DTX5002. Gibson was aware that Dean Zelinsky introduced his DEAN Z and DEAN V guitars at the 1977 NAMM show. Tr. 801-802, 989-90. Gibson's 1978 agreement with Ibanez identified Gibson's common law rights and federal registrations for names and body shapes, but made no mention of any federal or common law rights relating to the Flying V or Explorer body shapes (or names). Tr. 510:24-511:10; PTX-137, at 8-10.

Gibson filed trademark applications for the Flying V and Explorer body shapes in 1994, claiming 1958 dates of first uses, despite having abandoned the Explorer brand for 15 years and the Flying V brand for some lesser period of time. Trademarks were issued for the Flying V and Explorer body shapes in 1997. PTX-1, PTX-2. During the many years that passed after these two Gibson design patents expired, even before Gibson filed for or obtained its two trademarks, numerous third parties marketed and sold Explorer style and Flying V style guitars. *See, e.g.*, Tr. 528, 530, 536, 1261, 1269-70, 1275-77.

3

Gibson filed a trademark application for the generic ES body shape in 1994, also claiming a first use in 1958. Gibson obtained only supplemental registration, in 1996. PTX-4. Gibson then obtained a design patent on the ES body shape, obtaining a 14 year monopoly which expired in February 2012. DTX-5003. Gibson filed a trademark application for the SG body shape in 1997, claiming a first use in 1961. It issued in 1999. PTX-34. Gibson also obtained a design patent on the SG body style, obtaining a 14 year monopoly which expired in February 2013. DTX-5004.

> B.    Because The Lanham Act Did Not, and Cannot, Create a Species of Perpetual Patent, Gibson is Not Entitled to Injunctive Relief or Accounting Based on Infringement of Body Shapes Covered by Expired Gibson Design Patents

Gibson's claims are based on Lanham Act and Texas common law trademark infringement and unfair competition. Doc. No. 464, at 3. *Dastar* warned that Congress could not use the Lanham to create a type of perpetual patent. *Dastar*, 539 U.S. at 37 (rejecting an effort that "would be akin to finding that § 43(a) [of the Lanham Act, 15 U.S.C. § 1125(a)] created **a species of perpetual patent and copyright, which Congress may not do**." (emphasis added)). Doing so would violate Article 1, Section 8, Clause 8 of the United States Constitution.

Even though he did not do so, Dean Zelinsky had the right to make exact copies of Gibson's Flying V and Explorer body shapes in 1977, five years after Gibson's patents expired. Armadillo had the right to continue making the exact shapes Mr. Zelinsky had used for the DEAN V and DEAN Z guitars. Mr. Zelinsky proudly placed the DEAN name on each guitar headstock. Armadillo proudly placed the DEAN or LUNA name on each guitar headstock, as well as on each hangtag and on the corresponding warranty card. Tr. 1089:8-24; Tr. 1104:1-4; Tr. 1236:9-15; Tr. 1610:25-1611:10. They never passed off any of their DEAN or LUNA brand guitars as those of Gibson. Tr. 1089:8-24, 1104:1-4; Tr. 1610:25-1611:10.

4

The facts and precise holding in *Dastar* also are instructive. *Dastar* took a creative work in the public domain, made some minor changes, and sold it as its own, without attribution. For this, it was accused of violating Section 43(a) of the Lanham Act by making "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods." *Id.* at 31. In refusing to allow creation of a species of perpetual patent or copyright, the Court announced:

> The right to copy, and to copy without attribution, once a copyright has expired, like 'the right to make [an article whose patent has expired]—including the right to make it in precisely the shape it carried when patented—passes to the public.' *Sears, Roebuck & Co.* v. *Stiffel Co.,* 376 U. S. 225, 230 (1964); see also *Kellogg Co.* v. *National Biscuit Co.,* 305 U. S. 111, 121-122 (1938). 'In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying.' *TrafFix Devices, Inc.* v. *Marketing Displays, Inc.,* 532 U. S. 23, 29 (2001). The rights of a patentee or copyright holder are part of a 'carefully crafted bargain,' *Bonito Boats, Inc.* v. *Thunder Craft Boats, Inc.,* 489 U. S. 141, 150-151 (1989), under which, once the patent or copyright monopoly has expired, the public may use the invention or work at will and without attribution. Thus, in construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright. *TrafFix,* 532 U. S., at 29. **'The Lanham Act,' we have said, 'does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity.'**

*Id.,* at 34 (brackets in original) (emphasis added).

The Court then held that the phrase "origin of goods" in Section 43(a) refers to the producer of the tangible goods that are offered for sale, and not to the author of "any idea, concept, or communication embodied in those goods." *Id.* at 37. "Because we conclude that *Dastar* was the 'origin' of the products it sold as its own, respondents cannot prevail on their Lanham Act claim." *Id.* at 38.

Gibson's federal claims are under the Lanham Act, including Section 43(a). Because there is no dispute that Armadillo is the origin of the products it sold under the DEAN and

5

LUNA brands, Gibson is not entitled to relief under Section 43(a) of the Lanham Act.  Gibson also asserted federal trademark infringement claims under the Lanham Act. However, Gibson, having participated in the carefully crafted bargain by obtaining design patent protection, dedicated the patented subject matter to the public upon the expiration of each design patent. Mr. DeCola and Mr. Davidson conceded DTX-5001 and DTX-5002 are the body shapes of the Flying V and Explorer.  Tr. 209:23-201:22, 224:20-24, 225:15-24, 503: 15-21.  *Dastar* instructs Gibson cannot now use the Lanham Act to prevent others from copying the subject matter of its design patents.  For this reason also, Gibson is not entitled to any relief.

*Dastar* did not introduce a new legal principle.  *Dastar* approvingly cites, among other cases, *Kellogg Co. v. National Biscuit Co*., 305 U. S. 111, 121-122 (1938). There, the Supreme Court would not let National Biscuit Company use trademarks to deprive the public of the right to copy the pillow shape of Shredded Wheat after a design patent had expired or to refer to the pillow-shaped product as Shredded Wheat.  *Id*.

Nor can Gibson rely on its state law claims for a perpetual monopoly based on trademarks.  In *Compco Corp. v.  Day-Brite Lighting, Inc*., 376 U.S. 234 (1964), Day-Brite sued for infringement of its design patent on a reflector and for unfair competition. Day-Brite's unfair competition was based on allegations that the public and the trade had come to associate this particular design with Day-Brite, that Compco had copied Day-Brite's distinctive design so as to confuse and deceive purchasers into thinking Compco's fixtures were actually Day-Brite's, and that by doing this Compco had unfairly competed with Day-Brite.  *Id*. at 234-35.  The district court held Day-Brite's design patent to be invalid, but found "the overall appearance of Compco's fixture was 'the same, to the eye of the ordinary observer, as the overall appearance' of Day-Brite's reflector, which embodied the design of the invalidated patent; that the

6

appearance of Day-Brite's design had 'the capacity to identify [Day-Brite] in the trade and does in fact so identify [it] to the trade'; that the concurrent sale of the two products was 'likely to cause confusion in the trade;' and that '[a]ctual confusion has occurred.'" *Id*. at 235.  According to the Supreme Court, none of that mattered.

The Supreme Court explained: "Even accepting the findings, **we hold that the order for an accounting for damages and the injunction are in conflict with the federal patent laws**." *Id.* at 237 (emphasis added).  Further elaborating, the Court explained:

> Today we have held in *Sears, Roebuck & Co.* v. *Stiffel Co., supra,* that when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article. To forbid copying would interfere with the federal policy, found in Art. I, § 8, cl. 8, of the Constitution and in the implementing federal statutes, of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain.
> …
>
> [W]hile the federal patent laws prevent a State from prohibiting the copying and selling of unpatented articles, they do not stand in the way of state law, statutory or decisional, which requires those who make and sell copies to take precautions to identify their products as their own.

*Id*. at 237-238.  That caveat is unavailing to Gibson because the undisputed evidence is that Armadillo proudly identifies the Explorer and V body style guitars as its products, labelling each guitar with the DEAN brand and logo.  Tr. 1089:8-24; Tr. 1610:25-1611:10; DTX-1504; DTX-1505.

Turning to the accused Luna Athena 501 and Gran Sport guitars, these Armadillo discontinued products had ES and SG body shapes.  Even if Gibson's ES body shape was not generic, Gibson would not be entitled to accounting or injunctive relief because, as Mr. DeCola conceded, Gibson obtained design patents on the ES and SG body shapes.  Tr. 226:21-227:2, 228:10-229:5, 230:7-17; DTX-5003; DTX-5004.  Because those design patents are expired,

Gibson is not entitled to an injunction or an accounting for Armadillo profits relating to its sales of its DEAN V, DEAN Z, LUNA Athena 501 or Gran Sport guitars.

Stated differently, Gibson has not suffered an irreparable injury relating to any of the three body shape marks that are not generic. First, Gibson dedicated those shapes to the public. *See, e.g., Dastar, supra; Compco, supra; Kellogg, supra.* Second, Armadillo has labelled its guitars as DEAN or LUNA guitars and has not passed off any of its DEAN V, DEAN Z, or Gran Sport guitars as Gibson guitars. Tr. 1089:8-24, 1104:1-4 (Rubinson); Tr. 1610:25-1611:10 (Schuleit). For these reasons alone, Gibson is not entitled to injunctive relief. *See, e.g., Dastar, supra; Compco, supra; Kellogg, supra.*

With that said, the public interest also would be disserved if Gibson were to obtain a further monopoly on body shapes for which it already had the benefit of fourteen year patent monopolies. Fans and customers of the DEAN Z and DEAN V guitars, like Gibson's fans and customers, want the same body shapes as the DEAN Z and DEAN V guitars had in 1977. Mr. DeCola opined that Gibson's fans and customers would be very upset if Gibson did not consistently provide them with Explorer and Flying V guitars having with the same body shapes as when Gibson first introduced those guitars. Tr. 233. Not surprisingly, Josh Maloney, Armadillo's former director of artist relations, testified that fans and customers of DEAN Z and DEAN V guitars would also be upset if they could not get the same body shapes as when Dean Zelinsky first introduced those guitars. Tr. 1316:5-21.

Moreover, the public interest is disserved by rewarding Gibson's use of confrontation and litigation to keep others from copying body shapes Gibson long ago dedicated to the public. Gibson had a pre-bankruptcy reputation of confrontation and litigation. Tr. 941:9-11. Gibson's current regime continues to employ the same tactics. Gibson's post-bankruptcy aggressive

8

posture, *e.g.*, its Play Authentic video and hundreds of threat letters, is further strong evidence of how the public interest is disserved.  *See* PTX-749A, at 2-13; PTX-66.  To be clear, the letters in PTX-749A are not letters about guitars falsely labelled as Gibson guitars.  *See* PTX-164; PTX-170.  Rather, the letters Gibson proudly summarized in PTX-749A are directed at smaller competitors who, in Gibson's opinion, strayed too close to body styles Gibson had long ago dedicated to the public.

Third-party witnesses testified about the adverse impact of Gibson threats.  Tr. 1149:7-1151:8, 1151:22-1152:25 (Eastman Guitars had to hire counsel to respond to Gibson cease and desist letters before and after Gibson's bankruptcy); Tr. 1110:24-1211:24, 1214:23-25, 1221:1-24 (Firehouse reduced orders); Tr. 1226:3-1227:3, 1228:8-17 (Reverend Guitars discontinued selling V-style guitars because of the threat of litigation).  One of Gibson's largest competitors, Fender, unilaterally dropped a V body-style guitar brand after it acquired a smaller competitor to avoid confrontation with Gibson over body shape.  Tr. 372:2-8.  That Gibson has only one district court litigation pending – against Defendants – does not suggest a newer, kinder Gibson.  On the contrary, by continuing to aggressively threaten much smaller competitors for seeking to exercise rights flowing from the Constitution, Gibson is sending exactly the threatening message to the industry announced in its Play Authentic video.  Gibson's behavior – over body shapes Gibson dedicated to the public – should not be further incentivized. *See also* Tr. 1115:13-1116:12.

The balance of hardships also favors Armadillo.  Armadillo continues to employ some of the same craftsmen to make DEAN Z and DEAN V guitars in the Tampa factory that made these same guitars before Elliott Rubinson acquired the DEAN business.  That is their skillset.  While the DEAN Z and DEAN V guitars represent only a fraction of Armadillo's profit, they are the tie

that connects Armadillo and the history of DEAN guitars to loyal fans and customers of the DEAN brand.

Contrast this with Gibson's checkered connection to its Explorer and Flying V body style guitars. Gibson shipped about 20 Explorer guitars in 1958 and 1959, and about 80 Flying V guitars in 1958-1959. Gibson ceased production of Flying V and Explorer guitars in 1959, although it may have sold a small number using leftover guitar components into the early 1960s. Between 1958 and 1977, Gibson advertised its Flying V and Explorer guitars only in a 1958 Gibson newsletter to distributors. While Gibson claims it reintroduced its Explorer style guitar in 1975, it has no evidence that any were shipped in 1975 or 1976. During the time Gibson abandoned its Explorer guitar, competitors such as Hamer and Ibanez developed the marketplace. Ibanez introduced V-style and Explorer-style guitars in 1975, Tr. 980:22-989:6. Mr. Berryman became Gibson's president in the 1980s. He opined there were "dozens and dozens" of similarly shaped guitars in the marketplace. Tr. 528:11-16, 530:3-7, 536:5-9. Gibson did just fine when having to compete on the merits for sales of Explorer-style and V-style guitars before it obtained the first of its trademarks. The balance of hardships also favors Armadillo.

C. Gibson is Not Entitled to Injunctive Relief (or an Accounting) for "Counterfeiting" By Copying a Body Shape of an Expired Design Patent

Gibson's counterfeiting claim arises under the Lanham Act. For the same reasons Gibson is not entitled to injunctive relief (or an accounting of Armadillo's profits) for trademark infringement, Gibson is not entitled to injunctive relief for counterfeiting. Armadillo did not pass off any of its guitars as those of Gibson, Armadillo affirmatively labelled its guitars with the DEAN or LUNA brand, and Armadillo had the right to copy the expired patent designs. Further, the jury loudly announced that Gibson is not entitled to statutory damages.

10

The jury instruction on which Gibson insisted directly contradicts Armadillo's free and unfettered right to even exactly copy the body shapes of Gibson's expired design patents. For context, the Court's preliminary instruction on counterfeiting correctly instructed the jury that counterfeiting required passing off. Tr. 15. During the charge conference, however, Gibson inaccurately represented that its proposed charge "is the statutory language that is contained at 15 USC 1116(d)(1)(B)(ii) and it is a straight lift from the statute…." Tr. 1653-54. Section 1116(d)(1)(B)(ii), however, is limited to remedies "made available by reason of section 220506 of Title 36." And that section of Title 36 protects the name "United States Olympic and Paralympic Committee" and words and symbols specific to the Olympics. Section 1116(d)(1)(B)(i) otherwise applies and uses different language, including the word counterfeit.

Importantly, the Lanham Act defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Over Defendants' specific objection, Tr. 1651, Gibson convinced the Court to delete the critical word "spurious" from the instruction for counterfeit. Tr. 1779-80. This enabled Gibson to tell the jury that copying a shape identical or substantially identical to Gibson's registrations was a counterfeit, *see, e.g.*, Tr. 1668, even though there had been no passing off by Armadillo and Gibson's former president and 30(b)(6) witness volunteered "counterfeit" required passing off. Tr. 548:17-25, 1001:18-20.

Gibson's counterfeiting instruction cannot lead to an injunction because it is "in conflict with the federal patent laws," *Compco* 376 U.S. at 237, and violates the carefully crafted bargain under which, once the patent or copyright monopoly has expired, the public may use the invention or work at will and without attribution. *Dastar*, 539 U.S. at 33-34.

11

III.   **THE COURT SHOULD NOT GRANT GIBSON AN INJUNCTION FOR EITHER OF GIBSON'S TWO WORD MARKS**

The Court should not grant Gibson equitable relief relating to its "FLYING V" or "HUMMINGBIRD" word marks.

    1.   <u>Gibson's Flying V Word Mark</u>

Gibson's 2017 cease and desist letter did not accuse Armadillo of infringing either of Gibson's word marks.  DTX-3333.  Gibson's Flying V Word Mark infringement case was based on a single, seven line Instagram Post **from 2013**, PTX-376. The post began with "deanguitars." The seven lines also included www.deanguitars.com.  The last line finishes with "#Flying V." *Id*.

Gibson's evidence shows the reference to "Flying V" at Armadillo was a one-time occurrence at Armadillo. Chris Cannella, who works for Armadillo, testified in response to questions from Gibson that he had not known anyone at Armadillo who used the term Flying V. Tr.  588:10-18. Armadillo has never used Flying V alone, and someone at Armadillo used #FlyingV once, twelve years ago in the "hashtags" of an Instagram post.

Armadillo has not used "Flying V" since 2013, even though that phrase is used by Gibson and the guitar industry in a nominative sense to describe a body shape, not a source.  Gibson's website identifies "Flying V" as a body style, not a brand.  Mr. DeCola admitted the phrase is "very descriptive."  Tr. 182:22-23.  Mr. Abend's chart described the body style of his kit as a "Flying V."  He testified, "everyone I have known in the music business has called any V-shaped guitar … a Flying V."  Tr. 1133:9-16.  George Gruhn testified to that as well.  Tr. 1274:8-17. Nonetheless, Armadillo has not made any use of that phrase in 12 years.

2. Gibson's Hummingbird Word Mark

For its Hummingbird argument, Gibson relied on a Luna guitar printed catalog from 2013.  PTX-542.  The front cover says "Luna Guitars."  One must turn sixteen pages in the 2013 Luna Guitars paper catalog to find the page that shows and describes the LUNA Fauna Hummingbird.  *Id.* at ARMADILLO3955.

The guitar headstock has the word LUNA.  The guitar does not have the word hummingbird on it.  The guitar body has an abalone inlay depicting a hummingbird.  Directly under the guitar in the catalog is the word "fauna" right before the word hummingbird and followed by a description of the depicted hummingbird scene.  Armadillo discontinued the Luna Fauna Hummingbird in 2020.  Tr. 1108:1-1109:3. The years of inactivity evidence that Armadillo does not intend to resume manufacturing of the Luna Fauna Hummingbird. *Cf.* 15 U.S.C. § 1127 (nonuse for three years is presumptive evidence of abandonment).

3. The Law of Injunctive Relief Regarding Discontinued or "One-Off" Uses

An injunction is an extraordinary remedy, where a potential violation is presented to the Court in a motion to show cause why a party should not be held in contempt.   "Good faith is not a defense to civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002).  For this reason, "[t]he cessation of infringing activity does not affect the determination of liability, but it may make an injunction unnecessary."  *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 198 (5th Cir. 1998).

The Court should exercise its discretion and not enter a permanent injunction regarding either of Gibson's two word marks.  The Armadillo use on which Gibson relied in the case of its

word mark "Flying V" was a 12 year old one-off Instagram post.  Armadillo discontinued the LUNA Fauna guitar bearing a hummingbird inlay in 2020.

The purpose of an injunction is to prevent future violations.  *See, e.g.*, *Swift & Co. v. United States*, 276 U.S. 311, 326 (1928).  "The moving party must satisfy the court that relief is needed.  The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).[1]  Gibson did not meet this burden. And the reality is, there is no threat of future violations.

The jury found that Armadillo did not willfully infringe either of the two word marks (or any of the three body-shape marks).  Doc. No. 754 at 3 (Question No. 4).  This is telling evidence that there is no cognizable danger of "recurrent violation" of either of the two word marks.  Gibson's trial evidence confirms there is no cognizable danger of recurrent violation: a single Instagram post from 2013 using "#FlyingV"; and a printed catalog of different guitars in a suite of LUNA flora and LUNA fauna guitars, when sales of the accused guitar was discontinued four years ago.  As in *Grant*, there is no cognizable danger of recurring violation.  *Id*. at 633.

## IV.    GIBSON IS NOT ENTITLED TO INJUNCTIVE RELIEF BASED ON THE JURY FINDINGS OF LACHES AND LACK OF WILLFUL INTENT

The jury found Armadillo did not willfully infringe any of the five Gibson marks for which it found infringement.  Doc. No. 754, at 3 (Question No. 4).  The jury found Gibson inexcusably delayed in asserting each of those five trademarks against Armadillo.  *Id*. at 4

---

[1] *Grant* separately assessed when discontinued activity made a case moot and when, despite activity being discontinued, a permanent injunction was warranted. For avoidance of confusion, the quoted *Grant* language is the burden on a party seeking a permanent injunction to show there is some cognizable danger of recurrent violation.

14

(Question Nos. 5, 6).  The jury found Gibson's unreasonable delay caused undue prejudice to Armadillo as to each of the five marks.  *Id*. at 5 (Question No. 7).

Laches has three elements: "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *See, e.g., Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.,* 550 F.3d 465, 490 (5th Cir. 2008).  "The period for laches begins when the plaintiff knew or should have known of the infringement." *Am. Rice, Inc. v. Producers Rice Mill, Inc.,* 518 F.3d 321, 334 (5th Cir. 2008).  The jury confirmed that in some instances, Gibson's unreasonable delay was well over 40 years.  Doc. No. 754, at 5-6 (Question No. 8). Thus, Armadillo established laches applies as to each of the three non-generic body shape trademarks and the two word marks.

The jury did find that Armadillo had unclean hands, but only at some unspecified point in time and only in connection with their use of an alleged, unspecified Gibson trademark.  Doc. No. 754, at 6 (Question No. 9).  That finding is not an impediment to laches.  *See Conan Props. v. Am. Rice, Inc. v. Producers Rice Mill, Inc.,* 518 F.3d 321, 334 (5th Cir. 2008). ("In this case the jury did not find and the record would not support a finding of bad faith to deprive Conans of the equitable defenses. Although the parties submitted several special interrogatories to the jury, none asked the jury to determine whether Conans Pizza was an intentional, bad faith infringer **when Conans began using** the CONAN THE BARBARIAN mark and image.") (emphasis added).  Gibson failed to link its unclean hands question to any asserted trademark.

Gibson's failing becomes even more apparent since the jury also found no willful infringement as to any the five "infringed" trademarks. Doc. No. 754, at 3 (Question No. 4).  Consequently, the jury found, as to each of the five marks, Armadillo did not know that it was infringing Gibson's trademark or did not act with deliberate indifference to Gibson's trademark

15

rights.  Doc. No. 746, at 27.   One rational way to harmonize the respective answers to Question No. 4 with that of Question No. 9 is that the jury could have based unclean hands on initial internal communications at Armadillo regarding Gibson's unasserted SG word mark. The jury could reasonably have concluded Armadillo's subsequent public use of Gran Sport instead of GS negated any initial bad intent.  Accordingly, unclean hands should not bar application of laches. *Conan Props., supra; Smack Apparel*, 550 F.3d at 490 ("A defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense.")

Further, the facts of record establish that Gibson is not entitled to a permanent injunction because affirmative acts on Gibson's part implicitly, if not explicitly, authorized Elliott Rubinson and, through him, Armadillo to continue selling DEAN guitars.  Thoroughbred Guitars was the biggest retail seller of DEAN guitars and also at the same time was one of the biggest retail sellers of Gibson guitars. Tr. 486:19-21; Tr. 549:23-550:6; Tr. 1294:4-14; Tr. 1411:9-20. Gibson's then-president, Mr. Berryman, visited Thoroughbred Guitars, as did Mr. Davidson.  Tr. 499:7-16, 549:23-550:14.  Gibson's failure to complain while Mr. Rubinson was selling both Gibson and DEAN guitars constitutes an affirmative act that at least implicitly authorized Armadillo to continue sell DEAN guitars.  For this reason also, the Court should not enter a permanent injunction for any of the guitars models Armadillo sold while Elliott Rubinson remained alive, until his unfortunate passing in 2017.

## V.    DEFENDANTS ARE THE PREVAILING PARTIES

Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, litigation costs are allowed to the "prevailing party."  Fed. R. Civ. P. 54(d)(1).  Where a defendant successfully repels a plaintiff's claims that results in a finding of no illegal conduct, a defendant prevails for purposes

16

of Rule 54(d). *See, e.g., Jordan Kahn*, 2023 U.S. Dist. LEXIS 33143 *27 n.4, *citing Studiengesellschaft Kohle mbH v. Eastman Kodak Co.,* 713 F.2d 128, 131 (5th Cir. 1983).

Defendant Concordia successfully defeated all of Gibson's claims against it. Moreover, Concordia prevailed on the cancellation counterclaim against Gibson's ES registration pursued jointly with co-defendant Armadillo. There should be no doubt that Concordia is the prevailing party against Gibson.

Turning to Defendant Armadillo, Armadillo also prevailed (with Concordia) on its trademark cancellation counterclaim against Gibson's ES registration. In addition, Armadillo successfully repelled Gibson's infringement claims as to sales of Armadillo guitars amounting to approximately 90% of all Armadillo accused sales. *See* Doc. No. 754, Question Nos. 1, 15 (finding Armadillo did not infringe the ES Body Shape or the Dove Wing Headstock, constituting 90% of Armadillo's profits). Moreover, the jury awarded Gibson only one dollar ($1.00) for fair and reasonable compensation. And, for the reasons expressed above, Gibson is not entitled to injunctive relief because Armadillo fairly labels its guitars, and Gibson dedicated the body shapes to the public by obtaining design patents on the Flying V, Explorer and SG body shapes. On balance, Armadillo is also the prevailing party against Gibson.

With that said, Defendants believe the facts warrant each side bearing its own costs. In *Jordan Kahn*, the parties filed competing motions for costs. *Id*., 2023 U.S. Dist. LEXIS 33143, *6. The parties collectively moved for costs and did not provide a way to assign certain costs to a specific entity. *Id.* at * 30. Moving for costs at this stage of our case would be premature, since the Court has not yet determined the prevailing party. Armadillo and Concordia will, however, collectively move for costs because they do not have a way to assign certain costs to a specific party. As in *Jordan Kahn,* it will be is "extremely difficult" if not impossible for

17

Concordia and Armadillo to separate what costs each party incurred. *Jordan Kahn*, 2023 U.S.
Dist. LEXIS 33143, *33. As the Court found in *Jordan Kahn*, the circumstances here warrant
each side bearing their own costs.

## VI.    CONCLUSION

In view of the foregoing, the Court should enter Defendants' proposed Final Judgment.

*/s/ Jerry R. Selinger*
Jerry R. Selinger, Lead Counsel
State Bar No. 18008250
PATTERSON + SHERIDAN, LLP
1700 Pacific Ave., Suite 2650
Dallas, Texas 75201
Tel: (214) 272-0957
Fax: (713) 623-4846
jselinger@pattersonsheridan.com
Craig V. Depew
Texas State Bar No. 05655820
PATTERSON + SHERIDAN, LLP
24 Greenway Plaza, Suite 1600
Houston, Texas 77046
Tel: 832-968-7285
Fax: 713-623-4846
cdepew@pattersonsheridan.com
Kyrie K. Cameron
State Bar No. 24097450
PATTERSON + SHERIDAN, LLP
24 Greenway Plaza, Suite 1600
Houston, Texas   77046
Tel: (713) 623-4844
Fax: (713) 623-4846
kcameron@pattersonsheridan.com

ATTORNEYS FOR DEFENDANTS
ARMADILLO DISTRIBUTION
ENTERPRISES, INC. AND CONCORDIA
INVESTMENT PARTNERS, LLC

18

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF electronic filing system on April 11, 2025.

*/s/ Jerry R. Selinger*
Jerry R. Selinger