IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

GIBSON, INC., a Delaware corporation,  )
                                       )
                                       )
        Plaintiff/Counterclaim-Defendant,  )   Case No. 4:19-cv-00358-ALM
                                       )
vs.                                    )
                                       )
ARMADILLO DISTRIBUTION                 )
ENTERPRISES, INC.; CONCORDIA           )
INVESTMENT PARTNERS, LLC,              )
                                       )
        Defendant/Counterclaim-Plaintiff  )
                                       )
DOES 1 through 10,                     )
                                       )
        Defendants.                    )

**PLAINTIFF GIBSON, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR FINAL JUDGMENT**

## <u>TABLE OF CONTENTS</u>

**I.  DEFENDANTS' MOTION IMPROPERLY ASKS THE COURT FOR JUDGMENT AS A MATTER OF LAW**……………………………………………………….……..1

  A.  Defendants' Patent Theory Asks the Court to Disregard the Jury's Verdict And is An Improper Argument at this Stage………….…………………………………………………1

  B.  Defendants' Argument Regarding the Jury Instruction on Counterfeiting Improperly Asks the Court to Put Aside the Jury's Verdict…..…………………………………………6

  C.  Defendants' Laches Argument Asks the Judge to Disregard the Jury's Finding that Armadillo had "Unclean Hands."…………….………………………………………..7

**II.  DEFENDANTS FAIL TO DEMONSTRATE THAT THE COURT SHOULD NOT ISSUE A PERMANENT INJUNCTION AND AN ACCOUNTING OF ARMADILLO'S ILL-GOTTEN PROFITS**………………………………………………………………9

  A.  Injunction……………………………………………………………………….9

  B.  Accounting………………………………………………………………………16

**III.  GIBSON IS THE PREVAILING PARTY**……………………………………...……17

**IV.  CONCLUSION**…………………………………………………………..……..18

## TABLE OF AUTHORITIES

*Alabama v. North Carolina*
 560 U.S. 330, (2010)……………………………………………………………………..4

*Blue Bell Creameries, L.P. v. Denali Co., LLC*
 No. H-08-0981, 2008 WL 2965655, at *7 (S.D. Tex. July 31, 2008)……………………………13,14

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*
 489 U.S. 141 (1989)…………………………………………………..…………………………2

*Coach, Inc. v. Handbags*
 No. H-10-259, 2012 WL 13042944, *24-28 (S.D. Tex. May 11, 2012)…………………….…….11

*Compco Corp. v. Day-Brite Lightning, Inc.*
 376 U.S. 234 (1964)……………….…………………………………………………………2

*Conan Props., Inc. v. Conans Pizza, Inc.*
 752 F.2d 145 (5th Cir. 1985)……………………………………………………………8

*Choice Hotels Int'l Inc. v. Patel*
 940 F.Supp.2d 532, 542 (S.D. Tex. 2013)………………………………………..……..12

*Diageo N. Am., Inc. v. Mexcor, Inc.*
 661 F. App'x 806 (5th Cir. 2016)………………………………………………….………....9

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
 539 U.S. 23 (2003)………………………………………………………………..2

*eBay Inc. v. MercExchange, L.L.C.*
 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L.Ed.2d 641 (2006)………………………………………9

*Fogleman v. ARAMCO*
 920 F.2d 278, 285 (5th Cir. 1991)…………………………………..……………………17

*Iranian Students Ass'n v. Edwards*
 604 F.2d 352, 353 (5th Cir. 1974)…………………………………..…………………………17

*Jimenez v. Wood County, Tex.*
 660 F.3d 841 (Fifth Cir. 2011)……………………………………………………………6, 7

*Kellogg Co. v. National Biscuit Co.*
 305 U.S. 111 (1938)………………………………………………………………………2

*Mary Kay, Inc. v. Weber*
 661 F.Supp.2d 632, 640 (N.D. Tex. 2009)……………………………………..……..13

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*
  469 U.S. 189, 198, 105 S. Ct. 658, 83 L.Ed.2d 582 (1985)……………………………………………..13

*Paulsson Geophysical Servs., Inc. v. Sigmar*
  529 F.3d 303, 312 (5th Cir. 2008)………………………………………………………….……….11

*Pebble Beach Co. v. Tour 18 I Ltd.*
  155 F.3d 526, 554 (5th Cir. 1998)……………………………………………………………………17

*PIU Mgmt., LLC v. Inflatable Zone, Inc.*
  No. H–08–2719, 2010 WL 681914, at *7 (S.D. Tex. Feb. 25, 2010)……………………………..11

*Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*
  83 F.Supp.2d 810, 832 (S.D. Tex. 1999)……………………………………………………………13

*Ramada Franchise Sys., Inc. v. Jacobcart, Inc.*
  No. CIVA 3:01CV0306D, 2001 WL 540213, at *3 (N.D. Tex. May 17, 2001)………………..…….13

*Rolex Watch USA Inc. v. Meece*
  158 F.3d 816, 823 (5th Cir. 1998)……………………………………………………………………17

*Sears Roebuck & Co v. Siffel Co.*
  375 U.S. 225 (1964)…………………………………………………………………..………….....2

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*
  200 F.3d 358, 369 (5th Cir. 2000)………………………………………………………………....17

*Singer Mfg. Co. v. June Mfg. Co.*
  163 U.S. 169, 185, 16 S. Ct. 1002, 1008 41 L.Ed. 118 (1896)………………………………………..5

*Scrum All., Inc. v. Scrum, Inc.*
  No. 4:20-cv-227, 2020 WL 4016110 at *16 (E.D. Tex. Jul. 16, 2020)……………………………..12

*S & H Indus., Inc. v. Selander*
  No. 3:11–CV–2988–M–BH, 2013 WL 1131077, at *9 (N.D. Tex. March 19, 2013)………………..13

*S & R Corp. v. Jiffy Lube Int'l, Inc.*
  968 F.2d 371, 379 (3d Cir. 1992)……………………………………………………….……………13

*Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*
  713 F.3d 128, 132 (5th Cir. 1983)………………………………………………….………………17

*Swift & Co. v. United States*
  276 U.S. 311, 326 (1928)………………………………………………………………….……...15

*TGI Friday's Inc. v. Great Northwest Restaurants, Inc.*
652 F.Supp.2d 763, 773 (N.D. Tex. 2009)……………………………………………………………13

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*
532 U.S. 23 (2001)……………………………………………………………………………………...2

*United States v. W.T. Grant Co.*
345 U.S. 629 633 (1953)…………………………………………………………...……………15

*Union Nat'l Bank v. Union Nat'l Bank*
909 F.2d 839, 844 (5th Cir. 1990)………………………………………………………………10

Plaintiff Gibson, Inc. ("Gibson") hereby files its Response in Opposition to the Motion for Final Judgment (Dkt. No. 795, hereinafter the "Motion") filed by Defendant Armadillo Distribution Enterprises, Inc. ("Armadillo") and Defendant Concordia Investment Partners, LLC ("Concordia") (collectively, "Defendants"), respectfully showing the Court:

## I.    DEFENDANTS' MOTION IMPROPERLY ASKS THE COURT FOR JUDGMENT AS A MATTER OF LAW.

### A.    Defendants' Patent Theory Asks the Court to Disregard the Jury's Verdict And is An Improper Argument at this Stage.

Defendants argue that because Gibson applied for and obtained design patents on its guitar body shape designs, the expiration of those patents should preclude Gibson from later obtaining trademark rights on and excluding others from using those designs. Defendants tried asserting this theory in their opening and closing arguments at trial, in their proposed jury instructions, and now in the Motion for Final Judgment. Thus, the parties have briefed this topic multiple times,[1] and each time, the Court has found the argument, among other things, improper.

The same holds true here: Defendants "expired design patent" theory improperly asks the Court to render a judgment as a matter of law. Namely, Defendants ask the Court to find that—despite the jury finding that five of Gibson's trademarks at issue are valid, protectable trademarks[2] and that Defendants intentionally infringed upon those trademarks—Gibson should not be able to enforce its marks and exclude Defendants from their unauthorized use. Defendants' Motion is improper because it is not attempting to persuade the Court as to the proper final judgment based upon the jury's verdict; rather, Defendants ask the Court for a final judgment *despite* the jury's verdict.

---

[1] *See e.g.* Dkt. Nos. 697, 705, 706, 718, 726, and 741 (briefing related to Defendant's expired design patent theory).

[2] *See* Jury Verdict Form, Dkt. No. 754 at Question No. 1 (finding Armadillo infringed on five of Gibson's seven trademarks at issue; *see also* Jury Instructions, Trial Transcript Volume 8, at Dkt. No. 767, at 1778-79 (listing as the first required element of trademark infringement that Gibson prove by a preponderance of the evidence that it "owns a valid, protectable trademarks").

Defendants' Motion fundamentally misapprehends both trademark law as well as the purpose of this Motion.

In this regard, Defendants cannot point to any section of the Lanham Act that states a design once covered by a design patent can never be protected as a trademark. Despite this, Defendants urge the Court ignore the jury's affirmative findings, ignore the plain language of the Lanham Act, and ignore the USTPO's granting of federal trademark registrations to Gibson on its guitar body shape designs and instead follow Defendants' unsupported legal theory that patent law conflicts with and supersedes trademark law. The argument is simple: the expiration of a design patent eliminates or greatly reduces the remedies available under the Lanham Act. Defendants cite no cases that hold that proposition nor do they cite any Lanham Act or patent statute language that even suggests, let alone mandates, Defendants' requested result. Instead, Defendants rely on a series of Supreme Court cases, only one of which of is analogous to our facts.[3] The analogous case—*TrafFix*—supports Gibson's position the expired patent defense.

In *TrafFix,* an inventor and his company earned utility patents on a "dual spring" design that made road signs wind resistant. The key invention was visible at the base of the sign. After the utility patents expired, the defendant reverse engineered the product, including the visible springs and sold exact copies. The Court addressed the question of what impact the expired utility patents had on the federal trade dress claim. If the Defendants' theory in this case is correct, the Court's analysis should have been simple: because of the expired patents, the only trademark claim would be for a failure to distinguish the manufacturer of the product.

---

[3] *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23 (2003); *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111 (1938); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141 (1989); *Compco Corp. v. Day-Brite Lightning, Inc.,* 376 U.S. 234 (1964); *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23 (2001); *Sears Roebuck & Co v. Siffel Co.,* 375 U.S. 225 (1964).

But that is not what the Court said or did. Instead, the Court began by acknowledging that product design can earn trademark protection. It then cautioned, however, that trademark protection cannot protect a function of the product. That Court then notes that a utility patent is strong evidence of functionality. Based on the obvious functionality of the invention at issue in that case, as demonstrated by the expired utility patents, the Court had no problem finding that the trademark claim failed because of functionality. In other words, the result was that the trademark claim was defeated not because of the existence of the expired patent but because of what the expired patent claimed.

Of course, the product design patents in our case do not claim functionality. Of paramount importance to this analysis is what *TrafFix* addressed next:

> The Court has allowed trade dress protection to certain product features that are inherently distinctive. *Two Pesos,* 505 U.S., at 774, 112 S.Ct. 2753. In *Two Pesos,* however, the Court at the outset made the explicit analytic assumption that the trade dress features in question (decorations and other features to evoke a Mexican theme in a restaurant) were not functional. *Id.,* at 767, n. 6, 112 S. Ct. 2753. The trade dress in those cases did not bar competitors from copying functional product design features. In the instant case, beyond serving the purpose of informing consumers that the sign stands are made by MDI (assuming it does so), the dual-spring design provides a unique and useful mechanism to resist the force of the wind.

*TrafFix*, 532 U.S. at 24. While *Two Pesos* did not involve design patents, *TrafFix's* analysis makes clear that the rule Defendants attempt to (mis)apply has a logical underpinning that does not extend to non-functional product features like the shape of an electric guitar.

The earlier cases do not save the Defendants. At issue in *Dastar* was defendant's copying of a video after plaintiff let the copyright expire. Finding the information on the video to be in the public domain *because there was no copyright registration,* the Court held that the Lanham Act provisions allowing protection of *unregistered* trademarks inapplicable. *Daystar*, 539 U.S. 23. Our case, however, involves

the enforcement of registered trademarks, and those registrations have been in place during the entirety of these Defendants' infringement.

Defendants attempt to avoid that distinction by arguing that the general principle of trademarks not protecting public domain intellectual property still applies. The premise of that argument is that once a design patent expires, one cannot have a trademark on the design. In addition to the *TrafFix* analysis, the problem with the argument is that nothing in the Lanham Act (or the patent/copyright statutes) says what Defendants contend. The Lanham Act has carefully crafted provisions that define the circumstances under which interested parties can challenge the validity of a registered trademark.[4] "Patent expiration" is not among those circumstances. Courts cannot add provisions to statutes. *Alabama v. North Carolina*, 560 U.S. 330, (2010) (Supreme Court stating "[w]e do not—we cannot—add provisions to a federal statute.").

Recognizing that substantial problem, Defendants turn to *Kellogg*, where the inventor of the shredded wheat concept sued to enforce an unregistered trademark for the name "Shredded Wheat." In denying the claim, the Court noted that the inventor's patents on the machinery used to make shredded wheat had expired. Our Defendants leap at that fact. They do so, however, without recognizing the Court's clear basis for denying the use of the trademark as opposed to the machinery. The Court found and it was undisputed that the phrase "Shredded Wheat" was a generic mark.[5]

Indeed, the Court could not have been clearer in its holding:

> It equally follows from the cessation of the monopoly and the falling
> of the patented device into the domain of things public that along with
> the public ownership of the device there must also necessarily pass to

---

[4] 15 U.S.C. §§ 1064, 1065, 1115

[5] *Kellog*, 305 U.S. at 116 ("First. The plaintiff has no exclusive right to the use of the term 'Shredded Wheat' as a trade name. For that is the generic term of the article, which describes it with a fair degree of accuracy; and is the term by which the biscuit in pillow-shaped form is generally known by the public. Since the term is generic, the original maker of the product acquired no exclusive right to use it.").

the public the *generic* designation of the thing which has arisen during the monopoly.

*Kellogg*, 305 U.S. at 118 (quoting *Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169, 185, 16 S. Ct. 1002, 1008 41 L.Ed. 118 (1896)) (emphasis added). The distinction is again obvious as our case involves trademarks the jury found to be non-generic. Thus, *Kellogg* does not control.

The remaining cases on which Defendants rely deal with the extent to which state law can regulate the use of intellectual property in the public domain.[6] That distinction turns the relevant discussion in the case into *dicta* as the question of whether a state can enact provisions contrary to patent law is significantly different than the question of how the patent statutes and the Lanham Act—each passed by Congress—interact. That distinction makes the *TrafFix* analysis the preferable one to rely on, and if the Court finds that case insufficient, an analysis of the interplay between the relevant statutes mandatory. On the second issue, however, the Defendants give Gibson nothing to respond to because no statutory language exists that says expired patents preempt the Lanham Act, either in whole or on part.

Out of an abundance of caution, however, Gibson first notes that in *Bonita* there was no patent ever issued or applied for and no trademark or trade dress claimed. Instead, plaintiff sued to enforce a state law that purported to protect against copying a manufacturing process. The Court found that federal patent law preempted state law. In so doing, the Court remarked on and limited that other two cases on which Defendants rely, *Sears* and *Compco*. To the extent those cases remain viable, *Bonita* explained why: "we believe that the *Sears* Court correctly concluded that the States may not offer

---

[6] *Bonita*, 489 US at 143 ("We must decide today what limits the operation of the federal patent system places on the States' ability to offer substantial protection to utilitarian and design ideas which the patent laws leave otherwise unprotected."); *Compco*, 376 US at 234 ("As in *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S. Ct. 784, the question here is whether the use of a state unfair competition law to give relief against the copying of an unpatented industrial design conflicts with the federal patent laws.").

patent-like protection to intellectual creations *which would otherwise remain unprotected as a matter of federal law.*" 489 US at 156 (emphasis added).

The emphasized portion of the quote is what the Defendants' argument misses. Defendants and others would be free to copy the shapes after the expiration of the design patents if the products bearing the shapes were "otherwise…unprotected as a matter of federal law." But Lanham Act trademark registrations are a matter of federal law. Defendants can clear that obstacle by removing the registrations based on functionality or genericness, but that did not happen here. As a result, Gibson is entitled to the full force of Lanham Act protection on the shapes for which the jury found infringement, and Gibson respectfully requests the Court deny Defendants' Motion insofar as it asks the Court to disregard the jury's findings and verdict.

**B.    Defendants' Argument Regarding the Jury Instruction on Counterfeiting Improperly Asks the Court to Put Aside the Jury's Verdict.**

Defendants' argument relating to the legal correctness of the jury instruction and resulting jury verdict on counterfeit is another argument that is inappropriate at the motion for final judgment phase and more properly reserved for a motion for judgment as a matter of law.[7]  Fed. R. Civ. P. 50(b). Defendants take issue with the exclusion of the word "spurious" from the jury instruction on counterfeits, claiming that the absence of this word undermines the jury's finding entirely.  [Motion at 11.]  Defendants reason that without the word "spurious" in the instruction, the jury did not consider whether Defendants infringement was "passing off."  Defendants conflate the terms "spurious" and "passing off" without citing any authority stating that the terms are interchangeable for the purpose of defining a counterfeit.  In fact, the *only* support Defendants rely on is the mischaracterized testimony

---

[7] Additionally, Defendants have failed to demonstrate to the Court that they properly preserved their right to claim error by properly objecting to the jury instructions pursuant to Fed. R. Civ. P. 51. Accordingly, Defendants waived their objections to the jury instructions. *See Jimenez v. Wood County, Tex.*, 660 F.3d 841 (Fifth Cir. 2011).

of two Gibson non-attorney witnesses regarding their laymen understanding of trademark counterfeiting. Defendants cannot supplant the law with a non-attorney witness' laymen's understanding of a legal term.

Defendants weave this argument into their expired design patent theory, concluding that the counterfeit instruction cannot lead to an injunction because it conflicts with federal patent laws. [Motion at 11.] Defendants, however, are not exactly clear on this point. In any event, Defendants are again asking the Court to discount or disregard the jury's verdict instead of giving effect to it, which are improper arguments at this stage.

### C. Defendants' Laches Argument Asks the Judge to Disregard the Jury's Finding that Armadillo had "Unclean Hands."

The Motion argues that despite the jury's affirmative finding that Armadillo had "unclean hands" in its use of a Gibson trademark that Armadillo should still be able to assert its laches defense.[8] [Motion at 14-16.] Armadillo reasons that because the jury verdict form did not require the jury to identify a specific time at which and a specific mark with which Armadillo had unclean hands, the jury's unclean hands is ineffectual. Defendants, however, acknowledge that the unclean hands instruction includes a heightened intent element. The Court instructed the jury that unclean hands required Gibson to prove by a preponderance of the evidence:

> that Armadillo . . . knowingly intended to use the Gibson trademarks for the purpose of deriving benefit from Gibson's goodwill.
>
> **Unclean hands may be found only where the unlicensed user subjectively and knowingly intended to cause mistake or to confuse or deceive buyers**. Mere awareness of a trademark owner's claim to the same mark does not amount to having unclean hands nor establishes bad intent necessary to preclude a laches defense. The owner of a trademark must demonstrate that at the time the unlicensed user began using the []marks or

---

[8] Again, Defendants have failed to demonstrate to the Court that they properly preserved their right to claim error by properly objecting to the jury instructions pursuant to Fed. R. Civ. P. 51. Accordingly, Defendants waived their objections to the jury instructions. *See Jimenez v. Wood County, Tex.*, 660 F.3d 841 (Fifth Cir. 2011).

sometime thereafter, said **unlicensed user knowingly and intentionally did so with the bad faith intent to benefit or capitalize on the mark owner's goodwill**.

[Jury Instructions, Trial Transcript Vol. 8 at Dkt. No. 767 at 1801 (emphasis added).]  Defendants now claim that because the jury did not identify a specific time Armadillo had unclean hands with its use of a specific mark, the Court should essentially ignore the jury's finding that Armadillo had "unclean hands."

The only authority Defendants rely on for this argument is *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145 (5th Cir. 1985).[9] *Conan Props.*, does not stand for the proposition a jury's finding on unclean hands requires the jury to make a specific finding about timing.  Rather, *Conan Props* is inapposite: "[i]n this case the jury did not find and the record would not support a finding of bad faith to deprive Conans of the equitable defenses."  752 F.2d at 150.

Defendants then acknowledge that the evidence on the record supports the jury's finding but completely manufactures the idea that the jury's finding was based on "internal communications at Armadillo regarding Gibson's unasserted SG word mark."  [Motion at 16.]  Defendants' attempt to *divine* the reasoning behind the jury's "unclean hands" finding is improper—particularly when Defendants' purpose is to limit the effect of that jury finding.

In any event, Gibson presented to the jury ample evidence that Armadillo and its claimed predecessors-in-interest had "unclean hands" at the time it adopted each of its infringing marks. Gibson presented the jury with testimony from Dean Zelinsky, Defendants' claimed predecessor-in-interest, discussing how he set out to copy and one-up Gibson's Explorer and Flying V designs.[10] Zelinsky adopted his blog posts explaining in his own words how he snuck into the Gibson factory

---

[9] Defendants' Motion cites to *Conan Props. v. Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 334 (5th Cir. 2008), but Gibson assumes Defendant meant to cite the in-line case.

[10] *See* Trial Testimony of Dean Zelinsky, Trial Transcript Vol. 4, Dkt. No. 763.

to do so.[11]  Additionally, Gibson presented ample evidence of Defendants' internal emails showing Defendants' top decision makers displaying their bad faith intentions to copy Gibson's SG guitar, from the shape to the name and paint colors.[12]  Defendants' own marketing materials also showed Defendants' use of Gibson's word marks, "FLYING V" and "HUMMINGBIRD" to advertise Defendants' guitars clearly copying those Gibson models.[13]

Defendants' laches argument improperly asks the Court to ignore the jury's finding as to "unclean hands" and deny Gibson a permanent injunction.  Defendants also assert an additional unpled argument—that Gibson' somehow acquiesced to Defendants' use of the Gibson marks. [Motion at 16.]  This argument collapses into the greater laches inquiry which asks when Gibson first complained of Defendants' use of Gibson's marks.  Regardless of whether the Court gives this new defense any merit, the jury's verdict finding Defendants' unclean hands precludes Defendants from relying on its laches affirmative defense to evade responsibility for its bad faith actions.

## II.    DEFENDANTS FAIL TO DEMONSTRATE THAT THE COURT SHOULD NOT ISSUE A PERMANENT INJUNCTION AND AN ACCOUNTING OF ARMADILLO'S ILL-GOTTEN PROFITS.

Defendants make their judgment as a matter of law arguments at the expense of any meaningful analysis of the factors the Court must use to determine whether, based on the jury's verdict, Gibson is entitled to an injunction or an accounting of Armadillo's ill-gotten profits.  Their Motion fails to demonstrate why the Court should not grant Gibson that relief.

### A.    Injunction.

Under the Lanham Act and Fifth Circuit law, "[a] permanent injunction is the usual and normal remedy once trademark infringement has been found in a final judgment."  *Diageo N. Am., Inc. v.*

---

[11] *See* Plaintiff's Trial Exhibit Nos. 678, 679 (Dean Zelinsky blogs).
[12] *See e.g.* Plaintiff's Trial Exhibit Nos. 73 and 570.
[13] *See e.g.* Plaintiff's Trial Exhibit Nos. 376 and 542.

*Mexcor, Inc.*, 661 F. App'x 806 (5th Cir. 2016) (citing 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:1 (4th ed.)).  A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court grants relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L.Ed.2d 641 (2006).  The plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*  A plaintiff seeking a permanent injunction for trademark infringement must show that the mark he seeks to protect is eligible for protection; that it is the senior user; and that there is a likelihood of confusion between his mark and the defendant's mark that will actually cause him irreparable injury for which there is no adequate legal remedy.  *Union Nat'l Bank v. Union Nat'l Bank*, 909 F.2d 839, 844 (5th Cir. 1990).

Gibson provided a detailed analysis demonstrating why each of these factors weigh in favor of the Court granting a permanent injunction in its Motion for Final Judgment (Dkt. No. 794, hereinafter "Gibson's Motion") and incorporates those arguments by reference herein.  Defendants, on the other hand, focus on expired design patents and decline to engage in depth in this analysis.

*Irreparable Injury.*  Defendants argue that Gibson cannot show irreparable injury and then give the Court an incomplete history of Gibson's use and registration of its marks.  [*See* Motion at 3.]  Defendants make reference to third party use but fail to explain how any of this evidence supports the proposition that Gibson cannot show irreparable harm from Defendants' intentional infringement and counterfeiting.  [*Id.*]  In other words, Defendants give the Court its conclusion but forget to provide any reasoning, let alone support that reasoning with legal authority.

In the next section, Defendants again pivot to patents, reasserting the same argument they have presented to the Court on a number of occasions before eventually stating that Gibson cannot

show irreparable harm for the purpose of a permanent injunction because Gibson's expired design patents dedicated the underlying shapes to the public upon expiration and because Armadillo labels its infringing goods with its own house marks.  [*See* Motion at 8.]  Even though Defendants *loosely* tie these arguments to the irreparable harm factor, they are once again a repackaging of a motion for judgment as a matter of law.  Defendants' logic is that Gibson cannot have suffered irreparable harm due to Armadillo's intentional infringement for the exact same reasons Defendants do not believe that the finding of infringement is valid.  To agree with either proposition, the Court would have to disregard the jury's affirmative findings that five of Gibson's marks are valid and protectable and that a likelihood of confusion exists between Gibson's marks and Armadillo's unauthorized use thereof.[14] The jury heard Defendants' expired design patent and house mark arguments and rejected **both**.[15]

The Fifth Circuit is clear that in a trademark case, when a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services may constitute an immediate and irreparable injury regardless of the actual quality of those goods or services.  *See Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008); *see also Coach, Inc. v. Handbags*, No. H-10-259, 2012 WL 13042944, *24-28 (S.D. Tex. May 11, 2012) ("The damage from this lack of control [over the counterfeited goods] cannot be quantified and cannot be undone by monetary remedies.").  In addition, the Fifth Circuit has found irreparable injury where "[t]here was a substantial threat to [the plaintiff's] goodwill and the value of its . . . mark."  *Paulsson*, 529 F.3d at 313; s*ee also PIU Mgmt., LLC v. Inflatable Zone, Inc.*, No. H–08–2719, 2010 WL 681914, at *7 (S.D. Tex. Feb. 25, 2010) (finding that the remedies available at law were inadequate where "[t]he amount lost due to confusion as

---

[14] *See* Verdict Form, Dkt. No. 754, at Question No. 1.

[15] It's worth noting that while Defendants did not assert its expired design patent theory until the 2025 trial, Defendants have been attempting to use its house mark argument since the initiation of the case without success.  Both the 2022 jury and the 2025 jury rejected Defendants' argument that its use of house marks on its infringing products prevented a likelihood of confusion.

opposed to fair competition [was] . . . difficult, if not impossible, to establish with dependable certainty"). As this Court has noted, one of the main goals of trademark law is "protecting the rights of a business to identify itself to the public and its reputation in offering goods to the public." *See* Jury Instructions, Trial Transcript Vol. 8 at Dkt. No. 767, at 1774.

As Gibson's Motion provides, the jury found a likelihood of confusion exists between five of Gibson's marks[16] and Armadillo's unauthorized use of those marks. [*See* Verdict Form, Dkt. No. 754, at Question No. 1.] As a result, Gibson's goodwill has been harmed, and Gibson has lost control of its reputation as embodied in the infringed marks. *See Choice Hotels Int'l Inc. v. Patel*, 940 F.Supp.2d 532, 542 (S.D. Tex. 2013) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services.") (internal citations omitted). This harm is irreparable. *See Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-cv-227, 2020 WL 4016110 at *16 (E.D. Tex. Jul. 16, 2020). As such, monetary damages are inadequate, and this factor strongly favors issuing a permanent injunction.

> *Public Interest.* Defendants also touch on the public interest factor. Defendants argue that the public interest would be "disserved if Gibson were to *obtain a further monopoly* on body shapes for which it already had the benefit of fourteen year patent monopolies." [Motion at 8.] Again, Defendants attempt to argue that despite the jury's affirmative findings otherwise, Gibson's trademarks are not valid based on expired design patents. Defendants then assert two reasons why they believe public interest does not favor issuing an injunction.

First, Defendants argue that the public will be harmed if it cannot obtain the Dean V and Z guitars. [*Id.*] Defendants do not cite to any caselaw recognizing the interest the public has in

---

[16] Gibson's Flying V body shape design®, Explorer body shape design®, SG body shape design®, HUMMINGBIRD® wordmark, and FLYING V® wordmark.

purchasing counterfeit products.  Second, Defendants argue that "the public interest is disserved by rewarding Gibson's use of *confrontation and litigation* to keep others from copying body shapes Gibson long ago dedicated to the public."  [*Id.* (emphasis added).]  As an initial matter, this argument is predicated on the Defendants' theory that the jury was *incorrect* in finding five of Gibson's trademarks valid and protectable[17]—a theory that is improper at this stage and more appropriately asserted in a motion for judgment as a matter of law.  Further, this argument again masks *Defendants'* interest as the public's.

The instructions this Court gave the jury are clear: two of the main goals of trademark law are to protect the public from being misled or confused about the nature and source of goods and protecting the public's interest in fair competition in the market.  [*See* Jury Instructions, Trial Transcript Vol. 8 at Dkt. No. 767 at 1774.]  Defendants are arguing the exact opposite.  According to Defendants, the public *benefits* from allowing an intentional infringer and counterfeiter continue to infringe and counterfeit.  Defendants even go as far to claim that the public is *harmed* by a trademark owner enforcing its marks.  Defendants' position contradicts the fundamental purpose of trademark law. *See Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F.Supp.2d 810, 832 (S.D. Tex. 1999) (The public interest is "always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks."); *see also Mary Kay, Inc. v. Weber*, 661 F.Supp.2d 632, 640 (N.D. Tex. 2009) ("The Supreme Court has held that the Lanham Act exists . . . 'to protect the ability of consumers to distinguish among competing producers.'" (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198, 105 S. Ct. 658, 83 L.Ed.2d 582 (1985)); *S & R*

---

[17] To be clear, the gist of Defendants' expired design patent theory is that the expiration of Gibson's design patents precludes Gibson from being able to later obtain trademark rights on the underlying designs, i.e. Gibson's marks are not valid nor protectable.  This position is directly at odds with the jury's affirmative findings that five of Gibson's marks are valid and protectable. *See* Verdict Form, Dkt. No. 754, at Question No. 1.

*Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 379 (3d Cir. 1992) ("Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest."); *S & H Indus., Inc. v. Selander*, No. 3:11–CV–2988–M–BH, 2013 WL 1131077, at *9 (N.D. Tex. March 19, 2013) ("[T]he entry of an injunction comports with the public interest because it advances the purposes of the Lanham Act."); *Ramada Franchise Sys., Inc. v. Jacobcart, Inc.*, No. CIVA 3:01CV0306D, 2001 WL 540213, at *3 (N.D. Tex. May 17, 2001) (noting that the public interest "promotes the protection of valuable trademarks and service marks in a capital-based economy that rewards success through competition"); *TGI Friday's Inc. v. Great Northwest Restaurants, Inc.*, 652 F.Supp.2d 763, 773 (N.D. Tex. 2009) (holding the public also has a strong interest in not being deceived); *Blue Bell Creameries, L.P. v. Denali Co., LLC*, No. H-08-0981, 2008 WL 2965655, at *7 (S.D. Tex. July 31, 2008) ("There is no evidence or argument that granting the injunction in this case would disserve the public interest. Indeed, the public interest is served whenever state and federal laws are enforced.").

*Balance of Hardships.* Defendants' analysis of this factor fares no better. First, Defendants reference their employees that have allegedly worked in Defendants' Tampa Factory on the Dean Z and V guitars since before Elliott Rubinson started the Dean business. [Motion at 9.] Defendants argue that making the Dean V and Z guitars is those employees' skill set but stop short of stating those employees would be out of work should the Court enjoin Armadillo from making those guitars. Defendants conveniently ignore that they were previously enjoined from making these body shapes by the Court from May 2022 through August 2024. Not only did those craftsmen presumably keep their jobs during that period, but Defendants claim that the Dean brand was *flourishing* leading up to the 2025 trial when they were enjoined from making guitars bearing *four* of Gibson's body shape designs.[18] There is no better indication that Armadillo will not be harmed from

---

[18] *See e.g.* No Fear Guitar Gear, "Dean Guitars – The Untold Stories," YᴏᴜTᴜʙᴇ, June 29, 2024, available at https://www.youtube.com/watch?v=Kb3B-ckn1Rs&t=56s (Defendants' Chief

a permanent injunction than Armadillo's own public statements regarding the Dean brands' success despite being enjoined from selling its infringing products.

Gibson, on the other hand, faces a great risk of harm by Armadillo's continued use of its infringing products. Gibson presented ample evidence demonstrating the value of Gibson's marks to Gibson's own history, its consumers, its employees, and its investors.[19] Gibson showed that it not only invented its marks but also invested in decades worth of promoting, advertising, and building the value of those marks and the public's connection between those marks and Gibson. Defendants try their best to claim Gibson's history with its own marks is "checkered," but the jury did not agree. The jury affirmatively found that five of Gibson's marks were valid and protectable and declined to find all but one of Gibson's marks generic.[20] [*See* Jury Verdict, Dkt. No. 754, Question Nos. 1, 20.] Armadillo's continued use of its infringing products threatens Gibson's ability to control its valuable marks, causes consumer confusion, and dilutes and thereby weakens Gibson's marks. Thus, the balance of hardship strongly favors permanently enjoining Armadillo from continuing to infringe and counterfeit Gibson's trademarks.

*Injunction on the "FLYING V" and "HUMMINGBIRD" Wordmarks.* Defendants forgo any analysis of the applicable factors in arguing against the Court issuing a permanent injunction on Gibson's word marks. [Motion at 12-14.] Instead, Defendants argue Armadillo's intentional

---

Executive Officer, Pam Rubinson, explains that following the lawsuit, "We've redesigned [Dean's] line and it's flourishing.").

[19] *See e.g.* Jim Decola Trial Testimony, Trial Transcript Vol. 1, Dkt. No. 759 at 90, ("[T]hese trademarks are Gibson's identity. And our fans are very, very passionate. And if we don't make guitars that look like those trademarks, then our fans are going to very, very upset.") and at 92-93, ("Because [these shapes are] who we are. This is what Gibson developed over time. And before each of these shapes, there was no precedent. There was no other inspiration. These came from the minds of the people at Gibson at that time."); *see also* Cesar Gueikian Trial Testimony, Trial Transcript Vol. 4 at 870-871, ("Probably the single most important, most valuable asset of [Gibson] is the intellectual property. . . . In the case of Gibson, the intellectual property was the most valuable asset.").
[20] Gibson does not agree with the jury's finding that the ES body shape mark is generic but will reserve its argument on this for its motion for judgment as a matter of law.

infringement of these two marks was "discontinued" or "one-offs," so an injunction is not necessary. As Defendants point out, however, the point of an injunction is to prevent future violations, which requires a "determination [] that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *See United States v. W.T. Grant Co.*, 345 U.S. 629 633 (1953); s*ee also Swift & Co. v. United States*, 276 U.S. 311, 326 (1928). Here, Defendants have demonstrated that where no permanent injunction is in place, they intend to continue using Gibson's trademarks. Defendants refused to cease use of Gibson's trademarks despite evidence showing the parties discussed a settlement agreement and product redesigns in the early 2000s.[21] Defendants refused to cease use of Gibson's trademarks after receiving the 2017 cease and desist letter from Gibson. After receiving that 2017 cease and desist letter, at least one Armadillo employee suggested to the then-CEO, Evan Rubinson, that Armadillo consider redesigning to not infringe on Gibson. Mr. Rubinson balked at the suggestion, claiming that the attention the Dean brand garnered from "fanning the flames" of the lawsuit and with its brazen, continued infringement was the "silver lining of lifetime."[22] Defendants refused to cease use of a number of Gibson's trademarks up until the Court issued its 2022 permanent injunction, and the moment that became ineffective, Defendants resumed production and sale of at least of its infringing products.[23] Defendants' President, Patrick Schuleit, confirmed in his deposition that Armadillo would resume selling other infringing models depending on the outcome of this case.[24]

---

[21] *See* Plaintiff's Trial Exhibit 20 (correspondence regarding Gibson's belief the parties entered into a settlement agreement).
[22] *See e.g.*, Plaintiff's Trial Exhibits 705 (Armadillo employees discussing pushing media stories about the Gibson lawsuit and whether Armadillo has seen an increase in sales because of it); *see also* Plaintiff's Exhibit 735 (when one Armadillo employee suggested Armadillo be "better safe than sorry" and alter the designs, Evan Rubinson responded he would "fight this specific matter to the death"); *see also* Plaintiff's Trial Exhibit 706.
[23] *See* Trial Transcript Vol. 8, Dkt. No. 767 at 1484.
[24] *See See* Deposition Testimony of Patrick Schuleit, attached as Exhibit B to Gibson's Motion at 35:22-36:1.

This evidence demonstrates a cognizable danger that Armadillo will continue to infringe and even bring back discontinued uses of Gibson's marks in order to further capitalize on this lawsuit. Thus, a permanent injunction is not only proper, but necessary.

**B.    Accounting.**

Defendants fail to engage with the six factors the court considers in deciding whether to disgorge profits. In determining whether to disgorge ill-gotten profits following a finding of trademark infringement, the Fifth Circuit instructs courts to consider the following non-exhaustive factors: (1) Defendants' intent to confuse or deceive; (2) the diversion of sales; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff; (5) the public interest in making the conduct unprofitable; and (6) whether it is a case of palming off. *Retractable Techs.*, 919 F.3d at 876; *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000); *Rolex Watch USA Inc. v. Meece*, 158 F.3d 816, 823 (5th Cir. 1998); *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998).

In Gibson's Motion, Gibson asks the Court first for statutory damages pursuant to § 1117(c) of the Lanham Act plus attorneys' fees and costs or, in the alternative, a disgorgement of Armadillo's ill-gotten profits pursuant to § 1117(a)-(b) from 2017 through the present plus attorneys' fees and costs, whichever is greater. Gibson maintains this request and incorporates by reference its analysis of the applicable factors for awarding damages under § 1117(c) and § 1117(a)-(b) herein. [*See* Gibson's Motion, Dkt. No. 794 at Sections IV and V.]

**III.    GIBSON IS THE PREVAILING PARTY.**

Defendants argue they are the prevailing party based on the jury's verdict.[25] If that was true, Armadillo would not have to spend most of its Motion for Final Judgment asking the Court to either

---

[25] Gibson acknowledges the jury's finding regarding Concordia's liability and respectfully disagrees. Gibson reserves the right to fully brief why the jury's verdict is wrong on this claim in its motion for judgment.

discount or completely disregard the jury's verdict. If Armadillo "successfully repelled" the majority of Gibson's claims, Armadillo would have no need to disparage the jury's findings or the jury instructions to avoid facing a permanent injunction and damages. "A court must look at the case as a whole to determine the prevailing party." *Id.* (citing *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). Importantly, "[a] party need not prevail on all issues to justify an award of costs." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.3d 128, 132 (5th Cir. 1983) (internal citations omitted).

To determine whether one is the prevailing party, the Court must focus on whether that party has "been successful on the central issue." *Iranian Students Ass'n v. Edwards*, 604 F.2d 352, 353 (5th Cir. 1974). Here, the central issue was the enforcement of trademark rights, and the jury determined that: (1) that Armadillo intentionally infringed and counterfeited five of the seven Gibson trademarks at issue; (2) that because of Armadillo's unclean hands, Gibson's claims were not barred by laches; (3) that only one of Gibson's trademarks should be cancelled because it is generic; and (4) that Gibson's intentional interference with Armadillo's prospective business relations was justified.[26] Thus, Gibson has been successful on the central issues of this case. Therefore, Gibson is the prevailing party and is entitled to costs.

## IV. CONCLUSION.

For the foregoing reasons, Gibson respectfully requests the Court deny Defendants' Motion in its entirety.

Respectfully submitted this 2d day of May 2025.

/s/ *Andrea E. Bates*
Andrea E. Bates
*Pro Hac Vice*

---

[26] *See* Verdict Form, Dkt. No. 754.

Kurt Schuettinger *Pro Hac Vice* Johnathan M. Bates
*Pro Hac Vice*
Bates & Bates, LLC
1890 Marietta Boulevard NW
Atlanta, Georgia 30318
Telephone: (404) 228-7439
abates@bates-bates.com
kschuettinger@bates-bates.com
jbates@bates-bates.com

Stephen D. Howen
State Bar No. 10117800 Law Office of Steve Howen
7111 Bosque Blvd., Suite 305
Waco, TX 76710
Telephone: (254) 826-6526
Facsimile: (254) 822-4926
steve@stevehowenlegal.com

Attorneys for Plaintiff GIBSON, INC.

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and correct copy of the foregoing document was served on all counsel

of record via the Court's CM/ECF electronic filing system on May 2, 2025.


<u>/s/ *Andrea E. Bates*</u>
Andrea E. Bates