# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GIBSON, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00358-ALM |
| | § | |
| ARMADILLO DISTRIBUTION | § | |
| ENTERPRISES, INC. and | § | |
| CONCORDIA INVESTMENT | § | |
| PARTNERS, LLC, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' OPPOSITION TO GIBSON'S PROPOSED JUDGMENT AND BRIEF IN SUPPORT OF RELIEF REQUESTED

| | |
|---|---|
| Jerry R. Selinger, Lead Counsel<br>State Bar No. 18008250<br>PATTERSON + SHERIDAN, LLP<br>1700 Pacific Ave., Suite 2650<br>Dallas, Texas 75201<br>Tel: (214) 272-0957<br>Fax: (713) 623-4846<br>jselinger@pattersonsheridan.com<br>Craig V. Depew<br>Texas State Bar No. 05655820<br>PATTERSON + SHERIDAN, LLP<br>24 Greenway Plaza, Suite 1600<br>Houston, Texas 77046<br>Tel: 832-968-7285<br>Fax: 713-623-4846<br>cdepew@pattersonsheridan.com | Kyrie K. Cameron<br>State Bar No. 24097450<br>PATTERSON + SHERIDAN, LLP<br>24 Greenway Plaza, Suite 1600<br>Houston, Texas 77046<br>Tel: (713) 623-4844<br>Fax: (713) 623-4846<br>kcameron@pattersonsheridan.com<br><br>*ATTORNEYS FOR DEFENDANTS ARMADILLO DISTRIBUTION ENTERPRISES, INC. AND CONCORDIA INVESTMENT PARTNERS, LLC* |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     GIBSON IS NOT ENTITLED TO INJUNCTIVE RELIEF (OR PROFITS) .....................3

        A.      Gibson's Expired Design Patents on the Four Trademarked Body Shapes ............4

        B.      Because The Lanham Act Did Not, and Cannot, Create a Species of Perpetual Patent, Gibson is Not Entitled to Injunctive Relief or Accounting Based on Infringement of Body Shapes Covered by Expired Gibson Design Patents ............5

        C.      The Other *eBay* Factors Also Favor Armadillo on the Body-Shape Marks ...........9

        D.      Gibson is Not Entitled to Injunctive Relief (or an Accounting) for "Counterfeiting" by Copying a Body Shape of an Expired Design Patent ............17

        E.      The Court Should Not Grant Gibson Injunctive Relief on its Two Word Marks ..18

                1.      Gibson's Flying V Word Mark ..................................................................18

                2.      Gibson's Hummingbird Word Mark ..........................................................19

                3.      The Law of Injunctive Relief Regarding Discontinued or "One-Off" Uses ..........................................................................................................19

        F.      Gibson is Not Entitled to Injunctive Relief Based on the Jury Findings of Laches and Lack of Willful Intent .........................................................................21

                1.      Laches Applies Here ................................................................................21

                2.      The Finding of Laches is Further Reason to Deny Injunctive Relief ........22

                        a.      Gibson's Affirmative Acts ............................................................23

                        b.      Armadillo's Significant Prejudice ................................................24

                3.      Laches Precludes the Award of Armadillo's Profits .................................24

III.    GIBSON'S IMPROPER DEMAND FOR STATUTORY DAMAGES OR PROFITS ....25

        A.      Disgorgement of Profits ........................................................................................25

i

      B.      Statutory Damages for Counterfeiting ..................................................................27

IV.    DEFENDANTS ARE THE PREVAILING PARTIES .....................................................30

V.     CONCLUSION.............................................................................................................30

# **TABLE OF AUTHORITIES**

Page

## **Cases**

*Abraham v. Alpha Chi Omega*,
    708 F.3d 614 (5th Cir. 2013) ........................................................................ 22-25

*Armco, Inc. v. Armco Burglar Alarms Co.*,
    693 F.2d 1155 (5th Cir. 1982) ..................................................................... 23-25

*Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,
    550 F.3d 465 (5th Cir. 2008) ............................................................................ 21

*Bic Leisure Products, Inc., v. Windsurfing Int'l., Inc.*,
    1 F.3d 1214 (Fed. Cir. 1993) ............................................................................ 15

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*
    489 U.S. 141 (1989) ........................................................................................... 6

*Brown v. Bridges*,
    No. 13-cv-4947, 2016 WL 3660666 (N.D. Tex. Jan. 26, 2016) .......................... 24

*Chao v. Transocean Offshore, Inc.*,
    276 F.3d 725 (5th Cir. 2002) ........................................................................... 20

*Compco Corp. v. Day-Brite Lighting, Inc.*,
    376 U.S. 234 (1964) ................................................................................... 7-9, 18

*Conan Props. v. Conans Pizza, Inc.*,
    752 F.2d 145 (5th Cir 1985) .............................................................. 22, 24, 26, 29

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ............................................................. 3, 5-7, 9, 18, 27, 29

*Dresser-Rand Co., v. Virtual Automation Inc.*,
    361 F.3d 831 (5th Cir. 2004) ............................................................................. 1

*eBay Inc. v. MercExchange, L.L.C,*
    547 U.S. 388 (2006) .................................................................................. 4, 9, 22

*Elvis Presley Enterprises, Inc. v. Capece*,
    141 F.3d 188 (5th Cir. 1998) ........................................................................... 20

iii

*Gaia Techs., Inc. v. Recycled Prods. Corp.*,
  175 F.3d 365 (5th Cir. 1999) ....................................................................25

*Garza v. Starr Cnty., Tex.*,
  628 F. App'x 887 (5th Cir. 2015...............................................................25

*Griffin v. Matherne*,
  471 F.2d 911 (5th Cir. 1973) ................................................................1, 25

*Jordan Kahn Music Co., LLC v. Taglioli*,
  2023 U.S. Dist. LEXIS 33143 (E.D. Tex. Feb. 28, 2023) ...........................2, 30

*Kellogg Co.*v. *National Biscuit Co.*,
  305 U. S. 111 (1938)..........................................................................6, 7, 9

*Cf.*Livesay Window Co. v. Livesay Industries, Inc.,
  251 F.2d 469 (5th Cir. 1958) .....................................................................15

*P & L Contractors, Inc. v. Am. Norit Co.*,
  5 F.3d 133 (5th Cir. 1993...................................................................1, 2, 25

*Retractable Techs., Inc. v. Becton Dickinson & Co.*,
  919 F.3d 869 (5th Cir. 2019) .....................................................................26

*Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*,
  80 F.4th 607 (5th Cir. 2023) .....................................................................16

*Sears, Roebuck & Co.*v. *Stiffel Co.*,
  376 U. S. 225 (1964)............................................................................6, 8

*Streamline Prod. Sys. v. Streamline Mfg.*,
  851 F.3d 440 (5th Cir. 2017) .....................................................................29

*Swift & Co. v. United States*,
  276 U.S. 311 (1928)..................................................................................20

*TrafFix Devices, Inc.*v. *Marketing Displays, Inc.*,
  532 U. S. 23 (2001).....................................................................................6

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953)..................................................................................20

## Statutes

15 USC 1116(d)(1)(B)(ii) ............................................................................................17

15 U.S.C. § 1117 ......................................................................................................27

15 U.S.C. § 1125 ........................................................................................................5

15 U.S.C. § 1127 ................................................................................................ 18, 19

## Rules

Fed. R. Civ. P. 39 .................................................................................................2, 25

Fed. R. Civ. P. 49 ......................................................................................................2

Fed. R. Civ. P. 54 ....................................................................................................30

Defendants Armadillo Distribution Enterprises, LLC ("Armadillo") and Concordia Investment Partners, LLC ("Concordia") oppose entry of Gibson's proposed final judgment for the reasons set forth below. The Court should instead adopt Defendants' proposed final judgment. Dkt. #95-1.[1]

## I.    INTRODUCTION

Gibson asks for the Court's findings and conclusions, Dkt. #794 at 2 (the "Gibson Motion"), but the jury already found the relevant facts. *See, e.g., Dresser-Rand Co., v. Virtual Automation Inc.*, 361 F.3d 831, 848 (5th Cir. 2004). All the Court has left to do is enter judgment based on the jury's answers and controlling law. *See P & L Contractors, Inc. v. Am. Norit Co.*, 5 F.3d 133, 138 (5th Cir. 1993) ("[T]he district court is duty bound to enter judgment on the jury's answers if they are clear and consistent.").

The jury's answers are clear, consistent, and not challenged by either side before the jury was excused. *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973) ("Entry of judgment upon a jury's special verdict with written findings of fact is subject not only to precedential guidelines but to a constitutional restraint as well. The Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly.") (citation omitted). Unlike Gibson's proposal, Defendants' proposed final judgment reflects the jury's answers in the context of controlling law. *See* Dkt. #795-1.

Based on the 2025 record, the jury wholly absolved Concordia from any wrongdoing. Dkt. #754 at 6-7 (Question 10). The jury also found that Armadillo did not infringe Gibson's

---

[1] Defendants respond here without waiver of any rights either or both may have, including but not limited to, under Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure.

1

Dove Wing Headstock Design or the ES body shape design, found the elements of laches, and found that Armadillo did not willfully infringe any asserted Gibson trademark. *Id*. at 1, 3-9 (Questions 1, 4-8). The jury's non-infringement findings cleared Armadillo sales generating approximately 90% of Armadillo's profits from accused guitars. *Id*. at 1, 9-10 (Question 1 and Section 5) (stipulated profits).

The jury also found Gibson's ES body shape was generic and agreed with Armadillo and Concordia that Gibson's registration on the USPTO Supplemental Register should be cancelled. *Id*. at 1, 12 (Questions 1, 20). The Court granted an agreed JMOL that Gibson had suffered no actual damages. Tr. 1646:17-1647:2. Following agreed-upon instructions in the charge and verdict form and its prior answers, the jury did not award Gibson any counterfeiting statutory damages and awarded the sum of $1.00 (one dollar) of Armadillo's profits. *Id*. at 10-12 (Questions 15 16). Concordia and Armadillo were the prevailing parties, although Defendants believe the Court should order the two sides to cover their own costs. *See Jordan Kahn Music Co., LLC v. Taglioli*, 2023 U.S. Dist. LEXIS 33143 *33 (E.D. Tex. Feb. 28, 2023) (Mazzant, J.).

Defendants object to Gibson's proposed findings of fact and conclusions of law for three reasons. Dkt. #794-1 ("Exhibit A"). First, all parties requested a jury, consented to trying **all** issues to the jury, including equitable issues, and engaged in a lengthy jury trial, at the end of which the jury provided its verdict on numerous factual questions. Fed. R. Civ. P. 39(c)(2) (jury trial by consent), 49(a) (special verdicts). Findings separate and apart from the jury's answers and controlling law are improper. *P & L Contractors,* 5 F.3d at 138. Gibson should not get separate findings from the Court just because Gibson disagrees with the jury to which they consented. Defendants are not submitting counter findings of fact and conclusions of law because they are inappropriate. Second, Gibson's proposed findings and conclusions

2

mischaracterize the record (or contain no citations to it) and in many instances improperly ask the Court to jettison the jury's factual findings. Third, Gibson uses its proposed findings and conclusions to exceed the 30-page limit in the controlling Order.  Dkt. #790.

## II.    GIBSON IS NOT ENTITLED TO INJUNCTIVE RELIEF (OR PROFITS)

During the 2022 trial, Gibson introduced evidence of its long-expired 1958 design patents for the Flying V and Explorer body shapes.  *See* 2022 Tr. 506, 1489; PTX-62 at 23, 27.  Not surprisingly, Gibson did not object when Defendants in 2025 introduced certified copies of those two expired design patents. DTX5001; DTX5002.  The Court also properly admitted certified copies of Gibson's expired patents for the SG and ES body shapes.  DTX5003; DTX5004.

Defendants raised the issue of the legal ramification of Gibson's four expired design patents during the charge conference, seeking a jury instruction reflecting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Gibson responded that "what the defendants are seeking is some modification of the legal remedies that would be available if infringement and/or counterfeiting was found. I think that is a pure legal question that would not inform the jury's decision in any manner in this case."  Tr. 1652.  While Gibson avoided a *Dastar* jury instruction, under Gibson's theory the time has come to apply *Dastar*. Settled law bars injunctive relief or an award of Armadillo's profits to Gibson.  Gibson's opening brief, however, is eerily silent on this threshold, unsurprising issue.

Gibson's President and CEO, Cesar Gueikian, was unapologetic that Gibson has "exclusive rights by virtue of the trademark."  Tr. 879.  He left no doubt Gibson improperly seeks perpetual exclusive rights to its body shapes using the Lanham Act, despite having had fourteen year "monopol[ies]" on each of them.  *See Dastar*, 539 U.S. at 33-34 ("the rights of a patentee or copyright holder are part of a 'carefully crafted bargain' … under which, **once the**

3

patent or copyright monopoly has expired, the public may use the invention or work at will and without attribution.") (citations omitted) (emphasis added).

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) provides the general standard Gibson must meet to obtain a permanent injunction: "(1) that [Gibson] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Gibson Motion at 4 (citing *eBay*). Irreparable injury is a condition precedent to a permanent injunction. *eBay,* 547 U.S. at 391.

A.    Gibson's Expired Design Patents on the Four Trademarked Body Shapes

Gibson has no irreparable injury as to any of the trademarked body shapes based on the undisputed record. Gibson obtained design patents on its Flying V and Explorer body shapes in 1958. Gibson's fourteen year monopoly on those two body shapes expired in 1972. DTX5001; DTX5002. Gibson was aware that Dean Zelinsky introduced his DEAN Z and DEAN V guitars at the 1977 NAMM show. Tr. 801-802, 989-90. Gibson's 1978 agreement with Ibanez identified Gibson's common law rights and federal registrations for names and body shapes, but made no mention of any federal or common law rights relating to the Flying V or Explorer body shapes (or names). Tr. 510:24-511:10; PTX-137, at 8-10. Gibson correctly understood in 1978 that it had no common law rights for the Explorer or Flying V body shapes.

During the many years that passed after these two Gibson design patents expired in 1972, before Gibson filed for or obtained its two trademarks, numerous third parties marketed and sold Explorer style and Flying V style guitars. *See, e.g.*, Tr. 528, 530, 536, 1261, 1269-70, 1275-77. Gibson filed trademark applications for the Flying V and Explorer body shapes in 1994, claiming

1958 dates of first uses, despite having abandoned the Explorer brand for 15 years and the Flying V brand for some lesser period of time. Trademarks issued for the Flying V and Explorer body shapes in 1997. PTX-1, PTX-2.

Gibson filed a trademark application for the generic ES body shape in 1994, also claiming a first use in 1958. Gibson obtained only supplemental registration, in 1996. PTX-4. Gibson then obtained a design patent on the ES body shape, obtaining a fourteen year monopoly which expired in February 2012. DTX-5003. Gibson filed a trademark application for the SG body shape in 1997, claiming a first use in 1961. It issued in 1999. PTX-34. Gibson also received a design patent on the SG body style, obtaining a fourteen year monopoly which expired in February 2013. DTX-5004.

    B.   <u>Because The Lanham Act Did Not, and Cannot, Create a Species of Perpetual Patent, Gibson is Not Entitled to Injunctive Relief or Accounting Based on Infringement of Body Shapes Covered by Expired Gibson Design Patents</u>

Gibson's claims are based on Lanham Act and Texas common law trademark infringement and unfair competition. Dkt. #464, at 3. *Dastar* instructs that Congress cannot use the Lanham Act to create a type of perpetual patent. *Dastar*, 539 U.S. at 37 (rejecting an effort that "would be akin to finding that § 43(a) [of the Lanham Act, 15 U.S.C. § 1125(a)] created **a species of perpetual patent and copyright, which Congress may not do**." (emphasis added)). Doing so would violate Article 1, Section 8, Clause 8 of the United States Constitution.

Even though he did not do so, Dean Zelinsky had the right to make exact copies of Gibson's Flying V and Explorer body shapes in 1977, five years after Gibson's two design patents expired. Armadillo had the right to continue making the exact shapes Mr. Zelinsky had used for the DEAN V and DEAN Z guitars. Mr. Zelinsky proudly placed the DEAN name on each guitar headstock. Armadillo proudly placed the DEAN or LUNA name on each guitar

headstock, as well as on each hangtag and on the corresponding warranty card.  Tr. 1089:8-24; Tr. 1104:1-4; Tr. 1236:9-15; Tr. 1610:25-1611:10.  Gibson concedes Armadillo (including any predecessor) never passed off any of the DEAN or LUNA brand guitars as those of Gibson.  Tr. 1089:8-24, 1104:1-4; Tr. 1610:25-1611:10; Gibson Motion at 28.

The facts and precise holding in *Dastar* also are instructive. *Dastar* took a work that was in the public domain because its copyright had not been renewed, made some minor changes, and sold it as its own, without attribution.  For this, it was accused of violating Section 43(a) of the Lanham Act by making "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods."  *Dastar*, 539 U.S. 31. In refusing to allow creation of a species of perpetual patent or copyright, the Court announced:

> The right to copy, and to copy without attribution, once a copyright has expired, **like 'the right to make** [an article whose patent has expired]—**including the right to make it in precisely the shape** it carried when patented—passes to the public.' *Sears, Roebuck & Co.* v. *Stiffel Co.,* 376 U. S. 225, 230 (1964); see also *Kellogg Co.* v. *National Biscuit Co.,* 305 U. S. 111, 121-122 (1938). 'In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying.' *TrafFix Devices, Inc.* v. *Marketing Displays, Inc.,* 532 U. S. 23, 29 (2001). The rights of a patentee or copyright holder are part of a 'carefully crafted bargain,' *Bonito Boats, Inc.* v. *Thunder Craft Boats, Inc.,* 489 U. S. 141, 150-151 (1989), under which, once the patent or copyright monopoly has expired, the public may use the invention or work at will and without attribution. Thus, in construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright. *TrafFix,* 532 U. S., at 29. **'The Lanham Act,' we have said, 'does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity.'**

*Id.,* at 34 (brackets in original) (emphasis added).

The Court then held that the phrase "origin of goods" in Section 43(a) refers to the producer of the tangible goods that are offered for sale, and not to the author of "any idea,

6

concept, or communication embodied in those goods." *Id*. at 37.  "Because we conclude that *Dastar* was the 'origin' of the products it sold as its own, respondents cannot prevail on their Lanham Act claim." *Id*. at 38.

Gibson's federal claims are under the Lanham Act, including Section 43(a).  Dkt. #472 at 3.  Because there is no dispute that Armadillo is the source of the products it sells under the DEAN and LUNA brands, Gibson is not entitled to relief under Section 43(a) of the Lanham Act.  Gibson also asserted federal trademark infringement under the Lanham Act. However, the parties recognized that Gibson's unfair competition and trademark claims rise or fall together. Dkt. #754 at 1 ("Do you find … Armadillo infringed an alleged Gibson trademark and engaged in unfair competition ….").  In all events, because Gibson participated in the carefully crafted bargain by obtaining body-shape design patent protection, it dedicated patented subject matter to the public upon the expiration of each design patent.  Mr. DeCola and Mr. Davidson conceded DTX-5001 and DTX-5002 are the body shapes of the Flying V and Explorer.  Tr. 209:23-201:22, 224:20-24, 225:15-24, 503: 15-21.  *Dastar* instructs that Gibson cannot now use the Lanham Act to prevent others from copying the subject matter of its design patents.  For this reason also, Gibson is not entitled to any relief because there is no irreparable harm.

*Dastar* approvingly cites, among other cases, *Kellogg Co. v. National Biscuit Co*., 305 U.S. 111, 121-122 (1938). There, the Supreme Court would not let National Biscuit Company use trademarks to deprive the public of the right to copy the pillow shape of Shredded Wheat after a design patent had expired or of the right to refer to the pillow-shaped product as Shredded Wheat. *Id*.

Gibson also cannot rely on its state law claims for a perpetual monopoly based on trademarks.  In *Compco Corp. v.  Day-Brite Lighting, Inc*., 376 U.S. 234 (1964), Day-Brite sued

for infringement of its design patent on a reflector and for unfair competition. Day-Brite's unfair competition was based on allegations that the public and the trade had come to associate this particular design with Day-Brite, that Compco had copied Day-Brite's distinctive design so as to confuse and deceive purchasers into thinking Compco's fixtures were actually Day-Brite's, and that by doing this Compco had unfairly competed with Day-Brite. *Id*. at 234-35. The district court held Day-Brite's design patent to be invalid, but found "the overall appearance of Compco's fixture was 'the same, to the eye of the ordinary observer, as the overall appearance' of Day-Brite's reflector, which embodied the design of the invalidated patent; that the appearance of Day-Brite's design had 'the capacity to identify [Day-Brite] in the trade and does in fact so identify [it] to the trade'; that the concurrent sale of the two products was 'likely to cause confusion in the trade;' and that '[a]ctual confusion has occurred.'" *Id*. at 235.

According to the Supreme Court, none of that mattered. The Supreme Court explained: "Even accepting the findings, **we hold that the order for an accounting for damages and the injunction are in conflict with the federal patent laws**." *Id.* at 237 (emphasis added). Further elaborating, the Court explained:

> Today we have held in *Sears, Roebuck & Co.* v. *Stiffel Co., supra,* that when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article. To forbid copying would interfere with the federal policy, found in Art. I, § 8, cl. 8, of the Constitution and in the implementing federal statutes, of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain.
> …
>
> [W]hile the federal patent laws prevent a State from prohibiting the copying and selling of unpatented articles, they do not stand in the way of state law, statutory or decisional, which requires those who make and sell copies to take precautions to identify their products as their own.

*Id*. at 237-238. The undisputed evidence is that Armadillo proudly identifies the Explorer and V

body style guitars as its products, labelling each guitar with the DEAN brand and logo. Tr. 1089:8-24; Tr. 1610:25-1611:10; DTX-1504; DTX-1505.

Turning to the accused Luna Athena 501 and Gran Sport guitars, these discontinued Armadillo products had ES and SG body shapes. Even if Gibson's ES body shape was not generic, Gibson would not be entitled to accounting or injunctive relief because, as Mr. DeCola conceded, Gibson obtained design patents on the ES and SG body shapes. Tr. 226:21-227:2, 228:10-229:5, 230:7-17; DTX-5003; DTX-5004. Those design patents are expired, so Gibson is not entitled to an injunction or an accounting for Armadillo profits relating to its sales of its DEAN V, DEAN Z, LUNA Athena 501 or Gran Sport guitars.

Stated differently, Gibson has not suffered an irreparable injury relating to any of the three body shape marks that are not generic. Gibson dedicated those shapes to the public. *See, e.g., Dastar, supra; Compco, supra; Kellogg, supra*. And, Armadillo has labelled its guitars as DEAN or LUNA guitars and has not passed off any of its DEAN V, DEAN Z, or Gran Sport guitars as Gibson guitars. Tr. 1089:8-24, 1104:1-4 (Rubinson); Tr. 1610:25-1611:10 (Schuleit); Gibson Motion at 28 ("Gibson has not asserted Armadillo engaged in such conduct."). For these reasons alone, Gibson is not entitled to injunctive relief. *See, e.g., Dastar, supra; Compco, supra; Kellogg, supra.* Of course, *eBay* Factor 2 would not come into play because there is no irreparable harm to Gibson.

## C.  The Other *eBay* Factors Also Favor Armadillo on the Body-Shape Marks

For completeness, Defendants also assess *eBay* factors 3 and 4. Neither supports an injunction for Gibson's body shape trademarks.

Factor 4 (public interest):  Gibson seems to argue the public interest factor cannot weigh in favor of Armadillo. Gibson Motion, at 11-13. On the contrary, the public interest also would

be disserved if Gibson were to obtain a further monopoly on body shapes for which it already had the benefit of fourteen year patent monopolies.  Fans and customers of the DEAN Z and DEAN V guitars, like Gibson's fans and customers, want the same body shapes as the DEAN Z and DEAN V guitars had in 1977.  Mr. DeCola opined that Gibson's fans and customers would be very upset if Gibson did not consistently provide them with Explorer and Flying V guitars having the same body shapes as when Gibson first introduced those guitars.  Tr. 233.  While Mr. DeCola had no opinion about how DEAN fans would react, Josh Maloney, Armadillo's former director of artist relations, testified that fans and customers of DEAN Z and DEAN V guitars would also be upset if they could not get the same body shapes as when Dean Zelinsky first introduced those guitars.  Tr. 1316:5-21.

Moreover, the public interest is disserved by rewarding Gibson's use of confrontation and litigation to keep others from copying body shapes Gibson long ago dedicated to the public.  Gibson itself conceded its pre-bankruptcy reputation of confrontation and litigation.  Tr. 941:9-11.  Gibson's current regime continues to employ the same tactics.  Gibson's post-bankruptcy aggressive posture, *e.g*., its Play Authentic video and hundreds of threat letters relating to body shapes of expired design patents, is further strong evidence of how the public interest is disserved.  *See* PTX-749A, at 2-13; PTX-66.  To be clear, the letters in PTX-749A are not letters about guitars falsely labelled as Gibson guitars.  *See* PTX-164; PTX-170.  Rather, the letters Gibson proudly summarized in PTX-749A are directed at smaller competitors who, in Gibson's opinion, strayed too close to body styles Gibson had long ago dedicated to the public.

In addition to Gibson's own evidence of aggressive threats, third-party witnesses testified about the adverse impact of Gibson threats.  Tr. 1149:7-1151:8, 1151:22-1152:25 (Eastman Guitars had to hire counsel to respond to Gibson cease and desist letters before and after

10

Gibson's bankruptcy); Tr. 1110:24-1211:24, 1214:23-25, 1221:1-24 (Firehouse reduced orders); Tr. 1226:3-1227:3, 1228:8-17 (Reverend Guitars discontinued selling V-style guitars because of the threat of litigation).  One of Gibson's largest competitors, Fender, unilaterally dropped a V body-style guitar brand after it acquired a smaller competitor to avoid confrontation with Gibson over body shape.  Tr. 372:2-8.  That Gibson has only one district court litigation pending – against Defendants – does not suggest a newer, kinder Gibson.  On the contrary, by continuing to aggressively threaten much smaller competitors for seeking to exercise rights flowing from the Constitution, Gibson is sending exactly the threatening message to the industry announced in its Play Authentic video.  Gibson's behavior – over body shapes Gibson dedicated to the public – disserves the public interest and should not be rewarded. *See also* Tr. 1115:13-1116:12.

Contrary to Gibson's argument, Gibson Motion at 13, Armadillo does not ask the Court to substitute its own judgment for the jury's findings on likelihood of confusion.  Rather, Defendants ask the Court to craft a result in the Final Judgment that Gibson anticipated during the charge conference, namely "modif[ying]" … the legal remedies that would be available if infringement and/or counterfeiting was found." Tr. 1652.

Balance of hardships (Factor 3): The evidence of record shows the balance of hardships also favors Armadillo.  Perhaps that is why Gibson improperly goes outside of the trial record to create a post-trial narrative.  *See* Defendants' Motion to Strike and Amended Motion to Strike, Dkt. #798, 801.  Thus, Gibson mislabels a third-party post-trial posting as coming from Armadillo.  Gibson Motion at 19 & n.41, 42.  Gibson cites information it had but declined to

introduce during its case-in-chief or in cross-examination. *Id*. at 3, 9-10 & n.4-5, 12-15.[2]

Gibson's argument ignores the big picture, so Armadillo begins with context. Elliott Rubinson's first guitar brand when he started Thoroughbred Guitars was DEAN. Tr.1410:19-1411:8. Thoroughbred Guitars developed into a retail business selling a spectrum of guitar brands, including Gibson and DEAN. Mr. Rubinson developed his retail guitar business to become DEAN and Gibson's largest retail sales outlet in Florida. Tr. 1411:9-20. Gibson did not complain to Mr. Rubinson about his retail business selling DEAN guitars. Tr. 1411:21-23.

Tropical Music made in the U.S. and sold DEAN brand guitars, including the DEAN Z and DEAN V guitars, and also imported branded guitars. *See, e.g*. DTX-1701, DTX-1703. Several employees at Tropical Music made DEAN USA guitars. When Mr. Rubinson acquired the business, three employees continued to make those guitars, first in the Tampa facility Tropical Music rented, and then in Armadillo's Tampa factory.[3] Tr. 1412:23-1414:10. Armadillo continues to employ craftsmen making DEAN Z and DEAN V guitars in the Tampa factory who made these same guitars before Elliott Rubinson acquired the DEAN business. Armadillo is trying to keep Elliott's legacy alive. Tr. 1414:20-1415:10.

In 2004, Gibson communicated orally with Elliott Rubinson about some Gibson concerns regarding DEAN guitars. Tr. 527:21-528:1, 536:20-537:2, 539:13-540:4, 788:10-13, 821:25-822:5. Elliott Rubinson had Dean Zelinsky create a new design for the DEAN V guitars. Tr. 788:10-789:5. However, Gibson did not communicate with Mr. Rubinson in writing, either

---

[2] Had Gibson offered this information into evidence, Armadillo would have had the opportunity to tell the jury about doing damage control to save the business.

[3] Mr. Rubinson described the DEAN business at Tropical Music being "dormant" because, like dormant St. Augustine grass in North Texas in the winter, the business was not growing. Mr. Rubinson wanted his new business to grow, just as he had grown Thoroughbred Guitars.

about Gibson's specific oral communication or about any proposed settlement agreement.  Tr. 527:21-528:1, 536:20-537:2, 539:13-540:4, 788:10-13, 821:25-822:5.  Gibson's first written communication to Armadillo came in 2017, only months after Mr. Rubinson died.  DTX-3333. Particularly, in view of his prior experience selling both DEAN and GIBSON guitars without complaint from Gibson, despite being prepared to change the DEAN V design, Gibson's silence gave Elliott Rubinson every reason to believe Gibson had decided not to further trouble Armadillo.

Thus, Armadillo extensively advertised and promoted the DEAN brand, including DEAN Z and DEAN V guitars, for example at NAMM shows, including investing in livestream, in print advertising, in 36 full page ads a year in three guitar magazines, and in artist relationships.  Tr. 1415:11-1416:1.  While the DEAN Z and DEAN V guitars may represent only a fraction of Armadillo's profit, they are the tie that connects Armadillo and the history of DEAN guitars to loyal fans and customers of the DEAN brand.  Tr. 1316:5-21.  Fans and customers of DEAN Z and DEAN V guitars would be upset if Armadillo did not continue to offer the same body shapes as when Dean Zelinsky first introduced those guitars.  Tr. 1316:5-21.  Armadillo seeks to save the investments made to grow the DEAN brand business since 1996.  To be clear, Armadillo would not even consider reintroducing the Gran Sport absent a clear path from the Court.

Gibson speculates about ambiguous comments from Evan Rubinson, including his efforts to do damage control while being on the wrong end of a David v. Goliath controversy.  Gibson Motion at 20.  That is not evidence of anything nefarious, unlike Gibson waiting until Elliott Rubinson died to send a C&D letter to "Armadillo."  DTX-3333.

Balance of hardship compares the above-board Thoroughbred Guitars and Armadillo history against Gibson's checkered connection to its Explorer and Flying V body style guitars.

13

Gibson shipped about 20 Explorer guitars in 1958 and 1959, and about 80 Flying V guitars in 1958-1959.  Gibson ceased production of Flying V and Explorer guitars in 1959, although it may have sold a small number using leftover guitar components into the early 1960s.  Between 1958 and 1977, Gibson advertised its Flying V and Explorer guitars only in a 1958 Gibson newsletter to distributors.  While Gibson claims it reintroduced its abandoned Explorer style guitar in 1975, it has no evidence that any were shipped in 1975 or 1976.  During the time Gibson abandoned its Explorer guitar, competitors such as Hamer and Ibanez developed the marketplace.[4]  Ibanez introduced V-style and Explorer-style guitars in 1975, Tr. 980:22-989:6.  Mr. Berryman became Gibson's president in the 1980s.  He opined there were "dozens and dozens" of similarly shaped guitars in the marketplace.  Tr. 528:11-16, 530:3-7, 536:5-9.

Gibson offered no evidence that it suffered any hardship while having to compete fairly on the merits for sales of Explorer-style and V-style guitars after its design patents expired and before it obtained the first of its trademarks.  Indeed, Gibson conceded it was unclear whether customers associated the V-style or Explorer-style shapes with Gibson or one of the other competitors.  Tr. 984:22-25, 985:1-13, 988:15-989:5.  Nor did Gibson offer any testimony about actual hardship.  On the contrary, Beth Rasnick, Gibson's Chief of Staff and finance witness, could not identify a single customer that Gibson had lost to Dean.  Tr. 583:14-17.  Gibson did not offer trial testimony from an actual purchaser of a DEAN guitar who had been misled into believing a DEAN Z or DEAN Z guitar was actually a Gibson guitar, despite more than 40 years

---

[4] Mr. DeCola and Mr. Davidson were not credible in suggesting Gibson might have had private sales after 1959 and before 1977.  When Mr. DeCola so speculated, he told the jury Mr. Davidson would show these in Gibson ledgers.  However, Mr. Davidson testified only that one incarnation of "Gibson" trashed its records and Gibson is missing its 1959 shipping ledger.  Tr. 430:21-431:9.  Neither had personal knowledge of, and there is no support for, the fiction Gibson might have made some private sales during its years-long abandonment of the two brands.

of competition (along with many other competitors).

The jury properly rejected the speculation by Gibson trial witnesses that each Armadillo sale was a lost Gibson sale. *Compare* Gibson Brief at 17, ¶ 2 *with* Dkt. #754, at 10 ($1.00 would "fairly and reasonably" compensate Gibson). Further, their testimony is fatally legally flawed because it incorrectly assumes that Gibson and Armadillo are the only two suppliers for guitars having each body shape. *Cf. Livesay Window Co. v. Livesay Industries, Inc.,* 251 F.2d 469, 471 (5th Cir. 1958) (two-supplier market meets "but for" causation for lost profit damages in patent litigation); *Bic Leisure Products, Inc., v. Windsurfing Int'l., Inc*., 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("To recover lost profits … a patent owner must prove a causal relation between the infringement and its loss of profits. The patent owner must show that "but for" the infringement, it would have made the infringer's sales.")

The undisputed trial evidence was that multiple competitors sell each of the four body styles. Gibson's former president, Mr. Berryman, and Defendants' expert, Mr. Gruhn, both testified there were and are multiple competitors selling each body style. Tr. 528:17-529:23 (Berryman), Tr. 1271:5-1272:9, 1272:19-1273:17 (Gruhn: current V-style competitors), 1278:10-1280:9 (Gruhn: current Explorer-style competitors), Tr. 1283:14-1285:16 (Gruhn: current SG-style competitors), Tr. 1286:21-1290:25 (Gruhn: current ES-style competitors). Even Gibson's expert, Mr. Rock, provided evidence of no "but for" causation. Tr. 646:18-647:25, Tr. 648:2-7.

Gibson argues Mr. LeFebvre proved actual confusion and a diverted sale, Gibson Brief at 17, but that was not Mr. LeFebvre's testimony. Mr. LeFebrve had personal experiences with 9,000-10,000 customers during his four years at Sam Ash. Tr. 413:3-8. From the universe of working with 9,000-10,000 customers, Mr. LeFebvre described one instance of initial interest confusion between a Gibson Explorer and a DEAN Z and two instances of initial interest

15

confusion between a Gibson Flying V and a DEAN V, all within a short period of time in 2017. Tr. 403:13-406:3, Tr. 407:23-412:2. Critically, Mr. LeFebvre testified that the one customer who bought a DEAN V guitar after expressing initial interest confusion (identified as the "second" customer) was fully informed about, and intentionally bought, the DEAN V (instead of any of the other competitive guitars sold at Sam Ash). Tr. 410:19-411:5.

Gibson's Mr. Go claimed he overheard some unspecified number of instances of possible confusion but conceded this occurred "a long time ago," and that he could not recall when this occurred or any specific store location where this occurred. He admittedly did not report any such incidents, either up the Gibson ladder or to any store contact, despite a policy requiring daily written reports to the home office. Tr. 331:6-23. Mr. Go's story was non-specific, about people in stores placing a non-Gibson guitar in the Gibson section of a store. Tr. 283:1-25. Unnamed people would "place other brands, like Dean, right there." *Id.* He offered no evidence of even a single diverted sale, despite servicing hundreds of stores for years. Tr. 330.

At most, the testimony from Go, LeFebvre, and Rasnick show that over more than 40 years of competition with hundreds of millions of dollars of annual sales and multi-million dollar annual advertising (from public information), Gibson could find only a very few isolated, *de minimis* instances with no actual confusion resulting in any diverted sale. Tr. 410:19-411:5, 413:3-8; *see also* PTX-854, sealed Tr. 6:22-25. *See Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 623 (5th Cir. 2023) (Isolated instances of confusion about the affiliation of two companies that do not result in redirected business are not enough to find actual confusion. Instances of uncertainty about affiliation or connection should be weighed against each party's volume of business as a whole.). Gibson has suffered no hardship and the balance favors Armadillo.

16

D.  Gibson is Not Entitled to Injunctive Relief (or an Accounting) for "Counterfeiting"
By Copying a Body Shape of an Expired Design Patent

Gibson's counterfeiting claim arises under the Lanham Act.  For the same reasons Gibson is not entitled to injunctive relief (or an accounting of Armadillo's profits) for trademark infringement, Gibson is not entitled to injunctive relief for counterfeiting.  Armadillo did not pass off any of its guitars as those of Gibson, Armadillo affirmatively labelled its guitars with the DEAN or LUNA brand, and Armadillo had the right to copy the expired design patents.  Further, the jury followed the agreed-upon instructions in not awarding Gibson any statutory damages.

The jury instructions on which Gibson insisted directly contradict Armadillo's free and unfettered right to even exactly copy the body shapes of Gibson's expired design patents.  As a reminder, the Court's preliminary instruction on counterfeiting correctly instructed the jury that counterfeiting required passing off.  Tr. 15.  During the charge conference, however, Gibson represented that its proposed charge "is the statutory language that is contained at 15 USC 1116(d)(1)(B)(ii) and it is a straight lift from the statute…."  Tr. 1653-54.  What Gibson did not tell the Court is that the statute on which it relied is limited to the Olympic rings and like Olympic and Paralympic symbols and words.

Section 1116(d)(1)(B)(ii) is limited to remedies "made available by reason of section 220506 of Title 36."  And that section of Title 36 protects the name "United States Olympic and Paralympic Committee" and words and symbols specific to the Olympics.  Stated differently, Gibson talked the Court into using an instruction based on a statute protecting against copying of the Olympic rings, and the few other words or symbols specific to the Olympics.

Instead, Section 1116(d)(1)(B)(i) applies.  This statute has different language including the word "counterfeit."  In turn, the Lanham Act defines "counterfeit" as "a spurious mark which

17

is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Over Defendants' specific objection, Tr. 1651, Gibson convinced the Court to delete the critical word "spurious" from the instruction for counterfeit. Tr. 1779-80. This enabled Gibson to tell the jury that copying a shape identical or substantially identical to Gibson's registrations was a counterfeit, *see, e.g.*, Tr. 1668, even though there had been no passing off by Armadillo, Tr. 1425:14-17, Gibson Motion at 28, and Gibson's former president and 30(b)(6) witness each volunteered "counterfeit" required passing off. Tr. 548:17-25, 1001:18-20.

Gibson's incorrect counterfeiting instruction is also "in conflict with the federal patent laws," *Compco* 376 U.S. at 237, and violates the carefully crafted bargain under which, once the patent or copyright monopoly has expired, the public may use the invention or work at will and without attribution. *Dastar*, 539 U.S. at 33-34. The Court should not issue an injunction because Armadillo fairly made use of body shapes in the public domain.

E. <u>The Court Should Not Grant Gibson Injunctive Relief on its Two Word Marks</u>

The Court should not grant Gibson injunctive relief relating to its "FLYING V" or "HUMMINGBIRD" word marks. Gibson's 2017 cease and desist letter did not accuse Armadillo of infringing **either** of Gibson's word marks. DTX-3333.

1. <u>Gibson's Flying V Word Mark</u>

Gibson's Flying V Word Mark infringement case was based on a single, seven line Instagram Post **from 2013**, PTX-376. The post began with "deanguitars." The seven lines also included www.deanguitars.com. The last line ends with "#Flying V." *Id*.

Gibson's evidence shows the reference to "Flying V" at Armadillo was a one-time, 2013 occurrence. Tr. 588:10-18. Armadillo has never used Flying V alone; someone at Armadillo used #FlyingV once, twelve years ago in the "hashtags" of an Instagram post. Armadillo has not

18

used "Flying V" since 2013, even though that phrase is used by Gibson and the guitar industry in a nominative sense to describe a body shape, not a source. Gibson's website identifies "Flying V" as a body style, not a brand. Tr. 933:21-940:5. Mr. DeCola admitted the phrase is "very descriptive." Tr. 182:22-23. Mr. Abend's chart described the body style of his kit as a "Flying V." He testified that "everyone I have known in the music business has called any V-shaped guitar … a Flying V." Tr. 1133:9-16. George Gruhn testified to that as well. Tr. 1274:8-17. Nonetheless, Armadillo has not used that phrase in 12 years.

### 2. Gibson's Hummingbird Word Mark

For its Hummingbird argument, Gibson relied on a LUNA Guitar printed catalog **from 2013**. PTX-542. The front cover says "Luna Guitars." One must turn sixteen pages in the 2013 Luna Guitars paper catalog to find the page that shows and describes the LUNA Fauna Hummingbird. *Id*. at ARMADILLO3955.

The guitar headstock has the word LUNA. The guitar **does not** have the word hummingbird on it. The guitar body has an abalone inlay depicting a hummingbird. Directly under the guitar in the catalog is the word "fauna" immediately before the word hummingbird and followed by a description of the depicted hummingbird scene. Armadillo discontinued the Luna Fauna Hummingbird in 2020. Tr. 1108:1-1109:3. The years of inactivity evidence that Armadillo does not intend to resume manufacturing of the Luna Fauna Hummingbird. *Cf.* 15 U.S.C. § 1127 (nonuse for three years is presumptive evidence of abandonment). And Armadillo would not even consider reintroducing this guitar model absent a clear path from the Court.

### 3. The Law of Injunctive Relief Regarding Discontinued or "One-Off" Uses

An injunction is an extraordinary remedy, where a potential violation is presented to the Court in a motion to show cause why a party should not be held in contempt. "Good faith is not

a defense to civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002). For this reason, "[t]he cessation of infringing activity does not affect the determination of liability, but it may make an injunction unnecessary." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 198 (5th Cir. 1998).

The Court should exercise its discretion and not enter a permanent injunction regarding either of Gibson's two word marks. The Armadillo use on which Gibson relied in the case of its word mark "Flying V" was a 12 year old one-off Instagram post. Armadillo discontinued the LUNA Fauna guitar bearing a hummingbird inlay in 2020 because of poor sales.

The purpose of an injunction is to prevent future violations. *See, e.g.*, *Swift & Co. v. United States*, 276 U.S. 311, 326 (1928). "The moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).[5] Gibson did not meet this burden. And the reality is, there is no threat of future violations.

The jury found that Armadillo did not willfully infringe either of the two word marks (or any of the three body-shape marks). Dkt. #754 at 3 (Question 4). This is telling evidence that there is no cognizable danger of "recurrent violation" of either of the two word marks. Gibson's trial evidence of infringement confirms there is no cognizable danger of recurrent violation: a

---

[5] In its 2020 Memorandum Opinion and Order, Dkt. #546, the Court referred to a separate portion in *Grant* which did impose the burden on defendant to show discontinued activity made a case moot. For avoidance of confusion, the above-quoted *Grant* language is the burden on a party seeking a permanent injunction to show there is some cognizable danger of recurrent violation.

single Instagram post from 2013 using "#FlyingV"; and 2013 printed catalogs of different guitars in a suite of LUNA flora and LUNA fauna guitars, when sales of the accused guitar was discontinued four years ago.

Gibson claims there is no harm in entering an injunction on the two word marks because Armadillo long ago stopped using either and does not intend to do so in the future. This Gibson argument misses the point. Gibson failed to meet its burden to show there is a cognizable danger of recurring violation. *Grant*, 345 U.S. at 633. Conversely, Armadillo should not be faced with the threat of future civil contempt if at some time in the future someone makes inadvertent use of a word Gibson deems to be too close to Hummingbird or Flying V.

F.    Gibson is Not Entitled to Injunctive Relief Based on the Jury Findings of Laches and Lack of Willful Intent

1.    Laches Applies Here

The jury separately found Gibson inexcusably delayed in asserting each of the five "infringed" trademarks against Armadillo. Dkt. #754 at 4 (Question Nos. 5, 6). The jury also separately found Gibson's unreasonable delay caused undue prejudice to Armadillo as to each of the five marks. *Id.* at 5 (Question No. 7). *See, e.g., Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.,* 550 F.3d 465, 490 (5th Cir. 2008) (laches requires (1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay."). The jury confirmed that in some instances, Gibson's unreasonable delay was well over 40 years. Dkt. #754 at 5-6 (Question 8). Thus, based on the jury answers, laches applies as to each of the three "non-generic" body shape trademarks and the two word marks.

Gibson notes the jury finding that Armadillo had unclean hands, but the instruction

21

allowed the jury to do so without identifying any specific Gibson trademark (asserted or otherwise) and not at any specific time.  Dkt. #754 at 6 (Question 9).  Consequently, that finding is not an impediment to laches.  *See Conan Props. v. Conans Pizza, Inc.,* 752 F.2d 145, 150-151 (5th Cir 1985) ("Although the parties submitted several special interrogatories to the jury, none asked the jury to determine whether Conans Pizza was an intentional, bad faith infringer **when Conans began using** the CONAN THE BARBARIAN mark and image.") (emphasis added).  Gibson likewise failed to link its unclean hands question to any asserted trademark, let alone to any specific time.

Gibson's failing becomes even more apparent from the jury finding infringement was not willful, although intentional, as to any the five infringed marks. Dkt. #754 at 3 (Questions 3, 4).  Consequently, the jury found for each of the five marks, Armadillo either did not know that it was infringing Gibson's trademark or did not act with deliberate indifference to Gibson's trademark rights.  Dkt. #746 at 27 (instructions).  The respective answers to Question 4 are consistent with that of Question 9 because the jury could have based unclean hands on initial internal communications at Armadillo regarding Gibson's un-asserted SG word mark.  Tr. 853:12-854:2, Tr. 1297:19-1299:5.  The jury could reasonably have concluded Armadillo's subsequent public use of Gran Sport instead of GS negated any initial bad intent as to the Gran Sport.  In all events, the unclean hands finding should not bar application of laches.  *Conan Props., supra.*

## 2. The Finding of Laches is Further Reason to Deny Injunctive Relief

In the Fifth Circuit, when there is a finding of laches, even if the *eBay* factors point to an injunction, the Court further examines whether laches bars the plaintiff's request for injunctive relief.  *See, e.g.*, *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 622, 626 (5th Cir. 2013) ("[A] finding of laches . . . may bar injunctive relief if the trademark owner conducted itself in a way

22

that induced the infringer's reliance or if an injunction would result in 'substantial prejudice' to the infringer."). "There is no doubt that laches may defeat claims for injunctive relief as well as claims for an accounting." *Armco, Inc. v. Armco Burglar Alarms Co.*, 693 F.2d 1155, 1161 n.14 (5th Cir. 1982) (citations omitted).

### a.  Gibson's Affirmative Acts

Gibson is not entitled to a permanent injunction because affirmative acts on Gibson's part implicitly, if not explicitly, authorized Elliott Rubinson and, through him, Armadillo to continue selling DEAN guitars.  Thoroughbred Guitars was the biggest retail seller of DEAN guitars and also at the same time was one of the biggest retail sellers of Gibson guitars. Tr. 486:19-21; Tr. 549:23-550:6; Tr. 1294:4-14; Tr. 1411:9-20.  Moreover, Gibson's then-president, Mr. Berryman, visited Thoroughbred Guitars, as did Mr. Davidson.  Tr. 499:7-16, 549:23-550:14.  Gibson's failure to complain while Mr. Rubinson was selling both Gibson and DEAN guitars constitutes an affirmative act that at least implicitly authorized Armadillo to continue sell DEAN guitars. But there is more.

As noted above, Gibson communicated orally with Mr. Rubinson in 2004 about Gibson concerns.  Mr. Rubinson had Mr. Zelinsky prepare design changes to the DEAN V.  However, Gibson did not follow up with Mr. Rubinson in writing.  Particularly, in view of his prior experience selling both DEAN and GIBSON guitars in the same Thoroughbred stores without complaint from Gibson, Mr. Rubinson had every reason to believe Gibson had decided not to further trouble Armadillo.  *See* Section II, C (Factor 3), *supra*.  For this reason also, the Court should not enter a permanent injunction for any of the "infringed" guitars models because Armadillo continuously sold them while Elliott Rubinson was alive.

b.  Armadillo's Significant Prejudice

In addition, the Court should not issue a permanent injunction because of the substantial prejudice to Armadillo that would result.  As discussed above, Armadillo invested significantly in advertising and marketing in the face of Gibson silence.  Tr. 1090-1098; DTX-3902; DTX-3909; DTX-3910; Tr. 1414:20-1415:10; *see* Section II, C (Factor 3), *supra*.  Mr. Rubinson's request that Mr. Zelinsky prepare design changes for the DEAN V shows Armadillo would have acted differently if Gibson had not gone silent.  Armadillo has been working to resurrect its advertising and marketing investment, and would suffer significant prejudice if it was not allowed to continue that effort.

Courts "focus on the degree of prejudice the defendant would suffer in the event the infringing use is enjoined." *Abraham*, 708 F.3d 614, 622, 624.  *See also Conan*, 752 F.2d at 153 (declining to impose injunction after successful laches defense where defendant had invested heavily in use of the accused mark during plaintiff's delay); *Brown v. Bridges*, No. 13-cv-4947, 2016 WL 3660666, at *6 (N.D. Tex. Jan. 26, 2016) (declining to impose injunction after successful laches defense because "[t]o declare Bridges [sic] use to be infringing now and issue an injunction, after at least nine years of delay, would clearly be prejudicial").  For either, or both reasons, Gibson is not entitled to injunctive relief.

3.  Laches Precludes the Award of Armadillo's Profits

In the Fifth Circuit a finding of laches also can preclude the award of defendant's profits. *Conan*, 752 F.2d at 152 ("A finding of laches alone . . . typically will foreclose a demand for an accounting."); *Abraham*, 708 F.3d at 625-26 (same); *Armco*, 693 F.2d at 1161, n.14 ("There is no doubt that laches may defeat claims for injunctive relief as well as claims for an accounting.") (citation omitted).  Because the jury found that laches applied to bar each of Gibson's claims

24

based on its Flying V body, Explorer body, SG body, Hummingbird word and Flying V word, Gibson is precluded from receiving an award of profits based on those claims. (Dkt. #754 at 4-6.) And that precludes the award of even the $1.00 (one dollar) the jury awarded.

## III.    GIBSON'S IMPROPER DEMAND FOR STATUTORY DAMAGES OR PROFITS

The parties consented to, and tried, all issues to the jury, including equitable issues. Fed. R. Civ. P. 39(c)(2). Consequently, the jury's findings are binding on the Court. *Garza v. Starr Cnty., Tex.*, 628 F. App'x 887, 890 (5th Cir. 2015) ("[W]hether or not the issues were equitable in nature, the verdict of the jury must be treated as if the right had existed, and it is beyond the power of the district court to set the verdict aside on the theory it was advisory.") (citations omitted). Indeed, Gibson asks the Court to act contrary to controlling law. *See id*.; *Gaia Techs., Inc. v. Recycled Prods. Corp*., 175 F.3d 365, 370-71 and n.6 (5th Cir. 1999) (district court erred in entering judgment based on factual finding contrary to jury verdict). The Court should reject Gibson's request to use its discretion and award any of Armadillo's profits or statutory damages. *Id*.; *accord P & L Contractors,* 5 F.3d at 138; *Griffin,* 471 F.2d at 915. The Court does not need to consider the issue of treble damages because Gibson is not entitled to any monetary relief and because the Gibson Motion and proposed order fail to request, and thus waive, any claim to trebling.

### A.    Disgorgement of Profits

First, the Court should deny any award of Armadillo's profits because of laches. *Abraham*, 708 F.3d at 622, 626; *Armco*, 693 F.2d at 1161 n.14. Second, Gibson's discussion is unnecessary since the issue of disgorgement of profits was submitted to the jury. Gibson Motion at 21-28. The jury determined that one dollar ($1.00) would fairly and reasonably compensate Gibson. Dkt. #754 (Question 15).

25

Gibson's Motion discusses six factors to consider when damages were **NOT** submitted to the jury. Gibson Motion at 22, *citing, e.g., Retractable Techs., Inc. v. Becton Dickinson & Co*., 919 F.3d 869, 873 (5th Cir. 2019) (listing intent to confuse or deceive, diversion of sales, adequacy of other remedies, unreasonable delay, public interest and palming off). Gibson did not ask the Court to include these factors in the instructions for the jury to consider, and thus waived this issue. However, as discussed below, the following factors justify a Final Judgment with no disgorgement award:

**Factor (1)**    The jury did not find willful infringement, although that "is an important factor which must be considered when determining whether an accounting for profits is appropriate." 2022 Memorandum Opinion and Order, Dkt. #546 at 17 (citations omitted). Gibson's reliance on the jury finding of unclean hands, Gibson Motion at 23-24, is misplaced. The jury was not asked to determine whether Armadillo was an intentional bad-faith infringer when Armadillo began using the any of the asserted trademarks. *Conan,* 752 F.2d at 150-151. Or even if the jury based its finding on an asserted trademark.

**Factor (2)**    Gibson failed to present evidence that any of its potential sales were diverted to Armadillo, even stipulating to JMOL of no actual damages. Gibson is estopped and/or waived any argument about potential diversion of sales.

**Factor (4)**    The jury found unreasonable delay, including unreasonable delays of more than 40 years for the Flying V and Explorer body shapes, and seven years for the SG body shape. Dkt. #754 at 5-6 (Question 8). As explained above, the bad faith finding is inapplicable because it is not linked to any asserted trademark.

**Factor (5)**    Defendants showed that the public would be disserved by a permanent injunction, especially as to the body-shapes. Gibson's incorrect attribution of a third-party

26

statement to Armadillo, using something not in evidence, is consistent with Gibson's contentious and litigious reputation and practice.

**Factor (6)**    Gibson conceded Armadillo did not engage in palming off.  An accounting is not appropriate here – not even for one dollar.

    B.  <u>Statutory Damages for Counterfeiting</u>

Gibson incorrectly argues the Court can award statutory damages because the jury did not enter a number for statutory damages.  Gibson Motion at 14.  On the contrary, the jury followed agreed-upon instructions in the verdict form and, based on its prior answers, did not award Gibson any counterfeiting statutory damages.  Dkt. #754 at 10 ("Section 6").  Following instructions, the jury instead proceeded to Section 8 ("Cancellation").  *Id* at 12.  Moreover, the Court granted JMOL in Defendants' favor that Gibson suffered no actual damages.  Tr. 1646:17-1647:2.  Those results bind Gibson.  *See also* Dkt. #546 at 21 n.6.  Gibson is not entitled to recover statutory damages for this reason alone.  In addition, Gibson is not entitled to request statutory damages because it has not elected to waive its claim for actual damages, including Armadillo's profits.  15 U.S.C. § 1117(c).  Gibson's proposed order seeks both.  Dkt. #794-1.

Gibson also ignores the legal impact of its expired design patents.  *See* Section II, A, B, *supra*.  Gibson is not entitled to any statutory damages for the same reasons Gibson is not entitled to injunctive relief.  *Dastar,* 539 U.S. at 34.  The American public, including Dean Zelinsky and Armadillo, rightfully could copy Explorer and Flying-V guitar body shapes beginning in 1972.

Gibson now asks the Court to apply seven factors it gleans from copyright statutory damages cases.  Gibson Motion at 15.  Gibson did not ask that these factors be included in the jury instructions when it sought an award of statutory damages for counterfeiting, and thus also

waived this issue.  Even if the Court elects to consider Gibson's arguments, they do not justify an award of statutory damages.

Expenses saved/profits made:  In the first trial, Gibson sought damages from Armadillo going back to 1999.  The first jury learned Gibson's unreasonable delay had resulted in Armadillo no longer having relevant evidence.  This was a component of the undue prejudice on which the jury could rely for laches in 2022.  In 2025, only weeks before trial, Gibson voluntarily limited its damages case to begin in 2017.  Gibson now, however, seeks to shift the blame, complaining that our case should be analogized to a default judgment context because old Armadillo documents are unavailable. Gibson Motion at 16.  On the contrary, this is further evidence about why the Court should apply laches here.  Gibson, moreover, should be estopped to complain about sales prior to 2017 based on its decision to limit damages and/or has waived any such argument.

Part of Gibson's argument is that counterfeiting extends back to 1976 and 1977.  Gibson Motion at 16.  Yet, Gibson did not obtain its Explorer and Flying V federal registrations until 1997.  Gibson's two design patents expired in 1972.  Gibson's 1978 Ibanez agreement did not identify any federal or common law rights relating to the Explorer or Flying V body shapes. Gibson's continued effort to withdraw from the public rights it gave to the public should not be rewarded.

Revenue lost by Gibson: There was none.  And Gibson is estopped to complain otherwise.  *See* Section II, A, B, *supra*.  Deterrent effect on others:  Gibson's "evidence" here is a third-party article Gibson incorrectly attributes to Armadillo.  *See* Section II, C (Factor 3), *supra*.  Defendants ask the Court to consider this factor in the context of Gibson's aggressive efforts to bully smaller competitors to not use what Gibson long ago dedicated to the public.

28

Armadillo's cooperation in providing records:  Armadillo complied and Gibson has no complaint here.

The value of Gibson's trademarks:  Gibson continues to misuse its trademarks, talking about how "Gibson invented its trademarks decades ago."  Gibson Motion at 17.  *See Dastar*, 539 U.S. at 34 (The Lanham Act does not "reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity.").  Lacking any evidence of actual value, Gibson hand-waves and name calls.  Gibson is unable to attribute a specific value to an individual mark. And ignores that even its own website uses the body shapes as descriptive of product, not source. Tr. 939:21-940:5.

Whether Armadillo's conduct was innocent or willful: Contrary to Gibson's argument, the jury was not asked about willful counterfeiting.  *Compare* Gibson Motion at 19 *with* Dkt. #754 at 2 (Question 2).  The jury found Armadillo did not willfully infringe.  *Id.* (Question 4). The unclean hands finding was not linked to any of Gibson's asserted trademarks.  *See Conan,* 752 F.2d at 150-151; Section II, E(i), *supra*.  Potential for discouraging Armadillo: Gibson's arguments make no sense and/or are inconsistent with jury findings.  Gibson Motion at 20-21. Gibson unreasonably delayed. Gibson failed to follow up with Mr. Rubinson.  Gibson's 2017 C&D letter was limited to the DEAN V and DEAN Z, which Gibson knows entered the market after Gibson's patents expired and when Gibson asserted no common law rights.  *See, e.g.*, *Streamline Prod. Sys. v. Streamline Mfg.*, 851 F.3d 440, 456 (5th Cir. 2017) (continued use after receiving a C&D does not evidence intent to confuse).

To put Gibson's argument in context, Gibson asks for the statutory maximum for each mark.  Gibson Motion at 14.  Gibson demands $200,000 for a single use in 2013 of #FlyingV in a Dean Instagram post, with stipulated profits of $928.77, and for using the word hummingbird

in 2013 catalogs, with stipulated profits of $4,551.80.  Dkt. #754 at 10.  For further context, recall that Gibson's counterfeiting jury instruction admittedly is taken from a statute about the Olympic rings and names.  And Gibson asked that the Court delete "spurious" from the definition of counterfeit, although that word is from the statute.  Gibson is not entitled to any statutory damages for counterfeiting.

## IV.    DEFENDANTS ARE THE PREVAILING PARTIES

A defendant who successfully repels a plaintiff's claims prevails for purposes of Rule 54(d).  *See, e.g., Jordan Kahn*, 2023 U.S. Dist. LEXIS 33143 *27 n.4.  Concordia not only did so, but prevailed on the cancellation counterclaim against Gibson's ES registration, pursued jointly with Armadillo.  Concordia is the prevailing party against Gibson.

In addition, Armadillo successfully repelled Gibson's infringement claims as to sales of Armadillo guitars amounting to approximately 90% of all Armadillo accused sales. *See* Dkt. #754, Question Nos. 1, 15.  The jury awarded Gibson only one dollar ($1.00).  And, for the reasons expressed above, Gibson is not entitled to injunctive relief.  On balance, Armadillo is also the prevailing party against Gibson.  With that said, the facts warrant each side bearing its own costs.  *See Jordan Kahn*, 2023 U.S. Dist. LEXIS 33143 *33.

## V.   CONCLUSION

In view of the foregoing, the Court should enter Defendants' proposed Final Judgment.


DATED: May 2, 2025                          Respectfully submitted,

                                            */s/ Jerry R. Selinger*
                                            Jerry R. Selinger, Lead Counsel
                                            State Bar No. 18008250
                                            PATTERSON + SHERIDAN, LLP
                                            1700 Pacific Ave., Suite 2650

Dallas, Texas 75201
Tel: (214) 272-0957
Fax: (713) 623-4846
jselinger@pattersonsheridan.com
Craig V. Depew
Texas State Bar No. 05655820
PATTERSON + SHERIDAN, LLP
24 Greenway Plaza, Suite 1600
Houston, Texas 77046
Tel: 832-968-7285
Fax: 713-623-4846
cdepew@pattersonsheridan.com
Kyrie K. Cameron
State Bar No. 24097450
PATTERSON + SHERIDAN, LLP
24 Greenway Plaza, Suite 1600
Houston, Texas   77046
Tel: (713) 623-4844
Fax: (713) 623-4846
kcameron@pattersonsheridan.com

ATTORNEYS FOR DEFENDANTS
ARMADILLO DISTRIBUTION
ENTERPRISES, INC. AND CONCORDIA
INVESTMENT PARTNERS, LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF electronic filing system on May 2, 2025.

*/s/ Jerry R. Selinger*
Jerry R. Selinger

31