IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| GIBSON, INC., a Delaware corporation, | ) <br> ) <br> ) |
| Plaintiff/Counterclaim-Defendant, | ) Case No. 4:19-cv-00358-ALM <br> ) |
| vs. | ) <br> ) |
| ARMADILLO DISTRIBUTION ENTERPRISES, INC.; CONCORDIA INVESTMENT PARTNERS, LLC, | ) <br> ) <br> ) <br> ) |
| Defendant/Counterclaim-Plaintiff | ) <br> ) |
| DOES 1 through 10, | ) <br> ) |
| Defendants. | ) |

**PLAINTIFF GIBSON, INC.'S REPLY IN SUPPORT TO ITS MOTION**

**<u>FOR PROPOSED JUDGMENT (DKT. NO.794)</u>**

Plaintiff Gibson, Inc. ("Gibson") hereby files its Reply in Support to its Motion for Proposed Judgment (Dkt. No. 794, hereinafter "Gibson's Motion"), stating the following:

**I.     Introduction.**

Despite their mischaracterization of the jury's verdict, Gibson is the prevailing party. The verdict is not substantially different from the 2022 verdict in which the Court found Gibson as the prevailing party.

Defendants spend a substantial portion of the Opposition to the Motion (the "Opposition") merely repeating its "expired design patent" theory that the parties have briefed multiple times. As explained in Gibson's Opposition to Defendants' Motion for Final Judgment, Defendants' expired design patent theory is legally incorrect and in direct conflict with the jury's verdict. That Gibson had design patents on its guitar body shapes does not preclude Gibson from later earning trademark rights in those shapes. Defendants' Opposition takes a chaotic turn after this, repeating arguments, taking contradictory positions, and generally lacking coherence or factual support. Defendants even offer testimony—not even through a witness but through its attorneys—regarding how Defendants' own admissions should be construed or for "added context." Most importantly, Defendants again argue that the Court adopt a final judgment that—rather than giving effect to the jury's verdict—allows Armadillo to continue intentionally infringing and counterfeiting Gibson's valid, enforceable trademarks.

Additionally, Defendants' Opposition exerts considerable effort inaccurately retelling the facts to the Court, asking the Court to supplant its judgment for the jury's and to weigh the evidence. The Defendants are not using the facts on the record to support the jury's verdict but to *undercut it*. For example, Defendants fixate on evidence of third party use of Gibson's trademarks (despite the jury's finding that all but one of Gibson's trademarks are valid and enforceable) and actual confusion (despite the jury's finding that a likelihood of confusion exists between Armadillo's use of its infringed products

1

and Gibson's trademarks). Defendants improperly attempt to re-litigate the facts of the case and ask the Court to weigh the evidence, disregarding the jury's findings.

Gibson requests the Court enter a final judgment that honors the jury's verdict by holding Armadillo accountable for its intentional infringement and counterfeiting of Gibson's trademarks and its unclean hands.

### II.    Gibson is the Prevailing Party.

Defendants argue that they are the prevailing parties based on the jury's finding regarding contributory infringement and Gibson's ES body shape trademark. [*See* Opposition at 30.] But the prevailing party is determined by whether that party has "been successful on the central issue" of the case. *See Iranian Students Ass'n v. Edwards*, 604 F.2d 352, 353 (5th Cir. 1974). Defendants emphasized repeatedly during trial and post-trial briefing that the central issue to this case is whether Defendants are infringing Gibson's Flying V and Explorer body shape trademarks with the Dean V and Z guitars. For example, in closing arguments, Defendants' counsel described Gibson's Flying V and Explorer guitars as "the main two [shapes] in this case." [*See* Jury Trial Transcript Vol. 8, Dkt. 767 at 1691.] Defendants' counsel reiterates: "why am I talking about the Z and V? **Because that's what this case is all about**." [*See id.* at 1693 (emphasis added).]

Here, the jury found Armadillo intentionally infringed and counterfeited Gibson's Flying V and Explorer body shape designs and that Armadillo did so with unclean hands. [*See* Verdict Form, Dkt. No. 754 at Question Nos. 1, 2, and 9.] In addition to succeeding on what Defendants characterize as the main two shapes in this case, Gibson also succeeded in proving Defendants infringed on the SG body shape design and two of Gibson's wordmarks, that Armadillo had unclean hands and, therefore, cannot assert its laches defense, that Gibson's Flying V, Explorer and SG body shapes are not generic and should not be cancelled, and that Gibson was justified in interfering with Armadillo's prospective business relations.

Accordingly, Gibson is the prevailing part and is entitled to a permanent injunction, attorneys' fees, and costs. *See Diageo N. Am., Inc. v. Mexcor, Inc.*, 661 F. App'x 806 (5th Cir. 2016) ("A permanent injunction is the usual and normal remedy once trademark infringement has been found in a final judgment.") (citing 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:1 (4th ed.)). Furthermore, "the Lanham Act authorizes a prevailing party to recover reasonable attorneys' fees in 'exceptional cases.'" *Phillip Morris USA, Inc.*, 547 F.Supp.2d at 681 (citing *Seatrax, Inc. v. Sonbeck Int'l Inc.*, 200 F.3d 358, 372-73 (5th Cir. 2000)); *see also* 15 U.S.C. § 1117. The Fifth Circuit recognizes that "[e]vidence of intentional infringement has been held to establish an exceptional case." *Id.* (citing *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127-28 (5th Cir. 1991).

### III. Defendants Cannot Supplant the Applicable Standard for Determining Injunctive Relief with its Unsupported Expired Design Patent Theory.

Rather than engage with the applicable factors the Court must weigh in determining whether to grant Gibson, the prevailing party, injunctive relief, Defendants' Opposition essentially copy-and-pastes its Motion for Final Judgment (Dkt. No. 795, hereinafter, "Defendants' Motion"). In the Opposition, Defendants again attempt to shoehorn its unsupported, inapplicable "expired design patent" theory into the analysis regarding whether Armadillo should be enjoined from continuing its intentional trademark infringement and counterfeiting of five of Gibsons federally registered *trademarks*. Defendants' duplicative, legally incorrect expired design patent theory comprises the bulk of the Opposition. Because the parties have briefed this *specific* theory multiple times and in multiple contexts, Gibson incorporates that briefing herein and refrains from producing to the Court additional duplicative briefing.[1]

---

[1] *See* Gibson's Opposition to Defendants' Motion for Judgment, Dkt. No. 805; *see also* Dkt. Nos. 697, 705, 706, 718, 726, and 741 (briefing related to Defendant's expired design patent theory).

3

To be sure, however, Defendants' expired design patent theory cannot supplant the applicable standard the Court should use in determining whether to grant Gibson injunctive relief. In the Motion, Gibson discussed at length each *eBay* factor—discussing how the jury's findings, the evidence supporting those findings, trademark law, and public policy weigh in favor of granting Gibson a permanent injunction. [*See* Motion at Section III.] By contrast, Defendants argue that the Court should refrain from granting a permanent injunction *in spite* of those things. For example, despite the jury finding that five of Gibson's trademarks valid and enforceable and that Armadillo intentionally infringed and counterfeited those marks, Armadillo *still maintains* it has every right to make *exact copies* of Gibson's guitar body shapes because *Armadillo* believes those trademarks should not be valid or enforceable.

Armadillo's brazen position—though still unsupported by the weight of the evidence and trademark law principles—is not appropriate at the motion for final judgment stage where the parties are petitioning the Court to give effect to the jury's verdict. Rather, Defendants' refusal to accept the jury's finginds is better saved for a motion notwithstanding the verdict. This is because Armadillo's desired result—to be able to continue intentionally infringing five federally registered trademarks—is at odds with the jury's verdict and with trademark law. Defendants' clunky insertion of its expired design patent theory into the *eBay* factors makes this clear.

For example, Defendant claims Gibson suffered no irreparable harm from Armadillo's intentional infringement and counterfeiting but only offers as support the same, recycled argument that after the expiration of Gibson's design patents, Gibson's body shapes were fair game for the public—totally ignoring the existence of Gibson's **federally registered trademarks** on those shapes that the jury found valid and enforceable. Defendants decline to discuss the second *eBay* factor, confident their expired design patent theory puts the issue to rest. With regard to the third and fourth *eBay* factors, Defendants reiterate the same outlandish arguments made in Defendants' Motion.

4

In discussing the public's interest, Defendants argue that ~~Defendants'~~ the public's interest is disserved if Gibson is able to protect its valid, enforceable trademarks, that consumers will be upset they will not be able to purchase Defendants' infringing, counterfeit products, and that Gibson is an aggressive bully because it enforces its trademarks. These arguments directly conflict with trademark law and public policy and cannot support a finding that the Court should decline from permanently enjoining Armadillo from continuing its infringing conduct.

In discussing the balance of hardships, Defendants wholly ignore *the best* possible evidence to determine whether and how much Armadillo would be harmed by a permanent injunction: whether and how much it was harmed by the permanent injunction put into place after the 2022 trial (which, of note, was *less expansive*[2] than the current one being proposed). In addition to the other reasons supplied by the Motion, Gibson provided the Court with **exact quotes** from a video featuring Armadillo's owner and CEO, Pamela Rubinson, President, Patrick Schuleit, and Brand Manager, Chris Canella, explicitly disclaiming any harm resulting from the permanent injunction following of the 2022 trial as well as deposition testimony from Mr. Schuleit confirming and adopting these statements.[3] Defendants complain Gibson did not present this evidence at trial but ignore that the Court instructed the parties not to discuss or disclose the existence of the 2022 trial to the jury. Had Gibson used the evidence at trial—to what end is unclear considering the jury was not asked whether Defendants should be enjoined—Defendants would no doubt complain the evidence was unduly prejudicial. Taking Defendants' CEO, President, and Brand Manager's statements for face value leaves little wiggle room around the fact that Defendants' infringing products only comprised a small percentage of

---

[2] This is because the permanent injunction issued by the Court after the 2022 trial included the ES body shape and applied to Defendant Concordia. [*See* Dkt. No. 547.]

[3] Defendants attempt to distance themselves and discount the impact of the quotes by claiming Gibsons falsely attributes the posting to Defendants. This is simply untrue. The Motion provides a citation and direct link to the video interview featuring Defendants' top decision makers and accurately quotes their *exact words*. [*See* Motion at n.13.]

Defendants' sales and that Armadillo suffered little harm when enjoined from making and selling their infringing products. In fact, Armadillo "**flourished**" when it relaunched its line with guitars that differentiated from Gibson's designs.[4]

Similarly, when arguing against an injunction on the "HUMMINGBIRD" and "FLYING V" wordmarks, Defendant attempts to downplay what the jury affirmatively found as intentional trademark infringement and counterfeiting. Defendants again asserts its argument that the Court should refrain from issuing an injunction based on "discontinued" or "one-off" uses, but Defendants refuse to acknowledge that the Court's injunction following the 2022 trial extended to Defendants' use of Gibson's wordmarks. Defendants' remaining arguments relating to whether the Court should issue an injunction are merely a recitation of Defendants' Motion. To avoid further duplicative briefing, Gibson incorporates by reference its Opposition to Defendants' Motion herein. [*See* Dkt. No. 805 at 15-17.]

On the one hand, Defendants' Opposition *insists* that they are entitled to exactly copy Gibson's valid, enforceable trademarks. On the other hand, Defendants state that had Gibson only complained to Defendants *one more time* in the early 2000s, Defendants would have stopped selling its infringing shapes and pursued their modified designs. Defendants' Opposition implicitly admits they had multiple opportunities to stop infringing but refused. Any harm Defendants may incur from a permanent injunction was a risk Defendants chose to take. This is best demonstrated by the fact that only a month after the Court's prior permanent injunction became ineffectual, Defendants resumed manufacturing, advertising, and selling two of the body shapes a Texas jury found to have infringed on Gibson's trademarks. Armadillo's insistence that it should be able to continue infringing and counterfeiting Gibson's body shapes does not outweigh Gibson's interest in protecting its valid,

---

[4] No Fear Guitar Gear, "Dean Guitars – The Untold Stories," YOUTUBE, June 29, 2024, available at https://www.youtube.com/watch?v=Kb3B-ckn1Rs&t=56s.

6

enforceable, and extremely valuable trademarks. The jury found Armadillo intentionally infringed and counterfeited Gibson's valid, enforceable trademarks, and the *eBay* factors support the Court permanently enjoining Defendants from continuing to do so.

### IV.     Defendants' Unclean Hands Precludes it from Asserting Laches.

Defendants again reassert their argument from Defendants' Motion that despite the jury's finding that Defendants had "unclean hands," Defendants can still assert its laches defense. Gibson already addressed this argument in its Opposition to Defendants' Motion, which it incorporates by reference herein. [*See* Dkt. No. 805 at 7-9.] Gibson adds that Defendants are essentially objecting to the jury instruction for vagueness, but Defendants waived their ability to complain about this jury instruction by failing to object prior to the jury's verdict.

The Court instructed the jury that in order to find unclean hands, "[t]he owner of a trademark must demonstrate that **at the time the unlicensed user began using the []marks or sometime thereafter**, said unlicensed user knowingly and intentionally did so with the bad faith intent to benefit or capitalize on the mark owner's goodwill." [*See* Jury Instructions, Trial Transcript Vol. 8 at Dkt. No. 767 at 1801 (emphasis added).] Defendants did not object to this instruction, nor did they tender an alternative instruction or verdict form. Thus, Defendants waive their ability to challenge the instruction now well after the jury returned its verdict.

They jury answered "Yes" to Question No. 9 on the verdict form, finding that Armadillo at some point had "unclean hands" in connection with its use of Gibson's trademarks. [Dkt. No. 754 at Question No. 9.] The evidence presented to the jury supports this finding on several possible theories. For example, Gibson presented ample evidence that Armadillo explicitly decided to use this litigation as a marketing opportunity. Gibson showed the jury Armadillo's internal emails wherein the then-CEO, Evan Rubinson, called this lawsuit "the silver lining of a lifetime" and encouraged Armadillo's

7

employees to "fan[] the flames."[5]  That Armadillo knowingly and intentionally acted "with the bad faith intent to benefit or capitalize on [Gibson's] goodwill" at the time of the lawsuit—which applies to all marks at issue—is sufficient to support the jury's unclean hands finding.  Defendants waived their objection to the instruction, and the jury's finding is well supported by the evidence.  Accordingly, Defendants' argument as to why laches should still apply despite the jury's unclean hands finding fails, and Defendants are precluded from asserting this affirmative defense.

V.     **The Court Should Exercise its Discretion and Award Gibson Statutory Damages or, in the Alternative, a Disgorgement of Armadillo's Ill-Gotten Profits.**

Defendants' Opposition confuses the types of damages offered by the Lanham Act and falsely accuses Gibson of waiving several of its possible remedies.  As an initial matter, § 1117(c) explicitly states and this Court has recognized that **"the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services."** 15 U.S.C. § 1117(c) (emphasis added); *see also* Memorandum Opinion and Order, Dkt. No. 546 at 16.  Statutory damages are an equitable remedy properly within the Court's discretion.  *See Laerdal Medical Corp. v. Basic Medical Supply, LLC*, No., 2016 WL 6436557, at *3 (S.D. Tex. Oct. 31, 2016) ("The Fifth Circuit has held that great latitude is given the district court in awarding damages under the Lanham Act, which expressly confers upon the district judge's wide discretion in determining a just amount or recovery for trademark infringement.") (quoting *Coach Inc. v. Brightside Boutique*, No. 1:11-CA020 LY, 2012 WL 32941, at *5 (W.D. Tex. Jan. 6, 2012) (internal quotes omitted)).

---

[5] *See e.g.*, Plaintiff's Trial Exhibits 705 (Armadillo employees discussing pushing media stories about the Gibson lawsuit and whether Armadillo has seen an increase in sales because of it); *see also* Plaintiff's Exhibit 735 (when one Armadillo employee suggested Armadillo be "better safe than sorry" and alter the designs, Evan Rubinson responded he would "fight this specific matter to the death"); *see also* Plaintiff's Trial Exhibit 706.

Here, the jury found Armadillo intentionally infringed and counterfeited five of Gibson's trademarks and that Armadillo had unclean hands. [*See* Verdict Form, Dkt. No. 754 at Question Nos. 1, 2, and 9.] Most importantly, the jury found that Armadillo "**subjectively and knowingly intended to cause mistake or to confuse or deceive buyers**" and "**knowingly and intentionally did so with the bad faith intent to benefit or capitalize on the mark owner's goodwill**." Jury Instructions, Trial Transcript Vol. 8 at Dkt. No. 767 at 1801 (emphasis added). Additionally, throughout the case and its briefing, Defendants refuse to acknowledge Gibson's right to enforce its valid and enforceable trademarks. Defendants argue Gibson is a "bully" for enforcing its trademark rights and that anyone should have the right to make *exact* copies of Gibson's trademarked shapes. Thus, statutory damages are necessary in order to deter not only Armadillo but other would-be infringers. Gibson's Motion demonstrates that the other relevant factors weigh in favor of awarding Gibson statutory damages under § 1117(c), and the Court is well within its discretion to do so.

Gibson's Motion requests, in the alternative, that the Court award Gibson an accounting of Armadillo's profits from 2017 through the present on the infringing products. Defendants confuse jury instructions with applicable legal standards and falsely accuses Gibson of waiving its remedies and rights.[6] The Court well knows that a disgorgement of profits is a remedy set out by § 1117(a) to entitle a mark holder to recover the defendant's profits, subject to the principles of equity. *See* 15 U.S.C. § 1117(a); *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 584 (5th Cir. 1980). The Fifth Circuit makes clear what factors the Court should consider in weighing whether to disgorge ill-gotten profits, including (1) Defendants' intent to confuse or deceive; (2) the diversion of sales; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff; (5) the public interest in making the conduct unprofitable; and (6) whether it is a case of palming off. *Retractable Techs.*, 919 F.3d at 876;

---

[6] To be clear, Gibson does not waive any remedy available to or any argument that it was damaged by Defendants' conduct, nor *can* Gibson waive any legal standard that the Fifth Circuit instructs the Court to employ.

9

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000); *Rolex Watch USA Inc. v. Meece*, 158 F.3d 816, 823 (5th Cir. 1998); *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998). Again, the jury found that Armadillo intentionally infringed and counterfeiting *five* of Gibsons' registered trademarks and did so "**knowingly and intentionally did so with the bad faith intent to benefit or capitalize on the mark owner's goodwill**." Jury Instructions, Trial Transcript Vol. 8 at Dkt. No. 767 at 1801 (emphasis added). The parties stipulated to the applicable profits from 2017 through the present. Gibson asks the Court to use its discretion to disgorge Armadillo of the profits it reaped on its infringing products, and the principles of equity as well as the applicable standard of law set forth by the Fifth Circuit supports an accounting.

## VI. Two Juries Have Rejected Defendants' Genericness Argument and Found Defendants Acted Intentionally and in Bad Faith.

Defendants continue to argue that Gibson's trademarked body shapes and word marks are generic and, thus, Defendants are entitled to use them. **Two Texas juries have rejected this theory.**[7] Defendant attempts to lean on this belief as justification for its infringement and counterfeiting and as a mitigating factor to the remedies the Court should award Gibson, but Defendants cannot escape that both juries disagreed with this belief despite Defendants' evidence of third party use and Mr. Gruhn's testimony. Most importantly, both juries also found that Armadillo infringed Gibson's marks **intentionally**. The 2025 jury found Armadillo acted with unclean hands, meaning that they "subjectively and knowingly intended to cause mistake or to confuse or deceive buyers." Defendants' incorrect belief that Gibson's marks are generic does not outweigh the fact that this Court has had **two juries** tell it that Armadillo acted with bad faith. Accordingly, Gibson requests the Court honor the jury's verdict and grant Gibson's Motion.

---

[7] This is with the exception of the 2025 jury finding that Gibson's ES body shape trademark is generic and should be cancelled. Gibson respectfully disagrees with the jury's finding but reserves its right to assert this argument in the appropriate post-judgment briefing.

Respectfully submitted this 16th day of May 2025.

/s/*Andrea E. Bates*
Andrea E. Bates
*Pro Hac Vice*
Kurt Schuettinger *Pro Hac Vice*
Johnathan M. Bates *Pro Hac Vice*
Bates & Bates, LLC
1890 Marietta Boulevard NW
Atlanta, Georgia 30318
Telephone: (404) 228-7439
Facsimile: (404) 963-6231
abates@bates-bates.com
kschuettinger@bates-bates.com
jbates@bates-bates.com

Stephen D. Howen
State Bar No. 10117800 Law Office of Steve Howen
7111 Bosque Blvd., Suite 305
Waco, TX 76710
Telephone: (254) 826-6526
Facsimile: (254) 822-4926
steve@stevehowenlegal.com

Attorneys for Plaintiff GIBSON, INC.


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF electronic filing system on May 16th, 2025.

/s/ *Andrea E. Bates*
Andrea E. Bates