IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GIBSON, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00358-ALM |
| | § | |
| ARMADILLO DISTRIBUTION | § | |
| ENTERPRISES, INC. and | § | |
| CONCORDIA INVESTMENT | § | |
| PARTNERS, LLC, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION FOR ENTRY OF FINAL JUDGMENT**

| | |
|---|---|
| Jerry R. Selinger, Lead Counsel<br>State Bar No. 18008250<br>PATTERSON + SHERIDAN, LLP<br>1700 Pacific Ave., Suite 2650<br>Dallas, Texas 75201<br>Tel: (214) 272-0957<br>Fax: (713) 623-4846<br>jselinger@pattersonsheridan.com<br><br>Craig V. Depew<br>Texas State Bar No. 05655820<br>PATTERSON + SHERIDAN, LLP<br>24 Greenway Plaza, Suite 1600<br>Houston, Texas 77046<br>Tel: 832-968-7285<br>Fax: 713-623-4846<br>cdepew@pattersonsheridan.com | Kyrie K. Cameron<br>State Bar No. 24097450<br>PATTERSON + SHERIDAN, LLP<br>24 Greenway Plaza, Suite 1600<br>Houston, Texas 77046<br>Tel: (713) 623-4844<br>Fax: (713) 623-4846<br>kcameron@pattersonsheridan.com<br><br>*ATTORNEYS FOR DEFENDANTS*<br>*ARMADILLO DISTRIBUTION*<br>*ENTERPRISES, INC. AND CONCORDIA*<br>*INVESTMENT PARTNERS, LLC* |

# **TABLE OF CONTENTS**

I. THE EXPIRED DESIGN PATENTS BAR ANY RELIEF ...................................................... 1

    A. *Dastar* followed *TrafFix* and Rejected What Gibson Seeks................................ 2

    B. Gibson's Counterfeiting Instructions are an Additional Reason for Denying Relief ......... 4

II. INJUNCTIVE RELIEF IS NOT SUPPORTED UNDER *eBAY* ............................................ 4

III. LACHES BARS ALL RELIEF ........................................................................................ 8

    A. Laches Bars Any Monetary Award...................................................................... 8

    B. Laches Also Bars Prospective Relief................................................................... 9

IV. DEFENDANTS ARE THE PREVAILING PARTY ............................................................ 10

V. CONCLUSION................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                     **Page(s)**

*Abraham v. Alpha Chi Omega,*
    708 F.3d 614 (5th Cir. 2013). ................................................................................................ 9, 10

*Compco Corp. v. Day-Brite Lighting, Inc.,*
    376 U.S. 234 (1964) .................................................................................................................... 4

*Conan Props., Inc. v. Conan Pizza, Inc.,*
    752 F.2d 145 (5th Cir. 1982) .................................................................................................... 8, 9

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
    539 U.S. 23 (2003) ............................................................................................................. *passim*

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) ................................................................................................................ 4, 5

*Elvis Presley Enterprises, Inc. v. Capece,*
    141 F.3d 188 (5th Cir. 1998) .................................................................................................... 5, 6

*Griffin v. Matherne,*
    471 F.2d 911 (5th Cir. 1973). ....................................................................................................... 9

*Jordan Kahn Music Co., LLC v. Taglioli,*
    2023 U.S. Dist. LEXIS 33143 (E.D. Tex. Feb. 28, 2023) ......................................................... 10

*Paulsson Geophysical Servs., Inc. v. Sigmar,*
    529 F.3d 303 (5th Cir. 2008) ........................................................................................................ 5

*Quick Techs., Inc. v. Sage Group PLC,*
    313 F.3d 338 (5th Cir. 2002) .................................................................................................. 1, 6

*Retractable Techs., Inc. v. Becton Dickinson & Co.,*
    919 F.3d 869 (5th Cir. 2019) ....................................................................................................... 8

*TrafFix Devices, Inc. v. Marketing Displays, Inc.,*
    532 U.S. 23 (2001) ............................................................................................................. 1, 2, 3

*United States v. W. T. Grant Co.,*
    345 U.S. 629 (1953) ................................................................................................................ 6, 7

**<u>Statutes</u>**

15 U.S.C. § 1115(b)(6),(8) .................................................................................................... 2

15 U.S.C. §1114 .................................................................................................................... 3

15 U.S.C. §1125(a) ........................................................................................................... 2, 3

15 USC § 1116(d)(1)(B)(ii) ................................................................................................. 4

Gibson's silence is implicit agreement that the Final Judgment should order cancellation of U.S. Reg. No. 2007277 because the ES body shape is generic. Dkt. #795-1 at 3 (Final Judgment). Gibson buries its concession that the jury rejected its accusations against Concordia. Dkt. #805 at 17 n.25 ("Gibson Opp."). Gibson ignores the critical arguments and rulings made during the charge conference. Tr. 1649-1655. Gibson also ignores controlling law, misbelieving that *Dastar* preceded *TrafFix* and misunderstanding both cases. Gibson Opp. at 3. And Gibson selectively ignores jury answers. The Court should enter Defendants' Final Judgment.

## I. THE EXPIRED DESIGN PATENTS BAR ANY RELIEF

Gibson incorrectly complains that Defendants seek to disregard the jury findings. Gibson Opp. at 1. On the contrary, Defendants want the Final Judgment to reflect the findings — consistent with controlling law. Defendants asked for a *Dastar* charge. Tr. 1649. The request balanced Gibson's right to enforce a body shape trademark after its four body shape design patents expired with the public's right to copy expired design patents so long as there was no passing off. Tr. 1649; *see also* Dkt. #741 at 3 (proposal). Gibson successfully argued Defendants' proposed instruction was a "modification of the legal remedies," and "a pure legal question" not for the jury. Tr. 1652-54. Consequently, there was no link in the charge for the expired design patents. *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 350 (5th Cir. 2002) (no link for "public interest" evidence).

Under Gibson's "pure-legal-question" theory, while the jury found infringement and counterfeiting of three body shape trademarks, Gibson is not entitled to an injunction or monetary award. *See* Motion at 2-10 (Dkt. #795); Opp. to Gibson Judgment at 3-17 (Dkt. #806). Contrary to what Gibson argues now, but consistent with its charge conference representation this was purely legal, Defendants' proposed judgment reflects both the jury answers **and** the

1

legal results flowing from *Dastar*. Dkt. #795-1 at 2 ¶¶ 4, 8.

      A.    <u>*Dastar* followed *TrafFix* and Rejected What Gibson Seeks</u>

Gibson seeks a perpetual monopoly on body shapes it allegedly created. This it cannot have. *See* Dkt. #795 at 4-5. The *TrafFix* case is not contrary to the foregoing and it does not help Gibson. It is about functionality, not remedies. Genericness and functionality are two defenses even to incontestable marks under the Lanham Act. 15 U.S.C. § 1115 (b) (6, 8).[1] In 2001, *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 30 (2001) considered functionality and the relevance of an expired **utility** patent on a claim of Lanham Act trade dress infringement. The Court opined that "[w]here the expired patent claims the feature in question" there is a "heavy burden" on the party seeking trade dress protection "to show the feature is not functional." *Id*. The Court explained *TrafFix* "well illustrates" "the rule that disclosure of a feature in the claims of a utility patent constitutes strong evidence of functionality." *Id*. at 31.

*TrafFix* does not help Gibson. It affirmed a grant of summary judgment of no infringement of unregistered trade dress under Section 43(a) of the Lanham Act based on functionality. *Id*. at 30-32. Thus, the Court did not need to deal with remedies. Nevertheless, the Court reiterated the public's right to copy while rejecting a Lanham Act liability claim: "In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *Id*. at 29.

Gibson's arguments ignore that *TrafFix* expressly criticized the court of appeals because it "gave insufficient recognition to the importance of the expired utility patents, …." *Id*. at 32.

---

[1] Defendants pled genericness but not functionality. While Gibson obtained a MIL precluding evidence of functionality, Dkt. #470 at 4 (MIL 9), several Gibson witnesses conceded body shapes were functional. *See, e.g.*, Tr. 620-621 (Gibson's Expert Mike Rock describing the trademarks-at-issue, "Those are all Gibson design creations, and they are beautiful and they are **functional** and it all fits together.") (emphasis added).

Further, Defendants' argument is about the **remedies** to which Gibson is entitled for trademarks Gibson first sought 22 years after its first two design patents expired. *See* Motion at 3-4; Opp. to Gibson Judgment at 4-5 (Dkt. #806). This is not about jury arguments on liability in the absence of a *Dastar* instruction.

Gibson's minimal efforts to distinguish *Dastar* are fatally flawed. Gibson Opp. at 3-4. First, Gibson asserted federal and state trademark infringement claims and Lanham Act common law claims. Indeed, Gibson bundled **all** of its infringement claims into a single jury question. Dkt. #754 at 1 ("Do you find … Armadillo infringed an alleged Gibson trademark and engaged in unfair competition …."). *Accord* Opp. to Gibson Judgment at 3, 5, 7. Second, while *Dastar* involves a Lanham Act claim after a copyright expired, *Dastar* makes repeated references to patents. *See* Motion at 4-7; Opp. to Gibson Judgment at 5-8. Third, *Dastar* did **not** differentiate between Lanham Act infringement claims under Section 1114 (registered trademarks) and Section 1125(a) (registered and common law trademarks and trade dress): "Thus, in construing the Lanham act, we have been 'careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright." *Dastar*, 539 U.S. at 34 (citing *TrafFix*).

Gibson wants a perpetual monopoly over the three remaining body shapes because Lanham Act is federal law. Gibson Opp. at 6. *Dastar* and *TrafFix* hold exactly the opposite. "The Lanham Act … does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity." *Dastar*, 539 U.S. at 34. Congress "may not" create "a species of perpetual patent." *Id*. at 37. "The rights of a patentee or copyright holder are part of a 'carefully crafted bargain. … under which once the patent or copyright monopoly has expired, the public may use the invention or work at will and

3

without attribution." *Dastar*, 539 U.S. at 33-34 (citations omitted). Because Armadillo guitars indicate the source with the DEAN and LUNA marks, Gibson does not get injunctive relief or money. Motion at 4, 7.

Contrary to Gibson's argument, and as discussed below, Defendants also engaged in a detailed analysis of the *eBay* factors. *Compare* Motion at 7-11; Opp. to Gibson Judgment at 8-18 (Dkt. #806) *with* Gibson Opposition at 10.

### B. Gibson's Counterfeiting Instructions are an Additional Reason for Denying Relief

Gibson does not deny its instruction was "lifted from" a statute limited to protecting the Olympic rings and name. *See* Motion at 11. Gibson told the Court it was "a straight lift," Tr. 1653-54, when Gibson, in fact, deleted the first three words of Section 1116(d)(1)(B)(ii), namely "a spurious designation." *Id*. Gibson pretends to be ignorant of the meaning of "spurious" in the context of counterfeiting, unlike its former president and 30(b)(6) witness. *See* Dkt. #795 at 11. Not so! It speaks volumes that Gibson failed to explain why it deleted "a spurious designation" from its "straight lift" charge after it agreed to the preliminary instruction, which used passing off for spurious. *Id*.

Gibson's instruction directly conflicts with federal patent laws. Copying and accurately labelling a thing in the public domain cannot be counterfeiting. *Dastar*, 539 U.S. at 33-34; *Compco Corp. v. Day-Brite Lighting, Inc*., 376 U.S. 234, 237 (1964). To be clear, Armadillo is not making a JMOL argument. Rather, these facts present further reasons under *eBay* the Court should not enter an injunction on any of the counterfeiting answers. Motion at 7-11; Opp. to Gibson Judgment at 8-18 (Dkt. #806).

### II.    INJUNCTIVE RELIEF IS NOT SUPPORTED UNDER *eBAY*

In addition to the clear law barring an injunction on previously patented body shapes,

equitable principles also foil such relief for all five marks. Defendants showed this in their analysis of the four *eBay* factors in the Motion at 4-14 and in the Opposition to Gibson Judgment at 5-21 (Dkt. #806) for each of the five infringed marks.

Irreparable harm: Irreparable harm is not presumed in this Circuit merely upon a finding of likelihood of confusion. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303 (5th Cir. 2008). There is no irreparable harm as to Gibson's three infringed body shape marks because of Gibson's expired design patents. Motion at 3, 7-8; Opp. to Gibson Judgment at 4, 9. Nor is there irreparable harm as to the two word marks. Gibson's evidence for "Flying V" was a single, seven line Instagram post from 2013; for "hummingbird" a 2013 printed catalog (the accused guitar has only the word LUNA). The long-ago cessation of those activities makes an injunction unnecessary. *Elvis Presley Enterprises, Inc. v. Capece,* 141 F.3d 188, 198 (5th Cir. 1998); Motion at 12-14; Opp. to Gibson Judgment at 18-21. Armadillo discontinued its Gran Sport guitar model in 2020. Opp. to Gibson Judgment at 13. Since the jury found that guitar infringes the SG body shape in 2025, there are two reasons not to enjoin it. The "counterfeit" findings discussed above do not mandate an injunction. Gibson's use of clearly flawed instructions belies such harm in the real world.

There are additional reasons this factor weighs against an injunction. The Court looked at whether Gibson actually suffered a loss of control because of Defendants. Dkt. #546 at 5 (2022 Opinion). The overwhelming evidence shows the answer is no, for each of the five marks. Gibson offers only conclusory arguments not specifically linked to any mark, negating any actual loss of control. Gibson Opp. at 11-12. Gibson itself caused any alleged loss of control. During the time Gibson abandoned its Explorer guitar, competitors developed the marketplace. Ibanez introduced V-style and Explorer-style guitars in 1975. Tr. 980:22-989:6. Gibson's 1978 Ibanez

5

agreement did not require any changes to those Ibanez instruments. Tr. 510:24-511:10; PTX-137, at 8-10; Motion at 3, 10. Gibson was even unclear whether customers associated V-style or Explorer-style shapes with Gibson or a competitor. Tr. 984:22-25, 985:1-13, 988:15-989:5. Opp. to Gibson Judgment at 14-15.

Since the 1970s, numerous competitors have been selling each of the three infringed body styles. Tr. 528:17-529:23 (Berryman), Tr. 1267-1273:17 and cited exhibits (Gruhn: V-style), 1274:18-1280:9 and cited exhibits (Gruhn: Explorer-style), Tr. 1281:8-1285:17 and exhibits (Gruhn: SG-style). Many competitors also have used, and continue to use, "Flying V" to refer to their guitars. Tr. 1274:3-14 (Gruhn). Although DEAN Z and DEAN V guitars have been sold since 1977, any actual loss of control was due to the numerous other competitive guitars in the marketplace since 1975. Dkt. #806 at 15. Finally, that Gibson has nothing but a few speculative instances of initial interest confusion over 40+ years for Flying V and Explorer body shapes, and no showing of any type of confusion for the other three marks, despite spending millions annually on advertising, is another reason why there is no irreparable harm. Opp. to Gibson Judgment at 15-16. <u>Public Interest:</u> This factor supports Armadillo if the public has the right to copy the three expired body-shape design patents. Motion at 8-9. Gibson argues the jury answers reject "the expired design patent theory." Gibson. Opp. at 13 n.17. Not true. Because Gibson successfully objected to Defendants' *Dastar* instruction, Tr. 1649-1655, the instructions did not link the expired patents to any question. *See Quick Techs.,* 313 F.3d at 350. Gibson ignores the public interest in protecting much smaller competitors unable to afford litigation from further rounds of aggressive harassment. Motion at 9.

For the two word marks, Defendants relied on case law concerning one-off or discontinued uses. Motion at 12-14; *Grant*, 345 U.S. at 633; *Elvis Presley*, 141 F.3d at 198.

Gibson's Opposition presents arguments about pre-suit communications, which made no mention of either word mark. Gibson Opp. at 15-16. None of the trial exhibits Gibson cites mention either word mark. Gibson fails to cite the 2017 letter it sent to Armadillo, DTX-3333, which says nothing about either word mark. So Gibson cites materials not in evidence. Defendants object and have moved to strike. *See* Defendants' Opposed Amended Motion to Strike. Dkt. #801, #808. Without waiving anything, Defendants note Gibson does not point to either word mark in its improper evidence. The jury finding of no willful infringement also shows there is no cognizable danger of a recurring violation regarding the two words. *Grant*, 345 U.S. at 633.

<u>Balance of hardships:</u> The balance of hardships favors Armadillo. Motion at 9-10. That is likely why Gibson here also improperly seeks to rely on things not in the record. Again, Defendants object and thus moved to strike. Dkt. #801. Defendants' elaborated on how the balance of hardship favors them in their Opp. to Gibson Judgment at 11-16 (Dkt. #806). While Gibson offered conclusory speculation about harm, Gibson Opposition at 15, Defendants showed Gibson have not, and thus would not be, harmed by allowing Armadillo to remain in the marketplace. To summarize, Elliott Rubinson made Thoroughbred Guitars the largest retailer sales outlet in Florida for DEAN and Gibson guitars. Gibson did not complain. Dkt. #806 at 12. In 2004 Gibson communicated orally with Mr. Rubinson about Gibson concerns, but never communicated again to Mr. Rubinson before he passed away in 2017. Gibson's silence, after Gibson never complaining when Thoroughbred sold both DEAN and Gibson guitars, gave Mr. Rubinson the comfort to continue extensively advertising and promoting the DEAN Z and DEAN V. Armadillo seeks to save those investments now. Dkt. #806 at 12-14.

Gibson did not lose a single sale to an accused guitar. Dkt. #806 at 14-15. Gibson has

7

had multiple competitors selling all three infringed body shapes since the 1970s. *See* P. 6, *supra*. Over more than 40 years of competition with hundreds of millions of dollars of annual sales and multi-million dollar annual advertising, Gibson could find only a very few isolated, *de minimus* instances of initial interest confusion with no actual confusion resulting in any diverted sale. Dkt. #806 at 14-16. The balance favors Defendants.

Accounting: Gibson's demand for accounting or statutory damages is improper. *See* Opp. to Gibson Judgment at 25-30. Gibson is bound by the jury answers. Gibson failed to ask for an instruction on *Retractable* factors and agreed to the profits instruction. *Id*. Defendants object to Gibson's findings and conclusions as explained in Dkt. #806 at 2-3.

### III. LACHES BARS ALL RELIEF

#### A. Laches Bars Any Monetary Award

Defendants showed the jury's unclean hands answer did not impact the laches defense flowing from the jury findings of unreasonable delay by Gibson and undue prejudice to Armadillo. In short, the unclean hands answer did not apply to any of the five laches findings. Motion at 14-16; Opp. to Gibson's Proposed Judgment at 21-25. There is no dispute that laches can preclude any award of profits and injunctive relief. Gibson's response ignores a critical jury answer, and is fatally flawed for three reasons.

First, Gibson ignores the jury finding that Armadillo did not willfully infringe any Gibson asserted mark. Dkt. #754 at 3 (Question 4). For each of the five infringed marks, Armadillo either did not know that it was infringing or did not act with deliberate indifference to Gibson's trademark rights. Dkt. #746 at 27 (instructions). So, as in *Conan Props., Inc. v. Conan Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1982), "the record would not support a finding of bad faith" to deprive Armadillo of the equitable defense. *Id*. Gibson failed to show "the defendant employed

8

the … mark with the wrongful intent of capitalizing on **its** goodwill." *Id*. (emphasis added.)

Second, the unclean hands answer is consistent with lack of evidence for bad faith needed to deprive Armadillo of laches for any of the five marks. Gibson's jury question did not ask the jury to determine whether Armadillo was a bad faith infringer either (a) at the time Armadillo began each allegedly infringing activity or for (b) each separately accused mark. *Conans* required that Gibson do both: "Although the parties submitted several special interrogatories to the jury, none asked the jury to determine whether Conans Pizza was an intentional, bad faith infringer when Conans began using the … mark and image." *Id*. at 150-151.

Third, Gibson's unclean hands question was not limited to the accused marks and Gibson offered evidence regarding bad faith concerning other, non-accused marks. *See* Tr. 853:12-854:2, Tr. 1297:19-1299:5 (internal communications about Gibson's un-asserted SG word mark.). Thus, the answers to Question 4 are consistent with that of Question 9 because the jury could have based unclean hands on initial internal communications at Armadillo regarding Gibson's un-asserted SG word mark. *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973). Gibson's unclean hand arguments at pp. 8-9 all fail because the jury found no willful infringement of any of the five marks. The unclean hands answer could not apply to any of the five laches findings.

B.     Laches Also Bars Prospective Relief

Defendants also showed the laches findings should bar injunctive relief, citing *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 622, 626 (5th Cir. 2013). Motion at 16; Opp. to Gibson's Proposed Judgment at 23-24 (Dkt. #806). Starting from the assumption that laches applied, *Abraham* identified two discrete conditions also barring injunctive relief: "[A] finding of laches…may bar injunctive relief if the trademark owner [1] conducted itself in a way that

9

induced the infringer's reliance or [2] if an injunction would result in 'substantial prejudice' to the infringer." One is enough, the evidence here shows both exist.

Contrary to Gibson's argument, evidence of the first factor is not an "additional unpled argument." Gibson Opposition at 9. Defendants' pled the affirmative defense of laches. Based on the laches findings, Armadillo now shows each of the two *Abraham* conditions are met based on evidence in the record. Evidence Gibson adduced at trial shows laches also applies prospectively because Gibson conducted itself in a way that induced Armadillo's reliance. In addition, Armadillo showed not just undue prejudice (for laches), but that substantial prejudice, would result from a permanent injunction. Opp. to Gibson's Proposed Judgment at 24. Gibson did not dispute Armadillo's evidence. Injunctive relief is not warranted for any of the five marks based on laches alone.

## IV.    DEFENDANTS ARE THE PREVAILING PARTY

Unlike the Court in *Jordan Kahn*, Gibson's simplistic argument ignores the reality that there were mixed results. Motion at 17-18. Gibson does not deny Concordia absolutely prevailed against Gibson's accusations on each of the seven asserted marks. Dkt. #754 at 6-9 (Questions 10-14). Indeed, Gibson says nothing about Concordia or *Jordan Kahn*. Gibson's purely quantitative focus on Armadillo fails to look at even that aspect of the case as a whole. The two marks Armadillo does not infringe account for about 90% of all Armadillo accused sales. Armadillo's last use of either of the two asserted word marks was in 2013. The jury's total monetary award was one dollar. Dkt. #795 at 12-13, 17. Defendants prevailed.

## V.    CONCLUSION

The Court should enter Defendants' proposed Final Judgment, Dkt. #795-1.

Respectfully submitted,

*/s/ Jerry R. Selinger*
Jerry R. Selinger, Lead Counsel
State Bar No. 18008250
PATTERSON + SHERIDAN, LLP
1700 Pacific Ave., Suite 2650
Dallas, Texas 75201
Tel: (214) 272-0957
Fax: (713) 623-4846
jselinger@pattersonsheridan.com

Craig V. Depew
Texas State Bar No. 05655820
PATTERSON + SHERIDAN, LLP
24 Greenway Plaza, Suite 1600
Houston, Texas 77046
Tel: 832-968-7285
Fax: 713-623-4846
cdepew@pattersonsheridan.com

Kyrie K. Cameron
State Bar No. 24097450
PATTERSON + SHERIDAN, LLP
24 Greenway Plaza, Suite 1600
Houston, Texas 77046
Tel: (713) 623-4844
Fax: (713) 623-4846
kcameron@pattersonsheridan.com

ATTORNEYS FOR DEFENDANTS
ARMADILLO DISTRIBUTION
ENTERPRISES, INC. AND CONCORDIA
INVESTMENT PARTNERS, LLC

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF electronic filing system on May 16, 2025.

*/s/ Jerry R. Selinger*
Jerry R. Selinger

11