# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| GIBSON, INC., § <br> § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> ARMADILLO DISTRIBUTION § <br> ENTERPRISES, INC. and § <br> CONCORDIA INVESTMENT § <br> PARTNERS, LLC, § <br> § <br> *Defendants.* § | Civil Action No. 4:19-cv-358 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are three post-trial motions: (1) Plaintiff Gibson, Inc.'s Proposed Judgment and Brief in Support of Relief Requested (Dkt. #794); (2) Defendants' Motion for Entry of Final Judgment (Dkt. #795); and (3) Defendants' Amended Motion to Strike Exhibits B and C to Gibson's Motion for Judgment and Portions of Gibson's Brief Relying on Evidence Not Part of the Trial Record (Dkt. #801). Having considered the Motions, the relevant pleadings, and the applicable law, the Court finds as follows:

1. Plaintiff Gibson, Inc.'s Proposed Judgment and Brief in Support of Relief Requested (Dkt. #794) should be **GRANTED in part** and **DENIED in part**.

2. Defendants' Motion for Entry of Final Judgment (Dkt. #795) should be **GRANTED in part** and **DENIED in part**.

3. Defendants' Amended Motion to Strike Exhibits B and C to Gibson's Motion for Judgment and Portions of Gibson's Brief Relying on Evidence Not Part of the Trial Record (Dkt. #801) should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This is a trademark infringement and counterfeiting dispute. The facts of this case are more fully discussed in the Fifth Circuit's opinion. *Gibson, Inc. v. Armadillo Distrib. Enters., Inc.*, 107 F.4th

441, 443–46 (5th Cir. 2024). Accordingly, the Court only recounts the relevant facts that occurred after the Fifth Circuit remanded the case for a new trial.

I.   **The Trial**

On March 7, 2025, trial commenced (Dkt. #736). Plaintiff Gibson Inc. ("Gibson") claimed rights in seven trademarks ("Gibson Trademarks") (Dkt. #746 at p. 9). Four of the trademarks were for guitar body shapes: (1) the Flying V Body Shape Design; (2) the Explorer Body Shape Design; (3) the ES Body Shape Design; and (4) the SG Body Shape Design (Dkt. #746 at p. 9). Gibson also claimed rights in the Dove Wing Headstock Design trademark and trademarks that are words, HUMMINGBIRD and FLYING V (Dkt. #746 at p. 9).

Gibson argued that Defendant Armadillo Distribution Enterprises Inc. ("Armadillo") violated the Lanham Act by manufacturing, offering to sell, and selling guitars displaying identical or substantially similar marks to the Gibson Trademarks (Dkt. #746 at p. 10). Due to this alleged infringement, Gibson argued that Armadillo was unjustly enriched (Dkt. #746 at p. 10). Further, Gibson asserted that Defendant Concordia Investment Partners, LLC ("Concordia") contributed to Armadillo's infringement of the Gibson Trademarks (Dkt. #746 at p. 10). Throughout trial, Gibson introduced evidence in the form of physical guitars, witness testimony, several witnesses playing the guitars in open court, and other printed exhibits.

Armadillo and Concordia (collectively, the "Defendants") presented a different narrative. They argued that their offer and sale of guitars did not violate the Lanham Act because the guitars shapes were generic and that the shapes did not infringe the Gibson Trademarks because ordinary consumers were not likely to be confused (Dkt. #746 at p. 10). Also, Defendants argued that Gibson's trademark claims were barred by laches. In addition to raising the defense of laches, Defendants filed counterclaims against Gibson (Dkt. #746 at p. 10). Defendants sought cancellation

of Gibson's trademarks on guitar body shapes on the grounds that they were common, generic shapes as well as damages for Gibson's intentional interference with prospective business relations (Dkt. #746 at p. 10).

## II.     The Verdict

After seven days of trial, the parties finished presenting evidence on March 18, 2025 (Dkt. #744) and on March 19, 2025, gave their closing arguments (Dkt. #745). The Court submitted the case to the jury, which began deliberations on March 19, 2025, at 1:26 PM (Dkt. #745).[1] On March 21, 2025, at 10:52 AM, the jury returned its verdict (Dkt. #748). The jury found that Armadillo infringed on most of the Gibson Trademarks and engaged in unfair competition in a manner that created a likelihood of confusion as to the source, affiliation, or sponsorship of Gibson's products. The jury found infringement as to the Flying V Body Shape, Explorer Body Shape, SG Body Shape, the HUMMINGBIRD word mark, and the FLYING V wordmark (the "Infringed Trademarks"), but *not* the ES Body Shape and not the Dove Wing Headstock (Dkt. #754 at p. 1). The jury also found that Armadillo sold or marketed counterfeits of the Infringed Trademarks (Dkt. #754 at p. 2). Further, the jury found that Armadillo intentionally infringed on the Infringed Trademarks (Dkt. #754 at pp. 2–3). But the jury did not find that Armadillo willfully infringed any of the Gibson Trademarks (*See* Dkt. #754 at p. 3).

As to the laches defense, the jury determined that Gibson delayed in asserting its trademark rights against Armadillo as to the Infringed Trademarks (Dkt. #754 at p. 4–5). Relatedly, as to the previously mentioned marks, the jury found that this delay caused Armadillo undue prejudice (Dkt. #754 at p. 5). Crucially, the jury determined that Armadillo had unclean hands in connection

---

[1] In this case, jury deliberations occurred between the hours of 9 AM and 5 PM.

3

with its use the Infringed Trademarks (Dkt. #754 at p. 6). The jury did not find that Concordia contributed to Armadillo's "conduct in infringing and/or counterfeiting" the Infringed Trademarks (Dkt. #754 at pp. 6–7). The jury also determined that Armadillo owed Gibson damages. The final instructions informed the jury that if it found infringement of any of the Gibson Trademarks it was instructed that the parties had agreed that the amount of profits Armadillo earned from sales of products accused of infringing the Gibson Trademarks was as follows:

| | |
|---|---|
| The Flying V Body Shape: | $66,621.49 |
| The Explorer Body Shape: | $76,391.69 |
| The ES Body Shape: | $3,123.03 |
| The SG Body Shape: | $19,905.47 |
| The Dove Wing Headstock: | $1,395,437.33 |
| The Hummingbird Wordmark: | $4,551.80 |
| The Flying V Wordmark: | $928.77 |

(Dkt. #754 at pp. 9–10).

The jury awarded $1.00 (Dkt. #754 at p. 10). The jury did not complete the sections on statutory damages or exemplary damages (*See* Dkt. #754 at pp. 10–11). Further, the jury determined that the ES Body Shape should be cancelled because it is generic (Dkt. #754 at p. 12). Lastly, the jury found that Gibson tortiously interfered with Armadillo's prospective business relations, but that this interference was justified (Dkt. #754 at p. 13).

### III. The Post-Trial Motions

The parties filed their Joint Agreed Motion Regarding Post-Trial Briefing Schedule (Dkt. #790), which the Court granted on April 2, 2025 (Dkt. #792).[2] On April 11, 2025, Gibson

---

[2] In all proceedings, the Court places great weight on the parties' cooperation with each other. Here, the Court appreciates the parties' ability to agree to a briefing schedule as well as the civility counsel demonstrated towards each other throughout trial. Such cooperation embodies the civility all counsel should strive for when practicing in the Eastern District of Texas and it enables the Court to more efficiently and effectively administer justice.

4

filed its Proposed Judgment and Brief in Support of Relief Requested (Dkt. #794). Defendants filed their Response on May 2, 2025 (Dkt. #806) and Gibson filed its Reply on May 16, 2025 (Dkt. #810).

Also on April 11, 2025, Defendants filed their Motion for Entry of Final Judgment (Dkt. #795). Gibson filed its Response on May 2, 2025 (Dkt. #805). Then, on May 16, 2025, Defendants filed their Reply (Dkt. #811).

On April 16, 2025, Defendants filed their Motion to Strike Exhibits B and C to Gibson's Motion for Judgment and Portions of Gibson's Brief Relying Thereon Because Those Two Documents are Not Part of the Trial Record ("Original Motion") (Dkt. #798). But On April 17, 2025, Defendants filed their Amended Motion to Strike Exhibits B and C to Gibson's Motion for Judgment and Portions of Gibson's Brief Relying on Evidence Not Part of the Trial Record ("Amended Motion") (Dkt. #801). On May 2, 2025, Gibson filed its Response (Dkt. #804) to the Original Motion (Dkt. #798). On May 9, 2025, Defendants filed their Reply (Dkt. #808) to the Amended Motion (Dkt. #801). Then, on May 16, 2025, Gibson filed its Sur-Reply (Dkt. #809) to the Original Motion (Dkt. #798). On September 10, 2025, the Court terminated the Original Motion because the Amended Motion contained the same arguments and additional considerations. The Court construes Gibson's filings to the Original Motion (Dkt. #798) as against the Amended Motion (Dkt. #801). All the post-trial motions are ripe for adjudication, and the Court considered all the arguments in them.

## LEGAL STANDARD

### I. Motion for Entry of Final Judgment

Federal Rule of Civil Procedure 58 governs the entry of final judgment. While Rule 58(b)(1) details the circumstances under which the clerk of the court must enter judgment "without awaiting the court's direction," Rule 58(b)(2) outlines those circumstances under which the Court

must approve final judgment before such can be entered by the clerk. Specifically, Rule 58(b)(2) provides that "the court must promptly approve the form of judgment, which the clerk must promptly enter, when: (A) the jury returns a special verdict or a general verdict with answers to written questions; or (B) the court grants other relief not described in this subdivision (b). FED. R. CIV. P. 58(b)(2)."

## II.   Bill of Costs

Federal Rule of Civil Procedure 54(d) dictates that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). This provision "creates a 'strong presumption' in favor of awarding costs to a prevailing party, and 'a district court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so.'" *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 128 (5th Cir. 2015) (quoting *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 384 (5th Cir. 2012)); *see also Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006) (citing *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)). This is so because the denial of costs is considered "in the nature of a penalty." *Shwarz*, 767 at 131.

Awardable costs are set forth by the federal costs statute, 28 U.S.C. § 1920. Under § 1920, courts may award the following types of costs to the prevailing party:

4. Fees of the clerk and marshal;
5. Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
6. Fees and disbursements for printing and witnesses;
7. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
8. Docket fees under 28 U.S.C. § 1923;

> 9. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

*Id.* § 1920.

The United States "Supreme Court has indicated that federal courts may only award those costs articulated in § 1920 absent explicit statutory or contractual authorization to the contrary." *Cook Child.'s Med. Ctr. v. The N. Engl. PPO Plan of Gen. Consolidation Mgmt. Inc.*, 491 F.3d 266, 274 (5th Cir. 2007). The party seeking recovery under § 1920 bears the burden of proving the amount and necessity of those costs. *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-00764-WCB-RSP, 2015 WL 164072, at *1 (E.D. Tex. Jan. 13, 2015) (citing *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994)). The prevailing party carries the burden to demonstrate that the costs it seeks are recoverable. *Eolas Techs. Inc. v. Adobe Sys., Inc.*, 891 F. Supp. 2d 803, 804 (E.D. Tex. 2012), *aff'd sub nom. Eolas Techs. Inc. v. Amazon.com, Inc.*, 521 F. App'x 928 (Fed. Cir. 2013).

The Court has discretion to deny costs when the "'suit was brought in good faith *and* denial is based on at least one of the following factors: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.'" *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (quoting *Pacheco*, 448 F.3d at 794); *see also* 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2668, at 234 (4th ed. 1998).

### III.    Attorneys' Fees

Under the Lanham Act, in cases involving the "use of a counterfeit mark or designation," the court shall award reasonable attorneys' fees unless it "finds extenuating circumstances." 15 U.S.C. § 1117(b); *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 827 (5th Cir. 1998). "This Court

7

uses the 'lodestar' method to calculate attorney's fees." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)); *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)). "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Id.* (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012)). There is a strong presumption of the reasonableness of the lodestar amount. *Perdue v. Kenny A.*, 599 U.S. 542, 552 (2010); *Saizan*, 448 F.3d at 800. "However, after calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on 'the relative weights of the twelve factors set forth in *Johnson*." *Id.*[3] Many of the *Johnson* factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.[4] *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986); *Camargo v. Trammell Crow Int. Co.*, 318 F. Supp. 2d 448, 450 (E.D. Tex. 2004). "The lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black*, 732 F.3d at 502 (citation omitted).

---

[3] The twelve *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–18 (5th Cir. 1974), *abrogated on other grounds* by *Blanchard v. Bergeron*, 489 U.S. 87 (1988).

[4] The "novelty and complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount. *Pennsylvania*, 478 U.S. at 565.

## ANALYSIS

I. **Defendants' Amended Motion to Strike (Dkt. #801)**

The Court finds that the Motion should be granted in part and denied in part. The Court grants the Motion in that the Court will only consider the evidence presented at trial. *See Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 155 (5th Cir. 1985); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996). The Court denies the Motion in that the Court will not order Gibson to file a redacted motion.

II. **Gibson's Proposed Final Judgment (Dkt. #794) and Defendants' Proposed Final Judgment (Dkt. #795)**

The Court will issue a permanent injunction against Armadillo and determines that Gibson is the prevailing party. Further, the Court will award Armadillo's profits from the infringement to Gibson. However, the Court will not award Gibson statutory damages or treble the disgorgement amount. Further, the Court will determine the issue of attorneys' fees once the parties fully brief the issue through a Rule 54 Motion (*See* Dkt. #546 at pp. 22–23; Dkt. #794 at p. 35).

    A.    **Injunctive Relief**

Gibson urges the Court to permanently enjoin Armadillo from manufacturing, advertising, or selling products that infringe on the Infringed Trademarks (*See* Dkt. #794-4 at pp. 3–4). Armadillo disagree for three reasons: (1) Gibson's design patents expired years ago; (2) Armadillo used Gibson's word marks in a "one-off manner;" and (3) the jury's findings of laches and lack of willful intent preclude injunctive relief (Dkt. #795 at pp. 6–20). These arguments are meritless. First, the expiration of the design patents does not preclude Gibson from enforcing its shape trademarks under the Lanham Act. *See Bonito Boats, Inc. v. Thuder Craft Boats, Inc.*, 489 U.S. 141 (1989); *Fuji Kogyo Co., Ltd. v. Pac. Bay Int'l, Inc.*, 461 F.3d 675, 683 (6th Cir. 2006) ("The existence

of design patents does not preclude the same product from protection as a trademark under the Lanham Act either simultaneously or successively."); *see also Kohler Co. v. Moen Inc.*, 12 F.3d 632, 636–37 (7th Cir. 1993). Second, Armadillo's argument seems to suggest that because it did not infringe that much, Gibson is not entitled to injunctive relief. That argument rings hollow because injunctive relief in trademark law is designed "to prevent *any* future trademark infringement by a defendant pursuant to 15 U.S.C. § 1116." *Sculpt Inc. v. Sculpt New York, LLC*, 2015 WL 6690224, at *3 (S.D. Tex. Nov. 3, 2015) (emphasis added). Third, the jury found that Armadillo had unclean hands and intentionally infringed on the five trademarks the Court noted above (Dkt. #754 at pp. 2–3, 6). Accordingly, Armadillo cannot assert the equitable defense of laches. *Rolex Watch USA, Inc. v. BeckerTime, L.L.C.*, 96 F.4th 715, 723 (5th Cir. 2024). The Court will now analyze the permanent injunction factors.

The party seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 478 n.39 (5th Cir. 2020) (reminding the parties and the district court that a plaintiff must satisfy "the traditional four-factor test" before "permanent injunctive relief can be awarded").

### 1. Irreparable Injury

Irreparable harm generally exists "if the injury cannot be undone through monetary relief." *ADT, LLC v. Cap. Connect, Inc.*, 145 F. Supp. 3d 671, 694 (N.D. Tex. 2015). While other circuits have held that a court may presume irreparable injury upon finding a likelihood of confusion in a

trademark case, the Fifth Circuit has avoided "expressly adopting this presumption of irreparable injury." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303 (5th Cir. 2008). The Court, therefore, is wary of applying a blanket presumption. Nevertheless, courts in trademark infringement cases often assess irreparable injury by looking at the likelihood of confusion and whether the plaintiff suffered a loss of control. *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 765 (N.D. Tex. 2013). Indeed, "[w]hen a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services." *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 542 (S.D. Tex. 2013) (Costa, J.) (citing *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999)).

Here, the jury again found that Gibson proved by a preponderance of the evidence a likelihood of confusion exists (Dkt. #754 at p. 1). Moreover, Gibson argues it has suffered irreparable harm through the loss of control of its reputation as embodied in the infringing marks (*See* Dkt. #794 at p. 10). This is an irreparable harm. *Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-cv-227, 2020 WL 4016110, at *16 (E.D. Tex. July 16, 2020). Thus, the first *eBay* factor favors the issuance of an injunction.

### 2. Inadequate Remedy at Law

Gibson argues the harm to its goodwill and the lost control of its reputation as embodied in the infringed marks constitutes injury which cannot be quantified, and thus monetary damages are inadequate (*See* Dkt. #794 at p. 11). The Court agrees. "There seems little doubt" that money damages are inadequate to compensate a trademark owner for continuing acts of infringer. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013). A plaintiff's loss of control over the quality of products being associated with its mark and the resulting damages to its goodwill could not easily

be quantified or undone by monetary damages. *See Paulsson Geophysical Servs., Inc.*, 529 F.3d 313. Thus, this factor favors granting an injunction.

### 3. Balance of Hardships

Once again, Gibson contends the harm to Armadillo is negligible because an injunction would merely require Armadillo to comply with the Lanham Act, whereas Gibson has lost control of its core reputation (Dkt. #794 at p. 11). Armadillo contends it will suffer significant prejudice because it invested significantly in advertising and marketing, and a permanent injunction would render these actions futile (*See* Dkt. #806 at p. 30). Indeed, a permanent injunction reduces the need for multiple lawsuits and prevents future infringement. *See Stygian Songs v. Johnson*, 776 F. Supp. 2d 233, 238 (N.D. Tex. 2011); *see also* 4 McCarthy on Trademarks and Unfair Competition § 30:1 ("An injunction looks to the future, while money damages look to compensation for past injuries."). Further, without injunctive relief, Gibson may need to continue to litigate cases to prevent future infringement by Armadillo. At bottom, issuing an injunction merely requires Armadillo to comply with the Lanham Act. Thus, the Court finds that this factor favors granting an injunction.

### 4. Public Interest

Gibson claims a permanent injunction would support the goals of trademark laws, specifically, protecting the public from confusion or deception as to the nature and source of goods (*See* Dkt. #794 at pp. 16–17). The Court agrees. "The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Scrum All., Inc. v. Scrum, Inc.*, 2020 WL 4016110, at *17 (quoting *Quantum Fitness Corp.*, 83 F. Supp. 2d at 832; *see also Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 546 (5th Cir. 2023) (noting that the public "has an interest in the effective

enforcement of our trademark laws"). In sum, a careful consideration of the four *eBay* factors leads the Court to conclude that Gibson is entitled to a permanent injunction against Armadillo and Concordia.

### B. Disgorgement of Profits

Section 1117 of the Lanham Act sets forth the statutory scheme for awarding damages in a trademark infringement case. Section 1117(a) entitles a markholder to recover the defendant's profits, subject to the principles of equity. *See* 15 U.S.C. § 1117(a); *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 584 (5th Cir. 1980). An award of profits in a Lanham Act case—otherwise known as disgorgement of profits or an accounting of profits—is meant to measure the net profits that the defendant reaped from its infringing activities and transfer those net profits to the plaintiff. *Id.* at 585. That said, profits are not automatically awarded once infringement is proven. *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 875 (5th Cir. 2019) ("A plaintiff's entitlement to disgorged profits is assessed based on the equities of the case and does not automatically follow from liability."). Moreover, where the equities of the case may be satisfied by an injunction, the court will not award profits to the plaintiff. *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131 (1947) (denying accounting in unfair competition and trademark infringement case where injunction satisfied equities of case). In determining whether a plaintiff is entitled to the defendant's profits under § 1117(a), the Fifth Circuit has established a non-exhaustive list of factors it will use: "(1) whether the defendant intended to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting her rights; (5) the public interest in making the conduct unprofitable; and (6) whether it is a case of palming off." *Retractable Techs.*, 919 F.3d at 876; *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358,

13

369 (5th Cir. 2000); *Rolex Watch USA Inc. v. Meece*, 158 F.3d 816, 823 (5th Cir. 1998); *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998).

When counterfeit marks are involved—as is the case here—§ 1117(b) of the Lanham Act is also applicable. 15 U.S.C. § 1117(b). Under this subsection, a plaintiff seeking a remedy under § 1117(a) is entitled to three times the actual damages or profits—whichever is greater—plus reasonable attorneys' fees in every case, except when there are "extenuating circumstances." 15 U.S.C. § 1117(b). As explained below, the Court will award Armadillo's profits from the infringement to Gibson; however, the damages will not be trebled.

As an initial matter, the Court will address Armadillo's argument that the jury's finding on disgorgement binds the Court (*See* Dkt. #806 at pp. 31–32). The Lanham Act commits the calculation of disgorgement to the discretion of the Court. *See Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, No. 4:17-CV-1400, 2020 WL 598284, at *3 (S.D. Tex. Feb. 7, 2020); 15 U.S.C. § 1117(a) ("The court shall assess such profits and damages or cause the same to be assessed under its direction."). Accordingly, the Court must now analyze the *Pebble Beach* factors to determine if disgorgement is appropriate. *Neutron Depot, L.L.C. v. Bankrate, Inc.*, 798 F. App'x 803, 807 (5th Cir. 2020).

The *Pebble Beach* factors weigh in Gibson's favor. First, the jury determined that Armadillo infringed on five of the Gibson Trademarks and that this infringement was intentional (Dkt. #754 at pp. 1–3). Accordingly, this factor weighs in favor of disgorgement.

Second, the parties stipulated to the amount of profits Armadillo earned from the sales of the five infringing products from October 1, 2017, to the present (Dkt. #754 at pp. 9–10).[5] Because of this stipulation and the jury's finding that Armadillo infringed on five of the Gibson Trademarks, this factor favors disgorgement.

Third, the adequacy of other remedies does not address Gibson's injury from past infringement. While the Court is issuing a permanent injunction, that relief only addresses future harm and does nothing to rectify Gibson's past injuries caused by Armadillo's infringement. *Sculpt Inc.*, 2015 WL 6690224, at *3; *see also* 4 McCarthy on Trademarks and Unfair Competition § 30:1 ("An injunction looks to the future, while money damages look to compensation for past injuries."). Accordingly, the Court finds that this factor also weighs in favor of requiring Armadillo to disgorge its profits from the Infringed Trademarks.

Fourth, the jury determined that Gibson delayed in asserting its trademark rights, there was no excuse for the delay, and the delay caused undue prejudice to Armadillo (Dkt. #754 at pp. 4–5). Although the jury determined that laches did not apply because Armadillo had unclean hands (Dkt. #754 at p. 6), the fact remains that it found that Gibson delayed asserting its trademark rights. Thus, the Court finds that this factor weighs against requiring disgorgement.

Fifth, the Court determined that a permanent injunction serves Gibson's future injury, but does nothing to compensate it for Armadillo's infringement and the money gained by violating the Lanham Act. In this retrial, the jury found that Armadillo did not infringe the Dove Wing Headstock so the Court is not enjoining Armadillo's use of the headstock (Dkt. #754 at p. 1).

---

[5] To be clear, the exact language in the Verdict Form stated: If you have found liability for the infringement of any of the Gibson Trademarks, you are instructed that the parties have agreed that the amount of profits Armadillo earned from sales of products accused of infringing each specific mark from October 1, 2017, to the present is the amount indicated below (Dkt. #754 at p. 9).

However, the "public generally benefits from aggressive competition in the market place among non-infringing products." *Data Race, Inc. v. Lucent, Techs., Inc.*, 73 F. Supp. 2d 698, 723 (W.D. Tex. 1999). Further, the public benefits from making trademark infringement unprofitable. *Retractable Techs.*, 919 F.3d at 883. So, the Court finds that this factor also weighs in favor of disgorgement.

Sixth, as Gibson notes, this is not a case of palming off. Palming off "occurs when a producer misrepresents his own goods or services as someone else's." *McArdle v. Mattel Inc.*, 456 F. Supp. 2d 769, 783 (E.D. Tex. 2006). It is undisputed that neither Gibson nor Armadillo engaged in such conduct. The Court, therefore, finds this factor disfavors an accounting.

In conclusion, two factors weigh against disgorgement, while four factors weigh in favor of disgorgement. Exercising the broad discretion Congress granted district courts in the Lanham Act, the Court finds that disgorgement is appropriate; however, the Court will not treble the damages. *Boltex Mfg. Co., L.P.*, 2020 WL 598284, at *4 n.3 (noting that disgorgement is an equitable remedy and the jury's finding is merely advisory). By requiring Armadillo to disgorge the profits it earned through infringement, the Court places Gibson in roughly the same position as it would have been had the infringement never occurred. *See Seatrax, Inc.*, 200 F.3d at 369 (noting that "the plaintiff is entitled to only those profits attributable to the unlawful use of its trademark"). Further, the Court will not treble damages because any additional monetary award when coupled with the injunction would become punitive. *See Avid Identification Sys., Inc. v. Phillips Elecs. N. Am. Corp.*, No. 2:04-CV-183, 2008 WL 819962, at *1 (E.D. Tex. Mar. 25, 2008) ("The court's assessment of profits and damages must constitute compensation to the plaintiff, and not serve as a penalty for the defendant's conduct."). Thus, the Court will award Armadillo's profits from infringing on the Flying V Body Shape ($66,621.49), the Explorer Body Shape ($76,391.69), the SG Body Shape

16

($19,905.47), the HUMMINGBIRD Wordmark ($4,551.80), and the FLYING V Wordmark ($928.77) (Dkt. #754 at p. 10). This amount totals $168,399.22, which the Court awards to Gibson.

    C.    **Statutory Damages**

The Court will not award Gibson statutory damages. A plaintiff may eschew actual damages under § 1117(a) and elect to seek statutory damages under § 1117(c). *GS Holistic, LLC v. Sublime Smoke & Vape LLC*, No. 4:23-CV-255 SDJ-AGD, 2024 WL 1316251, at *6 (E.D. Tex. Mar. 12, 2024), *report and recommendation adopted*, 2024 WL 1326032 (E.D. Tex. Mar. 27, 2024). Courts consider the following factors, from copyright law, when determining statutory damage awards under the Lanham Act:

> (1) expenses saved and profits reaped; (2) revenues lost by plaintiff; (3) the value of the copyright; (4) deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendants.

*Id.*

Further, the Fifth Circuit has noted that monetary damages are not warranted in trademark infringement cases if an injunction alone satisfies the equities of a given case. *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 459 (5th Cir. 2017). Indeed, the "goal behind §§ 1116 and 1117 remedies is to achieve equity between or among the parties." *Seatrax, Inc.*, 200 F.3d at 369. Here, statutory damages are unwarranted. The Court already determined that disgorgement and injunctive relief are the proper remedy based on the equities of this case and any additional monetary award would be punitive. Also, awarding statutory damages would be duplicative of the

disgorgement award. *See Gabbanelli Accordions & Imps., L.L.C. v. Gabanelli*, 575 F.3d 693, 698 (7th Cir. 2009).[6]

### D. Costs

The Court determines that Gibson is the prevailing party; however, the Court will not award costs until Gibson files its Bill of Costs and the issue is fully briefed by the parties. Federal Rule of Civil Procedure 54 provides that "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees— should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). "Prevailing party" is a legal term of art and defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001), citing *Prevailing Party*, BLACK'S LAW DICTIONARY (7th ed. 1999) (internal quotations and citations omitted). To qualify as a prevailing party, "[t]he plaintiff must obtain an enforceable judgment . . . or comparable relief through a consent decree or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111, (1992). A court must look at the case as a whole to determine the prevailing party. *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). "A party need not prevail on all issues to justify an award of costs." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 132 (5th Cir. 1983) (citations omitted).

Looking at the case in its entirety, the Court finds Gibson is the prevailing party. The focus of the determination on whether one is a prevailing party is whether he or she has "been successful on the central issue." *Iranian Students Ass'n v. Edwards*, 604 F.2d 352, 353 (5th Cir. 1974). Here,

---

[6] The Court notes that its award of statutory damages would not be greater than its disgorgement award. Accordingly, the Court provides Gibson the greater form of relief under the equities of this case—disgorgement of Armadillo's profits from the Infringed Trademarks.

the central issue was the enforcement of trademark rights. Here, the jury found: (1) Armadillo intentionally infringed on five of the seven Gibson Trademarks; (2) Armadillo counterfeited five of the Gibson Trademarks; (3) Concordia did not contribute to Armadillo's infringement; (4) laches did not apply because Armadillo had unclean hands; and (5) one Gibson Trademark—the ES Body Shape—should be cancelled because it is generic (Dkt. #754). Further, the Court is granting a permanent injunction regarding five of the Gibson Trademarks and disgorgement of Armadillo's profits attributable to the infringement. Thus, Gibson has been successful on the central issue. *Id.*; *see also Watkins v. Mobile Hous. Bd.*, 632 F.2d 565, 567 (5th Cir. 1980) (emphasizing the plaintiff had obtained a permanent injunction against defendant in determining the plaintiff was the prevailing party). Gibson, therefore, is the prevailing party and is entitled to costs.

### E. Attorneys' Fees

Gibson represented that it would seek attorneys' fees by filing a Rule 54 Motion (Dkt. #794 at p. 34–35), while Armadillo argues each side should bear its own costs (*See* Dkt. #806 at p. 36; Dkt. #795 at pp. 20–23). The Court will determine attorneys' fees once the parties fully brief the issue.

## CONCLUSION

It is therefore **ORDERED** that:

1. Plaintiff Gibson, Inc.'s Proposed Judgment and Brief in Support of Relief Requested (Dkt. #794) is hereby **GRANTED in part** and **DENIED in part**.
2. Defendants' Motion for Entry of Final Judgment (Dkt. #795) is hereby **GRANTED in part** and **DENIED in part**.
3. Defendants' Amended Motion to Strike Exhibits B and C to Gibson's Motion for Judgment and Portions of Gibson's Brief Relying on Evidence Not Part of the Trial Record (Dkt. #801) is hereby **GRANTED in part** and **DENIED in part**.

The Court will enter a separate final judgment. The Court **RETAINS** jurisdiction to enforce this injunction.

**IT IS SO ORDERED.**

**SIGNED this 22nd day of September, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE