# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GIBSON, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:19-cv-358 |
| ARMADILLO DISTRIBUTION | § | Judge Mazzant |
| ENTERPRISES, INC. and | § | |
| CONCORDIA INVESTMENT | § | |
| PARTNERS, LLC, | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff Gibson Inc.'s Rule 59 Motion for a New Trial or, in the alternative, to Alter or Amend the Judgment (the "Motion") (Dkt. #827). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This is a trademark infringement and counterfeiting dispute. The facts of this case are more thoroughly set forth in the Fifth Circuit's opinion in *Gibson, Inc. v. Armadillo Distrib. Enters., Inc.*, 107 F.4th 441, 443–46 (5th Cir. 2024), and in the Court's September 22, 2025 Memorandum Opinion and Order ruling on the parties three post-trial motions (Dkt. #812 at pp. 1–4). Accordingly, the Court recounts only the facts relevant to the instant Motion.

On March 7, 2025, for a second time, trial commenced in this case (Dkt. #736). Plaintiff Gibson Inc. ("Gibson" or "Plaintiff") again alleged that Defendant Armadillo Distribution Enterprises, Inc. ("Armadillo") infringed on four of its trademarked guitar body shapes, one trademarked guitar headstock shape, and two word marks (collectively, the "Gibson Trademarks")

(Dkt. #746 at p. 9).[1] Plaintiff also again asserted a claim for contributory trademark infringement under the Lanham Act against Defendant Concordia Investment Partners, LLC ("Concordia") (Dkt. #746 at p. 10). In contrast, Defendants Armadillo and Concordia (collectively, the "Defendants") presented a different narrative. They argued that their offer and sale of guitars did not violate the Lanham Act because the shapes are generic and that the shapes did not infringe the Gibson Trademarks because ordinary consumers were not likely to be confused (Dkt. #746 at p. 10). Defendants also filed counterclaims against Plaintiff for cancellation of all the Gibson Trademarks for guitar body shapes on the grounds that they are common, generic shapes (Dkt. #746 at p. 10).

On March 21, 2025, after a seven-day trial, the jury found that Armadillo intentionally infringed on most of the Gibson Trademarks[2] and engaged in unfair competition in a manner that created a likelihood of confusion as to the source, affiliation, or sponsorship of Plaintiff's products (Dkt. #754 at p. 1). The jury also found that Armadillo sold or marketed counterfeits of the infringed Gibson Trademarks (Dkt. #754 at p. 2). Unlike the first jury, however, the second jury reached a different conclusion on two of the issues presented at trial. First, the jury found that Concordia did not contribute to Armadillo's intentional "infringing and/or counterfeiting" of the five Gibson Trademarks (Dkt. #754 at pp. 6–7). Second, the jury found that Gibson's ES Body Shape Design Trademark should be cancelled because it is generic (Dkt. #754 at p. 12).

---

[1] The four guitar body trademarks are the FLYING V Body Shape Design, Explorer Body Shape Design, ES Body Shape Design, and SG Body Shape Design (Dkt. #746 at p. 9). The guitar headstock shape trademark is the Dove Wing Headstock Design (Dkt. #746 at p. 9). The two word mark trademarks are "HUMMINGBIRD" and "FLYING V" (Dkt. #746 at p. 9).

[2] The jury found infringement as to the Flying V Body Shape, Explorer Body Shape, SG Body Shape, the "HUMMINGBIRD" word mark, and the "FLYING V" word mark, but *not* the ES Body Shape and not the Dove Wing Headstock (Dkt. #754 at p. 1).

On September 22, 2025, the Court issued its Memorandum Opinion and Order on the three post-trial motions and issued its Final Judgment, determining Plaintiff as the prevailing party, issuing a permanent injunction preventing Armadillo from manufacturing, advertising, or selling its infringing products, and ordering Armadillo pay Plaintiff $168,399.22 as disgorgement of Armadillo's profits (*See* Dkt. #812 at pp. 9–17; Dkt. #813 at pp. 1–3). The Court, however, decided that it would not treble the damages because any additional monetary award when coupled with the injunction would become punitive (Dkt. #812 at p. 16).

On October 20, 2025, Plaintiff filed its Motion, arguing that the jury's verdict and the Court's resulting Final Judgment are against the great weight of the evidence on the following three issues (*See* Dkt. #827 at pp. 6–7). First, the jury's verdict finding no contributory infringement on behalf of Concordia (Dkt. #827 at p. 6). Second, the jury's verdict finding that Gibson's ES Body Shape Design is generic and cannot serve as a trademark (Dkt. #827 at p. 6). Third, the Court's finding in its Final Judgment that trebling damages would become punitive (Dkt. #827 at pp. 6–7). In addition, Plaintiff's Motion also requests the Court grant it pre-judgment and post-judgment interest on its awarded damages in accordance with Texas law and 28 U.S.C. § 1961 at the applicable respective rates (Dkt. #827 at p. 7).[3] On November 12, 2025, Defendants filed their Response, arguing that the jury's verdict on the two issues was not against the great weight of the evidence, and that the Court did not err in finding that treble damages would become punitive (Dkt. #838 pp. 5–6). Defendants also argue that Plaintiff is not entitled to pre-judgment interest in these circumstances, and that if Plaintiff is entitled to any recovery of post-judgment interest it is fixed

---

[3] Specifically, Plaintiff requests pre-judgment interest at the current federal prime rate of 7.25 percent, applied as simple interest, beginning 180 days after Plaintiff issued its October 1, 2017 cease-and-desist letter to Armadillo, or March 18, 2018 (Dkt. #827 at p. 7). Plaintiff requests post-judgment interest at a daily rate of 3.61 percent from the date of entry of the Final Judgment, or September 22, 2025, to the date of payment (Dkt. #287 at p. 7).

at the rate provided by federal statue (Dkt. #838 at pp. 20–22). On December 8, 2025, Plaintiff

filed its Rely in support of its Motion (Dkt. #859). The Motion is now ripe for adjudication.

**LEGAL STANDARD**

I.    **Motion for New Trial**

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any

party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been

granted in an action at law in federal court." FED. R. CIV. P. 59(a). "A new trial may be granted, for

example, if the district court finds the verdict is against the weight of the evidence, the damages

awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith

v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). However, "[u]nless justice requires

otherwise, no error in admitting or excluding evidence—or any other error by the court or a

party—is grounds for granting a new trial . . . At every stage of the proceeding, the court must

disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61.

To be entitled to a new trial, the movant must show that the verdict was against the great

weight of the evidence, not merely against the preponderance of the evidence. *Taylor v. Seton

Healthcare*, No. A-10-CV-650 AWA, 2012 WL 2396880, at *2 (W.D. Tex. June 22, 2012) (citing

*Dresser–Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838–39 (5th Cir. 2004); *Shows v. Jamison

Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). A jury verdict is entitled to great deference. *See

Dresser–Rand Co.*, 671 F.2d at 839 (explaining that Fifth Circuit courts grant "great deference to a

jury's verdict"). "Weighing the conflicting evidence and the inferences to be drawn from that

evidence, and determining the relative credibility of the witnesses, are the province of the jury, and

its decision must be accepted if the record contains any competent and substantial evidence tending

4

fairly to support the verdict." *Gibraltar Savings v. LDBrinkman Corp.*, 860 F.2d 1275, 1297 (5th Cir. 1988).

## II.    Motion to Alter or Amend

A Rule 59(e) motion "calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002); *see also* FED. R. CIV. P. 59(e) ("A motion to alter or amend judgment must be filed no later than 28 days after the entry of the judgment."). The Fifth Circuit has observed that a Rule 59(e) motion serves "the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

A Rule 59(e) motion, however, "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). In other words, "Rule 59(e) is not designed to permit a party to continue to re-litigate the same claims with the same arguments, or even new arguments, once there has been a ruling on the merits of a claim." *Hrncir v. Internal Revenue Serv.*, No. 4:24-CV-692-SDJ, 2025 WL 2844764, at *2 (E.D. Tex. Oct. 7, 2025); *see also Smith v. JPMorgan Chase Bank*, No. 3:15-CV-3582-L, 2017 WL 4698471, at *1 (N.D. Tex. Oct. 19, 2017) ("Such motions [under Rule 59(e)] may not be used to address issues that were resolved to the movant's dissatisfaction." (citation modified)). Accordingly, "[r]econsideration of a judgment after its entry [under Rule 59(e)] is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citation modified). The decision to alter or amend a judgment under Rule 59(e) is

committed to the sound discretion of the district judge and will not be overturned absent an abuse of discretion. *See Midland West Corp. v. F.D.I.C.*, 911 F.2d 1141, 1145 (5th Cir. 1990).

## ANALYSIS

Dissatisfied with the second jury's verdict, and the Court's resulting Final Judgment, Plaintiff attacks the results of this case on three different grounds: (1) the jury's verdict that Concordia did not contributorily infringe on the Gibson Trademarks is against the great weight of the evidence; (2) the jury's verdict that Gibson's ES Body Shape Design was generic and cannot serve as a trademark is against the great weight of the evidence; and (3) the Court's finding that awarding treble damages in this case would be punitive is against the great weight of the evidence (Dkt. #827 at pp. 9–10). In addition, Plaintiff also argues that it is entitled to pre-judgment and post-judgment interest on its awarded damages in accordance with Texas law and 28 U.S.C. § 1961 at the applicable respective rates (Dkt. #827 at pp. 7, 21–27).

In sum, the arguments presented in Plaintiff's Motion can be grouped into three broad categories: (1) the jury's verdict was against the great weight of the evidence; (2) the Court's finding in its Final Judgment regarding treble damages was against the great weight of the evidence; and (3) the request for pre-judgment and post-judgment interest on its awarded damages. The Court addresses each of these categories in turn.

## I.    The Jury's Verdict Is Not Against the Great Weight of the Evidence

Plaintiff urges the Court to order a new trial or to alter or amend the judgment on the basis that the jury's findings on two issues are against the great weight of the evidence (*See* Dkt. #827 at p. 9). First, insufficient evidence exists to support the jury's finding that Concordia did not contributorily infringe the Gibson Trademarks (Dkt. #827 at p. 9). Second, insufficient evidence exists to support the jury's finding that Gibson's ES Body Shape Design is generic and cannot serve

as a trademark (Dkt. #827 at p. 9). The Court will address each of these arguments in turn. As discussed in more detail below, the Court finds that there is sufficient evidence to support the jury's verdict on both abovementioned issues that Plaintiff now seeks to challenge.

### A.    Concordia's Contributory Infringement

Plaintiff argues that the jury's finding of no contributory infringement on behalf of Concordia is erroneous because Defendants failed to present any evidence supporting its theory that Concordia did not contributorily infringe the Gibson Trademarks *or* negating Plaintiff's evidence of contributory infringement (Dkt. #827 at p. 10). In other words, Plaintiff contends that there is an absolute absence of evidence in the record to support the jury's verdict that Concordia did not contributorily infringe on the Gibson Trademarks (Dkt. #827 at p. 10).[4] Defendants counter that the jury's verdict that Plaintiff failed to prove contributory infringement is not against the great weight of the evidence (Dkt. #838 at p. 7). According to Defendants, it was Plaintiff's burden to prove contributory infringement but no evidence was introduced to support this theory (Dkt. #838 at p. 7). Specifically, Defendants argue that the record is devoid of evidence that Concordia had a product to supply to Armadillo, which is Plaintiff's sole theory for establishing that Concordia contributorily infringed on the Gibson Trademarks (*See* Dkt. #838 at pp. 7–8). As such, Defendants contend that the jury correctly found that Plaintiff had failed to meet its burden of proof (Dkt. #838 at p. 8).

To be entitled to a new trial, "Plaintiff must show that the verdict was against the great weight of the evidence, not merely against the preponderance of the evidence." *High v. City of*

---

[4]    For example, Plaintiff contends that there is no evidence to rebut its evidence that Concordia shared common ownership with Armadillo, had complete control over Armadillo's use of the Dean trademarks, had knowledge of Armadillo's alleged infringing products and continued to direct Armadillo to manufacture, advertise, and sell the infringing products (*See* Dkt. #827 at pp. 10–12).

*Wylie*, No. 4:18-CV-364, 2020 WL 3972743, at *1 (E.D. Tex. July 14, 2020) (citation omitted). In deciding such a motion, a jury's verdict is entitled to great deference and "the court is not permitted to substitute its wisdom for the collective wisdom of the jury." *Combs v. City of Huntington*, No. 9-12-CV-210, 2015 WL 12815317, at *1 (E.D. Tex. Mar. 13, 2015) (citing *Smith*, 733 F.2d at 613). "Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." *Gibraltar Savings*, 860 F.2d at 1297. Thus, "if the Court finds that there is sufficient evidence to support the jury's verdict, the Court must uphold the jury's findings and deny the movant's request for a new trial." *High*, 2020 WL 3972743, at *2; *see also Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992) (explaining that "[w]here the jury could have reached a number of different conclusions, all of which would have sufficient support based on the evidence, the jury's findings will be upheld.").

The Court finds that the jury's verdict regarding contributory infringement was not against the great weight of the evidence. The question at this stage is not whether the jury could have returned a different verdict for Plaintiff. Here, after weighing the evidence, assessing the witnesses' credibility, and resolving any conflicts in the testimony, the jury ultimately found that Plaintiff failed to prove that Concordia contributorily infringed the Gibson Trademarks. Although a different jury could have returned a different verdict on this issue—which, in fact, is exactly what the first jury did when it decided this issue—it cannot be said that the present verdict is contrary to the great weight of the evidence. Even if the Court accepts as true that Defendants did not present any evidence to contradict or weaken the evidence Plaintiff presented to the jury on this

8

issue, there is still no basis for ordering a new trial or to alter or amend the judgment in this case.[5] At trial, it was Plaintiff who had the burden of proving that Concordia contributorily infringed on the Gibson Trademarks (*See* Dkt. #746 at p. 28 (instructing the jury that for Concordia to be liable for contributory infringement Plaintiff must prove it by a preponderance of the evidence)). Defendants did not then have any obligation to prove anything or present any evidence on the issue of contributory infringements. *See Stiff v. Stiff*, 989 S.W.2d 623, 628 (Mo. Ct App. 1999) ("Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it."). Instead, Defendants were free to let Plaintiff present all the evidence supporting its claim and then ultimately leave it to the jury to decide whether Plaintiff carried its burden of proof. *See United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992) ("Determining the weight and credibility of the evidence is within the sole province of the jury."). Thus, at the very best, the evidence might allow for conflicting views about the extent of Concordia's control exercised over Armadillo's means of infringement, that merely created room for jury factfinding—not the need for a new trial. *See Gunstream Land Corp. v. Hansen*, No. 4;21-CV-00451, 2025 WL 915410, at *4 (E.D. Tex. Mar. 26, 2025) (denying plaintiff's motion for new trial where the evidence merely created room for jury factfinding). Accordingly, Plaintiff's request for a new trial or to alter or amend the judgment on the limited issue of whether Concordia is liable for contributing to Armadillo's counterfeiting of five of the Gibson Trademarks should be **DENIED**.

---

[5] Here, the Court disagrees with Plaintiff's contention that "Defendants did not present the jury with *any evidence* supporting its conclusion that Concordia did not contributorily infringe the Gibson Marks" (Dkt. #827 at p. 10) (emphasis added). Indeed, Defendant provided the jury with, among other things, a copy of the Amended and Restated License Agreement (the "Agreement") between Concordia and Armadillo (Dkt. #838 at p. 9). The Agreement contained pertinent details about the level of control that Concordia had over Armadillo's means of infringement, including, but not limited to, the extent of Concordia's obligation to exercise quality control over the products Armadillo sold pursuant to the Agreement. Thus, the Court finds that Plaintiff has failed to demonstrate that the jury's verdict on this issue is against the great weight of the evidence.

### B.    Gibson's ES Body Shape Design

Plaintiff also argues for a new trial or to alter or amend the judgment on the basis that there was insufficient evidence to support the jury's verdict that Gibson's ES Body Shape Design is generic and cannot serve as a trademark (Dkt. #827 at p. 12). Plaintiff contends that the jury's finding that the ES Body Shape Design became generic in 1996 is inconsistent with trademark law for several reasons (*See* Dkt. #827 at pp. 12–16).[6] First, the ES Body Shape Design could not have been generic in 1996 because this is the same year that the United States Patent and Trademark Office ("USPTO") found that the ES Body Shape Design was not generic (Dkt. #827 at p. 12). Second, Defendants failed to present evidence sufficient to support a finding that the ES Body Shape Design was generic when Defendants entered the market in 2010 or at the time of the 2025 trial (Dkt. #827 at pp. 14–16). Lastly, Plaintiff presented overwhelming evidence showing that its ES Body Shape Design trademark is valid and protectable (Dkt. #827 at pp. 17–19). In contrast, Defendants argue that the great weight of the evidence supported the jury's verdict that the ES Body Shape Design is generic as of 1996 (Dkt. #838 at p. 11). Specifically, Defendants contend that they offered a wealth of evidence, from a spectrum of witnesses, that allowed the jury to find that the ES Body Shape Design was the shape by which the guitar body was commonly known, rather than a source indicator, as of 1996 (*See* Dkt. #838 at pp. 12–14).

The Court finds that the jury's verdict that the ES Body Shape Design was generic as of 1996 is not against the great weight of the evidence. Just like in its argument regarding the jury's verdict on Concordia's contributory negligence, Plaintiff is again asking the Court to substitute its

---

[6] According to Plaintiff, there are three dates for when genericness is to be tested for purposes of cancellation: (1) when trademark owner first began its trademark usage; (2) just prior to the date when the infringer first entered the market; and (3) the current date of the litigation (Dkt. #827 at pp. 13–14).

wisdom for the collective wisdom of the jury—the Court refuses to do so. *See Combs*, 2015 WL 12815317, at *1 (explaining that in deciding a motion for a new trial "[t]he court is *not permitted* to substitute its wisdom for the collective wisdom of the jury" (citation modified)). While it is true that Plaintiff offers conflicting evidence and the jury could have found for Plaintiff (*see* Dkt. #827 at pp. 12–16), the jury here had sufficient evidence to find for Defendants. Indeed, contrary to Plaintiff's arguments otherwise, there was ample evidence to support the jury's finding that the ES Body Shape Design is generic. For example, Defendants' expert, Mr. Gruhn, offered testimony showing that the ES body shape was the shape by which the guitar body was commonly known as of 1996, rather than as a source indicator—including, that numerous third-party (non-Gibson) ES body shape guitars were sold in this country beginning in the 1960s and continuing through the day he testified at trial (Dkt. #838 at p. 12). Defendants also elicited testimony from Plaintiff's own expert, Mr. Rock, who conceded that there were a plethora of third-party guitars having the ES body shape (Dkt. #838 at p. 13). All of this evidence supports the jury's findings that the ES Body Shape Design is generic and cannot serve as a trademark.[7] Accordingly, Plaintiff's request for a new trial or to alter or amend the judgment on the limited issue of whether the ES Body Shape Design is generic should be **DENIED**.

## II. The Court's Finding on Treble Damages is Not Against the Great Weight of the Evidence

Plaintiff next urges the Court to alter or amend the judgment on the basis that the Court's finding regarding treble damages was against the great weight of the evidence (Dkt. #827 at p. 19).

---

[7] Indeed, the fact that the second jury contradicted the first jury and concluded that the ES Body Shape was generic is reasonable considering that after the Fifth Circuit's decision to remand this case Defendants were allowed to introduce evidence that was excluded during the first trial; namely, evidence relating to advertisements or sales of third-party guitars prior to 1992.

Plaintiff argues that the Court erred in finding that treble damages would be punitive because it did so without analyzing whether any "extenuating circumstances" exists in its Final Order (Dkt. #827 at p. 20).[8] Moreover, Plaintiff also contends that treble damages would not be punitive but rather compensatory because, by Defendants' own admission, the profits from sales of products displaying the five counterfeit Gibson Trademarks comprise a very small portion of Armadillo's total sales (Dkt. #827 at pp. 20–21). Defendants argue that the Court correctly declined to award unwarranted punitive treble damages in this case (Dkt. #838 at p. 19). Specifically, Defendants contend that trebling was not appropriate because the jury found that the infringement and counterfeiting of the Gibson Trademarks was not willful (Dkt. #838 at pp. 19–20).

The Court finds that it correctly declined to award Plaintiff treble damages in its Final Judgment because doing so would become punitive. It is clear to the Court that Plaintiff's motion is nothing more than an attempt to re-litigate an issue that the Court previously resolved to its dissatisfaction.[9] *See Smith*, 2017 WL 4698471, at *1. As discussed above, "[r]econsideration of a judgment after its entry [under Rule 59(e)] is an *extraordinary remedy* that should be used *sparingly*." *Templet*, 367 F.3d at 479 (emphasis added). Here, Plaintiff fails to meet the high standard for reconsideration of a judgment under Rule 59(e). In its Motion, Plaintiff simply rehashes arguments that the Court previously considered and rejected (*See* Dkt. #794 at pp. 26–33 (arguing that Plaintiff

---

[8]  Plaintiff relies on Sections 1117(a) and 1117(b) of the Lanham Act to argue that it is entitled to treble damages (Dkt. #827 at p. 20). According to Plaintiff, where, as here, "a plaintiff seeking a remedy for [use of a counterfeit mark] . . . is entitled to three times the actual damages or profits—whichever is greater—plus reasonable attorneys' fees in the case, except when there are '*extenuating circumstances*'" (Dkt. #827 at p. 20) (emphasis added).

[9]  Indeed, in the Court's Final Order it explicitly acknowledged that § 1117(b) of the Lanham Act mandates treble damages except when there are "extenuating circumstances" (Dkt. #812 at p. 14). Then, in the very next sentence, the Court concluded: "As explained below, the Court will award Armadillo's profits from the infringement to Gibson; however, the damages will not be trebled" (Dkt. #812 at p. 14). Accordingly, this calls into question Plaintiff's argument that "[t]he Court did *not remark on any extenuating circumstances* in its Final Order" (Dkt. #827 at p. 20) (emphasis added).

"believes the trebled profits on Armadillo's infringing products from 2017 through the present, or $505,197.66, is just.")). Recognizing that this fact obviates the sole basis for its requested relief, Plaintiff contrived an argument that the Court failed to remark on any "extenuating circumstances" in its Final Order before refusing to award treble damages for Defendants Lanham Act violations (*See* Dkt. #827 at p. 20 (arguing that where, as here, counterfeit marks are involved § 1117(b) of the Lanham Act applies which mandates treble damages unless the Court finds "extenuating circumstances" exist)). The Court finds that this argument is without merit. Although the Court did not explicitly use the phrase "extenuating circumstances," the decision implicitly articulated the concept by refusing to award treble damages despite § 1117(b) of the Lanham Act applying to the instant case (*See* Dkt. #812 at pp. 14–16). As a preliminary matter, the Court notes that in deciding to not treble the damages it relied on the *very same factors* that Plaintiff previously contended "not only [weigh] in favor of disgorging Armadillo's profits enjoyed from the sale of infringing products but *trebling those ill-gotten profits*" (Dkt. #794 at p. 28) (emphasis added). Indeed, at no time prior to filing the instant Motion did Plaintiff argue that an award of treble damages is mandatory in this case because no "extenuating circumstances" exists that warrant an exception to treble damages provision in § 1117(b) of the Lanham Act (*See generally* Dkt. #794 at pp. 28–33). Plaintiff now changes course only after the Court resolved this issue to its dissatisfaction. *See Smith*, 2017 WL 4698471, at *1 (explaining that Rule 59(e) motions "may not be used to address issues that were resolved to the movant's dissatisfaction."). Thus, this confirms that Plaintiff is attempting to use its Rule 59(e) Motion to Alter or Amend the Judgment "to continue re-litigating the same claims with the same arguments, or even new arguments, once there has been a ruling on the merits of a claim." *Hrncir*, 2025 WL 2844764, at *2 (citation omitted).

Moreover, even if the Court did not remark on any extenuating circumstances (it did), Plaintiff's argument would still fail because §1117(b)'s mandatory treble damages provision applies only in narrow circumstances, none of which are present here. Generally, "[t]he Lanham Act expressly confers upon the district judges wide discretion in determining a just amount of recovery for trademark infringement." *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 824 (5th Cir. 1998) (citation modified). However, where, as here, counterfeit marks are involved, § 1117(b) of the Lanham Act applies. *See Rolex Watch USA, Inc. v. BeckerTime, L.L.C.*, 96 F.4th 715, 724 (5th Cir. 2024) (explaining that "when counterfeit marks are involved . . . § 1117(b) of the Lanham Act applies."). Unlike § 1117(a), which grants the district court wide discretion in fashioning an appropriate remedy, § 1117(b) practically eliminates the discretion typically enjoyed by the district courts under the Lanham Act. *See* 15 U.S.C. § 1117(b) (stating that the court "shall" treble the damages "unless the court finds extenuating circumstances"); *see also Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) ("Unlike § 1117(a), which merely *permits* trebling of damages in the court's discretion, § 1117(b) *requires* trebling of damages upon a finding of willfulness, absent extenuating circumstances."). That said, trebled damages are not automatically awarded once counterfeited marks are proven. Instead, § 1117(b) does not mandate trebled damages unless it is also shown that the counterfeiting was willful. *See e.g., RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, 527 F. Supp. 3d 305, 331 (E.D.N.Y. 2021) (explaining that under the Lanham Act "[p]laintiff *must show* [d]efendant's *willful infringement* to win treble damages."); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (affirming the district court's decision to treble damages where the court specifically found that defendant willfully infringed plaintiff's trademarks); *Coach, Inc. v. Int'l Bazaar Inc.*, No. 3:11-CV-1733-N, 2013 WL

12310712, at *8 (N.D. Tex. June 7, 2013) (granting plaintiff's requested award under § 1117(b) where defendants were willful infringers). Here, the jury found that Armadillo did *not* willfully infringe on any of the Gibson Trademarks (*See* Dkt. #754 at p. 3). For this reason alone, Plaintiff failed to prove that the mandatory treble damages provision in § 1117(b) of the Lanham Act applies. Thus, the Court finds that it is of no consequence whether it remarked on any "extenuating circumstances" in refusing to award treble damages.[10] Accordingly, Plaintiff's request for the Court to alter or amend the Final Judgment and grant it treble damages in the amount of $505,197.66, three times the amount the Court granted in its Final Judgment should be **DENIED**.

## III.    Plaintiff's Request for Pre-judgment and Post-judgment Interest

In addition to moving for a new trial or to alter or amend the judgment, Plaintiff's Motion separately requests, as a matter of course, that the Court grant Plaintiff pre-judgment and post-judgment interest to its award in accordance with Texas law and 28 U.S.C. § 1961 at the applicable respective rates (Dkt. #827 at p. 7). The Court will address each of Plaintiff's requests in turn.

### A.    Pre-judgment Interest

Plaintiff argues that it is entitled to pre-judgment interest at a rate of 7.25 percent with an accrual date starting 180 days after its October 1, 2017 cease-and-desist letter, or March 30, 2018,

---

[10] Moreover, the Court also notes that Plaintiff's argument that the Court should alter or amend the judgment to award treble damages, pursuant to § 1117(b) of the Lanham Act, because "an award of punitive damages would not be punitive but rather compensatory" is contrary to federal precedent. *See Microban Prods. Co. v. Iskin Inc.*, No. 14-CV-05980 (RA) (DF), 2016 WL 4411349, at *6 (S.D.N.Y. Feb. 23, 2016) (explaining that "the Lanham Act allows for an award of *punitive* damages, pursuant to 15 U.S.C. § 1117(b)." (emphasis added)); *Sara Lee Corp.*, 36 F. Supp. 2d at 165 (noting that § 1117(b) is *intended to penalize defendants* in order to deter potential counterfeiters); *see also Interstate Battery Sys. of Am., Inc. v. Wright*, 811 F. Supp. 237, 246 (N.D. Tex. 1993) (finding that awarding treble damages pursuant to Section 1117(b) serves the purpose of *deterring future infringement*). Thus, this provides another basis for the Court's decision to deny Plaintiff's request to alter or amend the judgment to grant it treble damages in the amount of $505,197.66, three times the amount the Court granted in its Final Judgment.

to its award of disgorged profits, attorneys' fees, and costs (*See* Dkt. #827 at pp. 22–25). Defendant argues that Plaintiff is not entitled to award of pre-judgment interest for two reasons (Dkt. #838 at p. 20). First, Plaintiff did not suffer any actual damages as a result of the infringement of the Gibson Trademarks and thus the rationale for pre-judgment interest militates against awarding it (Dkt. #838 at pp. 20–21). Second, Plaintiff's decision to delay filing this suit for more than two years further supports a denial of prejudgment interest in this case (*See* Dkt. #838 at pp. 21–22 (arguing that federal courts routinely deny prejudgment interest where a plaintiff is responsible for an undue delay in prosecuting the lawsuit)). Moreover, Defendants also dispute the applicable prejudgment interest rate, arguing that any pre-judgment interest rate should be awarded at "the 52-week United States Treasury Bill rate compounded annually" (Dkt. #838 at p. 22).

"The Lanham Act does not explicitly state that a prevailing party can recover pre-judgment interest." *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, No. 2:22-CV-00027-JRG-RSP, 2025 WL 904378, at *8 (E.D. Tex. Mar. 25, 2025) (citing 15 U.S.C. § 1117). Moreover, the Fifth Circuit has not spoken on the question of when pre-judgment interest is appropriate for Lanham Act violations, and the circuit courts who have spoken on this issue have taken a variety of approaches, none of which are binding on this Court.[11] *See Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 712 (S.D. Tex. 2013) (collecting cases). Accordingly, the Court has some latitude in fashioning an appropriate rule as to when pre-judgment interest should be awarded. Here, the

---

[11] The Seventh Circuit and Tenth Circuit have held, in analyzing claims under the Lanham Act, that "prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay." *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236–37 (10th Cir. 2000). The Second Circuit, in contrast, only awards pre-judgment interest in "exceptional" cases. *See Am. Honda Motors v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990). Lastly, the Eight Circuit has held that a "district court has discretion to deny prejudgment interest in Lanham Act cases." *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 743 (8th Cir. 2000) (citation omitted).

Court finds that a pre-judgment interest award is not appropriate in this case. "In cases where the plaintiff has proven an actual loss of money or opportunity or other monetary damages, or as in patent cases, where the statue provides for a minimum amount of damages (the reasonable royalty), prejudgment interest is awarded to *ensure that a plaintiff is placed in as good a position as he would have been*, absent defendant's offending conduct." *Neal Techs., Inc. v. Unique Motorsports, Inc.*, No. 4:15-CV-00385, 2017 WL 2903175, at *13 (E.D. Tex. Jan. 20, 2017) (emphasis added) (citing *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655–56 (1983)). In this case, the parties agreed to the amount of profits Armadillo earned from the sales of products accused of infringing the Gibson Trademarks and presented that figure to the jury (*See* Dkt. #754 at pp. 9–10 (totaling $1,566,959.58 for the accused Gibson Trademarks and $168,399.22 for the five infringed Gibson Trademarks)). The jury awarded actual damages in the amount of $1.00 finding that this was the sum of profits that would fairly and reasonably compensate Plaintiff (Dkt. #754 at p. 10). Notwithstanding the jury's verdict, the Court exercised its discretion under the Lanham Act and awarded Plaintiff $168,399.22 in disgorged profits for Armadillo's unlawful use of the Gibson Trademarks (*See* Dkt. #812 at pp. 13–17; Dkt. #813 at p. 3). The Court explained that disgorgement in the amount of $168,399.22 is appropriate here because "[b]y requiring Armadillo to disgorge profits it earned through infringement, the Court places Gibson in *roughly the same position it would have been had the infringement never occurred*" (Dkt. #812 at p. 16) (emphasis added). Thus, having found that Plaintiff is placed in as good a position as it would have been absent Defendants' offending conduct, the Court further finds that an award of pre-judgment interest would be an inequitable windfall to

17

Plaintiff.[12] Accordingly, the Court declines to award Plaintiff pre-judgment interest on any of the awarded damages.

### B.     Post-judgment Interest

Plaintiff next argues that it is entitled to post-judgment interest at a rate of 3.61 percent to be calculated daily from the date of the Final Judgment, September 22, 2025, until the date of payment (*See* Dkt. #827 at pp. 26–27 (relying on 28 U.S.C. § 1961 in support of its argument that it is entitled to interest on all its awarded damages)). In response, Defendants do not dispute that, if post-judgment interest is awarded, it should be in accordance with 28 U.S.C. § 1961 (*See* Dkt. #838 at p. 22).

The Court finds that Plaintiff is entitled to post-judgment interest. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). In this circuit, "[p]ost judgment interest is awarded as a matter of course . . . . [and] is *not* a matter of discretion." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). Put differently, "[a]n award of post-judgment interest is *mandatory* under 28 U.S.C. § 1961" *Ali v.*

---

[12] As mentioned above, the Fifth Circuit has not spoken on the question of when pre-judgment interest is appropriate for Lanham Act violations. *See Clearline*, 948 F. Supp.2d at 712. However, the Court's decision in this case to not award Plaintiff any pre-judgment interest on its award for violations of the Lanham Act is consistent with the approach taken by two other courts in this district—*Whirlpool*, 2025 WL 904378 and *Neal Techs.*, 2017 WL 2903175—that confronted the same issue. In *Whirlpool*, the plaintiff sought pre-judgment interest on the entire award it contends it is entitled to, including the jury's damages award, the enhanced profits award it seeks, the attorneys' fees it seeks, and the expert fees it seeks. 2025 WL 904378, at *8. The district court declined to exercise its discretion to award pre-judgment interest on any of plaintiff's awards in this case. *Id.* at *9. The district court noted that the jury's award of $2,045,644 in profits and $25,000,000 in actual damages "placed [Whirlpool] in as good a position as it would have been, absent Shenzhen Defendants' offending conduct," and thus "[a]n award of pre-judgment would be an inequitable windfall to Whirlpool." *Id.* Similarly, in *Neal Techs.*, the plaintiff sought pre-judgment interest on the jury's award of $253,000 in profits. 2017 WL 2903175, at *13. The district court decided not to award plaintiff any pre-judgment interest on the $253,000 award, finding that this is one of those "unusual cases" where "prejudgment interest would be an inequitable windfall to plaintiff. *Id.* (citation omitted). The district court noted that pre-judgment interest is not appropriate here because plaintiff has not shown that defendant's infringement caused an actual loss of money or opportunity such as "a calculated amount of lost sales." *Id.* Accordingly, the Courts finds the decision in *Whirlpool* and *Neal Techs.* are instructive and adopts the well-reasoned analysis of those courts here.

*Mountain Run. Sols., LLC*, No. 4:21-CV-453-SDJ-KPJ, 2021 WL 7617198, at *5 (E.D. Tex. Dec. 22, 2021). Such interest shall be assessed on the full amount of the money judgment "calculated from the date of the entry of judgment, at that the rate equal to the weekly average 1-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System, for the calendar year preceding the date of judgment." 28 U.S.C. § 1961(a). Accordingly, Plaintiff is entitled to post-judgment interest, at the rate specified by 28 U.S.C. § 1961, on its disgorgement award entered in the Final Judgment in this action, and on its attorneys' fees and costs (if any) awarded in this action.[13] As discussed above, the Court does not find that any pre-judgment interest is warranted in this case. *See supra* Section III.A. Therefore, Plaintiff's post-judgment interest will be on the disgorgement award entered in the Final Judgment and any attorneys' fees and costs awarded, which the Court will include in an Amended Final Judgment reflecting the fees and costs awarded.

\* \* \*

In sum, the Court finds that a pre-judgment interest award is not appropriate in this case because doing so would be an inequitable windfall to Plaintiff. Accordingly, Plaintiff's request that the Court grant pre-judgment interest at a rate of 7.25 percent to its award of disgorged profits, attorneys' fees, and costs should be **DENIED**. In contrast, the Court finds that Plaintiff is entitled to an award of post-judgment interest in this case because such an award is mandatory under 28 U.S.C. § 1961. Accordingly, Plaintiff's request that the Court grant post-judgment, at the rate

---

[13] Plaintiff filed its Rule 54 Motion for Attorneys' Fees and Costs (Dkt. #819) on October 10, 2025, which is currently pending before this Court. Following the resolution of Plaintiff's post-trial motion for fees and costs, the Court will amend the Final Judgment to allow it to recover any attorney's fees and costs awarded in the Court's decision (*See* Dkt. #813 at p. 3 (stating "this judgment is entered, subject to and without waiving, any post-trial issues that may be raised in post-trial motion by any party, including requests for attorneys' fees as well as pre-judgment and post-judgment interest allowed by law)).

specified in 28 U.S.C. § 1961, to its disgorgement award entered in the Final Judgment, and on any attorneys' fees and costs awarded should be **GRANTED**.

**CONCLUSION**

It is therefore **ORDERED** that Plaintiff Gibson Inc.'s Rule 59 Motion for a New Trial or, in the alternative, to Alter or Amend the Judgment (Dkt. #827) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Plaintiff Gibson Inc.'s request for a new trial on the contributory infringement issue or to alter or amend the Final Judgment to find Concordia contributorily contributed to Armadillo's counterfeiting of five of the Gibson Trademarks is hereby **DENIED**.

It is further **ORDERED** that Plaintiff Gibson Inc.'s request for a new trial on the issue of whether Gibson's ES Body Shape Design is generic or to alter or amend the Final Judgment to find that Gibson's ES Body Shape Design is not generic is hereby **DENIED**.

It is further **ORDERED** that Plaintiff Gibson Inc.'s request to alter or amend the judgment to grant it treble damages in the amount of $505,197.66, three times the amount that the Court granted in its Final Judgment is hereby **DENIED**.

It is further **ORDERED** that Plaintiff Gibson Inc.'s request for an award of pre-judgment interest at the rate of 7.25 percent, applied as simple interest with an accrual date starting 180 days after Plaintiff's October 1, 2017, cease-and-desist letter, or March 30, 2018, to its award of disgorged profits, attorneys' fees, and costs is hereby **DENIED**.

It is further **ORDERED** that Plaintiff Gibson Inc.'s request for an award of post-judgment interest at a daily rate of 3.61 percent from the date of entry of the Final Judgment, or September 22, 2025, to the date of payment is hereby **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED this 13th day of February, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE