# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

GIBSON, INC.,                              §
                                           §
              *Plaintiff,*                 §
                                           §
v.                                         §
                                           §      Civil Action No. 4:19-cv-358
ARMADILLO DISTRIBUTION                     §      Judge Mazzant
ENTERPRISES, INC. and                      §
CONCORDIA INVESTMENT                       §
PARTNERS, LLC,                             §
                                           §
              *Defendants.*                §

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendants Armadillo Distribution Enterprises, Inc. and Concordia Investment Partners, LLC's Renewed Motion for Judgment as a Matter of Law, to Alter or Amend the Judgment, or for a New Trial Under Rules 50(b) and 59(a, e) of the Federal Rules of Civil Procedure (Dkt. #826) (the "Motion"). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

This is a trademark infringement and counterfeiting dispute. The facts of this case are more thoroughly set forth in the Fifth Circuit's opinion in *Gibson, Inc. v. Armadillo Distrib. Enters., Inc.*, 107 F.4th 441, 443–46 (5th Cir. 2024), and in the Court's September 22, 2025 Memorandum Opinion and Order ruling on the parties post-trial motions (Dkt. #812 at pp. 1–4). Accordingly, the Court recounts only the facts relevant to the instant Motion.

On March 7, 2025, for the second time, trial commenced in this case (Dkt. #736). Plaintiff Gibson Inc. ("Gibson" or "Plaintiff") again alleged that Defendant Armadillo Distribution Enterprises, Inc. ("Armadillo") infringed on four of its trademarked guitar body shapes, one

trademarked guitar headstock shape, and two word marks (collectively, the "Gibson Trademarks") (Dkt. #746 at p. 10).[1] Plaintiff also again asserted a claim for contributory trademark infringement under the Lanham Act against Defendant Concordia Investment Partners, LLC ("Concordia") (Dkt. #746 at p. 10). In contrast, Defendants Armadillo and Concordia (collectively, "Defendants") presented a different narrative. They argued that their offer and sale of guitars did not violate the Lanham Act because the shapes are generic and that the shapes did not infringe the Gibson Trademarks because ordinary consumers were not likely to be confused (Dkt. #746 at p. 10). Also, Defendants argued that Gibson's trademark claims are barred by laches (Dkt. #746 at p. 10). In addition to raising the equitable defense of laches, Defendants filed counterclaims against Plaintiff for cancellation of all the Gibson Trademarks for guitar body shapes on the grounds that they are common, generic shapes (Dkt. #746 at p. 10).

On March 21, 2025, after a seven-day trial, the jury found that Armadillo intentionally infringed on most of the Gibson Trademarks[2] and engaged in unfair competition in a manner that created a likelihood of confusion as to the source, affiliation, or sponsorship of Plaintiff's products (Dkt. #754 at p. 1). The jury also found that Armadillo sold or marketed counterfeits of the infringed Gibson Trademarks (Dkt. #754 at p. 2). Unlike the first jury, however, the second jury reached a different conclusion on two of the issues presented at trial. First, the jury found that Concordia did not contribute to Armadillo's intentional "infringing and/or counterfeiting" of the

---

[1] The four guitar body trademarks are the Flying V Body Shape Design, Explorer Body Shape Design, ES Body Shape Design, and SG Body Shape Design (Dkt. #746 at p. 9). The guitar headstock shape trademark is the Dove Wing Headstock Design (Dkt. #746 at p. 9). The two word marks trademarks are "HUMMINGBIRD" and "FLYING V" (Dkt. #746 at p. 9).

[2] The jury found infringement as to the Flying V Body Shape, Explorer Body Shape, SG Body Shape, the "HUMMINGBIRD" word mark, and the "FLYING V" word mark, but *not* the ES Body Shape and not the Dove Wing Headstock (Dkt. #754 at p. 1).

five Gibson Trademarks (Dkt. #754 at pp. 6–7). Second, the jury found that Gibson's ES Body Shape Design trademark should be cancelled because it is generic (Dkt. #754 at p. 12).

On September 22, 2025, the Court issued a Memorandum Opinion and Order resolving the parties' post-trial motions and entered Final Judgment in the case (Dkt. #812; Dkt. #813). The Final Judgment, among other things, declared Plaintiff the prevailing party; permanently enjoined Armadillo from manufacturing, advertising, or selling its infringing products; and ordered Armadillo to pay Plaintiff a total of $168,399.22 as disgorgement of Armadillo's profits (Dkt. #813 at pp. 1–3).[3]

On October 20, 2025, Defendants filed this post-trial Motion, asking for relief on various grounds (Dkt. #826). Defendants request that the Court: (1) enter judgment as a matter of law in their favor pursuant to Federal Rule of Civil Procedure 50(b); (2) grant a new trial pursuant to Federal Rule of Civil Procedure 59(a); or (3) alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) (Dkt. #826). On November 12, 2025, Plaintiff filed its Response to the Motion, opposing each of Defendants' grounds for relief (Dkt. #841). On December 8, 2025, Defendants filed their Reply in Support of their Motion (Dkt. #860). The Motion is now ripe for adjudication.

## LEGAL STANDARD

### I.      Motion for Judgment as a Matter of Law

Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court should properly ask whether "the state of proof is such that reasonable and impartial minds

---

[3]   On October 22, 2025, Plaintiffs filed a Notice of Appeal to the Fifth Circuit regarding the Court's Memorandum Opinion and Order (Dkt. #812) and Final Judgment (Dkt. #813). That appeal is currently pending before the Fifth Circuit. *See Gibson v. Armadillo DE*, No. 25-40700 (5th Cir. 2025).

could reach the conclusion the jury expressed in its verdict." *Am. Home Assurance Co. v. United Space All.*, 378 F.3d 482, 487 (5th Cir. 2004); FED. R. CIV. P. 50(a). "A JMOL may only be granted when, 'viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion.'" *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)).

Under Fifth Circuit precedent, a court should be "especially deferential" to a jury's verdict and must not reverse the jury's findings unless substantial evidence does not support the findings. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelming in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden*, 693 F.3d at 498 (citation omitted). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 452 (5th Cir. 2013) (citation omitted). However, "[c]redibility determinations, the weighing of

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

## II.      Motion to Alter or Amend Judgment

The Fifth Circuit has observed that "[a]ny motion that draws into question the correctness of a judgment is functionally a motion under Civil Rule 59(e), whatever its label." *Harcon Barge Co. v. D&G Boat Rentals, Inc.*, 784 F.2d 665, 669–70 (5th Cir. 1986) (citation omitted). "Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovery evidence . . . . Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citation modified).

The Fifth Circuit recognizes that Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). The rule does not exist to be a vehicle for re-litigating old issues, presenting the case under new theories, obtaining a rehearing on the merits, or taking a "second bite at the apple." *Cabalcante v. United States*, No. 4:16-cv-964, 2021 WL 2894086, at *1 (E.D. Tex. July 9, 2021) (citation omitted). However, it allows a party to "question the correctness of a judgment." *Templet*, 367 F.3d at 478. The rule for reconsideration of a final judgment allows a court to alter or amend a judgment because of (1) an intervening change in controlling law, (2) the availability of new evidence not available previously, (3) the need to correct a clear error or law or fact, or (4) to prevent a manifest injustice. *See Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

### III.    Motion for New Trial

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a).  "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). However, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is grounds for granting a new trial . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61.

To be entitled to a new trial, Plaintiff must show that the verdict was against the great weight of the evidence, not merely against the preponderance of the evidence. *Taylor v. Seton Healthcare*, No. A-10-CV-650 AWA, 2012 WL 2396880, at *2 (W.D. Tex. June 22, 2012) (citing *Dresser–Rand Co.*, 361 F.3d at 838–39); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982)). A jury verdict is entitled to great deference. *See Dresser–Rand Co.*, 361 F.3d at 839 (explaining that Fifth Circuit courts grant "great deference to a jury's verdict"). "Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." *Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1297 (5th Cir.1988).

### ANALYSIS

Unsurprisingly given the seven years this case has been pending and its journey through one appeal and two trials, Defendants are dissatisfied with the jury's verdict, and the Court's

resulting Final Judgment. Defendants therefore assert a myriad of grounds for judgment as a matter of law, a new trial, or an alteration or amendment of the Final Judgment. Broadly speaking, Defendants' Motion focuses on four main issues: (1) the jury's findings of trademark infringement and counterfeiting; (2) the Court's finding that Defendants cannot raise the equitable defense of laches; (3) the Court's issuance of the permanent injunction against Armadillo; and (4) the Court's decision to disrupt the jury's finding on disgorgement. Complicating matters, however, is that Defendants have moved under multiple Federal Rules of Civil Procedure with regard to the same argument. In essence, having twice failed to obtain their desired outcome, the Motion seeks a third bite at the apple, asking the Court to either grant a new trial or erase the unfavorable verdict against Defendants all together by entering a judgment as a matter of law or to alter or amend the judgment (*See* Dkt. #826).

"But in law, as in life, there are rarely do-overs." *Morris v. Pruitt*, 308 F. Supp. 3d 153, 160 (D.D.C. 2018). Not prone to "disturb any part of a jury's verdict lightly," *United States v. Swenson*, 459 F. Supp. 3d 819, 827 (S.D. Tex. 2020), the Court will deny the Motion in all respects after separately examining each argument in turn.

## I.  Defendants' Renewed Motion for Judgment as a Matter of Law

Defendants renew their motion for judgment as a matter of law on four grounds. First, Defendants ask the Court to set aside the jury's verdict of infringement of the Flying V body shape, the Explorer body shape, the Hummingbird word mark, and the Flying V word mark (Dkt. #826 at p. 9). Second, Defendants ask the Court to set aside the jury's verdict of counterfeiting of the three body shape marks and two word marks (Dkt. #826 at p. 19). Third, Defendants argue that the Court erred in holding that Armadillo cannot assert laches because the jury found unclean hands and "intentional" infringement (Dkt. #826 at p. 21). Fourth, Defendants argue that the Court erred in

7

assessing disgorgement in view of the jury's finding that Gibson was entitled to only $1.00 in disgorgement (Dkt. #826 at p. 27). The Court addresses each of Defendants' points in turn.

### A. Infringement of the Flying V body shape, Explorer body shape, Hummingbird word mark, and Flying V word mark

Defendants renew their motion for judgment as a matter of law seeking to overturn the jury's verdict of infringement of the Flying V body shape, the Explorer body shape, the Hummingbird word mark, and the Flying V word mark (Dkt. #826 at p. 9). Defendants argue that (1) there is no evidence that Gibson's Flying V and Explorer body shapes had acquired secondary meaning as of 1977; and (2) there is no evidence of likelihood of confusion caused by Armadillo's use of Gibson's Flying V and Hummingbird word marks (Dkt. #826 at pp. 9–10). As explained below, the Court finds that neither of Defendants' arguments have merit.

### 1. The Flying V and Explorer Body Shapes

Defendants argue that Armadillo is entitled to judgment as a matter of law of non-infringement as to the Flying V and Explorer Body Shapes because Gibson failed to present any evidence that either of its unregistered marks had acquired secondary meaning as of 1977 (Dkt. #826 at p. 9). Defendants contend Gibson had the burden of proving that its Flying V and Explorer Body Shapes acquired secondary meaning as of 1977 after the jury determined that this was the date by which Gibson should have known Armadillo (including its predecessors) first used

the Dean V and Dean Z guitar body shapes (Dkt. #826 at p. 9).[4] According to Defendants, despite having the burden of proof on this issue, Gibson offered no evidence proving that its asserted Flying V and Explorer Body Shapes acquired secondary meaning as of 1977 (*See* Dkt. #826 at pp. 9–10). Plaintiff disagrees for three reasons: (1) even if Armadillo can challenge the validity of Gibson's incontestable registration for lack of secondary meaning, its argument skips over the most important point—that is, Armadillo is not a successor-in-interest to any first-use rights held by Dean guitars (Dkt. #841 at pp. 14–17); (2) even if Armadillo is a successor-in-interest to Dean guitars' alleged first-use rights, 1977 is not the appropriate measurement date (Dkt. #841 at pp. 17–22); and (3) even if this is the appropriate measurement date, there is more than a scintilla of evidence to show secondary meaning as of 1977 (Dkt. #841 at pp. 23–26).

While it is true that both the Flying V and Explorer guitar shapes have incontestable registrations, the jury was not instructed that Gibson conclusively proved the trademarks' validity based on the evidence in this case (Dkt. #746 at pp. 16, 18–21). *Cf. Perry v. H. J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 471 (5th Cir. 2021) ("Once a mark becomes incontestable, its federal registration constitutes *conclusive* evidence of its validity . . . ."). Although the Court noted the conclusive effect normally afforded to incontestable registrations, it instructed the jury that it might

---

[4] The Court finds that Defendants' reliance on the jury's answer to Question No. 8 on the verdict form is misplaced. The jury's response to this question is immaterial to this inquiry because this question relates solely to the equitable defense of laches (Dkt. #754 at pp. 3–6). The answer to this question provides absolutely no insight into why the jury found that Armadillo infringed the Flying V and Explorer Body Shapes. Indeed, as to the issue of infringement, the jury was instructed to return a general verdict, asking only the jury to write either "Yes" or "No" next to each of the Gibson Trademarks (Dkt. #754 at p. 1). Neither party requested that the jury answer any special interrogatories on the infringement issue, despite ample opportunity to do so (*See* Dkt. #766 at pp. 222–28 (raising numerous objections to both the final instructions and verdict form but remaining silent as to the use of a general verdict for infringement)). In fact, the Court pointed this out in its prior opinion issued at the conclusion of the first trial, yet Defendants still did not request any special interrogatories for infringement (Dkt. #619 at pp. 26–27). Accordingly, Defendants' argument that Gibson was required to prove that its Flying V and Explorer Body Shapes acquired secondary meaning as of 1977 is entirely without merit.

have to find secondary meaning under certain circumstances (Dkt. #746 at pp. 16–19). Namely, the jury would need to find secondary meaning if "Armadillo (including its predecessors) first used its Dean V and Dean Z body shapes before Gibson received its federal trademark registrations in 1997 for the Flying V Body Shape Design and Explorer Body Shape Design . . ." (Dkt. #746 at p. 16). If the jury found that Armadillo *did* use its shapes prior to Gibson's registrations, the jury would need to find the Flying V and Explorer designs attained secondary meaning "as of the date [the jury] determined that Armadillo or its predecessors in interest first used its Dean V and Dean Z body shapes" in order to find that Gibson had valid trademarks (Dkt. #746 at p. 16).

This instruction was submitted based on the evidence presented in the case and the Federal Circuit's decision in *Converse, Inc. v. International Trade Commission Sketchers U.S.A., Inc.*, 909 F.3d 1110, 1115–19 (Fed. Cir. 2018) (*See* Dkt. #619 at p. 26). The *Converse* decision reflects the traditional rule that a plaintiff must show the relevant product design attained secondary meaning before a defendant's alleged infringement began. *See id.* at 1117 (explaining that a party with a federal registration cannot rely on the statutory presumption of validity if a defendant's infringement began *before* registration). Since Defendants presented some evidence that Armadillo (or its predecessors) produced similarly shaped guitars—including, the Dean V and Dean Z body shapes—before Gibson received its federal trademark registration in 1997, the Court submitted the above-mentioned instruction regarding secondary meaning.

Because the jury found that Armadillo infringed on the Flying V and Explorer Body Shapes, it implicitly found the designs are valid trademarks. But the verdict form does not reveal the jury's reasoning for finding that Armadillo infringement the Flying V and Explorer Body Shapes. Thus, it remains unclear whether the second jury decided Gibson has valid marks because (1) the Flying

V and Explore Body Shapes acquired secondary meaning *before* Armadillo's infringement or (2) Armadillo's (or its predecessors) infringement did not occur until *after* the marks became incontestable (*See* Dkt. #754 at p. 1 (noting only "Yes" or "No" as to Armadillo's infringement for each of the alleged Gibson Trademarks)).[5] Assuming that the jury found the latter, Defendants would have no post-trial recourse because the marks could not be challenged for lack of secondary meaning given their incontestable status. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 202–05 (1985) (finding that the status of an incontestable registration prevents a challenge to the validity of the mark based on an argument that the mark is not inherently distinctive and lacks secondary meaning); *see also Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 330 (5th Cir. 2008) (explaining that "[plaintiff's] mark is incontestable, which means that [plaintiff's] mark is protected from challenge by a presumption of validity." (citation modified)). However, provided the jury found the former, Defendants could challenge the sufficiency of the evidence regarding secondary meaning.

Of course, the "jury is 'free to choose between reasonable constructions of the evidence.'" *Boh Bros. Constr. Co.*, 731 F.3d at 452 (quoting *United States v. Ramos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008)). And here, the jury could reasonably find that Armadillo's infringement did not

---

[5] Indeed, Defendants have been on notice that the verdict form provides no indication regarding the basis of the jury's infringement determination, at the very least, since the Court's April 6, 2023 Memorandum Opinion and Order, which explicitly raised this precise issue (Dkt. #619 at pp. 26–27 (noting that "the verdict does not reveal the jury's reasoning" as to why it found that Armadillo infringed on the Flying V and Explorer Body Shapes)). At the second trial, however, Defendants never asked the Court to include a question on the verdict form that specifically asked the jury to state the basis for its verdict on infringement (*See* Dkt. #766 at pp. 222–24 (objecting only to the jury instructions and verdict forms lack of a *Dastar* instruction, the counterfeiting instruction, and the counterfeiting definition)). Thus, Defendants have had ample opportunity to request a special verdict form if they wanted a more specific finding to be made by the jury, but they failed to do so, making it impossible to determine the basis for the verdict of infringement. *See Meeks v. State Farm Mut. Auto. Ins. Co.*, 460 F.2d 766, 781 n.1 (5th Cir. 1972) ("Unfortunately, special interrogatories were not submitted to the jury, making it impossible to determine the basis for the verdict.").

begin until after Gibson registered the Flying V and Explorer marks in 1997. For example, Jason Davidson, Gibson's Director of Product Development and Archives Curator, testified that he has never found anything in the records that reflect that Dean Zelinsky (founder of the Dean brand) was using any of Gibson's shapes in the 1970's or 1980's (Dkt. #761 at pp. 101–02). He also testified that Elliot Rubinson, Armadillo's founder, stated that the Dean guitars brand was "dormant" until the late 1990's, and he essentially revived the brand at that time after he purchased the Dean name and logo (Dkt. #761 at p. 102). Furthermore, Evan Rubinson, Armadillo's CEO, testified that his company started "manufacturing" its Dean V and Dean Z guitars "in late [1995], early [1996]" (Dkt. #764 at p. 206). He did not, however, mention when Armadillo actually started selling its guitars in the marketplace. This distinction is important here because the mere reproduction of a mark, alone, is often insufficient to find infringement. *See Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012) ("The mere reproduction of a trademark does not constitute trademark infringement if there is no likelihood of confusion." (citation modified)); *see also Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 376 (4th Cir. 1999) ("Thus, in contrast to copyright infringement, 'mere reproduction' of a trade dress is 'not an infringement.'"). Infringement lies where an infringer's actions create a likelihood of confusion among potential consumers. *See Nat'l Bus. Forms & Printing*, 671 F.3d at 532.

Based on the record, the jury could reasonably find that Armadillo did not infringe on the Flying V and Explorer Body Shapes until after Gibson registered its marks. Therefore, Gibson had no obligation to prove that its Flying V and Explorer Body Shapes had acquired secondary meaning as of 1977. *See Park 'N Fly, Inc.*, 469 U.S. at 201–05 (holding that incontestable registrations cannot be challenged for being descriptive and lacking secondary meaning). Such a finding would be a

12

reasonable construction of the evidence presented at trial, and the Court will not second-guess the jury's determination. *See Boh Bros. Const. Co.*, 731 F.3d at 452; *DataQuill Ltd. v. ZTE Corp.*, No. 2:13-CV-633-JRG, 2015 WL 5952897, at *6 (E.D. Tex. Oct. 13, 2015) ("The Court will not substitute its judgment for that of the jury where the jury reached a result supported by reasonable evidence."); *In re 3 Star Props., L.L.C.*, 6 F.4th 595, 607–08 (5th Cir. 2021) ("We review *de novo* denial of a JMOL motion, reversing only if the jury's factual findings are unsupported by substantial evidence or the legal conclusions implied from the jury's verdict cannot in law be supported by those findings."). Accordingly, Defendants' request for judgment as a matter of law of non-infringement as to the Flying V and Explorer Body Shapes on this basis is **DENIED**.

### 2. The Hummingbird Word Mark and Flying V Word Mark

Defendants argue that Armadillo is entitled to judgment as a matter of law of non-infringement as to the  Flying V Word Mark and Hummingbird Word Mark because Gibson failed to offer any evidence that Armadillo's use of either these word marks created a likelihood of confusion (*See* Dkt. #826 at pp. 10–13). Plaintiff disagrees, arguing that Armadillo has not shown that the evidence points so strongly and overwhelming in favor of Armadillo that Gibson failed to establish that there is a likelihood of confusion for the Flying V or Hummingbird Wordmarks that reasonable jurors could not arrive at any contrary conclusion (*See* Dkt. #841 at pp. 26–28).

To prevail on a claim of trademark infringement, a plaintiff "must show that the defendant's use of the mark creates a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the product at issue." *Bd. of Supervisors for La. State Univ. Agric. & Meth. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (citation modified) [hereinafter *Smack Apparel*]. The Fifth Circuit has established a non-exhaustive list of factors known as the "digits of confusion" for determining whether a likelihood of confusion exists. *Future*

13

*Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020). These factors include: "(1) the type of mark infringed; (2) the similarity between the marks; (3) the similarity of the products; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; (7) evidence of actual confusion; and (8) the degree of care exercised by potential purchasers."[6] *Id.* "No single factor is dispositive, and a finding of likelihood of confusion need not be supported by a majority of the factors." *Smack Apparel*, 550 F.3d at 478. "The digits may weigh differently from case to case, depending on the particular facts and circumstances involved." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (citation modified).

The Court finds that Defendants are not entitled to judgment as a matter of law of non-infringement as to the Flying V Word Mark and Hummingbird Word Mark. Defendants' likelihood of confusion argument rests on three main contentions, none of which have any merit under the applicable law (*See* Dkt. #826 at pp. 10–13). First, the fact that Armadillo may have only used the word marks once has no legal relevance to the likelihood of confusion analysis. *See Future Proof Brands, L.L.C.*, 982 F.3d at 289 (listing the factors relevant to assessing likelihood of confusion none of which include the extent of use of the mark by a defendant). However, even if the Court assumes that this argument goes towards Defendants' lack of intent, this alone is not necessary for a finding of likelihood of confusion. *See Denbra IP Holdings, LLC v. Thornton*, 521 F. Supp. 3d 677, 688 (E.D. Tex. 2021) (explaining that a defendant's intent to confuse is not necessary to find likelihood of confusion). Second, Gibson's failure to include the word marks in its 2017

---

[6]  Indeed, the specifically Court relied on this well-established Fifth Circuit precedent to instruct the jury on this issue (*See* Dkt. #746 at p. 21).

cease-and-desist letter is also of no legal relevance to the likelihood of confusion analysis. *See Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 456 (5th Cir. 2017) (explaining that "the majority rule amongst jurisdictions is that a defendant's continued use of a mark even after it receives a cease and desist letter cannot be construed as evidence of intent to confuse."); *see also Future Proof Brands, L.L.C.*, 982 F.3d at 289 (listing the factors relevant to assessing likelihood of confusion none of which include whether a plaintiff's cease-and-desist letter accused a defendant of infringing the marks it now alleges). Third, evidence of actual confusion or a consumer survey on confusion is not required for a finding of a likelihood of confusion. *See Smack Apparel*, 550 F.3d at 483 ("It is well-established, however, that evidence of actual confusion is not necessary for a finding of a likelihood of confusion."); *see also Savin Corp. v. Savin Grp.*, 391 F.3d 439, 459 (2d Cir. 2004) ("[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source."). Here, all the evidence Defendants rely on is either irrelevant or not dispositive on the issue of likelihood of confusion. Thus, it cannot be said, as Defendants contend, that "the evidence points so strongly and overwhelmingly in favor of Armadillo that reasonable jurors could not arrive at any contrary conclusion" (Dkt. #826 at pp. 11–12). Accordingly, Defendants' request for judgment as a matter of law of non-infringement as to the Flying V Wordmark and Hummingbird Wordmark on this basis is **DENIED**.

### B. Counterfeiting of the Gibson Trademarks

Defendants renew their motion for judgment as a matter of law seeking to overturn the jury's verdict of counterfeiting of the three body shape marks and two word marks (Dkt. #826 at p. 19). Defendants argue that the Court's final instructions on counterfeiting, which removed the word "spurious," erroneously instructed the jury that counterfeiting did not require a finding of

15

any bad faith intent (Dkt. #826 at pp. 19–20). In other words, Defendants claim that the Court's final instructions did not require Gibson to show that any of the accused counterfeits were "fake" or "deceptively suggest an erroneous origin" (Dkt. #826 at p. 20). Plaintiff disagrees, arguing in part that the Court's counterfeiting instruction, which included the word "intentionality," clearly instructed the jury that counterfeiting requires a finding of intent (Dkt. #841 at pp. 33–35).

The Court finds that Defendants' argument is not a proper basis for the grant of judgment as a matter of law under Rule 50(b). Although ostensibly brought as a renewed motion for judgment as a matter of law, Defendants' argument focuses solely on the jury instruction for counterfeiting, and not with the sufficiency of the evidence presented (Dkt. #826 at pp. 19-20 (arguing that the Court committed a clear and manifest error of law by not including the word "spurious" in the instruction for counterfeiting)). However, the standard for a Rule 50(b) motion is whether a verdict is supported by the *evidence* and not whether jury instructions were erroneous.[7] *See Nelson v. Tex. Sugars, Inc.*, 838 F. App'x 39, 41 (5th Cir. 2020) (per curiam) (unpublished) ("And to be clear, where there has been a jury trial, a Rule 50 motion is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." (citation modified)); *Weeco Int'l, Inc. v. Superior Degassing Servs., Inc.*, No. CV H-09-4003, 2011 WL 13272440, at *2 n.3 (S.D. Tex. Nov. 22, 2011) ("To the extent any of defendants' arguments attack the jury instruction or verdict form as opposed to the sufficiency of the evidence, such arguments are *not* appropriate in a Rule 50(b) motion . . . .").

---

[7] Furthermore, the Fifth Circuit has repeatedly held that a Rule 50(b) motion is not an appropriate occasion to complain about legal error in the jury instruction, for any such error would only be grounds for a new trial, not for renewed judgment as a matter of law. *See, e.g.*, *Aero Int'l, Inc. v. Fire Ins. Co.*, 713 F.2d 1106, 1113 (5th Cir. 1983) ("A new trial is the appropriate remedy for prejudicial errors in the jury instructions."); *Kendrick v. Ill. Cent. Gulf R. Co.*, 669 F.2d 341, 343 (5th Cir. 1982) ("A judgment n.o.v. is not the proper cure for an erroneous instruction. A new trial is the appropriate therapy. A judgment n.o.v. would be proper only if the evidence were insufficient to support a judgment for the plaintiff even under the proper instructions." (citation omitted)).

Thus, the Court finds that Defendants' Motion as it pertains to Rule 50(b) should be denied as to this issue and finds that the Motion is more properly characterized as a motion to alter or amend the judgment under Rule 59(e), which the Court shall discuss below.

### C.    The Court's Decision on the Laches Defense

Defendants argue that Armadillo is entitled to judgment as a matter of law on its affirmative defense of laches because the Court erred in finding that Armadillo could not assert laches because the jury found unclean hands and "intentional" infringement (Dkt. #826 at p. 21). Defendants contend that the Court's holding overlooks the jury's finding that Armadillo did not willfully infringe any of the Gibson Trademarks (Dkt. #826 at pp. 21–22). Plaintiff disagrees, arguing that Defendants mistakenly believe that the jury is required to find willfulness in order to find that Armadillo has unclean hands (Dkt. #841 at pp. 40–42).

The Court finds that Defendants' argument is not a proper basis for the grant of judgment as a matter of law under Rule 50(b). Although Defendants style this argument under Rule 50(b), they contend only that the Court committed a manifest error of law or fact, and not that the jury's verdict was against the great weight of the evidence (Dkt. #826 at p. 21 (arguing that the Court committed a manifest error in law or fact because it "overlooks the jury finding that Armadillo did not willfully infringe any of the give Gibson trademarks.")). This argument ignores the legal standard applicable to Rule 50(b) motions. A Rule 50(b) motion is intended to correct a jury verdict which is not supported by the evidence—not to correct manifest errors in law or fact realized after judgment is entered. *Compare Nelson*, 838 F. App'x at 41–42 ("And to be clear, where there has been a jury trial, a Rule 50 motion is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. A motion for judgment as a matter of law should be granted if there is no legally sufficiency evidentiary basis for a reasonable jury to find for a party." (citation modified)), *with*

17

*Faciane v. Sun Life Assurance Co. of Can.*, 931 F.3d 412, 423 (5th Cir. 2019) ("Rule 59(e) motions are for the *narrow purpose* of correcting manifest errors of law or fact or presenting newly discovered evidence." (emphasis added)). Thus, the Court finds that Defendants' Motion as it pertains to Rule 50(b) should be denied as to this issue and finds that the Motion is more properly characterized as a motion to alter or amend the judgment under Rule 59(e), which the Court shall discuss below.

### D.    The Court's Disgorgement Award

Defendants argue that Armadillo is entitled to judgment as a matter of law that Gibson is entitled to only $1.00 in disgorgement because the Court committed legal error in assessing disgorgement in view of the jury's finding that $1.00 in disgorgement should be awarded (Dkt. #826 at p. 27). Once again, the Court finds that Defendants' argument is not a proper basis for the grant of judgment as a matter of law under Rule 50(b). Although Defendants style this argument under Rule 50(b), they only argue that the Court committed a manifest legal error, and do not argue that the jury's verdict is against the great weight of the evidence (Dkt. #826 at p. 27). However, as explained above, a Rule 50(b) motion is intended to correct a jury verdict which is not supported by the evidence—not to correct a manifest error of law after judgment is entered. *See Nelson*, 838 F. App'x at 41; *Faciane*, 931 F.3d at 423. Thus, the Court finds that Defendants' Motion as it pertains to Rule 50(b) should be denied as to this issue and finds that the Motion is more properly characterized as a motion to alter or amend the judgment under Rule 59(e), which the Court shall discuss below.

\* \* \*

In sum, although Defendants style each of their arguments under Rule 50(b), the only argument properly raised under Rule 50(b) is their argument the jury's finding of trademark infringement by Armadillo is against the great weight of the evidence—which the Court found to

18

be without merit. The remaining arguments have nothing to do with whether there is a legally sufficient evidentiary basis for a reasonable jury to find for Armadillo, and thus do not fall under Rule 50(b) of the Federal Rules of Civil Procedure. Accordingly, Defendants' renewed motion for judgment as a matter of law is denied in its entirety.

## II.    Defendants' Motion to Alter or Amend Final Judgment

Defendants move for the Court to alter or amend the Final Judgment on six separate grounds. First, Defendants argue that the Court committed clear error when it found that the expiration of the design patents does not preclude Gibson from enforcing its body shape marks under the Lanham Act (Dkt. #826 at p. 13). Second, Defendants argue that the Court committed clear error when it refused to give a separate and different jury instruction and verdict form question for the alleged trademark infringement of the Gibson body shape marks covered by expired design patents (Dkt. #826 at p. 17). Third, Defendants argue that the Court committed clear error when it failed to include the word "spurious" in the instructions for counterfeiting (Dkt. #826 at p. 19). Fourth, Defendants argue that the Court committed clear error when it held that Armadillo cannot assert laches because the jury found unclean hands and "intentional" infringement (Dkt. #826 at p. 21). Fifth, Defendants argue that the Court committed clear error in finding that the *eBay* factors weighed in favor of granting Gibson a permanent injunction (Dkt. #826 at p. 23). Sixth, Defendants argue that the Court committed clear error in assessing disgorgement in view of the jury's finding that Gibson was entitled to only $1.00 in disgorgement (Dkt. #826 at p. 27). The Court addresses each of Defendants' arguments in turn.

### A.    Expired Design Patents and Injunctive Relief

Defendants argue that the Court should alter or amend the Final Judgment to deny injunctive relief as to the Flying V Body Shape, the Explorer Body Shape, and the SG Body Shape

19

because the Court erred in finding that the expiration of the design patents does not preclude the Court from enforcing its body shape trademarks under the Lanham Act (Dkt. #826 at p. 13). Defendants contend that the Court's finding is a clear error of law because controlling precedent limits the injunctive relief remedy available after design patents expire to bar only future palming off or selling unlabeled confusingly similar products (Dkt. #826 at p. 13). According to Defendants, Armadillo has clearly done neither, so Gibson was not entitled to injunctive relief as to its three remaining valid body shape marks, even if there has been infringement of those marks (Dkt. #826 at pp. 13–14). Plaintiff disagrees, arguing Defendants failed to cite any case law that supports their contention that an expired design patent automatically limits a trademark owner of the same design to only passing off claims (Dkt. #841 at pp. 28–32). As such, Plaintiff contends that Armadillo failed to demonstrate that this Court committed a "clear error of law" that warrants altering or amending the Final Judgment to deny the permanent injunction as to the Flying V, Explorer, and SG Body Shapes (Dkt. #841 at p. 32).

The Court finds that Defendants have failed to show that they are entitled to an altered or amended Final Judgment denying injunctive relief as to the Flying V Body Shape, the Explorer Body Shape, and the SG Body Shape. As mentioned above, the Fifth Circuit has made clear that there are only a limited number of circumstances in which district courts can alter or amend a final judgment, none of which have been shown here. Specifically, Defendants have failed to show (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, (3) the need to correct a clear error of law or fact, or (4) the need to prevent a manifest injustice. *See Schiller*, 342 F.3d at 567 (explaining that these are the four limited circumstances in which the rule of reconsideration of a final judgment allows a court to alter or amend a judgment). Instead,

Defendants' motion to alter or amend is nothing more than an unfounded attempt to re-litigate old issues that have already been properly considered and denied by this Court.[8] *See Cabalcante v. United States*, No. 4:16-cv-946, 2021 WL 2894086, at *1–2 (E.D. Tex. July 9, 2021) (denying motion to alter or amend the judgment where movant simply attempted to re-litigate old issues that were already properly considered and denied); *see also Hrncir v. Internal Revenue Serv.*, No. 4:24-CV-962-SDJ, 2025 WL 2844764, at *2 (E.D. Tex. Oct. 7, 2025) ("Rule 59(e) is not designed to permit a party to continue to re-litigate the same claims with the same arguments, or even new arguments, once there has been a ruling on the merits of a claim."). However, Defendants' dissatisfaction with the Court's prior decision on this issue is not, no matter how badly Defendants may want it to be, an appropriate basis upon which to bring a motion to alter or amend the judgment. *See Tex. Cap. Bank, N.A. v. Dall. Roadster, Ltd.*, No. 4:13-CV-625, 2015 WL 13807580, at *1 (E.D. Tex. Oct. 14, 2015) ("Mere disagreement with a district court's order does not warrant reconsideration of that order." (citation omitted)); *Smith v. JPMorgan Chase Bank*, No. 3:15-CV-3582-L, 2017 WL 4698471, at *1 (N.D. Tex. Oct. 19, 2017) (stating that motions to alter or amend "may not be used to address issues that were resolved to the movant's dissatisfaction."). Thus, Defendants fail to show that they are entitled to their requested relief.

Notwithstanding that the Court would not typically address arguments that simply attempt to re-litigate old issues that have been properly considered and denied, the Court will briefly address Defendants' argument that the expiration of design patents limits the injunctive relief

---

[8] Indeed, this exact argument has been raised by Defendants and rejected by this Court on at least *three* previous occasions in this case (*See* Dkt. #705 at pp. 1–4; Dkt. #741 at pp. 1–5; Dkt. #795 at pp. 6–15 (arguing that controlling precedent requires the Court to limit the scope of the protection afforded to Gibson's body style trademarks because they had previously been the subject of now-expired design patents, and explaining that any other results would impermissibly allow Gibson to use the Lanham Act to create a type of perpetual patent)).

remedy available for trademark violations given both its importance to this case and to correct Defendants continued misunderstanding of the law on this issue. Defendants rely on three cases to support their argument: (1) *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003); (2) *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964); and (3) *General Universal Sys., Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004) (*See* Dkt. #826 at pp. 13–17). For the reasons discussed in more detail below, the Court finds that Defendants' reliance on these cases is misplaced as none of them stand for the proposition that an expired design patent limits the injunctive relief remedy available for trademark violations.

First, the Court in *Dastar* involved a dispute over copyright (including the interplay between patent and copyright law) and not trademark, and was only focused on the narrow inquiry of whether the Lanham Act prevents the unaccredited copying of uncopyrighted work. *See Dastar*, 539 U.S. at 31–38. In the present case, the dispute involves the interplay between patent and trademark law, which is an issue that the Court in *Dastar* never addressed. Second the Court in *Compco* expressly noted that a defendant can copy at will if the design is "not entitled to a design patent *or other federal statutory protection*" *Compco*, 376 U.S. at 238 (emphasis added). Here, Defendants cannot copy at will because "other federal statutory protection," the Lanham Act, applies. Further, the Court in *Compco* examined preemption of state unfair competition law by federal patent law, not the scope of federal trademark law or unfair competition law. *See id*. at 237–38 (finding that a state, through its unfair competition laws, cannot extend patent protection to an article otherwise unprotected by a *patent* or a *copyright* because doing so conflicts with the federal policy of allowing free access to copy whatever the *federal patent* and *copyright laws* leave in the public domain). Third, Defendants reliance on the Fifth Circuit's decision in *General Universal*

22

*Systems, Inc.*, suffers from the same flaw as *Dastar* in that it had nothing to do with the interplay between patent and trademark rights which is precisely what Defendants have attempted (improperly) to use it for. *See General Universal Systems, Inc.*, 379 F.3d at 148–49 (discussing the limited scope of protection available to after a *copyright* has expired and passed into the public domain). After a careful review of Defendants' alleged "controlling precedent," the Court finds that none of these cases affect the applicability of the Lanham Act in the present case. Indeed, in each of these cases the plaintiff was seeking to use the trademark protection under the Lanham Act (or under state unfair competition laws not more protective than the Lanham Act) as a perpetual extension of a copyright or a patent. *See, e.g.*, *Dastar*, 539 U.S. at 37–38 (finding that "[t]he creative talent of the sort that lay behind the Campaigns videos is not left without protection. The original film footage used in the Crusade television series could have been copyrighted . . . . Had Fox renewed the copyright in the Crusade television series, it would have had an easy claim of copyright infringement."); *General Universal Sys., Inc.*, 379 F.3d at 149 (finding that "[i]n sum and substance, GUS's claim is simply a claim that HAL has infringed its copyright in LOPEZ COBOL. *Dastar* makes clear that such claims are not actionable under § 43(a)."). In contrast, Gibson's trademark infringement claim against Defendants is not an attempt to "shoehorn what essentially amounts to a putative patent violation or a putative copyright violation into a Lanham Act claim." *WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 351 (5th Cir. 2021). Thus, Defendants' reliance on these decisions is unavailing and the Court's decision on this issue remains unchanged: the expiration of the design patents does not preclude Gibson from enforcing its body shape trademarks under the Lanham Act (*See* Dkt. #812 at p. 9).

Moreover, Defendants' argument regarding the limited scope of relief available to a trademark owner based on expired design patents and reliance on the above-mentioned cases is misplaced for several additional reasons. First, Defendants' argument overlooks that trademark law, unlike patent and copyright law, allows for a perpetual monopoly. *See Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1320 (Fed. Cir. 2019) ("Trademarks promote competition by *permitting* a *perpetual monopoly* over symbols that distinguish a firm's goods and identify their source, without serving any other significant function." (citation modified)); *see also Yurman Designs, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001) ("Patent and copyright law bestow limited periods of protection, but trademark rights can be forever."). Second, the law of trademark protects different interests and serves different goals than the laws of patent and copyright. *See Bos. Pro. Hockey Ass'n, Inc. v. Dall. Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010–11 (5th Cir. 1975) ("The copyright laws are based on an entirely differently concept than the trademark laws, and contemplate that the copyrighted materials, like patented ideas, will eventually pass into the public domain. The trademark laws are based on the needed protection of public and business interests and there is *no reason why trademarks should ever* pass into the public domain by the mere passage of time." (emphasis added)); *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216 (2d Cir. 2012) (noting that "trademark law is *not* intended to protect[] innovation by giving the innovator a *monopoly* over a useful protect feature . . . . Such a monopoly is the realm of patent law or copyright law, which seek to encourage innovation, and not of trademark law, which seeks to preserve a vigorously competitive market for the benefit of consumers." (citation modified)). Lastly, there are several cases that say the exact opposite of the argument that Defendants have attempted to advance. *See, e.g., Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1241 (6th

24

Cir. 1991) ("[T]rademark rights, or rights under the law of unfair competition, which happen to continue beyond the expiration of a design patent, do not 'extend' the patent monopoly. They exist independently of it, under different law and for different reasons. The termination of either has no legal effect on the continuance of the other." (citation omitted)); *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 637, 641 (7th Cir. 1993) (finding that "courts have consistently held that a product's different qualities can be protected simultaneously, or successively, by more than one of the statutory means for protection of intellectual property." (collecting cases)); *Application of Mogen David Wine Corp.*, 328 F.2d 925, 930 (C.C.P.A. 1964) (explaining that trademark rights that happen to continue beyond the expiration date of a patent on the same product do not extend the patent grant, because the two forms of protection "exist independently . . . under different law and for different reasons.").

Based on the foregoing, the Court finds that Defendants have failed to demonstrate that the Court committed a clear error of law in granting a permanent injunction as to the Flying V, Explorer, and SG Body Shapes. Accordingly, Defendants' request to alter or amend the Final Judgment to deny permanent injunctive relief as to the Flying V, Explorer, and SG Body Shapes is **DENIED**.

### B.    Expired Design Patents and Jury Instruction

Defendants argue that the Court should alter or amend the Final Judgment to hold no infringement of the Flying V, Explorer, and SG Body Shapes to correct a clear error of law and prevent a manifest injustice (Dkt. #826 at p. 17). Defendants contend that the jury should have been given a separate and different jury instruction and verdict form for alleged trademark infringement of the Gibson body shape marks because they were covered by an expired design patent (Dkt. #826 at pp. 17–18). According to Defendants, the separate and different jury

25

instruction for the guitars accused of infringing the body shape marks should have said: "others are free to copy the design, subject only to an obligation to identify the product as their own" (Dkt. #826 at p. 18). Applying the corrected instruction to this case, Defendants argue that the only outcome a jury could come to is finding no infringement as to any of Gibson's body shape trademarks since Armadillo has always properly labeled the accused guitars (Dkt. #826 at pp. 18–19).

The Court finds that Defendants' argument fails because it is an impermissible attempt to use a Rule 59(e) motion to rehash an argument that has already been considered and rejected by this Court. *See, e.g.*, *Cruz v. Braum's, Inc.*, No. 6:20-CV-00217, 2021 WL 2498793, at *1 (E.D. Tex. May 14, 2021) ("Parties may not use a Rule 59(e) motion to rehash arguments offered before the entry of judgment"). Indeed, Defendants' argument regarding a separate and different jury instruction and verdict form question for alleged trademark infringement of the Gibson body shape marks covered by expired design patents is *identical* the one raised in their prior bench brief, which the Court rejected (*See* Dkt. #741). Thus, Defendants have not shown a basis for relief under Rule 59(e). *See McGee v. Citi Mortg., Inc.*, 680 F. App'x 287, 290 (5th Cir. 2017) (per curiam) (unpublished) ("We agree with the district court that the [plaintiffs]' Rule 59(e) motion was an attempt to litigate objections already rejected by the court. The motion did not identify a change in the law, present new evidence, or identify a manifest error of law or fact. The district court did not abuse its discretion in denying the motion."); *Burciaga v. Deutche Bank Nat'l Tr. Co.*, No. 4:14-CV-367, 2016 WL 2758134, at *2 (E.D. Tex. May 12, 2016) ("A manifest error is not demonstrated by the disappointment of the losing party." (citation modified)). Accordingly, Defendants' request to

alter or amend the Final Judgment to hold no infringement of the Flying V, Explorer, and SG body shapes on this basis is **DENIED**.

### C.     Jury Instruction for Counterfeiting and Failure to Include the Term "Spurious"

Defendants argue that the Court should alter or amend the Final Judgment to hold no counterfeiting as to any of the three body shape marks and two word marks to correct a clear error of law and prevent manifest injustice (Dkt. #826 at p. 19). According to Defendants, the Court's final instructions on counterfeiting, which removed the word "spurious," erroneously instructed the jury that counterfeiting did not require a finding of any bad faith intent (Dkt. #826 at pp. 19–20). In other words, Defendants contend that the Court's final instructions did not require Gibson to show that any of the accused counterfeits were "fake" or "deceptively suggest an erroneous origin" (Dkt. #826 at p. 20). Plaintiff disagrees, arguing in part that the Court's counterfeiting instruction, which included the word "intentionality," clearly instructed the jury that counterfeiting requires a finding of intent (Dkt. #841 at pp. 33–35).

Under the Lanham Act, a party may sue another for using in commerce any "counterfeit . . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Counterfeiting is a subset of trademark infringement. As one court in this circuit has stated, it has "interpreted a trademark counterfeiting claim to operate as a trademark infringement with the addition of a defendant's intention to use the plaintiff's trademark, knowing it was a counterfeit." *Springboards to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 717 (N.D. Tex. 2018). To recover on a federal trademark counterfeiting claim, a plaintiff must show that: "(1) defendants infringed a registered trademark

in violation of 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing it was a counterfeit." *Chanel Inc. v. Christian Salvatore NY Corp.*, 3:22-CV-2218-K, 2023 WL 8242743, at *9 (N.D. Tex. Nov. 3, 2023) (citation modified).

Naturally, this begs the question: What constitutes a "counterfeit"? The Lanham Act defines a "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. However, "spurious" and "substantially indistinguishable" are left undefined. *See id.* And unfortunately, it appears not a single court in the Fifth Circuit has addressed the argument raised by Defendants. Nevertheless, Defendants erroneously contend that this Court previously held that the plain meaning of a "spurious" mark is one that is "fake" and "deceptively suggests an erroneous origin" (Dkt. #826 at p. 20). Not so. The Court was citing to dicta from the Second Circuit's decision in *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74 (2d Cir. 2020) to try and reconcile an argument raised by Defendants that is entirely unrelated to the issue presented here and which the Court ultimately refused to adopt (*See* Dkt. #619 at pp. 46–51).[9] Thus, contrary to Defendants' belief, this Court has

---

[9] In the Court's prior memorandum opinion and order, the Court explicitly stated that it was citing to the Second Circuit's decision in *Tiffany & Co.*, merely as a way to try and reconcile the tension created by Defendants' argument raised therein (*See* Dkt. #619 at p. 48 ("Perhaps these cases can be reconciled under the Lanham Act's text, and the Court finds the Second Circuit's decision in *Tiffany & Co. v. Costco Wholesale Corp.* instructive on this point.")). Moreover, the Court's prior memorandum opinion and order further made clear that it was in no way adopting any part of the Second Circuit's decision in *Tiffany & Co.* (*See* Dkt. #619 at p. 49 (noting that "the Court takes no position on" whether the dicta in the Second Circuit's decision in *Tiffany & Co.* was sound)). Finally, and most importantly, the Court's prior memorandum opinion and order made clear that it was *not* holding that "the plain meaning of a 'spurious' mark is one that is 'fake' and 'deceptively suggest an erroneous origin,'" but rather just providing a direct quote from the Second Circuit's decision in *Tiffany & Co.* (*See* Dkt. #619 at p. 49 (placing direct quotes around this phrase followed by a citation to the decision)). Indeed, the Court's analysis of this issue does not begin until two paragraphs later, during which the Court never cited the Second Circuit's decision in *Tiffany & Co.*, never mentioned the phrase "spurious," and never uses the word "plain" or "meaning" or the phrase "plain meaning" (*See* Dkt. #619 at pp. 50–51). Accordingly, Defendants' arguments based on their characterization of the Court's prior order are patently without merit.

never defined the term "spurious," much less decided whether the term needs to be included in the counterfeiting instructions.

The Court finds that Defendants have failed to show that the Court erred in instructing the jury on counterfeiting. Defendants fail to cite a single case in support of their argument that the Court's counterfeiting instructions must include the word "spurious." Instead, Defendants' entire argument is based on their own misrepresentation of the Court's prior order. As already mentioned above, neither this Court nor any other court in the Fifth Circuit has decided whether the counterfeiting instruction must include the word "spurious." Several courts within this circuit have, however, addressed the legal requirements to establish liability for trademark counterfeiting. *See Haggar Clothing Co. v. Sai Lakshmi Indus. Pvt. Ltd.*, No. 3:09-CV-0802-M, 2009 WL 2868443, at *5 (N.D. Tex. Sept. 3, 2009) ("To state a claim for trademark counterfeiting, a plaintiff must allege: (1) defendants infringed a registered trademark in violation of § 1114(1)(a), and (2) *intentionally* used the trademark *knowing* it was a counterfeit, as the term counterfeit is defined in § 1116." (emphasis added)); *Chanel Inc.*, 2023 WL 8242743, at *9 (same); *see also Springboards to Educ., Inc.*, 325 F. Supp. 3d at 717 (explaining that a trademark counterfeiting claim operates as a trademark infringement claim "with the addition of a defendant's *intention* to use the plaintiff's trademarks, *knowing* it was a counterfeit." (emphasis added)). The only thing that these cases clearly establish is that liability for counterfeiting requires a finding that a defendant intentionally used a mark knowing it was identical, or substantially indistinguishable from, a plaintiff's registered mark. Here, the Court's counterfeiting instructions to the jury precisely tracked this language (*See*

29

Dkt. #746 at pp. 13–15).[10] Thus, Defendants failed to demonstrate that the Court committed a clear error of law by failing to properly instruct the jury on counterfeiting. Accordingly, Defendants' request to alter or amend the Final Judgment to hold no counterfeiting as to any of the three body shape marks and two word marks on the basis that the Court erred in instructing the jury on counterfeiting is **DENIED**.

### D.    Laches

Defendants argue that the Court should alter or amend the Final Judgment to deny injunctive relief as well as monetary damages to correct a clear error of law and prevent manifest injustice (Dkt. #826 and p. 21). Defendants contend that the Court erred in holding that Armadillo could not assert the defense of laches because it overlooked the jury's finding that Armadillo did not willfully infringe any of the five Gibson trademarks (Dkt. #826 at p. 21). According to Defendants, this jury finding shows that Armadillo did not act with the requisite bad faith intent required to foreclose the equitable defense of laches (Dkt. #826 at pp. 21–22). Therefore, Defendants argue that the Court should have allowed Armadillo to assert the defense of laches which bars Gibson from obtaining any injunctive or monetary relief (Dkt. #826 at pp. 22–23). Plaintiff disagrees, arguing that Defendants mistakenly believe that the jury is required to find willfulness in order to find that Armadillo had unclean hands (Dkt. #841 at pp. 40–42).

---

[10] Specifically, the Court instructed the jury that facts relevant to whether Armadillo is liability for counterfeiting the Gibson's Trademarks is whether it was "*intentionally* using a counterfeit that is *identical with*, or *substantially indistinguishable from*, Gibson's Trademarks in a manner likely to cause confusion among ordinary consumers" (Dkt. #746 at p. 13) (emphasis added). The Court further instructed the jury that "[t]o find intentional counterfeiting, you must determine that a preponderance of the evidence demonstrates that Armadillo meant to include within its product or advertising a shape, word, or phrase that Armadillo *knew to be identical* or *substantially indistinguishable* from a Gibson trademark" (Dkt. #746 at p. 15) (emphasis added).

The Court finds that Defendants have failed to show that the Court erred in finding that Armadillo cannot assert the defense of laches. With respect to the defense of laches, the law in the Fifth Circuit is clear: "A laches defense cannot be asserted by a party with unclean hands because it is equitable." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013). Unclean hands may be found only where a defendant "intentionally infringes a trademark with the bad faith intent to capitalize on the marketholder's good will." *Rolex Watch USA, Inc. v. BeckerTime, L.L.C.*, 96 F.4th 715, 723 (5th Cir. 2024). Defendants contend that the jury's finding of no willful infringement means that Armadillo is entitled to a finding of no unclean hands (Dkt. #826 at p. 21). Not so. Defendants' argument erroneously conflates bad faith (required to find unclean hands) and willfulness. This is not the law. Indeed, Defendants have not cited, nor has this Court found, a single Fifth Circuit case holding that willfulness is required to find unclean hands. Instead, unclean hands may be found where an owner of a trademark demonstrates that a defendant intentionally used the mark with the "bad faith intent" to capitalize on the mark owner's goodwill. *See Rolex Watch USA, Inc.*, 96 F.4th at 723. The Fifth Circuit's decision in *Smack Apparel* is instructive. In *Smack Apparel*, the Fifth Circuit affirmed the district court's decision declining to apply the defense of laches, finding that the record established the substantive and knowing bad faith necessary to foreclose the equitable defense. *Smack Apparel*, 550 F.3d at 490. The Fifth Circuit explained that the defendant did not simply admit that it knew the plaintiff university used a mark similar to its own. *Id.* Rather, the record showed that the defendant intentionally incorporated the universities color schemes and other indicia in order to specifically call the universities to the public's mind, thus deriving a benefit from the universities' reputation. *Id.* Here, just like in *Smack Apparel*, the record supports a finding of the substantive and knowing bad faith necessary to foreclose the

31

equitable defense of laches. As just one example, after Armadillo copied Gibson's SG Body Shape Design it joked in emails "don't be scared" to call it the GS (*See* Dkt. #786-3 at p. 1). Thus, Armadillo did not just intentionally use Gibson's marks but instead intentionally incorporated Gibson's body shape and other indicia to specifically call the famous Gibson marks to the public's mind. Accordingly, the Court did not err in finding that Armadillo cannot assert the defense of laches in this case.

Accordingly, Defendants' request to alter or amend the Final Judgment to deny injunctive relief as well as monetary damages on this basis is **DENIED**.

### E.    *eBay* Factors and Permanent Injunction

Defendants argue that the Court should alter or amend the Final Judgment to deny injunctive relief because the Court erred in finding that the *eBay* factors weigh in favor of granting Gibson a permanent injunction (Dkt. #826 at pp. 23–24). Specifically, Defendants contend that the Court erred in finding that the loss of control, balance of hardships, and public interest factors favor awarding permanent injunctive relief to Gibson in this case (Dkt. #826 at pp. 24–27).

The Court finds that Defendants have failed to show that they are entitled to an altered or amended Final Judgment denying injunctive relief as to Gibson's three body shape marks and two word marks. Once again, Defendants are attempting to use their Rule 59(e) motion to re-litigate matters that already have been considered and rejected by this Court. *See Cabalcante*, 2021 WL 2894086, at *1–2 (denying motion to alter or amend the judgment where the movant simply attempted to re-litigate old issues that have been properly considered and denied); *Hrncir*, 2025 WL 2844764, at *2 ("Rule 59(e) is not designed to permit a party to continue to re-litigate the same claims with the same arguments, or even new arguments, once there has been a ruling on the merits of a claim."). Defendants, not surprisingly, have failed to show (1) an intervening change in

32

controlling law, (2) the availability of new evidence not previously available, (3) the need to correct a clear error of law or fact, or (4) the need to prevent manifest injustice. *See Schiller*, 342 F.3d at 567 (explaining that these are the four limited circumstances in which the rule of reconsideration of a final judgment allows a court to alter or amend a judgment). Instead, Defendants move to alter or amend the Final Judgment simply because they disagree with the Court's prior decision on this issue. The Court refuses to entertain such an unfounded request. *See Burciaga*, 2016 WL 2758134, at *2 ("A manifest error is not demonstrated by the disappointment of the losing party." (citation modified)); *Tex. Cap. Bank, N.A.*, 2015 WL 13807580, at *1 ("Mere disagreement with a district court's order does not warrant reconsideration of that order."); *Smith*, 2017 WL 4698471, at *1 (stating that motions to alter or amend "may not be used to address issues that were resolved to the movant's dissatisfaction."). Accordingly, Defendants' request to alter or amend the Final Judgment to deny injunctive relief as to Gibson's three body shape marks and two work marks on this basis is **DENIED**.

### F.    Disgorgement

Defendants argue that the Court should alter or amend the Final Judgment to award only $1.00 in disgorgement because the Court committed legal error in assessing disgorgement in view of the jury's finding that Gibson was entitled to only $1.00 in disgorgement (Dkt. #826 at p. 27). Defendants divide their argument into three parts: (1) the jury's finding on disgorgement is binding on the Court; (2) the Court erred in relying on the *Pebble Beach* factors to determine if disgorgement was appropriate and erred in applying those factors; and (3) the Court erred in failing to determine the portion of Armadillo's profits are attributable to the Lanham Act violations (*See* Dkt. #826 at pp. 27–30). The Court addresses each argument in turn.

### 1.    The Jury's Finding on Disgorgement

Defendants argue that the Court committed legal error in assessing disgorgement in view of the jury's findings that Gibson was entitled to only $1.00 in disgorgement (Dkt. #826 at p. 27). Specifically, Defendants contend that, by doing so, the Court ignored that the parties had consented to, and tried, all issues to the jury, including the issue on disgorgement of profits (Dkt. #826 at pp. 27–28). Defendants conclude that, based on this consent, the jury's findings are binding on the Court (Dkt. #826 at p. 28). Plaintiff counters that the jury's finding on disgorgement does not bind the Court as the Lanham Act commits the calculation of disgorgement to the discretion of the Court (Dkt. #841 at pp. 44–45).

The Court finds that Defendants have failed to show that they are entitled to an altered or amended Final Judgment finding that disgorgement is limited to $1.00 for two reasons. First, like the bulk of their arguments raised herein, Defendants are attempting to use their Rule 59(e) motion as a vehicle to re-litigate old matters that have already been properly considered and denied by this Court (*See* Dkt. #812 at p. 14 (rejecting Armadillo's argument that the jury's finding on disgorgement binds the Court finding that the Lanham Act commits the calculation of disgorgement to the district of the Court)). However, as already discussed ad nauseam by this Court above, Defendants' mere disagreement with the Court's prior decision is not a valid basis for altering or amending the Final Judgment in this case. *See, e.g.*, *Tex. Cap. Bank, N.A.*, 2015 WL 13807580, at *1; *Smith*, 2017 WL 4698471, at *1. Thus, the Court refuses to stray from its prior decision with regards to the disgorgement award. Second, Defendants' cited authority does not support their proposition that the jury's findings on disgorgement under the Lanham Act are

binding on the Court (*See* Dkt. #826 at pp. 27–28).[11] Defendants' failure to cite any supporting authority is not surprising, as no such authority exists. Indeed, federal courts have repeatedly and consistently held that the Lanham Act expressly commits the calculation of disgorgement to the discretion of the Court.  *See Martin's Herend Imps., Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1304 (5th Cir. 1997) ("Great latitude is given the district court in awarding damages under the Lanham Act, 'which expressly confers upon the district judges wide discretion in determining a just amount or recovery for trademark infringement.'"). Moreover, contrary to Defendants' arguments otherwise, the Lanham Act expressly allows the Court, in its discretion, to increase or decrease the jury's disgorgement award. *See Neal Techs., Inc. v. Unique Motorsports, Inc.*, No. 4:15-cv-385, 2017 WL 2903175, at *8 (E.D. Tex. Jan. 20, 2017) ("An award of profits is to be made subject to the principles of equity. If the court concludes that the amount is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find just, according to the circumstances of the case." (citing 15 U.S.C. § 1117(a)); *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 474–75 (8th Cir. 2011) (explaining that under Section 1117 of the Lanham Act "the district court has discretion to award monetary relief itself or to increase or decrease the jury's

---

[11] The first case Defendants cite, *Garza v. Starr County*, 628 F. App'x 887 (5th Cir. 2015), has nothing to do with either trademark infringement or courts being bound by the jury's findings on disgorgement. Instead, *Garza* is a First Amendment case arising under 42 U.S.C. § 1983 and deals with a situation where the district court disregarded the jury's verdict and reinstated the plaintiff to a comparable position in lieu of the jury's award of $1.4 million in front pay. *See Garza*, at 628 F. App'x at 887–89. Defendants next cite, *Gaia Techs., Inc. v. Recycled Prods. Corp.*, 175 F.3d 365 (5th Cir. 1999). Although *Gaia* involves trademark infringement claims it similarly has nothing to do with courts being bound by the jury's finding on disgorgement. Instead, *Gaia* deals with the question of whether the district court erred in disregarding the jury's verdict and holding that individual defendants are liable for plaintiff's state law causes of action. *Gaia Techs., Inc.*, 175 F.3d at 370–71. The last case Defendants cite, *Accord ResMan, LLC v. Karya Prop. Mgmt. LLC*, No. 19-CV-00402, 2021 WL 3423345 (E.D. Tex. Aug. 5, 2021), also has nothing to do with either trademark infringement or courts being bound by the jury's finding on disgorgement. Instead, *Accord ResMan, LLC*, is a breach of contract and trade secret misappropriation case and deals with whether the court is bound by the jury's finding of unjust enrichment damages, which is typically an equitable remedy decided by the court, where the parties' consent to this issue being decided by a jury as opposed to the court. *Accord ResMan, LLC*, 2021 WL 3423345, at *5–6. Thus, the Court finds that none of Defendants' cited authorities support their argument.

award of profits."). Here, exercising that broad discretion, this is precisely what the Court did in its September 22, 2025 Memorandum Opinion and Order (*See* Dkt. #812 at pp. 13–17 (increasing the jury's disgorgement award from $1.00 to $168,399.22 after finding that this is the sum that "places Gibson in roughly the same position as it would have been had the infringement never occurred.")).

Therefore, Defendants have failed to show that the Court committed a legal error in assessing disgorgement in view of the jury's finding that Gibson was entitled to only $1.00 in disgorgement. Accordingly, Defendants' request for an altered or amended Final Judgment to award only $1.00 in disgorgement is **DENIED**.

### 2. The Court's Reliance and Application of the *Pebble Beach* Factors

Defendants' argument that the Court erred in using the *Pebble Beach* factors to determine that disgorgement was appropriate is two-fold. First, Defendants argue that the Court improperly relied on *Pebble Beach* to determine if disgorgement was appropriate because its guidance is inapplicable here since Gibson tried all issues to the jury (*See* Dkt. #826 at p. 28). Second, Defendants argue that the Court failed to correctly apply several of the *Pebble Beach* factors, resulting in an inaccurate outcome not supported by substantial evidence (*See* Dkt. #826 at pp. 29–30 (arguing that the Court erred in finding that factors one, two, and three weighed in favor of disgorgement)). Plaintiff disagrees, arguing that Defendants failed to demonstrate that the Court committed clear legal error in assessing the six *Pebble Beach* factors and that Defendants are impermissibly seeking to use the motion as a vehicle to relitigate past issues already considered and rejected by the Court (Dkt. #841 at p. 45).

a.      The Court's Reliance on the *Pebble Beach* Factors

The Court finds that Defendants' argument that the Court erred in relying on the *Pebble Beach* factors to determine if disgorgement was appropriate is without merit. Defendants fail to cite a single case in support of their argument that *Pebble Beach's* guidance about how to determine whether an award of profits is only applicable to bench trials. Nor has the Court otherwise found any such case. Indeed, another court in this district has previously held the exact opposite to be true. In *Neal Technologies, Inc.*, the jury found that the plaintiff was entitled to $100,000 in disgorgement for the defendant's trademark violations. *See Neal Technologies, Inc.*, 2017 WL 2903175, at *1. Prior to entry of the final judgment, the court reviewed the jury's disgorgement award of $100,000 to determine whether an award of profits was appropriate in this case. *See id.* at *5 (noting that an award of profits under Section 1117 of the Lanham Act is not automatic and is subject to the principles of equity and courts must also ensure the award is compensatory and not punitive). In deciding whether an award of the defendant's profits was appropriate in this case, the court analyzed the *Pebble Beach* factors. *Id.* at *5–8. The district court concluded, after weighing the *Pebble Beach* factors, that the plaintiff was entitled to an award of the defendant's profits for its trademark infringement. *Id.* at *8. Here, just like the court in *Neal Technologies, Inc.*, prior to entering the Final Judgment, the Court analyzed the *Pebble Beach* factors to determine whether the jury's award of profits was appropriate in the present case (*See* Dkt. #812 at pp. 13–17 (finding that disgorgement is appropriate in this case where four out of the six *Pebble Beach* factors weigh in favor of disgorgement)). Thus, Defendants have failed to show that the Court erred in relying on the *Pebble Beach* factors to determine if disgorgement was appropriate in the present case. Accordingly, Defendants' request for an altered or amended Final Judgment to award only $1.00 in disgorgement on this basis is **DENIED**.

b.    The Court's Application of the *Pebble Beach* Factors

The Court also finds that Defendants' argument that the Court erred in applying the *Pebble Beach* factors, resulting in an inaccurate outcome on the issue of disgorgement, is similarly without merit. Defendants' argument is again nothing more than an attempt to re-litigate old matters that have already been properly considered and denied by this Court (*See* Dkt. #812 at pp. 13–17). No matter how many times Defendants attempt to raise this argument it fares no better now than it did before. As already discussed ad nauseum by this Court above, Defendants' mere disagreement with the Court's prior decision is not a valid basis for altering or amending the Final Judgment in this case. *See, e.g.*, *Tex. Cap. Bank, N.A.*, 2015 WL 13807580, at *1; *Smith*, 2017 WL 4698471, at *1. Thus, the Court refuses to stray from its prior decision with regards to the disgorgement award. Accordingly, Defendants' request for an altered or amended Final Judgment to award only $1.00 in disgorgement on this basis is **DENIED**.

* * *

In sum, Defendants have failed to establish any basis for the Court to alter or amend the Final Judgment in this case. Indeed, as mentioned above, the vast majority of Defendants' arguments are based solely on their mere disagreement with the Court's prior rulings. This, however, standing alone, is not enough to satisfy the showing required under Rule 59. Accordingly, Defendants' motion to alter or amend the Final Judgment is denied in its entirety.

## III.    Defendants' Motion for New Trial

Defendants move for a new trial on two separate grounds. First, Defendants argue that Armadillo is entitled to a new trial on infringement of the Flying V, Explorer, and SG Body Shapes because the Court erred in refusing to give a separate and different jury instruction and jury verdict form question for the alleged trademark infringement of these three Gibson body shape marks

38

(Dkt. #826 at p. 17). Second, Defendants argue that Armadillo is entitled to a new trial on counterfeiting of the three body shape marks and two word marks because the Court erred in failing to include the word "spurious" in the instruction for counterfeiting (Dkt. #826 at p. 19).

For the same reasons already explained in detail above, *see supra* Sections II.B and II.C, the Court finds that Defendants' arguments in support of their motion for new trial lack merit. Accordingly, Defendants' motion for new trial is denied in its entirety.

## CONCLUSION

It is therefore **ORDERED** that Defendants Armadillo Distribution Enterprises, Inc. and Concordia Investment Partners, LLC's Renewed Motion for Judgment as a Matter of Law, to Alter or Amend the Judgment, or for a New Trial Under Rules 50(b) and 59(a, e) of the Federal Rules of Civil Procedure (Dkt. #826) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 31st day of July, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

39