# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| GIBSON, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | Civil Action No. 4:19-cv-358 |
| ARMADILLO DISTRIBUTION ENTERPRISES, INC. | § | Judge Mazzant |
| | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Gibson Brands, Inc.'s ("Gibson" or "Plaintiff") Rule 54 Application for Attorneys' Fees and Costs (Dkt. #819) (the "Motion"). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that Gibson Brands, Inc.'s Rule 54 Application for Attorneys' Fees and Costs (Dkt. #819) should be **GRANTED in part**.

## BACKGROUND

This is a trademark infringement and counterfeiting dispute. The facts of this case are more fully discussed in the Fifth Circuit's opinion, *Gibson, Inc. v. Armadillo Distrib. Enters., Inc.*, 107 F.4th 441, 443–46 (5th Cir. 2024), and in the Court's September 22, 2025, Memorandum Opinion and Order ruling on the parties' post-trial motions (Dkt. #812 at pp. 1–4). Accordingly, the Court recounts only the facts relevant to the instant Motion.

On March 7, 2025, for the second time, trial commenced in this case (Dkt. # 736). Plaintiff Gibson again alleged that Defendant Armadillo Distribution Enterprises, Inc. ("Armadillo" or "Defendant") infringed on four of its trademarked guitar body shapes, one trademarked guitar headstock shape, and two word marks (collectively, the "Gibson Trademarks")

(Dkt. #746 at pp. 9–10). In contrast, Armadillo presented a different narrative. Armadillo argued that its offer and sale of guitars did not violate the Lanham Act because the shapes are generic and that the shapes did not infringe the Gibson Trademarks because ordinary consumers were not likely to be confused (Dkt. #746 at p. 10). Also, Armadillo argued that Gibson's trademark claims are barred by laches (Dkt. #746 at p. 10). In addition to raising the equitable defense of laches, Armadillo filed counterclaims against Plaintiff for cancellation of all the Gibson Trademarks—with the exception of the Dove Wing Headstock—for guitar body shapes on the grounds that they are common, generic shapes (Dkt. #746 at p. 10).

On March 21, 2025, after a nine-day trial, the jury found that Armadillo intentionally infringed on most of the Gibson Trademarks and engaged in unfair competition in a manner that created a likelihood of confusion as to the source, affiliation, or sponsorship of Plaintiff's products (Dkt. #754 at p. 1). The jury also found that Armadillo sold or marketed counterfeits of the infringed Gibson Trademarks (Dkt. #754 at p. 2). As to the laches defense, the jury found that Gibson delayed in asserting its trademark rights against Armadillo as to the infringed Gibson Trademarks (Dkt. #754 at p. 4–5). The jury found that this delay caused Armadillo undue prejudice (Dkt. #754 at p. 5). However, the jury also found that Armadillo had unclean hands in connection with its use of the Infringed Trademarks. (Dkt. #754 at p. 6).

Unlike the first jury, however, the second jury reached a different conclusion on Armadillo's counterclaim. The jury found that Gibson's ES Body Shape Design trademark should be cancelled because it is generic (Dkt. #754 at p. 12).

On September 22, 2025, the Court issued a Memorandum Opinion and Order resolving the parties' post-trial motions and entered Final Judgment in the case (Dkt. #812; Dkt. #813). The

Final Judgment, among other things, declared Plaintiff the prevailing party; permanently enjoined Armadillo from manufacturing, advertising, or selling its infringing products; and ordered Armadillo to pay Plaintiff a total of $168,399.22 as disgorgement of Armadillo's profits (Dkt. #813 at pp. 1–3).

On October 10, 2025, Plaintiff's counsel Bates & Bates, LLC and the Law Office of Steve Howen (collectively, "Plaintiff's Counsel") filed this Application for Attorneys' Fees and Costs (Dkt. #819). Plaintiff requests that the Court grant an award of attorneys' fees in the amount of $4,072,723.33, with an upward adjustment of $2,341,184.24, to total $6,413,907.57, and litigation costs in the amount of $237,725.25 (Dkt. #819 at pp. 13, 23). On November 12, 2025, Defendant responded (Dkt. #843). On December 8, 2025, Plaintiff filed a reply (Dkt. #857). Before this Motion could be ruled on, Defendant, on June 9, 2026, filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida (Dkt. #866). After notice, the Court stayed the case (Dkt. #867). On August 14, 2026, the United States Bankruptcy Court for the Middle District of Florida entered an order granting Plaintiff relief from the automatic stay on the issue of attorneys' fees and costs (Dkt. #870-1; Dkt. #870). This Motion is now ripe for adjudication.

## LEGAL STANDARD

### I. Attorneys' Fees

Under the Lanham Act, a party may recover attorneys' fees two ways. First, "the court in exceptional cases *may* award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (emphasis added). For awarding fees under § 1117(a), the Fifth Circuit follows the Supreme Court's test for exceptional from *Octane Fitness* and finds "an exceptional case is one where (1) in

considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of the party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016) (citing *Octane Fitness, LLC v. Icon Health and Fitness, Inc.*, 572 U.S. 545, 553–54 (2014)). "A party seeking attorney[]s['] fees must prove either of those prongs by 'a preponderance of the evidence.'" *Appliance Liquidation Outlet, L.L.C. v. Axis Supply Corp.*, 105 F.4th 362, 382 (5th Cir. 2024) (citing *Octane Fitness*, 572 U.S. at 557 (citations omitted)).

A nonexclusive list of factors that the Court may consider includes "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6. "Whether a party has infringed or acted in bad faith can be relevant to whether a case is exceptional under *Octane Fitness*'s two-prong test." *Axis Supply Corp.*, 105 F.4th at 383.

Second, "For use of a counterfeit mark, 15 U.S.C. § 1117(b) provides that,

> '[i]n assessing damages under subsection (a) of this section, the court *shall, unless the court finds extenuating circumstances,* enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney[]s['] fee, in the case of any violation of section 1114(1)(a) of this title … *that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark* (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services. . . .'"

*Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 824 (5th Cir. 1998) (citing § 1117(b)). Section 1117(a) is discretionary, but section 1117(b) is mandatory "unless the court finds extenuating circumstances." § 1117(a), (b). But, "'[e]xtenuating circumstances' will rarely be found in cases where the defendant has trafficked in goods or services using a mark that he or she knows to be

counterfeit." *Rolex Watch U.S.A., Inc. v. Zolotukhin*, No. 3:14-CV-2867, 2016 WL 1258479, at *4 (N.D. Tex. March 31, 2016) (citations omitted).

In the Fifth Circuit, attorneys' fees are calculated using the lodestar method. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citations omitted). Using the lodestar analysis, the computation of a reasonable attorneys' fee award is a two-step process. *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 898 (E.D. Tex. 2017) (citations omitted).

First, the lodestar is calculated by multiplying "the number of hours reasonably expended by an appropriate hourly rate." *Cruz v. Maverick Cnty.*, 957 F.3d 563, 573 (5th Cir. 2020) (citation omitted). A reasonable hourly rate is the "prevailing market rates in the relevant community . . . for similar services by lawyers of reasonably comparable skills, experience, and reputation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The relevant legal market is "the community where the district court sits." *Alvarez v. McCarthy*, No. 20-50465, 2022 WL 822178, at *3 (5th Cir. Mar. 18, 2022) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)). The lodestar is presumptively reasonable. *See Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016).

The party seeking attorneys' fees "must present adequately documented time records to the court." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *see also Fessler v. Porcelana Corona De Mex., S.A. DE C.V.*, 23 F.4th 408, 415–16 (5th Cir. 2022) (explaining that "[t]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"). Using this time as a benchmark, "the court should exclude all time that is excessive, duplicative, or inadequately documented." *Watkins*, 7 F.3d at 457. (citations omitted). The hours surviving this vetting process are "those reasonably expended under the

litigation." *Id.* Additionally, the party seeking a reduction of the lodestar bears the burden of showing that a reduction is warranted. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (per curiam).

Second, courts adjust the lodestar up or down based on relevant factors, found in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* Factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client of the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Id.* at 717–19.

The most critical factor in determining reasonableness is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (citation modified). Three of the *Johnson* factors—complexity of the issues, results obtained, and preclusion of other employment—are fully reflected in the lodestar amount. *See Heidtman v. City of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). "[T]he court should give special heed to the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citation omitted).

The party seeking to recover attorneys' fees must segregate its attorneys' fees between those fees on a claim that allows their recovery and those which do not allow for recovery. *Luxottica*

*of Am. Inc. v. Brave Optical, Inc.*, No. 4:22-CV-244. 2025 WL 237542, at *2 (E.D. Tex. Apr. 29, 2025) (citation omitted). However, the duty to segregate fees does not arise when fees for recoverable services are "intertwined" with unrecoverable fees. *Id.* That is, the party seeking to recover attorneys' fees need not segregate fees when discrete legal services advance both a recoverable and unrecoverable claim. *Id.*

**II. Litigation Costs**

Rule 54 of the Federal Rules of Civil Procedure permits a prevailing party to collect the fees, other than attorneys' fees, incurred by counsel in connection with prosecuting the case. *See* FED. R. CIV. P. 54(d)(1) ("Unless a federal statue, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). The Court may tax the following:

> 4. Fees of the clerk and marshal;
> 5. Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> 6. Fees and disbursements for printing and witnesses;
> 7. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> 8. Docket fees under 28 U.S.C. § 1923;
> 9. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

28 U.S.C. § 1920.

This provision "creates a 'strong presumption' in favor of awarding costs to a prevailing party, and 'a district court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so.'" *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 128 (5th Cir. 2015) (quoting *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 384 (5th Cir. 2012)); *see also Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006)

(citing *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)). This is so because the denial of costs is considered "in the nature of a penalty." *Shwarz*, 767 F.2d at 131.

The United States Supreme Court has indicated that "federal courts may only award those costs articulated in § 1920 absent explicit statutory or contractual authorization to the contrary." *Cook Child.'s Med. Ctr. v. The N. Engl. PPO Plan of Gen. Consolidation Mgmt. Inc.*, 491 F.3d 266, 274 (5th Cir. 2007). The party seeking recovery under § 1920 bears the burden of proving the amount and necessity of those costs. *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-CV-764, 2015 WL 164072, at *1 (E.D. Tex. Jan. 13, 2015) (citing *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994)). The prevailing party carries the burden to demonstrate that the costs it seeks are recoverable. *Eolas Techs. Inc. v. Adobe Sys., Inc.*, 891 F. Supp. 2d 803, 804 (E.D. Tex. 2012), *aff'd sub nom. Eolas Techs. Inc. v. Amazon.com, Inc.*, 521 F. App'x 928 (Fed. Cir. 2013).

The Court also has discretion to deny costs when the "suit was brought in good faith *and* denial is based on at least one of the following factors: '(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.'" *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (quoting *Pacheco*, 448 F.3d at 794); *see also* 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2668, at 234 (4th ed. 1998).

**ANALYSIS**

Plaintiff, pursuant to Rule 54 of the Federal Rules of Civil Procedure, requests that the Court enter an order granting: (1) an award of attorneys' fees in the amount of $4,072,723.33, with

an upward adjustment of $2,341,184.24, to total $6,413,907.57; and (2) payment of Plaintiff's litigation costs in the amount of $237,725.25 (Dkt. #819 at p. 13, 23). Defendant argues Plaintiff is not entitled to attorneys' fees and/or costs because: (1) the Court already denied Plaintiff's request for attorneys' fees after the first trial (Dkt. #620 at p. 6; Dkt. #642 at p. 2) and Plaintiff withdrew its appeal of the denial of attorneys' fees (Dkt. #843 at p. 6); (2) Plaintiff's conduct caused a re-trial thus barring Plaintiff from fees or costs for the second trial (Dkt. #843 at p. 6); (3) Plaintiff is not statutorily entitled to fees because this is not an "exceptional case" under § 1117(a) and there are "extenuating circumstances" under § 1117(b); and (4) Plaintiff did not segregate its fees between claims it lost and won at trial (Dkt. #843 at pp. 6–7). The Court addresses each request and arguments in turn.

## I. Attorneys' Fees Under Lodestar Method

### A. Entitlement to Attorneys' Fees

The Court must first determine whether Plaintiff is entitled to attorneys' fees. The Lanham Act permits an award of reasonable attorneys' fees to a prevailing party in exceptional cases, § 1117(a), or when the defendant intentionally counterfeits the plaintiff's mark unless the defendant demonstrates extenuating circumstances. § 1117(b). Because the Court awarded Plaintiff an injunction, it is the prevailing party (Dkt. #813). *All. for Good Gov't v. Coal. For Better Gov't*, 919 F.3d 291, 295 n.16 (5th Cir. 2019).

The Court may award attorneys' fees if it finds this is an "exceptional case." 15 U.S.C. § 1117(a). The Court declines to do so here. While the jury did not find Defendant's infringing to be willful, (Dkt. #754 at p. 3), the fact that the jury found Defendant intentionally infringed and acted in bad faith with unclean hands can render this case exceptional

(Dkt. #754 at pp. 2–3, 6); *see Axis Supply Corp.*, 105 F.4th at 383; *see also Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 491 (5th Cir. 2008) ("the necessary showing [for attorneys' fees] demands a high degree of culpability on the part of the infringer, for example bad faith or fraud") (quotation modified).[1]

However, looking at the *Octane Fitness* factors and how other courts have interpreted them, Defendant did not litigate the case in an unreasonable manner by engaging in some form of litigation misconduct such as abusing the discovery process, filing frivolous pleadings or defenses, or dishonesty. *Axis Supply Corp.*, 105 F.4th at 384 (citations omitted). A party's motivation may also be relevant to whether they litigated in an unreasonable manner. *Octane Fitness*, 572 U.S. at 554 n.6. Here, Plaintiff has shown no evidence of an improper motive.[2]

In *All. for Good Gov't v. Coal. For Better Gov't*, the Fifth Circuit upheld an award of attorneys' fees under the exceptional provision because the plaintiff had a much stronger litigating position, while the defendant engaged in unreasonable litigation behavior by filing an unsupported laches defense and a counterclaim without any actionable conduct. 919 F.3d at 296. Unlike that case, Defendant here had a supported laches defense—although it was defeated by its own unclean hands—and a valid counterclaim that resulted in one of Plaintiff's marks to be cancelled and found generic (Dkt. #754 at p. 2–5, 12). In other words, Plaintiff prevailed, but the "defense does not stand out as unusually weak or unreasonable." 4 MCCARTHY ON TRADEMARKS AND UNFAIR

[1] While *Smack Apparel Co.* is pre-*Baker* & *Octane Fitness* and followed the rule that an "exceptional" case requires willfulness, its guidance on how bad faith by the infringer may justify attorneys' fees under § 1117(a) is relevant.
[2] Plaintiff cites an internal Armadillo email by its then-CEO, Evan Rubinson, where he called the lawsuit "the silver lining of a lifetime if we leverage it properly" as evidence of bad-faith or improper motive (Dkt. #819 at p. 11; Dkt. #788 at p. 75). Plaintiff also points to the fact that Defendant continued advertising and selling its infringing guitars on its website after the first trial, which led to the Court granting Plaintiff's motion for contempt as additional evidence (Dkt. #819 at p. 11; Dkt. #609). But, while Defendant's alleged good faith was irrelevant to whether sanctions for civil contempt were warranted, it is relevant here. The Court declines to find Defendant had an improper motive based on the email and Defendant's continued infringement after the first trial.

COMPETITION § 30:10 (5th ed. 2024). While there is no "precise rule or formula for making the determination" because whether a case is exceptional is a "case-by-case exercise" based on the "totality of the circumstances," *Octane Fitness*, 572 U.S. at 554, the totality of the circumstances weighs against awarding fees under § 1117(a). That, however, does not end the analysis, as Plaintiff also asks for fees under § 1117(b).

A prevailing plaintiff is entitled to attorneys' fees under § 1117(b) if the defendant intentionally counterfeits the plaintiff's mark, unless the defendant demonstrates extenuating circumstances. While Defendant argues that § 1117(b) requires willfulness to award fees and the jury's affirmative finding for Defendant's laches defense should prevent the award of fees (Dkt. #843 at p. 11; Dkt. #754 at pp. 4–5), willfulness language is found in § 1117(c), not § 1117(b).[3] The Supreme Court has additionally rejected a willfulness or bad faith prerequisite for attorneys' fees. *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 214–16 (2020); *see also Axis Supply Corp.*, 105 F.4th at 383 n.22.

Here, the jury found that Defendant acted knowingly, intentionally, deliberately, and with bad faith due to their unclean hands in intentionally infringing and counterfeiting Plaintiff's marks (Dkt. #754 at pp. 2–3, 6; Dkt. #746 at pp. 30–31; Dkt. #767 at p. 1801).[4] Because the jury found

[3] *Meece* is the most analogous case on point, and its analysis is controlling while its subsequent history is persuasive. *See Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 827, 831 (5th Cir. 1998) (while following its precedent that required a showing of willfulness for damages under § 1117(a), the Fifth Circuit found considerable evidence of intentional, not willful, trademark counterfeiting and remanded for further proceedings). On remand, the District Court awarded attorneys' fees under § 1117(b) because the defendant intentionally used a mark knowing it to be counterfeit. *Rolex Watch U.S.A., Inc. v. Meece*, No. 3:95-CV-1058, 2000 WL 33582648, at *4 (N.D. Tex. Jan 25, 2000).

[4] As to Defendant's argument on laches preventing fees under § 1117(b), "a laches defense cannot be asserted by a party with unclean hands because it equitable." *Rolex Watch USA, Inc. v. BeckerTime, L.L.C.*, 96 F.4th 715, 723 (5th Cir. 2024) (citation omitted). "A defendant who *intentionally infringes* a trademark with the *bad faith intent* to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense." *Id.* (citation omitted) (emphasis added).

subjective and knowing bad faith necessary to foreclose Defendant's equitable defense of laches, Plaintiff met its burden of showing intentionality under § 1117(b). *See Rolex Watch USA, Inc. v. BeckerTime, L.L.C.*, 96 F.4th 715, 724 (5th Cir. 2024). Defendant has not established extenuating circumstances to prevent the award of fees. While Defendant is in Chapter 11 Bankruptcy, it is not a small family-owned business unlikely to be able to satisfy an award of attorneys' fees. *See Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 984 n.14 (S.D. Tex. 1997); *see also Zolotukhin*, 2016 WL 1258479, at *4; *see also* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:94 (5th ed. 2024) ("Congress has emphasized that it will be a 'rare case' and a 'highly unusual' instance in which a defendant who has trafficked in goods that he or she knows to be counterfeit can show some 'extenuating circumstances'"). Therefore, the award of attorneys' fees to Plaintiff is warranted under § 1117(b). *See Meece*, 158 F.3d at 824; *see also Rolex Watch U.S.A., Inc. v. Meece*, No. 3:95-CV-1058, 2000 WL 33582648, at *4 (N.D. Tex. Jan 25, 2000); *see also Zolotukhin*, 2016 WL 1258479, at *4.

While the Court has determined that Plaintiff is statutorily entitled to attorneys' fees, the question remains as to whether Plaintiff should be awarded fees for both trials and the appeal.

**1. Fees as to First Trial and Appeal**

The Court previously denied Plaintiff's request for attorneys' fees for the first trial because Plaintiff did not submit adequate documentation supporting its requested fee amount (Dkt. #620 at p. 6; Dkt. #642 at pp. 2–3). While Plaintiff initially appealed the Court's ruling (Dkt. #644), it subsequently withdrew its appeal (Dkt. #843 at p. 6). Plaintiff requests those same fees be awarded now, totaling $2,712,416.92—$458,734.00 to Law Office of Steve Howen and $2,253,682.92 to Bates & Bates (Dkt. #819-3 at p. 5; Dkt. #819-4 at p. 6). For the appeal Plaintiff

lost, it requests $261,697.20 total—$114,337.50 to Law Office of Steve Howen and $147,359.70 to Bates & Bates (Dkt. #819-3 at p. 5; Dkt. #819-4 at p. 6).

Because Plaintiff withdrew its appeal, Defendant argues that Plaintiff waived its right to now collect those fees (Dkt. #843 at p. 9). Plaintiff responds that it did not waive its right to fees because its current claim to fees is a new claim, based on new circumstances, and any earlier preserved appeal by Plaintiff would have been futile, given the Fifth Circuit's "broad mandate to retry *all matters* (Dkt. #857 at p. 7). Generally, "[q]uestions posed for appellate review but inadequately briefed are considered abandoned." *Ramirez v. Escajeda*, 921 F.3d 497, 500 (5th Cir. 2019) (quotation omitted); *see also United Paperworkers Int'l Union, AFL-CIO, CLC v. Champion Int'l Corp.*, 908 F.2d 1252, 1255 (5th Cir. 1990) ("[A]n appellant abandons all issues not raised in its *initial* brief."). In response, Plaintiff cites *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, No. 20-50750, 2023 WL 4235553, at *6 (5th Cir. June 28, 2023) for the proposition that an appellate court's broad mandate remanding for further proceedings consistent with its opinion does not prevent this Court from revisiting its award of fees for the first trial.[5]

To resolve this dispute, the Court must distinguish the waiver doctrine with the mandate rule. "[A]n issue that could have been but was not raised on appeal is forfeited and may not be revisited by the district court on remand." *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011). According to Defendant, Plaintiff could have raised the issue of the previous denial of fees on appeal but did not, thus rendering the issue forfeited and unable to be revisited by this Court. But, the mandate rule requires this Court to follow the Fifth Circuit's mandate and to do

[5] In essence, Plaintiff argues that Defendant's reliance on the waiver doctrine is misplaced because the waiver cases "address whether a party preserved an appellate argument in the appeal, as opposed to whether the reversal of a judgment 'freezes in place' a trial court's unchallenged rulings from the reversed trial" (Dkt. #857 at p. 7 n.3).

nothing else. *Pool v. City of Houston*, 163 F.4th 284, 291 (5th Cir. 2026) (citations omitted). On remand, this Court must implement both the letter and the spirit of the Fifth Circuit's mandate and may not disregard the explicit directives of the Fifth Circuit. *Id.* "A remand made without deciding anything, apart from directing further proceedings, determines only that the further proceedings must be had." *Holder*, 634 F.3d at 836 n.4 (citation omitted).

Here, the Fifth Circuit ordered a broad mandate and remanded for a new trial. (Dkt. #652). Because the Fifth Circuit remanded for a new trial, it vacated Plaintiff's status as the prevailing party. Prevailing party status is a prerequisite to recover attorneys' fees under the Lanham Act. § 1117. Thus, the Fifth Circuit's mandate vacating the first trial removed this Court's basis for granting attorneys' fees to Plaintiff. *See Pool*, 163 F.4th at 291, 293 (holding that because the Fifth Circuit remanded and vacated, the plaintiff lost its prevailing party status, and the footing of the fee award was removed). As Plaintiff points out in its reply, any completed appeal of this Court's ruling on attorneys' fees for the first trial would have been futile, given the Fifth Circuit's reversal of the underlying judgment (Dkt. #857 at p. 7).

Therefore, by obtaining prevailing party status for the second trial after the Fifth Circuit's mandate, the Court will revisit the same issue of awarding fees incurred from the first trial. *See IAS*, 2023 WL 4235553, at *6. The Court finds that Plaintiff is entitled to fees for the first trial. *See Abner v. Ka. City S. Ry. Co.*, 541 F.3d 372, 381–82 (5th Cir. 2008) ("[A] plaintiff may receive attorneys' fees for the expenses incurred during a trial that was later vacated.").

Defendant also challenges Plaintiff's request for fees during the appeal, which Plaintiff lost, and total $261,697.20—$114,337.50 to Law Office of Steve Howen and $147,359.70 to Bates & Bates (Dkt. #819-3 at p. 5; Dkt. #819-4 at p. 6). The Court has the authority and discretion to

award appellate fees under the Lanham Act. *All. for Good Gov't v. Coal. For Better Gov't*, 998 F.3d 661, 667 (5th Cir. 2021). In exercising its discretion, the Court declines to award Plaintiff its fees incurred during the appeal. Plaintiff not only lost on appeal with Defendant declared as the prevailing party, but the Fifth Circuit additionally awarded Defendant its costs on appeal (Dkt. #652; Dkt. #653). Therefore, Plaintiff is not entitled to the $261,697.20 it incurred on appeal.

**2. Fees as to Second Trial**

As to the second trial, Defendant argues that Plaintiff did not properly segregate its fees and Plaintiff's conduct caused the need for a re-trial (Dkt. #843 at pp. 6, 10, 20–21). *Luxottica*, 2025 WL 237542, at *2; *Alexander v. City of Jackson*, 456 F. App'x 397, 401 (5th Cir. 2011) ("[W]here counsel's conduct causes, in whole or in part, the need for the district court to conduct a second trial, the fees and costs associated with that second trial cannot be recouped."). However, the test, as articulated in *Abner*, 541 F.3d at 381–82, is whether Plaintiff engaged in *unreasonable* behavior leading to a re-trial. Here, Plaintiff did not engage in unreasonable behavior leading to the Fifth Circuit vacating the first trial and remanding for a second trial. *See Gibson, Inc.*, 107 F.4th at 448 & n.3 (noting the "scant circuit authority" addressing the relevance of third-party-use evidence dating back several decades). On the segregation-of-fees issue, Plaintiff's successful and unsuccessful claims were based upon the same facts and legal theories. *See, e.g.*, *Coleman v. Hous. Indep. Sch. Dist.*, No. 98-20692, 1999 WL 1131554, at *5 (5th Cir. 1999); *Franciscan All., Inc. v. Becerra*, 681 F. Supp. 3d 631, 641 (N.D. Tex. 2023). All of Plaintiff's claims could produce attorneys' fees for infringement and do not need to be segregated between claims that permit fee recovery and those which do not allow for recovery. *Luxottica*, 2025 WL 1237542, at *2. Therefore,

Plaintiff, as the prevailing party, may recover all reasonably incurred attorneys' fees for the second trial, even though it did not prevail on all claims. *Coleman*, 1999 WL 1131554, at *5.

**B. Reasonableness of Plaintiff's Counsel's Hourly Rates**

The Court must now determine what a reasonable attorneys' fee award is in this case. To do this, the Court starts with the lodestar calculation, which is "the number of hours reasonably expended multiplied by the prevailing hourly rate in the community of similar work." *Fessler*, 23 F.4th at 415 (citation omitted). In their Rule 54 Application for Attorneys' Fees, Plaintiff requests a fee award of $4,072,723.33, with an upward adjustment of $2,341,184.24, to total $6,413,907.57, which accounts for approximately 17,779.44 hours spent litigating this case since May 14, 2019, through the lodestar cutoff date of October 10, 2025 (Dkt. #819 at pp. 13–14). Specifically, Bates & Bates requests $3,306,268.33, while the Law Office of Steve Howen requests $766,459.00 in reasonable attorneys' fees. As addressed above, though, the Court finds that Plaintiff is not entitled to its fees during the appeal. Thus, the maximum Plaintiff can recover, without an adjustment, is $3,811,026.13—$3,158,906.63 to Bates & Bates and $652,119.50 to Law Office of Steve Howen (*See* Dkt. #819-3; Dkt. #819-4).[6]

In support of the Application, Plaintiff's Counsel submitted the declarations of attorneys Andrea Bates, a Bates & Bates attorney, and Stephen Howen, an attorney for the Law Office of Steve Howen (Dkt. #819-3; Dkt. #819-4). Andrea Bates and Stephen Howen attached invoices and billing entries to their declarations and application, which record the fees incurred by Plaintiff's Counsel during the lodestar period and the staff and attorneys' respective hourly rates and

[6] There is a $4 difference between Plaintiff's and the Court's independent calculation on the amount of fees Plaintiff incurred minus the appeal. Because Plaintiff's requested amount is lower, the Court will choose Plaintiff's calculation and reduce Plaintiff's Counsel's fees proportionately.

individual biographies (Dkt. #819-5; Dkt. #819-6; Dkt. #819-8; Dkt. #819-9; Dkt. #819-10). Bates & Bates billed $295 per hour for partners, $275 per hour for associate attorneys, and $110 to 125 generally or $200 per hour for paralegals during trial (Dkt. #819 at pp. 15–18; Dkt. #819-10). The Law Office of Steve Howen billed $375 per hour for Stephen Howen (Dkt. #819 at pp. 16–17).

The fee applicant has the burden of showing that its attorneys' hourly rates are reasonable. *Kellstrom*, 50 F.3d at 325. A reasonable hourly rate is the "prevailing market rates in the relevant community . . . for similar services by lawyers of reasonably comparable skills, experience, and reputation." *McClain*, 649 F.3d at 381 (citing *Blum*, 465 U.S. at 895). The relevant legal market is "the community where the district court sits." *Alvarez*, 2022 WL 822178, at *3 (citing *Tollett*, 285 F.3d at 368).

"Typically, the Court receives copies of resumes or summaries of the qualifications of attorneys involved in the litigation, as well as information regarding the individuals' litigation skills generally." *Mauricio v. Phillip Galyen, P.C.*, 174 F. Supp. 3d 944, 948 (N.D. Tex. 2016). "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett,* 285 F.3d at 368. A court, however, may also use its own expertise and judgment to independently assess the reasonableness of attorneys' hourly rates. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("[T]rial courts are considered experts as to the reasonableness of attorney[]s['] fees[.]").

In addition to their declarations, Plaintiff's Counsel submitted data collected by the American Intellectual Property Law Association ("AIPLA") (Dkt. #819-11; Dkt. #819-12). AIPLA "publishes an Economic Survey based on polls of its members on different aspects of intellectual property law practice, including the cost of litigation." *Adler, P.C. v. McNeil*

*Consultants, L.L.C.*, No. 3:19-CV-2025, 2025 WL 1348401, at *6 (N.D. Tex. Mar. 28, 2024). The AIPLA Survey Report published in 2023 reports that the national median average hourly rate for a partner in a private firm practicing intellectual property work was $500, which was also Texas's rate (Dkt. #819-11 at I-34). The same report shows that the median average hourly rate for a solo practitioner in Texas was $450 (Dkt. #819-11 at I-21). AIPLA's Survey Report for 2021 reports that the median average hourly rate for an associate attorney in Texas was $450 (Dkt. #819-12 at I-49). While there is no AIPLA survey for paralegals, the Court has previously recognized that hourly rates ranging between $150–270 per hour is reasonable. *See, e.g.*, *Luxottica*, 2025 WL 1237542, at *4; *Tech Pharmacy Servs.*, 298 F. Supp. 3d at 906.

Here, the Bates & Bates partners billed at $295 per hour, which is 41 percent lower than the national and Texas median rate of $500 per hour. Bates & Bates associates billed at $275 per hour, which is 39 percent lower than the Texas median of $450. The Law Office of Steve Howen billed at $375 per hour, which is 17 percent lower than the median in Texas of $450 per hour for solo practitioners. Plaintiff's paralegals billed at $110 to 125 per hour generally and $200 per hour for trial. The Court previously found Plaintiff's Counsel's fees to be reasonable (Dkt. #635). *Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*, No. 4:19-CV-358, 2023 WL 3605970, at *4 (E.D. Tex. May 23, 2023). Like before, the Court finds the rates charged by Plaintiff's Counsel to be reasonable.

**C. Reasonableness of Plaintiff's Counsel's Hours Billed**

The lodestar amount also incorporates the reasonable number of hours spent working on the case. The party seeking attorneys' fees "must present adequately documented time records to the court." *Watkins*, 7 F.3d at 457. Here, Plaintiff's Counsel submitted billing entries with a total

time of 17,779.44 hours—15,699.44 from Bates & Bates and 2,080 from Law Office of Steve Howen (Dkt. #819-3; Dkt. #819-4). Because any hours dedicated to the appeal do not count, Plaintiff's new total hours are 16,844.15—15,069.05 from Bates & Bates and 1,775.1 from Law Office of Steve Howen (Dkt. #819-3; Dkt. #819-4). Using this time as a benchmark, "the court should exclude all time that is excessive, duplicative, or inadequately documented. *Id.* (citations omitted). The hours surviving this vetting process are "those reasonably expended under the litigation." *Id.*

The procedural history of this case is extensive. The case was first filed on May 14, 2019. (Dkt. #1). Since then, the parties engaged in lengthy discovery—including over forty depositions—two jury trials with thousands of trial exhibits, and an appeal with oral argument before the Fifth Circuit Court of Appeals. In Plaintiff's Counsel's declarations, Bates & Bates and the Law Office of Steve Howen reduced the amount of fees claimed by approximately 6.11 percent to adjust for duplicative or excessive billing and removed hours expended on the case for marks or claims Plaintiff did not put before the jury or ultimately prevail on (*See* Dkt. #819 at p. 18; Dkt. #819-3 at p. 11; Dkt. #819-4 at p. 6). Upon review of their affidavits, Plaintiff's Counsel has met their burden of exercising billing judgment. *Black*, 732 F.3d at 502. Overall, Plaintiff's Counsel provided documentation of: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked. *See Luxottica*, 2025 WL 1237542, at *5. Plaintiff's Counsel included the basic facts underlying the lodestar.

The Application for Attorneys' Fees, Declarations, and attached exhibits and billing tables outline the total amount of hours worked by each individual, listing which person performed the work, how long they spent on the task, and what work was performed

(*See* Dkt. #819-5; Dkt. #819-6; Dkt. #819-8; Dkt. #819-9). The Court concludes that Plaintiff's Counsel's descriptions in the billing tables are sufficient to establish reasonableness under lodestar. Having determined that Plaintiff's Counsel has correctly used the lodestar for its attorneys' fees calculation, the Court finds that the lodestar amount for Bates & Bates is $3,158,906.63 while the lodestar amount for the Law Office of Steve Howen is $652,119.50.

**D. The *Johnson* Factors**

Now that the lodestar amount is calculated, the Court must determine whether, if at all, it should adjust the lodestar amount up or down in accordance with the *Johnson* factors. Here, the Court will give special heed to the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation and ability of counsel. *Migis*, 135 F.3d at 1047.

Plaintiff's Counsel seeks an enhancement of $2,341,184.24 because the hourly rate they charged Plaintiff was below the median average hourly rate charged by other attorneys practicing intellectual property law, the case was complex and required specialized knowledge, the case was extensive in length, and the representation of Plaintiff prevented Plaintiff's Counsel from taking other employment opportunities (*See* Dkt. #819 at pp. 13–15). As discussed above, Plaintiff's Counsel worked at a discounted rate ranging from 17 to 41 percent lower than the median average hourly rate. While Plaintiff's Counsel did work at a discounted rate, the customary fee was agreed to. Additionally, the complexity of the case and the preclusion of employment is already reflected in the lodestar amount and should not be double counted, and the lodestar is presumptively reasonable. *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d at 209; *see Heidtman v. City of El Paso*, 171 F.3d at 1043; *see Combs*, 829 F.3d at 392.

It is true that the amount of time and labor involved was vast throughout the extensive procedural history of this case. But, the most critical factor in determining reasonableness is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). While the jury only awarded $1 in damages (Dkt. #754 at p. 10), Plaintiff ultimately achieved a degree of success by defending its marks and obtaining a permanent injunction against Defendant. However, at the same time, Plaintiff had one of its marks declared generic.

For these reasons, the Court will decline to adjust the lodestar.

* * *

In sum, the Court finds that an award of attorneys' fees to Plaintiff in the amount of $3,811,026.13—$3,158,906.63 to Bates & Bates and $652,119.50 to Law Office of Steve Howen—is warranted in this case (*See* Dkt. #819-3; Dkt. #819-4). Accordingly, Plaintiff's request for attorneys' fees is hereby **GRANTED in part**.

## II. Litigation Costs

The Court now turns to Plaintiff's Counsel's request for the litigation costs they incurred in this case. Plaintiff's Counsel requests an award of $237,725.25 for the costs incurred in connection with litigating this case (Dkt. #819 at p. 20). These expenses include the costs incurred for docketing and filing fees, recording and transcribing of depositions, printing and producing required materials, court reporting, travel, and other similar costs necessary to the disposition of this case (*See* Dkt. #819 at p. 22; Dkt. #819-1; Dkt. 819-4). Defendant does not contest the $157,788.48 in costs the Court awarded to Plaintiff after the first trial (Dkt. #843 at p. 6). Thus, Defendant only contests $79,936.77 stemming from the second trial and appeal.

Rule 54 of the Federal Rules of Civil Procedure permits a prevailing party to collect the fees, other than attorneys' fees, incurred by counsel in connection with prosecuting the case. *See* FED. R. CIV. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney[]s['] fees—should be allowed to the prevailing party."). This provision "creates a 'strong presumption' in favor of awarding costs to a prevailing party, and 'a district court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so.'" *GSDMIdea City, L.L.C.*, 807 F.3d at 128 (quoting *Manderson*, 666 F.3d at 384); *see also Pacheco*, 448 F.3d at 793 (citing *Schwarz*, 767 F.2d at 131). This is so because the denial of costs is considered "in the nature of a penalty." *Shwarz*, 767 F.2d at 131.

Here, the Court in its September 22, 2025, Memorandum Opinion and Order determined that Plaintiff was the prevailing party (Dkt. #812 at p. 9). Therefore, Plaintiff is entitled to costs. Awardable costs are set forth by the federal costs statute, 28 U.S.C. § 1920. Under § 1920, courts may award the following types of costs to the prevailing party:

> 4. Fees of the clerk and marshal;
> 5. Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> 6. Fees and disbursements for printing and witnesses;
> 7. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> 8. Docket fees under 28 U.S.C. § 1923;
> 9. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

*Id.* § 1920.

Here, the costs that Plaintiff seeks are the same types of costs that the Court previously approved as recoverable and awarded to Plaintiff after the first trial (Dkt. #620 at pp. 7–11). Plaintiff provided invoices for its recoverable costs in the Appendix to its Bill of Costs

(*See* Dkt. #819-1). The Court is satisfied with Plaintiff's invoices for its transcription costs, printing costs, exemplification costs, docket fees, and witness costs (*See* Dkt. #819-1 at pp. 6–149; Dkt. #819-1 at pp. 151–57; Dkt. #819-1 at pp. 159–175; Dkt. #819-1 at pp. 177; Dkt. 819-1 at pp. 180–412). Defendant challenges the costs stemming from the second trial as unnecessary or waived because Plaintiff's conduct caused a re-trial (Dkt. #843 at pp. 6, 10). But, as the Court addressed above on the attorneys' fees issue, Plaintiff's Counsel did not engage in *unreasonable* behavior leading to a re-trial. *Abner*, 541 F.3d at 381–82; *see Gibson, Inc.*, 107 F.4th at 448 & n.3 (noting the "scant circuit authority" addressing the relevance of third-party-use evidence dating back several decades).

Defendant also briefly challenges Plaintiff's right to recover costs incurred during the appeal (Dkt. #843 at pp. 4–5). Stephen Howell's travel and lodging expenses, which total $2,307.33, are the only costs Plaintiff seeks for the appeal (Dkt. #819-3 at p. 9). Because Defendant was declared the prevailing party on appeal and awarded its costs by the Fifth Circuit (Dkt. #652; Dkt. #653), the Court will not award Plaintiff its costs incurred during the appeal. Therefore, Plaintiff's request for costs will be reduced by $2,307.33.

Except for the appeal, Plaintiff has met its burden to prove the amount and necessity of its costs. Therefore, an amount of $235,417.92 will be awarded here. Accordingly, Plaintiff's request for litigation costs is hereby **GRANTED in part**.

* * *

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Rule 54 Application for Attorneys' Fees and Costs (Dkt. #819) is hereby **GRANTED in part**.

Accordingly, it is further **ORDERED** that Defendant pay Plaintiff's attorneys' fees in the amount of $3,811,026.13 within fourteen (14) days of this Order.

It is further **ORDERED** that Defendant pay Plaintiff's litigation costs in the amount of $235,417.92 within fourteen (14) days of this Order.

**IT IS SO ORDERED.**

**SIGNED this 25th day of September, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE